# ARNOLD & PORTER LLP

**Baruch Weiss**
Baruch.Weiss@aporter.com

+1 202.942.6819
+1 202.942.5999 Fax

601 Massachusetts Ave., NW
Washington, DC 20001-3743

January 22, 2016

**VIA E-MAIL**

The Honorable Jason Chaffetz, Chairman
The Honorable Elijah Cummings, Ranking Member
United States House of Representatives
Committee on Oversight and Government Reform
2157 Rayburn House Office Building
Washington, DC 20515-6143

      Re:    Martin Shkreli

Dear Chairman Chaffetz and Ranking Member Cummings:

      We write in connection with the Committee's subpoena, dated January 11, 2016, seeking the testimony of Mr. Martin Shkreli, before the United States House of Representatives' Committee on Oversight and Government Reform ("Committee"), on January 26, 2016.[1]

      Two days ago, on January 20, we received your letter indicating that, despite our informal communication to the Committee's Staff that Mr. Shkreli will assert his rights under the Fifth Amendment, you nonetheless want him to appear to assert his Fifth Amendment rights in person. "The Committee requires Mr. Shkreli to appear because he may waive or not assert the privilege as to some or all questions, particularly those that are unrelated to his indictment (i.e., re: questions as to which Mr. Shkreli would have no proper basis to assert the privilege). Additionally, the Committee may agree to hear Mr.

---

[1] While we had been representing Mr. Shkreli for some time, over this past weekend, Mr. Shkreli decided to seek other counsel. But because of the short time frame, and as an expression of his respect for the important work of this Committee, Mr. Shkreli has authorized us to send this letter in response to your subpoena and request for documents.

75016792_1.docx

# ARNOLD & PORTER LLP

Chairman Jason Chaffetz and Ranking Member Elijah Cummings
January 22, 2016
Page 2

Shkreli's testimony in executive session or to immunize his testimony under 18 U.S.C. § 6005." Letter of January 20, 2016, at 2.

As demonstrated below, Mr. Shkreli will assert his Fifth Amendment privilege against self-incrimination; he will not waive or refrain from asserting his privilege; he is entitled to assert that privilege with respect to pricing and Daraprim questions even though they do not form the basis of the current indictment filed against him; and he asks therefore that he be excused from appearing so as to assert his rights under the Fifth Amendment in person. Compelling him to appear would serve no investigative purpose and none of the stated purposes of the Committee in the letter, and -- if it involves attorneys who are members of the DC bar -- would contravene DC Bar ethics rules governing the involvement of congressional attorneys in issuing subpoenas to congressional witnesses who will clearly take the Fifth.

### I. Mr. Shkreli Will Assert his Fifth Amendment Rights with Respect to Daraprim or Drug Pricing

The Federal Trade Commission is conducting an investigation into possible civil antitrust violations concerning Daraprim drug prices and Turing Pharmaceuticals during the period that Mr. Shkreli was Turing's CEO. The New York Attorney General's Office also is conducting an investigation concerning substantially the same allegations of anti-competitive behavior regarding Daraprim price increases.

The same facts that would support liability under civil antitrust violations would support criminal antitrust charges. *See* 15 U.S.C. § 1 (providing for criminal penalties). If Mr. Shkreli made any statements about Daraprim, or increases in prices for Daraprim, those statements therefore could be used against him in a criminal matter. It is well established that a witness in a civil antitrust investigation can legitimately assert the Fifth Amendment because of the risk of a possible criminal investigation into the same facts. *In re Corrugated Container Antitrust Litigation*, 662 F.2d 875, 883-86 (D.C. Cir. 1981); *State of Rhode Island v. Cardillo*, 592 F.Supp. 655 (D.R.I. 1984).

Moreover, Mr. Shkreli has been indicted on criminal charges in the case of *United States v. Martin Shkreli, et al.*, No. 1:2015-cr-00637 (E.D.N.Y. filed Dec. 14, 2015), and remains the target of an ongoing grand jury investigation. While the charges in that indictment do not relate to the Daraprim price increase, the prosecutors have advised us that the government's criminal investigation is continuing. But because Grand Jury investigations are secret, the Government has refused our request to describe the scope of

# ARNOLD & PORTER LLP

Chairman Jason Chaffetz and Ranking Member Elijah Cummings
January 22, 2016
Page 3

its investigation. Accordingly, we do not know if the Government's ongoing investigation will cover issues to be discussed at the upcoming Committee hearing.

A witness need not be under indictment or criminal investigation to assert the Fifth Amendment Privilege against self-incrimination. *See Ohio v. Reiner*, 532 U.S. 17, 21 (2001) (citing *Grunewald v. United States*, 353 U.S. 391, 421-422 (1957)). "The privilege not only extends to answers that would in themselves support a conviction but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant." *Hoffman v. United States*, 341 U.S. 479, 486 (1951). It need only be evident from the implications of the question, in the setting in which it was asked, that a responsive answer to the question or even an answer as to why it cannot be answered might be dangerous because injurious disclosure could result. *See Reiner*, 532 U.S. at 21.

There are real and substantial risks of self-incrimination if Mr. Shkreli was to speak about Daraprim or drug pricing before the Committee. In light of the investigations into potential antitrust violations, any testimony from Mr. Shkreli about Daraprim would create "substantial and real hazards of incrimination." *See Marchetti v. United States*, 390 U.S. 39, 53 (1968).

Of course, that does not imply that Mr. Shkreli is guilty of committing any crime in connection with any involvement he may have had with the Daraprim price increase. "Truthful responses of an innocent witness, as well as those of a wrongdoer, may provide the government with incriminating evidence from the speaker's own mouth." *Ohio v. Reiner*, 532 U.S. at 17.

The fact that Mr. Shkreli may have made public statements on these issues in the past does not constitute a waiver precluding him from asserting his privilege when called now to testify before Congress. *See, e.g., Klein v. Harris*, 667 F.2d 274, 288 (2d Cir. 1981). There is no waiver unless the previous statement was under oath and in the same proceeding. *Id. See also Mitchell v. United States*, 526 U.S. 314, 321 (1999) ("It is well established that a witness, *in a single proceeding*, may not testify voluntarily about a subject and then invoke the privilege against self-incrimination when questioned about the details.") (emphasis added).

Finally, this formal assertion of the privilege applies not only to testimony but also to the production of documents in Mr. Shkreli's possession. Mr. Shkreli enjoys, as does everyone appearing before the Committee, the protection of the Fifth Amendment's

# ARNOLD & PORTER LLP

Chairman Jason Chaffetz and Ranking Member Elijah Cummings
January 22, 2016
Page 4

Act of Production Privilege. *See United States v. Hubbell*, 530 U.S. 27 (2000). As such, Mr. Shkreli respectfully advises the Committee that it will not produce any documents.

## II. The Committee should not force Mr. Shkreli to come to Washington, D.C., to invoke his Constitutional rights

The Committee should not force Mr. Shkreli to travel to Washington, D.C. to assert his constitutional right in person, especially when the Committee already has been informed that Mr. Shkreli will assert the Fifth Amendment privilege and will not answer any questions regarding drug pricing or Daraprim.

To reinforce counsel's assertion that Mr. Shkreli will assert his rights under the Fifth Amendment, Mr. Shkreli hereby provides the attached declaration stating, under penalty of perjury, his intention to assert his Fifth Amendment privilege to any question regarding drug pricing or Daraprim, and not to waive that right with respect to any question.

His assertion of the privilege should not prejudice the Committee. The Committee already has a witness from Turing, Nancy Retzlaff, Turing's Chief Commercial Officer, who will testify to drug pricing and Daraprim. The Committee thus will obtain the information it needs.

In providing additional reasons for requiring his appearance, the Committee has indicated that Congress might seek to immunize Mr. Shkreli. If and when the Committee decides to immunize Mr. Shkreli, he will gladly cooperate in any way, answer any questions, and produce any documents. But it is clear that, even if this were to happen, it will not happen between now and January 26, the date of the hearing, so there is no reason on that account for Mr. Shkreli to appear on January 26.

Under these circumstances, it seems that the reasons the Committee articulated in its letter of January 20 as to the need to have Mr. Shkreli appear in person simply do not apply in this case. Our understanding is that there is plenty of precedent for a congressional committee to excuse a witness from attending when it is clear that the witness will assert his or her rights under the Fifth Amendment. There is no requirement that he be compelled to show up and assert his rights.

Moreover, there are limits to Congress's power when a subpoena will not yield information relevant to a congressional inquiry:

# ARNOLD & PORTER LLP

Chairman Jason Chaffetz and Ranking Member Elijah Cummings
January 22, 2016
Page 5

> There is no general authority to expose the private affairs of individuals without justification in terms of the functions of the Congress . . . [n]or is the Congress a law enforcement or trial agency. These are functions of the executive and judicial departments of government. No inquiry is an end in itself, it must be related to, and *in furtherance of*, a legitimate task of the Congress.

*Watkins v. United States,* 354 U.S. 178, 187 (1957) (emphasis added).

To require Mr. Shkreli's attendance in person under these circumstances would only serve to subject Mr. Shkreli to embarrassment and obloquy without serving any of the legitimate tasks of Congress. Indeed, it is precisely in circumstances like these that the DC Bar in Ethics Opinion 358, *Subpoenaing Witness When Lawyer for Congressional Committee Has Been Advised that Witness Will Decline to Answer Any Questions on Claim of Privilege*, determined that "the Rules of Professional Conduct are violated . . . if there is no substantial purpose in calling a witness other than embarrassment, burden, or delay." D.C. Ethics Op. 358. The involvement of any DC attorney, even to the limited extent of preparing the congressional subpoena would, according to the DC Bar, amount to a violation of its Rules of Professional Conduct, when it is clear that the witness will legitimately assert his or her rights under the Fifth Amendment. *Id.*

The same policy reasoning that guides the DC Bar in determining that congressional lawyers act in violation of its rules when participating in the issuance of subpoenas in instances such as this, is also incorporated into the Department of Justice's Guidelines for Federal Prosecutors, which cautions prosecutors from subpoenaing targets who have indicated that they will assert the Fifth Amendment privilege. *See* US ATTORNEY MANUAL § 9-11.154 - *Advance Assertions of an Intention to Claim the Fifth Amendment Privilege Against Compulsory Self-Incrimination*; U.S. ATTORNEY MANUAL § 9-11.150 - *Subpoenaing Targets of the Investigation*. While we recognize that the Committee is not bound by codes of conduct imposed upon federal prosecutors, the policy behind the U.S. Attorney Manual's directions is informative, and there is every reason it should guide this Committee.

Finally, if recent history is any guide, Mr. Shkreli's assertion of his rights under the Fifth Amendment will get extensive coverage in the press. That coverage will be vastly greater if he is forced to appear before the Committee and publicly assert the privilege in person. This exercise of publicly asserting the privilege will contribute further to the negative atmosphere and make it difficult for Mr. Shkreli to obtain a fair

75016792_1.docx

# ARNOLD & PORTER LLP

Chairman Jason Chaffetz and Ranking Member Elijah Cummings
January 22, 2016
Page 6

criminal trial in the case filed against him in the Eastern District of New York. While he has created much of the publicity that surrounds him, he as an individual has a First Amendment right to do so. By contrast, the Government -- whether it is the legislative branch or the prosecutors in the executive branch -- should not poison the atmosphere against him for no legitimate purpose.

In sum, Mr. Shkreli should not be forced to appear in person when his appearance will offer no insight into the pricing of pharmaceutical drugs.

### III.    Mr. Shkreli is forbidden from leaving New York by a Federal Court Order

Aside from Mr. Shkreli's promise to assert his Fifth Amendment privilege as to any question about drug pricing or Daraprim, and aside from the policy reasons why Mr. Shkreli should not be required to assert this privilege in person, Mr. Shkreli is forbidden by Federal Court Order from leaving the Southern and Eastern Districts of New York. On December 17, 2015, Magistrate Judge Robert M. Levy entered an order setting the conditions of Mr. Shkreli's bail. Among those conditions, the order states that "[t]he defendant must remain in and may not leave . . . EDNY and SDNY." Therefore, Mr. Shkreli cannot travel to DC, even at the invitation of the United States House of Representatives, without violating a federal judge's order.

We have seen a press release attributed to Ranking Member Cummings faulting Mr. Shkreli for not seeking leave from the Court to travel to DC to testify, and referring to the fact that the subpoena was issued on January 11.[2] But it was only two days ago, on January 20, that the Committee issued a letter to Mr. Shkreli formally advising him that, despite his assertion of his rights under the Fifth Amendment, the Committee would still require him to appear.

Your staff mentioned the possibility of immunity. Mr. Shkreli would be open to discussing this more as it is not his intention to avoid the Committee's investigation. It is his intention to avoid being compelled to incriminate himself in the midst of serious criminal allegations charges. He is therefore receptive to a conversation about immunity, and will testify and produce documents if immunized.

---

[2] http://democrats.oversight.house.gov/news/press-releases/cummings-issues-statement-on-martin-shkreli-s-subpoena-to-appear-before

# ARNOLD & PORTER LLP

Chairman Jason Chaffetz and Ranking Member Elijah Cummings
January 22, 2016
Page 7

      We respectfully request that the Committee not require him to appear in person to assert his constitutional rights.

      Please contact us if you wish to discuss further.

Sincerely,

ARNOLD & PORTER LLP

By _____
Baruch Weiss
Marcus A. Asner