UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
UNITED STATES OF AMERICA,

        -against -                                  Ind. No. 15 CR 637 (S-1) (KAM)

MARTIN SHKRELI and
EVAN GREEBEL,
                Defendants.

-------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MARTIN SHKRELI'S MOTION FOR A BILL OF PARTICULARS

                                                       By:    Brafman & Associates, P.C.
                                                                 767 3rd Avenue, 26th Floor
                                                                  New York, NY 10017

Of Counsel:    Benjamin Brafman
                      Andrea Zellan
                      Marc Agnifilo
                      Jacob Kaplan

**Table of Contents**

I. Statement of the Case ................................................................................................................1

II. Argument ..................................................................................................................................3

        The Court Should Order the Government to Provide a Bill of Particulars Because the Allegations are Insufficient to Permit Mr. Shkreli to Adequately Prepare for Trial ................................................................3

        A. Legal Standard ................................................................................................3

        B. The Indictment Fails to Provide Information Necessary to (1) Prepare to Defend These Charges, (2) Avoid Unfair Surprise and (3) Invoke Double Jeopardy Protection ....................................................................5

            1. MSMB Capital .................................................................................5

            2. MSMB Healthcare ...........................................................................8

            3. Retrophin ..........................................................................................9

III. Conclusion ..............................................................................................................................11

**Table of Authorities**

**Cases**

United States v. Barret, 824 F. Supp. 2d 419, 438 (E.D.N.Y. 2011)..............................................3

United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987) (per curium) ...........................3, 4

United States v. Chen, 378 F.3d 151, 162-63 (2d Cir. 2004) .........................................................3

United States v. Walsh, 194 F.3d 37, 47 (2d Cir.1999)..................................................................3

United States v. Barnes, 158 F.3d 662, 665-66 (2d Cir. 1998).......................................................3

United States v. Cephas, 937 F.2d 816 (2d Cir. 1991) ...................................................................3

United States v. Bin Laden, 92 F. Supp. 2d 255, 233-34 (S.D.N.Y. 2000) .....................................3

United States v. Kahale, 789 F. Supp. 2d 359, 373 (E.D.N.Y. 2009).........................................4, 8

United States v. Graham, 477 F. App'x 818 (2d Cir. 2012)............................................................4

United States v. Davidoff, 845 F.2d 1151, 1154 (2d Cir. 1988)..................................................4, 5

United States v. Bonventre, 646 F. App'x 73, 78-79 (2d Cir. 2016) ..............................................4

United States v. Rigas, 490 F.3d 208, 237 (2d Cir. 2007)..............................................................4

## STATEMENT OF THE CASE

While the government has provided a substantial amount of discovery in this case far in advance of trial, it remains unclear, to this day, how the government intends to prove the allegations against Martin Shkreli. Mr. Shkreli is charged in an eight count indictment covering three companies he founded between 2009 and 2014. The first six counts of the indictment allege Mr. Shkreli committed securities fraud, conspiracy to commit securities fraud, conspiracy to commit wire fraud in connection with two hedge funds he founded, MSMB Capital and MSMB Healthcare. According to the indictment, Mr. Shkreli made material misrepresentations and omissions about the performance of the funds and assets under his management, as well as the retention of a fund administrator and independent auditor. He is also accused of preventing investor redemptions.

The seventh count and eighth counts allege wire fraud in connection with Retrophin, the pharmaceutical company Mr. Shkreli founded. These counts relate to actions Mr. Shkreli took as Chief Executive Officer of Retrophin and actions Evan Greebel took as counsel to Retrophin. Count seven alleges Mr. Shkreli, on behalf of Retrophin, entered into settlement agreements and "sham" consulting agreements, thereby defrauding Retrophin. (Superseding Indictment ("Indictment") ¶¶ 21, 26-35). Count eight alleges that Mr. Shkreli and Mr. Greebel conspired to enable Mr. Shkreli to control more than the permitted five percent of Retrophin's free-trading/unrestricted shares. The government contends Mr. Shkreli granted unrestricted shares to seven employees/contractors who transferred, or did not transfer, those shares as instructed by Mr. Shkreli. They argue some of these shares were transferred to fulfill settlement agreements that Mr. Shkreli entered into with former MSMB Capital and MSMB Healthcare investors. (Indictment ¶¶ 36-40).

The indictment lacks adequate information to effectively prepare for trial and avoid unfair surprise. Given the massive volume of discovery in this case, particulars are necessary to prepare a defense to all charges. For the defense to respond to the MSMB Capital and MSMB Healthcare fraud allegations, the government must disclose specifically: which investor(s) allegedly received material fraudulent information; what specific statements said to that investor(s) constitutes a misrepresentation or omission; and how and when those statements were communicated (via email, telephone, text or other form).

As for the allegations related to Retrophin, the government has provided millions of pages of discovery but has not identified which settlement and consulting agreements Mr. Shkreli used to defraud Retrophin. To properly defend against the fraud allegations, Mr. Shkreli must know the specific investor settlements the government believes resulted in a fraud on Retrophin and which consulting agreements were "shams." Regarding count eight, this Court should compel the government to disclose the following: the names of Retrophin employees that were allegedly granted shares, and of those employees, who the government will contend were controlled by Mr. Shkreli; which transfers were made by which employee at Mr. Shkreli's behest and if those transfers were executed, when they were executed. Additionally the government should disclose if any employees were prevented from trading the unrestricted shares by Mr. Shkreli, if so, when and how Mr. Shkreli prevented the transfer.

## ARGUMENT

## THE COURT SHOULD ORDER THE GOVERNMENT TO PROVIDE A BILL OF PARTICULARS BECAUSE THE ALLEGATIONS ARE INSUFFICIENT TO PERMIT MR. SHKRELI TO ADEQUATELY PREPARE FOR TRIAL

**A.    Legal Standard**

As this Court noted in United States v. Barret, 824 F. Supp. 2d 419, 438 (E.D.N.Y. 2011), a Bill of Particulars is appropriate pursuant to "Federal Rule of Criminal Procedure 7(f) in order to (1) identify with sufficient particularity the nature of the charge pending against [a defendant], thereby enabling defendant to prepare for trial; (2) to prevent surprise; and (3) to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." citing United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987) (per curium) (internal quotation marks removed).  The district court has discretion to grant a bill of particulars. United States v. Chen, 378 F.3d 151, 162-63 (2d Cir. 2004) citing United States v. Walsh, 194 F.3d 37, 47 (2d Cir.1999); United States v. Barnes, 158 F.3d 662, 665-66 (2d Cir.1998).  "So long as the defendant [is] adequately informed of the charges against him and [is] not unfairly surprised at trial as a consequence of the denial of the bill of particulars, the trial court has not abused its discretion." United States v. Cephas, 937 F.2d 816 (2d Cir. 1991) (internal citations and quotes removed).

The "government does not fulfill its obligation merely by providing mountains of documents to defense counsel who [a]re left unguided as to which documents" are relevant. Bortnovsky, 820 F.2d at 574-75; United States v. Bin Laden, 92 F. Supp. 2d 255, 233-34 (S.D.N.Y. 2000) ("[I]t is no solution to rely solely on the quantity of information disclosed by the government; sometimes, the large volume of material disclosed is precisely what necessitates

3

a bill of particulars."). Given the massive volume of discovery in this case, particulars are necessary to allow Mr. Shkreli to identify the allegations of fraud.

Mr. Shkreli's request for a bill of particulars is not an improper effort to obtain a preview of the government's evidence. In United States v. Kahale, this Court acknowledged that the complexity of certain fraud cases often weighs in favor of greater disclosure. 789 F. Supp. 2d 359, 373 (E.D.N.Y. 2009), aff'd sub nom. United States v. Graham, 477 F. App'x 818 (2d Cir. 2012). This Court's decision in Kahale also recognized that "[w]here, as here, the acts which form the basis of the charges may outwardly appear to be legitimate business communications, there is a greater potential for confusion over what precisely the government intends to prove at trial and a concomitant greater need to identify with some particularity the 'others' who are referred to in the Indictment so that defendants can adequately prepare for trial." Id. (footnote omitted).

There is precedent in this Circuit for granting a bill of particulars in similar circumstances as this case. In United States v. Davidoff, 845 F.2d 1151, 1154 (2d Cir. 1988), the Circuit found that it was "simply unrealistic to think that a defendant preparing to meet charges of extorting funds from one company had a fair opportunity to defend against allegations of extortions against unrelated companies, allegations not made prior to trial." See also Bortnovsky, 820 F.2d at 574-75 (noting indictment alleged merely that defendants submitted false claims for burglary and fire loss, without specifying dates of staged burglaries or which of "some 4,000 documents" were fraudulent); but see United States v. Bonventre, 646 F. App'x 73, 78-79 (2d Cir. 2016) (noting that "the district court adequately addressed concerns [that the volume of discovery warranted particulars] by ordering early identification of prosecution exhibits and the defendants to whom they pertained." citing United States v. Rigas, 490 F.3d 208, 237 (2d Cir. 2007)).

4

Mr. Shkreli finds himself in a similar situation as the defendant in <u>Davidoff</u>, who was left to prepare for trial without the government specifying which companies it would prove he allegedly extorted. Here, Mr. Shkreli is accused of misappropriating funds, yet is unaware of which transactions the government alleges as theft. He is accused of securities fraud, yet is unaware which investors were allegedly deceived and which statements the Government contends are misrepresentations and/or omissions. While the Government has produced voluminous discovery, Mr. Shkreli has scarce information about which of his actions are allegedly criminal. Accordingly, to prevent unfair surprise, to allow adequate preparation for trial, and to permit invocation of double jeopardy protection, the Court should order the government to provide the particulars requested by Mr. Shkreli.

**B. The Indictment Fails to Provide Information Necessary to (1) Prepare to Defend These Charges, (2) Avoid Unfair Surprise and (3) Invoke Double Jeopardy Protection**

**1. MSMB Capital**

The indictment accuses Mr. Shkreli of securities fraud, conspiracy to commit securities fraud and conspiracy to commit wire fraud in relation to MSMB Capital and MSMB Healthcare. Counts one through six lack the specificity required for Mr. Shkreli to prepare a defense and to be protected from Double Jeopardy. The government has produced millions of documents but has only identified a handful of emails containing the alleged misrepresentations or omissions relevant to counts one through six. Paragraph forty-three discusses eleven emails as overt acts but they relate only to two unidentified investors, "Investor 1" and "Investor 2;" paragraph fifty identifies five emails as overt acts, but again, the emails relate to only two unidentified investors, "Investor 3" and a "sophisticated investor." (Indictment ¶ 45 (b), (d)). In paragraph eight, the indictment alleges Mr. Shkreli, together with Co-Conspirator 1, misled potential investors about

MSMB Capital, and therefore induced four investors to contribute $700,000 to the fund during a fifteen month-long period. (Indictment ¶ 8). The government fails to specify what conduct by Mr. Shkreli induced four investors to contribute the $700,000 to the fund; these allegations in paragraph eight span over a year time period but the government has not identified the documents which contain false misrepresentations. Mr. Shkreli cannot adequately prepare for the allegations set forth in this paragraph.

Furthermore, paragraph ten glosses over the identities of the other three investors who sent a total of $1,000,000 to MSMB Capital. The indictment does not specify the amounts invested by each of those three individuals (or institutions), nor does it state the misrepresentations and omissions Mr. Shkreli allegedly made to induce the investments. Moreover, it alleges an additional unidentified four investors, for a total of eight, invested $3,000,000.00 in MSMB Capital. With respect to the allegation in this paragraph, the government has not specified the documents in which Mr. Shkreli allegedly made false misrepresentations to these investors, nor have they specified the alleged misrepresentations that Mr. Shkreli made. In addition, Mr. Shkreli does not know whether the government contends that all eight were defrauded, or just the first four investors discussed in paragraph nine.

This Court should compel the government to identify each investor and specify each transaction induced by Mr. Shkreli's alleged misrepresentations and omissions. Those alleged misrepresentations and transactions form the *corpus delecti* of the alleged fraud in counts one through three. The government should disclose the identities of each of the purported investor "victims" along with the misrepresentations they allegedly relied upon.

With respect to the allegation in paragraph twelve that Mr. Shkreli spent "months" fabricating performance updates to the Capital Limited Partners, the government has failed to

disclose the dates, times, and documents that contain alleged fabrications. The government has alleged the fraud continued for months, yet have identified only three emails—one from April, one from November, and one from January—as alleged misrepresentations. If the government does not specify the evidence of alleged fabricated performance updates or specify the fraudulent information in those documents, Mr. Shkreli cannot adequately prepare for trial.

In addition, paragraph thirteen of the indictment alleges that Mr. Shkreli withdrew and spent more than $200,000 from MSMB Capital during the life of the fund and that this amount exceeded legitimate fees. If the government intends to introduce any evidence of this alleged misappropriation, the government must specify if it is introducing such evidence to support the conspiracy to commit securities fraud as it relates to MSMB Capital, the wire fraud as to MSMB Capital, or the securities fraud as to MSMB Capital. Further, Mr. Shkreli is unaware of what spending the government is referencing; if the government seeks to prove he misappropriated partnership funds, then the government should be compelled to identify the alleged illegitimate spending transactions. Those transactions should be identified by date, transaction number, banking institution, payor and payee.

With respect to the allegations in paragraph fifteen that Mr. Shkreli wrote an allegedly false email to the Capital Limited Partners stating they have "just about doubled their money net of fees," the government has failed to identify the evidence which would indicate that all MSMB Capital investors had lost their investments. The government has failed to disclose which investors lost their money and how much money they allegedly lost. Without knowledge of this evidence, Mr. Shkreli cannot prepare for allegations that this statement was a material misrepresentation.

2. **MSMB Healthcare**

Likewise, counts four, five and six, alleging securities fraud, conspiracy to commit securities fraud and conspiracy to commit wire fraud in relation to the operation of MSMB Healthcare, lack the necessary specificity for Mr. Shkreli to prepare a defense. Regarding the allegations in paragraph sixteen that Mr. Shkreli, *inter alios*, solicited investments in MSMB Healthcare from potential investors based on material misrepresentations and omissions about Mr. Shkreli's past performance as a portfolio manager, the government has failed to specify how Mr. Shkreli concealed his past performance to these investors. This paragraph alleges that thirteen individuals invested a total of approximately five million dollars in MSMB Healthcare, but only gives an example of one investor—"Investor 3." (Indictment ¶ 16). This paragraph fails to allege whether Mr. Shkreli misrepresented his past performance to all thirteen investors or only Investor 3. This paragraph of the indictment illustrates this Court's point in Kahale; there is "potential for confusion over" what the government contends Mr. Shkreli did that concealed his past performance as a fund manager. The government must clarify details of which investors claim misrepresentations were made.

Additionally, in paragraph seventeen, the indictment alleges Mr. Shkreli told "Corrupt Employee 1" to misrepresent assets under management to a potential investor in MSMB Healthcare. Without identifying the employee, the method of communication, or the investor, it is not possible for Mr. Shkreli to know what statements he may have made that could be considered misleading or could prompt an employee to make misrepresentations.

In paragraph nineteen, the indictment alleges Mr. Shkreli withdrew funds from MSMB Healthcare in excess of the one percent fee permitted by the partnership agreement. If the government intends to introduce any evidence of this alleged misappropriation, then the

government must specify if it is introducing such evidence to support the conspiracy to commit securities fraud as to MSMB Healthcare, the wire fraud as to MSMB Healthcare, or the securities fraud as to MSMB Healthcare. Additionally, Mr. Shkreli does not know which financial transactions are at issue. The allegations do not include a dollar amount, and it is not clear whether he allegedly misappropriated a single transaction or numerous transactions. The government should identify the spending transactions that it contends are not legitimate. Those transactions should be identified by date, transaction number, banking institution, payor and payee.

### 3.    Retrophin

Count seven of the indictment alleges that certain settlement agreements Mr. Shkreli executed as Chief Executive Officer of, and on behalf of, Retrophin were fraudulent because they intended to resolve financial obligations that MSMB Capital, MSMB Healthcare and Mr. Shkreli owed. (Indictment ¶¶ 26-30). The government must identify the settlement agreements and the parties to those agreements. Paragraph twenty-two alleges Mr. Shkreli began using MSMB Healthcare funds to invest in Retrophin and solicited investments in Retrophin using money from misled investors. The government does not disclose with any specificity any evidence to prove Mr. Shkreli was actually using MSMB Healthcare funds to invest in Retrophin. Furthermore, it does not disclose the fraudulent aspect of the alleged MSMB Healthcare investment in Retrophin.

The consulting agreements Mr. Shkreli entered into as Chief Executive Officer of Retrophin are alleged to be "shams." (Indictment ¶¶ 31-40). Like countless start-up businesses, in an effort to keep overhead obligations low, Mr. Shkreli relied heavily upon many consultants to build Retrophin, and it is ambiguous which consulting agreements form the basis of these

charges. This Court should compel the government to identify any consulting agreements and all parties to such agreements that constitute "sham" agreements.

As to count eight and the allegations that Mr. Shkreli controlled more free-trading shares than permitted under the SEC regulations, Mr. Shkreli cannot adequately prepare to defend the allegations if he does not know exactly which employees the government believed he controlled and exactly which share transfers those employees may have executed at his direction. The indictment itself only identifies one potential transfer of 100,000 unrestricted shares by Co-Conspirator 1 to Investor 1. The government must disclose whether that transaction was actually executed, and when it was executed. The indictment does not identify any other transaction by an employee who received unrestricted shares. The government must disclose whether it contends that other transactions involving unrestricted shares resulted from Mr. Shkreli's directives to employees, and whether any contemplated transactions were not completed due to Mr. Shkreli's directives.

## CONCLUSION

For the foregoing reasons, Mr. Shkreli's ability to adequately prepare for trial requires the government to disclose all of the particulars requested. Defendant Martin Shkreli respectfully urges the Court to grant all the relief requested herein, and any other relief the Court deems to be just and proper.

Dated: September 16, 2016
       New York, New York

                                    Respectfully submitted,

By:   Benjamin Brafman
        Andrea Zellan
        Marc Agnifilo
        Jacob Kaplan
        Brafman & Associates, P.C.
        767 3rd Avenue, 26th Floor
        New York, NY 10017