590 Madison Avenue, 20th Floor, New York, NY  10022-2524  ▪ p212 223-4000 ▪ f212 223-4134



Glen G. McGorty
(212) 895-4246
Gmcgorty@crowell.com

December 2, 2016

**VIA ECF AND E-MAIL**

Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

        Re:    **United States v. Martin Shkreli**
                  15 Cr. 637 (KAM)

Dear Judge Matsumoto:

      We write on behalf of our client Marek Biestek in response to the Court's November 30, 2016 Order related to attorney-client privilege issues arising from certain documents in the possession of Katten Muchin Rosenman LLP ("Katten Muchin") related to MSMB Capital Management LP, MSMB Capital Management LLC, MSMB Healthcare LP, or its related entities ("MSMB Entities"). For the reasons contained herein, Mr. Biestek respectfully asserts attorney-client privilege over potentially privileged attorney-client communications contained within documents relating to the MSMB Entities.

      As an initial matter, I deeply and profusely apologize to the Court for not appearing at the Court's November 22, 2016 conference. I did not correctly understand that I had to appear on behalf of Mr. Biestek, who was not identified in the Court's November 8, 2016 Order. Further, based upon the "meet-and-confer" conference ordered by the Court, it appeared we had resolved any issue relating to Mr. Biestek. I understood that no party was going to seek or claim a waiver of the privileges of the MSMB Entities and no one had asked Mr. Biestek for his position on a potential waiver. Mr. Shkreli's counsel never said he was going to waive the privileges of the MSMB Entities, and, in the meet-and-confer, indeed indicated he would not do so. Mr. Biestek had no objection to Mr. Shkreli's review of the privileged materials of the MSMB Entities in Katten Muchin's possession without disclosure to any third parties; and there was no dispute on the meet-and-confer call among all participants that Mr. Shkreli had a right to review the purely MSMB Entities-related information without disclosure to any third parties.

### Marek Biestek, MSMB Capital Management LP, and MSMB Capital Management LLC

In or about September 2009, defendant Martin Shkreli asked his college friend Marek Biestek to join him as a founding partner in MSMB Capital Management LP and MSMB Capital Management LLC.[1] As indicated in the attached incorporation documents, MSMB Capital Management LP was originally incorporated by Mr. Biestek (at the instruction of Mr. Shkreli) as its sole owner and operator. On a practical basis, Mr. Biestek's role in the early months of the company was to advise Mr. Shkreli on portfolio management and trading decisions, but by the end of 2009, Mr. Biestek had transitioned primarily to more of an analyst offering support to Mr. Shkreli's management of the company's funds and solicitation of investors, a responsibility which Mr. Biestek did not share. Over time, Mr. Biestek would fulfill certain administrative tasks at Mr. Shkreli's direction, including the filing of various forms, such as the original incorporation documents.

### Procedural History

As the Court is aware, Mr. Biestek is not a party in this case, although he has previously provided testimony to the U.S. Securities and Exchange Commission in connection with its investigation on June 18, 2014. On November 9, 2016, we were advised by Counsel that the Court had ordered the parties in this case, as well as others including former counsel for the MSMB Entities and counsel for Retrophin, to participate in a meet-and-confer conference. More specifically, we were advised by counsel that Katten Muchin, which, to our knowledge, represented at a minimum MSMB Capital Management LP through in or about 2014, possessed certain MSMB-related documents which Mr. Shkreli sought in connection with his criminal defense in this matter. We were asked to participate in the meet-and-confer conference and did so. During that meet-and confer discussion, we were asked a single question: whether or not Mr. Biestek, by virtue of his role with at least MSMB Capital Management LP and MSMB Capital Management LLC, intended to invoke privilege over the MSMB-related documents so as to prevent Mr. Shkreli from receiving the documents to aid in his defense.

As we stated to counsel during our meet-and-confer conference and as referenced in Mr. Shkreli's November 16, 2016 letter to the Court, based upon Mr. Biestek's role relative to Mr. Shkreli at the MSMB Entities, we did not believe that Mr. Biestek could bar Mr. Shkreli from obtaining access to documents relating to the MSMB Entities. Accordingly, we indicated that Mr. Shkreli should be given access to the documents by Katten Muchin.

We also made clear in that call, however, that Mr. Shkreli's access to these privileged documents should *not* be construed in any way as a privilege waiver by Mr. Biestek as to production to any third party. Mr. Biestek does not possess these documents nor have we seen these documents, so while we were attempting to aid in the resolution of the issue as to whether Mr. Shkreli could obtain the privileged documents, we could not and did not blindly waive Mr. Biestek's potential privilege over them.

Moreover, during the meet-and-confer conference, Mr. Shkreli, through counsel, made it clear that it was also his intention *not* to waive any privilege he may have with respect to these documents. Thus, from Mr. Biestek's point of view, there was no continuing issue, and his limited role in this matter

---

[1] The facts here relating to the MSMB Entities are based on, among other things, my review of documents, discussions with counsel for witnesses, and Mr. Biestek's prior testimony before the Securities and Exchange Commission.

had concluded. I confirmed with all counsel, including the Government, whether anyone believed our appearance at the November 22, 2016 conference was necessary in light of this, and no one indicated a belief that our appearance in Court was needed or expected by Your Honor.[2] Had we any reason to have believed that was the case, we would have been there. Once again, I profusely apologize to the Court for not being there.

We read Mr. Shkreli's November 16, 2016 letter to the Court ("November 16, 2016 Shkreli Letter") and reviewed an earlier draft prior to filing. It states:

> Counsel for Mr. Biestek indicated that he was not asserting any privilege that would prevent disclosure to Mr. Shkreli because Mr. Biestek's position in the MSMB entities was subordinate to that of Mr. Shkreli. ***Mr. Biestek retains his privilege, however, in regard to any other third party disclosure.***

November 16, 2016 Shkreli Letter at p. 2 (emphasis added). Granted, as the Court points out, the following sentence, "Accordingly, counsel for Mr. Biestek stated that Mr. Biestek is not in a position to assert any such privilege and does not do so" should have been either removed or amended to include ". . . with respect to production of the documents to Mr. Shkreli." While this sentence does confuse the issue, the position expressed in the meet-and-confer and in the preceding sentence was understood by all parties to be clear: Mr. Biestek was *not* waiving privilege as to disclosure to third parties, certainly without having possession of or at least reviewing the documents to even determine what is contained therein.

What transpired at the November 22, 2016 conference was unexpected. Through counsel, Mr. Shkreli indicated, not only that Mr. Biestek was waiving all privilege but, despite his clear position to the contrary during the meet-and-confer, that he also intended to waive privilege over these documents permitting them to be released to third parties.[3] When I learned of this statement, I immediately contacted counsel. Both Mr. Shkreli and the Government submitted letters on November 23, 2016, attempting to clarify this issue. Mr. Shkreli retracted his erroneous assertion that Mr. Biestek had waived his attorney-client privilege as to these documents, and while the Government acknowledges that Mr. Biestek had clearly indicated he was not waiving privilege, it now objects to his standing to assert it. Specifically, the Government wrote in its November 23, 2016 letter to the Court: "While the government agrees that defendant Shkreli can validly assert and thus waive attorney-client privilege for these documents, the government does not agree that Biestek can validly assert a privilege over these documents." November 23, 2016 Government Letter at p. 1.

---

[2] We note that we do not represent, and have never represented, the MSMB Entities. To the best of our knowledge, the last legal counsel to the MSMB Entities, and potentially only MSMB Capital Management LP, was the law firm of Katten Muchin. Based on our understanding, we do not believe the documents in Katten Muchin's possession would include communications related to the other MSMB Entities, but only MSMB Capital Management LP, and MSMB Capital Management LLC, the entities for which Mr. Biestek was a signatory corporate officer.

[3] We will not endeavor to speak for Mr. Shkreli, but it appears that counsel for Mr. Shkreli may have simply misspoken with respect to these waivers. We expect he will address this directly with the Court. Should, after a document review, Mr. Shkreli ultimately decide to waive privilege, but after his own review, Mr. Biestek elects not to, we would respectfully request an opportunity to brief that issue. Preliminarily, there appears to be ample support in the case law to suggest that, in such circumstances, both individuals may need to waive privilege for the documents to be disclosed to a third party.

### The Court's November 30, 2016 Order

In its November 30, 2016 Order, the Court requests of Mr. Biestek a letter that (i) clarifies the forms under which the MSMB Entities were formed and operated (*i.e.*, corporation, partnership, LLC or other forms); (ii) identifies the individual(s) authorized to act for each MSMB entity including, but not limited to, asserting the attorney-client privilege; (iii) clarifies whether the MSMB Entities are operational or defunct and, where applicable, the dates on which the MSMB Entities ceased operations or became defunct; (iv) clarifies whether Mr. Biestek is asserting the attorney-client privilege on his own behalf and/or as an authorized representative of the MSMB Entities; (v) provides factual and legal authority for the assertion of any such privilege by Mr. Biestek on behalf of himself or the MSMB Entities; and (vi) specifies the categories of documents for which the attorney-client privilege is being asserted.

As to (i), Mr. Shkreli directed Mr. Biestek to fill out the relevant incorporation forms to establish MSMB Capital Management LP and MSMB Capital Management LLC. Those forms are attached hereto as Exhibit A. As referenced above, it established Mr. Biestek as the company's sole corporate officer.

As to (ii) and (v) of the Court's inquiries, we believe that both Mr. Shkreli and Mr. Biestek are authorized to act on behalf of at least MSMB Capital Management LP and MSMB Capital Management LLC. It is well-established that individuals as well as corporations are entitled to assert the corporate attorney-client privilege. *See Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 348, 85 L. Ed. 2d 372, 105 S. Ct. 1986 (1985) (addressing the question of who may waive corporate privilege and holding that the power to waive the corporate attorney-client privilege "rests with the corporation's management and is normally exercised by its officers and directors."); *Upjohn Co. v. United States*, 449 U.S. 383, 386, 66 L. Ed. 2d 584, 101 S. Ct. 677 (1981). There is no dispute that Mr. Shkreli was authorized to act on behalf of the MSMB Entities, as he was in charge of all operations of each MSMB Entity. There also can be no dispute that the incorporation documents for MSMB Capital Management LP establish that Mr. Biestek was a corporate officer which authorized him to act on behalf of the company, even if Mr. Shkreli maintained complete control on a daily basis. Thus, here, the power to waive the privilege extends to Mr. Biestek as one of only two co-founders of MSMB Capital Management LP, and as the individual who executed the incorporation documents as a General Partner and sole owner and operator.[4]

As to (iii) of the Court's inquiries, Mr. Biestek is unaware of the current legal status of any of the MSMB Entities. As Mr. Biestek's counsel, we have never represented any of the MSMB Entities, so we also have no independent information in this regard. Based on what we have learned, it appears that the interrelationships between MSMB Capital Management LP, the other MSMB Entities, and even Retrophin in its early stages are indeed complicated and interrelated; for example, we understand that there was substantial commingling of assets among the MSMB Entities and Retrophin. We do not believe, however that the question of Mr. Biestek's standing to assert privilege rests on the legal status of the MSMB Entities, in particular since the Government has already agreed that Mr. Shkreli has standing

---

[4] In its November 23, 2016 letter, the Government suggests that this position is counterfactual to its understanding of Mr. Biestek's subordinate role, as per prior statements of Mr. Biestek directly and through counsel. It is not. Mr. Biestek's official role as a corporate officer as per the incorporation documents gives him the authority to act on behalf of the company, meeting the threshold necessary to potentially assert the corporate privilege. That is a different issue from his participation in and control of the day-to-day operations of the company, and more importantly here, it is distinct from participation in and knowledge of Mr. Shkreli's alleged activities central to this prosecution.

to assert the privilege. *See* November 23, 2016 Government Letter at p. 1. Thus, the issue before the Court is whether Mr. Biestek has a simultaneous right to assert the privilege as to potential attorney-client communications alongside Mr. Shkreli, despite his acknowledged subordinate role within the MSMB Entities.

The Court has asked us in (vi) of its inquiries to identify the categories of documents for which Mr. Biestek asserts the privilege. While it is our position that Mr. Biestek has standing to assert the privilege on behalf of MSMB Capital Management LP and MSMB Capital Management LLC, ultimately Mr. Biestek's right to preserve (and not waive) the privilege as set forth in this letter is theoretical. It is difficult to identify these categories since we do not possess the documents at issue and have not had the opportunity to review them. We assume that the documents may contain privileged communications between Katten Muchin and MSMB employees (whether Mr. Shkreli, Mr. Biestek, or others) over which the company – and Messrs. Shkreli and Biestek as officers – would concurrently retain the privilege.

In the corporate context, under *Upjohn*, the attorney-client privilege extends not only to communications between counsel and officers of a corporation, but even to communications between counsel and lower-level employees. *Upjohn Co. v. United States*, 449 U.S. at 391 (noting that "[i]n the corporate context, however, it will frequently be employees beyond the control group…who will possess the information needed by the corporation's lawyers."). *See also Lugosch v. Congel*, 218 F.R.D. 41, 47 (N.D.N.Y. 2003) (following *Upjohn* and holding that "statements made by employees, of any station or level within a corporation or a sophisticated business structure, to an attorney or the attorney's agent which were done in confidence and outside the purview of others are protected."). Thus, under *Upjohn*, confidential communications between corporate employees and counsel about matters within the scope of their employment, and made for the purpose of enabling counsel to provide legal advice to the corporation, fall within the scope of the corporate attorney-client privilege. And, under *Upjohn*, these privileged communications are not limited to communications between counsel and those who play a substantial role in deciding and directing a corporation's actions. *Id.* at 394-95. Here, therefore, we believe the relevant category of documents would include all communications between MSMB employees – including Mr. Biestek – and counsel, seeking or receiving legal advice on behalf of MSMB Capital Management LP and MSMB Capital Management LLC; they are all arguably privileged, and, under *Weintraub*, that privilege may be rightfully asserted by Mr. Biestek, as a corporate officer.

The fact that we have not seen these documents also makes it difficult to address the Court's query in (iv) as to whether we are also asserting the privilege on behalf of Mr. Biestek personally. The documents could include communications for which Mr. Biestek may have a personal privilege to assert if, for example, he received individualized legal advice over his MSMB e-mail. As a result, we submit that Mr. Biestek, as an officer who has the right to assert the corporate privilege, is entitled, at minimum, to review the documents in Katten Muchin's possession relating to the MSMB Entities in order to determine whether he will continue to assert the privilege, either on behalf of MSMB Capital Management LP or himself personally.

### Conclusion

For the foregoing reasons, Mr. Biestek's status as a corporate officer – albeit one who had a limited role subordinate to Mr. Shkreli in the day-to-day operations of the company – gives him sufficient standing to assert the corporate privilege over any attorney-client communications contained within at least the MSMB Capital Management LP and MSMB Capital Management LLC documents in Katten Muchin's possession. We would be willing to review the putative MSMB documents to determine whether any privileged documents even exist (as well as whether there are any documents over which Mr.

Honorable Kiyo A. Matsumoto
December 2, 2016
Page 6

Biestek could invoke a personal privilege). Such a review would also permit Mr. Biestek an opportunity to consider intelligently waiving such privilege, something his counsel could never let him do without first reviewing the documents at issue. Given the privilege at stake here and that disclosure to third-parties could cause irreparable injury, if Your Honor is inclined to grant any Order disclosing these materials to a third party, we respectfully request that Your Honor stay such an Order pending Mr. Biestek's consideration of appellate review.

Of course, this entire inquiry is moot if Mr. Shkreli intends _not_ to waive privilege on the documents at this time, as he indicated during the meet-and-confer conference call.

If the Court requires any additional information or wishes to see the parties in another status conference, please advise us at Your Honor's convenience.

Sincerely,

Glen G. McGorty

CC:   All parties (Via ECF)
      Ian Shapiro, Esq., counsel for Retrophin, Inc. (via e-mail)
      Michael Verde, Esq., counsel for Katten Muchin (via e-mail)