# BRAFMAN & ASSOCIATES, P.C.

ATTORNEYS AT LAW

767 THIRD AVENUE, 26TH FLOOR

NEW YORK, NEW YORK 10017

TELEPHONE: (212) 750-7800

FACSIMILE: (212) 750-3906

E-MAIL: BBRAFMAN@BRAFLAW.COM

BENJAMIN BRAFMAN
————
ANDREA ZELLAN
JOSHUA D. KIRSHNER
JACOB KAPLAN
ALEX SPIRO

MARK M. BAKER
OF COUNSEL

MARC AGNIFILO
OF COUNSEL
ADMITTED IN N.Y. AND N.J.

December 5, 2016

<u>VIA ECF AND E-MAIL</u>

Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York   11201

Re.  <u>United States v. Martin Shkreli</u>
15 Cr. 637 (KAM)

Dear Judge Matsumoto:

I write to briefly supplement the letter Glen McGorty submitted December 2, 2016 (Dkt. 123), and to respond to the letter submitted earlier today by Ian Shapiro, counsel for Retrophin (Dkt. 124). I will address the letter submitted by counsel for Retrophin first.

1. <u>Retrophin's December 5, 2016 Letter</u>

In its letter from earlier today, Retrophin raised two primary points that will be addressed in order.  First, Retrophin, seeking essentially to reargue the Court's November 30th ruling, claimed that "Mr. Shkreli does not have the right to review communications covered by Retrophin's attorney-client privilege or work product privilege, even if he had once been an officer and director of Retrophin and a party to the communication." 12/5/16 Letter, p. 1. Second, "Retrophin objected to the suggestion that Katten's representation of Retrophin was so intertwined with its representation of MSMB and Shkreli that Katten cannot reasonably identify the

BRAFMAN & ASSOCIATES, P.C.

communications coming from Retrophin." Id. p. 2. As part of this second objection, Retrophin requests that the deadline for Katten to produce Shkreli-related communications from 2013 and 2014 be delayed until December 9, 2016[1], and that Shkreli's access to communications concerning four commercial products be further limited.

The undersigned conferred with Ian Shapiro, counsel for Retrophin, and we have agreed on some points and disagreed on others.  This will be set forth by topic below.

    A. Retrophin's Request To Re-Argue The Court's
       November 30th Ruling Concerning Mr. Shkreli's
       Access To His Communications

In the Court's November 30, 2016 ruling, the Court stated, "(t)he court notes that documents reflecting communications sent to or received by Mr. Shkreli, the MSMB Entities, Retrophin, Inc. and/or Retrophin LLC, have already been seen by Mr. Shkreli."  November 30, 2016 Court Order, Dkt. 120.  The Court then went on to state that "Mr. Shkreli is the individual best able to identify and segregate those documents that pertain" to himself and the other entities. Id.  In this manner, the Court advanced a practical, effective solution to a fairly complex legal conundrum that the parties were unable to solve.

In providing legal justification for its solution, the Court observed that Retrophin "has not provided any legal authority prohibiting the disclosure of documents to Mr. Shkreli," noting further that "the burden of establishing the existence of an attorney-client privilege, in all of its elements, rests with the party asserting it." United States v. Int'l Bhd of Teamsters, 119 F.3d 210, 214 (2d Cir. 1997).  In this regard, the Court noted that neither Retrophin, nor any other party raised a meaningful legal objection to the practical, effective solution advanced by the Court.

Retrophin's December 5, 2016 submission seeks to provide the legal authority, albeit after the fact, that was not provided in advance of the Court's ruling.  However, the arguments advanced in the letter are unavailing.  This case

---

[1] For the reasons stated below, counsel for Mr. Shkreli agrees with the modification proposed in Mr. Shapiro's letter that Paragraph (3)(a) of the Court's November 30, 2016 Order be modified to the extent that communications with Mr. Shkreli from 2013 and 2014 will be turned over on December 9, 2016, rather than December 6, 2016.  This will give the parties an additional three days to address certain specific concerns raised by Retrophin.

## BRAFMAN & ASSOCIATES, P.C.

involves a confluence of factors that distinguish it from Neogenix Oncology, Inc. v. Gordon, 2105 WL 5774171 (E.D.N.Y. Sept 29, 2015) and Fitzpatrick v. American Intern. Group, Inc., 272 F.R.D. 100, 108 (S.D.N.Y. 2010). First, this is a criminal case where the defendant, Martin Shkreli, is seeking his own communications in order to defend himself against criminal charges. Second, there is no dispute that Shkreli had regular communications with his attorneys about a wide variety of subjects, including the very matters charged by the Government as criminal in nature. Third, one of the lawyers he consulted most, Evan Greebel, has also been charged as being a co-conspirator, rather than a lawyer rendering advice in good faith.

Possibly the only way to defend against the criminal allegations here is for the communications between lawyer and client to be available to the defendants. This altogether appropriate result is made all the more sensible by the fact that Mr. Shkreli has already seen all of these communications, and has authored many of them.

The Court's November 30th ruling seeks to provide the parties with a practical solution, and it does so. Retrophin's December 5th letter, seeking essentially to reargue the Court's November 30th ruling, should not be considered by the Court.

### B. Intertwining of MSMB, Retrophin and Shkreli

Retrophin also revisits the issue of the intertwining in the legal representation of these parties. However, it does not introduce new facts or argue anything that should alter the Court's November 30th decision.

Nonetheless, as indicated above, Retrophin asks for two modifications of the prior order that seem reasonable to Mr. Shkreli and on which there is consent between the parties, subject of course to the Court's approval. First, Retrophin asks for a "December 9th deadline for Katten's disclosure of its communications with Mr. Shkreli for communications sent or received in 2013 and 2014. The undersigned has spoken with Ian Shapiro about this request and, on behalf of Mr. Shkreli, we agree. Therefore, while the communications from 2011 and 2012 will be disclosed consistent with the Court's November 30th Order, the communications from 2013 and 2014 will, subject to the Court's approval, be delayed until December 9, 2016.

## BRAFMAN & ASSOCIATES, P.C.

Retrophin also asks for a modification in regard to communications concerning specific commercial products. The parties discussed this issue earlier today as well, and Mr. Shkreli agrees to seek to accommodate Retrophin on this point. Because the enlargement of the period to turn over 2013 and 2014 communications would give the parties more time to discuss the particular concerns of Retrophin in this regard, the parties will attempt to fashion a more specific remedy in the coming days to address Retrophin's concern.

As a final point, Retrophin suggests that all the necessary distinctions between clients and matters can be made by reference to the billing records that were recently provided. We have not found that to be the case. But, we will continue to consult with Retrophin and our client in an effort to more sharply focus the necessary materials.

2. <u>Supplementing Mr. McGorty's Letter of December 2, 2016</u>

The second part of this letter seeks to clarify issues related to waiver of the attorney-client privilege by Mr. Shkreli and Mr. Biestek, and supplements Mr. McGorty's recent letter to the Court.

A. <u>The Meet-And-Confer</u>

Mr. McGorty is correct that during the meet-and-confer, the undersigned indicated that Mr. Shkreli was not waiving the attorney client privilege as to the MSMB documents, but was rather claiming ownership over those documents. In other words, during the meet-and-confer, Mr. Shkreli advanced the position that no party has a superior right of ownership than he does over these materials, and he accordingly was requesting to possess his own property.

In light of Mr. Shkreli's claim of ownership of the MSMB documents, Mr. McGorty stated that Mr. Biestek agreed that any interest Biestek has in the MSMB documents would be subordinate to that of Shkreli. As a result, Biestek had no objection to the MSMB documents being provided to Shkreli. However, Mr. McGorty was careful to state that while Biestek's interests were subordinate to Shkreli's, he was not waiving the attorney client privilege as to third parties.

# BRAFMAN & ASSOCIATES, P.C.

Following the meet-and-confer, the undersigned endeavored to reflect the positions of the various parties in my letter to the court of November 16, 2016, and believe I did so faithfully.

### B. The Court Appearance

Just after midnight on November 21, 2016, my wife and I were confronted with a dire medical emergency.  We left New York City in the middle of the night, and for several days, I was in a hospital in Albany consumed by this situation.  As a result, I was unable to appear in court on November 22nd, and I was unable to have sufficiently detailed conversation with my co-counsel concerning the substance of the meet-and-confer.  Accordingly, at the court appearance, counsel for Mr. Shkreli stated that both he and Biestek were waiving any attorney-client privilege. However, as noted, that was not the position advanced by Mr. McGorty at the meet-and-confer, nor was it the position of Mr. Shkreli.

Therefore, to the extent that a representation was made that Shkreli waived his privilege in the MSMB documents, we respectfully rescind such waiver, as that was not his stated position, nor the position that was advanced at the meet-and-confer.  However, the status of the waivers of Shkreli and Biestek concerning MSMB documents should not in any way alter the Court's November 30th ruling.

We thank the Court and all parties for the ongoing diligence and cooperation.

Respectfully submitted,

Marc Agnifilo

cc:     All parties (via ECF)
        Ian Shapiro (via email)
        Michael Verde (via email)
        Elizabeth Langdale (via email)
        Glen McGorty (via email)
        Arlen Pyenson (via email)