```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------x
UNITED STATES OF AMERICA,

                Plaintiff,        Docket No.:
                                  15 CR 637 (KAM)
        versus

MARTIN SHKRELI,                   U.S. Courthouse
                                  225 Cadman Plaza East
                Defendant.        Brooklyn, NY 11201
---------------------------------------x
                                  August 1, 2017
                                  9:00 a.m.

        Transcript of Criminal Cause for Trial

Before:   HONORABLE KIYO A. MATSUMOTO,
                        District Court Judge
          (and a jury.)

                        APPEARANCES

For the Government:     BRIDGET M. ROHDE, ESQ.
                        Acting United States Attorney
                        Eastern District of New York
                        271 Cadman Plaza East
                        Brooklyn, New York 11201
                   BY:  JACQUELYN M. KASULIS, ESQ.,
                        ALIXANDRA E. SMITH, ESQ.,
                        G. KARTHIK SRINIVASAN, ESQ.,
                        Assistant U.S. Attorneys

For the Defendant:      BRAFMAN & ASSOCIATES, P.C.
                        767 Third Avenue
                        New York, New York 10017
                   BY:  BENJAMIN BRAFMAN, ESQ.
                        MARC AGNIFILO, ESQ.
                        ANDREA ZELLAN, ESQ.
                        JACOB KAPLAN, ESQ.

Court Reporter:         MICHELE NARDONE, CSR
                        Official Court Reporter
                        Phone:  718-613-2601
                        Email:  Mishrpr@aol.com

Proceedings recorded by mechanical stenography.  Transcript
produced by computer-aided transcription.
```

MICHELE NARDONE, CSR - Official Court Reporter

USA v. Shkreli

1           (In open court.)

2           (Defendant present.)

3           THE CLERK:  All rise.

4           THE COURT:  So all our jurors are here, all alternates
5    are here.  So we are going to tell them they can deliberate,
6    rather than bring them out.

7           Have a seat, please.

8           I don't think there is any need, unless someone wants
9    me to, but I think they can start deliberating now that they
10   are all here.

11          MR. BRAFMAN:  Okay.

12          THE COURT:  We will order lunch for them, and you all
13   can feel free to stay within five minutes of the courthouse.

14          MR. BRAFMAN:  Thank you, judge.

15          MS. KASULIS:  Okay.  Thank you.

16          THE COURT:  Okay.  We will call you.

17          (Court in recess awaiting the verdict of the jury.)

18          (In open court.)

19          (Defendant present.)

20          (Court Exhibit 8 so marked.)

21          THE COURT:  All right.  All counsel are present, and
22   Mr. Shkreli is present.  We have marked as Court Exhibit
23   number 8 a juror note that asks three general questions.
24   First:  Do assets under management refer to a particular fund
25   being discussed or to all assets managed by the portfolio

MICHELE NARDONE, CSR - Official Court Reporter

1   manager slash general partner?  Second question:  Can we have a
2   legal definition of assets under management?  Third:  Can you
3   expand or elaborate your definition of fraudulent intent?
4          I think that what we should do is discuss how we would
5   like to respond.  I think my preference would be to respond to
6   the jurors in writing.  I would like the parties to confer, if
7   they wish to do so, to see if they can come to some agreement
8   as to how they might want to respond.
9          I do think also that there may be -- we will have to
10  check, but, as I recall, there might be a different definition
11  for fraudulent intent depending on the element that one must
12  prove for securities fraud versus wire fraud or -- and,
13  actually, we have got conspiracy to commit wire fraud, not
14  actual wire fraud.  So those may be some issues that are worth
15  discussing amongst the parties; and I'm happy to hear from you
16  after you have had a chance to discuss.
17         All right.  How much time would you like?
18         MR. BRAFMAN:  I don't know that we are ever going to
19  be able to come to an agreement, judge, to be honest with you.
20  I think we can try and discuss it, but it appears to me there
21  is no legal definition of assets under management in the case,
22  either in your instructions or in the evidence.
23         The legal definition that we are aware of that the SEC
24  has, we would be happy for you to give it, but it's not in the
25  case; and I don't know how you expand or elaborate with the

MICHELE NARDONE, CSR - Official Court Reporter

1    definition of fraudulent intent beyond what you have in your
2    charge because I think we worked pretty hard together and it's
3    in the charge.  I don't know what else you would tell them.
4             I think the answer to the first question is something
5    we stressed in summation, that Mr. Shkreli's statement of
6    assets under management in his mind could have included Josiah
7    Austin's money because the witness Yaffe testified that he
8    thought Martin was actually running his money, which was the
9    quote.  So we can come up with a suggestion that I don't think
10   the government would agree on, to answer the first question.
11            I think the second question, there is no legal
12   definition of assets under management in the case.
13            THE COURT:  Well, I doubt that the assets under
14   management definition would necessarily include the subjective
15   view of somebody who knows or understands something based on
16   conversations with an investor who may have some relationship
17   with a portfolio manager.  I think what we have to do is look
18   at this definition in the context of the case --
19            MR. BRAFMAN:  Yeah, but there is no definition in the
20   case.
21            THE COURT:  I'm speaking, sir, if you don't mind.
22            MR. BRAFMAN:  I'm sorry.
23            THE COURT:  We have to look at the context of the case
24   and how the term was used in relation to the MSMB Capital or
25   the MSMB Healthcare funds.  I would encourage you to look and

MICHELE NARDONE, CSR - Official Court Reporter

1   look at the context of how that term was used based on the
2   evidence and also see if you can discuss.  If you are telling
3   me now, Mr. Brafman, you don't think you can agree with the
4   government and you are not willing to discuss --
5           MR. BRAFMAN:  I'm willing to discuss it.
6           THE COURT:  Okay.  I think that would be best, if you
7   would discuss it and try to come to some understanding.
8           I am also open to helping the jurors better understand
9   fraudulent intent if our instructions alone were not
10  sufficient.  It appears that the instructions, I think, though
11  legally consistent with the law, may benefit from some further
12  clarification; and we can look to case law to do that, if
13  that's necessary.  I would prefer that the parties attempt, in
14  the first instance, to try to resolve this.
15          So how much time would you like to try to resolve
16  this?
17          MR. BRAFMAN:  Half hour?
18          MS. KASULIS:  Half hour.
19          THE COURT:  Half hour?
20          MR. BRAFMAN:  Fifteen minutes, half hour.
21          THE COURT:  We will let the jurors know -- well, they
22  will get an answer when they get an answer.  We won't respond
23  until we have one.  Okay.
24          MR. BRAFMAN:  Judge, just for clarification, forget
25  Mr. Yaffe for a moment.  The question, do assets under

1   management refer to a particular fund being discussed or to all
2   assets managed by the portfolio manager slash general partner,
3   I'm not certain we can substitute our understanding of what
4   Mr. Shkreli may have intended when he spoke to an individual
5   investor.  I don't know how you do that.
6              THE COURT:  Well, the second question asks for a legal
7   definition of assets under management.  There probably are
8   resources or even just documents within the record that would
9   give some context to assets under management with regard to the
10  particular funds at issue in this case.
11             MR. AGNIFILO:  I can shed some light on it.  The only
12  definition of assets under management that I saw is in
13  connection with someone who is applying to be an investment
14  adviser and there is actually -- there is guidance provided by
15  the SEC on how an investment adviser is to determine his or her
16  own assets under management, and there are two general
17  components.  One is, what do you have discretion over; and I
18  think what -- in the evidence, I think that's one of the
19  answers that Mr. Shkreli gave to the SEC, but then there is a
20  second part of it in the SEC definition, which is if you don't
21  have discretion over the trading are you in a position where
22  you are giving regular advice to someone on a selection of
23  stocks and you know that that person is following that advice
24  and you are playing some role in the -- in the amassing of
25  one's position or in the buying of someone's securities.

MICHELE NARDONE, CSR - Official Court Reporter

1  THE COURT: I think that may be so. With regard to
2  the view that Mr. Shkreli was referring to assets under
3  management vis-a-vis certain investors with whom he shared a
4  unique relationship, like Mr. Austin, he may have meant that in
5  one context; but in terms of his communications with investors
6  in the MSMB Healthcare and MSMB Capital funds, I think there is
7  another context in which that term was used. So I think what I
8  would like to do is to have some thought given to those two
9  different contexts.
10  Mr. Austin's relationship with Mr. Shkreli and
11  whatever advice Mr. Shkreli was giving Mr. Austin regarding the
12  Chelsea Pharmaceuticals is not part of the charge in this case.
13  I think what we are looking at are the two funds that are
14  charged in the indictment.
15  So I would encourage you to think about that and see
16  if you can come up with a definition and, if not, I will do my
17  best to make a decision after I hear from the parties. All
18  right?
19  MS. KASULIS: Yes.
20  THE COURT: Okay. Thank you.
21  (Court in recess awaiting the verdict of the jury.)
22  (In open court.)
23  (Defendant present.)
24  THE CLERK: All rise.
25  THE COURT: Hi. Have a seat, please. All right.

MICHELE NARDONE, CSR - Official Court Reporter

1    So do the parties want to be heard?

2    MR. BRAFMAN: Yes.

3    THE COURT: What I'm proposing to do is to provide a
4    response in writing. I think questions one and two are fairly
5    closely related, and I think question three can be separately
6    answered; but let's hear from the parties.

7    MR. BRAFMAN: Your Honor, we believe that the answer
8    to question two is no, there is no legal definition of assets
9    under management in the case. I think we agree on that.

10   MS. KASULIS: I think that's right, Your Honor. I
11   think they have to just look at the record as a whole before
12   them.

13   MR. BRAFMAN: With respect to question one, Your
14   Honor, there is an exhibit in the case, a government exhibit,
15   Exhibit 218, which has Martin Shkreli's statement to the SEC
16   about his understanding of what assets under management is.
17   I'm happy to hand up a copy to Your Honor; and, if you will
18   note, Your Honor, there was substantial questioning of Agent
19   Braconi. I have taken the liberty of highlighting it, judge.
20   There was substantial questioning of Agent Braconi, beginning
21   at page 4975, about this specific letter, trying to have Agent
22   Braconi understand whether he knew of any other definition for
23   assets under management. Each of those paragraphs was actually
24   presented to Agent Braconi in a question. That is the only
25   evidence that the jury has before it in this trial of

1   Mr. Shkreli's statement to the SEC as to what his understanding
2   of what assets under management is.
3            I think, judge, for us to try, after summations and
4   after the close of evidence, to give them a different
5   definition or to suggest to them that they focus on a specific
6   piece of testimony would be to undercut the only definition
7   that matters, which is Mr. Shkreli's understanding; and the
8   government, having the burden of proof, did not seek to
9   introduce any experts, did not seek to introduce any evidence
10  on the definition of assets under management.
11           And I think for the court to try and impose Your
12  Honor's understanding would be not fair now.  It should have
13  been something that we covered in the course of the trial,
14  especially when you have a government exhibit which lays out
15  very carefully how broadly Mr. Shkreli understood the term to
16  be.
17           MS. KASULIS:  Your Honor, just to be clear, we also
18  have testimony from Mr. Shkreli to the SEC.  It's Government
19  Exhibit 916, in which he states that he never had trading
20  discretion over Josiah Austin's money.  So instead, I think, of
21  pointing the jurors, Your Honor, to very particular exhibits
22  and then the attorneys making arguments from those exhibits, I
23  think what makes more sense is to just point them back to -- if
24  there are particular discussions that they are considering
25  assets under management being discussed, they should just

MICHELE NARDONE, CSR - Official Court Reporter

1   consider what asset under management meant in the course of
2   that discussion between the parties.
3        THE COURT:  Well, I will tell you, we have come up
4   with a proposal in response to the first two questions.  My
5   clerk will hand them out to you.
6        But, just to be clear, what I was going to propose
7   with regard to questions one and two is a simple statement that
8   says what Mr. Shkreli intended when he used the term assets
9   under management, or AUM, when he conveyed information
10  regarding the MSMB Capital and MSMB Healthcare funds to
11  potential investors and investors, the SEC, his employees, and
12  alleged co-conspirators is an issue in dispute for you, the
13  jury, to resolve.  It seemed to me to be the least, you know,
14  specific but really hopefully helpful and reminding them of
15  their role, that they are to look at those statements by the
16  defendant and other evidence in the record, including testimony
17  of investors, as to what they might have understood when he
18  made that statement; but, I think, you know, this gives the
19  jury a more holistic view of the trial record without
20  specifically identifying defining documents or testimony.
21       MS. KASULIS:  And, Your Honor, I think this is
22  acceptable to the government, and we very much appreciate Your
23  Honor giving us some proposals to send back to the jury.  Our
24  only proposal would be instead of MSMB Capital and MSMB
25  Healthcare funds to do an "or" there instead of an "and."

1    MS. SMITH:  And the reason for that was no investor
2 was pitched on both funds.  They were pitched on one fund or
3 the other fund.  There is absolutely no overlap between the
4 investors between those two funds, nor is there any overlap to
5 the pitch for those two funds in the record.
6    MR. BRAFMAN:  Your Honor, I have no objection to the
7 paragraph as drafted by the court.
8    THE COURT:  I can add your statement that there is no
9 legal definition of AUM in the case.
10    MR. BRAFMAN:  That's fine.
11    MS. KASULIS:  That's fine, with respect to the record
12 before them.
13    THE COURT:  We will have that.  We will put that
14 sentence at the beginning.
15    MR. BRAFMAN:  It should be "and," judge, because there
16 is overlap with Sarah Hassan.
17    MS. KASULIS:  No.  Sarah Hassan was only pitched on
18 MSMB Capital and then separately Retrophin, not MSMB
19 Healthcare.
20    MR. BRAFMAN:  Just give us a minute.  Your Honor, when
21 you are ready --
22    THE COURT:  I just want to move on to the third
23 question, unless we still have more to say about the first two
24 questions.
25    MS. KASULIS:  No.  This was actually what the

MICHELE NARDONE, CSR - Official Court Reporter

1  government was going to propose with respect to number three,

2  Your Honor, to just point them back to the specific pages, and

3  I think they are in fact the pages that the government had

4  proposed.  I think Your Honor actually has an even more

5  expansive page range for the second page range, which is

6  acceptable to the government.  So we believe this is an

7  appropriate answer to question three for the jury.

8            MR. BRAFMAN:  Your Honor, we can't just stop there.

9  You have to include good faith and reliance on counsel, which

10 is in paragraph -- part 79 and 80.  You can't just ignore that

11 part.  It's part of the court's charge whenever you talk about

12 intent.

13           THE COURT:  All right.  I'm sorry.  I thought we

14 had --

15           MR. BRAFMAN:  No.  You stopped at 62 to 68.

16           THE COURT:  So what else do you want to add?

17           MR. BRAFMAN:  79 is good faith, and 80 is reliance on

18 counsel.

19           MS. KASULIS:  79 through 81, I think.

20           MR. BRAFMAN:  79 through 81.

21           THE COURT:  All right.  We will print this, and you

22 can have a look, and if it's acceptable we will send this.

23           MR. BRAFMAN:  You are not bringing the jury out?

24           THE COURT:  Would you like me to?

25           MR. BRAFMAN:  Yes.

MICHELE NARDONE, CSR - Official Court Reporter

1       THE COURT:  Okay.

2       MR. BRAFMAN:  Okay.  Thank you.

3       THE COURT:  We will bring them out.

4       MS. KASULIS:  Your Honor, I think it's unnecessary.

5       MR. BRAFMAN:  I think it's necessary.

6       THE COURT:  I think he wants to see them.

7       MR. BRAFMAN:  Right.  I would like to see them.

8       THE COURT:  They are all there, trust me.

9       MR. BRAFMAN:  I understand they are all there.

10      THE COURT:  All right.

11      MR. BRAFMAN:  Your Honor, just for the record.

12      THE COURT:  Yes?

13      MR. BRAFMAN:  At page 1000 of Sarah Hassan, at this
14  time in May of -- I'm sorry.

15      "Can you please read this e-mail to the jury?

16      "Hi, Sarah.  Fred mentioned to Brent that Dynagrow
17  will not be able to invest directly to Retrophin due to
18  conflicts; however, I'm curious if Dynagrow would be willing to
19  invest in MSMB Healthcare, LP, our healthcare fund.  This would
20  go a long way in supporting the effort, but is clearly not a
21  direct investment.  Best, Martin.

22      "Was this the e-mail you were referring to previously?

23      "Answer:  Yes."

24      So Sarah Hassan was pitched on MSMB Healthcare.

25      MS. KASULIS:  That was actually Dynagrow and not Sarah

MICHELE NARDONE, CSR - Official Court Reporter

1  Hassan.  I think it is very clear from our record there is a
2  distinction between the two.  So I think "or" is appropriate.
3           MR. BRAFMAN:  There is no distinction in this record
4  between Dynagrow and Sarah Hassan.
5           THE COURT:  Well, I think what we are focusing in on
6  is situations where Mr. Shkreli referred to AUM in the context
7  of is there evidence that he talked to Ms. Hassan about MSMB
8  Healthcare.
9           MR. BRAFMAN:  I don't think so.  I don't want to press
10 that issue.  I'm more concerned with getting the charge on
11 intent to be inclusive of paragraphs 79 through 81 -- it's page
12 79 through 81, Your Honor.
13          THE COURT:  Yes, we have it.
14          (Pause.)
15          MS. KASULIS:  With respect to question three, I think
16 we want to make sure that all of the -- looks like securities
17 fraud slash securities fraud conspiracy, right, because I think
18 this --
19          THE COURT:  You want to add the word "and securities
20 fraud conspiracy"?
21          MS. KASULIS:  Yes, because all the counts are there.
22          MS. SMITH:  There are counts through eight.  One,
23 four, and eight relate to securities fraud conspiracy.
24          THE COURT:  So do you mind -- you don't want them
25 lumped together the way we have them, or if we add the word

1  securities fraud and securities fraud conspiracy, parentheses.
2          MS. KASULIS:  Correct.
3          MS. SMITH:  Because it is the same thing.
4          (Pause.)
5          THE COURT:  Do you want me to read the instruction to
6  the jury?
7          MR. BRAFMAN:  Yes.
8          MS. KASULIS:  Your Honor, you did ask for MSMB Capital
9  "or" MSMB Healthcare, not "and."
10         THE COURT:  One more time.  I will take that back.
11         MR. BRAFMAN:  No problem.
12         MS. KASULIS:  Sorry.
13         THE COURT:  We had it.  We forgot.
14         MR. BRAFMAN:  Could you tell them you are also going
15 to be sending in the response so they are not worrying about
16 taking notes.
17         THE COURT:  Yes, of course.  I'm going to read it to
18 them; and, once you do that, you can get them lined up, jurors
19 1 through 12 only.
20         THE CLERK:  Sure.
21         (Pause.)
22         THE COURT:  Is the revised 8A acceptable to the
23 government and the defense?
24         MS. KASULIS:  Yes, Your Honor.
25         MR. BRAFMAN:  Yes, Your Honor.  Thank you.

MICHELE NARDONE, CSR – Official Court Reporter

5634
USA v. Shkreli

1           THE COURT:  All right.  We will have the jury come in.
2    I will read these instructions, and then we will send them back
3    to deliberate.  Thank you.
4           (Pause.)
5           (Court Exhibit 8A so marked.)
6           (Jury enters at 3:21 p.m.)
7           THE COURT:  All jurors are present.  Please have a
8    seat, everybody.
9           The jurors sent out a note this afternoon, which we
10   have designated as Court Exhibit 8.  My response will be
11   designated as Court Exhibit 8A.  I will read you my response,
12   and I will also give you a copy for you to take back to the
13   jury room.
14          The question was as follows:  Do assets under
15   management refer to a particular fund being discussed or to all
16   assets managed by the portfolio manager slash general partner?
17   The second question was:  Can we have a legal definition of
18   assets under management?  And the third question was:  Can you
19   expand or elaborate your definition of fraudulent intent?
20          In response first to questions one and two, I advise
21   you as follows:  There is no legal definition of assets under
22   management, or AUM, in the record.  What Mr. Shkreli intended
23   when he used the term assets under management, or AUM, when he
24   conveyed information regarding the MSMB Capital or MSMB
25   Healthcare funds to potential investors and investors, the SEC,

MICHELE NARDONE, CSR - Official Court Reporter

1  his employees, and alleged co-conspirators is an issue in
2  dispute for you, the jury, to resolve.
3            Answer to question three.  Fraudulent intent is
4  defined separately for the counts relating to securities fraud
5  and securities fraud conspiracy -- that is, counts one, three,
6  four, six, and eight -- and conspiracy to commit wire fraud as
7  charged in counts two, five, and seven.  Please refer to the
8  elements and definitions in the jury instructions regarding
9  those counts at pages 33 through 42 for counts related to
10 securities fraud and securities fraud conspiracy, and pages 62
11 through 68 for counts related to conspiracy to commit wire
12 fraud.  Please also refer to pages 79 through 81 for
13 instructions relating to the defenses of good faith and
14 reliance on counsel.
15           With that, I will provide this to the jury, and you
16 may retire to the jury room.  We will also be happy to hear
17 from you again at 5:00 via note, if you are ready to be
18 dismissed somewhere between 5:00 and 5:30.
19           Thank you again for your service.
20           (Jury exits at 3:24 p.m.)
21           THE COURT:  All right.  We will keep you posted.
22           MS. KASULIS:  Thank you, judge.
23           THE COURT:  Thank you.
24           (Court in recess awaiting the verdict of the jury.)
25           (In open court.)

MICHELE NARDONE, CSR - Official Court Reporter

5636

USA v. Shkreli

1          (Defendant present.)

2          (Court Exhibit 9 so marked.)

3          THE COURT:  We have a note from the jurors, Court
4   Exhibit number 9.  They are asking to be released for the day.
5   I don't think it's necessary to bring them in, unless you would
6   like me to bring them in and admonish them.

7          MR. BRAFMAN:  I would like you to bring them in and
8   admonish them, Your Honor.

9          THE COURT:  You would?

10         MR. BRAFMAN:  Yes, please.

11         THE COURT:  All right.  We will do that.  I guess we
12  will get the alternates as well, in the other room.  Thanks.

13         (Pause.)

14         (Jury enters at 5:28 p.m.)

15         THE COURT:  All jurors and the alternates are present.
16  I would like to just tell all of you how much we appreciate the
17  hard work you are doing; and, the alternates, I would like to
18  express our gratitude for your patience.  We are prepared to
19  dismiss you for the day.

20         We ask you please be reminded not to discuss the
21  status of your deliberations with anybody.  Only discuss it
22  within the jury room.  Please avoid all exposure to media about
23  the case or about Mr. Shkreli.

24         I want to thank you again and wish you a good night,
25  and we will see you tomorrow morning at 9:00.  When you are all

MICHELE NARDONE, CSR - Official Court Reporter

1   here, you may begin deliberations.  We will also provide lunch

2   for the jurors, including the alternates.

3            So thank you and have a good night.

4            (Jury exits at 5:29 p.m.)

5            THE COURT:  All right.  I will see you tomorrow

6   morning.

7            MR. BRAFMAN:  Good night, Your Honor.

8            MS. KASULIS:  Good night, Your Honor.

9            (Trial adjourned to Wednesday, August 2nd, 2017, at

10  9:00 a.m.)

11                               o O o

12

13  Certified to be a true and accurate transcript.
    /s/ Michele Nardone
14  MICHELE NARDONE, CSR -- Official Court Reporter

MICHELE NARDONE, CSR - Official Court Reporter

USA v. Shkreli

# I N D E X

## COURT EXHIBITS

Court Exhibit 8                              5621

Court Exhibit 8A                             5635

Court Exhibit 9                              5637

o O o

MICHELE NARDONE, CSR - Official Court Reporter