```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X

UNITED STATES OF AMERICA,
                                          MEMORANDUM AND ORDER
      - against -

MARTIN SHKRELI,                           15-CR-637 (KAM)

            Defendant.

---------------------------------------X
```
**MATSUMOTO, United States District Judge:**

The court assumes familiarity with the facts of this case, which commenced on June 28, 2017 and was tried to verdict on August 4, 2017. Now before the court is a request from Bloomberg L.P., The Associated Press, Reuters, The New York Times Co., Daily News L.P. and NYP Holdings, Inc. (collectively, the "Press Organizations"), that the court "promptly disclose the names of the jury members" in this case. (Letter dated August 11, 2017, ECF No. 308 at 1.)

Before jury selection, members of the Eastern District of New York press pool[1] requested that one pool reporter be permitted to be present at side bar discussions with individual potential jurors during *voir dire*. (Press Email at 1.) The defense opposed the request, arguing that "Mr. Shkreli's right

---

[1] Reporters from Bloomberg News, the New York Daily News, the New York Post, Reuters, the New York Times, and Law360 signed the letter, and stated they wrote "on behalf of our colleagues in the press who cover the Brooklyn Federal Courthouse." (Email dated June 20, 2017 ("Press Email"), ECF No. 256 at 1.)

to a fair trial trump[ed] the media's First Amendment right". (Defense Letter in response to request from EDNY press pool, ECF No. 254 at 3.)  The court conducted jury selection in open court and granted the press pool's request to have a reporter present at sidebar when venire members were examined individually.  In order to safeguard Mr. Shkreli's Sixth Amendment right to a fair trial by ensuring candor among prospective jurors in this high-profile case, the court ordered that the names of the jurors would not be released publicly by the court until the conclusion of trial, and that juror names would be disclosed to, but were not to be used by, the parties during the trial.  (ECF No. 259; see *ABC v. Stewart*, 360 F.3d 90, 104 (2d Cir. 2004) (proposing "concealing the identities of the prospective jurors" in order to "ensure juror candor" during *voir dire*)).  The press was also prohibited from taking pictures or sketching the faces of any juror or potential juror in this case within the courthouse. (ECF No. 259.)  During trial, for the sake of convenience and in keeping with the undersigned judge's usual practice, the court referred to jurors by number rather than name.  Thus, although the court did not explicitly preclude the press from printing the names of jurors, and did not empanel an anonymous jury or sequester the panel of jurors and alternates, members of the

2

press would not have been able to learn the names of jurors without resorting to invasive investigatory tactics.

Mr. Shkreli has opposed the Press Organizations' request for post-trial disclosure of juror names on the grounds of juror privacy, and also argues that the Second Circuit has not mandated that juror names be disclosed to the press. (Defendant's Letter dated August 14, 2017, ECF No. 313.) The government has taken no position on the Press Organizations' request. (Letter dated August 15, 2017, ECF No. 319.)

Although the Second Circuit has not addressed whether a court must release juror names post-verdict when the names were not disclosed to the public during trial based on specific findings, the Supreme Court and Second Circuit have emphasized that there is a "presumption of openness" for judicial proceedings. *Stewart*, 360 F.3d at 98 (2d Cir. 2004) (quoting *Press Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1984). Although "[t]he constitutional right of access" to judicial proceedings "is not absolute, and must, in certain circumstances, give way to other rights or interests, such as the defendant's Sixth Amendment right to a fair trial or the privacy interests of prospective jurors[,] . . . [t]he presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve

3

higher values and is narrowly tailored to serve that interest." *Id.*

In this case, the court's earlier decision requiring that the parties and court staff refrain from disclosing juror names effectively operated as a form of narrowly tailored closure, limiting information that the press may have been able to gather absent the order. (*See* ECF No. 259.) As the court detailed in that order, this limited restriction was necessary to safeguard Mr. Shkreli's Sixth Amendment right to a fair trial.

Now that the jury has returned a verdict, the defendant's concerns about his right to a fair trial are moot, but the court must nonetheless take into account the privacy interests of the jury. Of the nine jurors successfully contacted by the court, seven jurors expressed a preference that their names not be disclosed; only two jurors expressed indifference to the disclosure of their names.[2] Multiple jurors mentioned that they would prefer that their names not be associated with a high-profile case. Most jurors also noted

---

[2] The court was unable to reach the other three jurors as of the date of this Memorandum and Order.

4

that they would prefer not to speak to the press. All jurors are entitled to refuse press interviews if contacted.

Jury deliberations are, and should remain, confidential. "The secrecy of deliberations is the cornerstone of the modern Anglo-American jury system," and "disclosure of the substance of jury deliberations may undermine public confidence in the jury system." *United States v. Thomas*, 116 F.3d 606, 618 (2d Cir. 1997); *In re Globe Newspaper Co.*, 92 F.2d 88, 94 (1st Cir. 1990) (noting that there is "no public right of access" to jury deliberations). Indeed, the Supreme Court has recognized that "[f]reedom of debate might be stifled and independence of thought checked if jurors were made to feel that their arguments and ballots were to be freely published to the world." *Id.* at 619 (quoting *Clark v. United States*, 289 U.S. 1, 13 (1933)).

Despite the long and challenging service of the jury members and the court's profound gratitude for their service and attention throughout the trial, the privacy interests and preferences of the jury alone are generally insufficient to preclude disclosure of their names. *Press-Enterprise*, 464 U.S. at 512 (in *dicta*, suggesting that a court could not withhold a juror's name from *voir dire* transcripts unless there was a specific "significant" and "valid privacy interest" such that withholding a name was necessary "to protect the person from

5

embarrassment"); *United States v. Wecht*, 537 F.3d 222, 240 (3d Cir. 2008) ("we cannot accept the mere generalized privacy concerns of jurors as a sufficient reason to conceal their identities in every high-profile case" (quoting *Globe Newspaper*, 92 F.2d at 98)). Because the trial has concluded, the court does not have a continuing basis to make particularized findings concerning the defendant's right to a fair trial and the risks to juror privacy that would warrant the continued enforcement of its prior order. Here, there is no evidence that the security of any juror would be placed at risk. Nor would defendant's right to a fair trial be implicated post-verdict.

Whether members of the jury choose to grant or decline press interviews regarding their service, the identities of the jury members may still be important to inform the public about the jury selection process, the conduct of the trial, or the criminal justice system in general. The Supreme Court has explained that the "value of openness lies in the fact that people not actually attending trials can have confidence that standards of fairness are being observed" and that "[o]penness . . . enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to

public confidence in the system." *Press-Enterprise*, 464 U.S. at 508.

As the First Circuit has concluded, although "privacy concerns following a publicized trial are real – and may understandably include some nervousness about personal security – those unfocused fears must be balanced against the loss of public confidence in our justice system that could arise if criminal juries very often consisted of anonymous persons," which would "not comport with democratic values of accountability and openness." *Globe Newspaper*, 920 F.2d at 97-98 (interpreting the District of Massachusetts Jury Plan to require disclosure of juror names absent "valid, specific reasons necessitating confidentiality"); *United States v. Blagojevich*, 612 F.3d 558 (7th Cir. 2010) (concluding that §10(a) of the Northern District of Illinois Jury Plan requires that "a judge must find some *unusual* risk to justify keeping jurors' names confidential").[3] *See also Press-Enterprise*,

---

[3] The First and Seventh Circuits approached the issue of disclosing juror identity by interpreting the relevant district courts' jury plans, concluding that, unless withholding juror names was necessary in the "interests of justice," the jury plans required disclosure of juror names. *Globe Newspaper*, 920 F.2d at 92; *Blagojevich*, 612 F.3d at 564. The Jury Selection Plan for the Eastern District of New York contains language similar to the jury plans interpreted by the First and Seventh Circuits. *See* Eastern District of New York Jury Selection Plan § 12 (names of qualified jurors shall not be made public until jurors have appeared, but the trial judge "may order the names to be kept confidential . . . when the interests of justice so require"). Because this court concludes that the disclosure of juror identities at this stage of the instant case is mandated by the presumption of openness of judicial proceedings described in *ABC v. Stewart*, the court

7

464 U.S. at, 505 ("since the development of trial by jury, the process of selection of jurors has presumptively been a public process with exceptions only for good cause shown"); *Wecht*, 537 F.3d at 235-238 (reviewing the long history of public jury selection and identifying a "presumptive First Amendment right of access" to juror names). In the absence of specific concerns about juror privacy, and because the jury has had two weeks to recover from and reflect on their jury service,[4] the court will not continue to restrict access to juror names.

For the foregoing reasons, although the court is sympathetic to the privacy concerns of the jurors, the privacy interest of the jury in this case cannot prevail over the presumption of openness that attaches to all judicial proceedings. To that end, the court **ORDERS** that the Clerk of Court shall compile the names of Jurors 1-12 in this case, and provide a list of those names to members of press organizations who request the names and present proper press credentials in

---

does not reach the question of when, and whether, the Eastern District Jury Plan might require disclosure of juror names.

[4] *See, e.g.*, *United States v. Sampson*, 297 F. Supp. 2d 348, 349 (D. Mass. 2003) (deferring disclosure of juror names after verdict in a capital case to "provide them with an opportunity to reflect on their experience" and to "resume their normal activities"); *Doherty*, 675 F. Supp. 719, 725 (deferring disclosure of juror names "affords each juror the chance . . . to catch up on precious time spent away from family, in the service of society, allows each one to resume his or her normal round of activities, and grants to each juror a short breathing space to reflect on the experience of jury service . . . ").

the clerk's office.  The clerk shall maintain a list of press members to whom the list of juror names is disclosed.

The press should be respectful of the jurors' privacy, and is reminded of the importance of maintaining the public's and jurors' confidence in the criminal justice system, including, but not limited to, the right to a trial by jury.

**SO ORDERED.**

Dated: August 18, 2017
      Brooklyn, New York

                                          /s/
                              KIYO A. MATSUMOTO
                              United States District Judge
                              Eastern District of New York