

U.S. Department of Justice

United States Attorney
Eastern District of New York

JMK:GKS/AES
F. #2014R00501

271 Cadman Plaza East
Brooklyn, New York 11201

September 7, 2017

By Hand and ECF

Hon. Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    United States v. Martin Shkreli
                Criminal Docket No. 15-637 (KAM)

Dear Judge Matsumoto:

      The government respectfully submits this motion for a bail revocation hearing, at which the government will move to revoke the defendant Martin Shkreli's bail and remand him into custody, pursuant to 18 U.S.C. §§ 3143 and 3145, because his recent public conduct demonstrates that he cannot meet his post-trial burden to show, by clear and convincing evidence, that he does not pose a danger to the community.

      Since his conviction on August 4, 2017, Shkreli has engaged in an escalating pattern of threats and harassment that warrant his detention pending sentencing. Most recently, Shkreli threatened former Secretary of State Hillary Clinton by publicly offering $5,000 to anyone who would "grab" some of her hair on the defendant's behalf during her upcoming book tour. In a post-trial posture, it is Shkreli's burden to show that he should be free on bail pending sentencing. Shkreli's latest threat is concerning not only because it has required a significant expenditure of resources by the United States Secret Service, which is charged with protecting Secretary Clinton, but also because there is a significant risk that one of his many social media followers or others who learn of his offers through the media will take his statements seriously—as has happened previously—and act on them. His latest actions constitute changed circumstances that show that he cannot meet his burden of showing that he should remain at large pending sentencing.[1]

---

[1] In addition, Shkreli's actions may amount to one or more violations of state and/or federal law. See, e.g., 18 U.S.C. § 879 (prohibiting threats against immediate family

BACKGROUND

After his arrest in the above-captioned case on December 17, 2015, Shkreli was released on a $5 million consent bond secured by a lien on assets in an E*Trade brokerage account controlled by Shkreli. (See Dkt. Nos. 7, 18, 19, 102).

Near the end of his trial and since his conviction on August 4, 2017, Shkreli has made at least two public statements harassing specific women. As has been widely-reported, Shkreli was banned from Twitter in January 2017 after harassing journalist Lauren Duca.[2] In early January 2017, Shkreli had sent Duca a message via Twitter asking her to be his "+1" or companion to the inauguration of President Donald Trump. (See Exs. A & B.) Duca publicly rejected the request. In response, Shkreli called Duca a "cold you know what" on Twitter and famously changed his Twitter profile picture to a doctored image appearing to show Duca on his lap on a couch. (Id.). This conduct earned Shkreli a ban from Twitter. On July 27, 2017—on the eve of the final trial summations—Shkreli made the following statements on Facebook: "Trial's over tomorrow, bitches. Then if I'm acquitted, I get to fuck Lauren Duca[.]" He added, "And Anna Kasperian, she's pretty hot," referring to a political pundit.[3] Thus, just as the case was to be submitted to the jury, Shkreli made a public threat against two women whom he dislikes and with whom he has feuded in the past.

Shkreli's conduct has only escalated since his conviction. On September 4, 2017, Shkreli posted on Facebook that he would pay $5,000 to anyone who "grab[s]" hair from Secretary Clinton during her book tour. That post appeared as follows:



---

members of former presidents); New York Penal Law Section 240.30 (prohibiting threats of physical harm via an electronic communication with the intent to harass).

[2] See, e.g., The Guardian, "Martin Shkreli Suspended from Twitter for Alleged Harassment of Lauren Duca," Jan. 8, 2017 (attached as Exhibit A); Buzzfeed, "'Pharma Bro' Martin Shkreli Suspended from Twitter After Harassing a Teen Vogue Writer," Jan. 8, 2017 (attached as Exhibit B).

[3] See, e.g., New York Post, "Pharma Bro Quotes Trump in Post-Closing Arguments Rant," July 27, 2017 (attached as Exhibit C).

Shkreli's Facebook post was widely-circulated in the media, and was posted right before Secretary Clinton was scheduled to begin a tour to promote a new book, during which she is scheduled to make numerous public appearances.[4] After a period of several hours during which the threat received widespread attention, including from the United States Secret Service (see below), Shkreli "edited" the post to add a line describing it as "satire, meant for humor[.]"[5]

As a result of Shkreli's threat, the Secret Service launched an investigation and has informed the government that it has expended significant additional resources to ensure Secretary Clinton's protection. In connection with that investigation, the Secret Service sought to interview Shkreli. He declined, and subsequently posted a message on Facebook that reveals that he does not take his actions or their consequences seriously:



Through counsel, Shkreli also conveyed to the government and to the Secret Service that he would remove the original post regarding the threat to Secretary Clinton on September 5, 2017; however, he declined to do so until late in the day on September 6, 2017.

In the past, members of the public have taken specific actions at Shkreli's request upon his offer of payment. For example, at a speaking engagement before the trial, Shkreli offered a $40,000 scholarship in exchange for the solution to a mathematical proof and a recent Princeton graduate completed the project in reliance on Shkreli's offer of payment.[6] Moreover, Shkreli's long-standing criticisms of Secretary Clinton on social media

---

[4] See, e.g., The Hill, "Martin Shkreli Offers $5k Reward for Sample of Clinton's Hair," Sept. 5, 2017 (attached as Exhibit D); Newsweek, "Pharma Bro Martin Shkreli Offering $5,000 for a Lock of Hillary Clinton's Hair," Sept. 5, 2017 (attached as Exhibit E).

[5] See, e.g., New York Daily News, "Pharma Bro Offers $5G Reward for Sample of Hillary Clinton's Hair Before Chalking It Up as 'Satire'," Sept. 6, 2017 (attached as Exhibit F).

[6] See, e.g., USA Today, "Don't Believe All of Martin Shkreli's Social Media Posts, His Lawyer Says," June 19, 2017 (attached as Exhibit G); The Tab, "This Princeton Student Won $40,000 from Martin Shkreli for Solving a Geometry Proof," June 13, 2017 (attached as Exhibit H). Counsel for Shkreli stated at a subsequent status conference that the $40,000 scholarship was one of several "preposterous promises that Mr. Shkreli has made in recent

have, at times, been backed with action. For example, when Secretary Clinton was reported to have experienced a health issue on September 11, 2016, Shkreli physically traveled to and stood outside an apartment owned by Secretary Clinton's daughter where she was recuperating, and spent approximately two hours live-streaming while providing commentary and heckling Secretary Clinton.[7] Shkreli's own prior actions, and his influence over others who have previously acted in reliance on his statements, demonstrate why the government views his latest actions with concern.

## ARGUMENT

### A. LEGAL STANDARD

The release of a defendant pending sentencing is governed in part by Title 18, United States Code, Section 3143, which provides, in relevant part, as follows:

> (a) **Release or detention pending sentence**—
>
> (1) . . . . the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence . . . be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to safety of any other person or the community if released under section 3142(b) or (c).

Section 3143 thus reverses the traditional presumption in favor of release on bond embodied in the Bail Reform Act. As the Second Circuit has noted, "18 U.S.C. § 3143(a)(1) creates a presumption in favor of detention; it places the burden on the defendant to defeat that presumption; and it requires the defendant to carry that burden by clear and convincing evidence, not by a mere preponderance. Only if the defendant clears these high procedural hurdles is he entitled to release pending sentencing." United States v. Abuhamra, 389 F.3d 309, 320 (2d Cir. 2004).

### B. APPLICATION

The government submits that based on the foregoing, circumstances since the August 4, 2017 verdict have changed such that Shkreli cannot meet his burden of showing, by clear and convincing evidence, that he is not a danger to the community. See 18 U.S.C. § 3143(a)(1). The Court should further find that there is no condition or combination of

---

weeks [and that] have never been paid forward." (6/19/17 Pre-Trial Conference Tr. at 25:15-19). Shkreli's failure to follow through on that particular offer of payment does not mean that Shkreli would be unwilling to make other promised payments.

[7] See, e.g., New York Post, "'Why Are You So Sick?': Martin Shkreli Shows Up to Taunt Clinton," Sept. 11, 2016 (attached as Exhibit I).

4

conditions to which the defendant will abide that will ensure that he does not pose a danger to the community.  His statements regarding Duca and others, and now regarding Secretary Clinton, are the latest in an escalating pattern of public threats to others.

The defendant has sometimes belatedly qualified his threats and harassment by describing them as jokes and by demeaning his targets.  For example, after his ban from Twitter following his harassment of Duca, Shkreli said to the New York Post: "I look back on it as a waste of time, no doubt . . . I think it would help her to be a little more intelligent and a little less dramatic.  She said she prizes rational discourse, but when I messaged her with an invitation, she did the exact opposite of rational discourse."[8]  He went on to call the episode an "ironic joke."  (See Ex. J).  And he belatedly edited his Facebook threat against Secretary Clinton to call it "satire, meant for humor."  (See supra.).

However, notwithstanding his belated commentary, the defendant's threats create a risk of danger to the community.  And they are certainly not appropriate behavior for a defendant who has been found guilty of securities fraud and conspiracy to commit securities fraud—a defendant whose detention is presumed under the law.  Shkreli has gone to great lengths to cultivate a public persona; indeed, he has at least 70,000 Facebook followers.[9]  Additionally Shkreli is aware that his actions are covered by the media—and, in fact, has sought to exploit such media coverage—which means that his reach is much broader than just those followers.

That Shkreli has a significant audience on social media and cultivates a wider audience through the press, coupled with the fact that, in the past, individuals have taken his offers of payment seriously, demonstrate that Shkreli's latest statements pose a more significant danger to the public as compared to a threat made to a more limited audience.  Such behavior should not be excused by belated, calculated retractions by an individual who clearly understands the implications of his actions.  That Shkreli awaits sentencing and still engages in an escalating pattern of egregious public behavior shows that he has no respect for the law and will not abide by any conditions or combination of conditions for his release.

---

[8] New York Post, "Martin Shkreli: Sorry, Not Sorry for Trolling Journalist," Jan. 13, 2017 (attached as Exhibit J).

[9] The New Yorker, "Martin Shkreli is Still Talking," Apr. 17, 2017 (attached as Exhibit K).

CONCLUSION

For the reasons set forth above, the government respectfully requests that the Court schedule a bail revocation hearing and issue an order of detention pending sentencing pursuant to 18 U.S.C. § 3143(a)(1).

                Respectfully submitted,

                BRIDGET M. ROHDE
                Acting United States Attorney

By:    /s/
                Jacquelyn M. Kasulis
                Alixandra E. Smith
                G. Karthik Srinivasan
                Assistant U.S. Attorneys
                (718) 254-7000

cc:    Clerk of Court (KAM) (by ECF)
      Counsel for Shkreli (by ECF)