1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - X

UNITED STATES OF AMERICA,          : 15-CR-637(KAM)
                                   :
                                   :
                                   :
        -against-                  : United States Courthouse
                                   : Brooklyn, New York
                                   :
                                   :
                                   : Thursday, June 26, 2017
MARTIN SHKRELI,                    : 9:00 a.m.
                                   :
          Defendant.               :
                                   :
- - - - - - - - - - - - - X

                   TRANSCRIPT OF TRIAL
          BEFORE THE HONORABLE KIYO A. MATSUMOTO
          UNITED STATES DISTRICT COURT JUDGE, and a jury.

                A P P E A R A N C E S:

For the Government:  BRIDGET M. ROHDE, ESQ.
                     Acting United States Attorney
                     Eastern District of New York
                        271 Cadman Plaza East
                        Brooklyn, New York 11201
                     BY:  JACQUELYN KASULIS, AUSA
                          ALIXANDRA E. SMITH, AUSA
                          KARTHIK SRINIVASAN, AUSA

For the Defendant:   BRAFMAN & ASSOCIATES, P.C.
                        767 Third Avenue
                        New York, New York 10017
                     BY:  BENJAMIN BRAFMAN, ESQ.
                          MARC AGNIFILO, ESQ.
                          ANDREA ZELLAN, ESQ.
                          JACOB KAPLAN, ESQ.

Court Reporter:  Michele D. Lucchese, RPR
                 Official Court Reporter
                 E-mail:  MLuccheseEDNY@gmail.com

Proceedings recorded by computerized stenography.  Transcript
produced by Computer-aided Transcription.

2

1           (In open court; prospective jurors not present.)

2           THE COURTROOM DEPUTY:  This is criminal jury

3    selection, United States of America versus Martin Shkreli.

4    15-CR-637.  If the parties could please identify themselves

5    and make their appearances known for the record.

6           MS. KASULIS:  Jacqueline Kasulis, Alixandra Smith,

7    Karthik Srinivasan, Gabriela Balbin, and special agents from

8    the FBI, Michael Braconi and Sean Sweeney, for the Government.

9    Good morning, Your Honor.

10          THE COURT:  Good morning.

11          MR. BRAFMAN:  Benjamin Brafman, Marc Agnifilo,

12   Andrea Zellan, Jacob Kaplan for Mr. Shkreli, who is present in

13   the courtroom.

14          THE COURT:  Good morning.

15          Are the parties ready to proceed?

16          MR. BRAFMAN:  Yes, Your Honor.

17          MS. KASULIS:  Yes, Your Honor.

18          THE COURT:  Thank you.

19          As you can see, Counsel, we have laid out where the

20   jurors will be sitting.  We will have a total of 40 jurors in

21   our panel.  Jurors 1 through 10 in the first row, starting on

22   the left and going right.  Jurors 11 through 20 on the second

23   row and then 31 to 40 on the third row.  And then, here in

24   front, we will have Juror Nos. 41 through -- I'm sorry, 31

25   through 40.

3

1    Extending on to the right in the first row, just in

2    terms of jurors that we need to call, 41 to 46 will sit on the

3    far right and then they will follow in the main rows.  I

4    believe all decisions have been made on pending motions.  Are

5    there any motions that the parties believe have not been

6    resolved?  Except for the motion for reconsideration.

7              MR. BRAFMAN:  Yes, your Honor.  That's the only one.

8              MS. KASULIS:  That's correct.

9              THE COURT:  I have a question.  There was a

10    forfeiture count in the indictment.  As we know, Mr. Shkreli

11    has the right to have that tried before a jury.  The parties

12    have not notified me as to how they intend to proceed on the

13    forfeiture.

14              Does Mr. Shkreli want --

15              MR. BRAFMAN:  One moment, Your Honor.

16              (Pause.)

17              MR. BRAFMAN:  Your Honor, what I think we would most

18    prefer, respectfully, once the jury reaches a verdict on all

19    of the charges in the indictment and announces the verdict,

20    before they are dismissed, if there is an acquittal, I don't

21    think there is going to be an issue.  If there is a

22    conviction, it depends on the count.  And if there is a

23    conviction, we would then, perhaps, make additional argument

24    to the Court or the same panel with respect to forfeiture.  I

25    don't think we need a separate trial on the forfeiture issue

4

1    if the Government agrees.

2          THE COURT:  Well, we only have to deal with

3    forfeiture if there is a conviction on a count that has a

4    forfeiture attached to it, but he does have the right to have

5    the trial, the jury decide the forfeiture issues.  My question

6    is whether you want that right, just so I know not to excuse

7    the jurors.

8          MR. BRAFMAN:  We want to reserve that right, yes,

9    your Honor.  Thank you.

10          THE COURT:  Thank you.

11          Is there anything else I should address before we

12    bring in the jurors?  I was intending to allow them to keep

13    notes with proper instructions, but I think because it is a

14    six-week trial, unless somebody has an objection, I was

15    intending to allow them to take notes.

16          MR. BRAFMAN:  Does the Court take the notes from the

17    jurors when they leave the building?

18          THE COURT:  Yes.  They are left on the chairs when

19    they leave the courtroom.

20          MR. BRAFMAN:  Then we have no objection.

21          MS. KASULIS:  No objection from the Government.

22          THE COURT:  No objection from the Government or the

23    defense.  Okay.

24          Now, I will read the short statement provided by the

25    Government regarding the summary from the defense.  I didn't

5

1    receive anything from the defense, so I am assuming that it is

2    acceptable to the defense.  If it is not, I would like to

3    address it now.

4              MR. BRAFMAN:  Your Honor, I don't think we received

5    it.

6              THE COURT:  It was filed on ECF, was it not?

7              MS. SMITH:  Yes, your Honor.

8              THE COURT:  I could read it to you if you would like

9    to hear it, Mr. Brafman.

10             MR. BRAFMAN:  Yes, please.

11             THE COURT:  It reads, The Defendant, Martin Shkreli,

12   is charged in an eight-count indictment with committing

13   various acts of securities fraud, conspiracy to commit

14   securities fraud and conspiracy to commit wired fraud in

15   Counts One through 3, Defendant Shkreli is charged with

16   conspiracy to commit security fraud, conspiracy to commit wire

17   fraud, and a substantive counsel of securities fraud in

18   relation to an entity known as MSMB Capital.  In Counts 4

19   through 6, Defendant Shkreli is charged with conspiracy to

20   commit securities fraud, conspiracy to commit wire fraud, and

21   a substantive count of securities fraud in relation to an

22   entity known as MSMB Healthcare.

23             In Counts 7 and 8, Defendant Shkreli is charged with

24   conspiracy to commit securities fraud and conspiracy to commit

25   wire fraud in relation to an entity known as Retrophin.

6

1          MR. BRAFMAN:  Your Honor, if we can write something

2     out quickly or if you would just advise them that Mr. Shkreli

3     has entered a plea of not guilty to all of the charges and he

4     is presumed to be not guilty unless and until the Government

5     proves his guilt beyond a reasonable doubt, that would be

6     acceptable to the Defendant, Your Honor.

7          THE COURT:  Well, we do advise the jurors that he

8     has entered a plea of not guilty and that is what the case is

9     going to be tried.

10          MR. BRAFMAN:  That's fine, Judge.

11          THE COURT:  So is this statement acceptable?

12          MR. QUAN:  Yes.

13          THE COURT:  Okay.

14          And as the parties requested, we will chose 12

15     jurors with six alternates.  We will be seating 40 jurors.

16     The preemptory challenges will be conducted in six rounds.

17     The Government will have one in each round.  Mr. Shkreli will

18     have two in the first four rounds and one in rounds five and

19     six.

20          The Defendant will strike first in rounds one, three

21     and five, and the Government will strike first in rounds two,

22     four, and six.  I have distributed a chart to help the parties

23     keep track.

24          We will then proceed to the alternate rounds

25     immediately, during which each party will have one challenge

7

1  in three rounds.  The Defendant will challenge first in

2  alternate round one and three.  The Government will challenge

3  first in alternate round two.  If a challenge is waived in any

4  round, it may not be used in future rounds.  It will cause the

5  last juror with the highest number, or I should say the last

6  number, to be stricken.

7       The Government and the Defendant will have one

8  challenge for the first of the three alternates.

9       The discussions at sidebar will be here to my right.

10 And, as you know, I issued a press order last evening.  I

11 don't know who among the press pool in the Eastern District

12 will be present at the sidebar.  Is it Ms. Hurtado?

13      MS. HURTADO:  I will be first, and the New York

14 Times will be second, and then Mr. Keshner from the Daily News

15 will be third as for today.

16      THE COURT:  All right.  Thank you.  And have you

17 received a copy of the order?

18      MS. HURTADO:  I saw it last night, ma'am.

19      THE COURT:  So the press pool is familiar with the

20 ground rules, which are pretty self-evident?

21      MS. HURTADO:  Yes, your Honor.

22      THE COURT:  Thank you.

23      If the parties are ready then, we will see if our

24 jurors are ready and we will bring them in.

25      MS. ZELLAN:  Your Honor, will we be given a list of

1  the jurors?

2         THE COURT:  Yes.

3         MS. ZELLAN:  Will that come before you start seating

4  them in the well box?

5         THE COURT:  As she goes to get the jurors, she is

6  handed a list.  I think what they are trying to do with the

7  list is they will eliminate people who may not have paid

8  attention to the instructions regarding the language.  You

9  will have it by the time they start getting seated.

10         MS. ZELLAN:  Understood.  Thank you, Judge.

11         THE COURT:  We have to correct the math again.  I

12  think we need to seat 34, not 40, given the number of jurors.

13  I think, Ms. Zellan, 40, but it should be 34.

14         MS. ZELLAN:  Okay.

15         THE COURT:  Okay.  It is 34, yes.

16         MS. SMITH:  Your Honor, are we doing alternates

17  separately?

18         THE COURT:  We are going to bring in the alternates.

19         MS. SMITH:  Okay.  Because I have we will need 18,

20  12, and 6, and then 16 strikes on the main pool and 6 on the

21  alternates, so then that's how we got to 40.

22         (The prospective jurors enter.)

23         THE COURT:  Good morning.

24         Are you Juror No. 5?  Just put them in their seats.

25         MR. GROVER:  This is Juror No. 6.

9

1          THE COURT:  Is Juror No. 5 not here?

2          THE LAW CLERK:  In a moment.

3          THE COURT:  Good morning, ma'am.  Are you Juror

4   No. 11?

5          THE JUROR:  Yes.

6          THE COURT:  Please have a seat on the far left, the

7   second row.  Good morning, please sit in a seat that is

8   associated with your number.  Thank you.

9          We are going to seat all 40 up in the front row.

10         Mr. Grover, do you know what happened to Juror No.

11  23?

12         MR. GROVER:  I will go find out, ma'am.

13         THE COURT:  Thank you.

14         Mr. Grover, everybody has to be seated in the rows

15  designated.  If you could accomplish that.  Thank you.

16         Is that Juror No. 23?

17         MS. NEWMAN:  This is jurors 38 and 39.

18         THE COURT:  Ms. Jackson, I want everybody up to 40

19  in the front row here.

20         MS. JACKSON:  Yes.

21         THE COURT:  Mr. Grover, can I see you for a second.

22         (Continued on next page.)

23

24

25

1          THE COURT:  Thank you for your patience, ladies and

2     gentlemen.  I know there is quite a bit of waiting.  We just

3     have do get everybody in before we can get started.

4          (Pause.)

5          THE COURT:  We are getting close to starting so if

6     somebody is in need of using the facilities, please do so now

7     and come right back.  It is just across the hall.  All right.

8     And please come right back.

9          (Pause.)

10         THE COURT:  I think we are ready to get started.  I

11    would like to thank all the jurors for coming today.

12         I would like to introduce myself.  My name is Judge

13    Kiyo Matsumoto.  To my left is my law clerk Vivek Tata and my

14    case manager, Ms. Sandra Jackson.

15         I appreciate that everybody is here today and I

16    thank you for your patience.

17         Does anybody have trouble hearing me?  If so, please

18    raise your hand.

19         Just for the record, we have Jurors Numbers 23 and

20    115 who did not show up this morning and we will deal with

21    that later, but I wanted to advise the parties.

22         Please pay close attention to me as I go through

23    these instructions.  Please listen carefully and above all, do

24    not discuss this case with anybody.

25         You are here today because we are about to select a

11

1   jury to serve in a criminal case.  Trial is expected to begin

2   after jury selection, most likely tomorrow morning.

3           The trial currently is expected to last at the most

4   six weeks.  We will not hold trial on Monday, July 3rd or

5   Tuesday, July 4th.  Fortunately, this particular trial

6   promises to be interesting and educational for all jurors and

7   those who will be selected to serve.

8           As I said, this is a criminal case commenced by the

9   United States which is frequently referred to as "the

10  Government."  Representing the United States are Assistant

11  United States Attorneys Jacquelyn Kasulis, Alixandra Smith and

12  G. Karthik Srinivasan.  Also seated at the government's table

13  are Special Agent Michael Braconi and Sean Sweeney of the

14  Federal Bureau of Investigation and paralegal specialist,

15  Gabriela Balbin.

16          The defendant in this case, Mr. Martin Shkreli, is

17  represented today by Mr. Benjamin Brafman.

18          MR. BRAFMAN:  Good morning.

19          THE COURT:  Mr. Marc Agnifilo, Ms. Andrea Zellan,

20  Mr. Jacob Kaplan and they will later be joined by an attorney

21  Teny Geragos.

22          The fact that this prosecution is brought in the

23  name of the United States does not entitle the Government to

24  any greater consideration than any other party who appears in

25  court.  All parties, the Government and individuals, are

1  equals before the court and all are entitled to equal

2  consideration.  No party is entitled to sympathy or favor.

3          The purpose of jury selection is to ensure fairness

4  and impartiality in this case.  The way we try to be sure that

5  a jury can be fair and impartial is by going through a process

6  called voir dire.  Basically, I will be asking you questions

7  both as a group and individually about your background and

8  views on certain subjects.  It is not my intention to invade

9  your privacy, but simply to ensure as best I can that you sit

10 fairly and impartially in this particular case.

11         At times, this will be tedious and I ask you please

12 to bear with me.

13         If in the course of this questioning process you do

14 think that because of some experience that you have had in

15 your life or because of something that you have heard or read,

16 that you could not be fair and impartial, that is, you would

17 be inclined toward the Government or toward the defendant

18 regardless of what the evidence shows.  It is your duty to

19 tell me that.  That is because both the Government and the

20 defendant have a right to a qualified impartial jury, one that

21 will decide this case without fear, favor, prejudice or

22 passion, and will render a verdict based solely on the

23 evidence presented at the trial and the law that I will give

24 you at the conclusion.

25         Now, quite apart from whether or not I must excuse

1    you, the lawyers are entitled to exercise a certain number of

2    what are called peremptory challenges which means that they

3    may excuse a juror, a certain number of prospective jurors

4    without giving any reason.  If you are excused, no personal

5    affront is intended.

6            It is important that all of you listen because the

7    answers you give to the questions that I ask must be stated to

8    me under oath.  So, when you give your answers, you will be

9    under oath.  I will ask Ms. Jackson now to administer the oath

10   to you.

11           Please raise your right hands.

12           (Prospective jurors sworn.)

13           THE CLERK:  Thank you.

14           THE COURT:  This case comes before the Court by way

15   of indictment.  The indictment is captioned United States of

16   America against Martin Shkreli.  The indictment is simply a

17   document that the Government uses to state the charges against

18   a defendant.  It serves no other purpose and it is not

19   evidence.

20           I am going to summarize the charges in the

21   indictment so you can understand what this case will be about

22   but, again, remember that any evidence pertaining to this case

23   and the charges will come before you only when we begin the

24   actual trial.

25           This is the indictment.  Again, it is only a charge.

14

1   It is not evidence.

2          The defendant Martin Shkreli is charged in an eight

3   count indictment with committing various acts of securities

4   fraud, conspiracy to commit securities fraud and conspiracy to

5   commit wire fraud.

6          In Counts One through Three, Defendant Shkreli is

7   charged with a conspiracy to commit securities fraud,

8   conspiracy to commit wire fraud and a substantive count of

9   securities fraud in relation to an entity known as MSMB

10  Capital.

11         In Counts Four through Six, Defendant Shkreli is

12  charged with conspiracy to commit securities fraud, conspiracy

13  to commit wire fraud and a substantive count of securities

14  fraud in relation to an entity known as MSMB Healthcare.

15         In Count Seven and Eight, Mr. Shkreli is charged

16  with conspiracy to commit securities fraud and conspiracy to

17  commit wire fraud in relation to an entity known as Retrophin.

18         Now, the defendant has pleaded not guilty to all of

19  the charges in the indictment and has thus raised issues of

20  fact to be determined by the jury.  Let me now advise you that

21  it is the Government that has the burden of proof in any

22  criminal case to establish a defendant's guilt beyond a

23  reasonable doubt as to each element of each charged offense.

24         The defendant is presumed to be innocent.  In that

25  regard, the defendant has no burden whatsoever to present any

15

1    evidence or to testify.  Because the United States

2    Constitution protects a defendant's right to remain silent,

3    the law prohibits you from considering when you deliberate

4    that the defendant may not have testified.  This is a basic

5    principal of our criminal justice system.

6              The role of a jury in a criminal case is to hear the

7    evidence and decide the facts, that is, to decide what

8    happened.  The judge does not have any role to play in your

9    determination of the facts.  As the judge, my role is to

10   instruct you on the applicable law.  You will apply the facts

11   as you find them to the law as I instruct you and your

12   conclusion will be your verdict.  You must apply the law as

13   stated by me at the end of the case regardless of any opinion

14   that you personally may have as to what the law is or should

15   be.  If any of you would have any difficulty doing this, you

16   must bring that to my attention.

17             Now, we will be asking questions first of jurors who

18   have been identified as Juror Number 1 through 41.  So, for

19   those whose numbers are 1 through 41, please listen to my

20   questions and if your answer to my question would be "yes" or

21   if you have an answer, please raise your hand.  For those of

22   you who are not jurors number 1 through 41, please listen

23   carefully, in any event, because I will ask you if it becomes

24   necessary whether your answers to my questions would have been

25   "yes."

16

1          So, for example, I will be asking the jurors whether

2     they know any of the attorneys or parties in this case or any

3     of the court personnel that I have introduced.  As I have

4     said, it is important for all of you, even though whose

5     numbers are not number 1 through 41, to pay close attention to

6     all of my questions and make a note if your answer to my

7     question would have been "yes."  If any of the jurors whose

8     numbers are 1 through 41 are excused, you may be called to

9     replace that juror and I will not go through repeating every

10    single question that I have asked up to that point.  Instead,

11    I will simply ask you if your answer to any of my previous

12    questions would have been yes.

13         It is very important that all of you listen to my

14    questions very carefully and consistent with the oath you have

15    taken, answer them as honestly, conscientiously and candidly,

16    completely and truthfully as you can.

17         If when I ask these questions your answers to my

18    question would be "yes," please raise your hand.  For some

19    questions, I may ask you to answer from where you are seated.

20    For other questions of a personal or private nature, I may ask

21    if you are comfortable answering from your seat and if you

22    are, you may do so.  If you are not comfortable, you may

23    answer from the side bar which will be conducted here to my

24    right out of the hearing of the rest of the jurors.

25    Similarly, for certain questions that have to do with your

1     ability to decide this case fairly, I may ask you to come to

2     side bar to answer. At side bar, as I said, your answers will

3     not be heard by other jurors, but the attorneys for the

4     parties and necessary court personnel will be present.

5     Because judicial proceedings are open and public, one press

6     reporter will also be present at side bar.

7           If I ask you to come to side bar to discuss your

8     answer further, I will not ask your name. I will refer to

9     you only by your number. So, your answers will not be

10     associated with your name, but it is critical for each of you

11     to ensure the parties' right to a fair trial so all of you

12     must be candid and truthful in answering my questions. If

13     there are issues that you do not feel comfortable discussing

14     in the presence of a press reporter, again, who will not be

15     referring to you by name, please let me know at that time and

16     I will ask the reporter to step back.

17           Is there anyone here who either did not understand

18     or who cannot accept any of the principles of law that I have

19     explained thus far? If so, please raise your hand.

20           Is there anyone who has heard anything about this

21     case before today?

22           In cases that receive media attention, it is not

23     wrong to have an opinion about what you may have heard in the

24     media. The critical issue for you is whether your opinion

25     will interfere with your ability to be fair and impartial to

Side Bar                                18

1    both sides and decide this case based solely on the evidence

2    and the instructions of law at this trial.

3              So, if you have heard anything about this case so

4    far, have you formed any opinion about the case that will

5    affect your ability to be fair and impartial?  If so, please

6    raise your hand.

7              All right.  Ma'am, do you feel comfortable, Juror

8    Number One, answering from your seat?

9              THE PROSPECTIVE JUROR:  No.

10             THE COURT:  All right.  Would you like to go to side

11   bar?

12             THE PROSPECTIVE JUROR:  Yes.

13             (The following occurred side bar; prospective juror

14   joins.)

15             THE COURT:  Yes, ma'am?

16             THE PROSPECTIVE JUROR:  I didn't want to say it in

17   front of the jury pool which is I wanted to go to the side

18   bar, but I'm aware of the defendant and I hate him.

19             MR. BRAFMAN:  I'm sorry.

20             THE PROSPECTIVE JUROR:  I think he's a greedy little

21   man and I don't think I can be fair.

22             THE COURT:  All right.  Well, one thing that jurors

23   are obligated to do is to decide the case based only on the

24   evidence at the trial.  Do you agree?

25             THE PROSPECTIVE JUROR:  I don't know if I could.  My

Side Bar                    19

1   opinion on him is pretty well formed and I wouldn't want me on

2   this jury.

3             THE COURT:  You wouldn't want yourself on the jury?

4             THE PROSPECTIVE JUROR:  Yes.  Yes.

5             THE COURT:  Would you step back over by the door,

6   please?

7             (Prospective juror leaves side bar.)

8             MR. BRAFMAN:  Your Honor, I assume we can agree on a

9   challenge for cause.

10            MS. SMITH:  Yes.

11            THE COURT:  Yes.

12            MR. BRAFMAN:  That's Juror Number One.

13            THE COURT:  Juror Number One is excused and we will

14   then call Juror Number, it would be 42, right?  Who will be

15   sitting in her place?  So, on your list, Juror Number 42 will

16   move into the number one spot.

17            MR. AGNIFILIO:  Can I make a suggestion, Judge?  I

18   think for any of the people, because you're giving them the

19   option of answering these questions from their seats, I'm just

20   afraid that someone might answer the question from their seats

21   and say something like what Juror Number One just said, "I

22   hate the defendant," so maybe we should do all of them here

23   and not give them the choice.

24            THE COURT:  All right.  That's fine.  That's fine

25   with me.  I thought you were --

```
                         Side Bar                    20
```

1              MR. AGNIFILIO:  No.

2              THE COURT:  -- opposed to something.

3              MR. BRAFMAN:  You want us to stay up here and bring

4     the others?

5              THE COURT:  Yes, I will.

6              (Prospective juror joins sidebar.)

7              THE COURT:  Ma'am, you can take your things and go

8     to the jury room and tell them that you have been excused from

9     this panel, but you are available to sit on another case.

10             THE PROSPECTIVE JUROR:  All right.  Thank you.

11             THE COURT:  Go back to the jury room.  Thank you.

12             (Prospective juror excused.)

13             (In open court.)

14             THE COURT:  Who else had their hand up?

15             Juror Number 17, come on up.

16             (Sidebar continues; prospective juror joins.)

17             THE COURT:  This is Juror Number 17.  Yes?

18             THE PROSPECTIVE JUROR:  Yes.  I believe Mr. Shkreli

19    is the person associated with the company that raised the

20    price of EpiPens.  I'm familiar with that situation.  I'm on

21    several medications, injected medication for arthritis as well

22    as allergy medications.  I keep EpiPens in my house so I feel

23    I come in with a negative opinion of Mr. Shkreli and I don't

24    know that I can be okay about it.

25             THE COURT:  First of all, this case has nothing

```
                          Side Bar                        21
```

1    whatsoever to do that --

2          THE PROSPECTIVE JUROR:  I understand that.

3          THE COURT:  -- with the price of any pharmaceuticals

4    and he is not associated with EpiPens, but there is some media

5    reporting about raising the price of other pharmaceuticals.

6          The question for you is whether you could put out of

7    your mind what you have heard in the media and whether you

8    could decide this case based only on the evidence with a fair

9    mind to both sides and maintain your sense of impartiality and

10   fairness as you listen to the evidence.  Would you do that?

11         THE PROSPECTIVE JUROR:  I don't believe that I

12   would.  I believe that would be in the back of my mind as a

13   negative against Mr. Shkreli.  I think he might be better

14   served with a juror who didn't have that in his head.  That's

15   my belief.

16         THE COURT:  All right.  Sir.  Let me just ask you to

17   step away over towards that seat over there.

18         (Prospective juror leaves side bar.)

19         MR. BRAFMAN:  Your Honor, we would challenge him for

20   cause.

21         MS. KASULIS:  No objection.

22         THE COURT:  All right.

23         (Prospective juror joins side bar.)

24         THE COURT:  Sir, we are going to excuse you from

25   this panel, but you must go back to the jury room and tell

Side Bar                    22

1    them you are available to be selected from another panel for

2    another case.  All right, sir?

3              THE PROSPECTIVE JUROR:  All right.

4              THE COURT:  Thank you for your candor.

5              (Prospective juror excused.)

6              THE COURT:  Before I replace the jurors, should we

7    just get through this and then I will just call them?

8              MR. BRAFMAN:  Yes.

9              (In open court.)

10             Number 18 and 19, please come to side bar.

11             (Side bar continues; prospective juror joins.)

12             THE COURT:  Juror number 18.

13             THE PROSPECTIVE JUROR:  Yes.  Both of my parents are

14   on certain prescriptions that have gone up increasingly over

15   the last few months.  So much that they can't afford their

16   drugs.  So they have to find other methods of either take the

17   drugs or dealing with life, essentially their daily routine

18   and paying for that stuff.

19             In the business that I work in, I have several

20   friends that have HIV or AIDS that have, again, can't afford

21   the prescription drugs that they obviously were able to afford

22   and they can't.

23             THE COURT:  All right.  These charges don't concern

24   anything that you might have heard in the media regarding drug

25   pricing.

```
                        Side Bar                        23
```

1          THE PROSPECTIVE JUROR:  Understandable.

2  Unfortunately, that's in the back of my mind the whole time.

3          THE COURT:  Could you decide this case based only on

4  the evidence --

5          THE PROSPECTIVE JUROR:  No.  No.

6          THE COURT:  -- presented at this trial and put aside

7  anything you might have heard in the media?

8          THE PROSPECTIVE JUROR:  No.  No.  Unfortunately, I

9  cannot.  I'm sorry.

10          THE COURT:  All right.  Let me have you step over to

11  the side.

12          (Prospective juror leaves side bar.)

13          MR. AGNIFILIO:  We move for cause.

14          THE COURT:  Yes.  Any objection?

15          MS. KASULIS:  No.

16          (Prospective juror joins side bar.)

17          THE COURT:  Sir, we are going to excuse you from

18  this panel.

19          THE PROSPECTIVE JUROR:  Yes.

20          THE COURT:  But you must go back to the jury room

21  and tell them you will be able to sit on some other case.

22          (Prospective juror excused.)

23          (In open court.)

24          THE COURT:  Who else had their hand up, please?

25          Juror Number 19, come forward, please.

```
                            Side Bar                      24
```

1              (Side bar continues; prospective juror joins.)

2              THE COURT:  Are you all right?

3              THE PROSPECTIVE JUROR:  Yes.

4              THE COURT:  Have a seat.

5              Yes, sir.  You are Juror Number 19?

6              THE PROSPECTIVE JUROR:  Yes, I am.

7              THE COURT:  What would you like to tell us about

8    what you have heard?

9              THE PROSPECTIVE JUROR:  I'm a financial advisor.

10   I've seen him on the financial news.  He makes the rounds.

11   I'm also -- I currently right now actually just got served an

12   arbitration by FINRA.

13             THE COURT:  You have been served with a FINRA --

14             THE PROSPECTIVE JUROR:  I've been just served.

15             THE COURT:  Well, the question for you, sir, is

16   whether you --

17             THE PROSPECTIVE JUROR:  Yes.

18             THE COURT:  -- are able to decide this case and

19   listen to the case throughout the trial with an open and fair

20   mind toward both the Government and Mr. Shkreli and not make

21   any conclusions until the time of deliberation and could you

22   put out of your mind or could you do that, could you maintain

23   your posture as a fair and impartial juror as you listen to

24   the evidence in this case?

25             THE PROSPECTIVE JUROR:  Yes.  I'm just letting you

1    know that I am aware who he is.

2              THE COURT:  Okay.

3              THE PROSPECTIVE JUROR:  It just happened recently.

4              THE COURT:  It's fine to have opinions about things

5    we read in the news.  Most thinking people do.  The question

6    for you is whether your opinions would cloud your ability to

7    be fair to both sides.

8              THE PROSPECTIVE JUROR:  No.

9              THE COURT:  And would you, if you are selected,

10   pledge to decide this case based only on the evidence

11   presented at the trial and apply the law as I instruct you?

12             THE PROSPECTIVE JUROR:  Yes.

13             THE COURT:  All right.  Thank you.  Let me just have

14   you step aside there.

15             (Prospective juror leaves side bar.)

16             MR. BRAFMAN:  We have no challenge for cause.

17             THE COURT:  Let me ask him to maintain his seat.

18             (Prospective juror joins side bar.)

19             THE COURT:  Juror Number 19, would you please go

20   back to your seat?  Thank you.

21             (Prospective juror leaves side bar.)

22             (In open court.)

23             THE COURT:  Did Juror 20 have his hand up?  No.

24   Okay.  Who else?

25             Juror Number 25, come forward, please.

```
                        Side Bar                        26
```

1           Please do not talk about this case or anything else

2   that's happening with your fellow potential jurors, please.

3           (Side bar continues; prospective juror joins.)

4           THE COURT:  Have a seat.

5           THE PROSPECTIVE JUROR:  Hello.

6           THE COURT:  Hello.  You are Juror Number 25,

7   correct?

8           THE PROSPECTIVE JUROR:  Yes.

9           THE COURT:  You had your hand up.  What can you tell

10  me?

11          THE PROSPECTIVE JUROR:  This is the price gouging,

12  right, of drugs?

13          THE COURT:  This case has nothing to do with drugs.

14          THE PROSPECTIVE JUROR:  My kids use those drugs.

15          THE COURT:  As I said, the case does not concern

16  anything that you might have read or heard about the pricing

17  of certain pharmaceuticals.

18          THE PROSPECTIVE JUROR:  It affects my opinion of

19  him.

20          THE COURT:  All right.  The question for you is

21  whether you, despite having heard reports in the media about

22  Mr. Shkreli, whether you could maintain a fair and impartial

23  state of mind and listen with an open mind to the evidence and

24  decide this case based only on the evidence at this trial and

25  apply the law as I instruct you.

```
                         Side Bar                        27
```

1    THE PROSPECTIVE JUROR:  I don't think so, not based

2    on what I've seen, his interviews, and the fact that impacts

3    my kids.

4    THE COURT:  Okay.

5    THE PROSPECTIVE JUROR:  No.

6    THE COURT:  All right.  Let me ask you to step over

7    to the side.

8    (Prospective juror leaves side bar.)

9    THE COURT:  This is Juror Number 25.

10    MR. BRAFMAN:  We would move to challenge him for

11    cause, Your Honor.

12    THE COURT:  Any objection?

13    MS. KASULIS:  No objection.

14    (Prospective juror joins side bar.)

15    THE COURT:  Sir, come here.  You don't have to step

16    up here.

17    THE PROSPECTIVE JUROR:  Okay.

18    THE COURT:  I am going to excuse you.  I am going to

19    ask you to take your things, go back to the jury room and tell

20    them you are available to serve on some other jury.

21    (Prospective juror excused.)

22    (In open court.)

23    THE COURT:  Was there anyone else in this row?

24    You are Juror Number 30.  Please come forward.

25    (Side bar continues; prospective juror joins.)

```
                        Side Bar                    28
```

1          THE COURT:  Yes, ma'am.  You are Juror Number 30?

2          THE PROSPECTIVE JUROR:  Yes.

3          THE COURT:  What can you tell me?

4          THE PROSPECTIVE JUROR:  So I'm aware of who this

5   individual is in the media.  From what I understand, and

6   correct me if I'm wrong, this is the man who raised the price

7   of EpiPen.

8          THE COURT:  Well, the media -- he's not involved

9   with EpiPens, but there have been reports about pricing

10  pharmaceuticals.

11         THE PROSPECTIVE JUROR:  Regardless.  I'm aware of

12  that to an extent and I don't think I would be fair in this

13  case.

14         THE COURT:  Well, the question is whether as a

15  juror -- there is an oath that will be given to you later to

16  decide this case based only on the evidence presented at this

17  trial and to apply the law as I instruct you.  The question

18  for you is whether, given what you have heard in the media,

19  could you be fair and open-minded to both sides as you listen

20  to the evidence and, ultimately, decide the case based only on

21  that evidence at trial and the ignore whatever else you have

22  heard about this gentleman.

23         THE PROSPECTIVE JUROR:  I could be fair with the

24  evidence, yes.

25         THE COURT:  Could you decide the case based only on

Side Bar                                      29

1    the evidence?

2            THE PROSPECTIVE JUROR:  Yes.

3            THE COURT:  And put out of your mind what you have

4    heard about him in the media?

5            THE PROSPECTIVE JUROR:  When you ask it the second

6    way, no.

7            THE COURT:  Okay.  Please explain that to us because

8    all of us want to make sure that you have --

9            THE PROSPECTIVE JUROR:  I just -- I'm not sure.  I

10   don't know the details yet, so I'm not sure if I would be

11   able -- I might be biased against the individual.

12           THE COURT:  Because on what you have read?

13           THE PROSPECTIVE JUROR:  Right.

14           THE COURT:  All right.  So you would not be able to

15   divorce what you have heard in the media about him from --

16           THE PROSPECTIVE JUROR:  I don't believe so.

17           THE COURT:  -- what the evidence is at the trial?

18           THE PROSPECTIVE JUROR:  Right.

19           THE COURT:  Please step just over to the side.

20           (Prospective juror leaves side bar.)

21           MR. BRAFMAN:  We challenge the juror for cause.

22           THE COURT:  Any objection?  This is Juror Number 30.

23           MS. KASULIS:  No objection.

24           MS. SMITH:  I believe she's 29.

25           MR. BRAFMAN:  No, she's 30.

```
                          Side Bar                      30

 1              (Prospective juror joins side bar.)

 2              THE COURT:  Ma'am, we are going to excuse you from

 3     this panel.  You should go back to the jury room and tell them

 4     you have been excused but you are available to sit on some

 5     other case.

 6              THE PROSPECTIVE JUROR:  Okay.

 7              THE COURT:  Thank you for your candor.

 8              (Prospective juror excused.)

 9              (In open court.)

10              THE COURT:  Is there anyone else in the first three

11     rows?

12              All right.  Just so you know, ladies and gentlemen,

13     when a juror has been excused, they are not excused from jury

14     duty.

15              Juror Number Four.

16              (Side bar continues; prospective juror joins.)

17              THE COURT:  Have a seat, sir.  Juror Number Four?

18              THE PROSPECTIVE JUROR:  Yes.  I no feel very

19     comfortable with my English.

20              THE COURT:  How long have you been in this country?

21              THE PROSPECTIVE JUROR:  Ten years.

22              THE COURT:  How many years?

23              THE PROSPECTIVE JUROR:  Ten.

24              THE COURT:  And what do you do for a living?

25              THE PROSPECTIVE JUROR:  I working -- I live in
```

Side Bar                        31

1    New York now three year.  After, I live in Miami.  I working

2    from one company from Venezuela, freight forward.

3              THE COURT:  A freight forwarding company in

4    Venezuela.  Okay.  Do you have occasion to speak to your

5    colleagues in English?

6              THE PROSPECTIVE JUROR:  I learn English but

7    basically, not to take action in this case.  That's the

8    problem.  I come in, I can ask, I can speak English very

9    little.  Not for this.

10             THE COURT:  Do you understand English?

11             THE PROSPECTIVE JUROR:  A little.

12             THE COURT:  And in the case of your freight

13   forwarding work, do you converse with other members of the

14   public, customers?

15             THE PROSPECTIVE JUROR:  In Spanish.

16             THE COURT:  Only in Spanish?

17             THE PROSPECTIVE JUROR:  Yes.  We working in Miami.

18   The company send the freight forwarding -- we working in Miami

19   from Venezuela to send things to Venezuela.  I know English

20   but not for this.  Sorry.  I want to stay.

21             THE COURT:  Did you ever study English?

22             THE PROSPECTIVE JUROR:  I studied the basic.

23             THE COURT:  How many years did you study?

24             THE PROSPECTIVE JUROR:  Two years of Miami college.

25             THE COURT:  And are you having difficulty

```
                        Side Bar                       32
```

1   understanding what I have said so far?

2           THE PROSPECTIVE JUROR:  I understand a little thing.

3   I want to no -- I no want to -- when you asked me in there, I

4   no can ask, say anything.  I don't want to excuse.  I want to

5   learn, know that.

6           THE COURT:  Okay.  Let me just have you step over

7   there, sir.

8           (Prospective juror leaves side bar.)

9           MR. BRAFMAN:  Your Honor, this case is going to

10  involve more than just basic English.

11          THE COURT:  I know.

12          MR. BRAFMAN:  I think we have to challenge him for

13  cause.

14          MS. KASULIS:  No objection.

15          MS. SMITH:  No.

16          THE COURT:  All right.  I mean, we do have a lot of

17  jurors often that come and say this and they are speaking

18  English in their regular life, but I will excuse him because I

19  do agree, there's some complex information that will be

20  discussed.

21          MR. BRAFMAN:  Thank you.

22          (Prospective juror joins side bar.)

23          THE COURT:  Sir, I am going to excuse you but I

24  would ask you to please go back to the jury room and tell them

25  you are available to sit on some other case.

```
                        Side Bar                        33
```

1          THE PROSPECTIVE JUROR:  Okay.

2          THE COURT:  Thank you.

3          THE PROSPECTIVE JUROR:  Thank you.

4          (Prospective juror excused.)

5          THE COURT:  Is there anyone else in the first three

6    rows to my left?

7          All right.  Let's talk about the folks in the first

8    row in front of me.

9          You are Juror Number 40.  Come on up, sir.

10          (Side bar continues; prospective juror joins.)

11          THE PROSPECTIVE JUROR:  Good morning.

12          THE COURT:  Good morning.  How are you?

13          THE PROSPECTIVE JUROR:  I'm fine.

14          THE COURT:  All right.  What can you tell us?

15          THE PROSPECTIVE JUROR:  Well, I don't think I can be

16   fair and impartial based on the media coverage.  I saw the

17   case about the prescription medicine, there were price

18   increases.  I'm taking prescription medication.  I would be

19   upset if it went up by 1,000 percent.  I saw the testimony on

20   TV to Congress and I saw his face on the news last night.  So,

21   by the time I came in and sat down and he turned around, I

22   knew who it was and I felt immediately I was biased.  So I

23   don't feel that I can be, you know, honest and, you know, to

24   the defendant.  I would hate to be in a situation where I'm

25   prejudiced by what I know.

Side Bar                              34

1          THE COURT:  It is extremely important that every

2     juror maintain an open and fair state of mind toward both

3     sides throughout this case.

4          THE PROSPECTIVE JUROR:  Yes.

5          THE COURT:  So, the question I have for you is

6     whether you could put aside anything you may have heard about

7     this gentleman in the media and what you have heard about this

8     gentleman in the media has nothing to do with the issues in

9     this case.

10         Could you put that out of your mind and decide this

11    case based only on the evidence at this trial?

12         THE PROSPECTIVE JUROR:  Honestly, at this point, I

13    don't think that I could.

14         THE COURT:  All right.  I will ask you to step over

15    to the side.

16         (Prospective juror leaves side bar.)

17         MR. BRAFMAN:  We challenge Juror Number 40 for

18    cause, Your Honor.

19         MS. SMITH:  No objection.

20         THE COURT:  All right.

21         (Prospective juror joins side bar.)

22         THE COURT:  Sir, we are going to excuse you.

23         THE PROSPECTIVE JUROR:  Yes.

24         THE COURT:  We will ask you to go back to the jury

25    room and tell them you are available to sit on some other

35

1  case.

2          THE PROSPECTIVE JUROR:  All right.  Thank you.

3          (Prospective juror excused.)

4          THE COURT:  So what I'm going to do is we're going

5  to start moving jurors, starting at number 42 into the various

6  spots.  All right.  And I will ask them as I call the numbers

7  whether their answers to my questions would be yes and if so,

8  they will come directly here.

9          We are the starting at number 42.  Is that

10  consistent with your notes everybody?

11          MR. BRAFMAN:  And you'll announce where 42 is going

12  to be sitting, what their new number is?

13          THE COURT:  Yes.  They will go to Number One.

14          MS. KASULIS:  What happened to 41?

15          THE COURT:  Because we're missing number 23, we had

16  to move.

17          MS. KASULIS:  Thank you.

18          (In open court.)

19          THE COURT:  All right.  Juror Number 42, are you in

20  the room?

21          Yes, ma'am.  Would your answers to my questions have

22  been "yes"?

23          THE PROSPECTIVE JUROR:  No.

24          THE COURT:  Would you have answered "yes" to any of

25  my questions so far?

1           THE PROSPECTIVE JUROR:  No.

2           THE COURT:  All right.  Please go to the seat that

3    was previously occupied by Juror Number One.  It's in the

4    front row on the left, the far left.  Thank you.

5           (Continued on next page.)

```
                        Sidebar                        37
```

1    (Continuing)

2              (In open court.)

3              THE COURT:  Juror No. 43, would your answers to any

4    of my questions be yes that I've asked so far?  No?

5              So I will ask you, ma'am, to please go sit in the

6    seat that was previously occupied by Juror No. 4, which is on

7    the front row.  You'll see the label on the seat.

8              Juror No. 44, would your answers to my questions

9    have been yes?  No?

10             All right.  Let me ask you, then, to please go sit

11   in the seat that was previously occupied by Juror No. 17,

12   which should be in the second row up, and I'll point you to

13   the seat.  Thank you.

14             Juror No. 45, sir, would your answers to my

15   questions have been yes to any of those questions?

16             THE PROSPECTIVE JUROR:  No.

17             THE COURT:  Let me ask you, then, to sit in the seat

18   previously occupied by Juror No. 18.

19             (Sidebar continues.)

20             THE COURTROOM DEPUTY:  Would it be easier for all of

21   you if I now move -- since we're missing No. 23, I think we

22   should just leave that vacancy.  Wouldn't it be easier to

23   conceptualize who is here and who is not, rather than shift

24   people?

25             I was going to call the next person and put them in

Sidebar                                    38

1   Seat 25.

2            MR. BRAFMAN:  Okay.

3            MS. KASULIS:  Yes.

4            (In open court.)

5            THE COURT:  Juror No. 46, would your answers to my

6   questions have been yes?  Okay.  Please come up here.

7            (Sidebar continues; prospective juror joins.)

8            THE COURT:  No. 46, yes, ma'am.  Can you tell us,

9   what is it that you said you'd have yes answers to some of my

10  questions?

11           THE PROSPECTIVE JUROR:  Yes.  Basically, I heard

12  about it in the news.  And I take care of my family that's

13  terminally ill, so I have very strong opinions about

14  healthcare and medicine.

15           THE COURT:  Well, ma'am, everybody has opinions

16  about issues of importance in our society today, our

17  healthcare and other issues.

18           This case does not concern pharmaceutical pricing.

19  And the question that you must answer for us, if you could,

20  please, to the best of your honest ability, is whether you

21  could maintain a fair and open mind to both sides throughout

22  this trial and decide this case based only on the evidence

23  presented in this trial and apply the law as I instruct you.

24           THE PROSPECTIVE JUROR:  Most likely not.  I can't.

25  I'm just too clouded by having family members die of terminal

LAM      OCR      RPR

```
                        Sidebar                      39
```

1   illnesses.  It wouldn't be fair.  Plus, I'm a paralegal.

2          THE COURT:  Well, that's not disqualifying.

3          THE PROSPECTIVE JUROR:  It's not disqualifying, I

4   understand that.

5          I don't think in this instance I could keep an open

6   mind.

7          THE COURT:  Let me have you step back.

8          (Prospective juror leaves sidebar.)

9          MR. BRAFMAN:  We would challenge No. 46 for cause.

10          MS. KASULIS:  No objection.

11          (Prospective juror joins sidebar.)

12          THE COURT:  Ma'am, you're going to be excused from

13   this case.  Please go back to the jury room.  Maybe you can

14   sit on another case.

15          THE PROSPECTIVE JUROR:  Okay.  Thank you.

16          (Prospective juror excused.)

17          (In open court.)

18          THE COURT:  Juror No. 47, ma'am, would your answers

19   to any of my questions be yes?

20          THE PROSPECTIVE JUROR:  Yes.

21          THE COURT:  Please come up.

22          (Sidebar; prospective juror joins.)

23          THE COURT:  Yes, ma'am.

24          THE PROSPECTIVE JUROR:  I know he's the most hated

25   man in America.  And in my opinion, he equates with Bernie

Sidebar                                              40

1   Madoff with the drugs, for women, pregnant women, going from

2   $15 to $750.

3            My parents are in their eighties.  They're

4   struggling to pay for their medication.  My mother was telling

5   me yesterday how my father's cancer drug is $9,000 a month.

6            So, I can't be impartial, I'm sorry.

7            THE COURT:  This case does not concern anything

8   related to pharmaceutical pricing, as reported in the media in

9   relation to this gentleman.  The case is going to come before

10  you on evidence that you must consider fairly and with an open

11  mind.

12           And the question is whether you can set aside

13  anything that you might have heard or any opinions you might

14  have formed about the Defendant with regard to what you heard

15  in the media and decide with an open and fair mind to both

16  sides the issues in dispute based only on the evidence that

17  comes before you at the trial.

18           THE PROSPECTIVE JUROR:  I would find that difficult.

19           THE COURT:  All right.  And that's based on your

20  parents' experience with medication?

21           THE PROSPECTIVE JUROR:  It's based on people work

22  very hard for their money.  He defrauded his company and his

23  investors and that's not right.

24           THE COURT:  Let me ask you to step back over to the

25  side, please.

```
                        Sidebar                    41
```

1             (Prospective juror leaves sidebar.)

2             MR. BRAFMAN:  I'd challenge her for cause although

3    it would present a very interesting professional challenge to

4    try and convert her.  Challenge her for cause twice.

5             THE COURT:  We'll grant the application without

6    objection from the Government.  Juror No. 47 is excused.

7             (Prospective juror joins sidebar.)

8             THE COURT:  Ma'am, we're going to excuse you.

9    Please go down to the jury room where you started this

10   morning.  Tell them you may be able to sit on some other case.

11   Thank you.

12            (Prospective juror excused.)

13            (In open court.)

14            THE COURT:  Juror No. 48, would any of your answers

15   to my questions have been yes?

16            THE PROSPECTIVE JUROR:  No.

17            THE COURT:  Please, then, take the seat of Juror No.

18   25.  It's on the rows to my left.

19            (Sidebar continues.)

20            MR. AGNIFILO:  48 is 25.

21            MS. SMITH:  Your Honor, the Government just wants to

22   put on the record that if the Defendant takes the stand and

23   testifies, it is possible that some of this information opens

24   the door to this.

25            THE COURT:  Okay.

```
                          Sidebar                    42
```

1              MS. SMITH:  It might come up on cross-examination.

2     So, we're wondering in terms of the instruction to the

3     jurors -- and, obviously, see what the defense says -- that it

4     be that the charges in the case are unrelated to that reported

5     conduct.

6              Because I just don't want to say it will never come

7     up.  It's obviously not part of our case-in-chief, but I don't

8     know how the door might be open or if the Defendant testifies.

9              THE COURT:  If I haven't made that clear enough, I

10    will do so.

11             MR. BRAFMAN:  Judge, if someone is in the

12    challenge-for-cause arena, I'm not certain we need to belabor

13    the issue because we would strenuously object.  And,

14    hopefully, that never comes in, but I think she makes a good

15    point.  But I'm not certain we need to alert the whole panel

16    about that.

17             MS. SMITH:  No, I'm not saying that.  I guess I'm

18    saying in the sense someone says they can be fair, that they

19    don't think that it's never potentially going to come up at

20    trial.

21             THE COURT:  I think the only fellow who said

22    anything that has been maintained was the financial advisor.

23    He wasn't really talking about drug pricing at all.

24             MS. SMITH:  I agree.  I just wanted to put that out

25    there.

```
                        Sidebar                      43
```

1          THE COURT:  Okay.  Thank you.

2          I think the only other seat we need to fill right

3    now is Seat No. 30, correct?

4          MR. SRINIVASIN:  Right.

5          (In open court.)

6          THE COURT:  Juror 49, would your answers to any of

7    my questions have been yes?

8          THE PROSPECTIVE JUROR:  No.

9          THE COURT:  I'm going to ask you to go to the seat

10   previously occupied by Juror No. 30, which is in the last row

11   on the far right.

12         Juror No. 50, ma'am, would your answers to any of my

13   questions have been yes?

14         THE PROSPECTIVE JUROR:  No.

15         THE COURT:  All right.  Please go to the seat

16   previously occupied by Juror No. 40.

17         (Sidebar continues.)

18         THE COURT:  Do we have 40 now?

19         MS. ZELLAN:  Except for 23.

20         THE COURT:  So perhaps I should move Juror 41 into

21   Seat 23.  Would that be too confusing for you?

22         MS. SMITH:  No, that's okay.

23         (In open court.)

24         THE COURT:  Juror 41, would your answers to any of

25   my questions have been yes?

```
                        Sidebar                        44
```

1           THE PROSPECTIVE JUROR:  No.

2           THE COURT:  Please go to Seat No. 23.  It's on the

3      left.  There's a tag with Seat 23 on it.

4           (Sidebar continues.)

5           THE COURT:  I think we have everybody in 40 seats,

6      right?

7           THE LAW CLERK:  41 went to 23.

8           THE COURT:  Do you want to begin with the

9      questioning now?

10          MR. BRAFMAN:  Yes.

11          MS. KASULIS:  Yes.

12          THE COURT:  All right.  Thank you.

13          (Sidebar ends; in open court.)

14          THE COURT:  Thank you for bearing with me.

15          Knowing that the trial is scheduled to begin

16     tomorrow morning and last at most six weeks -- they're

17     projecting more likely four to six -- is there anyone who

18     would find it extremely burdensome to serve on this jury?

19          As you know, I recognize that jury service may be

20     inconvenient for some, if not all, of you.  But you must ask

21     yourself whether serving on this jury would be so much more

22     inconvenience or burdensome for you than for anyone else.

23          You should also ask yourself what attitude you would

24     want jurors to have if you or someone you care deeply about

25     were to be tried by a jury.  The right to a trial by jury is a

1  fundamental Constitutional right and you should bear in mind

2  the sacrifices that were made throughout our country's history

3  to preserve and defend this right in our Constitution.  Jury

4  service is a critical duty of every citizen.

5          Is there anyone, back to my question, who would find

6  jury service to be unduly inconvenient or burdensome?

7          (Pause in proceedings.)

8          THE COURT:  I'll just advise all of you that if you

9  are excused from this panel, you will be sent back to the jury

10  room for possible selection on some other trial that may not

11  take this amount of time.

12          I think Juror No. 2 had his hand up.  One moment,

13  please.

14          We'll go to sidebar before we hear from you.

15          (The following occurred at sidebar.)

16          MS. SMITH:  Your Honor, just for the record, we're

17  suggesting that we do these at sidebar because to the extent

18  that someone gives an explanation and you either excuse or

19  don't excuse them, it gives other people ideas.

20          THE COURT:  That's the problem.

21          MS. SMITH:  If they have a good excuse, obviously

22  they'll be excused.  But if you decide not to excuse somebody,

23  you don't want to give them a sense of what you'll excuse.

24          THE COURT:  Is that all right with everyone?

25          MR. AGNIFILO:  Yes.

```
                        Sidebar                          46
```

1            THE COURT:  I'm trying to do as much as I can in the

2      open.  We will examine Juror No. 2 at sidebar.

3            (In open court.)

4            THE COURT:  Juror No. 2, would you please come to

5      sidebar?

6            (Sidebar; prospective juror joins.)

7            THE COURT:  Yes, sir.

8            THE PROSPECTIVE JUROR:  I have a scheduled vacation

9      starting the 3rd through the 10th.  And on the 14th, I have a

10     meeting with my surgeon.  If I could be pushed out further...

11           THE COURT:  I wouldn't want you to the do anything

12     to jeopardize your medical condition by postponing an

13     examination or anything like that.

14           And you have a scheduled --

15           THE PROSPECTIVE JUROR:  Scheduled vacation the 3rd

16     through the 10th.

17           THE COURT:  And are you going outside the state?

18           THE PROSPECTIVE JUROR:  Yes.  We're going to

19     Vermont.

20           THE COURT:  Let me ask you to step just over there,

21     please.

22           (Prospective juror leaves sidebar.)

23           MR. BRAFMAN:  I have no objection, Judge, if you

24     want to excuse the juror.

25           MS. KASULIS:  Okay.

```
                        Sidebar                    47
```

1             (Prospective juror joins sidebar.)

2             THE COURT:  Sir, we'll excuse you.  I'd ask you to

3    go down to the jury room and see if there's some other case

4    where you can be of service.

5             THE PROSPECTIVE JUROR:  I apologize for any

6    inconvenience.

7             THE COURT:  No problem.  Everyone gets a vacation.

8             (Prospective juror excused.)

9             MR. KAPLAN:  Not everyone, your Honor.

10            THE COURT:  Me either.  No weekends either, thanks

11   to you guys.

12            (In open court.)

13            THE COURT:  Who else had their hand up?

14            Juror No. 3, please come to sidebar.

15            (Sidebar continues; prospective juror joins.)

16            THE COURT:  Yes, ma'am.

17            THE PROSPECTIVE JUROR:  It would be inconvenient

18   because I don't believe -- I can't be impartial and convict

19   anyone and it would bother me.  I don't think I could really

20   convict someone of any crime.

21            Also, I have my son in several incidences where he

22   was pulled off and thrown into jail and I don't feel

23   comfortable with stuff like that because I feel it's wrong.

24            And religiously, I'm not able to judge anyone.

25            THE COURT:  Your religion forbids you from judging

Sidebar                                                    48

1    anyone.

2         THE PROSPECTIVE JUROR:  Yes, because I believe you

3    can't judge someone if you are not there and you don't know

4    that they commit a crime.

5         THE COURT:  Well, our system asks jurors to decide

6    what happened or what the facts are based only on the evidence

7    at the trial.

8         THE PROSPECTIVE JUROR:  I know.  But evidence,

9    people could see things but it doesn't have to be true.

10        THE COURT:  That's why we have jurors decide who to

11   believe and who not to believe.

12        THE PROSPECTIVE JUROR:  I don't think I'd be able to

13   do that.  I know so.

14        THE COURT:  Let me ask you to step over to the side,

15   please.

16        (Prospective juror leaves sidebar.)

17        MR. BRAFMAN:  Why don't we give the Government this

18   challenge for cause?

19        MS. KASULIS:  We challenge, Judge.

20        THE COURT:  No objection from the defense?

21        MR. BRAFMAN:  No.

22        THE COURT:  We'll dismiss Juror No. 3.

23        (Prospective juror joins sidebar.)

24        THE COURT:  All right, ma'am, we're going to excuse

25   you.  And I'd ask you to just go report back to the jury

LAM      OCR      RPR

```
                         Sidebar                        49
```

1   service room.

2          THE PROSPECTIVE JUROR:  Yes.

3          THE COURT:  I think you have a religious prohibition

4   that doesn't allow you to serve.  You should let the jury

5   people know that.  But I'll excuse from you this panel in any

6   event.

7          THE PROSPECTIVE JUROR:  Thank you.

8          (Prospective juror excused.)

9          (In open court.)

10         THE COURT:  Who else in row one to my left?

11         Juror No. 5, come up, please.

12         (Sidebar continues; prospective juror joins.)

13         THE COURT:  Have a seat.  Yes, ma'am?

14         THE PROSPECTIVE JUROR:  I'm in the middle of a job

15  search.  So, being on trial, I won't be able to go on

16  interviews.  And, in fact, I have a potential employer waiting

17  on timing from me now.

18         THE COURT:  Waiting to interview you?

19         THE PROSPECTIVE JUROR:  Yeah, uh-huh, yeah.

20         So, if it starts tomorrow, I don't know when I would

21  go on the interviews.

22         THE COURT:  Well, it's a five- to six-week trial.

23         THE PROSPECTIVE JUROR:  So...

24         THE COURT:  What kind of job are you looking for?

25         THE PROSPECTIVE JUROR:  Manage payroll department.

```
                       Sidebar                    50
```

1           I was laid off in May and I've been interviewing,

2     you know, as the jobs come up.  So, you know, if I was to miss

3     a few jobs, once they hire, they hire and that's the end of

4     it.

5           THE COURT:  Understood.  Let me ask you to step just

6     over to the side, please.

7           THE PROSPECTIVE JUROR:  Sure.  Thank you.

8           (Prospective juror leaves sidebar.)

9           THE COURT:  I don't want to impair her ability to

10    find a job.

11          MR. BRAFMAN:  You need to do it, Judge.

12          THE COURT:  I'm going to excuse Juror No. 5 without

13    objection.

14          (Prospective juror joins sidebar.)

15          THE COURT:  Ma'am, we'll excuse you from this panel.

16    You can tell them that you're excused given your

17    circumstances.  Let them know and they'll give you a sheet of

18    paper and give you instructions.

19          THE PROSPECTIVE JUROR:  Thank you so much.

20          (Prospective juror excused.)

21          (In open court.)

22          THE COURT:  Who else had their hand up on row one?

23          Juror No. 6, please come up.

24          (Sidebar continues; prospective juror joins.)

25          THE COURT:  Hello, Juror No. 6.  What is your issue?

```
                        Sidebar                         51
```

1          THE PROSPECTIVE JUROR:  The company I work for, I

2     only have a limited amount of paid time off and I already have

3     vacations for the summer for my family scheduled.

4          THE COURT:  When?

5          THE PROSPECTIVE JUROR:  First week of August and

6     then in November for Thanksgiving.

7          But that's, again, very limited amount of paid time

8     off.  My company covers the first two weeks of trial for jury

9     duty.  After that, it's up to me to make up my time.

10          THE COURT:  What do you do, sir?

11          THE PROSPECTIVE JUROR:  I'm a structural engineer.

12          THE COURT:  Is there any way you can work during the

13     weekends?

14          THE PROSPECTIVE JUROR:  No, because it's primarily

15     based on projects that are lined up.  So, I can't work

16     overtime unless it's allowed for.

17          THE COURT:  So, you would only be paid for the first

18     two weeks?

19          THE PROSPECTIVE JUROR:  Yes.

20          THE COURT:  Would your company possibly be persuaded

21     if I were to call them and asked them to continue compensating

22     you?

23          THE PROSPECTIVE JUROR:  I've asked and you can try,

24     but they have an actually very strict policy.  I looked up and

25     spoke with HR before this process.

```
                        Sidebar                      52
```

1          THE COURT:  Two weeks of jury service and that's it.

2          THE PROSPECTIVE JUROR:  Yes.

3          THE COURT:  Would you please step over to the side?

4          (Prospective juror leaves sidebar.)

5          THE COURT:  All right.  I don't know that this

6    gentleman should be without funds for himself and his family.

7          MR. BRAFMAN:  I think we agree, Judge.

8          THE COURT:  I will excuse him, then.

9          (Prospective juror joins sidebar.)

10         THE COURT:  Sir, why don't you go downstairs and

11   tell them that you may be available to sit on a trial that

12   does not last more than two weeks.  And you're excused from

13   this one.

14         THE PROSPECTIVE JUROR:  Thank you.

15         THE COURT:  Thank you.

16         (Prospective juror excused.)

17         (In open court.)

18         THE COURT:  All right, anyone else on the first row?

19         Juror No. 8, come up on, sir.

20         (Sidebar continues; prospective juror joins.)

21         THE COURT:  You're Juror No. 8?

22         THE PROSPECTIVE JUROR:  It would be strictly a

23   financial issue if we were to meet every day for four to six

24   weeks.  I work for a very small company where I'm the only

25   employee.  My employer would not be able to afford to pay my

```
                          Sidebar                         53
```

1   salary and a replacement, nor would I be able to live off the

2   $40 a day.

3           THE COURT:  What do you do, sir?

4           THE PROSPECTIVE JUROR:  I'm a manager of a prop

5   house.

6           THE COURT:  A what?

7           THE PROSPECTIVE JUROR:  Prop house, for a

8   photography studio.

9           THE COURT:  You're the only employee?

10          THE PROSPECTIVE JUROR:  I'm the only full-time

11  employee.

12          THE COURT:  There's no one else that could be asked

13  to fill in during the time you're on duty?

14          THE PROSPECTIVE JUROR:  They could, but my employer

15  would not be able to afford to hire that person and pay me as

16  well.  And I would not be able to live off the $40 a day.  I'm

17  the sole provider for my family, which includes four people.

18          THE COURT:  All right.  Please step over there.

19          (Prospective juror leaves sidebar.)

20          THE COURT:  Does anyone have an objection to

21  excusing Juror No. 8?

22          MR. BRAFMAN:  Not by defense, your Honor.

23          MS. SMITH:  No, your Honor.

24          (Prospective juror joins sidebar.)

25          THE COURT:  Will you be compensated at all for any

```
                          Sidebar                    54
```

1   jury duty?

2           THE PROSPECTIVE JUROR:  I would not be.

3           THE COURT:  At all.

4           THE PROSPECTIVE JUROR:  No.

5           THE COURT:  You're excused.  Go downstairs and tell

6   them you've been excused from this panel.  Tell them what your

7   circumstances are and they'll give you guidance.  Thank you.

8           THE COURT:  Juror No. 8 is excused.

9           (Prospective juror excused.)

10          (In open court.)

11          THE COURT:  Did Juror No. 9 have her hand up?  Come

12  on up, ma'am.

13          (Sidebar continues; prospective juror joins.)

14          THE PROSPECTIVE JUROR:  Hello, your Honor.  I work

15  for Citigroup, that's been outsourcing jobs out of New York.

16  And I have no doubt after not being in the office for four to

17  six weeks they'll realize that they don't need me here and I'm

18  going to lose my job.  I fear for it every day.

19          THE COURT:  Do they have a jury policy that

20  employees are --

21          THE PROSPECTIVE JUROR:  No.

22          THE COURT:  This is Citigroup?

23          THE PROSPECTIVE JUROR:  Yeah, I mean, they have a

24  policy, but it doesn't matter:  When they realize that I'm not

25  in the office for six weeks, they'll take the opportunity to

```
                          Sidebar                    55
```

1   relocate me.

2           THE COURT:  Have you had any indication from your

3   employer --

4           THE PROSPECTIVE JUROR:  Yes, yes, because they

5   posted a position for my boss in Florida, so I know it's only

6   a matter of time.  It's very well known that they're moving as

7   many jobs as possible out of New York to cut costs.

8           THE COURT:  Let me have you step over to the side

9   for one moment and I'll get back to you in one minute.

10          (Prospective juror leaves sidebar.)

11          MR. BRAFMAN:  She's almost in tears.

12          MS. KASULIS:  Yeah.

13          THE COURT:  I think she'll be too distracted.

14          MS. KASULIS:  I think that's right.

15          THE COURT:  I'll excuse Juror No. 9 with the consent

16  of the parties.

17          (Prospective juror joins sidebar.)

18          THE COURT:  Ma'am, I will excuse you from this

19  panel.  You should go downstairs to the jury room and report

20  that you've been excused from this panel.  You can explain

21  your circumstances and see what advice they give you, okay?

22          THE PROSPECTIVE JUROR:  Okay, great.  Thank you,

23  your Honor.

24          (Prospective juror excused.)

25          (In open court.)

```
                        Sidebar                    56
```

1              THE COURT:  Anyone else on row one?

2              Let's look at row two.  Juror No. 11.

3              (Sidebar continues; prospective juror joins.)

4              THE COURT:  Juror No. 11, hello.

5              THE PROSPECTIVE JUROR:  My main concern is the

6      duration of the trial because of four to six.  I have six

7      contracts under our --

8              THE COURT:  Sorry, you'll have to speak up so

9      everybody can hear you.

10             THE PROSPECTIVE JUROR:  This is critical, my job.  I

11     manage six programs.  This is the end of the fiscal year, so I

12     have the reports, the budget for the new upcoming contracts,

13     and all of that that's my concern.  I wouldn't mind if the

14     trial would be, you know, shorter time.

15             Also, I have vacation time that I may take by the

16     21st.

17             THE COURT:  Of July?

18             THE PROSPECTIVE JUROR:  Yes.  I don't know if the

19     trial would be done in four weeks.  I wouldn't have a problem

20     with that, but those are my concerns.

21             THE COURT:  We cannot promise that it's going to be

22     a four-week trial.  These are estimates, obviously.  So, four

23     to six weeks, five to six weeks.

24             The question I have for you is whether your employer

25     can ask others to fill in for your functions that you perform

```
                         Sidebar                       57
```

1   to help you with the year end reports and other matters.

2   Would that be possible?

3            THE PROSPECTIVE JUROR:  I think that they could.

4            THE COURT:  For four to six weeks?

5            THE PROSPECTIVE JUROR:  They would have to if I'm

6   not available.  I will probably have to work from home also.

7            THE COURT:  On the evenings or weekends?

8            THE PROSPECTIVE JUROR:  Yes.

9            THE COURT:  Will your employer pay you for the time

10  that you're on jury service?

11           THE PROSPECTIVE JUROR:  I was told maybe for two

12  weeks.

13           THE COURT:  Do you know for sure what the policy is?

14           THE PROSPECTIVE JUROR:  I don't know.  I don't even

15  have my cell phone with me to check anything right now.

16           THE COURT:  Understood.  We did take those.

17           THE PROSPECTIVE JUROR:  I think it's two weeks or 30

18  days.  No more than that.

19           THE COURT:  Let me have you step over to the side.

20  I'll get right back to you.

21           (Prospective juror leaves sidebar.)

22           THE COURT:  All right.  Any objections to excusing

23  this juror?

24           MR. BRAFMAN:  No.

25           MS. KASULIS:  No.

```
                        Sidebar                      58
```

1            (Prospective juror joins sidebar.)

2            THE COURT:  Ma'am, we're going to excuse you, but

3     just go downstairs and tell them that you're available to sit

4     on a case that's less than two weeks or whatever time frame

5     you're allowed.

6            THE PROSPECTIVE JUROR:  Okay.

7            THE COURT:  So Juror No. 11 is excused with the

8     consent of both parties.

9            (Prospective juror excused.)

10           (In open court.)

11           THE COURT:  Looking again at the second row, is

12    there anyone?

13           All right.  Juror No. 13, come on up, ma'am.

14           (Sidebar continues; prospective juror joins.)

15           THE COURT:  Hi.  Have a seat.

16           Yes, ma'am, what is your situation?

17           THE PROSPECTIVE JUROR:  I'm traveling to Canada next

18    week for a family reunion and I won't be here.  And I need to

19    report to work on July 10.  I'm a single mom and have two

20    dependents, so I have to work on July 10.

21           THE COURT:  All right.  So Juror No. 13 has a family

22    reunion planned out of the country and also --

23           THE PROSPECTIVE JUROR:  July 10 return to work.  I

24    have two dependents, single parent.

25           THE COURT:  Let me ask you to step to the side.

```
                          Sidebar                    59
```

1              (Prospective juror leaves sidebar.)

2              THE COURT:  All right.  No objection to excusing

3    Juror No. 13; is that correct?

4              MR. BRAFMAN:  No.

5              MS. KASULIS:  No.

6              (Prospective juror joins sidebar.)

7              THE COURT:  Ma'am, we will excuse you.  Just go

8    downstairs to the juror room and tell them you've been

9    excused.

10             THE PROSPECTIVE JUROR:  Thank you.

11             THE COURT:  You can tell them your circumstances as

12   well.

13             (Prospective juror excused.)

14             MR. BRAFMAN:  Is the Court going to be taking a

15   morning break?

16             The Defendant has to use the rest room.  I don't

17   know about other jurors.  If he's permitted just to step out

18   and come back.  He's waiving his presence at sidebar anyway.

19             THE COURT:  He can do that.  Okay.

20             MR. BRAFMAN:  Thank you.

21             THE COURT:  If any of you need a break, let me know.

22             (In open court.)

23             THE COURT:  Anyone else in the second row?  Juror

24   No. 14.

25             (Continued on next page.)

```
                         Sidebar                    60
```

1        (The following occurred at sidebar; prospective

2   juror present.)

3             THE COURT:   Juror No. 14.   You are number 14.

4             THE PROSPECTIVE JUROR:   I live 50 miles away from

5   here.   The distance is very far, also with a low mileage

6   lease.   I have two young kids; one is going to music camp, the

7   other has day camp, so getting back and forth will be very

8   difficult as well.   I also have two booked vacations in the

9   next six weeks, one in July and one in August.

10            THE COURT:   We will not be on trial in August, I do

11  not believe.   It's possible we will go into the first week in

12  August.

13            Where are you going in July?

14            THE PROSPECTIVE JUROR:   Southern New Jersey, it is

15  my daughter's national competition, dance, both daughters,

16  actually.

17            THE COURT:   I see.   And is there anyone else besides

18  yourself to assist with childcare?

19            THE PROSPECTIVE JUROR:   My wife.

20            THE COURT:   Does she work?

21            THE PROSPECTIVE JUROR:   She does.   She's a school

22  psychologist.   Every once in a while she gets called in for

23  the summer to do testing for the district.

24            THE COURT:   Is there anybody else, neighbors or a

25  family member who could help you with transporting your

```
                          Sidebar                        61
```

1   children?

2           THE PROSPECTIVE JUROR:  We do have a neighbor.

3   She's, you know, moving around a lot, daily.  My mother is

4   around.  She works still full-time, so, at a hospital.

5           THE COURT:  Okay.  What town do you live in?

6           THE PROSPECTIVE JUROR:  I'm in Brightwaters.

7           THE COURT:  And so did you come into Brooklyn on the

8   train?

9           THE PROSPECTIVE JUROR:  No, I drove.

10          THE COURT:  You drove.  Okay.  Let me have you step

11  over to the chair.

12          THE PROSPECTIVE JUROR:  Okay.

13          (Prospective juror leaves sidebar.)

14          MR. BRAFMAN:  It's got to take two and a half hours

15  to drive in the morning from Brightwaters.

16          THE COURT:  I think the district is committed --

17          MR. BRAFMAN:  He can easily go to Central Islip.

18          THE COURT:  We are a district and the district has

19  tried very hard to maintain the diversity of the district.  It

20  looks like he does have other extenuating issues.

21          MR. BRAFMAN:  We have no objection.

22          MS. ZELLAN:  He has a booked prior vacation.

23          THE COURT:  No objection?

24          MS. KASULIS:  No.

25          THE COURT:  All right.  Juror No. 14 will be excused

```
                          Sidebar                    62
```

1   without objection.

2          (Prospective juror present at sidebar.)

3          THE COURT:  Sir, we are going to excuse you, but

4   perhaps you can go downstairs and let them know what your

5   circumstances are.

6          THE PROSPECTIVE JUROR:  Sure.  Thank you.

7          (Prospective juror excused.)

8          (In open court.)

9          THE COURT:  Who else on the second row?  Juror No.

10  17.  Come to the side, please.

11         Juror No. 44 is sitting in the place that would have

12  been occupied by Juror No. 17, as she noted she is Juror No.

13  44.

14         (Prospective juror present at sidebar.)

15         THE COURT:  Yes, ma'am.

16         THE PROSPECTIVE JUROR:  I lost my voice.  July 8th

17  is my brother's wedding.  Surrounding the wedding, we rented a

18  beach house for the week before, so starting Friday until July

19  14th.  Outside of that, though, I don't know if I would be a

20  good juror.  My boyfriend, like two years, is a cop and I

21  don't know.  I feel like I side with the side of the law

22  regardless of the case.

23         THE COURT:  Well, I think given your personal

24  circumstances, let me talk to the other lawyers and see if

25  they have an objection --

Sidebar                            63

1           THE PROSPECTIVE JUROR:  Okay.

2           THE COURT:  -- to excusing you because of your

3      family wedding.  The other issues are issues that we would

4      want to certainly explore.

5           THE PROSPECTIVE JUROR:  Yeah.

6           THE COURT:  Just wait here.

7           Just over there, yes.

8           (Prospective juror leaves sidebar.)

9           THE COURT:  Any objection to excusing No. 44?

10          MR. BRAFMAN:  No objection.

11          MS. KASULIS:  No objection.

12          THE COURT:  Ma'am, we will excuse you.  Please

13     report back to the jury room on the second floor.

14          THE PROSPECTIVE JUROR:  Okay.  Thank you.

15          (Prospective juror excused.)

16          (In open court.)

17          THE COURT:  Who else on the second row?  Juror No.

18     45, sitting in seat 18, come up.  Thank you.

19          (Prospective juror present at sidebar.)

20          THE COURT:  Hi.  Have a seat.

21          THE PROSPECTIVE JUROR:  Thank you.

22          THE COURT:  What can you tell us?

23          THE PROSPECTIVE JUROR:  Basically, I am a sole

24     proprietor.  My company is one person, me, and you are asking

25     me to shut down my company for six weeks.  I potentially

MDL        OCR        RPR

```
                          Sidebar                        64
```

1    wouldn't have any clients left when I got back.

2          THE COURT:  What do you do, sir?

3          THE PROSPECTIVE JUROR:  IT.

4          THE COURT:  IT.  Okay, and you have no employees?

5          THE PROSPECTIVE JUROR:  I do not.  Just me.

6          THE COURT:  Okay.  Let me ask you to step over to

7    the side for a moment.

8          THE PROSPECTIVE JUROR:  Sure.  Thank you.

9          (Prospective juror leaves sidebar.)

10         MR. BRAFMAN:  No objection, Your Honor.

11         THE COURT:  No objection to excusing No. 45.  Good?

12         MS. KASULIS:  No objection.

13         THE COURT:  Sir, we will excuse you.  Please go down

14   to the second floor and tell them the circumstances and they

15   will give you whatever paperwork you need.  Thank you.

16         THE PROSPECTIVE JUROR:  Thank you.

17         (Prospective juror leaves sidebar.)

18         THE COURT:  Was there anyone else?  Juror No. 19,

19   come forward, please.

20         (Prospective juror present at sidebar.)

21         THE COURT:  Hello again.  Yes?

22         THE PROSPECTIVE JUROR:  Okay, so, I'm a full

23   commission registered rep.  I buy and sell securities on a

24   daily basis to generate my living, four to six weeks would

25   hurt.

```
                     Sidebar                      65
```

1          THE COURT:  The question is whether you could do

2   your work after the jury service concludes for the day or on

3   weekends, or are you only able to do your work --

4          THE PROSPECTIVE JUROR:  During market hours.

5          THE COURT:  Okay.  And you are paid only on

6   commission?

7          THE PROSPECTIVE JUROR:  I'm full commission.

8          THE COURT:  And does your employer pay you while you

9   are on jury service?

10          THE PROSPECTIVE JUROR:  No, I don't believe so.

11   This is my first time.  It never came up.

12          THE COURT:  You should find out.  Some employers do,

13   especially financial-related employers will pay.

14          THE PROSPECTIVE JUROR:  I can inquire.

15          THE COURT:  Just so I understand, you earn only

16   commissions, you don't get a base salary?

17          THE PROSPECTIVE JUROR:  No base salary.  Only

18   commissions.

19          THE COURT:  Let me ask you to just stand over there.

20          (Prospective juror leaves sidebar.)

21          MR. BRAFMAN:  If he's full commission, they're not

22   going to have any problems with the earns --

23          THE COURT:  I know.  What we are doing is basically

24   deciding folks in his profession is never going to be able to

25   serve if they have this kind of arrangement, and that is

```
                        Sidebar                      66
```

1   troubling.  In any event, if there's no objection, I will

2   excuse Juror No. 19.

3            MS. KASULIS:  No objection.

4            (Prospective juror present at sidebar.)

5            THE COURT:  Sir, we are going to excuse you, but you

6   should go back to the second floor and report.  Maybe there is

7   a shorter trial you can sit on.

8            THE PROSPECTIVE JUROR:  Thank you.

9            (Prospective juror leaves sidebar.)

10            THE COURT:  Juror No. 20, come up, please.

11            (Prospective juror present at sidebar.)

12            THE COURT:  Have a seat.  Yes, sir?

13            THE PROSPECTIVE JUROR:  Hi, I have a wedding in

14   California with flights already paid for in three weeks from

15   the 18th to the 26th, that I am a member of the wedding party.

16   I'm sorry.

17            THE COURT:  That's pretty compelling.  Stand over

18   there, please.

19            (Prospective juror leaves sidebar.)

20            THE COURT:  Any objection to excusing Juror No. 20?

21            MR. BRAFMAN:  No, Your Honor.

22            MS. KASULIS:  No, Your Honor.

23            (Prospective juror present at sidebar.)

24            THE COURT:  Sir, if you would kindly go down to the

25   jury room and tell them you have been excused from this panel.

Sidebar                                67

1    Maybe there is a shorter trial that you can serve on.

2              THE PROSPECTIVE JUROR:  Thank you.

3              (Prospective juror excused.)

4              (In open court.)

5              THE COURT:  Let's go to row three.  Juror No. 25,

6    please come forward.  You were formerly 48 and now you are 25.

7    This was Juror No. 25, now 48.

8              (Prospective juror present at sidebar.)

9              THE COURT:  Yes, sir.

10             THE PROSPECTIVE JUROR:  Okay, Your Honor, I have --

11   I have certain medical conditions, heart disease and high

12   blood pressure.  Right now I am taking therapy for my

13   herniated disc, right.

14             THE COURT:  Okay.

15             THE PROSPECTIVE JUROR:  And I think the stress is

16   going to be too much for me.  I wanted to get the experience

17   of coming for a week.

18             THE COURT:  I appreciate that.

19             THE PROSPECTIVE JUROR:  But five weeks, because I'm

20   still presently on the physical therapy for the back.

21             THE COURT:  Well, I appreciate that.  I wouldn't

22   want you to have any health consequences by serving.  There

23   might be a trial that you can serve on that is shorter.  This

24   is going to be five to six weeks.

25             THE PROSPECTIVE JUROR:  That's why I...

```
                          Sidebar                        68
```

1          THE COURT:  I will excuse you.  If you would kindly

2     go downstairs to the jury room and tell them you are excused

3     from this panel and see if there is a shorter trial for you.

4          THE PROSPECTIVE JUROR:  Thank you, Your Honor.

5          (Prospective juror excused.)

6          THE COURT:  I take it nobody is going to object.

7          MR. BRAFMAN:  No objection.

8          MS. KASULIS:  No objection.

9          THE COURT:  I should have asked first.  I'm sorry.

10         (In open court.)

11         THE COURT:  In the last row, Juror No. 26, please

12    come up.

13         (Prospective juror present at sidebar.)

14         THE COURT:  Hello.  Please have a seat.  Yes, ma'am.

15         THE PROSPECTIVE JUROR:  Yes.  Six weeks is too long

16    for me.  I care for my mother and my husband and I take care

17    of my nine year-old and grandson.  The length of time, my

18    daughter took off two weeks so she can stay for two weeks, but

19    she can't stay any longer.

20         THE COURT:  Okay.  She took off from her own job to

21    fill in for you on the jury?

22         THE PROSPECTIVE JUROR:  Right.

23         THE COURT:  There is no one else in your family or

24    friends or group that can help out?

25         THE PROSPECTIVE JUROR:  No, I'm the only daughter

Sidebar                                      69

1  and I had to retire early to help take care of my mom.

2         THE COURT:  All right.  Let me ask you to step over

3  to the side there and we will get right back to you.

4         THE PROSPECTIVE JUROR:  Okay.

5         (Prospective juror leaves sidebar.)

6         THE COURT:  Does anyone object?

7         MR. BRAFMAN:  If it saves time, I will speak just

8  for the defense, but if it is patently, obviously unfair, you

9  can excuse them.

10        THE COURT:  I always do it that way.  I just want my

11 record.  I want my record.

12        MR. BRAFMAN:  Okay thank you.

13        THE COURT:  So we will excuse Juror No. 26 without

14 objection.

15        (Prospective juror present at sidebar.)

16        THE COURT:  Ma'am, you are excused.

17        (Prospective juror leaves sidebar.)

18        THE COURT:  Juror No. 27, please come forward.

19 Juror No. 27.

20        (Prospective juror present at sidebar.)

21        THE COURT:  Have a seat, sir.

22        THE PROSPECTIVE JUROR:  Currently, I'm dealing with

23 a potential pneumonia.  I am in and out of the doctor.  I'm

24 afraid it might interfere with me serving as a juror.  I'm

25 supposed to go see him in a couple of weeks.

```
                      Sidebar                      70
```

1           THE COURT:  So you have been diagnosed with

2     pneumonia?

3           THE PROSPECTIVE JUROR:  They're monitoring it.  I

4     had pneumonia and it's starting to act up again, so they want

5     to monitor it.

6           THE COURT:  So you have doctors' appointments

7     scheduled in the next six weeks?

8           THE PROSPECTIVE JUROR:  Four to six weeks.

9           THE COURT:  Let me ask you to step to the side.

10           (Prospective juror leaves sidebar.)

11           THE COURT:  Does anybody object to excusing Juror

12     No. 27?

13           MS. KASULIS:  No objection.

14           MR. BRAFMAN:  No, Your Honor.

15           (Prospective juror present at sidebar.)

16           THE COURT:  Sir, please go downstairs to the second

17     floor where you checked in, the jury room, and let them know.

18           (Prospective juror excused.)

19           (In open court.)

20           THE COURT:  Anyone in the last row?  Juror No. 28,

21     please come forward.

22           (Prospective juror present at sidebar.)

23           THE COURT:  Hello, ma'am.  Have a seat.

24           THE PROSPECTIVE JUROR:  Hi.

25           THE COURT:  What would you like to tell us?

```
                        Sidebar                    71
```

1          THE PROSPECTIVE JUROR:  Right now, I don't have --

2    right now is medical issues.  I'm not in my medical mind right

3    now because I am going to therapy for depression.  I don't

4    have any capabilities to make any decisions right now.  That's

5    what I wanted to say.

6          THE COURT:  Okay.

7          THE PROSPECTIVE JUROR:  I got papers.

8          THE COURT:  I don't want to intrude, but you are

9    telling me your doctor has diagnosed you with depression?

10          THE PROSPECTIVE JUROR:  Yes, I started seeing him

11   two weeks ago.  Thursday, I have to see him again and then I

12   have to see a psychiatrist.

13          THE COURT:  Ma'am, I am going to excuse you and ask

14   you to go down to the jury room and tell them you have been

15   excused.

16          THE PROSPECTIVE JUROR:  To the jury room?

17          THE COURT:  Just where you started out this morning.

18   You can tell them your medical issues and you will probably be

19   excused.

20          (Prospective juror excused.)

21          THE COURT:  I take it if anyone objects, you will

22   let me know?

23          MR. BRAFMAN:  Yes, your Honor.

24          MS. KASULIS:  Yes.

25          (In open court.)

```
                        Sidebar                    72
```

1          THE COURT:  Anyone else on the third row?  Juror No.

2     49, now you are 30.

3               (Prospective juror present at sidebar.)

4          THE COURT:  Yes, ma'am, how are you?

5          THE PROSPECTIVE JUROR:  Nervous.

6          THE COURT:  Don't be nervous.  It is important that

7     you feel free to be truthful and open about anything that you

8     need to tell us.  Yes, ma'am.

9          THE PROSPECTIVE JUROR:  Well, I feel really nervous

10    and intimidated by the Court.  I get a lot of tension

11    headaches from being anxious, listening and paying attention,

12    being on the case for six weeks will be impossible for me.

13         THE COURT:  Do you take medication for your

14    condition?

15         THE PROSPECTIVE JUROR:  I have Fioricet as needed

16    and ibuprofen.

17         THE COURT:  Does that medication affect your ability

18    to understand or be clear in your mind?

19         THE PROSPECTIVE JUROR:  No, like paying attention,

20    when you have a headache, you don't really ... the lights

21    affect you.

22         THE COURT:  If you are given breaks and also water

23    to take medication while you are serving, would that --

24         THE PROSPECTIVE JUROR: The medication helps

25    partially.  It doesn't really relieve the headaches.

```
                         Sidebar                           73
```

1   Basically laying down and relaxing.  I am just being truthful.

2           THE COURT:  I will ask you to step over here.

3           (Prospective juror leaves sidebar.)

4           THE COURT:  Any objection to excusing Juror No. 49?

5           MR. BRAFMAN:  No, Your Honor.

6           MS. KASULIS:  No, Your Honor.

7           (Prospective juror present at sidebar.)

8           THE COURT:  Ma'am, we will excuse you.  Go back to

9   the jury room and let them know your situation.

10          (Prospective juror excused.)

11          (In open court.)

12          THE COURT:  Is there anyone else on the rows to the

13  left?

14          Juror No. 32, would you come forward, please.

15          For the record, rest of you, please bear with us.

16  Thank you.

17          (Prospective juror present at sidebar.)

18          THE COURT:  No. 32, how are you, sir?

19          THE PROSPECTIVE JUROR:  I'm doing good.

20          THE COURT:  What can you tell me?

21          THE PROSPECTIVE JUROR:  You said four to six weeks?

22          THE COURT:  Yes.

23          THE PROSPECTIVE JUROR:  I'm going on vacation the

24  last week of July.  I cancelled this week off.  My mother

25  father got married 60 years ago.  I cancelled this week so I

1  can do it in July.  You said four to six weeks.  That's the

2  only problem I have.

3          THE COURT:  So you have a commitment?

4          THE PROSPECTIVE JUROR:  Yes, because I am picking

5  them up to take them to Baltimore for a suite for the weekend

6  by themselves.

7          THE COURT:  That's very nice.  Let me just ask you

8  to step back over there very quickly.  Don't go far.

9          (Prospective juror leaves sidebar.)

10          THE COURT:  Any objection to excusing him?

11          MS. KASULIS:  No.

12          MR. BRAFMAN:  No.

13          (Prospective juror present at sidebar.)

14          THE COURT:  We will excuse you.  Please go

15  downstairs to the second floor where you checked in and let

16  them know.

17          (Prospective juror leaves sidebar.)

18          THE COURT:  Anyone else in the front row?  Juror No.

19  34.  Come on up, please.

20          (Prospective juror present at sidebar.)

21          THE COURT:  Hello.

22          THE PROSPECTIVE JUROR:  How are you?

23          THE COURT:  Have a seat.  Yes, ma'am.

24          THE PROSPECTIVE JUROR:  I -- it would be a hardship

25  with work.  I only get paid two days by my employer.

```
                        Sidebar                       75
```

1          THE COURT:  Two days?

2          THE PROSPECTIVE JUROR:  Two days.  Also, I have an

3     aided number here from New York City, my daughter was just

4     injured on the subway and she doesn't drive.  I mean, I was

5     with her.  She can also only take Suffolk transportation, a

6     SCAD bus, but all the hours aren't conducive to the physical

7     therapy.

8          THE COURT:  Okay.

9          THE PROSPECTIVE JUROR:  On July 5th and 17th, I have

10    post-operative doctors' appointments for my surgery.

11         THE COURT:  Okay, we will excuse you, ma'am.

12         THE PROSPECTIVE JUROR:  Okay.

13         THE COURT:  You have given us good reasons to excuse

14    you.

15         THE PROSPECTIVE JUROR:  Thank you, Your Honor.

16         (Prospective juror leaves sidebar.)

17         THE COURT:  Juror No. 34 is excused.

18         Was there anyone else on the front row?  Juror No.

19    35, please come on up.

20         (Prospective juror present at sidebar.)

21         THE COURT:  Juror No. 35, yes, sir.

22         THE PROSPECTIVE JUROR:  Yes.

23         THE COURT:  What did you want to tell us?

24         THE PROSPECTIVE JUROR:  I'm a restaurant manager, I

25    run all the daily operations on the business end, from

Sidebar                                    76

1   budgeting, inventory, staffing, hiring, firing, all that.  I

2   deal with fraudulent transactions on ordering, stuff like

3   that, all in the restaurant.  If I'm out for four to six

4   weeks, I'm not keeping up with staffing on my restaurant, my

5   business will deteriorate and lose customer base.  It also

6   affects the quality of life for the other managers because we

7   are short staffed, the management team, even me being here, I

8   have to go to work after I get out just to help alleviate

9   them, because I have people randomly filling in.

10          THE COURT:  You are one of many managers or several

11  managers?

12          THE PROSPECTIVE JUROR:  We have four managers in the

13  store.

14          THE COURT:  Okay.  And you said your employer cannot

15  use other managers to fill in.

16          THE PROSPECTIVE JUROR:  We are short staffed in

17  numerous stores.  If I'm out for four to six weeks, we are

18  shorter.  I write the schedule, I do the liquor ordering, all

19  that stuff.

20          THE COURT:  Is there any objection to excusing Juror

21  No. 35?

22          MR. BRAFMAN:  No, Your Honor.

23          MS. KASULIS:  No.

24          THE COURT:  You are excused.  Go back to the jury

25  room and let them know.

```
                         Sidebar                         77
```

1              (Prospective juror excused.)

2              (In open court.)

3              THE COURT:  Anyone else in the row in front of me?

4    Juror No. 37, please come forward.

5              (Prospective juror present at sidebar.)

6              THE COURT:  Yes.  How are you?

7              THE PROSPECTIVE JUROR:  Good.

8              THE COURT:  Just speak up.

9              THE PROSPECTIVE JUROR:  Okay, I'm nervous.

10             THE COURT:  That's all right.

11             THE PROSPECTIVE JUROR:  I want to let you know some

12   of the word you speak, I am not very understanding.

13             THE COURT:  Some of the words?

14             THE PROSPECTIVE JUROR:  There is a problem to be a

15   juror.  I want to know the case clearly, is it possible to be

16   fair to everybody.  I don't understand.  If I don't know

17   understand, I don't want to pretend.

18             THE COURT:  Have you been in this country for a

19   while?

20             THE PROSPECTIVE JUROR:  Yes.

21             THE COURT:  How long?

22             THE PROSPECTIVE JUROR:  11 years.

23             THE COURT:  Have you studied English at all?

24             THE PROSPECTIVE JUROR:  Two years.

25             THE COURT:  What do you do for a living?

```
                          Sidebar                        78
```

1          THE PROSPECTIVE JUROR:  My job?

2          THE COURT:  Yes.

3          THE PROSPECTIVE JUROR:  I work in the doctor's

4    office.

5          THE COURT:  Do you converse in English at all with

6    your patients or any --

7          THE PROSPECTIVE JUROR:  Not really.  So for me, the

8    solution is for liked ata entry.

9          THE COURT:  Data entry, all right.  So your concern

10   is you may not understand the evidence very well?

11         THE PROSPECTIVE JUROR:  Yes.

12         THE COURT:  Let me ask you to step over to the side.

13         (Prospective juror leaves sidebar.)

14         THE COURT:  There is no way to really know how her

15   English capacity is.  I am assuming she probably understands

16   and speaks more than she says, but we won't know that.

17         MR. BRAFMAN:  We don't have an objection for cause.

18         THE COURT:  Do you want to excuse her then?

19         MS. KASULIS:  Yes.

20         (Prospective juror present at sidebar.)

21         THE COURT:  Ma'am, I will excuse you.  I would ask

22   you to seriously consider serving on jury duty and working

23   always to improve your English skills because it is an

24   important service.

25         THE PROSPECTIVE JUROR:  Yes.  Thank you.

```
                          Sidebar                        79
```

1           THE COURT:  Where you checked in, just let them

2    know.

3           Juror No. 27 is excused.

4           (Prospective juror excused.)

5           THE COURT:  Juror No. 38, come up, sir.

6           (Prospective juror present at sidebar.)

7           THE PROSPECTIVE JUROR:  Hello.

8           THE COURT:  What is your issue?

9           THE PROSPECTIVE JUROR:  My five year-old daughter

10   has her last day in school on Wednesday.  We were going to

11   start hanging out together before she has camp in two weeks.

12   Being here would necessitate spending large amounts of money

13   on childcare, blah, blah, blah.

14          THE COURT:  Is there anyone else who can take care

15   of your child while you are serving?

16          THE PROSPECTIVE JUROR:  I could find somebody at

17   thousand a week to watch her.

18          I also have a work contract in California that

19   starts I think in four weeks.  I don't have my calendar on me.

20   It is in my phone.  It's three and a half to four weeks.

21   Given the duration you said, it would make it difficult for me

22   to be here.

23          THE COURT:  Just so I understand, there is nobody

24   else who could help you with your childcare before she goes to

25   camp?

```
                        Sidebar                          80
```

1          THE PROSPECTIVE JUROR:  My wife could quit her job.

2          THE COURT:  I'm just asking.

3          THE PROSPECTIVE JUROR:  No.

4          THE COURT:  Just step aside.

5          (Prospective juror leaves sidebar.)

6          THE COURT:  Any objection to excusing Juror No. 38?

7          MR. BRAFMAN:  No.

8          MS. KASULIS:  No.

9          (Prospective juror present at sidebar.)

10          THE COURT:  We will excuse you.  Please go back to

11   the jury room and let them know that you have been excused.

12          (Prospective juror excused.)

13          (In open court.)

14          THE COURT:  Anyone else?  Yes, ma'am.  Juror No. 40

15   who used to be 50.

16          (Prospective juror present at sidebar.)

17          THE COURT:  Yes, ma'am.

18          THE PROSPECTIVE JUROR:  I have treatment for T-cell

19   lymphoma twice a week and missing 12 treatments would be --

20          THE COURT:  Okay.  No, we are not going to have

21   that.  Then you are excused.  Let me ask you this.

22          (Prospective juror excused.)

23          (In open court.)

24          THE COURT:  Have we gotten through everybody?

25          MS. SMITH:  Yes.

```
                          Sidebar                          81
```

1          THE COURT:  Let me start calling more names and I

2    will ask if anyone's answers to my questions would be yes.

3          Juror No. 51, are you in the house?  Would your

4    answers to my questions have been yes?  Think back to all of

5    my questions.

6          No.  Please take a seat of Juror No. 2.

7          THE COURT:  Juror No. 52, would your answers to my

8    questions have been yes?

9          THE PROSPECTIVE JUROR:  Yes.

10         THE COURT:  Please come up to sidebar.

11         (Prospective juror present at sidebar.)

12         THE COURT:  Good morning.  Juror No. 52, how are

13   you?

14         THE PROSPECTIVE JUROR:  Good.  How are you?

15         I can't be partial when I walked in here today and I

16   looked at both tables and looked right at him and in my head

17   that's a snake not knowing who he was.  Maybe I have a sight

18   and I can't risk losing my job on that.

19         THE COURT:  All right.  You drew a conclusion about

20   this individual based on visual?

21         THE PROSPECTIVE JUROR:  I just walked in and looked

22   right at him and that's a snake.

23         MR. BRAFMAN:  That's a what?

24         THE PROSPECTIVE JUROR:  Snake.

25         MR. BRAFMAN:  Thank you.

```
                        Sidebar                    82
```

1          THE COURT:  So you don't believe that you could --

2          THE PROSPECTIVE JUROR:  No.

3          THE COURT:  The question that I had is you don't

4   believe you could put aside your impressions?

5          THE PROSPECTIVE JUROR:  No, you said securities

6   fraud.  You said wire fraud, no.

7          THE COURT:  All right.  Let me ask you to step

8   aside.

9          THE PROSPECTIVE JUROR:  Sure.

10         (Prospective juror leaves sidebar.)

11         MR. BRAFMAN:  So much for the presumption of

12  innocence.

13         THE COURT:  Challenging for cause?

14         MR. BRAFMAN:  Yes, your Honor.

15         MS. KASULIS:  Yes, your Honor.

16         THE COURT:  We will excuse Juror No.  52.

17         (Prospective juror present at sidebar.)

18         THE COURT:  We are going to excuse you and ask you

19  to go back to the central jury room and let them know you were

20  excused.

21         (Prospective juror excused.)

22         (In open court.)

23         THE COURT:  Juror No. 53, would you answers to my

24  questions be yes to any of my questions?

25         THE PROSPECTIVE JUROR:  Yes.

```
                          Sidebar                          83
```

1              THE COURT:  Please come up to sidebar.

2              (Prospective juror present at sidebar.)

3              THE COURT:  Hello, sir.

4              THE PROSPECTIVE JUROR:  How are you doing?

5              THE COURT:  Can you get up here okay?

6              THE PROSPECTIVE JUROR:  I can but my leg is killing

7     me.

8              THE COURT:  Please be careful.  Tell me what you

9     would like to say about any of the answers you would have

10    answered yes to my questions.

11             THE PROSPECTIVE JUROR:  The answer to the question I

12    don't understand and I don't feel comfortable.

13             THE COURT:  You don't feel comfortable with what?

14    Do you mean physically comfortable?

15             THE PROSPECTIVE JUROR:  Yeah.

16             THE COURT:  Are you suffering from some ailment?

17             THE PROSPECTIVE JUROR:  My knees and my back, couple

18    of days my work is lifting and bending.

19             THE COURT:  Are you taking any medication to help

20    with your pain?

21             THE PROSPECTIVE JUROR:  I called my doctor, but my

22    doctor is to is on vacation.  Right now, I am getting a little

23    dizzy.

24             THE COURT:  I'm sorry.

25             THE PROSPECTIVE JUROR:  I'm on my diabetes pill.

```
                        Sidebar                       84
```

1          THE COURT:  I see.  All right.  Well, I don't want

2      your medical condition to suffer, sir.  I am going to excuse

3      you.

4          THE PROSPECTIVE JUROR:  I appreciate it very much.

5          THE COURT:  Just please go back to the jury room

6      where you checked it in and tell them that you have been

7      excused.  Thank you, sir.  Take care.

8          THE PROSPECTIVE JUROR:  Okay.

9          (Prospective juror excused.)

10         THE COURT:  Juror No. 54, would your answers to my

11     questions be yes?

12         THE PROSPECTIVE JUROR:  Yes.

13         THE COURT:  Please come here to sidebar.

14         (Prospective juror present at sidebar.)

15         THE COURT:  Yes, ma'am, how are you?

16         THE PROSPECTIVE JUROR:  Good morning.  I work in

17     product development and I'm working on projects that are due

18     in the next two to three weeks and that would interfere with

19     that schedule.

20         THE COURT:  Is there anyone else in your office who

21     could assist you or fill in for you?

22         THE PROSPECTIVE JUROR:  No, not at this point.

23         THE COURT:  What is it that you do at product

24     development?

25         THE PROSPECTIVE JUROR:  I am a merchandiser.  I work

Sidebar                                    85

1    on products with designers and the product is due in the next

2    couple of weeks, so I have to be there to work with them.

3               THE COURT:  Okay.  Thank you.  Let me ask you to

4    step over to the side just for a moment.

5               (Prospective juror leaves sidebar.)

6               THE COURT:  Is there any objection to excusing Juror

7    No. 54?

8               MS. KASULIS:  No.

9               MR. BRAFMAN:  No, Your Honor.

10              THE COURT:  Ma'am, we will excuse you from this

11   panel.  There might be a shorter trial.  If you could please

12   head back to the jury room.  Thank you.

13              (Prospective juror excused.)

14              THE COURT:  Juror No. 54 is excused.

15              (In open court.)

16              THE COURT:  Juror No. 55.  Would your answers to any

17   of my questions be yes?

18              THE PROSPECTIVE JUROR:  Yes.

19              THE COURT:  Please come up to sidebar.

20              (Prospective juror present at sidebar.)

21              THE COURT:  Hello, have a seat.  Juror No. 55.

22              THE PROSPECTIVE JUROR:  Yes.

23              THE COURT:  You have to speak so everyone can hear

24   you.

25              THE PROSPECTIVE JUROR:  I am working as a pharmacist

```
                    Sidebar                        86
```

1    in a hospital, so we always have staffing issues, so it is

2    hard for me to take off four to six week.

3              THE COURT:  Well, there are other pharmacists who

4    could fill in for you if necessary; is that correct?

5              THE PROSPECTIVE JUROR:  Yes.

6              THE COURT:  Do you get paid when you are on jury

7    duty?

8              THE PROSPECTIVE JUROR:  Yes.

9              THE COURT:  So your employer could find other

10   pharmacists to fill in for you?

11             THE PROSPECTIVE JUROR:  If I have to, then they

12   will, yes.

13             THE COURT:  All right.  Is the pharmacy open 24/7 or

14   just during business hours?

15             THE PROSPECTIVE JUROR:  24/7.

16             THE COURT:  So those two pharmacists could fill in?

17             THE PROSPECTIVE JUROR:  I work in the day shift, so

18   they have to find somebody to cover me, but we just have like

19   short staff most days.  Just for me to take four to six weeks

20   may be a concern, but if I have to serve, then I serve.

21             THE COURT:  All right.  So your employer would not

22   prohibit you from serving in terms of your employer's

23   resources and ability to find another pharmacist to fill in

24   for you; is that correct?

25             THE PROSPECTIVE JUROR:  Repeat the question again.

```
                        Sidebar                      87
```

1           THE COURT:  Would your employer be able to find

2    another pharmacist to fill in for you while you are serving on

3    jury duty for four to six weeks?

4           THE PROSPECTIVE JUROR:  Yes.

5           THE COURT:  You would be paid during the time you

6    serve?

7           THE PROSPECTIVE JUROR:  Yes.

8           THE COURT:  Thank you.  Can you step back for a

9    moment, please.

10          THE PROSPECTIVE JUROR:  Sure.

11          (Prospective juror leaves sidebar.)

12          THE COURT:  I am not inclined to excuse her.  Does

13   anyone have a different view?

14          MR. BRAFMAN:  No.

15          MS. KASULIS:  No.

16          THE COURT:  Ma'am, could you please go back to your

17   seat.

18          (Prospective juror leaves sidebar.)

19          THE COURT:  Juror No. 55 is maintained.

20          Shall we move her up yet.  She will be in seat

21   three.

22          (In open court.)

23          THE COURT:  Juror No. 55, would you please go to

24   seat three.  Go to seat three, please, to my left.  Thank you.

25          Juror No. 56, would your answers to my questions be

```
                        Sidebar                          88
```

1    yes?

2              THE PROSPECTIVE JUROR:  No, Your Honor.

3              THE COURT:  Then I will ask you, Juror No. 56, to

4    please go to seat No. 5.  Thank you very much.

5              Juror No. 57, would your answers to my questions

6    have been  yes, any of the questions?

7              THE PROSPECTIVE JUROR:  No.

8              THE COURT:  All right.  I will ask you to go to seat

9    No. 6, please.

10             Juror No. 58, would your answers to my questions be

11   yes?

12             THE PROSPECTIVE JUROR:  Yes.

13             THE COURT:  Please come up, sir.

14             (Prospective juror present at sidebar.)

15             (Continued on next page.)

16

17

18

19

20

21

22

23

24

25

```
                           Side Bar                        89
```

1              (The following occurred at side bar; prospective

2     juror joins.)

3              THE COURT:  Juror Number 58, good morning.

4              THE PROSPECTIVE JUROR:  Is it still morning?

5              THE COURT:  It's noon.

6              THE PROSPECTIVE JUROR:  Okay.  Two issues.  I just

7     had an attack.  I have reactive hypoglycemia.  It's under

8     control.  I can control it though by carrying my sugar

9     packets.

10             THE COURT:  Okay.

11             THE PROSPECTIVE JUROR:  The other is you mentioned

12    the duration of the trial.  It's not a big problem.  I have

13    prepaid reservations in Florida on the 7th of August.  Four

14    weeks, five weeks, I'd have no problem.  I'd be honored to do

15    it.

16             THE COURT:  I wouldn't want to tell you for sure

17    that you can go to your Florida vacation or event.  The

18    parties are projecting between four to six weeks.

19             THE PROSPECTIVE JUROR:  Right.

20             THE COURT:  So we have to always assume six weeks.

21             THE PROSPECTIVE JUROR:  Right.

22             THE COURT:  So, would that present a problem?

23             THE PROSPECTIVE JUROR:  Well, it would as far as the

24    timing of it because I don't know if I could extend the

25    reservations for the date of trial because it's already

1    prepaid.  It's Disney World and they're tough.

2            THE COURT:  Yes, they are.  That's not such a happy

3    place all the time, is it?  So why don't you step over to the

4    side for one moment, please.

5            (Prospective juror leaves side bar.)

6            MS. SMITH:  I think he said August 7th?

7            THE COURT:  Yes.

8            MS. SMITH:  I think we should be fine for

9    August 7th.

10           THE COURT:  We counted six weeks and it seems like

11   that should be all right.

12           MS. SMITH:  It should be.

13           THE COURT:  I just wouldn't want the jury to get

14   rushed.

15           MS. KASULIS:  Or anxious.

16           MS. SMITH:  I think the six weeks is the first week

17   in August.

18           THE COURT:  All right.  I think he is able to

19   control his medications.

20           MS. KASULIS:  That was my only issue, could he

21   control the medication.

22           (Prospective juror joins side bar.)

23           THE COURT:  Please come back.

24           We suspect you are able to make it to your Florida

25   vacation which is August 7th.  Is that what you said?

Side Bar                                                91

1            THE PROSPECTIVE JUROR:  I leave Monday, August 7th,

2    Monday.  I drive.

3            THE COURT:  I think we expect that you will be able

4    to do that.

5            THE PROSPECTIVE JUROR:  I just wanted to ask anyway.

6            THE COURT:  No, that's all right.  I don't want to

7    guarantee.  So, I guess what I would say this evening is if

8    you are selected, that you see if you can definitely make

9    arrangements to bump it back, but I think --

10           THE PROSPECTIVE JUROR:  It's refundable.

11           THE COURT:  Okay.  Good.

12           THE PROSPECTIVE JUROR:  It's not a loss.

13           THE COURT:  So, the other important question is your

14   hypoglycemia.  Are you going to be able to maintain alertness

15   and feel --

16           THE PROSPECTIVE JUROR:  Yes, I have Glu-Combo with

17   me all the time and I can test it while I'm sitting.  I carry

18   four or five packets of raw sugar in my pocket.

19           THE COURT:  We can always allow you to drink water.

20           THE PROSPECTIVE JUROR:  I know it's happening when I

21   see 10 to 12 of you at a time, I have ten minutes before it

22   actually puts me in a coma.

23           THE COURT:  Well, we don't --

24           THE PROSPECTIVE JUROR:  Sorry.

25           THE COURT:  We wouldn't want that to happen.

```
                       Side Bar                      92
```

1            THE PROSPECTIVE JUROR:  I know it's coming.

2            THE COURT:  We'll make sure you're well cared for.

3            MR. BRAFMAN:  Can we be heard just for a moment?

4            THE COURT:  Yes.

5            Sir, I am going to ask you to just step away for one

6     moment.

7            (Prospective juror leaves side bar.)

8            MR. BRAFMAN:  I assume you don't want us to

9     participate in the questioning?

10           THE COURT:  No, but I will ask any other questions

11    that you have.

12           MR. BRAFMAN:  Judge, I'm familiar with his

13    condition, not for me, but I have it for some family members

14    and the fact that he can see 12 of us for a period of time

15    until he gets his medication, this is a tough case.  To sit

16    and pay attention to it and I just think the medication -- I

17    think his medical condition is going to keep him from being

18    able to concentrate.  I'm not going to push the issue.  I'm

19    asking Your Honor to be mindful that there are 50 other people

20    in the panel that are out there, maybe 70.  So I just think

21    it's dangerous.

22           THE COURT:  Well, of course I wouldn't want to

23    endanger him, but he seems to be well familiar with his

24    physical condition.

25           MR. BRAFMAN:  He gets a ten minute head start and he

Side Bar                              93

1    avoids a coma.  Ten minute head start.  I hate to be in the

2    middle of cross-examining someone when suddenly, the flag goes

3    up.

4              It's your call, Judge.  I'm not going to fight you.

5              THE COURT:  Does anyone have any views?

6              MS. KASULIS:  No.

7              THE COURT:  I don't want to jeopardize anyone's

8    health.  Let me make sure he can manage it.

9              (Prospective juror joins side bar.)

10             THE COURT:  Sir, come back.  I'm sorry.

11             We are obviously concerned about your physical

12   condition and also wouldn't want you to have to get to a point

13   of crisis before you have to start, you know, medicating or

14   doing anything else.  We would want you to -- well, you would

15   be able to have all of the medication on you and to drink

16   water and to ask for breaks.

17             THE PROSPECTIVE JUROR:  Right.

18             THE COURT:  But I don't want it to be anything that

19   would jeopardize your health in any way.

20             THE PROSPECTIVE JUROR:  It doesn't.

21             THE COURT:  Or have you in a pre-coma state.

22             THE PROSPECTIVE JUROR:  It's only if I didn't take

23   care of myself and I'm keenly aware of that.  You know, I mean

24   I drive to Florida and like I said, when I've -- it's

25   instantaneous where you can feel it coming on and I fall over

                              Side Bar                              94

1   and I sit there and unless I take -- if I don't take the

2   medication, I start seeing multiple people, it takes 15 to

3   20 minutes to recover.

4            THE COURT:  Oh, okay.  I wouldn't want to lose your

5   attention during the trial.

6            THE PROSPECTIVE JUROR:  I understand.

7            THE COURT:  So, if it would be a 15-minute recovery

8   process after medication, probably I would be concerned that

9   you would perhaps risk a coma and also --

10           THE PROSPECTIVE JUROR:  Okay.

11           THE COURT:  -- lose attention, so I will excuse you.

12           THE PROSPECTIVE JUROR:  All right.

13           THE COURT:  All right, sir.  Thank you.  Be well.

14           THE PROSPECTIVE JUROR:  Thank you very much.

15           MR. BRAFMAN:  Thank you, Judge.

16           (Prospective juror excused.)

17           (In open court.)

18           THE COURT:  Juror 59, would your answers to my

19   questions have been "yes"?

20           THE PROSPECTIVE JUROR:  Yes.

21           THE COURT:  Please come up.

22           (Side bar continues; prospective juror joins.)

23           THE COURT:  Have a seat, sir.

24           THE PROSPECTIVE JUROR:  Okay.

25           THE COURT:  All right.  Tell me what questions you

Side Bar                    95

1   would have answered "yes" to.

2           THE PROSPECTIVE JUROR:  I'm working for really small

3   architectural firm and I'm not getting paid I'm not working,

4   but also my boss is going on vacation in two weeks and he will

5   be gone for two weeks and we have projects that are ongoing

6   and without him and me on the job, we would lose the clients.

7           THE COURT:  Okay.  So, you are in a small

8   architecture firm, your boss is going on vacation, you are not

9   going to get paid and you need to complete your projects?

10          THE PROSPECTIVE JUROR:  Yes.  We got some ongoing

11  projects that have to be managed and we have some to be done.

12          THE COURT:  When you say small office, how many

13  other architects?

14          THE PROSPECTIVE JUROR:  There's one training.

15          THE COURT:  Just a trainee?

16          THE PROSPECTIVE JUROR:  There's just two of us.

17          THE COURT:  Okay.  All right.  Let me just ask you

18  to step back for one second, please.

19          THE PROSPECTIVE JUROR:  Sure.

20          (Prospective juror leaves side bar.)

21          THE COURT:  I was going to excuse Juror Number 59 if

22  there is no objection.

23          MR. BRAFMAN:  No objection.

24          MS. KASULIS:  No objection.

25          (Prospective juror joins side bar.)

```
                            Side Bar                          96
```

1          THE COURT:  Sir, I will excuse you.  Please go back

2    to the jury room.  Let them know that you have been excused.

3          THE PROSPECTIVE JUROR:  Thank you.

4          (Prospective juror excused.)

5          (In open court.)

6          THE COURT:  Juror Number 60, would you have answered

7    "yes" to any of my questions?

8          THE PROSPECTIVE JUROR:  Yes.

9          THE COURT:  Please come up, ma'am.

10          (Side bar continues; prospective juror joins.)

11          THE COURT:  Yes, ma'am.  Have a seat.  How are you?

12          THE PROSPECTIVE JUROR:  Fine.

13          THE COURT:  Speak so everybody can hear you.

14          What questions would you have answered "yes" to?

15          THE PROSPECTIVE JUROR:  Yes, I answer the question

16    is for the six weeks.

17          THE COURT:  Yes, ma'am.

18          THE PROSPECTIVE JUROR:  I am not going to be able to

19    attend the six weeks, I'm sorry, because my boss, she's doing

20    marketing and I supposed to see the little boy, take him to

21    school, to camp and perform my duties.

22          THE COURT:  Okay.

23          THE PROSPECTIVE JUROR:  For middle of July.

24          THE COURT:  Okay.

25          THE PROSPECTIVE JUROR:  So, I am so sorry.

1            THE COURT:  That's all right, ma'am.  That's all

2       right.  Okay.  So your work would not allow you to serve, is

3       that correct, your job?

4            THE PROSPECTIVE JUROR:  I don't mean she's not

5       allowed me to.

6            THE COURT:  Well, for four to six weeks.

7            THE PROSPECTIVE JUROR:  Yes.  I have to babysit.  I

8       had him since three months and he doesn't want to stay with

9       nobody but me.

10           THE COURT:  Okay.  All right.  Let me ask you just

11      to step to the back.

12           THE PROSPECTIVE JUROR:  Yes.

13           THE COURT:  For one second.

14           THE PROSPECTIVE JUROR:  So it's okay?

15           (Prospective juror leaves side bar.)

16           THE COURT:  I'm going to excuse Juror Number 60

17      unless there are objections.

18           MR. BRAFMAN:  No objections.

19           MS. KASULIS:  No objection.

20           (Prospective juror joins side bar.)

21           THE COURT:  Ma'am, go to the jury room and let them

22      know you have been excused.

23           THE PROSPECTIVE JUROR:  Thank you.

24           (Prospective juror excused.)

25           (In open court.)

```
                        Side Bar                        98
```

1          THE COURT:  Juror Number 61, would your answers to

2   my questions be "yes," to any of them?

3          THE PROSPECTIVE JUROR:  Yes.

4          (Side bar continues; prospective juror joins.)

5          THE COURT:  Hello, sir.  How are you?  Have a seat,

6   please.

7          All right.  What questions would you have answered

8   "yes" to?

9          THE PROSPECTIVE JUROR:  I won't be here for six

10  weeks.  I just started working in the company and I'm the

11  breadwinner of the family.

12         THE COURT:  You're what?

13         THE PROSPECTIVE JUROR:  I'm the breadwinner for the

14  home.  If I'm out for six weeks, I don't have a job.

15         THE COURT:  What jobs are you doing?

16         THE PROSPECTIVE JUROR:  I'm a tunnel worker.

17         THE COURT:  You just started your job?

18         THE PROSPECTIVE JUROR:  Yes.  I was out for one

19  year, and I'll be in the Caribbean in the end of July.

20         THE COURT:  End of July?

21         THE PROSPECTIVE JUROR:  My daughter is getting

22  married.

23         THE COURT:  Congratulations.

24         THE PROSPECTIVE JUROR:  I have to be there for that.

25         THE COURT:  Yes, you have to be there for that.

```
                          Side Bar                        99
```

1          All right.  I am going to excuse you.  Go back to

2    the juror room and tell them you have been excused.

3          THE PROSPECTIVE JUROR:  All right.

4          (Prospective juror excused.)

5          THE COURT:  Juror Number 61 is excused.  No

6    objection from either side?

7          MR. BRAFMAN:  No objection.

8          MS. KASULIS:  No objection.

9          (In open court.)

10          THE COURT:  Juror Number 62, would you have answered

11    "yes" to any of my questions?

12          THE PROSPECTIVE JUROR:  Yes.

13          THE COURT:  Come on up.

14          (Side bar continues; prospective juror joins.)

15          THE COURT:  Have a seat.  Yes, sir.

16          THE PROSPECTIVE JUROR:  I question.  My English is

17    not very good.

18          THE COURT:  How long have you been in this country?

19          THE PROSPECTIVE JUROR:  Almost, like, nine years.

20          THE COURT:  Nine years?  What do you do for a

21    living?

22          THE PROSPECTIVE JUROR:  The restaurant.

23          THE COURT:  You work in a restaurant?

24          THE PROSPECTIVE JUROR:  Yes.

25          THE COURT:  What do you do there?

Side Bar                                    100

1            THE PROSPECTIVE JUROR:  Chef.

2            THE COURT:  You're a chef?

3            THE PROSPECTIVE JUROR:  Yes.  Basic English, my

4    English level very basic.

5            THE COURT:  Did you ever study English?

6            THE PROSPECTIVE JUROR:  Sometimes, my wife teach me

7    sometimes.

8            THE COURT:  Okay.  Do you speak English on the job?

9            THE PROSPECTIVE JUROR:  Not really.  Just a little

10   bit.

11           THE COURT:  What kind of restaurant is it?

12           THE PROSPECTIVE JUROR:  It's a Japanese restaurant.

13           THE COURT:  All right.  What language do you speak

14   to your colleagues in the restaurant?  What language is spoken

15   in the restaurant?

16           THE PROSPECTIVE JUROR:  We speak, like, sometimes

17   English, but we speak Chinese.

18           THE COURT:  All right.  Let me just ask you to step

19   back for a moment, please.

20           (Prospective juror leaves sidebar.)

21           THE COURT:  Again, I'm not sure he really could not

22   follow the evidence given the nature of our conversation.

23   Does anybody want to have him excused based on language?

24           MR. BRAFMAN:  I don't have any objection to excusing

25   him for cause.

```
                          Side Bar                      101
```

1           THE COURT:  Any hesitation or concerns about his

2    English ability?

3           MS. KASULIS:  Yes, I think we do have.

4           THE COURT:  All right.  We will excuse him then.

5           (Prospective juror joins side bar.)

6           THE COURT:  Sir, we are going to excuse you.  Please

7    go to the jury room and tell them you have been excused.

8           THE PROSPECTIVE JUROR:  What?

9           THE COURT:  Tell them in the jury room you have been

10   excused from this panel.  Please work on your English because

11   I want you to serve as a juror in some future case.  All

12   right?

13          THE PROSPECTIVE JUROR:  You mean, you mean, I --

14          THE COURT:  Go back to the jury room and tell them

15   you have been excused.

16          THE PROSPECTIVE JUROR:  Okay.

17          THE COURT:  Okay?

18          THE PROSPECTIVE JUROR:  So outside, right?

19          THE COURT:  Where you checked in this morning, go

20   back and tell them you have been excused.

21          THE PROSPECTIVE JUROR:  All right.  Thank you.

22          (Prospective juror excused.)

23          THE COURT:  All right.  I changed my view.

24          (In open court.)

25          THE COURT:  Juror Number 63, would your answers to

1    any of my questions have been "yes"?

2              THE PROSPECTIVE JUROR:  Yes.

3              THE COURT:  Please come up.

4              (Side bar continues; prospective juror joins.)

5              THE COURT:  Please have a seat.  Yes, ma'am.

6              THE PROSPECTIVE JUROR:  On the 5th and the 11th, I

7    have appointments that I really can't miss and then from the

8    12th to the 16th, I had plans to go away for my graduation.

9              THE COURT:  All right.  Are you going out of town?

10             THE PROSPECTIVE JUROR:  I am.

11             THE COURT:  Your trip?  You bought tickets already?

12             THE PROSPECTIVE JUROR:  Yes.

13             THE COURT:  All right.  And there is no way to

14   change your dates or your tickets?

15             THE PROSPECTIVE JUROR:  No.

16             THE COURT:  Okay.  Let me ask you to just step back

17   to the side.

18             THE PROSPECTIVE JUROR:  Sure.

19             (Prospective juror leaves side bar.)

20             THE COURT:  Any objection to excusing 63?

21             MR. BRAFMAN:  No, Your Honor.

22             MS. KASULIS:  No, Your Honor.

23             (Prospective juror joins side bar.)

24             THE COURT:  Ma'am, just report down to the jury room

25   where you checked in this morning and tell them you have been

Side Bar                                    103

1   excused.

2            THE PROSPECTIVE JUROR:  All right.  Thank you.

3            THE COURT:  All right.

4            (Prospective juror excused.)

5            (In open court.)

6            THE COURT:  Juror 64, would you have answered "yes"

7   to any of my questions?

8            THE PROSPECTIVE JUROR:  Yes.

9            THE COURT:  Come on up, please.

10           (Side bar continues; prospective juror joins.)

11           THE COURT:  Hi.  Have a seat.  Yes, ma'am.  Just

12   speak so everybody can hear you.

13           What questions would you have answered "yes" to?

14           THE PROSPECTIVE JUROR:  One where it was extremely

15   inconvenient for me to stay four to six weeks.

16           THE COURT:  What is the reason?

17           THE PROSPECTIVE JUROR:  For work.  So, I started

18   working at a company called Trinity Solar less than a month

19   ago.  I work as a recruiter so my job is to hire salesmen and

20   it's an ongoing position.  So, we hire people every week so if

21   I'm out for weeks, then I would have to catch up on four weeks

22   of applicants and then it just -- you know, even contacting

23   people from four weeks ago, most of them would be hired and

24   it's just, and it would be nearly impossible for me to catch

25   up.

Side Bar                                          104

1          THE COURT:  But is it possible you could contact

2     these people after your day of jury service is concluded and

3     arrange to recruit and do whatever you do?

4          THE PROSPECTIVE JUROR:  So, I -- so, my job, it

5     starts with resumes, like, screening anywhere from 30 to 130

6     resumes and then full screens and full interviews so it

7     wouldn't be enough time after jury duty.

8          THE COURT:  Okay.  All right.  Let me ask you to

9     just step back for a moment.

10          (Prospective juror leaves sidebar.)

11          THE COURT:  Does anyone object to excusing Juror

12     Number 64?

13          MR. BRAFMAN:  No, Your Honor.

14          MS. KASULIS:  No objection.

15          (Prospective juror joins side bar.)

16          THE COURT:  Ma'am, we will excuse you.  Please go

17     back to the jury room where you checked in and let them know

18     you are excused.

19          THE PROSPECTIVE JUROR:  Okay.

20          THE COURT:  Thank you.

21          (Prospective juror excused.)

22          (In open court.)

23          THE COURT:  Juror 65, would you have answered "yes"

24     to any of my questions?

25          THE PROSPECTIVE JUROR:  Yes.

1           THE COURT:  Please come up.

2           (Side bar continues; prospective juror joins.)

3           THE COURT:  Have a seat up here, sir.

4           Good afternoon.  How are you?

5           THE PROSPECTIVE JUROR:  Good afternoon.

6           THE COURT:  You are Juror 65, correct?

7           THE PROSPECTIVE JUROR:  Yes.

8           THE COURT:  Yes.  What did you have to tell us?

9           THE PROSPECTIVE JUROR:  I have a daughter who is

10    under ten.  I have -- I pass all my interviews so they may --

11    I'm on duty, my duty, they might call me before July 10th.

12    They may call me before July 10th.

13          THE COURT:  So you have a young daughter that you

14    take care of?

15          THE PROSPECTIVE JUROR:  Yes.

16          THE COURT:  Do you have anyone else in the family or

17    friends who can take care of her while you are on jury duty?

18          THE PROSPECTIVE JUROR:  No.  Sometimes I have to get

19    the babysitter.

20          THE COURT:  You have a babysitter?

21          THE PROSPECTIVE JUROR:  Yes, through the summer, but

22    the -- I have duty.  I applied for job.  I had interviews.

23    They promised to call me.

24          The other thing, my mother apply for a visa.  Me,

25    they may send me to Colombia at any time because, on the

1    phone, they may call me.  So it seems like a long time because

2    before that --

3              THE COURT:  So, you are waiting to get a call for an

4    interview for your own job?

5              THE PROSPECTIVE JUROR:  No.  I already passed my

6    interview.  They promised to call me before July 10th.

7              THE COURT:  To call you about what?

8              THE PROSPECTIVE JUROR:  Before July 10th to start

9    working.

10             THE COURT:  So you have been hired?

11             THE PROSPECTIVE JUROR:  Yes.

12             THE COURT:  I see.  Okay.  And --

13             THE PROSPECTIVE JUROR:  And another thing.  My

14   mother applied for a visa for her.

15             THE COURT:  And you have to go --

16             THE PROSPECTIVE JUROR:  -- to Colombia, because she

17   live in Aruba so they might be calling me any time after the

18   paper, process.

19             THE COURT:  How long did she fill out papers?

20             THE PROSPECTIVE JUROR:  Two years ago.

21             THE COURT:  Two years ago?  Do you have any

22   indication that they are going to be calling you soon?

23             THE PROSPECTIVE JUROR:  Yes, because from embassy, I

24   spoke to them.  Any time, they might send me paper to go to

25   Colombia.

1           THE COURT:  All right.  Let me ask you to step back

2      over here.  Don't go far, please.  Just over there.

3           (Prospective juror leaves side bar.)

4           THE COURT:  Anyone object to excusing Juror 65?

5           MR. BRAFMAN:  No, Your Honor.

6           MS. KASULIS:  No objection.

7           (Prospective juror joins side bar.)

8           THE COURT:  Sir, we will excuse you.  Please go back

9      to the jury room where you were earlier today and make a note

10     you have been excused.

11          THE PROSPECTIVE JUROR:  Okay.  Thank you.

12          (Prospective juror excused.)

13          (In open court.)

14          THE COURT:  Juror 66, would you have answered "yes"

15     to any of my questions?

16          THE PROSPECTIVE JUROR:  No, Your Honor.

17          THE COURT:  Thank you, ma'am.  Would you please go

18     to the seat previously occupied by Juror Number 8.

19          Juror Number 67?

20          THE PROSPECTIVE JUROR:  Yes.

21          THE COURT:  Would you have answered "yes" to any of

22     my questions?

23          THE PROSPECTIVE JUROR:  Yes.

24          THE COURT:  All right.  Come on up, ma'am.

25          (Sidebar continues; prospective juror joins.)

```
                       Side Bar                       108

1            THE COURT:  Hello.

2            THE PROSPECTIVE JUROR:  Hi.

3            THE COURT:  Have a seat.  Yes, ma'am?

4            THE PROSPECTIVE JUROR:  I have two issues.

5            THE COURT:  Yes.

6            THE PROSPECTIVE JUROR:  I don't think I can be

7     impartial.  The fact that he raised the price of that AIDS

8     medication, like, an amount of money disgusts me.  I don't

9     think I'll ever be able to forget that.  Who does that, puts

10    profit and self-interest ahead of anything else?  So, it's not

11    a far stretch that he could do this, what he's accused of.

12    Sorry.

13           THE COURT:  No, you need to be honest with us.

14           THE PROSPECTIVE JUROR:  Honestly.  Sorry.

15           Second of all, I have conflict.  July 15th through

16    the 22nd, I have a vacation scheduled.

17           THE COURT:  Okay.  Thank you.  Why don't you just

18    step to the side for one moment.

19           (Prospective juror leaves side bar.)

20           THE COURT:  Mr. Brafman, you would like to challenge

21    this juror for cause?

22           MR. BRAFMAN:  Yes, ma'am.

23           THE COURT:  And the Government is not going to

24    object?

25           MS. SMITH:  No, Your Honor.
```

Side Bar                                    109

1           (Prospective juror joins side bar.)

2           THE COURT:  Ma'am, we will excuse you.  Please go to

3     the jury room and tell them you have been excused.

4           Juror Number 67 is excused for cause.

5           (Prospective juror excused.)

6           (In open court.)

7           THE COURT:  Juror 68.  Ma'am, would you have

8     answered "yes" to any of my questions?

9           THE PROSPECTIVE JUROR:  Yes.

10          THE COURT:  Come on up.

11          (Side bar continues; prospective juror joins.)

12          THE COURT:  Juror 68, hello.

13          THE PROSPECTIVE JUROR:  Yes.

14          THE COURT:  What would you like to tell me?

15          THE PROSPECTIVE JUROR:  Yes.  You know, just I worry

16    because I am not that perfect English.

17          THE COURT:  Yes.

18          THE PROSPECTIVE JUROR:  And I don't know every

19    sentence, I will understand.  I'm not sure.  Yes.

20          THE COURT:  All right.  So, tell me about yourself.

21    How long have you lived in this country, the United States?

22          THE PROSPECTIVE JUROR:  Seventeen years.

23          THE COURT:  Did you work?

24          THE PROSPECTIVE JUROR:  Yes, I work.

25          THE COURT:  What did you do?

1           THE PROSPECTIVE JUROR:  I was a medical assistant.

2           THE COURT:  Was that in a doctor's office?

3           THE PROSPECTIVE JUROR:  It was a private, private

4    practice.

5           THE COURT:  What language was spoken?

6           THE PROSPECTIVE JUROR:  Hungarian.  And we primarily

7    used Hungarian.

8           THE COURT:  Did you ever speak with English-speaking

9    patients or doctors?

10          THE PROSPECTIVE JUROR:  With the patient, yes, but

11   it was easiest because my origin, occupation is a nurse, whole

12   lifetime, but the other field, you know, it is a different

13   story.

14          THE COURT:  All right.  Did you ever study English?

15          THE PROSPECTIVE JUROR:  Just two semester of my

16   training, college.

17          THE COURT:  All right.  Well, it is important that

18   you are able to understand the evidence in this case.

19          THE PROSPECTIVE JUROR:  You know, because I saw in

20   the TV and newspaper.

21          THE COURT:  You saw this case?

22          THE PROSPECTIVE JUROR:  Yes, this case.  I know is

23   two years ago and I know what he did.

24          THE COURT:  Well, what you may have read in the

25   newspaper is not part of the charges in this case, but why

1    don't I just ask you to step aside just to the side.  Not too

2    far.  Just a few feet away.

3              (Prospective juror leaves side bar.)

4              THE COURT:  Does anyone --

5              MR. BRAFMAN:  We challenge for cause, Your Honor.

6              THE COURT:  Challenge for cause?  All right.

7              Any objection?

8              MS. KASULIS:  No objection.

9              (Prospective juror joins side bar.)

10             THE COURT:  Ma'am, we will excuse you.  Please go to

11   the jury room and tell them you have been excused.

12             THE PROSPECTIVE JUROR:  Where are you going?

13             THE COURT:  You know where you checked in this

14   morning?  Just go back and tell them you are excused.  Just be

15   careful of the step.

16             THE PROSPECTIVE JUROR:  Thank you.

17             (Prospective juror excused.)

18             (In open court.)

19             THE COURT:  Juror Number 69, would you have answered

20   "yes" to any of my questions?

21             THE PROSPECTIVE JUROR:  Yes, ma'am.

22             THE COURT:  Come on up, sir.

23             (Side bar continues; prospective juror joins.)

24             THE COURT:  Hello.

25             THE PROSPECTIVE JUROR:  Hi.

```
                            Side Bar                       112
```

1          THE COURT:  How are you, sir?

2          THE PROSPECTIVE JUROR:  Good.

3          THE COURT:  Juror Number 69, what can you tell us?

4          THE PROSPECTIVE JUROR:  I just got engaged this past

5    weekend.

6          THE COURT:  Okay.  You got engaged?

7    Congratulations.

8          THE PROSPECTIVE JUROR:  Yes.  So I'm planning for a

9    way to a honeymoon, but in order to do that honeymoon, I have

10   to work overtime and if I'm here for six months, I won't be

11   able to.

12         THE COURT:  Six weeks.

13         THE PROSPECTIVE JUROR:  Well, for six weeks, I won't

14   be able to.

15         THE COURT:  So, you want to be able to work overtime

16   to have a wedding?

17         THE PROSPECTIVE JUROR:  Yes, ma'am.

18         THE COURT:  Okay.  Does your employer pay you to

19   work while you're on jury duty?

20         THE PROSPECTIVE JUROR:  Yes.  I work for UPS.

21         THE COURT:  You're with UPS?

22         THE PROSPECTIVE JUROR:  Yes.

23         THE COURT:  All right.  Do you regularly work

24   overtime?

25         THE PROSPECTIVE JUROR:  Every day.  Every day.

Side Bar                                    113

1          THE COURT:  So, you don't get paid for overtime if

2     you're on jury duty?

3          THE PROSPECTIVE JUROR:  Obviously not.

4          THE COURT:  Just your standard salary?

5          THE PROSPECTIVE JUROR:  Correct, yes.  I was

6     thinking maybe take another trial that's shorter.  I wouldn't

7     mind doing that.

8          THE COURT:  Okay.  Let me just ask you to step over

9     there, please.

10          THE PROSPECTIVE JUROR:  Sure.

11          (Prospective juror leaves side bar.)

12          THE COURT:  So, does anyone object to excusing Juror

13     Number 69?

14          MR. BRAFMAN:  No, Your Honor.

15          MS. KASULIS:  No, Your Honor.

16          (Prospective juror joins side bar.)

17          THE COURT:  Sir, would you kindly go to the jury

18     room and tell them you are excused from this panel but you

19     might be available for a shorter trial?

20          THE PROSPECTIVE JUROR:  I appreciate it.

21          THE COURT:  Okay.  Congratulations and good luck to

22     you.

23          THE PROSPECTIVE JUROR:  Thank you.

24          (Prospective juror excused.)

25          (In open court.)

Side Bar                                        114

1           THE COURT:  Juror Number 70, would you have answered
2   "yes" to any of my questions?
3           THE PROSPECTIVE JUROR:  Yes, Your Honor.
4           THE COURT:  Please come up, sir.
5           (Side bar continues; prospective juror joins.)
6           THE COURT:  Hello, sir.  Have a seat.
7           You are Juror Number 70, correct?
8           THE PROSPECTIVE JUROR:  Yes, ma'am.
9           THE COURT:  Have a seat.  What would you like to
10  tell us?
11          THE PROSPECTIVE JUROR:  Well, I was thinking about
12  what you said before, how you would feel if it was a member of
13  the family.  If it was, I wouldn't want me on the jury.  I
14  have total disdain for the man.  When you go back to how he
15  was able to put so many children --
16          MR. BRAFMAN:  Your Honor, could we just --
17          THE COURT:  Yes.  That's fine.
18          Based on what you have read in the media, you have
19  negative feelings?
20          THE PROSPECTIVE JUROR:  Very.
21          THE COURT:  Would those feelings prevent you from
22  being fair to both sides in this case?
23          THE PROSPECTIVE JUROR:  Yes.  I can be fair to one
24  side but not the other.
25          THE COURT:  We will excuse you from this jury.

1   Please go to the second floor back to the jury room and tell

2   them that you may be available for some other case.

3          THE PROSPECTIVE JUROR:  Yes.  I am sorry though.

4   Thank you.

5          THE COURT:  All right.  Thank you, sir.

6          (Prospective juror excused.)

7          MR. BRAFMAN:  Your Honor, I just want to explain.

8          I wasn't trying to be rude, but we do have a member

9   of the press pool here and my expectation is that everything

10  negative that's been said at side bar will probably end up in

11  some type of a piece tomorrow in the media.  I'm not being

12  critical.  I know that's their job, but one of the concerns I

13  have is that if a juror is obviously about to go on a tirade

14  against Mr. Shkreli, I'm not certain it's helpful once he says

15  "utter disdain" for us to proceed.  That's the only reason I

16  interrupted, Judge.

17         THE COURT:  Well, what I was trying to do, sir, is

18  given the importance of fully fleshing out the basis for

19  anyone's feelings about a defendant as you pointed out and

20  without any intention to want to preclude a juror from being

21  completely candid and to disclose any potential bias, I was

22  surprised to hear you cut him off, but if you have heard

23  enough, that's fine.

24         MR. BRAFMAN:  No, and, Judge, it's the only time I

25  think I've done it this morning.

Side Bar                                116

1          THE COURT:  I know.

2          MR. BRAFMAN:  I'm trying to be cooperative.

3          THE COURT:  I am not accusing you of being anything

4    other cooperative.

5          MR. BRAFMAN:  I understand, Judge, and you're being

6    reasonable and fair.  One of the reasons we objected to a

7    member of the press being here is because their job is to

8    report and I'm expecting the reports tomorrow, because that's

9    all we're dealing with, dealing with people that want to be

10   excused because they say they can't be fair.  So I'm

11   anticipating, you know, an article or piece or several

12   tomorrow that will further complicate an already complicated

13   job of defending someone who so many people feel strongly

14   about.  So, my hope is to try and level the playing field if

15   that's humanly possible, but I didn't want Your Honor to think

16   that I was just being rude.  I saw it coming and I think I was

17   right, but I hear what you're saying, Your Honor.

18         THE COURT:  No.  Listen, Mr. Brafman, if you feel

19   that you have heard enough to make a motion to strike for

20   cause, that's fine.  I just did not want to cut off a juror

21   since the whole idea is to encourage candor and to flesh out

22   any potential biases.

23         MR. BRAFMAN:  I understand, Your Honor.

24         THE COURT:  All right.  Okay.

25         MS. KASULIS:  Your Honor, just to underscore your

Side Bar                        117

1   point, that was just our concern as well, just to make sure

2   that the record is clear and that then follow up with fair and

3   impartiality.

4        THE COURT:  Right.  That would be my next set of

5   questions, but my point is if you feel that you have heard

6   enough, you can give me a signal.  I am not trying to create

7   any difficulties for your client obviously.

8        MR. BRAFMAN:  I understand.

9        THE COURT:  I am trying just very hard to make sure

10  that you have had a full opportunity to flesh out any biases

11  or concerns.

12       MR. BRAFMAN:  But most of them, the Government to

13  its credit has been consenting to virtually every challenge

14  for cause and I appreciate that.  So, to the extent that the

15  issue would be mine, if there wasn't a sufficient record, by

16  me asking Your Honor that we've had enough, I think unless

17  they want to continue, I don't think we have an issue on the

18  record.  So I'll be mindful, Your Honor.

19       THE COURT:  Okay.

20       MR. BRAFMAN:  Thank you.

21       THE COURT:  I just want to give everybody a fair

22  chance with voir dire.

23       (In open court.)

24       THE COURT:  Juror Number 71, would any of your

25  answers to my question have been "yes"?

Side Bar                                        118

1          THE PROSPECTIVE JUROR:  No.

2          THE COURT:  So, I would ask Juror Number 71 to

3     please take the seat of Juror Number 9.

4          Juror Number 72, would your answers to my questions

5     have been "yes"?

6          THE PROSPECTIVE JUROR:  No.

7          THE COURT:  Please take the seat, Juror Number 72,

8     that was occupied by Juror Number 11.

9          Juror Number 73, would your answers to my questions

10    have been "yes"?

11         THE PROSPECTIVE JUROR:  Yes, ma'am.

12         THE COURT:  Please come up, ma'am.

13         (Side bar continues; prospective juror joins.)

14         THE COURT:  Come on up, ma'am.  Yes, ma'am.

15         THE PROSPECTIVE JUROR:  Hi.  I have a doctor's

16    appointment on Wednesday.  That could be changed but I've had

17    vacation plans starting on July 9th.

18         THE COURT:  Okay.  All right.  And you can't change

19    your vacation plans?

20         THE PROSPECTIVE JUROR:  Well, I have a summer home

21    and I have lots of people coming there.

22         THE COURT:  You have to be there then, don't you?

23    So I will excuse you.  Thank you.

24         THE PROSPECTIVE JUROR:  Okay.  Thank you.

25         (Prospective juror excused.)

1           THE COURT:  No objections?

2           MS. KASULIS:  No objection.

3           MR. BRAFMAN:  No objection.

4           THE COURT:  Prospective Juror 73 is excused without

5    objection.

6           (In open court.)

7           THE COURT:  Juror Number 74, would your answers to

8    my questions have been "yes"?

9           THE PROSPECTIVE JUROR:  Yes.

10           THE COURT:  Please come on up, sir.

11           (Side bar continues; prospective juror joins.)

12           THE COURT:  Hi.  How are you?

13           THE PROSPECTIVE JUROR:  Good.

14           THE COURT:  You're number 74.

15           THE PROSPECTIVE JUROR:  So four to six weeks, I have

16    a wedding on the last week of July that I'm going to drive to

17    so from the 23rd to the 26th, I won't be in town.

18           THE COURT:  All right.  Where's the wedding?

19           THE PROSPECTIVE JUROR:  Vermont.

20           THE COURT:  Vermont.  Okay.  All right.  Are you in

21    the wedding?

22           THE PROSPECTIVE JUROR:  It's my cousin so it's my

23    family.

24           THE COURT:  So you have to be there.  So you're out

25    from the 23rd to the 26th?

```
                            Side Bar                        120
```

1              THE PROSPECTIVE JUROR:  Yes.

2              THE COURT:  Thank you.  Let me ask you to step over

3      there.

4              Any objection to excusing Juror Number 74?

5              MR. BRAFMAN:  No.

6              MS. KASULIS:  No.

7              (Prospective juror joins side bar.)

8              THE COURT:  Sir, you are excused from this panel.

9      Please go back to the jury room and tell them you are

10     available for a shorter trial.

11             THE PROSPECTIVE JUROR:  Yes.

12             THE COURT:  Thank you.

13             (Prospective juror excused.)

14             (In open court.)

15             THE COURT:  Juror Number 75, would you have answered

16     "yes" to any of my questions?

17             THE PROSPECTIVE JUROR:  No.

18             THE COURT:  No?  All right.  Let me ask Juror

19     Number 75 to please take the seat that was previously occupied

20     by Juror Number 13.

21             Juror Number 76, would you have answered "yes" to

22     any of my questions?

23             THE PROSPECTIVE JUROR:  Yes.

24             THE COURT:  Yes?  Come on up, sir.

25             (Side bar continues; prospective juror joins.)

```
                        Side Bar                    121
```

1          THE COURT:  Have a seat, sir.

2          Yes, sir, what would you have answered?

3          THE PROSPECTIVE JUROR:  Yes.  I do have a problem

4  though.  I won't be able to be here next week.  I'm leaving

5  the States on Wednesday.

6          THE COURT:  Okay.

7          THE PROSPECTIVE JUROR:  For family purpose.  My

8  father is dying of cancer.

9          THE COURT:  I'm so sorry.  Well, we will excuse you.

10  Okay?

11          THE PROSPECTIVE JUROR:  All right.

12          THE COURT:  Thank you.  All the best.  I'm sorry.

13          THE PROSPECTIVE JUROR:  Thank you.  Do I return back

14  to the jury room?

15          THE COURT:  Yes.  Go back and they will give you

16  paperwork.

17          Juror Number 76 is excused.  I take it there are no

18  objections?

19          MS. KASULIS:  No objection.

20          MR. BRAFMAN:  No objection.

21          (Prospective juror excused.)

22          (In open court.)

23          THE COURT:  Juror Number 77, would you have answered

24  "yes" to any of my questions?

25          THE PROSPECTIVE JUROR:  Yes, Your Honor.

```
                         Side Bar                    122

1            THE COURT:  Come on up, sir.

2            (Side bar continues, prospective juror joins.)

3            THE COURT:  Hello, sir.  Are you Juror Number 77?

4            THE PROSPECTIVE JUROR:  Yes.

5            THE COURT:  Have a seat.  What can you tell me?

6            THE PROSPECTIVE JUROR:  From everything I've seen on

7    the news, everything I've read, I believe the defendant is the

8    face of corporate greed in America.

9            MR. BRAFMAN:  We would object.

10           THE COURT:  All right.  Sir, obviously what we want

11   is a juror to be fair minded to both sides.  I'm not arguing

12   with you.

13           THE PROSPECTIVE JUROR:  You'd have to convince me he

14   was innocent rather than guilty.

15           THE COURT:  That is not the burden in our system of

16   justice.

17           THE PROSPECTIVE JUROR:  Of course.

18           THE COURT:  I will excuse this juror.  Thank you.

19   Please go back to the jury room and tell them that you are

20   available to sit on some other case.

21           THE PROSPECTIVE JUROR:  Sure.

22           THE COURT:  There is a presumption of innocence in

23   our system of justice.

24           THE PROSPECTIVE JUROR:  I understand that but in

25   this case, everything I've seen --
```

```
                          Side Bar                       123
```

1          THE COURT:  Okay.  Thank you, sir.

2          (Prospective juror excused.)

3          THE COURT:  I just want to be clear, Mr. Brafman.

4          MR. BRAFMAN:  That was --

5          THE COURT:  You want it short.

6          MR. BRAFMAN:  Yes.  I understand, Your Honor.

7          THE COURT:  I just want to confirm that that was

8    acceptable to you.

9          MR. BRAFMAN:  Yes.

10         THE COURT:  To just finish the voir dire and excuse

11   him?

12         MR. BRAFMAN:  Yes, Your Honor.

13         THE COURT:  Okay.

14         (In open court.)

15         THE COURT:  Juror Number 78, would you have answered

16   "yes" to any of my questions?

17         THE PROSPECTIVE JUROR:  No, Your Honor.

18         THE COURT:  Okay.  Thank you, sir.  I'm going to ask

19   you please to go to the seat occupied by Juror Number 14 and I

20   appreciate having you sit in seat 14.

21         Juror Number 79, ma'am, would you have answered

22   "yes" to any of my questions?

23         THE PROSPECTIVE JUROR:  Yes, ma'am.

24         THE COURT:  Please come on up.

25         (Side bar continues; prospective juror joins.)

Side Bar                          124

1          THE COURT:  Hi, ma'am.  Have a seat.  You are Juror

2    Number 79?

3          THE PROSPECTIVE JUROR:  Yes.

4          THE COURT:  The question was whether you would have

5    answered "yes" to any of my questions.  If so, what are they?

6          THE PROSPECTIVE JUROR:  I would say biased because I

7    feel like I would lean more towards, like, guilty or something

8    because he's accused of so many things.

9          THE COURT:  Well, in our system of justice, there is

10   a presumption of innocence and that never changes until the

11   Government proves somebody guilty beyond a reasonable doubt.

12   What we want is a juror with a fair and open mind who will put

13   aside any feelings of bias or favor one party over another and

14   to decide the case with an open mind after considering all the

15   evidence and only the evidence in this trial.

16          So, the question for you is, you mentioned that you

17   might be biased.

18          THE PROSPECTIVE JUROR:  Uh-huh.

19          THE COURT:  Would you explain?  Is that based on

20   anything you have heard about the case or just your own sense

21   of the criminal justice system?

22          THE PROSPECTIVE JUROR:  Like, I guess, sense.  I

23   didn't really hear anything about the case or anything, but it

24   just, I know -- you go with your first feeling and stuff like

25   that, but, you know, I could be wrong but that's a feeling I'm

1    getting.

2          THE COURT:  Okay.  Everyone is entitled to feelings.

3    What is important is that you accept the principle in our

4    system -- well, whether you can accept the principle in our

5    system of justice that there is a presumption of innocence and

6    the burden is on the Government to prove beyond a reasonable

7    doubt that somebody is guilty.  And what the jury is asked to

8    do is to keep an open mind and consider only the evidence at

9    the trial.

10         THE PROSPECTIVE JUROR:  Okay.

11         THE COURT:  Would you be able to do that or do you

12   feel --

13         THE PROSPECTIVE JUROR:  Yes, I would.

14         THE COURT:  All right.  Let me just ask you to step

15   back for one moment.

16         THE PROSPECTIVE JUROR:  Sure.

17         MR. BRAFMAN:  Your Honor?

18         THE COURT:  She hasn't heard about the case but

19   there is the question.

20         MR. BRAFMAN:  She hasn't heard about the case but

21   I'm trying to understand what it is about these proceedings

22   that cause her immediate reaction to be biased against the

23   defendant.  Inasmuch as I would like to avoid that record, I

24   would like to explore that because I think she should be

25   challenged for cause because I think she was candid and then

1   she obviously answered a lot of your questions appropriately

2   but physically, looking at her, she's very young and very

3   nervous and I would ask Your Honor to press the issue of why

4   she feels she would be biased, why she said that.

5          THE COURT:  All right.  I will do so.  I have to say

6   it's unfortunate but this does happen oftentimes when people

7   see the indictment, they make assumptions.  Oftentimes in voir

8   dire, we can explore those feelings further and I will ask her

9   why she mentioned she was biased.

10         (Prospective juror joins side bar.)

11         THE COURT:  Ma'am, come on back up.  Thank you.

12         Given what I have told you about principles of our

13  system and asking you whether you could accept them, we are

14  curious to know why you initially said and why you were

15  biased, why you felt biased and whether you still feel that

16  way.

17         THE PROSPECTIVE JUROR:  I'm -- it's really no

18  particular reason.  Like, it's just, you know, like, a feeling

19  or, like -- no reason, but I guess what I feel.

20         THE COURT:  You are relying on your gut instinct

21  about this?

22         THE PROSPECTIVE JUROR:  Yes.

23         THE COURT:  Okay.  Do you accept the principle that

24  there is a presumption of innocence and nobody can be found

25  guilty unless and until the Government proves guilt beyond a

Side Bar                                    127

1   reasonable doubt?

2           THE PROSPECTIVE JUROR:  Yes, but even if I do, I do

3   have, like, you know other things.  I have doctors'

4   appointments I have to go to twice a week, so I probably won't

5   be able to anyway.

6           THE COURT:  Okay.  Well, I appreciate your candor on

7   your feelings and your doctors' appointments.  Are they in the

8   next couple of weeks?

9           THE PROSPECTIVE JUROR:  Yes.  Twice a week, I go.

10          THE COURT:  Well, I will excuse you.  You can go to

11  the jury room where you checked in and let them know you're

12  excused.

13          THE PROSPECTIVE JUROR:  Thank you.  Thank you, Your

14  Honor.

15          THE COURT:  Any objection to excusing her?

16          MR. BRAFMAN:  No objection, Your Honor.

17          (Prospective juror excused.)

18          (Continued on next page.)

19

20

21

22

23

24

25

```
                         Sidebar                      128
```

1    (Continuing)

2              (Sidebar continues.)

3              THE COURT:  The extra jurors who are just not in the

4    first 130 but are in the jury assembly room just want to have

5    a lunch break, and I think that will be fine; hopefully, it

6    won't be a full hour, though.

7              THE COURTROOM DEPUTY:  Yes.

8              (In open court.)

9              THE COURT:  Juror No. 80, would you have answered

10   yes to any of my questions?

11             THE PROSPECTIVE JUROR:  Yes.

12             THE COURT:  Please come forward.

13             (Sidebar continues; prospective juror joins.)

14             THE COURT:  Juror No. 80, how are you?

15             THE PROSPECTIVE JUROR:  I'm well, thanks.

16             THE COURT:  You said you would have answered yes --

17             THE PROSPECTIVE JUROR:  Yes, the first one and the

18   second one, first one being I read about him.  Also, a good

19   friend of mine had a lot of money lost in a Ponzi scheme.  To

20   me, they're all out of the same stable so I wouldn't be able

21   to give a good, unbiased...

22             THE COURT:  You could not put aside your --

23             THE PROSPECTIVE JUROR:  No, because it's a good

24   friend of mine.  I wouldn't be able to see what he went

25   through and put it aside and say it didn't happen.

```
              LAM     OCR     RPR
```

```
                       Sidebar                   129
```

1          And the second one is I would be on vacation the

2     first week of August.  So, that's, you know, so...

3          THE COURT:  Thank you, ma'am.  I'm going to excuse

4     you.  Please go to the jury room.

5          There is a presumption in our justice system that

6     people are innocent until proven guilty.

7          THE PROSPECTIVE JUROR:  I understand, have an open

8     mind and all of that, but, as I said, I won't be able to --

9          THE COURT:  Please go to the jury room and tell them

10    you've been excused.

11         (Prospective juror excused.)

12         THE COURT:  Juror No. 80 is excused I'm sure without

13    objection from anybody.

14         (In open court.)

15         THE COURT:  Juror No. 81, ma'am, would you have

16    answered yes to any of my questions?

17         THE PROSPECTIVE JUROR:  Yes.

18         THE COURT:  Please come forward.

19         (Sidebar continues; prospective juror joins.)

20         THE COURT:  Hello, ma'am.  Juror 81?

21         THE PROSPECTIVE JUROR:  Yes.

22         THE COURT:  Yes, ma'am, what would you have answered

23    yes to?

24         THE PROSPECTIVE JUROR:  First, when I filled out the

25    survey for jury duty, I did indicate that I'm a caregiver for

Sidebar                                130

1   two of my grandchildren, ages three and one.

2           For me to land on a case for four to six weeks would

3   be a tremendous hardship for my family financially.

4           THE COURT:  There's nobody else who could give --

5           THE PROSPECTIVE JUROR:  No.  My husband helps me,

6   but my husband hip replacement, knee replacements, and now

7   needs back surgery.  And he can't tackle them as well.

8           THE COURT:  Okay.

9           THE PROSPECTIVE JUROR:  So, I'd appreciate being on

10  a case of less duration.

11          THE COURT:  Let's do this:  I'll ask you to go to

12  the jury room and tell them that you're free to sit on a jury

13  of a shorter duration.

14          THE PROSPECTIVE JUROR:  Thank you so much.

15          THE COURT:  We're going to excuse Juror No. 81.

16          THE PROSPECTIVE JUROR:  Thank you very much.

17          THE COURT:  No objection, anybody?

18          MS. KASULIS:  No objection.

19          MR. BRAFMAN:  No objection.

20          THE PROSPECTIVE JUROR:  Thank you.

21          (Prospective juror excused.)

22          (In open court.)

23          THE COURT:  Juror No. 82, would you have answered

24  yes to any of my questions?

25          THE PROSPECTIVE JUROR:  No.

```
                       Sidebar                    131
```

1           THE COURT:  Let me ask you to please take the seat

2     that was previously occupied by Juror 17.

3           Juror NO. 83, would you have answered yes to any of

4     my questions?  Yes?  Come on up, sir.

5           (Sidebar continues; prospective juror joins.)

6           THE COURT:  You're Juror No. 83?

7           THE PROSPECTIVE JUROR:  Yes.

8           THE COURT:  Yes, sir?

9           THE PROSPECTIVE JUROR:  One, I have two medical

10    appointments.

11          THE COURT:  During the six weeks?

12          THE PROSPECTIVE JUROR:  Yes.

13          And I run three car dealerships.  I can't be gone

14    for this amount of time.

15          THE COURT:  You run the car dealership.  You mean --

16          THE PROSPECTIVE JUROR:  Three of them.

17          THE COURT:  -- you're the owner or the manager?

18          THE PROSPECTIVE JUROR:  I manage them.

19          THE COURT:  No one else can fill in for you?

20          THE PROSPECTIVE JUROR:  No.

21          THE COURT:  Let me ask you to step over to the side.

22          (Prospective juror leaves sidebar.)

23          MR. BRAFMAN:  No objection.

24          THE COURT:  Any objection to excusing 83?

25          MS. SMITH:  No.

```
                        Sidebar                    132
```

1           MS. KASULIS:  No.

2           THE COURT:  We'll excuse 83.

3           (Prospective juror joins sidebar.)

4           THE COURT:  You're going to be excused.  Go back to

5    the jury room and tell them you're excused and you'll get your

6    paperwork.

7           (Prospective juror excused.)

8           (In open court.)

9           THE COURT:  Juror No. 84, would you have answered

10   yes to any of my questions?

11          THE PROSPECTIVE JUROR:  Yes.

12          THE COURT:  Please come up.

13          (Sidebar continues; prospective juror joins.)

14          THE COURT:  Have a seat.  You're Juror 84, correct.

15          THE PROSPECTIVE JUROR:  Yes.

16          My only restriction is the time, the six weeks.  I

17   only get paid for four days and that's it in my job.  So, I

18   won't be able to pay rent.  It's kind of an issue for me.

19          THE COURT:  As it is for all of us, sir.  All right.

20   I will excuse you.  Please go to the jury room where you

21   checked in and let them know.

22          THE PROSPECTIVE JUROR:  Okay.

23          THE COURT:  I have take it there are no objections

24   to excusing 84.

25          MR. BRAFMAN:  No objections.

```
                          Sidebar                       133
```

1           MS. KASULIS:  No objection.

2           (Prospective juror excused.)

3           THE COURT:  Juror 85, would you have answered yes to

4    any of my questions?

5           THE PROSPECTIVE JUROR:  No, your Honor.

6           THE COURT:  Juror 85, I will kindly ask you to take

7    the seat previously occupied as Seat 18.  It's over to the

8    left.  There's a label on the seat.

9           Somebody can guide her there, Seat 18.

10          Juror 86, would you have answered yes to any of my

11   questions?

12          THE PROSPECTIVE JUROR:  Yes.

13          THE COURT:  Please come on up.

14          (Sidebar continues; prospective juror joins.)

15          THE COURT:  Hello.  Juror 86?

16          THE PROSPECTIVE JUROR:  Yes.

17          THE COURT:  Please have a seat.  Yes, ma'am.

18          THE PROSPECTIVE JUROR:  First of all, my work will

19   not let me participate in this case, as well as my previous

20   experience.  I was laid off because of insurance fraud run by

21   management.  So, this kind of thing that I think will not -- I

22   will not be able to actually judge.  Also, I'm traveling in

23   two weeks.

24          So, I'm not going to be able to be juror.

25          THE COURT:  So, your job will not allow you to

```
                        Sidebar                      134
```

1  take -- does your job pay you?

2  THE PROSPECTIVE JUROR:  My job pays me.  I'm

3  assistant to CO.  I have to be available mostly 24/7.  I was

4  told I was called for jury duty.  The policy we have allow me

5  to take up to ten days but not more.

6  THE COURT:  So you would only be paid for basically

7  two weeks of service.

8  THE PROSPECTIVE JUROR:  Correct.

9  THE COURT:  I'm going to excuse you and ask you to

10  go to the jury room and tell them you've been excused.

11  THE PROSPECTIVE JUROR:  Thank you so much.

12  (Prospective juror excused.)

13  THE COURT:  No objection to excusing 86, correct.

14  MR. BRAFMAN:  No objection.

15  MS. KASULIS:  No objection.

16  (In open court.)

17  THE COURT:  Juror 87, would you have answered yes to

18  any of my questions?  Come on up.

19  (Sidebar continues; prospective juror joins.)

20  THE COURT:  Hi.  How are you?

21  Juror 87?  Please have a seat.

22  THE PROSPECTIVE JUROR:  My ex-husband had a medical

23  supply business that he took public, so I don't feel

24  comfortable with this case.

25  THE COURT:  Your husband has a medical supply?

```
                    Sidebar                        135
```

1           THE PROSPECTIVE JUROR:  That he took public.

2           THE COURT:  And?

3           THE PROSPECTIVE JUROR:  I would never convict him.

4    I think that's part of the stock market.

5           THE COURT:  The question is whether you could keep

6    in mind --

7           THE PROSPECTIVE JUROR:  No.  I saw what my

8    ex-husband did, no.  I think it's a scam, the stock market.  I

9    think people that are invested know about that.

10          THE COURT:  So in terms of your husband's

11   experience, you wouldn't be able to put that aside --

12          THE PROSPECTIVE JUROR:  No.

13          THE COURT:  -- and decide this cased based on the

14   evidence?

15          THE PROSPECTIVE JUROR:  No.

16          THE COURT:  Let me ask you to step back for a

17   moment.

18          (Prospective juror leaves sidebar.)

19          MS. KASULIS:  Challenge for cause.

20          (Prospective juror joins sidebar.)

21          THE COURT:  Ma'am, we're going to excuse you.

22   Please report back to the jury room.

23          THE PROSPECTIVE JUROR:  Thanks.  Good luck.

24          (Prospective juror excused.)

25          (In open court.)

```
                        Sidebar                      136
```

1              THE COURT:  Juror 88, would you have answered yes to

2      any of my questions?

3              THE PROSPECTIVE JUROR:  Yes.

4              THE COURT:  Please come forward.

5              (Sidebar continues; prospective juror joins.)

6              THE COURT:  Hi.  Good afternoon.

7              Juror 88?  Please have a seat.

8              THE PROSPECTIVE JUROR:  Thank you.

9              THE COURT:  Yes, ma'am?

10             THE PROSPECTIVE JUROR:  I am currently 12 weeks

11     pregnant, so I have doctor's appointments weekly; I have two

12     next week, one of them is time-sensitive.

13             I'm also employed by a golf course and I do

14     catering.  I work nights until midnight, which makes it very

15     difficult to be up at six for a two-hour commute to come here.

16             THE COURT:  Let me ask you to just step back for one

17     moment just right over here.

18             (Prospective juror leaves sidebar.)

19             THE COURT:  Any objections to excusing Juror No. 88?

20             MR. BRAFMAN:  No, your Honor.

21             MS. KASULIS:  No.

22             (Prospective juror joins sidebar.)

23             THE COURT:  Ma'am, we're going to excuse you.  Just

24     go back to the jury room and tell them you've been excused.

25             And congratulations.

```
                          Sidebar                        137
```

1          THE PROSPECTIVE JUROR:  Thank you.

2          (Prospective juror excused.)

3          (In open court.)

4          THE COURT:  Juror 89, would you have answered yes to

5   any of my questions?

6          THE PROSPECTIVE JUROR:  Yes, your Honor.

7          THE COURT:  Please come on up, sir.

8          (Sidebar continues; prospective juror joins.)

9          THE COURT:  Hello, sir.  Juror 89?

10         THE PROSPECTIVE JUROR:  Yes, ma'am.

11         THE COURT:  Have a seat.

12         THE PROSPECTIVE JUROR:  I work with the Department

13  of Labor and I have a scheduled hearing in front of a judge on

14  Friday.  In addition, next month I'm going to travel.

15         THE COURT:  So, do you have -- you said you're with

16  the Department of Labor.  The state or the federal?

17         THE PROSPECTIVE JUROR:  The state, I work with the

18  state.

19         THE COURT:  And what do you do for Department of

20  Labor.

21         THE PROSPECTIVE JUROR:  I'm a state auditor.  I

22  examine Government employer books and records.

23         THE COURT:  Do you have to be present at the

24  hearing?

25         THE PROSPECTIVE JUROR:  Yes, because I have to

```
                    Sidebar                        138
```

1  defend my work.

2          THE COURT:  I see.  And the hearing is set for what

3  date?

4          THE PROSPECTIVE JUROR:  The 30th this month, this

5  Friday.

6          THE COURT:  And there's no one else that could fill

7  in for you?

8          THE PROSPECTIVE JUROR:  No, because it's my work.

9          THE COURT:  And you're traveling out of state next

10 month.

11         THE PROSPECTIVE JUROR:  Yes, I'm going to my country

12 the 27th of July.

13         THE COURT:  You have tickets already, sir?

14         THE PROSPECTIVE JUROR:  No.

15         THE COURT:  Do you have any latitude in arranging

16 your trip?

17         THE PROSPECTIVE JUROR:  My son is going to book the

18 flight today.

19         THE COURT:  Let me ask you to step back for one

20 second, please.

21         (Prospective juror leaves sidebar.)

22         THE COURT:  Any objection to excusing Juror 89?

23         MR. BRAFMAN:  No, your Honor.

24         MS. KASULIS:  No.

25         (Prospective juror joins sidebar.)

```
                          Sidebar                        139
```

1          THE COURT:  Sir, I'm going to excuse you.  You may

2   go down to the jury room, check in, and let them know you're

3   excused, all right?  Thank you.

4          (Prospective juror excused.)

5          (In open court.)

6          THE COURT:  Juror No. 90, would you have answered

7   yes to any of my questions?

8          THE PROSPECTIVE JUROR:  Yes.

9          THE COURT:  Come on up.

10          (Sidebar continues; prospective juror joins.)

11          THE COURT:  Hi, sir.  You're Juror No. 90?

12          THE PROSPECTIVE JUROR:  Yes.

13          THE COURT:  Have a seat.

14          THE PROSPECTIVE JUROR:  In regards to your earlier

15   questions, I've seen enough stories myself where I formed a

16   fairly negative opinion already.  I've love to be impartial,

17   but the reality is I already have an opinion.

18          THE COURT:  Would you be able to set that opinion

19   aside and, as a juror, keep an open mind and a fair mind

20   towards both sides and decide the case based only on the

21   evidence?

22          THE PROSPECTIVE JUROR:  I'd like to think I could.

23   But when he I realized who it was, I said to myself:  Oh, it's

24   that guy.

25          I'd love to be impartial, but the reality is I don't

Sidebar                                    140

1    know that I could, to be honest.

2            THE COURT:  All right.  I'm going to excuse you,

3    sir.  So, just go back to the jury room.  There might be

4    another case that you will be available to serve.

5            (Prospective juror excused.)

6            THE COURT:  I'm going to, for the record, interpret

7    that your hand going up was a challenge for cause, which I

8    granted.

9            MR. BRAFMAN:  Yes, your Honor.  I just didn't want

10   to embarrass the juror.

11           THE COURT:  I understand.

12           (In open court.)

13           THE COURT:  Juror No. 91, would you have answered

14   yes to any of my questions?

15           THE PROSPECTIVE JUROR:  Yes, your Honor.

16           THE COURT:  Please come on up, sir.

17           (Sidebar continues; prospective juror joins.)

18           THE COURT:  Have a seat.  How are you?

19           THE PROSPECTIVE JUROR:  Good.  How are you?

20           THE COURT:  Good.  Juror No. 91, what can you tell

21   me about your answers?

22           THE PROSPECTIVE JUROR:  It was for your second

23   question.  Part of my income is freelance work, which means if

24   I'm absent for about four to six weeks, I can't really afford

25   to live in my apartment.

Sidebar                                141

1          THE COURT:  Tell me about the freelance work you do.

2          THE PROSPECTIVE JUROR:  It's two.  I'm a tennis

3   coach and the other is I'm a private tutor.

4          THE COURT:  So, you don't do any of these on the

5   evenings and weekends?

6          THE PROSPECTIVE JUROR:  Tennis coaching is the

7   entire day, from nine to four.

8          THE COURT:  And the tutoring?

9          THE PROSPECTIVE JUROR:  Tutoring is more on the

10  evening and weekend.

11         In addition, I already paid for vacations.  Two are

12  the week of July -- later weeks of July.  And then the second

13  one is in August.  So, hypothetically, if it were to extend

14  that far that could be an issue, but I'm not really

15  considering that one, it's more the first one.

16         THE COURT:  And that's your sole source of income,

17  your freelance --

18         THE PROSPECTIVE JUROR:  Well, I'm also a teacher,

19  but now I'm off.

20         THE COURT:  Got it.

21         Let me ask you just to briefly step to the side,

22  there.

23         (Prospective juror leaves sidebar.)

24         THE COURT:  Any objection to excusing Juror No. 91?

25         MS. KASULIS:  No objection.

```
                        Sidebar                      142
```

1           MR. BRAFMAN:  No, your Honor.

2           (Prospective juror joins sidebar.)

3           THE COURT:  We'll excuse you.  Please go to the jury

4    room where you started.

5           Did you go to Stanford?

6           THE PROSPECTIVE JUROR:  No.

7           THE COURT:  I'm just looking at your tree.

8           (Prospective juror excused.)

9           (In open court.)

10          THE COURT:  Juror 92, would you have answered yes to

11   any of my questions?

12          THE PROSPECTIVE JUROR:  Yes.

13          THE COURT:  Come on up, please.

14          (Sidebar continues; prospective juror joins.)

15          THE COURT:  How are you, ma'am?  Juror No. 92?

16          THE PROSPECTIVE JUROR:  Yeah.

17          THE COURT:  Yes, ma'am?

18          THE PROSPECTIVE JUROR:  I have a responsibility at

19   home.  My husband was injured, and he has a whole right

20   side -- everything broken from the scapula.  And he has a

21   spine problem, so he has balancing issue.  So, I have to be

22   able to watch him.  He also fractured his toes and burn

23   himself.

24          And myself is high blood pressure these days.  I

25   just had doctor in the process of checking it.  They told me

```
                         Sidebar                        143
```

1  very dangerous because it zoom up all of a sudden.

2          So, talking about fraud, I had credit card fraud.

3          THE COURT:  You were the victim of credit card

4  fraud?

5          THE PROSPECTIVE JUROR:  Yes.  It took us a year to

6  solve the issue.

7          THE COURT:  Those issues are not charged in the

8  indictment, but it seems to me your personal circumstances --

9          THE PROSPECTIVE JUROR:  It's very bad.  I'm under a

10 lot of pressure right now.

11         THE COURT:  I will excuse you.  Go back to the jury

12 room and tell them you're excused.

13         THE PROSPECTIVE JUROR:  Thanks so much.

14         THE COURT:  I take it no objection?

15         MR. BRAFMAN:  No objection, Judge.

16         MS. SMITH:  No objection.

17         (Prospective juror excused.)

18         (In open court.)

19         THE COURT:  No. 93, would you have answered yes to

20 any of my questions?

21         THE PROSPECTIVE JUROR:  Yes, your Honor.

22         THE COURT:  Come up, sir.

23         (Sidebar continues; prospective juror joins.)

24         THE COURT:  How are you, Juror No. 93?  Please have

25 a seat.

```
                        Sidebar                    144
```

1            THE PROSPECTIVE JUROR:  Thank you.

2            THE COURT:  What would you like to tell us?

3            THE PROSPECTIVE JUROR:  Not so much on the first two

4    questions that you asked, but it would be a hardship for me to

5    serve.

6            THE COURT:  Because of?

7            THE PROSPECTIVE JUROR:  Financially.  Obviously, I

8    can't go for four weeks without a paycheck.  There's no way.

9            THE COURT:  Does your employer pay you to serve on

10   the jury at all.

11           THE PROSPECTIVE JUROR:  No.

12           They're a very large company, Henry Shine Medical

13   Supply.

14           THE COURT:  Okay.

15           THE PROSPECTIVE JUROR:  And I drive the executives.

16   I'm a driver there.  But I drive all, you know, the CFO, CEO.

17           But, yeah, financially is the main reason.

18           THE COURT:  So you'll lose pay if you're not --

19           THE PROSPECTIVE JUROR:  Absolutely.

20           THE COURT:  All right, sir.  I'll excuse you then,

21   all right?

22           THE PROSPECTIVE JUROR:  Thank you.

23           THE COURT:  Go to the jury room where you checked in

24   this morning and let them know.

25           (Prospective juror excused.)

```
                        Sidebar                      145
```

1              THE COURT:  Any objections to excusing 93?

2              MS. SMITH:  No.

3              MR. BRAFMAN:  No, your Honor.

4              (In open court.)

5              THE COURT:  No. 94, would you have answered yes to

6      any of my questions?  Come on up.

7              (Sidebar continues; prospective juror joins.)

8              THE COURT:  Hello, Juror No. 94.  Have a seat.  How

9      are you?

10             THE PROSPECTIVE JUROR:  Not bad.  Yourself?

11             THE COURT:  Okay.  Yes, ma'am, you said --

12             THE PROSPECTIVE JUROR:  I'm leaving the country in

13     about three weeks.

14             THE COURT:  All right.  You're going to Italy.

15             THE PROSPECTIVE JUROR:  Yes.

16             MS. ZELLAN:  Enjoy.

17             THE COURT:  Have a good trip.  Just go to the jury

18     room and tell them you're excused.  Have a nice time.

19             THE PROSPECTIVE JUROR:  Thank you very much.

20             THE COURT:  We can either keep going -

21             MR. BRAFMAN:  I would like a break, your Honor.

22             THE COURT:  I'm going to just admonish the jury not

23     to speak to anybody and to come back.

24             MR. BRAFMAN:  We're in very close quarters in this

25     building.  Could you also indicate to the jurors that the

```
                     Sidebar                    146
```

1   parties on both sides, if they run into them, are not going to

2   speak to them; they're not being rude...

3              THE COURT:  Yes.

4              MS. KASULIS:  And ask them not to check their phones

5   or read anything about this.

6              MR. BRAFMAN:  And include social media in that

7   instruction, your Honor, please.

8              THE COURT:  Yes.

9              MS. ZELLAN:  I didn't hear what you said.

10             MS. KASULIS:  To instruct the jury not to read

11  anything on their phone.

12             One quick aside.  We thought one of the sketch

13  artists was sketching the jurors.

14             THE COURT:  I didn't realize that.  They're not

15  supposed to.  Did they not get the order?

16             THE NEWS REPORTER:  It was the mother-daughter pair.

17             THE COURT:  Do you know them?

18             THE NEWS REPORTER:  I don't really.

19             THE COURT:  If you can, let them know there's an

20  order.

21             I'll make an announcement and ask them to come back

22  here -- should I ask them to come back to the courtroom by 2,

23  in their seats?

24             I don't want to line them all up and take that time

25  again.

1          MS. KASULIS:  All right.

2          THE COURT:  2 o'clock.

3          (Sidebar ends; in open court.)

4          THE COURT:  At this time, I want to extend my

5   ongoing thanks to all of you for your patience.

6          We are going to give you a break.  During that break

7   it's critical, that nobody speak about this case; do not speak

8   amongst yourselves and do not allow anyone to approach you to

9   talk about this case.

10         If you see the lawyers, the agents, or anyone seated

11  at defense table, do not be concerned if they do not speak to

12  you.  They are not allowed to speak to anybody.

13         In addition, if you do retrieve your phones, do not

14  do any research about this case.  If anything pops up on your

15  phone regarding this case, do not read it.  Please.

16         And I don't want any research or internet or

17  statements by you or allow people to contact you and ask you

18  what you're doing.  You've been called here for jury duty,

19  that's all you have to say.  Please don't talk about the case.

20         I want to thank you.  What I'm going to ask all of

21  you, even those whose numbers have not been called and those

22  whose numbers have been called to, return here promptly at

23  2 p.m.  That's roughly one hour from now.  Just resume your

24  seats, your same seats.  And, again, please don't talk about

25  the case and, again, thank you very much.  I'll see you at

Proceedings                              148

1    two.   Thank you.

2              (Prospective jurors excused.)

3              THE COURT:  All right.  Let's take one hour.  Be

4    back here, please, just a little before two, if you don't

5    mind.

6              MR. AGNIFILO:  2 o'clock, Judge?

7              THE COURT:  Yes.

8              You didn't want to address any of the other issues

9    during this lunch break, did you?

10             MR. AGNIFILO:  No, no.

11             THE COURT:  I'm happy to address them.  But the

12   Government is going to be responding in some form or another

13   to the motion for reconsideration.

14             MS. KASULIS:  Yes, your Honor.  We're going to

15   responsible orally.  If your Honor wants anything

16   additional --

17             THE COURT:  I always prefer having things in the

18   record so it's clear, but whatever you can do.  I appreciate

19   it.

20             MS. KASULIS:  Okay, Judge.

21

22             (Luncheon recess taken.)

23

24

25

149

AFTERNOON SESSION

1

2             (In open court; outside the presence of the jury.)

3             (The following occurred at sidebar; prospective

4    jurors not present.)

5             THE COURT:  Let's have a sidebar with the parties.

6             We are back on the record and we have all counsel

7    present.

8             Does Mr. Brafman want to be here?

9             MR. AGNIFILO:  Yes.

10            THE COURT:  We are making sure we are all on the

11   same page with regard to who is in what seat.  I will read the

12   numbers and you can all tell me if I have made an error.

13            Seat 1, Juror No. 42.  Seat 2, Juror No. 51, seat

14   55.  Seat four, 43.  Seat 5, 56.  Seat 6, 57.  Seat 7, same

15   person.  Seat 8, 66.  Seat 9, 71.  Seat 10, same person.

16            Seat 11, 72.  Seat 12, same person.

17            Seat 13, 75.  Seat 14, 78.  Seat 15 and 16 as

18   indicated currently on the list.

19            Seat 17, 82.  Seat 18, 85.

20            19 and 20 are not yet filled.  Seat 21 as indicated

21   on the list.  Same for seat 22.

22            Seat 23 is open.

23            MR. BRAFMAN:  I have 41 there.

24            THE COURT:  Okay.  41.  Thank you.  Juror No. 41 is

25   in seat 23.  Seat 24, as indicated.

150

1           Seats 25, 26, 27, and 28 are open.  Seat 29 as
2   indicated.
3           Seat 30, I think I have Juror No. 49; is that right?
4           MR. BRAFMAN:  Yes.
5           MS. SMITH:  I have struck.
6           MS. KASULIS:  I have struck.
7           THE COURT:  I didn't strike.  Seat 30 is empty.
8   Seat 31 is as indicated on the list.  Seat 32 is empty.  Seat
9   33 is as indicated on the list.  Seats 34 and 35 are empty.
10  Seat 36, as indicated.
11          Seats 37 and 38 are vacant.  Seat 39 is as
12  indicated.  And seat 40 is empty.
13          MS. SMITH:  We struck 50.
14          MS. KASULIS:  We struck 50.
15          THE COURT:  Yes.  So we are going to resume with
16  Juror No. 95, I believe.
17          MR. AGNIFILO:  Right.
18          THE COURT:  Is that where you all are?
19          MS. KASULIS:  Yes.
20          THE COURT:  Just in case, we are going to have 40
21  additional jurors waiting in the jury room, but we will have
22  to start the voir dire over if that happens because they
23  haven't heard the questions.
24          MS. KASULIS:  Your Honor, can I bring up a bottle of
25  water at sidebar?

1          THE COURT:  You can have a water.

2          As soon as everyone is here, we will start.

3          (In open court - prospective jurors present.)

4          THE COURT:  Thank you all for coming back.  We will

5    get started as soon as we have everybody.

6          Sandra, you might have to go back to the jury room

7    to see if we have all the jurors.

8          Are you Juror No. 101?

9          THE PROSPECTIVE JUROR:  Yes.

10          THE COURT:  Thank you.

11          All right.  I believe everybody is back.  Thank you,

12   Ladies and Gentleman, for coming back promptly.  I appreciate

13   it.

14          I am going to call Juror No. 95.  Would Juror No. 95

15   have answered yes to any of the questions that I have asked so

16   far?

17          THE PROSPECTIVE JUROR:  No, Your Honor.

18          THE COURT:  Okay, sir, I will ask you to please sit

19   down in seat number 19, which is on the end here.

20          Juror No. 96, would you have answered yes to any of

21   my questions.

22          THE PROSPECTIVE JUROR:  Yes.

23          THE COURT:  We are going to go to sidebar.  Excuse

24   us, ladies and gentleman.

25          (Prospective juror present at sidebar.)

1          THE COURT:   Juror No. 96.

2          THE PROSPECTIVE JUROR:  Yes.

3          THE COURT:   Thank you.   What questions would you

4    have answered yes to?

5          THE PROSPECTIVE JUROR:  When?

6          THE COURT:   What do you want to tell me?

7          THE PROSPECTIVE JUROR:  My English not good.

8          THE COURT:   How long have you been in the United

9    States?

10         THE PROSPECTIVE JUROR:  Over ten years.

11         THE COURT:   What do you do for a living?  Do you

12   work?

13         THE PROSPECTIVE JUROR:  I work.

14         THE COURT:   Where do you work?

15         THE PROSPECTIVE JUROR:  Nails.

16         THE COURT:   So you communicate with your customers

17   in English?

18         THE PROSPECTIVE JUROR:  Some.  Not really.

19         THE COURT:   Do you use English in any other part of

20   your daily life?

21         THE PROSPECTIVE JUROR:  No.

22         THE COURT:   No.  Have you studied English formally

23   in school?

24         THE PROSPECTIVE JUROR:  Not really.

25         THE COURT:   Let me ask you to stand back, please,

153

1    over here.  Just stand over there, please.

2            (Prospective juror leaves sidebar.)

3            THE COURT:  Does anybody have any issue with the

4    issue of she has minimal use of English?

5            MR. BRAFMAN:  No.

6            MS. KASULIS:  No objection.

7            (Prospective juror present at sidebar.)

8            THE COURT:  Ma'am, go back to the jury room where

9    you started and tell them you are excused.

10           THE PROSPECTIVE JUROR:  Thank you.

11           (Prospective juror excused.)

12           (In open court.)

13           THE COURT:  Juror No. 97.  Have you answered yes to

14   any of my questions?

15           THE PROSPECTIVE JUROR:  No.

16           THE COURT:  You have not.  Let me ask you to sit in

17   the seat designated as seat number 20, ma'am.  That is Juror

18   No. 97.

19           Juror No. 98, would you have answered yes to any of

20   my questions?

21           THE PROSPECTIVE JUROR:  Yes.

22           THE COURT:  Please come up, ma'am.

23           (Prospective juror present at sidebar.)

24           THE COURT:  Please have a seat.

25           THE PROSPECTIVE JUROR:  How are you?

1        THE COURT:  What questions would you have answered

2   yes to?

3        THE PROSPECTIVE JUROR:  I have pause about the

4   scheduling.  I have a weekly mental health appointment that I

5   wouldn't feel comfortable missing, and also at work, one of my

6   coworkers just quit, so now the pressure is on me to.

7        THE COURT:  What kind of work do you do?

8        THE PROSPECTIVE JUROR:  Publishing.

9        THE COURT:  Is there anyone who can fill in?

10       THE PROSPECTIVE JUROR:  It is a small team.  If I am

11  out that whole time, we might have to hire freelance.

12       THE COURT:  Do you get paid while you are on jury

13  duty?

14       THE PROSPECTIVE JUROR:  I think so.

15       THE COURT:  With regard to appointments, can you

16  schedule those for evenings or weekend?

17       THE PROSPECTIVE JUROR:  She doesn't do weekends.  It

18  is like 9:00 a.m.

19       THE COURT:  Let me ask you to step over to the side

20  for one moment.

21       THE PROSPECTIVE JUROR:  Okay.

22       (Prospective juror leaves sidebar.)

23       THE COURT:  Do the parties have any view about this

24  juror?  Should we excuse her?  We can ask her to try to

25  re-schedule.

1          MR. BRAFMAN:  I don't have a strong feeling either

2     way.

3          MS. KASULIS:  No objection.

4          MS. SMITH:  No objection.

5          MR. AGNIFILO:  That's fine.

6          (Prospective juror present at sidebar.)

7          THE COURT:  Ma'am, we will excuse you.  You can go

8     to the jury room.  Just tell them that you have been excused.

9          (Prospective juror excused.)

10         THE COURT:  Juror No. 99, would you have answered

11    yes to my questions?

12         THE PROSPECTIVE JUROR:  No.

13         THE COURT:  I will ask Juror No. 99 to seat in a

14    seat previously occupied by Juror No. 25.

15         Juror No. 100, would you have answered yes to my any

16    of my questions?

17         THE PROSPECTIVE JUROR:  No.

18         THE COURT:  Juror No. 100, please go to the seat

19    designated as seat No. 26.

20         Juror No. 101, would you have answered yes to any of

21    my questions?

22         THE PROSPECTIVE JUROR:  Yes.

23         THE COURT:  Come on up, sir, please.

24         Have a seat, sir, Juror No. 101.

25         (Prospective juror present at sidebar.)

1          THE COURT:  Hi.

2          THE PROSPECTIVE JUROR:  I am disabled and diabetic

3    and constantly going to doctors.

4          THE COURT:  I see.  Okay.  You have to go to

5    doctors' appointments?

6          THE PROSPECTIVE JUROR:  Yes, it is kind of hard for

7    me to get back and forth.

8          THE COURT:  I will excuse you, sir.  Just go to the

9    jury room and tell them that you are excused.

10         THE PROSPECTIVE JUROR:  Thank you.

11         (Prospective juror excused.)

12         THE COURT:  No objections to excusing?

13         MS. KASULIS:  No.

14         MR. BRAFMAN:  No.

15         (In open court.)

16         THE COURT:  Juror No. 102, would you have answered

17   yes to any of my questions?

18         THE PROSPECTIVE JUROR:  Yes, your Honor.

19         THE COURT:  Please come up, sir.

20         (Prospective juror present at sidebar.)

21         THE COURT:  Have a seat.  Juror No. 102.

22         THE PROSPECTIVE JUROR:  How's it going?  I have

23   hardship with the four to six weeks thing.  I'm recently a

24   college graduate.  I got my first full-time job.  They have us

25   going through training.  The training is going to be in

1    Oklahoma or D.C., and the training is weeks long.

2           THE COURT:  You will be out of town during the

3    six-week period?

4           THE PROSPECTIVE JUROR:  Yes.

5           (Prospective juror leaves sidebar.)

6           THE COURT:  Is there any objection to excusing?

7           MR. BRAFMAN:  No, Your Honor.

8           MS. KASULIS:  No, Your Honor.

9           (Prospective juror present at sidebar.)

10          THE COURT:  I will excuse you.  Just go back to the

11   jury room and tell them you are excused.

12          (Prospective juror excused.)

13          THE COURT:  Juror No. 103, would you have answered

14   yes to any of my questions?

15          THE PROSPECTIVE JUROR:  Yes.

16          THE COURT:  Come on up, sir, please.

17          (Prospective juror present at sidebar.)

18          THE PROSPECTIVE JUROR:  Juror No. 103.

19          THE COURT:  What is the issue?

20          THE PROSPECTIVE JUROR:  I know about the defendant,

21   like I know what he did, basically he bought the medication

22   and jacked up the price, after that, the indictment came.

23          THE COURT:  The charges in this case do not concern

24   pharmaceutical pricing.

25          THE PROSPECTIVE JUROR:  Plus negative, where I am

158

1    already biased against him.

2            THE COURT:  All right.

3            THE PROSPECTIVE JUROR:  Another issue is about three

4    weeks I have vacations with other people where I have hotels

5    booked up already.  If I cancel, they are going to be affected

6    by this, too.  That's it.

7            THE COURT:  So your vacation is in three weeks?

8            THE PROSPECTIVE JUROR:  Uh-hum.

9            THE COURT:  We will excuse you, sir.  Just go to the

10   jury room and tell them that you are excused from this panel.

11   Maybe they will have something else for you.

12           THE PROSPECTIVE JUROR:  All right.

13           THE COURT:  Thank you.

14           (Prospective juror leaves sidebar.)

15           THE COURT:  I take it no one is observing to 103?

16           MS. KASULIS:  No.

17           MR. BRAFMAN:  No.

18           (Prospective juror excused.)

19           THE COURT:  We will have to start grabbing more

20   jurors.

21           Juror No. 104, would you have answered yes to any of

22   my questions?

23           THE PROSPECTIVE JUROR:  No, Your Honor.

24           THE COURT:  All right, sir.  Please take a seat in

25   what has been previously designated as seat number 27.

159

1          Juror No. 105, would you have answered yes to any of

2  my questions?

3          THE PROSPECTIVE JUROR:  Yes, your Honor.

4          THE COURT:  Please come forward.

5          (Prospective juror present at sidebar.)

6          THE COURT:  You are Juror No. 105.

7          THE PROSPECTIVE JUROR:  Yes.

8          THE COURT:  Hello, ma'am.

9          THE PROSPECTIVE JUROR:  I have a little anxiety.

10          THE COURT:  It is all right.  Just be truthful with

11  us.  What issues do you want to bring to our attention?

12          THE PROSPECTIVE JUROR:  I work ten months out of the

13  year.  I work in a school.  I work with students on the side.

14  I need the income.  Being on this case for that long, I won't

15  get an income.

16          THE COURT:  You don't get paid from your job?

17          THE PROSPECTIVE JUROR:  No, I'm an aide.

18          THE COURT:  You work with students during the summer

19  to make extra money?

20          THE PROSPECTIVE JUROR:  Correct.

21          THE COURT:  I will excuse you, then.  You can go to

22  the jury room and tell them that you are excused.

23          THE PROSPECTIVE JUROR:  Okay.

24          THE COURT:  Thank you.

25          (Prospective juror excused.)

1          (In open court.)

2          THE COURT:  Juror No. 106, would you have answered

3  yes to any of my questions?

4          THE PROSPECTIVE JUROR:  Yes.

5          THE COURT:  Please come up.

6          (Prospective juror present at sidebar.)

7          THE COURT:  Hi, ma'am.  You are Juror No. 106?

8          THE PROSPECTIVE JUROR:  Yes, I am.

9          THE COURT:  What would you like to tell me?

10          THE PROSPECTIVE JUROR:  I would like to be dismissed

11  from this case because I have a very elderly mom.  She's

12  oversees, you know.  Six weeks is too long.  I guess it is not

13  fair to the jury.

14          THE COURT:  Your mother is overseas?

15          THE PROSPECTIVE JUROR:  Yes.

16          THE COURT:  Were you going to visit her?

17          THE PROSPECTIVE JUROR:  Yes, yes, yes.

18          THE COURT:  When were you leaving?

19          THE PROSPECTIVE JUROR:  Probably the end of July,

20  beginning of August, but, you know, in the meantime, she's 97.

21          THE COURT:  Have you booked your tickets yet?

22          THE PROSPECTIVE JUROR:  No.

23          THE COURT:  Would you be able to book your tickets

24  in late August in order to see her then?

25          THE PROSPECTIVE JUROR:  Yeah.  Unless something else

1  will give me time, because she has a heart condition.

2          THE COURT:  I see.  You might have to go in a

3  moment's notice.

4          THE PROSPECTIVE JUROR:  Exactly, so I don't want to

5  commit myself, but if it was another time.

6          THE COURT:  Well, I guess my question is whether you

7  would feel comfortable and would you be able to focus fully on

8  the evidence at the trial and assuming we can get done in six

9  weeks, you can then go see your mother.

10          THE PROSPECTIVE JUROR:  Yeah, it's just in the

11  meantime, you never know, every time the phone rings, it's

12  just --

13          THE COURT:  Of course.  Of course.

14          THE PROSPECTIVE JUROR:  Maybe I will go just to see

15  her because I feel like I have mixed feelings about, you know.

16          THE COURT:  All right.  Let me just ask you to step

17  back for a second.

18          THE PROSPECTIVE JUROR:  Sure.

19          (Prospective juror leaves sidebar.)

20          THE COURT:  She has no current conflicts right now.

21          MR. BRAFMAN:  But she is certainly uneasy about the

22  fact that she is going to have to be here.  I would just

23  suggest respectfully that we just let her go.

24          MS. KASULIS:  No objection.

25          THE COURT:  All right.  We will let her go.

1          (Prospective juror present at sidebar.)

2          THE COURT:  Ma'am, we will excuse you.  If you go

3     back to the jury room and tell them that you are excused from

4     this selection.

5          THE PROSPECTIVE JUROR:  Thank you.

6          (Prospective juror excused.)

7          THE COURT:  Juror No. 107, would you have answered

8     yes to any of my questions?

9          THE PROSPECTIVE JUROR:  No, your Honor.

10         THE COURT:  Thank you, ma'am.  Juror No. 107, will

11    you take the seat that is designated as seat No. 28.

12         Juror No. 108, would you have answered yes to any of

13    my questions?

14         THE PROSPECTIVE JUROR:  No, ma'am.

15         THE COURT:  Juror No. 108, please go to the seat

16    designated as seat No. 30.

17         Juror No. 109, sir, would you have answered yes to

18    any of my questions?

19         THE PROSPECTIVE JUROR:  Yes, your Honor.

20         THE COURT:  Please come forward.

21         (Prospective juror present at sidebar.)

22         THE COURT:  Juror No. 109, good afternoon.

23         THE PROSPECTIVE JUROR:  Good afternoon.

24         THE COURT:  Have a seat.

25         THE PROSPECTIVE JUROR:  Yes, to your question, I

1  know something about the case and I would not be able to

2  commit to a six-week trial.

3          THE COURT:  Because?

4          THE PROSPECTIVE JUROR:  Because I am a manager at

5  brokerage firm, broker-dealer, registered investment advisor,

6  Wall Street firm, and it's a small staff and it would upset

7  our vacation schedule, which, you know, is no small matter at

8  the firm.  Obviously for your concerns, it is a little

9  trivial.

10          THE COURT:  Nothing is trivial.

11          THE PROSPECTIVE JUROR:  It would be an imposition at

12  the firm.

13          THE COURT:  Because others --

14          THE PROSPECTIVE JUROR:  It is a small staff and we

15  have to cancel vacations in my absence.

16          THE COURT:  How large is your staff?

17          THE PROSPECTIVE JUROR:  Eight people, but four --

18  four need to be there all the time.  One person at a time

19  takes a vacation.  We have one of our employees, part of that

20  group of four is currently on disability.

21          THE COURT:  So there is already one manager out?

22          THE PROSPECTIVE JUROR:  One of my staff out, yes.

23  She will be back -- she had breast cancer.  She had surgery

24  and is on disability for six weeks.

25          THE COURT:  How many managers are there besides

1   yourself?

2          THE PROSPECTIVE JUROR:  In my department, I have an

3   assistant that does fill in for me.

4          THE COURT:  All right.  Let me ask you to step to

5   the side.

6          THE PROSPECTIVE JUROR:  Sure.

7          (Prospective juror leaves sidebar.)

8          MR. BRAFMAN:  Your Honor, if the Court is going to

9   excuse the juror, then we don't need to ask any additional

10  questions.  The fact that he is an investment advisor makes me

11  want to challenge him for cause because there is going to be

12  an expert in the room, one expert among 12, either way I would

13  challenge him for cause.  I think there is a hardship here.

14  You also didn't flesh out what he knows about the case.

15         THE COURT:  I didn't go there.

16         MR. BRAFMAN:  I would ask you to excuse the juror.

17         THE COURT:  Does the Government want to be heard?

18         MS. KASULIS:  Your Honor, we don't object to

19  dismissing him but only on the grounds of hardship because of

20  his employment status.

21         MR. BRAFMAN:  Either way.

22         THE COURT:  I wouldn't dismiss for cause just

23  because I don't have a record to do that.

24         MR. BRAFMAN:  Yes, I understand.

25         THE COURT:  At this point, other than his own

165

1    hardship.

2             MR. BRAFMAN:  Okay.

3             (Prospective juror present at sidebar.)

4             THE COURT:  Sir, I am going to excuse you.  Please

5    go to the jury room and tell them that you have been excused

6    from this jury.

7             THE PROSPECTIVE JUROR:  Thank you.

8             (Prospective juror excused.)

9             (In open court.)

10            THE COURT:  Juror No. 110, ma'am, would you have

11   answered yes to any of my questions?

12            THE PROSPECTIVE JUROR:  No, ma'am.

13            THE COURT:  Please go to the seat designated as seat

14   No. 2.  I'm sorry, seat No. 32.  Seat No. 32, please.

15            (Continued on next page.)

16

17

18

19

20

21

22

23

24

25

1          (In open court.)

2          THE COURT:  Juror Number 111, would you have

3  answered "yes" to any of my questions, ma'am?

4          THE PROSPECTIVE JUROR:  Yes.

5          THE COURT:  Okay.  Come forward, please.

6          (Side bar continues; prospective juror joins.)

7          THE PROSPECTIVE JUROR:  Good afternoon.

8          THE COURT:  Have a seat.  You are Juror Number 111.

9          THE PROSPECTIVE JUROR:  Yes.  I have two kids and,

10 like, school is finished and I can't -- I have a 15 year old

11 and a 12 year old.  My daughter is leaving on the end of July

12 and I won't leave my son alone unattended by himself all this

13 time.

14         THE COURT:  No relatives or friends?

15         THE PROSPECTIVE JUROR:  My mother, but she's the one

16 who's leaving with my daughter to Puerto Rico.

17         THE COURT:  I see.  So the younger child would be

18 alone?

19         THE PROSPECTIVE JUROR:  Yes.

20         THE COURT:  And there is no one else in the family?

21         THE PROSPECTIVE JUROR:  No.  My only sister lives in

22 Florida.

23         THE COURT:  Very well.  Does he have activities for

24 the summer?

25         THE PROSPECTIVE JUROR:  No, he's just going to

```
                        Side Bar                       167
```

1    church camp on August 1st through the 4th.

2          THE COURT:  Okay.  I will excuse you and ask you to

3    go to the jury room and tell them you have been excused.  All

4    right, ma'am?

5          THE PROSPECTIVE JUROR:  Thank you.

6          THE COURT:  No objection to excusing 111?

7          MS. KASULIS:  No objection.

8          MR. BRAFMAN:  No objection.

9          (Prospective juror excused.)

10         (In open court.)

11         THE COURT:  Juror Number 112, sir, would you have

12   answered "yes" to any of my questions?

13         THE PROSPECTIVE JUROR:  Yes, Your Honor.

14         THE COURT:  Please come forward.

15         (Side bar continues; prospective juror joins.)

16         THE COURT:  Hi, sir.  Juror Number 112.

17         THE PROSPECTIVE JUROR:  Yes.

18         THE COURT:  So what are your issues?

19         THE PROSPECTIVE JUROR:  I have no problem serving

20   but the duration is what concerns me.  I have a family

21   vacation planned starting the 1st of August already paid for.

22         THE COURT:  Not refundable?

23         THE PROSPECTIVE JUROR:  Not refundable.  I didn't

24   get trip insurance.  It's my parents' anniversary.  We're

25   flying people in from around the country.

1          THE COURT:  Can't change that.

2          THE PROSPECTIVE JUROR:  No.  I also work in the

3   insurance business and I work on fraud investigations.

4          THE COURT:  The only concern is if you would let

5   that influence your ability to be fair and impartial.

6          THE PROSPECTIVE JUROR:  Right.

7          THE COURT:  But given your family anniversary and

8   parties, I would excuse you.

9          THE PROSPECTIVE JUROR:  Okay.  Thank you very much.

10          THE COURT:  So go to the jury room and tell them you

11   are excused.

12          THE PROSPECTIVE JUROR:  Okay.  Thank you so much.

13          (Prospective juror excused.)

14          (In open court.)

15          THE COURT:  Juror Number 113, would you have

16   answered "yes" to any of my questions?

17          THE PROSPECTIVE JUROR:  Yes, Your Honor.

18          THE COURT:  Please come forward.

19          (Side bar continues; prospective juror joins.)

20          THE COURT:  Please have a seat, Juror Number 113.

21   How are you?

22          THE PROSPECTIVE JUROR:  I'm fine.  Thank you.

23          THE COURT:  What would you like to talk about?

24          THE PROSPECTIVE JUROR:  I understand that with jury

25   duty, it has to be paid for and I know we need jurors and as a

1   citizen, I know we have a duty to do that.  I don't like to do

2   it because I will always have that problem, God, did I make

3   the right choice, did I judge that person correctly, and --

4           THE COURT:  Well --

5           THE PROSPECTIVE JUROR:  I know everybody probably

6   feels like that.

7           THE COURT:  Jury duty is a big responsibility.

8           THE PROSPECTIVE JUROR:  I know.

9           THE COURT:  And it is important to decide the case

10  with a fair and open mind.

11          THE PROSPECTIVE JUROR:  Right.

12          THE COURT:  You should not make any decisions about

13  anything in the case until you have heard all of the evidence.

14          THE PROSPECTIVE JUROR:  Right.

15          THE COURT:  And always strive to keep an open mind

16  and fair mind for both sides.

17          THE PROSPECTIVE JUROR:  Right.

18          THE COURT:  Now, this case can only be decided based

19  on the evidence presented in the courtroom at trial.

20          THE PROSPECTIVE JUROR:  Right.

21          THE COURT:  And part of what you do as a juror is

22  deliberate with your fellow jurors and apply the law --

23          THE PROSPECTIVE JUROR:  Okay.

24          THE COURT:  -- once you find the facts.  Now, the

25  question is whether you could do that despite what I

Side Bar                                              170

1    acknowledge may be difficult to ask.

2              THE PROSPECTIVE JUROR:  Right.  I could do that.

3              THE COURT:  Could you do it with a fair and open

4    mind?

5              THE PROSPECTIVE JUROR:  Fair and open mind, I

6    honestly can do that.  I don't like to do it but I can do it.

7    I know that's my duty and if I weigh all the facts and sit

8    still and listen to everything, I would go by the facts, but

9    in my heart, I would still feel was it one little shred of

10   evidence that maybe I was wrong about.

11             THE COURT:  Well, we certainly appreciate jurors to

12   be really careful.

13             THE PROSPECTIVE JUROR:  Right.

14             THE COURT:  These are important decisions.  We want

15   the jurors to consider all of the evidence.

16             THE PROSPECTIVE JUROR:  Right.

17             THE COURT:  And take great care.  All right.

18             THE PROSPECTIVE JUROR:  I understand.

19             THE COURT:  And ultimately, the Government has to

20   prove beyond a reasonable doubt and instruct you as to what

21   that means.  They have to prove beyond a reasonable doubt.

22   The jury can have reasonable doubt.  That's something that the

23   system accepts.

24             THE PROSPECTIVE JUROR:  Right.

25             THE COURT:  So, the question is whether you would be

Side Bar                    171

1   able to sit as a fair minded, open minded impartial juror.

2          THE PROSPECTIVE JUROR:  Would I be able to sit as

3   one?  If -- I hate to say it like this.  To do it, if I was,

4   like, at a place where I had to do it, could I sit there and

5   honestly weigh all the facts, I can.  Open heart, open mind,

6   listening to the evidence, I can.

7          THE COURT:  You can?

8          THE PROSPECTIVE JUROR:  I can.  I can do that.

9          THE COURT:  All right.

10          THE PROSPECTIVE JUROR:  But my heart still goes --

11          THE COURT:  Okay.  Let me ask you to stand over to

12   the side right here a minute.

13          THE PROSPECTIVE JUROR:  Okay.

14          THE COURT:  And I will get right back to you.

15          THE PROSPECTIVE JUROR:  Thank you so much.

16          (Prospective juror leaves side bar.)

17          THE COURT:  Does anybody have any views about this

18   juror?  She seems to be --

19          MR. BRAFMAN:  I think she's probably the most honest

20   person we've interviewed all day.  I don't think she's

21   presenting a challenge for cause, but I'm not going to fight

22   you on it if the Government moves to challenge for cause.

23          MS. KASULIS:  Your Honor, we do move to challenge.

24   I'm concerned she's going to have a hard time following the

25   reasonable doubt instruction the Court will give, so we do

```
                          Side Bar                         172
```

1    move for cause to strike here.

2              THE COURT:  All right.  No objection?

3              MR. BRAFMAN:  Your Honor, I just don't think -- I

4    think the woman is being candid with you.  I'm not certain --

5    I'm not going to object, Judge.

6              THE COURT:  All right.

7              MR. BRAFMAN:  We'll consent.

8              THE COURT:  Ma'am, I appreciate your candor and I

9    appreciate your thoughtful answers.  We are going to excuse

10   you and ask you to go to the jury room.  I would urge you to

11   just think about the important role that jurors play.

12             THE PROSPECTIVE JUROR:  I know.

13             THE COURT:  It's never an easy question and we want

14   thoughtful people.

15             THE PROSPECTIVE JUROR:  And I do apologize for that.

16             THE COURT:  Don't apologize for being thoughtful and

17   honest.

18             THE PROSPECTIVE JUROR:  All right.  Thank you.

19             (Prospective juror excused.)

20             (In open court.)

21             THE COURT:  Juror Number 114, sir, would you have

22   answered "yes" to any of my questions?

23             THE PROSPECTIVE JUROR:  Yes.

24             THE COURT:  Come forward, please.

25             (Side bar continues; prospective juror joins.)

```
                          Side Bar                      173
```

1           THE COURT:  Have a seat.  Juror Number 114, good

2    afternoon.  Have a seat.  What can you tell us?

3           THE PROSPECTIVE JUROR:  We're going away on the 1st

4    of August.  Certainly, the work, it would cripple me

5    financially.  I won't be here for the end of trial either.

6           THE COURT:  You don't get paid for jury service?

7           THE PROSPECTIVE JUROR:  I think it's personal

8    credits and I don't have enough covered on full time.

9           THE COURT:  Okay.  All right.  Well, I think we'll

10   have to excuse you then.

11          THE PROSPECTIVE JUROR:  Okay.

12          THE COURT:  All right.  So, thank you.  Just go to

13   the jury room and tell them that you are excused from this

14   panel.

15          THE PROSPECTIVE JUROR:  All right.  Thank you.

16          (Prospective juror excused.)

17          (In open court.)

18          THE COURT:  Juror Number 116, would you have

19   answered "yes" to any of my questions?

20          THE PROSPECTIVE JUROR:  Yes, Your Honor.

21          MR. BRAFMAN:  Did we skip 115?

22          MS. KASULIS:  They didn't show up.

23          THE COURT:  It was a no-show.

24          (Side bar continues; prospective juror joins.)

25          THE COURT:  Hi, ma'am.  Juror Number 116.  Have a

Side Bar                              174

1    seat.  Yes.  Hello.

2              THE PROSPECTIVE JUROR:  Hello.

3              THE COURT:  What would you like to tell me?

4              THE PROSPECTIVE JUROR:  My daughter is graduating

5    from pre-K tomorrow.  My oldest is graduating from elementary

6    school on Wednesday.  Then the two smallest ones, the three

7    and the five-year old, are in summer school, in a summer camp.

8    So I had to push my work hours to start at 9 so I could take

9    them to school because they start late and I don't have

10   anybody to take them in the morning.  Now, if I had to hire it

11   out, it would cost me more and I can't afford it.

12             THE COURT:  Okay.

13             THE PROSPECTIVE JUROR:  That's an issue.  The summer

14   school is for six weeks, next six weeks.

15             THE COURT:  And they start summer school later in

16   the week?

17             THE PROSPECTIVE JUROR:  Yes.  Yes, right after the

18   holiday week.

19             THE COURT:  And there's no one else in the family

20   who can take the children?

21             THE PROSPECTIVE JUROR:  No.

22             THE COURT:  Or a neighbor?

23             THE PROSPECTIVE JUROR:  No, I don't have nobody.

24             THE COURT:  Okay.  I will excuse you and you can go

25   down to the jury room.

1           THE PROSPECTIVE JUROR:  Thank you.

2           THE COURT:  And tell them that you are excused from

3     this panel.  All right?

4           THE PROSPECTIVE JUROR:  Thank Your Honor.

5           (Prospective juror excused.)

6           THE COURT:  No objections to excusing 116?

7           MS. KASULIS:  No objection.

8           MR. BRAFMAN:  None.

9           (In open court.)

10          THE COURT:  Juror Number 117, sir, would you have

11    answered "yes" to any of my questions?

12          THE PROSPECTIVE JUROR:  Yes, ma'am.

13          THE COURT:  Please come forward.

14          (Side bar continues; prospective juror joins.)

15          THE COURT:  Hi, Juror Number 117.  Come forward.

16          THE PROSPECTIVE JUROR:  Yes.

17          THE COURT:  How are you?

18          THE PROSPECTIVE JUROR:  Good.  And you?

19          THE COURT:  I'm well.  Thanks.

20          So, what would you like to tell me?

21          THE PROSPECTIVE JUROR:  I read a lot about it in the

22    news and I don't believe that I can be unbiased based on what

23    I've read about this and about the drug hikes.

24          THE COURT:  Okay.

25          THE PROSPECTIVE JUROR:  And I don't feel that that

Side Bar                              176

1  would be, I could be fair.

2          THE COURT:  Okay.  All right.  I will excuse you

3  then, sir.

4          THE PROSPECTIVE JUROR:  Thank you.

5          THE COURT:  All right.  Please go to the jury room

6  on the second floor and tell them I have excused you.

7          THE PROSPECTIVE JUROR:  Yes, ma'am.

8          (Prospective juror excused.)

9          (In open court.)

10          THE COURT:  Juror Number 118, would you have

11  answered "yes" to any of my questions?

12          THE PROSPECTIVE JUROR:  Yes, Your Honor.

13          THE COURT:  Come forward, please.

14          (Side bar continues; prospective juror joins.)

15          THE COURT:  Come on up, sir.  Juror Number 118, how

16  are you?

17          THE PROSPECTIVE JUROR:  Okay.

18          THE COURT:  What would you like to tell me?

19          THE PROSPECTIVE JUROR:  Well, I have a job

20  interview, second job interview next Monday.  I have a good

21  shot for it.  So, if I get it, I would have to start by July

22  and this case is six weeks, four to six weeks.

23          THE COURT:  Well, I wouldn't want to foreclose you

24  from having a job prospect so I will excuse you.

25          THE PROSPECTIVE JUROR:  All right.

1              THE COURT:  All right, sir?

2              THE PROSPECTIVE JUROR:  Do I go outside?

3              THE COURT:  Go to the jury room, tell them you are

4     excused and they will give you your paperwork.

5              THE PROSPECTIVE JUROR:  All right.

6              THE COURT:  No objection?

7              MS. SMITH:  No objection.

8              MR. BRAFMAN:  No objection.

9              (Prospective juror excused.)

10             (In open court.)

11             THE COURT:  Juror Number 119, would you have

12    answered "yes" to any of my questions?

13             THE PROSPECTIVE JUROR:  Yes, Your Honor.

14             THE COURT:  Come up, please.

15             (Side bar continues.)

16             THE COURT:  We are going to have to start over if we

17    don't get to 40.

18             (Prospective juror joins side bar.)

19             THE COURT:  Hello, Juror 119.  How are you?

20             THE PROSPECTIVE JUROR:  Good.  You?

21             THE COURT:  I'm well.  Thanks.

22             What would you like to tell me.

23             THE PROSPECTIVE JUROR:  Just the fact that I would

24    have scheduling conflicts because I'm supposed to be going on

25    vacation from July 1st to July 8th.  Also, I'm a student right

Side Bar                          178

1    now and I'm trying to, like, work over the summer so I can

2    help pay my tuition.  So, just $40 a day doesn't really help.

3              THE COURT:  Understood.  So you're looking for a job

4    for the summer?

5              THE PROSPECTIVE JUROR:  I'm already working.

6              THE COURT:  Okay.  Would your employer pay you while

7    you're serving jury duty?

8              THE PROSPECTIVE JUROR:  Probably not considering I'm

9    only seasonal.

10             THE COURT:  Do you know what your employer's policy

11   is?

12             THE PROSPECTIVE JUROR:  I honestly do not.

13             THE COURT:  And can you tell me a little bit more

14   about your vacation?  Is it flexible?

15             THE PROSPECTIVE JUROR:  No.  I've already sent in a

16   deposit.  It's nonrefundable.

17             THE COURT:  Okay.  All right.  Well, we will excuse

18   you then.

19             THE PROSPECTIVE JUROR:  Thank you so much.

20             THE COURT:  Please go to the jury room and tell them

21   you are excused.

22             THE PROSPECTIVE JUROR:  Thank you.

23             THE COURT:  No objection to excusing 119?

24             MS. KASULIS:  No.

25             MR. BRAFMAN:  No, Your Honor.

1           (Prospective juror excused.)

2           (In open court.)

3           THE COURT:  Juror Number 120, would you have

4    answered "yes" to any of my questions?

5           THE PROSPECTIVE JUROR:  No, Your Honor.

6           THE COURT:  All right.  Sir, let me ask you, please,

7    to take the seat which would be number 34.

8           Juror Number 121, would you have answered "yes" to

9    any of my questions?

10          THE PROSPECTIVE JUROR:  Yes, Your Honor.

11          THE COURT:  Please come forward, ma'am.

12          (Side bar continues; prospective juror joins.)

13          THE COURT:  Hello, Juror Number 121.  How are you?

14          THE PROSPECTIVE JUROR:  Yes.  It's a financial

15   situation because from work, I'm not going to be getting paid

16   at all.

17          THE COURT:  At all?

18          THE PROSPECTIVE JUROR:  What I'm paid, they pay $40

19   which means, you know, that's -- I guess, maybe at some point,

20   I don't know what it was, but that's what they said.  Now, I'm

21   right now unfortunately in a situation where I'm living

22   paycheck to paycheck.  I have a brother, he has six kids.

23   He's being denied Government help.  My mother just a couple of

24   months ago started a remission period also.  My parents, in

25   general, the last few years have been in financial trouble.

Side Bar                                    180

1    They have a lot of medical expenses.  Is it right or wrong

2    that I got myself into debt to help them?  That's a different

3    story, but that's where I'm standing right now and I don't see

4    myself doing that for six weeks.

5              THE COURT:  That's fine, ma'am.  We will excuse you.

6              THE PROSPECTIVE JUROR:  Thank you.

7              THE COURT:  All the best to you.

8              THE PROSPECTIVE JUROR:  Thank you.

9              (Prospective juror excused.)

10             (In open court.)

11             THE COURT:  Juror Number 122, would you have

12   answered "yes" to any of my questions?

13             THE PROSPECTIVE JUROR:  Yes.

14             THE COURT:  Come forward, please.

15             (Side bar continues; prospective juror joins.)

16             THE COURT:  Hello, Juror Number 122.  Have a seat.

17             THE PROSPECTIVE JUROR:  Thank you.

18             THE COURT:  All right.  What would you like to tell

19   us?

20             THE PROSPECTIVE JUROR:  I'm sorry but sometimes I

21   can't understand.

22             THE COURT:  Sometimes you don't understand?

23             THE PROSPECTIVE JUROR:  Yes.

24             THE COURT:  How long have you been in this country,

25   sir?

```
                        Side Bar                      181
```

1            How long have you been in America?

2            THE PROSPECTIVE JUROR:  America?  Four years.

3            THE COURT:  Four years?

4            THE PROSPECTIVE JUROR:  Yes.

5            THE COURT:  Did you study English at any time?

6            THE PROSPECTIVE JUROR:  Just a little bit.

7            THE COURT:  Just a little bit.  What do you do for a

8    living?

9            THE PROSPECTIVE JUROR:  I'm sorry.  I don't

10   understand.

11           THE COURT:  What do you do for work?  What is your

12   job?

13           THE PROSPECTIVE JUROR:  Driving.

14           THE COURT:  A driver?

15           THE PROSPECTIVE JUROR:  Yes.

16           THE COURT:  All right.  Let me ask you to just step

17   back over here.  Do you speak English on your job?

18           THE PROSPECTIVE JUROR:  Just a little bit.  Just a

19   little.

20           THE COURT:  Who do you drive for?

21           THE PROSPECTIVE JUROR:  I'm sorry?

22           THE COURT:  You said you're a driver.  Who is your

23   employer?  Who do you work for?

24           THE PROSPECTIVE JUROR:  Container.

25           THE COURT:  Container?

1             THE PROSPECTIVE JUROR:  Yes.

2             THE COURT:  Let me have you step back for a minute.

3    Thank you.

4             (Prospective juror leaves side bar.)

5             THE COURT:  I think we have --

6             MR. BRAFMAN:  I would consent, Judge.

7             THE COURT:  Yes.  We will on consent dismiss Juror

8    Number 122.

9             (Prospective juror joins side bar.)

10            THE COURT:  Sir?

11            THE PROSPECTIVE JUROR:  Yes.

12            THE COURT:  We will excuse you.  Please go down to

13   the jury room, the jury room where you checked in this

14   morning.  Tell them you are excused and they will give you a

15   paper.

16            THE PROSPECTIVE JUROR:  Thank you.

17            (Prospective juror excused.)

18            (In open court.)

19            THE COURT:  Juror Number 123, sir, would you have

20   answered "yes" to any of my questions?

21            THE PROSPECTIVE JUROR:  Yes, Your Honor.

22            THE COURT:  All right.  Come forward, please.

23            (Side bar continues; prospective juror joins.)

24            THE COURT:  Hi, sir.  You are Juror Number 123?

25            THE PROSPECTIVE JUROR:  Yes, ma'am.

```
                        Side Bar                         183
```

1          THE COURT:  What would you like to tell me?

2          THE PROSPECTIVE JUROR:  My English, very poor.

3          THE COURT:  How long have you been in the United

4   States?

5          THE PROSPECTIVE JUROR:  Like 29 years.

6          THE COURT:  Twenty-nine years?

7          THE PROSPECTIVE JUROR:  Yes.

8          THE COURT:  What is your job?

9          THE PROSPECTIVE JUROR:  A business.

10          THE COURT:  What kind of business?

11          THE PROSPECTIVE JUROR:  Retail business.

12          THE COURT:  What do you sell?

13          THE PROSPECTIVE JUROR:  Perfumes.

14          THE COURT:  Perfumes.  All right.  Do you in your

15   job speak with suppliers or customers?

16          THE PROSPECTIVE JUROR:  No.  They tell me, but not

17   like this.  Just this stuff I don't understand.

18          THE COURT:  But do you speak English in your job to

19   your supplier?

20          THE PROSPECTIVE JUROR:  Yes, English and different

21   language.

22          THE COURT:  And do you order your products in

23   English?  Do you conduct your business --

24          THE PROSPECTIVE JUROR:  I go and pick up from the

25   distributor.

Side Bar                        184

1              THE COURT:  All right.  But you speak to them in

2    English or some other language?

3              THE PROSPECTIVE JUROR:  No, I know people, some

4    people, like Indian people, some of them, distributors, I know

5    them and some are.

6              THE COURT:  All right.  Let me ask you to step back

7    over there just for a moment, please.

8              THE PROSPECTIVE JUROR:  All right.

9              (Prospective juror leaves side bar.)

10             THE COURT:  All right.  Does anybody want to be

11   heard?  He's been in the country for 29 years.

12             MR. BRAFMAN:  The problem with people who insist

13   that they don't understand is that how you question them to

14   make it clear that they do understand.  I'm not certain it's

15   worth it.  I would consent to it.

16             THE COURT:  All right.  Any objections to dismissing

17   Juror 123?

18             MS. KASULIS:  No, Your Honor.

19             THE COURT:  All right.

20             (Prospective juror joins side bar.)

21             THE COURT:  We're going to excuse you, sir.  You're

22   excused.  Please go to the jury room and tell them you're

23   excused.

24             THE PROSPECTIVE JUROR:  Thank you.

25             (Prospective juror excused.)

```
                         Side Bar                        185
```

1              (In open court.)

2              THE COURT:  Juror 124, ma'am, would you have

3     answered "yes" to any of my questions?

4              THE PROSPECTIVE JUROR:  Yes, Your Honor.

5              THE COURT:  Please come forward.

6              (Side bar continues; prospective juror joins.)

7              THE COURT:  Hello, ma'am.  Have a seat.  Juror

8     Number 124, what would you like to tell us?

9              THE PROSPECTIVE JUROR:  I don't think my boss is

10    going to be paying me four to six weeks.

11             THE COURT:  What kind of place do you work?

12             THE PROSPECTIVE JUROR:  I work for a lawyers

13    service.

14             THE COURT:  A lawyers service?

15             THE PROSPECTIVE JUROR:  Yes.

16             THE COURT:  Do you know what their policy is for

17    jury service?

18             THE PROSPECTIVE JUROR:  I guess he would pay me for

19    maybe two weeks, but I don't think he's going to pay me for

20    four to six.

21             THE COURT:  Is there an official policy on that?

22             THE PROSPECTIVE JUROR:  No, I don't think so.

23             THE COURT:  All right.  Do you think your employer

24    would be open to a phone call if I asked would you be able to

25    serve and he would pay you or do you think that would change

Side Bar                          186

1    anything?

2              THE PROSPECTIVE JUROR:  I don't think so.

3              THE COURT:  No?  All right.  Let me ask you to step

4    over to the side for one moment.

5              (Prospective juror leaves side bar.)

6              THE COURT:  Does anybody object to excusing her?

7              MR. BRAFMAN:  No, Your Honor.

8              MS. KASULIS:  No, Your Honor.

9              THE COURT:  We are getting down to the end here.

10             (Prospective juror joins side bar.)

11             THE COURT:  Ma'am, we will excuse you.  Please go to

12   the jury room and tell them you have been excused.  All right?

13   Thank you.

14             (Prospective juror excused.)

15             (In open court.)

16             THE COURT:  Juror Number 125, sir, would you answer

17   "yes" to any of my questions?

18             THE PROSPECTIVE JUROR:  Yes, Your Honor.

19             THE COURT:  All right.  Come forward, please.

20             (Side bar continues; prospective juror joins.)

21             THE COURT:  Hello, Juror Number 125.

22             THE PROSPECTIVE JUROR:  Yes.

23             THE COURT:  All right.  What would you like to tell

24   us?

25             THE PROSPECTIVE JUROR:  Well, I've read extensively

1   about Martin's shameful past and his dealing with

2   pharmaceutical companies and ripping off sick people and I

3   don't -- it hits close to me.  I have a mother with epilepsy,

4   a grandmother with Alzheimer's and a brother with multiple

5   sclerosis.  So, I think somebody that's dealt in those things

6   deserves to go to jail.

7           THE COURT:  All right.  Just to be clear, he's not

8   being charged with anything in the law relating to the pricing

9   of pharmaceuticals.

10          THE PROSPECTIVE JUROR:  I understand that, but it

11  puts me at a biased position where I already sense the man is

12  guilty.

13          THE COURT:  All right.  Well, I'm going to excuse

14  you.

15          THE PROSPECTIVE JUROR:  Thank you.

16          THE COURT:  You should go to the jury room.

17          THE PROSPECTIVE JUROR:  Thank you, Your Honor.

18          (Prospective juror excused.)

19          (In open court.)

20          THE COURT:  Juror Number 126, ma'am, would you have

21  answered "yes" to any of my questions?

22          THE PROSPECTIVE JUROR:  Yes.

23          THE COURT:  Yes?  Come forward, please.

24          (Side bar continues; prospective juror joins.)

25          THE COURT:  Juror Number 126, nice to see you ma'am.

Side Bar                              188

1          THE PROSPECTIVE JUROR:  Hi.  Good afternoon.

2          THE COURT:  How are you?

3          THE PROSPECTIVE JUROR:  Okay.

4          THE COURT:  What can you tell me?

5          THE PROSPECTIVE JUROR:  Well, in answer to your

6     question regarding the duration of the trial.

7          THE COURT: Yes, ma'am.

8          THE PROSPECTIVE JUROR:  To serve on a jury for six

9     weeks would create a good hardship and a lot of distress.

10         THE COURT:  Can you tell me what your circumstances

11    are that leads you to that situation?

12         THE PROSPECTIVE JUROR:  Right now, I'm working as a

13    contractor for the health system and I am the department's

14    software designer and only designer for the division and at

15    this point, we're involved with a lot of installations and my

16    role is database collector and corporate trainer.  There's a

17    lot of lot of backlog, distress, and it would be very

18    difficult.

19         THE COURT:  So there is nobody else in your

20    organization that can do this?

21         THE PROSPECTIVE JUROR:  No.  And actually, I

22    notified my manager on Friday when I got called that I had to

23    report for service and they tried to attempt to get a

24    temporary person to come in.

25         THE COURT:  They're not --

CMH      OCR      RMR      CRR      FCRR

Side Bar                              189

1           THE PROSPECTIVE JUROR:  They will.

2           THE COURT:  They will?  All right.  Well, will your

3  employer pay you during the time on jury service?

4           THE PROSPECTIVE JUROR:  No, I'm a contractor.

5           THE COURT:  I see.

6           THE PROSPECTIVE JUROR:  That's the issue there.  If

7  it's four or five days, I would be more than happy to serve,

8  but this creates an issue for me.

9           THE COURT:  All right.  Well, I would excuse you but

10 ask you to go to the jury room and tell them you might be able

11 to serve for a shorter trial.

12          THE PROSPECTIVE JUROR:  Absolutely.

13          THE COURT:  And they will let you know what to do.

14          THE PROSPECTIVE JUROR:  Thank you, ma'am.

15          (Prospective juror excused.)

16          (In open court.)

17          THE COURT:  All right.  Juror Number 127, ma'am,

18 would you have answered "yes" to any of my questions?

19          THE PROSPECTIVE JUROR:  Yes, Your Honor.

20          THE COURT:  Come forward, please, ma'am.

21          (Side bar continues; prospective juror joins.)

22          THE COURT:  Hello, Juror Number 127.  How are you?

23          THE PROSPECTIVE JUROR:  I'm good.

24          THE COURT:  Have a seat.  What would you like to

25 tell me?

Side Bar                                    190

1          THE PROSPECTIVE JUROR:  I feel a bias because I've

2    worked for two securities companies right on the New York

3    Stock Exchange and my husband currently works for FINRA, the

4    regulatory that does securities, so I think I'll be prejudiced

5    and biased.

6          THE COURT:  You would be biased against one party?

7          THE PROSPECTIVE JUROR:  Yes.

8          THE COURT:  All right.  So, you don't think that you

9    could set aside anything that you know based on your own job

10   or husband's job?

11         THE PROSPECTIVE JUROR:  No, because I personally

12   worked on the New York Stock Exchange floor and I thought that

13   I did not appreciate or believe him.  So, yes, I would be

14   biased.

15         THE COURT:  Okay.  All right.  I am going to excuse

16   you.  Please go to the jury room and tell them you have been

17   excused.

18         THE PROSPECTIVE JUROR:  Okay.  So I can leave?

19         THE COURT:  You can take all your things and go to

20   the jury room.  You are excused.

21         THE PROSPECTIVE JUROR:  Thank you.

22         (Prospective juror excused.)

23         (In open court.)

24         THE COURT:  Juror Number 128, ma'am, would you have

25   answered "yes" to any of my questions?  Yes?  Come forward,

1    please.

2                    (Side bar continues.)

3                    THE COURT:  I will talk to you about how we proceed

4    once we run through Juror 130.  If we need more, then we

5    will --

6                    MS. KASULIS:  Do we have --

7                    THE COURT:  We have four spots left and three

8    jurors.

9                    (Prospective juror joins side bar.)

10                   THE COURT:  Hello, ma'am.

11                   THE PROSPECTIVE JUROR:  Hello.

12                   THE COURT:  Juror Number 128, have a seat.  How are

13   you?

14                   THE PROSPECTIVE JUROR:  I'm good.

15                   THE COURT:  All right.  What would you like to tell

16   us?

17                   THE PROSPECTIVE JUROR:  One thing is I already think

18   he did this.  That's problems.  Second thing is the English is

19   my second language.  I'm not sure if I would be fit for this

20   kind of case, for duty.

21                   THE COURT:  All right.  Well, what we ask every

22   juror to do is to keep an open mind.

23                   THE DEFENDANT:  Yes.

24                   THE COURT:  A fair mind.  Right?  So keep an open

25   mind, listen to all the evidence and not make any decisions

Side Bar                              192

1   until you are called upon to deliberate.

2          So, could you separate any initial feelings you have

3   and listen to the evidence carefully and make your decision

4   based only on the evidence at trial and apply the law?

5          THE PROSPECTIVE JUROR:  I should try, but as I told

6   you, my English is my second language.  I'm not so sure that I

7   would understand this kind of case because I know more like,

8   you know, simple English language.

9          THE COURT:  You speak very well.  I feel that we're

10  conversing without any problems, but let me ask you this.  How

11  long have you been in the United States?

12         THE PROSPECTIVE JUROR:  Twenty years.

13         THE COURT:  And what have you done for a job?

14         THE PROSPECTIVE JUROR:  I'm working with my husband.

15  He has a business and I'm working as a secretary in a small

16  company, eleven, twelve employees.

17         THE COURT:  And do you speak English on your job to

18  outside people?

19         THE PROSPECTIVE JUROR:  Just outside on the phone,

20  customers.

21         THE COURT:  Okay.  All right.  I am going to excuse

22  you, ma'am.

23         THE PROSPECTIVE JUROR:  Thank you.

24         THE COURT:  So, go to the jury room where you

25  checked in this morning and tell them you've been excused.

```
                        Side Bar                    193
```

1           THE PROSPECTIVE JUROR:  All right.

2           THE COURT:  Thank you.

3           MS. KASULIS:  No objection.

4           MR. BRAFMAN:  No objection.

5           (Prospective juror excused.)

6           (In open court.)

7           THE COURT:  Juror Number 129, sir, would you have

8   answered "yes" to any of my questions?

9           THE PROSPECTIVE JUROR:  Yes, Your Honor.

10          THE COURT:  Please come forward.

11          (Side bar continues; prospective juror joins.)

12          THE COURT:  Come up, sir.  Number 129, how are you?

13          THE PROSPECTIVE JUROR:  How you doing?

14          THE COURT:  I'm well, thanks.  Would what you like

15  to tell me?

16          THE PROSPECTIVE JUROR:  First, I cannot concentrate

17  because my daughter has been missing for, like, ten days so I

18  just got her back.  And then I have a doctor's appointment,

19  urology, on July 10th and then I've got a trip planned for

20  July 21st through the 31st, so I cannot make it.

21          THE COURT:  All right.  We will excuse you then,

22  sir.

23          THE PROSPECTIVE JUROR:  Thank you very much.

24          THE COURT:  Please go to the jury room.

25          No objection to excusing Juror 129?

```
                    Side Bar                      194
```

1          MR. BRAFMAN:  No.

2          MS. KASULIS:  None.

3          (Prospective juror excused.)

4          (In open court.)

5          THE COURT:  Juror Number 130, would you have

6    answered "yes" to any of my questions?

7          THE PROSPECTIVE JUROR:  Yes.

8          THE COURT:  All right.  Please come forward.

9          (Side bar continues; prospective juror joins.)

10         THE COURT:  Have a seat.  All right.  Hi, how are

11   you, Juror Number 130?

12         THE PROSPECTIVE JUROR:  Yes.

13         THE COURT:  What would you like to tell us?

14         THE PROSPECTIVE JUROR:  I'm a little nervous.

15         THE COURT:  Don't be nervous.

16         THE PROSPECTIVE JUROR:  I'm very nervous and my

17   heart is just palpitating very fast.

18         THE COURT:  Don't be nervous.  We need to hear your

19   answers so don't be afraid.

20         THE PROSPECTIVE JUROR:  I just rather not serve

21   here.

22         THE COURT:  You don't want to serve?

23         THE PROSPECTIVE JUROR:  No.

24         THE COURT:  Okay.  Well, is it something about this

25   case or just general jury duty?

```
                          Side Bar                      195
```

1           THE PROSPECTIVE JUROR:  Well, normally, when they

2    call me for cases, I get really nervous and it just affects me

3    in a negative way.

4           THE COURT:  Criminal cases?

5           THE PROSPECTIVE JUROR:  Yes.

6           THE COURT:  All right.  You're just not feeling

7    well?

8           THE PROSPECTIVE JUROR:  No.  My heart races very

9    fast.

10          THE COURT:  All right.

11          THE PROSPECTIVE JUROR:  I just want to share that

12   with you guys.

13          THE COURT:  Okay.

14          THE PROSPECTIVE JUROR:  The decision would be it's

15   hard for me.

16          THE COURT:  It's important for you to be honest with

17   us and so you don't think you would be able to focus on the

18   evidence?

19          THE PROSPECTIVE JUROR:  No.

20          THE COURT:  All right.

21          THE PROSPECTIVE JUROR:  Because I get so nervous, I

22   can't explain it.  It just -- everything starts to race, my

23   whole body.

24          THE COURT:  Okay.  All right.  Well, I will excuse

25   you from this case.  You can go to the jury room and tell

Side Bar                                      196

1   them.  Maybe there is a civil case that won't cause the same

2   level of anxiety.

3            THE PROSPECTIVE JUROR:  Okay.

4            THE COURT:  Thank you.

5            THE PROSPECTIVE JUROR:  Thank you so much.  I

6   appreciate it.

7            (Prospective juror excused.)

8            THE COURT:  So what we are going to have to do is

9   call 40 new people.  We are going to have to start the

10  questions over up to where we were and go through the same

11  thing.  I could let these jurors who are in the seats go or

12  torture them and have them go through this questioning again.

13  My preference would be probably to let them go home and ask

14  them to come back to the jury room tomorrow morning at 9.

15           MR. BRAFMAN:  That's fine.

16           THE COURT:  And we will continue with the 40 new

17  ones.

18           MR. BRAFMAN:  That's fine.  Can we take a

19  five-minute break?

20           THE COURT:  Yes.  Do you want me to make the

21  announcement?

22           MR. BRAFMAN:  You can make the announcement, sure.

23  I want to be able to step back after they leave.  Thank you.

24           (Continued on next page.)

25

CMH      OCR      RMR      CRR      FCRR

Jury Selection                    197

1  (Continuing)

2           (In open court.)

3           THE COURT:  For those of you who are currently in a

4  seat, I want to thank you.  I'm going to excuse you for today

5  and ask you to come back tomorrow morning.  If you came back

6  tomorrow morning at 9:30 and check in with the jury clerks

7  where you checked in initially, that should be fine.

8           Please do not research, talk about, or allow anyone

9  to talk to you about this case.  If you are asked what you

10 have been doing here today, you can say that you are going

11 through a jury selection process.  Do not speak about the

12 case, don't mention the name about the case, do not listen to

13 any news reports that may touch upon anything relating to this

14 case.  If something pops up on your phone or your computer or

15 your news television, do not listen to it, do not read it,

16 please.

17          Don't allow anyone to speak to you.  And I would ask

18 you again not to take offense if anyone in this room doesn't

19 say hello to you.  Don't talk about the case with anyone.

20          So, I appreciate your time and attention thus far.

21 We will have to continue this process this afternoon, but at

22 this point you may be excused, just please return tomorrow

23 morning.  Make sure you get here no later than 9:30.  You'll

24 go to the jury room, you'll check in, and we will make sure

25 that all of you are present before we continue.

```
                    Proceedings                    198
```

1          Thank you and have a good night.

2          (Prospective jurors excused.)

3          THE COURT:  Everyone can have a seat.  What we're

4    doing is distributing lists of 40 additional jurors.

5    Unfortunately, they're numbered 1 through 40 again.

6    Hopefully, you won't get confused.  Maybe you want to take a

7    moment and start numbering --

8          MR. BRAFMAN:  Can I step out for a moment, Judge?

9          THE COURT:  Yes.  We'll take a break if anyone needs

10   a break.

11         (Pause in proceedings.)

12         THE COURT:  Counsel, I'm thinking we might get more

13   than 40 just because as we proceed through questioning, we may

14   loss more and have to slot in other jurors.  We only need four

15   more to get to 40, but beyond that we may have people being

16   excused along the way.  So, I'm going to see if we can get 50

17   more instead.

18         We'll get you a new list if that happens.  I think

19   it's better to be safe than sorry.

20         (Pause in proceedings.)

21         THE COURT:  The other thing, because they'll have

22   naturalization ceremony here tomorrow, we'll probably shift up

23   to my courtroom and continue the jury selection there.

24         We're going to seat the next 40 in the same seats,

25   continuing up to Seat 40, and continue from there.

Jury Selection                          199

1              (Prospective jurors enter.)

2              THE COURT:  Juror No. 1, sit here.  Good afternoon.

3    Have a seat.

4              One through ten in the front row, please.  In order.

5              (Pause in proceedings.)

6              THE COURT:  We're just waiting for ten more and then

7    we'll get started.

8              (Pause in proceedings.)

9              THE COURT:  Good afternoon, ladies and gentlemen.

10   Welcome.  Thank you for your patience.  I'm Judge Kiyo

11   Matsumoto, my law clerk Vivek Tata is to my left, and my case

12   manager Sandra Jackson sits in front of me to my left.

13             Can everybody hear me?  If not, please raise your

14   hand.  Thank you.

15             Please do pay close attention as I go through these

16   instructions and questions and do not speak with anybody about

17   this case, including other potential jurors.

18             You are here today because we are about to select a

19   jury in a criminal case.  Trial is expected to last six weeks.

20   It will commence tomorrow morning or in the afternoon.  We

21   will not hold trial on Monday, July 3, or Tuesday, July 4.

22             Fortunately, this particular case promises to be

23   interesting and educational for all of you who are selected to

24   serve.

25             This is a criminal case commenced by the United

1    States, which is frequently going to be referred to as the

2    "Government."   Representing the United States are Assistant

3    United States Attorneys Jacquelyn Kasulis, Alixandra Smith,

4    and G. Karthik Srinivasin.   Also seated at the Government

5    table Special Agents Michael Braconi and Sean Sweeney from the

6    Federal Bureau of Investigation and paralegal specialist

7    Gabriela Balbin.

8              The Defendant in this case is Martin Shkreli.

9    Representing Mr. Shkreli are attorneys Benjamin Brafman, Mark

10   Agnifilo, Andrea Zellan, Jacob Kaplan --

11             MR. AGNIFILO:   He just stepped out.

12             THE COURT:   Well, once he comes back, he's the

13   gentleman in the dark suit.

14             And they will also be joined later in the trial by

15   Teny Geragos.

16             The fact that this prosecution is brought in the

17   name of the United States does not entitle the Government to

18   any greater consideration than any other party who appears in

19   court.   All parties, the Government, and individuals are

20   equals before the Court and all are entitled to equal

21   consideration.   No party is entitled to sympathy or favor.

22             The purpose of jury selection is to ensure fairness

23   and impartiality to all parties in this case.   The way we try

24   to ensure that a jury will be fair and impartial is by going

25   through a process called "voir dire."   Basically, I will be

1   asking you questions both as a group and individually about

2   your background and your views on certain subjects.  It is not

3   my intention to invade your privacy but simply to try to make

4   sure that you can sit fairly and impartially on this

5   particular case.  At times -- and I know so far it has been

6   tedious, and I appreciate your patience.  I ask you please to

7   continue to bear with me.

8         If in the course of this questioning process you do

9   think that because of some experience that you have had in

10  your life or because of something you have heard or read, that

11  you could not be fair and impartial -- that is, that you would

12  be inclined towards the Government or the Defendant regardless

13  of what the evidence showed -- it is your duty to tell me

14  that.  That is because the Government and the Defendant have a

15  right to a qualified, impartial jury; one that will decide the

16  case without fear, favor, prejudice, or passion and will

17  render a verdict based solely on the evidence presented at the

18  trial and the law as I give it to you.

19        Now, quite apart from whether or not I must excuse

20  you, the lawyers for the parties are entitled to exercise a

21  certain number of what are called "peremptory challenges,"

22  which means they may excuse a certain number of prospective

23  jurors without giving any reason.  If you are excused, no

24  personal affront is intended.

25        It is important to listen to all of the questions I

Jury Selection                                    202

1    ask because the answers that you give to the Court will be

2    under oath.  I will now ask Ms. Jackson to administer an oath

3    to all of you.  Please raise your right hand.

4                 (Prospective jurors sworn.)

5                 THE COURT:  Thank you.

6                 Now, as I said, this criminal case comes before the

7    Court by way of an indictment.  The indictment is captioned

8    United States of America against Martin Shkreli.  Let me

9    advise you that the indictment is simply a document that the

10   Government uses to state the charges against a defendant.  It

11   serves no other purpose and it is not evidence.

12                I'm going to summarize the charges in the indictment

13   so that you can understand what this case will be about.  But,

14   again, remember that any evidence pertaining to these charges

15   will come before you only when we begin the actual trial.

16                In summary, the indictment charges the Defendant,

17   Martin Shkreli, in an eight-count indictment with committing

18   various acts of securities fraud, conspiracy to commit

19   securities fraud, and conspiracy to commit wire fraud.

20                In Counts One through Three, Mr. Shkreli is charged

21   with conspiracy to commit securities fraud, conspiracy to

22   commit wire fraud, and a substantive count of securities fraud

23   in relation to an entity known as MSMB Capital.

24                In Counts Four through Six, Mr. Shkreli is charged

25   with conspiracy to commit securities fraud, conspiracy to

Jury Selection                                      203

1    commit wire fraud, and a substantive count of securities fraud

2    in relation to MSMB Healthcare.

3              In Counts Seven and Eight, Mr. Shkreli is charged

4    with conspiracy to commit securities fraud and conspiracy to

5    commit wire fraud in relation to an entity known as Retrophin.

6              Now, the Defendant has pleaded not guilty to all of

7    the charges in the indictment and, thus, has raised issues of

8    fact to be determined by the jury.  Let me now advise you that

9    it is the Government that has the burden of proof in any

10   criminal case to establish a defendant's guilt beyond a

11   reasonable doubt as to each element of each charged offense.

12   The Defendant is presumed throughout the trial to be innocent.

13             In that regard, the Defendant has no burden

14   whatsoever to present any evidence or to testify.  Because the

15   United States Constitution protects a defendant's right to

16   remain silent, the law prohibits you from considering when you

17   deliberate that the defendant may not have testified.  This is

18   a basic principal of our criminal justice system.

19             The role of the jury in a criminal case is to hear

20   the evidence and decide the facts; that is, to decide what

21   happened.  The judge does not play any role in your

22   determination of the facts.  As the judge, my sole role is to

23   instruct you on the applicable application of the law.  You

24   will apply the facts as you find them to the law as I instruct

25   you and your conclusion will be your verdict.  You must apply

1    the law as stated by me, regardless of any opinion that you

2    may have as to what the law is or should be.  And if any of

3    you would have any difficulty doing this, you must bring that

4    to my attention.

5              Now, all of you have been placed in seats that we've

6    numbered Seats 1 through 40.  I'm going to ask those in Seats

7    1 through 40 questions.  Again, your answers must be candid

8    and they are under oath.  For example, I will ask the jurors

9    at some point whether they know any of the attorneys or

10   parties in this case.

11             (Pause in proceedings.)

12             THE COURT:  For all of you, please, I ask you to

13   listen carefully to my questions, even those of you who aren't

14   seated in a numbered seat.  And the reason is that because if

15   any of the jurors in seats numbered 1 through 40 are excused

16   for any reason, you may be called from rows -- from those of

17   you up to number 50, in Seat 50, to replace that juror.

18             If that happens, I will not repeat all of my

19   questions but, rather, I will ask you whether any of your

20   answers to my questions would have been yes.  So, it is

21   important that you listen throughout to all questions and keep

22   track in your mind of any questions to which you would have

23   answered yes.  It is important also for you to listen

24   carefully to the questions and, consistent with the oath that

25   you have just taken, answer my questions as honestly and

1    conscientiously and completely and truthfully as you can.

2              When I ask these questions, I ask that if your

3    answer to any question is yes, that you raise your hand.  For

4    most of the questions to which you answer yes, I will ask you

5    to come to sidebar, which is an area over here to my right,

6    out of the hearing of the rest of the jurors.  For questions

7    of a personal or private nature, I may ask if you would answer

8    those questions out of the hearing of the rest of the jury

9    panel.

10             And I also want to find out whether any of you would

11   have any difficulty deciding this case fairly.  It will be

12   important for you to answer honestly.  And, if so, we will do

13   so at sidebar.

14             Because judicial proceedings are open and public,

15   one press reporter will also be present at the sidebar.  If I

16   ask you to come to the sidebar to discuss your answer further,

17   I will not ask your name.  I will refer to all of you with

18   numbers.  Your answers will not be associated in any manner

19   with your name.

20             It is critical to the parties' right to a fair trial

21   that all jurors be candid and truthful in answering my

22   questions.  If there are any questions you do not feel

23   comfortable discussing in the presence of a press reporter,

24   please let me know at that time, and I will ask the press

25   reporter to step away.

```
                          Sidebar                      206
```

1           Is there anyone who did not understand or who can

2   not accept any of the principles of law that I have thus far

3   explained to you?  If so, please raise your hand.

4           Is there anyone who has heard anything about this

5   case before today?

6           All right.  In cases who that received media

7   attention, it is not wrong to have heard or to have formulated

8   an opinion.  The critical issue is whether your opinion will

9   interfere with your ability to be fair and impartial to both

10  sides and to decide this case based solely on the evidence and

11  instructions of law at this trial.

12          I will ask the jurors that if you have heard

13  something about this case and if you have formed an opinion

14  about the case, whether it will affect your ability to be fair

15  and impartial.

16          Let me start with hands up on the first row.

17          Juror No. 1, I'm going to ask you to come to

18  sidebar, over to my right.

19          In the meantime, please, the rest of you, thank you

20  for your ongoing patience.

21          (Sidebar; prospective juror joins.)

22          THE COURT:  This is Juror No. 131.  Hello.

23          THE PROSPECTIVE JUROR:  Hi.

24          THE COURT:  Can you tell us what you've heard?

25          THE PROSPECTIVE JUROR:  A bunch of news articles

1    about the AIDS medication price jacking, is what I've heard.

2         THE COURT:  The charges in this case do not

3    involve -- do not relate to the pricing of drugs.

4         THE PROSPECTIVE JUROR:  Okay.

5         THE COURT:  The question I have for you is whether

6    what you have heard will impair your ability to be fair and

7    impartial and open-minded to both sides in this case.

8         THE PROSPECTIVE JUROR:  Probably.  I think yes.

9         THE COURT:  All right.  At a trial, we ask the

10   jurors to decide the case based only on the evidence presented

11   and to keep a fair and impartial mind towards both sides, to

12   not decide anything until they are given the instructions and

13   asked to deliberate.

14        Could you maintain a fair and impartial mind to both

15   sides in this case and decide this case based only on the

16   evidence?

17        THE PROSPECTIVE JUROR:  Yes.

18        THE COURT:  All right.  You talked about "probably."

19   I just want to explore that further.

20        When you initially indicated some hesitation, could

21   you explain?

22        THE PROSPECTIVE JUROR:  The news that I read about

23   him directly affects members of the community I'm in.  So, he

24   was -- it made a very distinct impression when I read it and

25   it was a very distinct negative impression.

Sidebar                                208

1          THE COURT:  Well, the question I have for you,

2   though, is given that the charges do not involve the pricing

3   of pharmaceuticals, is there anything else that you've read

4   about Mr. Shkreli that would make it difficult for you to be

5   fair to both sides in this case and to keep an open mind

6   about --

7          THE PROSPECTIVE JUROR:  No.

8          THE COURT:  All right.  Let me just ask you one

9   other question.  Do you believe that you could evaluate this

10  case based on the evidence only at this trial?

11         THE PROSPECTIVE JUROR:  Yes.

12         THE COURT:  And would you apply my instructions on

13  the law as directed at the end of the case?

14         THE PROSPECTIVE JUROR:  Yes.

15         THE COURT:  All right.  Thank you.  Let me ask you

16  to just step over to the side, in that chair, just for a brief

17  moment.

18         (Prospective juror leaves sidebar.)

19         MR. AGNIFILO:  I think the problem is if Mr. Shkreli

20  testifies, the Government indicated that he will go into

21  exactly the issue that she said she was personally concerned

22  about.  So, I don't know that that's outside the four corners

23  of the case.

24         THE COURT:  What I told her, though, is that he's

25  not charged with these offenses, given the caveat that the

```
                          Sidebar                      209
```

1   Government has clarified that they may go into it on cross.

2         MR. BRAFMAN:  Judge, you did a very good job,

3   respectfully, of rehabilitating the juror, but I think the

4   reality is that before you asked those questions, she

5   indicated a clear negative bias, said that he had impacted on

6   specifically her community.  The Daraprim issue is an HIV drug

7   affecting the gay and lesbian community.

8         And I think she has tried her best to convey to you

9   that she doesn't start out this case as presuming him to be

10  innocent, she starts out basically having very negative

11  feelings about him.  I just think she should be challenged for

12  cause and I think they should consent to it.

13        This is a clear bias that was demonstrated, even

14  though she I think answered you at the end that she would try

15  to be fair.  This is a juror who is, I think, adversely

16  affected directly by allegations that may have nothing to do

17  with this case but are all around this case.

18        THE COURT:  I'll hear from the Government.

19        My only point is that there's likelihood that a

20  juror has heard something about this case, among those who are

21  being called in this, and the question we must ask is whether

22  that information will impair their ability to be fully fair to

23  both sides.

24        MR. BRAFMAN:  I understand.  But this isn't simply

25  "I heard about the case," this is "I know about the charges,

Sidebar                    210

1  it impacts my community, it created a negative bias on my

2  part."  I think this is a consent challenge.

3          THE COURT:  Any objection?

4          MS. KASULIS:  Your Honor, we do.  As Mr. Brafman

5  said, you made follow-up inquiries of her if she could be fair

6  and impartial.  She says she can.  She seems to be someone who

7  reflects on her feelings and was able to process the issues.

8          In terms of the Daraprim piece, we only intend to go

9  into that on cross if he opens the door to it on direct

10  examination, so it's not necessarily an issue in the case.

11         THE COURT:  Perhaps I should flesh out whether if

12  she does hear evidence about drugs that are being used to

13  treat certain diseases and the pricing, whether that would

14  affect her ability at that point to be fair and impartial.

15         MR. AGNIFILO:  Your Honor, I think it's also

16  relevant how she would view his credibility in general; not

17  just if it's charged or not, but if he testifies would she

18  view him with true objective credibility?

19         So, it's not just in regard to the charges, it's

20  generally in regard to the Defendant and him getting a fair

21  shake in the eyes of all the jurors.

22         MR. BRAFMAN:  Judge, we haven't really had the need

23  to flesh out bias extensively; on any other juror, it has

24  basically been consent.  This is a juror who, as soon as she

25  sat down, basically confided in your Honor and all of us that

1    she knows about him, she is bias in a negative way.  Forget

2    the presumption of innocence, she hates him before she hears

3    an opening statement.

4           And I think at the end of the day, this is not an

5    appropriate juror in a case where others have described him in

6    negative terms and everyone has consented.  This is a juror

7    who seems to have been personally affected by the fact that he

8    is accused in the media of hurting, as she identified, her

9    community.  I'm not suggesting that a gay person could not

10   serve as a juror, but there is an issue as to whether or not

11   there's a heightened sensitivity to someone who describes him

12   as some one who has been accused of jacking up the prices of

13   drugs that impact on her community.  I just don't know how --

14          THE COURT:  We haven't identified her community,

15   just for the record.

16          MR. BRAFMAN:  I understand that.  But she used those

17   terms, and the community which Mr. Shkreli before Congress was

18   alleged to have impacted was the gay and lesbian community.

19   She said it was her community.  I'm not making a judgment

20   call.

21          THE COURT:  All right.  This drug is also used for

22   women who may be pregnant.  It's not just the gay community.

23          MR. BRAFMAN:  That was not the input of the

24   Congressional hearings that were widely televised.

25          THE COURT:  I'm just trying to probe her meaning of

```
                         Sidebar                      212
```

1  "community," not assuming what her community is at this point.

2  We can explore further.

3          (Prospective juror joins sidebar.)

4          THE COURT:  Ma'am, it is possible that -- as I told

5  you, there's no obligation of any defendant to testify.  They

6  have a right not to do so and you can't hold that against a

7  defendant, when they don't testify.

8          But if he did testify, would you have difficulty

9  carefully evaluating and weighing the credibility of his

10  testimony?

11          It's important for you to just be very honest.

12          THE PROSPECTIVE JUROR:  Yes.

13          THE COURT:  You would.

14          THE PROSPECTIVE JUROR:  Yeah.

15          THE COURT:  Then what I will do is excuse you and

16  ask you to go to the jury room and tell them you've been

17  excused.  Thank you for your candor.

18          THE PROSPECTIVE JUROR:  Okay.

19          (Prospective juror excused.)

20          THE COURT:  That was a for cause challenge that was

21  granted.

22

23          (Continued on next page.)

24

25

1             (In open court.)

2             THE COURT:  Which of the jurors in the first row had

3    their hand up?  Put your hands up in the first row.  This is

4    if you have heard anything about the case that would affect

5    your ability to be fair and impartial.

6             Juror No. 132, come on up, please, ma'am.

7             (Prospective juror present at sidebar.)

8             MR. BRAFMAN:  What number?

9             THE COURT:  Juror No. 132 in seat two.

10            (Prospective juror present at sidebar.)

11            THE COURT:  What have you heard about the case and

12   how has it affected you?

13            THE PROSPECTIVE JUROR:  I heard something because

14   something I can't understand, I have like English problem.

15            THE COURT:  You have difficulty with the language?

16            THE PROSPECTIVE JUROR:  Yes.  That's right.

17            THE COURT:  How long have you been in this country?

18            THE PROSPECTIVE JUROR:  16 years.

19            THE COURT:  16?

20            THE PROSPECTIVE JUROR:  Yes.

21            THE COURT:  What do you do for a job?

22            THE PROSPECTIVE JUROR:  Preschool teacher.

23            THE COURT:  What language do you teach in?

24            THE PROSPECTIVE JUROR:  In English.  I take care of

25   infant babies.

214

1          THE COURT:  You care for infants?

2          THE PROSPECTIVE JUROR:  Yes.

3          THE COURT:  I see.  Do you speak to your fellow

4    teachers in English?

5          THE PROSPECTIVE JUROR:  Yes.

6          THE COURT:  Have you studied in English?

7          THE PROSPECTIVE JUROR:  Like my second language,

8    yeah.

9          THE COURT:  That's great that you speak a second

10   language, but have you studied English?

11         THE PROSPECTIVE JUROR:  Yes, I studied but I don't

12   know much.

13         THE COURT:  Let me ask you to step away for one

14   moment?

15         THE PROSPECTIVE JUROR:  I can understand, but talk

16   fast, I can't.

17         THE COURT:  Can you understand, for example, when

18   you hear someone speaking?  Did you understand what I said to

19   you this afternoon?

20         THE PROSPECTIVE JUROR:  Yes.  Yes.

21         THE COURT:  Do you ever go to lectures where

22   somebody is speaking about a subject or do you watch lectures

23   online in English speaking about a subject?

24         THE PROSPECTIVE JUROR:  Not much.

25         THE COURT:  No?

215

1          THE PROSPECTIVE JUROR:  No.

2          THE COURT:  Do you watch American television?

3          THE PROSPECTIVE JUROR:  Yes.

4          THE COURT:  What shows do you watch?

5          THE PROSPECTIVE JUROR:  I watch news.

6          THE COURT:  News?

7          THE PROSPECTIVE JUROR:  Yes.  News and some movie.

8          THE COURT:  Do you have any difficulty understanding

9  news in English?

10          THE PROSPECTIVE JUROR:  No.

11          THE COURT:  Or movies?

12          THE PROSPECTIVE JUROR:  No.  My grammar mistakes.

13          THE COURT:  Well, this is not grammar.  Good grammar

14  is not a requirement of the job.  What is important is that

15  you can understand what the witnesses are saying, what the

16  lawyers are saying and what the documents say.  Do you foresee

17  any difficulty doing that?

18          THE PROSPECTIVE JUROR:  I think difficult.

19          THE COURT:  You would what?

20          THE PROSPECTIVE JUROR:  Difficult.

21          THE COURT:  Difficulty.  Step away for just a

22  moment, please.

23          (Prospective juror leaves sidebar.)

24          THE COURT:  Okay.  I think she's probably fine.  She

25  teaches kids.  Does anyone object?

1          MR. BRAFMAN:  I don't want to be the bad person.  I

2    think you should excuse her for cause.  She's obviously

3    concerned about her ability to understand.  This is hard

4    enough to explain in perfect English.

5          THE COURT:  All right.  I think she is trying.  I

6    think she is sincere.  I will excuse Juror No. 132 in seat

7    two.

8          (Prospective juror present at sidebar.)

9          THE COURT:  Ma'am, you could go to the jury room and

10   tell them that you are excused.  They will give you some

11   paper.

12         (Prospective juror excused.)

13         (In open court.)

14         THE COURT:  Who else in the first row had their hand

15   up?  Did you have your hand up?

16         THE PROSPECTIVE JUROR:  No.

17         THE COURT:  Then please maintain your seats.  Seat

18   five had her hand up.  Seat five, Juror No. 135.

19         (Prospective juror present at sidebar.)

20         THE COURT:  Hello.  No. 135.  Nice to see you.  What

21   would you like to tell us about?

22         THE PROSPECTIVE JUROR:  I have heard the case on the

23   news and on TMZ.

24         THE COURT:  The question is there has been media

25   coverage and oftentimes when we hear a story in the news it is

1  natural, as thinking human beings, to have an opinion about

2  what we have heard.  But the question for you is, we examine

3  your qualifications to be a juror, whether or not you could

4  decide this case without bias or prejudice toward any party

5  and keep an open mind, a fair state of mind toward both

6  parties and decide this case based only on the evidence

7  presented at the trial in the courtroom.  Could you do that?

8         THE PROSPECTIVE JUROR:  I don't think I would be

9  able to do that.

10        THE COURT:  You do or don't?

11        THE PROSPECTIVE JUROR:  Don't.

12        THE COURT:  Why is that, ma'am?

13        THE PROSPECTIVE JUROR:  Well, when I first heard the

14 case, like I already -- I wouldn't be in favor of the

15 defendant.  I'd part with the Government.

16        THE COURT:  When you say you would part with the

17 Government, what do you mean?

18        THE PROSPECTIVE JUROR:  Like I wouldn't choose the

19 defendant's side.  I already made my decision.

20        THE COURT:  You made up your mind?

21        THE PROSPECTIVE JUROR:  Yes.

22        THE COURT:  Well, I will excuse you then and ask you

23 to go back to the jury room and tell them that you have been

24 excused from this panel.

25        THE PROSPECTIVE JUROR:  I tell the people in the

218

front.

THE COURT:  Yes, where you checked in today that you have been excused from this panel?

THE PROSPECTIVE JUROR:  Thank you very much.

(Prospective juror excused.)

(In open court.)

THE COURT:  Who else in the front row, please? Juror No. 139, correct?

THE PROSPECTIVE JUROR:  Correct.

THE COURT:  Come on up.

(Prospective juror present at sidebar.)

THE COURT:  Hi, Juror No. 129, what have you heard?

THE PROSPECTIVE JUROR:  I saw it all over TV.  Part of a Ponzi scheme, raise the price of drugs 80 percent.  My wife is at Winthrop, so she knows a little bit about it.  The whole thing with the Ponzi thing.  I'm in the union.  We lost a lot of money for the unions.  So there is no way I can give you a fair opinion.

THE COURT:  All right.  So that would cloud your ability to be fair?

THE PROSPECTIVE JUROR:  Oh, yes.  Yes.

THE COURT:  I will excuse you then, sir.

THE PROSPECTIVE JUROR:  All right.

THE COURT:  Go back to the jury room, if you don't mind, and tell them that you are excused.

219

1                THE PROSPECTIVE JUROR:  Thank you.

2                (Prospective juror excused.)

3                (In open court.)

4                THE COURT:  Juror No. 140, you had your hand up.

5    Come on up.

6                (Prospective juror present at sidebar.)

7                THE COURT:  You are Juror No. 140.

8                THE PROSPECTIVE JUROR:  Hi.  Yes.

9                THE COURT:  Please tell us what you have heard.

10               THE PROSPECTIVE JUROR:  I know he has had a lot of

11   involvement with drugs, the prices of them, and personally I

12   find it truly disgusting.  Also, because my uncle has aids, so

13   I don't believe I can be impartial and he's currently on

14   lifesaving medications for that.

15               THE COURT:  Okay.  What we will do then is we will

16   excuse you.  Go back to the jury room and tell them that you

17   have been excused.

18               THE PROSPECTIVE JUROR:  Thank you very much.

19               (Prospective juror excused.)

20               (In open court.)

21               THE COURT:  Row two, who had a hand up as having

22   heard something about this case?

23               You are Juror No. 143 in seat No. 13.  Come forward,

24   please.  144, excuse me.

25               (Prospective juror present at sidebar.)

220

1          THE COURT:  Have a seat here.  Juror No. 144.  Tell

2     us what you have heard.

3          THE PROSPECTIVE JUROR:  I've heard through the news

4     that -- I heard through the news of how the defendant changed

5     the price of a pill by up selling it.  I heard he bought an

6     album from the Wu-Tang Clan for a million dollars, or 2

7     million.  I forgot what else.

8          THE COURT:  The question for you is there has been

9     media coverage and in the news you have probably heard

10    something about this gentleman.  The question is have you

11    heard anything that would affect your ability to be fair to

12    both sides, to decide this case with an open mind, a sense of

13    fairness to both sides and consider the evidence, and

14    ultimately decide the case based only on the evidence

15    presented at the trial, not on anything you heard in the news?

16    Can you do that?

17         THE PROSPECTIVE JUROR:  I don't think I can because

18    he kind of looks like a dick.

19         MR. BRAFMAN:  A who?

20         THE COURT:  You wanted him to say it again?

21         MR. BRAFMAN:  No.  I heard it.  I heard it.

22         THE COURT:  You are Juror No. 144 and we will excuse

23    you.  Please go to the jury room and tell them.

24         (Prospective juror excused.)

25         THE COURT:  Who else in the second row?

221

1          (In open court.)

2          THE COURT:  Juror No. 151.

3          (Prospective juror present at sidebar.)

4          THE COURT:  Yes, sir.

5          THE PROSPECTIVE JUROR:  I just read the name in the

6     newspaper, he committed fraud in the healthcare industry.  I

7     work in the healthcare industry for many years.

8          THE COURT:  For many years you worked in Healthcare?

9          THE PROSPECTIVE JUROR:  And I still do.

10         THE COURT:  The question is:  There has been media

11    attention.  Many of us have heard something about the

12    gentleman who is the defendant and the question is whether you

13    could, as a juror, keep an open mind and a fair mind to both

14    sides?

15         THE PROSPECTIVE JUROR:  I don't believe so.

16         THE COURT:  You have made up your mind?

17         THE PROSPECTIVE JUROR:  Yes, ma'am.

18         THE COURT:  I will ask you to go to the jury room.

19    I am going to excuse Juror No. 151.  Thank you.

20         THE PROSPECTIVE JUROR:  Thank you very much.

21         (Prospective juror excused.)

22         (In open court.)

23         THE COURT:  Is there anyone else in the third row?

24    Your number, sir?

25         THE PROSPECTIVE JUROR:  155.

222

1          THE COURT:  Come forward.  Juror No. 155.

2          (Prospective juror present at sidebar.)

3          THE COURT:  You are Juror No. 155?

4          THE PROSPECTIVE JUROR:  Yes.

5          THE COURT:  Thank you, sir.  What would you like to

6    tell us about what you have heard?

7          THE PROSPECTIVE JUROR:  Just -- I have read a lot of

8    articles about the case.  I have seen a lot of news about the

9    case, about the prices being gouged and the supposed fraud,

10   with the -- with the SEC frauds.  I think he is as guilty as

11   they come.

12         THE COURT:  All right.

13         THE PROSPECTIVE JUROR:  And I can't be impartial.

14         THE COURT:  Then I will excuse you from this case.

15   You will go back to the jury room and tell them you may be

16   available for something else.

17         THE PROSPECTIVE JUROR:  Thank you very much.

18         (Prospective juror excused.)

19         (In open court.)

20         THE COURT:  Were there any other hands up in the

21   last row?  Juror No. 159.

22         (Prospective juror present at sidebar.)

23         THE COURT:  Hello.  Juror No. 159?

24         THE PROSPECTIVE JUROR:  Yes.

25         He is the person with the EpiPen?

223

 1          THE COURT:  I am discussing about what you have

 2    heard and whether --

 3          THE PROSPECTIVE JUROR:  I am asking if I am correct

 4    in that assumption, that he's the person who raised the price

 5    in the EpiPen?  I know it doesn't have to do with this case.

 6          THE COURT:  The pricing of pharmaceuticals is not

 7    charged in this case.  The EpiPen is not an issue in this

 8    case.  It may be some other pharmaceutical?

 9          THE PROSPECTIVE JUROR:  But he is the person that I

10    saw in the news who raised the pricing of the EpiPen 700

11    percent?

12          MR. BRAFMAN:  No, he is not.

13          THE COURT:  He is not the person who raised the

14    price of the EpiPen.  There have been news reports about this

15    case.  The question is -- let me just say that it is possible

16    that you may hear evidence regarding pharmaceutical pricing

17    but it is not charged in the indictment in this case.

18          THE PROSPECTIVE JUROR:  I understand it is not

19    charged.  I have friends who's children depend on the EpiPen

20    and I cannot be unbiased if this is.

21          MR. BRAFMAN:  Can we be heard for a moment?

22          THE COURT:  Yes.

23          MR. BRAFMAN:  Outside the presence?

24          THE COURT:  Can we ask you to step away.

25          (Prospective juror leaves sidebar.)

1          MR. BRAFMAN:  While Mr. Shkreli had nothing to do

2    with raising the price of the EpiPen, he was interviewed about

3    the subject on many occasions and did give running commentary

4    on it, so I would ask to challenge for cause.

5          MS. SMITH:  I think it is fine clarifying with

6    people if he raised the price of a different drug.  I don't

7    have a problem with that clarification.

8          MS. KASULIS:  I think it is fine to excuse.

9          THE COURT:  Ma'am.

10         (Prospective juror present at sidebar.)

11         THE COURT:  Ma'am, we will excuse you and ask you to

12   go to the jury room and tell them that you have been excused.

13   Thank you.

14         THE PROSPECTIVE JUROR:  Thank you.

15         (Prospective juror excused.)

16         (In open court.)

17         THE COURT:  Is there anyone else in the rows to my

18   left that had their hand up?

19         We will now go to the first row directly in front of

20   me, starting with Juror No. 161.  Is there anyone who has

21   heard about this case?

22         That was Juror No. 161.  That was seat No. 31.

23         (Prospective juror present at sidebar.)

24         THE COURT:  Juror No. 161?

25         THE PROSPECTIVE JUROR:  Yes.

225

1          THE COURT:  Nice to see you.  What have you heard?

2          THE PROSPECTIVE JUROR:  I did read about it in the

3    New York Times.  I saw some of the interviews that he had on

4    TV, but I don't recall too much of the case from whenever it

5    was.

6          THE COURT:  The question for you is, there has been

7    media coverage and it is certainly all right for people to

8    have opinions.

9          THE PROSPECTIVE JUROR:  Sure.

10          THE COURT:  But the question for you is if you are

11    selected as a juror is whether you could maintain a fair and

12    open state of mind towards both sides?

13          THE PROSPECTIVE JUROR:  Yes.

14          THE COURT:  And whether you can decide this case

15    fairly to both sides based solely on the evidence presented at

16    this trial and not based on anything that you might have

17    heard?  Could you do that?

18          THE PROSPECTIVE JUROR:  Yes, I could.

19          THE COURT:  All right.  Let me just -- is there any

20    issue with the six-week trial?

21          THE PROSPECTIVE JUROR:  Potentially.

22          THE COURT:  Can you tell us about that?

23          THE PROSPECTIVE JUROR:  I am pretty busy at work

24    implementing a new project.  It would be difficult if it was

25    continuous for six weeks.

1          THE COURT:  It is continuous for six weeks.

2          THE PROSPECTIVE JUROR:  I'm starting tomorrow

3     potentially and somebody on my team is going on maternity, so

4     it would be a little challenging in that respect.

5          THE COURT:  Could your employer provide backup for

6     you in that six-week period?

7          THE PROSPECTIVE JUROR:  Not really.

8          THE COURT:  What is it that you do?

9          THE PROSPECTIVE JUROR:  I work in human resources

10    for a manufacturer.

11         THE COURT:  Okay.  And there is no one else that can

12    fill in?

13         THE PROSPECTIVE JUROR:  I am the leader of the

14    department.  There's somebody who reports to me and I also

15    have a person on my team just getting up to speed.

16         THE COURT:  Would you can able to consult with that

17    individual after you have finished your jury service for the

18    day?

19         THE PROSPECTIVE JUROR:  I have been in contact with

20    my team, but I do have a lot of key meetings happening in the

21    next couple weeks because I am meeting with all of the key

22    leaders of my company.

23         THE COURT:  I see.  When are these meetings?

24         THE PROSPECTIVE JUROR:  One is on Wednesday, one

25    Thursday, one is the following week, with each of the key

1  leaders of the company.

2          THE COURT:  All right.  Let me ask you to step away

3  for one moment.

4          (Prospective juror leaves sidebar.)

5          THE COURT:  Any objection to excusing Juror No. 161?

6          MR. BRAFMAN:  No, Your Honor.

7          MS. KASULIS:  No, Your Honor.

8          (Prospective juror present at sidebar.)

9          THE COURT:  Sir, we will excuse you.  You can go

10  back to the jury room and tell them that you are excused.

11  Thank you.

12          (Prospective juror excused.)

13          (In open court.)

14          THE COURT:  Is there anyone else?

15          Juror No. 162.  Please come forward.

16          (Prospective juror present at sidebar.)

17          THE COURT:  Hi, ma'am, have a seat.

18          THE PROSPECTIVE JUROR:  Hi.  Hi.  I recognize the

19  defendant from the news and the media who raised the price of

20  a prescription drug to an unconscionable amount and I feel

21  that I cannot be impartial towards him after reading the news

22  stories.

23          THE COURT:  All right.  The charges in this case do

24  not concern the increase of the drug prices.  It may come in

25  but not likely.  I just wanted to --

228

1          THE PROSPECTIVE JUROR:  Point that out.

2          THE COURT:  Point that out.

3          THE PROSPECTIVE JUROR:  I do feel his actions, what

4     I have read about the drugs, have made me consider that he

5     could potentially already do the charges.

6          THE COURT:  Thank you for your candor.  I will

7     excuse you and ask you to go to the jury room.  You are being

8     excused.

9          THE PROSPECTIVE JUROR:  Okay.

10         THE COURT:  Juror No. 162 is excused without

11    objection?

12         MR. BRAFMAN:  Yes.

13         MS. KASULIS:  Yes.

14         (Prospective juror excused.)

15         (In open court.)

16         THE COURT:  Anyone else in the first row?  Juror No.

17    164, please come forward.

18         (Prospective juror present at sidebar.)

19         THE COURT:  Hello, sir.  Juror No. 164.  What have

20    you heard?

21         THE PROSPECTIVE JUROR:  I mean, I remember reading

22    about the case, you know, a little while back.  Just, you

23    know, Mr. Shkreli has committed some kind of fraud.  I don't

24    remember any specifics.

25         THE COURT:  All right.  Well, I think there has been

1  media coverage and it is natural to have heard --

2          THE PROSPECTIVE JUROR:  Right.

3          THE COURT:  -- if you watch the news.

4          THE PROSPECTIVE JUROR:  Right.

5          THE COURT:  The question is what you have heard,

6  whether it will impair your ability to be fair and impartial

7  to both sides and keep an open mind as you listen to the

8  evidence, can you do that?

9          THE PROSPECTIVE JUROR:  I don't know that I could,

10  you know, I can't, based on what I have heard so far.  Maybe

11  once I heard more evidence, I would be able to lean towards

12  one side.

13          THE COURT:  Well, what you heard on the media is not

14  going to be something that a juror should consider.

15          THE PROSPECTIVE JUROR:  Right.

16          THE COURT:  The question is whether you can put that

17  out of your mind and commit to deciding this case with a fair

18  state of mind to both sides and to decide the case based

19  solely on the evidence in the trial.  Can you do that?

20          THE PROSPECTIVE JUROR:  I would not be confident.  I

21  can't say for sure.

22          THE COURT:  All right.  Can you explain about why

23  you feel that way?

24          THE PROSPECTIVE JUROR:  Well, you know, just that

25  since I've never been in a situation like this, I can't tell

230

1    you what I'm going to be able to do.

2            THE COURT:  Well, jury service is something we are

3    all called upon to do.  Maybe it is a disruption of your

4    personal life.

5            THE PROSPECTIVE JUROR:  No, that's not what I'm

6    saying.

7            THE COURT:  It is a difficult thing to sit

8    attentively and listen carefully.  You must remain impartial

9    and not judge anything until after you have heard all of the

10   evidence and I have given the instructions and then I would

11   ask you and the fellow jurors and together you would reach a

12   verdict.  Now, could you do that?

13           THE PROSPECTIVE JUROR:  I probably could do that.

14           THE COURT:  Earlier, when you said you might have

15   some difficulty doing this, is that because you have never sat

16   on a jury before?

17           THE PROSPECTIVE JUROR:  It is because I don't

18   remember what I heard in the news.  It means if I heard, I

19   will remember, it will jog my memory, and I will remember the

20   opinion which I had formed then at the time that I read those

21   reports.

22           THE COURT:  Well, I described to you what the

23   charges are.  All right.  I don't know whether what you have

24   heard today about the charges jogs your memory at all about

25   what you may have heard in the news.  You might have heard

231

1    other things in the news.

2              THE PROSPECTIVE JUROR:  If that's -- probably I'll

3    be okay.

4              THE COURT:  All right.  Now, when you say I'll

5    probably be okay, can you commit to the best of your ability

6    to be open-minded and fair to both sides?

7              THE PROSPECTIVE JUROR:  To the best of my ability, I

8    can commit to be open-minded.

9              THE COURT:  Would you decide this case not based on

10   what you have heard or what you remember from hearing on the

11   news, but rather on the evidence that is presented at this

12   trial in this case?

13             THE PROSPECTIVE JUROR:  Yes.

14             THE COURT:  Thank you.  Let me ask you to step away

15   just for a moment, just over there.  All right.

16             (Prospective juror leaves sidebar.)

17             THE COURT:  All right.  Does anybody have any

18   further questions for this witness?

19             MR. BRAFMAN:  I will pass this one to them.  Your

20   Honor, I think we have met the cut if you have heard about the

21   case that doesn't excuse you from being on the jury.  He

22   doesn't even remember what he heard.  So I give him the

23   benefit of the doubt that he can try and be fair.

24             THE COURT:  All right.  Good.

25             MS. KASULIS:  Yes.

232

1          THE COURT:  We will ask him to resume his seat.

2          (Prospective juror present at sidebar.)

3          THE COURT:  I am going to ask you to return to seat

4     No. 34, please.

5          THE PROSPECTIVE JUROR:  Sure.  Thank you.

6          (Prospective juror leaves sidebar.)

7          THE COURT:  Thank you.

8          (In open court.)

9          THE COURT:  Is there anyone else in the row directly

10    in front of me who had their hand up regarding media reports

11    that they have heard?  All right.  Thank you.

12          I am going to ask about the six-week trial and ask

13    about hardships.

14          As I told you, the trial is scheduled to begin

15    tomorrow and last approximately four to six weeks.  I ask if

16    anyone would find it extremely burdensome to serve on this

17    jury.  I recognize jury service may be extremely inconvenient

18    for some, maybe all of you, but you have to ask yourself

19    whether serving on this jury would be so much more

20    inconvenient or burdensome to you than for anyone else.

21          You should also ask yourself what attitude you would

22    want jurors to have if you or someone very close to you that

23    you cared about deeply were to be tried by a jury.  The right

24    to a trial by jury is a fundamental constitutional right and

25    you should bear in mind that the sacrifices were made by many

1   people throughout your country's history to preserve and

2   protect the right to a jury trial in our constitution.

3          Is there anyone who would have extreme burden or

4   hardship in serving?

5          All right.  In the first row, we have a juror in

6   seat No. 3.  Why don't you come to sidebar, sir.

7          (Prospective juror present at sidebar.)

8          THE COURT:  Have a seat, sir.  Juror No. -- are you

9   Juror No. 134?

10          THE PROSPECTIVE JUROR:  133.

11          THE COURT:  Okay, Juror No. 133.  Okay, sir.  Yes,

12   sir, tell us what your situation is regarding serving for six

13   weeks.

14          THE PROSPECTIVE JUROR:  Because if I don't work one

15   week, I will be broke and bankrupt.  I can't stay for six

16   weeks.  I pay mortgage, I pay everything.

17          THE COURT:  What do you do, sir?

18          THE PROSPECTIVE JUROR:  Hum?

19          THE COURT:  What do you do for a living?

20          THE PROSPECTIVE JUROR:  I'm ambulance driver.

21          THE COURT:  You are a driver?

22          THE PROSPECTIVE JUROR:  Yes, ambulance.

23          THE COURT:  Of an ambulance?

24          THE PROSPECTIVE JUROR:  Yes.

25          THE COURT:  Do you get paid while you are on jury

1    duty?

2         THE PROSPECTIVE JUROR:  No, only $40, but usually my

3    paycheck a thousand every week.

4         THE COURT:  Every week.  Do you know if your

5    employer has a policy about paying employees on jury duty?

6         THE PROSPECTIVE JUROR:  But my boss doesn't pay for

7    -- I work for 15 years in this company.  He never pay.

8         THE COURT:  Okay.  All right.

9         THE PROSPECTIVE JUROR:  And the last time I stay in

10   City Court two weeks and do not pay me.

11        THE COURT:  This is federal court and the question I

12   have for you is whether you would be paid by your employer and

13   you are telling me no, is that correct?

14        THE PROSPECTIVE JUROR:  Yes.

15        THE COURT:  I will excuse you.  You are Juror No.

16   133, correct?

17        THE PROSPECTIVE JUROR:  Uh-hum.

18        THE COURT:  You are excused.  You can tell the jury

19   clerk where you checked in that you are excused.  Thank you.

20        THE PROSPECTIVE JUROR:  Thank you, guys.

21        (Prospective juror excused.)

22        THE COURT:  I feel like I may be made a mistake

23   because I just excused this gentleman but I had him crossed

24   off my list for cause.

25        MS. KASULIS:  135 was excused.

235

```
 1            THE COURT:  He was excused for cause.  We have
 2   excused 133 on the consent of the parties?
 3            MR. BRAFMAN:  Yes.
 4            MS. KASULIS:  Yes.
 5            MS. SMITH:  Yes.
 6            (In open court.)
 7            THE COURT:  Who else had their hand up in the first
 8   row?  You are Juror No. 136?
 9            THE PROSPECTIVE JUROR:  Yes.
10            THE COURT:  Come on up, ma'am.
11            (Prospective juror present at sidebar.)
12            THE COURT:  Have a seat?
13            THE PROSPECTIVE JUROR:  Hi.
14            THE COURT:  How are you?
15            THE PROSPECTIVE JUROR:  Good.  I am a practicing
16   attorney.  I'm in-house counsel at a non-profit contracted
17   with the city to provide guardianship services to clients that
18   have been deemed incapacitated by New York State Supreme Court
19   around the five boroughs.  I handle all the landlord/tenant
20   litigation.  I'm the only attorney there who has
21   landlord/tenant experience.  There are approximately 700 cases
22   that my client has.  They would not be able to replace me for
23   six weeks and it would be extremely difficult for my client if
24   I was absent for that amount of time.  I would just ask to be
25   relieved from here.
```

236

1            THE COURT:  Let me ask you to step away.

2            (Prospective juror leaves sidebar.)

3            THE COURT:  Is there any objection to excusing Juror

4   No. 136?

5            MR. BRAFMAN:  No, Your Honor.

6            MS. KASULIS:  No.

7            THE COURT:  Thank you.

8            (Prospective juror present at sidebar.)

9            THE COURT:  We are going to excuse you and ask you

10  to go to the jury room and tell them that you have been

11  excused.  Juror No. 136 is excused.

12           (Prospective juror excused.)

13

14

15

16

17

18

19

20

21

22

23

24

25

Side Bar                          237

1          (In open court.)

2          THE COURT:  Who else in the front row had their hand

3     up?  No one else?

4          Second row, the last juror.  Thank you.  You are

5     Juror Number 150?  Come forward, please.

6          (Side bar continues; prospective juror joins.)

7          THE COURT:  Come on up, sir.  Number 150?

8          THE PROSPECTIVE JUROR:  Yes.

9          THE COURT:  All right.  What is the situation, sir?

10         THE PROSPECTIVE JUROR:  The situation is that --

11    it's my first time here, right?

12         THE COURT:  Yes.

13         THE PROSPECTIVE JUROR:  So, the thing is, like, I

14    working, I work five days a week.

15         THE COURT:  Okay.  What do you do?

16         THE PROSPECTIVE JUROR:  I work as a waiter.

17         THE COURT:  A waiter?  Okay.

18         THE PROSPECTIVE JUROR:  So, I have to be on the job

19    so I'm in charge of the one place.

20         THE COURT:  What are your hours, your work hours?

21         THE PROSPECTIVE JUROR:  Work hours?  I start at --

22    sometimes I start at 9, 10 o'clock to 12.

23         THE COURT:  Ten a.m. to 12 a.m.?

24         THE PROSPECTIVE JUROR:  But there's no schedule

25    every day so every day, change the schedule.

1          THE COURT:  I see.

2          THE PROSPECTIVE JUROR:  Yes.

3          THE COURT:  And would your employer allow you to be

4    paid while you were on jury duty?

5          THE PROSPECTIVE JUROR:  I don't know.

6          THE COURT:  Okay.  All right.  Does your employer

7    have enough other individuals who can fill in for you while

8    you are on jury duty?

9          THE PROSPECTIVE JUROR:  I think so, he can make it.

10         THE COURT:  Okay.  But the question I have for you

11   is do you know what his or her policy is regarding payment of

12   employees who serve on jury duty?

13         THE PROSPECTIVE JUROR:  See, he paid me in check.

14         THE COURT:  Yes, but does he pay you if you were on

15   jury duty and not at the place of work?

16         THE PROSPECTIVE JUROR:  Let's see.  I don't know

17   what to tell you.

18         THE COURT:  You don't know?

19         THE PROSPECTIVE JUROR:  Yes.

20         THE COURT:  All right.  Would you step away just for

21   a moment?

22         THE PROSPECTIVE JUROR:  Sure.

23         (Prospective juror leaves side bar.)

24         THE COURT:  Okay.  Juror Number 150 does not seem to

25   be certain as to whether he will be paid if he's on jury duty.

Side Bar                              239

1          MR. BRAFMAN:  I don't think anyplace pays waiters

2     when they serve six weeks jury duty, plus they lose out on

3     tips, so he's going to come back tomorrow and say he needs to

4     be excused.

5          MS. KASULIS:  Yes, I think.

6          THE COURT:  So we'll excuse Juror 150 then?

7          MS. KASULIS:  We'll consent.

8          MR. BRAFMAN:  Yes.

9          (Prospective juror joins side bar.)

10         THE COURT:  Sir?

11         THE PROSPECTIVE JUROR:  Yes.

12         THE COURT:  We are going to excuse you.

13         THE PROSPECTIVE JUROR:  Yes.

14         THE COURT:  So, you are excused.  So you can go back

15    to the jury room and tell them you are excused.  All right?

16         THE PROSPECTIVE JUROR:  Okay.

17         THE COURT:  You can get your papers and be able to

18    get to work.

19         THE PROSPECTIVE JUROR:  Thank you so much.  So, I'm

20    finished?

21         THE COURT:  Yes.  Go back to the jury room and get

22    your paper.

23         (Prospective juror excused.)

24         (In open court.)

25         THE COURT:  All right.  I'm sorry.  I might have

```
                        Side Bar                      240
```

1   missed it.  You are in seat number 11, Juror Number 141.

2           (Side bar continues; prospective juror joins.)

3           THE COURT:  Are you number 141, ma'am?

4           THE PROSPECTIVE JUROR:  Yes.

5           THE COURT:  Is this you?

6           THE PROSPECTIVE JUROR:  Yes.

7           THE COURT:  Yes, ma'am.

8           THE PROSPECTIVE JUROR:  Well, there's a few things.

9   I have a doctor's appointment that is on the 10th so I don't

10  know if I would be able to move that.  I don't know if court

11  is every day.  And then I wasn't sure if these kinds of things

12  run over because I do have a family holiday planned at the end

13  of August.

14          THE COURT:  We will not be on trial at the end of

15  the August because I have a family holiday planned much so,

16  they're going to finish within six weeks.

17          THE PROSPECTIVE JUROR:  So then it would be the

18  doctor's appointment is my main concern.

19          THE COURT:  Is that flexible?  I don't want you to

20  ignore a situation if you need a checkup, but if it's flexible

21  and if it's not something that --

22          THE PROSPECTIVE JUROR:  I wouldn't want to put it

23  off for four to six weeks.

24          THE COURT:  Okay.

25          THE PROSPECTIVE JUROR:  So that's the problem, but I

1    didn't know, if you don't go to court every day, then I

2    probably could put it on, but it has to be during the week.

3              THE COURT:  When is it, July 10th?

4              THE PROSPECTIVE JUROR:  So, that's a Monday.

5              THE COURT:  Monday.  Yes.  Unfortunately, we

6    probably sit on Monday.  We try to sit every day.

7              THE PROSPECTIVE JUROR:  Okay.

8              THE COURT:  Flexible sometimes on Fridays and you

9    know July 3rd and 4th, we will be off.  If your doctor could

10   see you on the 3rd, it wouldn't be an issue.

11             THE PROSPECTIVE JUROR:  I wouldn't know without

12   calling them.

13             THE COURT:  All right.  Let me ask you to just step

14   back for a moment.

15             THE PROSPECTIVE JUROR:  Sure.

16             (Prospective juror leaves side bar.)

17             THE COURT:  I wouldn't want to lose this juror.

18   Obviously, if we could have her change her appointment, I

19   don't see any reason why she shouldn't sit, but I don't want

20   to impair her ability to seek medical attention.

21             MR. BRAFMAN:  It's your call, Judge.  If you want to

22   have her excused, that's fine.  If you want to have her come

23   back tomorrow and see if she can rearrange it --

24             THE COURT:  I might ask her to get her phone and use

25   the phone in the jury room and see if she can set up an

1    appointment for July 3rd instead of the 10th.  Escort her

2    there.

3              THE CLERK:  Yes.

4              (Prospective juror joins side bar.)

5              THE COURT:  Ma'am, we're going to ask you to go to

6    the jury room and call your doctor's office and see if you can

7    change your doctor's appointment on July 3rd when we're not

8    sitting or later on a Friday afternoon, I might allow you to

9    leave earlier.

10             THE PROSPECTIVE JUROR:  Okay.

11             THE COURT:  Zoe will take you over there.

12             (Prospective juror leaves side bar.)

13             (In open court.)

14             THE COURT:  Let's keep going.  Was there anyone else

15   on the second row?

16             All right.  Let's see.  Juror seated in seat number

17   16 is Juror Number 146.

18             (Side bar continues; prospective juror joins.)

19             THE COURT:  Hello, Juror Number 146.

20             THE PROSPECTIVE JUROR:  Yes.

21             THE COURT:  Have a seat.  What can you tell us?

22             THE PROSPECTIVE JUROR:  I have a vacation planned.

23   I don't know if that counts.

24             THE COURT:  When is it?

25             THE PROSPECTIVE JUROR:  I'm supposed to leave on the

Side Bar                                    243

1    16th and for six days.

2              THE COURT:  16th of July?

3              THE PROSPECTIVE JUROR:  Yes.

4              THE COURT:  It will be during the trial.  So what

5    kind of vacation is it that you're planning?

6              THE PROSPECTIVE JUROR:  I just -- I'm supposed to

7    just go to North Carolina and visit family.

8              THE COURT:  Okay.  Is there any flexibility in

9    changing your vacation until late August or is that set in

10   stone?

11             THE PROSPECTIVE JUROR:  I mean, everything is kind

12   of already purchased and booked.

13             THE COURT:  Okay.  All right.  So you're flying or

14   something?

15             THE PROSPECTIVE JUROR:  Yes.

16             THE COURT:  All right.  Then I will excuse you,

17   ma'am.

18             THE PROSPECTIVE JUROR:  Okay.  Thank you.

19             THE COURT:  Just go to the jury room and tell them

20   you have been excused from this panel.  All right?

21             THE PROSPECTIVE JUROR:  Okay.  Thank you so much.

22             THE COURT:  No objection.

23             MS. KASULIS:  No objection.

24             MR. BRAFMAN:  No objection.

25             (Prospective juror excused.)

```
                        Side Bar                       244
```

1              (In open court.)

2              THE COURT:  Is there anyone else in the second row?

3              Juror Number 147.

4              (Side bar continues; prospective juror joins.)

5              THE COURT:  Have a seat, Juror Number 1447.  Hello.

6              THE PROSPECTIVE JUROR:  Hi.

7              THE COURT:  So, what is your issue?

8              THE PROSPECTIVE JUROR:  I work for a public

9    accounting firm.  The New York City pension systems is one of

10   our clients.  The year end is 6/30 and they're the biggest

11   client of our firm so this is a crucial part, the timeline of

12   the client, as far as planning and that phase.  So, I'm not

13   sure as far as whether it's six weeks or realistic for me or

14   not.

15             THE COURT:  Well, the fiscal year ends June 30th.

16             THE PROSPECTIVE JUROR:  Yes.

17             THE COURT:  So this Friday?

18             THE PROSPECTIVE JUROR:  Yes.

19             THE COURT:  And then what happens after that; is

20   there somebody else at your office who can fill in for you?

21             THE PROSPECTIVE JUROR:  That's up to my, I guess,

22   bosses.  I'm not 100 percent sure.

23             THE COURT:  Do you know what your policy is

24   regarding paying jurors for jury service?

25             THE PROSPECTIVE JUROR:  I do not, no.

Side Bar                            245

1       THE COURT:  All right.  If we were to make your

2   phone available, could you call your office and find out

3   whether a six week jury trial would result in any loss of pay

4   or --

5       THE PROSPECTIVE JUROR:  I can, yes, but if I can

6   additionally add something to it.

7       THE COURT:  Sure.

8       THE PROSPECTIVE JUROR:  With my accounting

9   background and educational background, I think I might have a

10  biased opinion, kind of a zero tolerance to SEC fraud and

11  stuff like that, so I wouldn't be the best person to sit on

12  the jury.

13      THE COURT:  Okay.  So, are you telling us that given

14  your background, that you would not be able to set aside --

15      THE PROSPECTIVE JUROR:  I personally wouldn't feel

16  comfortable going into that case with a biased opinion

17  already.

18      THE COURT:  All right.  So you feel that you already

19  have a bias against somebody who's merely accused of --

20      THE PROSPECTIVE JUROR:  Within the industry and my

21  educational experience, it was just always kind of something I

22  don't want to be involved with and if you see something, hear

23  something, it's more like a say something policy.

24      THE COURT:  All right.  Well, then, let me ask you

25  to just step a way for one moment.

```
                          Side Bar                      246
```

1           THE PROSPECTIVE JUROR:  Okay.

2           THE COURT:  Actually, I think I am going to excuse

3   you.  All right, sir.  Go to the jury room and tell them you

4   have been excused.

5           THE PROSPECTIVE JUROR:  Okay.

6           THE COURT:  This is Juror Number 147.

7           THE PROSPECTIVE JUROR:  All right.  Thank you.

8           THE COURT:  Thank you.

9           I take it there is no objection to excusing him?

10          MS. KASULIS:  No.

11          MR. BRAFMAN:  No objection.

12          THE COURT:  All right.

13          (Prospective juror excused.)

14          (In open court.)

15          THE COURT:  Anyone else in the second row?

16          Juror Number 148, yes, ma'am, come forward, please.

17          (Side bar continues; prospective juror joins.)

18          THE COURT:  Have a seat, ma'am.  How are you?

19          All right.  What is the nature of the hardship?

20          THE PROSPECTIVE JUROR:  I just started a new job

21   about three weeks ago.

22          THE COURT:  And do you know what your employer's

23   policy is regarding jury service?

24          THE PROSPECTIVE JUROR:  They would allow you, but

25   the position that I have, I'm training during this first --

1          THE COURT:  Oh, you are being trained?

2          THE PROSPECTIVE JUROR:  Yes.

3          THE COURT:  All right.  So, if that is the case,

4    would your employer be willing to let you serve and then

5    undergo training or was there a class of employees that are

6    going through the training?

7          THE PROSPECTIVE JUROR:  I would have to find out.

8          THE COURT:  Okay.  May I ask you not where you work

9    but what kind of work you do?

10         THE PROSPECTIVE JUROR:  A real estate professional.

11         THE COURT:  Okay.  And the training is in, is it

12   being a broker?

13         THE PROSPECTIVE JUROR:  No.

14         THE COURT:  Okay.  Is it real estate finance?

15         THE PROSPECTIVE JUROR:  Real estate vendor

16   management.

17         THE COURT:  Vendor management?  All right.  Are you

18   the only one being trained at the current time?

19         THE PROSPECTIVE JUROR:  Yes.

20         THE COURT:  And you started three weeks ago?

21         THE PROSPECTIVE JUROR:  Yes.

22         THE COURT:  Are you familiar at all with your

23   employer's jury service policy?

24         THE PROSPECTIVE JUROR:  I believe it should be fine

25   for me to serve.

```
                         Side Bar                      248
```

1           THE COURT:  You think it should or should not?

2           THE PROSPECTIVE JUROR:  It should be.

3           THE COURT:  Would you be paid?

4           THE PROSPECTIVE JUROR:  Yes.

5           THE COURT:  All right.  What I will ask you to do is

6   to try to find out if you could from your employer whether

7   there would be any issues with you serving in a six-week

8   trial.

9           THE PROSPECTIVE JUROR:  Okay.

10          THE COURT:  And whether your training could await

11  your service.

12          THE PROSPECTIVE JUROR:  Okay.

13          THE COURT:  Okay?  If you need to retrieve your

14  phone to make that call, Ms. Jackson --

15          THE PROSPECTIVE JUROR:  I didn't walk with my phone

16  today.

17          THE COURT:  Oh, you don't have it?  Do you have the

18  number of your employer?

19          THE PROSPECTIVE JUROR:  In my phone.

20          THE COURT:  All right.  We can't make the call.  Let

21  me ask you to step away, please, for just one moment.

22          (Prospective juror leaves side bar.)

23          THE COURT:  We can't get this resolved today so I

24  might just have to excuse her unless somebody has a different

25  view.

Side Bar                                            249

1          MS. SMITH:  I mean, if we're calling other jurors

2     back tomorrow, she can find out tonight.

3          (Prospective juror joins side bar.)

4          THE COURT:  All right.  Ma'am, would you mind just

5     reaching out to your employer as soon as you can and hopefully

6     come back tomorrow with an answer regarding your service for

7     six weeks and whether you will be paid and whether your

8     training can be postponed until you return?

9          THE PROSPECTIVE JUROR:  Okay.  Do you want me --

10          THE COURT:  Go back to your seat, number 18.

11          THE PROSPECTIVE JUROR:  Okay.

12          (Prospective leaves side bar.)

13          (In open court.)

14          THE COURT:  Are there any other hands up in the

15     second row?  The third row, are there any hands up?

16          Okay.  We have Juror Number 154.  Come forward,

17     please, seat 24.

18          (Side bar continues; prospective juror joins.)

19          THE COURT:  Are you Juror Number 154?

20          THE PROSPECTIVE JUROR:  Yes.

21          THE COURT:  Your issues are?

22          THE PROSPECTIVE JUROR:  First, my language.  My

23     first language is not English.  Second, I came here only from

24     eight years and I don't have full meaning for every rule

25     definition.  My work is dealing with measure the street so I

Side Bar                                    250

1   deal with only numbers.

2          THE COURT:  You measure the streets?

3          THE PROSPECTIVE JUROR:  Yes.

4          THE COURT:  What is your native language, sir?

5          THE PROSPECTIVE JUROR:  Arabic.

6          THE COURT:  Okay.  How long have you been in this

7   country?

8          THE PROSPECTIVE JUROR:  Eight years.

9          THE COURT:  Eighteen?

10         THE PROSPECTIVE JUROR:  Eight.

11         THE COURT:  Have you studied English?

12         THE PROSPECTIVE JUROR:  I studied here in America

13  for eight years.

14         THE COURT:  Do you use English in your daily job?

15         THE PROSPECTIVE JUROR:  I use number.  More number

16  than words.

17         THE COURT:  All right.  Do you have any difficulty

18  understanding spoken English?

19         THE PROSPECTIVE JUROR:  I have difficulty for

20  language, is the word used in that chart, something like this.

21  I deal with numbers and maps mostly, more than word.

22         THE COURT:  I think there will be a fair amount of

23  numbers in this case, but there will also be witnesses who

24  will testify and other --

25         THE PROSPECTIVE JUROR:  Yes.

```
                          Side Bar                    251
```

1           THE COURT:  -- evidence which it is important that

2    you understand --

3           THE PROSPECTIVE JUROR:  Yes.

4           THE COURT:  -- the lawyers, me and others.  Can you

5    do that?

6           THE PROSPECTIVE JUROR:  When you said here in the

7    beginning, you said test of 1 to 5 and 5, I don't clarify what

8    you mean by this word.  When you said from 1 to 5, from 6 to,

9    about the charge.  Charge?

10          THE COURT:  Oh, I was just trying to get you in your

11   seats.

12          MR. BRAFMAN:  No, when you read the charges in the

13   case.

14          THE COURT:  Okay.  Those are what are called the

15   counts of the indictment.

16          THE PROSPECTIVE JUROR:  Yes.

17          THE COURT:  You did not understand what I said?

18          THE PROSPECTIVE JUROR:  I did not, yes.

19          THE COURT:  All right.  Then I am going to excuse

20   you, sir.  All right?  So just go to the jury room when you

21   checked in and tell them you have been excused.

22          We will excuse Juror Number 154 without objection.

23          MS. KASULIS:  No objection.

24          MR. BRAFMAN:  No objection.

25          THE PROSPECTIVE JUROR:  I'm sorry.

```
                        Side Bar                    252
```

1           THE COURT:  That's all right.

2           (Prospective juror excused.)

3           (In open court.)

4           THE COURT:  Is there anyone else -- just one moment.

5           (Side bar continues.)

6           THE COURT:  Juror Number 141's doctor could not

7     reschedule the appointment.  She's back in her seat.  So I

8     believe she probably needs to be excused, given her medical

9     examination.

10          MR. BRAFMAN:  That's fine, Judge.

11          (In open court.)

12          THE COURT:  Will Juror Number 141 please come over

13    here to side bar?

14          (Side bar continues; prospective juror joins.)

15          THE COURT:  Hi, ma'am.  We are going to excuse you.

16          THE PROSPECTIVE JUROR:  Okay.

17          THE COURT:  So just go to the jury room and tell

18    them you are excused.

19          THE PROSPECTIVE JUROR:  Okay.  Thank you.

20          THE COURT:  Thank you.

21          (Prospective juror excused.)

22          (In open court.)

23          THE COURT:  All right.  We had other hands up?

24          THE PROSPECTIVE JUROR:  Sorry, Your Honor, I just

25    thought of something.

Side Bar                            253

1          THE COURT:  You just thought of something?  Well,

2  why don't we hear from you then.  You are Juror Number 134, is

3  that right?

4          THE PROSPECTIVE JUROR:  Right.

5          THE COURT:  All right.  Come on up.

6          (Side bar continues; prospective juror joins.)

7          THE COURT:  Hello.  Have a seat.

8          THE PROSPECTIVE JUROR:  Two things real quick.

9  First, just, everyone is looking at me and I work -- I'm a

10  contractor.  I work for the Army and it's, if it's going to be

11  a long trial --

12          THE COURT:  Six weeks.

13          THE PROSPECTIVE JUROR:  -- that would be burdensome

14  for work.  I'm part of a small team.  The other thing is I

15  didn't really catch your pronunciation of the gentleman's name

16  earlier.  I only just made the association with some of the

17  media attention.

18          THE COURT:  All right.  Well, the question is we

19  have two issues.  One is your job.  So, I am going to ask you

20  that first.  You said it is a small team?

21          THE PROSPECTIVE JUROR:  Small team.

22          THE COURT:  Do you work for the Government?

23          THE PROSPECTIVE JUROR:  I work for the Army.

24          THE COURT:  And you're paid for your jury service?

25          THE PROSPECTIVE JUROR:  Yes.

Side Bar                              254

1          THE COURT:  All right.  And is it possible that

2     there are other individuals at your employment who could fill

3     in for you while you were on jury duty for six weeks?

4          THE PROSPECTIVE JUROR:  In this particular instance,

5     no.  The team -- I do the hardware end of the things.  We have

6     the programmers, but I'm the only person that handles the

7     hardware.

8          THE COURT:  There's no other person?

9          THE PROSPECTIVE JUROR:  No.  No.

10          THE COURT:  All right.  No one else in the entire,

11     not in the entire army, but in your --

12          THE PROSPECTIVE JUROR:  Like I said, we're a

13     contractor.  I don't work directly for the Army.  I work -- my

14     company works for them.  It's a small contractor.

15          THE COURT:  I see.  So you are a private contractor?

16          THE PROSPECTIVE JUROR:  Yes, sir -- I mean, yes,

17     ma'am.

18          THE COURT:  So what I will do is excuse you.  All

19     right.  Just please go to the jury room and tell them that you

20     are excused from this panel.

21          THE PROSPECTIVE JUROR:  Thank you very much.

22          THE COURT:  All right.  Any objections?

23          MR. BRAFMAN:  No objection.

24          MS. KASULIS:  No objection.

25          (Prospective juror excused.)

```
                    Side Bar                      255
```

1           (In open court.)

2           THE COURT:  Anyone else with their hands up?

3           Okay.  We are in the third row at Juror 26.  All

4    right.  Come forward, 156.  I'm sorry.  Seat 26, Juror

5    Number 156.

6           (Side bar continues; prospective juror joins.)

7           THE COURT:  Hello, ma'am, Juror Number 156.  Hello.

8    Have a seat.

9           All right.  Why don't you tell us about your issues?

10          THE PROSPECTIVE JUROR:  Yes.  I have a son with a

11   physical disability and he's going to do surgery on Friday.

12          THE COURT:  All right.  I will excuse you under

13   those circumstances and I wish you well.

14          THE PROSPECTIVE JUROR:  Thank you very much.

15          THE COURT:  Ma'am, thank you.

16          Juror Number 156 is excused without objection.

17          MS. KASULIS:  No objection.

18          MR. BRAFMAN:  Yes.

19          (Prospective juror excused.)

20          (In open court.)

21          THE COURT:  Do we have someone else in the third

22   row?

23          Juror Number 158, please come forward.

24          (Side bar continues; prospective juror joins.)

25          THE COURT:  Have a seat.  You are Juror Number 158?

1          THE PROSPECTIVE JUROR:  Yes.

2          THE COURT:  All right.  Could you tell us your

3   conflicts, please?

4          THE PROSPECTIVE JUROR:  I am second in command at a

5   small business and my boss is out of the country for the next

6   two and a half weeks.

7          THE COURT:  I see.  And are you the person in

8   charge?

9          THE PROSPECTIVE JUROR:  I should be, yes.

10         THE COURT:  All right.  And there is no one else

11  there who can exercise supervisory authority?

12         THE PROSPECTIVE JUROR:  Not the same way, no.

13         THE COURT:  All right.  Is there someone who is at

14  your level in the company?

15         THE PROSPECTIVE JUROR:  There is one colleague, but

16  she can't partake in the meetings that I have scheduled for

17  the next few weeks because she hasn't been involved in those

18  projects.

19         THE COURT:  I see.  And is there any way to postpone

20  those meetings?

21         THE PROSPECTIVE JUROR:  I don't think so, no.

22         THE COURT:  Are they with clients?

23         THE PROSPECTIVE JUROR:  Yes, clients.

24         THE COURT:  All right.  Let me ask you to just step

25  back for a moment.

1           THE PROSPECTIVE JUROR:  Sure.

2           (Prospective juror leaves side bar.)

3           THE COURT:  Does anyone object to excusing juror

4    number 158?  No objection?

5           MR. BRAFMAN:  No objection.

6           MS. SMITH:  No.

7           (Prospective juror joins side bar.)

8           THE COURT:  Ma'am, we will excuse you.  Please go to

9    the jury room and tell them you have been excused.

10          THE PROSPECTIVE JUROR:  Thank you.

11          THE COURT:  All right?  Thank you.

12          (Prospective juror excused.)

13          (In open court.)

14          THE PROSPECTIVE JUROR:  Sorry.

15          THE COURT:  Okay.  All right.  Juror Number --

16          THE PROSPECTIVE JUROR:  137.

17          THE COURT:  Okay.  Come on up.

18          THE PROSPECTIVE JUROR:  I'm sorry it took me so

19   long.

20          THE COURT:  Come on up.  Your number?

21          THE PROSPECTIVE JUROR:  137, please.

22          (Side bar continues; prospective juror joins.)

23          THE COURT:  All right.  What would you like to tell

24   us?

25          THE PROSPECTIVE JUROR:  I work for the company.  My

Side Bar                                    258

1   occupational position rather is I'm a general manager sales,

2   okay, and I just realized that this trial might take four to

3   six weeks.

4          THE COURT:  Yes.

5          THE PROSPECTIVE JUROR:  And there's no way in the

6   world I could leave my company for four to six weeks or for an

7   extensive period of time because, again, my position requires

8   daily contact with my clients, daily.  That means not over the

9   phone, but physically visiting store.  Now, I'm in sales.

10         THE COURT:  What kind of business is it in?

11         THE PROSPECTIVE JUROR:  This is organic food

12  products.

13         THE COURT:  Okay.

14         THE PROSPECTIVE JUROR:  Dairy and frozen.

15         THE COURT:  So you have to go --

16         THE PROSPECTIVE JUROR:  I absolutely must.  And also

17  on a little lighter side, if I may, this will, I will not be

18  able to put my mind into the right perspective in terms of a

19  trial to be completely fair because of my job.

20         THE COURT:  You'll be thinking about --

21         THE PROSPECTIVE JUROR:  I will be preoccupied.

22         THE COURT:  Well, it's important that you be able to

23  pay very close attention --

24         THE PROSPECTIVE JUROR:  Yes.

25         THE COURT:  -- to everything.  So, you are Juror

```
                      Side Bar                      259
```

1    Number 137?

2         THE PROSPECTIVE JUROR:  That is correct.

3         THE COURT:  And you're sure there is nobody else at

4    your job who can fill in for you?

5         THE PROSPECTIVE JUROR:  No.  It's just, just me.  My

6    key accounts.

7         THE COURT:  Okay.  Any objections to excusing Juror

8    Number --

9         MS. KASULIS:  No.

10        THE COURT:  Mr. Brafman?

11        MR. BRAFMAN:  No objection.

12        THE COURT:  Okay.  I will excuse you then.

13        THE PROSPECTIVE JUROR:  Thank you kindly.

14        THE COURT:  Tell them you are excused.

15        THE PROSPECTIVE JUROR:  I will.

16        (Prospective juror excused.)

17        (In open court.)

18        THE COURT:  Juror Number 160, please come forward.

19    Seat number 30, Juror Number 160.

20        (Side bar continues; prospective juror joins.)

21        THE COURT:  Hi.  How are you?  Juror Number 160.

22        THE PROSPECTIVE JUROR:  160.

23        THE COURT:  Yes, ma'am.

24        THE PROSPECTIVE JUROR:  I'm a single person and live

25    on my own.  I just started a new position at a company as a

Side Bar                              260

1   contractor next week and without the money coming in, I will

2   not be able to pay my bills.

3              THE COURT:  All right.  And your employer will not

4   pay?

5              THE PROSPECTIVE JUROR:  I'm a contractor so there's,

6   and I would be just starting, so there's no way they would pay

7   me.

8              THE COURT:  All right.  Well, then I will excuse

9   you.  All right.  Ma'am, just go to the jury room and tell

10  them that you have been excused.

11             THE PROSPECTIVE JUROR:  I appreciate it.  Thank you

12  very much.

13             THE COURT:  Any objection to having excused Juror

14  Number 160?

15             MR. BRAFMAN:  No.

16             MS. KASULIS:  No.

17             THE COURT:  No?  All right.

18             (Prospective juror excused.)

19             (In open court.)

20             THE COURT:  Is there anyone else in the box to my

21  left?

22             All right.  Let me look at the front row in front of

23  me.

24             Juror Number 163, seat number 33.  Yes, ma'am.

25             (Side bar continues; prospective juror joins.)

 1           THE PROSPECTIVE JUROR:  I'm a teacher.  Today is a

 2   non-school day so I'm able to come and two more days, my

 3   students will be have a vacation.  So my mind is just -- I

 4   have to distribute report cards, I have to clean up my room

 5   and also, you know, a lot of things for my students.

 6           Also, my husband is a police officer so when you

 7   mentioned criminal case, you know, whether cyber crime or

 8   crimes on the street, I cannot, in the back of my head, I

 9   cannot make a fair decision about cases like that because, you

10   know, he's risking his life every day to protect our society.

11   So that's going to -- that's the difficulty that I'm having.

12           THE COURT:  All right.  So, are you saying that in

13   any criminal case involving charges, you don't think you can

14   be fair because of what your husband does?

15           THE PROSPECTIVE JUROR:  Yes.

16           THE COURT:  Well, then I will excuse you to go to

17   the jury room and see if there is a civil case that you will

18   be eligible to sit on, okay, the jury room where you checked

19   in earlier.

20           THE PROSPECTIVE JUROR:  Okay.

21           THE COURT:  Juror Number 163 is excused without

22   objection?

23           MS. KASULIS:  No objection.

24           MR. BRAFMAN:  No objection.

25           (Prospective juror excused.)

1          MS. KASULIS:  May I ask a question?  There's some

2     jurors who have been stricken because they are unavailable.

3     Do they stay on the list, do you know?

4          THE COURT:  They shouldn't be.  If they're stricken

5     because they're unavailable, they shouldn't be on the list.  I

6     think it's the length of the trial that's stumping most of

7     this.  If someone tells me they're not available, I'm telling

8     them go back and, you know, be excused for good.  So, unless

9     it's something where they could serve for a week or so.

10         MS. KASULIS:  Okay.

11         THE COURT:  Okay.

12         MS. KASULIS:  Thank you, Your Honor.

13         (In open court.)

14         THE COURT:  Who else had their hand up in the first

15    row?  Juror Number 164.

16         (Side bar continues; prospective juror joins.)

17         THE COURT:  You are Juror Number 164.  Yes, sir.

18         THE PROSPECTIVE JUROR:  This is a six-week trial?

19         THE COURT:  Yes, that's what I've said.

20         THE PROSPECTIVE JUROR:  The first week of August,

21    I'm not sure, I have a trip.

22         THE COURT:  When do you leave?

23         THE PROSPECTIVE JUROR:  August 4th.

24         THE COURT:  Okay.  And where are you going?

25         THE PROSPECTIVE JUROR:  Canadian Rockies.

```
                         Side Bar                      263
```

 1         THE COURT:  Is that a trip that you can just bump

 2    back by a week or so?

 3         THE PROSPECTIVE JUROR:  Probably not.  It's not my

 4    choice to make the trip.  It's my parents.

 5         THE COURT:  I see.  And they've got everything

 6    reserved?

 7         THE PROSPECTIVE JUROR:  Yes, already.

 8         THE COURT:  All right.  I think that we're, we just

 9    want to make sure that jurors are available through, for the

10    full six weeks, so I suppose you are going to be possibly in

11    conflict with your parent's vacation schedule.

12         THE PROSPECTIVE JUROR:  Yes.

13         THE COURT:  Under those circumstances, unless

14    there's an objection, I will excuse you, sir.

15         THE PROSPECTIVE JUROR:  I'm sorry.

16         THE COURT:  All right.  Thank you.

17         (Prospective juror excused.)

18         (In open court.)

19         THE COURT:  All right.  Do we have anyone else?

20         Ma'am, you are Juror Number 166?

21         THE PROSPECTIVE JUROR:  Yes.

22         THE COURT:  Please come forward.  Thank you.

23         (Side bar continues; prospective juror joins.)

24         THE PROSPECTIVE JUROR:  Hello.

25         THE COURT:  Hello, ma'am.  Please have a seat.  How

```
                        Side Bar                      264
```

1   are you?  You are Juror Number 166?

2          THE PROSPECTIVE JUROR:  Yes.

3          THE COURT:  Yes, ma'am.

4          THE PROSPECTIVE JUROR:  I have a flight leaving

5   July 6th that's nonrefundable and returning July 10th.

6          THE COURT:  Okay.  Then we will excuse you.  All

7   right.  Have a nice trip.  Safe flight.

8          THE PROSPECTIVE JUROR:  Thank you.

9          THE COURT:  Go to the jury room so you can get your

10  paperwork.

11         THE PROSPECTIVE JUROR:  Okay.

12         THE COURT:  Thank you.

13         (Prospective juror excused.)

14         (In open court.)

15         THE COURT:  Was there anyone else on this row?

16         All right.  We have Juror Number, are you 167?  Come

17  forward, please.

18         (Side bar continues; prospective juror joins.)

19         THE COURT:  Hello, ma'am.  Number 167, hello.  What

20  do you have to tell us?

21         THE PROSPECTIVE JUROR:  I want to be excused because

22  they run, the company that I work is only six employees and

23  they only one full time.

24         THE COURT:  Okay.

25         THE PROSPECTIVE JUROR:  Okay.  And also I have a

Side Bar                                     265

1    hand surgery.

2            THE COURT:  You have what?

3            THE PROSPECTIVE JUROR:  Surgery on my hand.

4            THE COURT:  You have an appointment for surgery?

5            THE PROSPECTIVE JUROR:  Yes.

6            THE COURT:  We will excuse you then.  All right?

7            THE PROSPECTIVE JUROR:  Thank you very much.

8            THE COURT:  Juror Number 167 is excused absent any

9    objections.

10           MS. KASULIS:  No objection.

11           MR. BRAFMAN:  No, Your Honor.

12           (Prospective juror excused.)

13           (Continued on next page.)

14

15

16

17

18

19

20

21

22

23

24

25

```
                      Sidebar                    266
```

1    (Continuing)

2           THE COURT:  Was there anyone else on the first row?

3    You must be Juror No. 169.

4           (Sidebar continues; prospective juror joins.)

5           THE COURTROOM DEPUTY:  Hi, how are you?

6           THE PROSPECTIVE JUROR:  I'm fine.  How are you?

7           I'm a second medical year medical student.  So, I'm

8    getting my Step One score on Wednesday and once I get the

9    passing score, I'm actually moving to Ohio on Friday.

10          THE COURT:  I guess we'll have to let you go.  I

11   hope you get your passing score.

12          THE PROSPECTIVE JUROR:  Thank you.

13          THE COURT:  Juror No. 169 is excused.

14          (Prospective juror excused.)

15          THE COURT:  Should we keep going?  Do you want to

16   keep looking into the other jurors?

17          We have up to 50.  So, it's 5 o'clock.  Does anyone

18   have any objection?

19          MR. BRAFMAN:  I don't have an objection.  If we have

20   to come back tomorrow, I'd just as soon break and come back

21   tomorrow.  But I'm going to try to be reasonable throughout

22   the trial, Judge.

23          THE COURT:  I know.  I have no other expectation of

24   you, Mr. Brafman.

25          She has 300 sitting in the jury room, so we should

```
                          Sidebar                    267
```

1   let them go for the night.  Should we examine the rest?

2              MR. BRAFMAN:  Whatever you want.

3              THE COURT:  We have enough to get to the 40, but we

4   might lose others.

5              MS. KASULIS:  Yeah.

6              THE COURT:  I thought maybe we should keep going a

7   little bit longer.

8              MS. SMITH:  That's fine.

9              (In open court.)

10             THE COURT:  I'm just going to ask the jurors in the

11  second row whether they would like to raise their hand and be

12  heard if the answer to any of their questions would be yes.

13  That would be starting with Juror No. 171.

14             Is that your number, ma'am?  Do you have a yes

15  answer for me?  All right.  Please come forward.

16             (Sidebar continues; prospective juror joins.)

17             THE COURT:  Hello, Juror 171.  Nice to see you.

18  Have a seat.

19             What would you like to tell us?

20             THE PROSPECTIVE JUROR:  Years ago, I used to work in

21  little boutique clothing store and he came inside the store

22  and robbed us.  And I had to come and testify him.  Every time

23  I come to the court -- right now, my heart is racing.

24             THE COURT:  You're nervous.

25             THE PROSPECTIVE JUROR:  I'm so nervous.  I was

```
                      Sidebar                    268
```

1   traumatized every since then.  Like, I cannot...

2           THE COURT:  The charges in this case are very

3   different from what you've suffered.

4           THE PROSPECTIVE JUROR:  Okay.

5           THE COURT:  Would that alleviate some of your

6   anxiety to know that the charges in this case don't involve

7   anything related to what you've just described?

8           THE PROSPECTIVE JUROR:  Okay, just that I get

9   nervous.

10          THE COURT:  Would that help you feel better or do

11  you still feel nervous being in court?

12          THE PROSPECTIVE JUROR:  My heart is racing right

13  now.  I don't want to say the wrong things.

14          THE COURT:  We want you to say -- nothing is wrong,

15  no answers are wrong.  What's really important is that you be

16  very honest with us.

17          So, I have described the charges earlier and it

18  doesn't bear on anything like what you have described.  Would

19  that still make you feel anxious to be here as a juror or

20  could you focus on the evidence and keep a fair mind to both

21  parties?

22          THE PROSPECTIVE JUROR:  I could try.  I feel nervous

23  right now.

24          THE COURT:  I don't mean to make you feel nervous, I

25  want you to feel calm.  What we want are juror who are

```
                        Sidebar                    269
```

1    committed to maintaining an open mind and fair mind and to

2    decide this case without fear or favor towards any party but

3    just decide based only on the evidence in this case.

4              THE PROSPECTIVE JUROR:  Okay.

5              THE COURT:  Do you feel you could do that?

6              THE PROSPECTIVE JUROR:  I could try my best.

7              THE COURT:  Are you on any medication to address

8    your anxiety?

9              THE PROSPECTIVE JUROR:  No, I don't take any

10   medication.

11             THE COURT:  Would you be able to focus and

12   concentrate on the evidence in this case?

13             THE PROSPECTIVE JUROR:  Like I said, when I'm in

14   courtroom right now, I feel, like, nervous because of what

15   happened to me.

16             THE COURT:  Okay.  I understand.  Let me just ask

17   you to step to the side just for one moment.

18             THE PROSPECTIVE JUROR:  I'm so sorry.

19             THE COURT:  That's all right.  Just step aside one

20   moment.

21             (Prospective juror leaves sidebar.)

22             MR. BRAFMAN:  Your Honor, the juror exhibits -- she

23   is gouging her hands while talking to you.  She's really

24   suffering from anxiety.  I think she should be excused.

25             MS. KASULIS:  No objection.

```
                    Sidebar                      270
```

1            THE COURT:  Okay.  We'll excuse her.

2            (Prospective juror joins sidebar.)

3            THE COURT:  Ma'am, we'll excuse you.  Please go back

4    to the jury room where you started this morning.

5            THE PROSPECTIVE JUROR:  I'm so sorry about that.

6    Thank you so much.

7            (Prospective juror excused.)

8            (In open court.)

9            THE COURT:  Was there anyone else?

10            Juror No. 172, please come forward.

11            (Sidebar continues.)

12            THE COURT:  Are you going to be prepared to argue on

13    your motion for reconsideration?

14            MR. BRAFMAN:  I'll just have to break for a few

15    minutes.

16            THE COURT:  We only have a few more.

17            (Prospective juror joins sidebar.)

18            THE COURT:  You're Juror No. 172.

19            THE PROSPECTIVE JUROR:  Yes.

20            THE COURT:  Please have a seat, ma'am.  How are you?

21            THE PROSPECTIVE JUROR:  Good.

22            THE COURT:  Thank you for your patience.

23            What would you like to tell us right now.

24            THE PROSPECTIVE JUROR:  I work in the Bronx at a

25    Board of Housing building with very vulnerable formerly

```
                          Sidebar                    271
```

1    homeless mentally ill people with substance use.  There's very

2    small staff.  I'm the associate director/clinical coordinator.

3    It's very stressful, and I just don't think, first of all, I

4    could focus; and, second of all, just a lot of staffing issues

5    right now, a lot of issues with the residents, and it's just a

6    lot.

7              THE COURT:  All right.  Thank you for letting us

8    know.  Just sit tight for one moment.

9              Does anyone have --

10             MR. BRAFMAN:  No objection.

11             MS. KASULIS:  No.

12             THE COURT:  We'll dismiss Juror No. 172.

13             Go to the jury room where you checked in this

14   morning.  This is you, right?

15             THE PROSPECTIVE JUROR:  Yes.

16             THE COURT:  You'll let them know you've been

17   excused.

18             (Prospective juror excused.)

19             THE COURT:  Is there anyone else in the second row?

20             Juror 173, come on up, please.

21             (Sidebar continues; prospective juror joins.)

22             THE COURT:  Hello, No. 173.  How are you?

23             THE PROSPECTIVE JUROR:  How are you?

24             THE COURT:  What would you like to share with us?

25             THE PROSPECTIVE JUROR:  You asked if we have any

Sidebar                                   272

1   prior knowledge.  And I do work in the media industry and I

2   do, you know, know about the Defendant, how he hiked the

3   prices for drugs for people that really can't afford them;

4   actually had a friend or two that have interacted with him on

5   social media as well.  So, yes, I'm not a very big fan.

6              THE COURT:  The question is whether you could, as a

7   juror, maintain a fair and impartial mind to both sides.

8              THE PROSPECTIVE JUROR:  Yes.

9              THE COURT:  You understand impartiality, right?

10             THE PROSPECTIVE JUROR:  Yes, I just don't personally

11  think I'd be able to.  I have people in my family -- my dad

12  has diabetes, my grandfather passed away from cancer.  I just

13  don't -- feel very strongly about the issue, but can't

14  quite -- that's all.

15             THE COURT:  I've read to you the summary of the

16  charges in this case, which aren't directly related to the

17  pricing of drugs.  It is possible there could be evidence

18  presented on that issue, but at this point the charges are as

19  I described.

20             Given that, would you be able to be fair to both the

21  Government and Mr. Shkreli as you evaluate the evidence with a

22  open and fair mind or would you feel that your knowledge of

23  him in the media would impair your ability?

24             THE PROSPECTIVE JUROR:  I think it would.  To be

25  perfectly honest, I think it would.

                       LAM      OCR      RPR

```
                        Sidebar                    273
```

1            THE COURT:  Well, thank you for your honesty.  I

2    will excuse you, sir.  Go to the jury room and tell them you

3    are excused.

4            Juror No. 173 is excused.

5            MS. KASULIS:  No objection.

6            MR. BRAFMAN:  No objection.

7            THE PROSPECTIVE JUROR:  Thank you.

8            (Prospective juror excused.)

9            THE COURT:  The jurors need a restroom break.

10           MR. BRAFMAN:  Just send them home.

11           THE COURTROOM DEPUTY:  It's just the one.

12           THE COURT:  We'll let one take a bathroom break.

13           (In open court.)

14           THE COURT:  Was there anyone else in the row?

15           Juror No. 175, come on up, sir.

16           (Sidebar continues; prospective juror joins.)

17           THE COURT:  You are number 175.  How are you?  Nice

18    T-shirt.

19           THE PROSPECTIVE JUROR:  Thank you.

20           THE COURT:  Tell us about any issues you have.

21           THE COURT:  I'm moving to LA in early August, first

22    week of August.

23           THE COURT:  That's a hard date?

24           THE PROSPECTIVE JUROR:  It had to do with the money.

25    I work 50 plus hours a week, I work three part-time jobs.  I'm

```
                    Sidebar                    274
```

1    just -- it's hard to make a living.  If I'll be here, $40

2    isn't really going to cut it.

3            THE COURT:  You're working three part-time jobs

4    right now?

5            THE PROSPECTIVE JUROR:  And I'm acting in Off

6    Broadway show.  I would love to do this, it would be great,

7    but it's very bad timing.

8            THE COURT:  Given your conflicts, I'll excuse you.

9    Go to the jury room and tell them you have been excused.

10           THE PROSPECTIVE JUROR:  Thank you.

11           THE COURT:  Thank you.

12           (Prospective juror excused.)

13           (In open court.)

14           THE COURT:  Was there anyone else in the second row?

15    Are you Juror No. 177?

16           THE PROSPECTIVE JUROR:  Yes.

17           THE COURT:  Come forward, sir.

18           (Sidebar continues; prospective juror joins.)

19           THE COURT:  How are you, sir?  Thank you for your

20    patience.  Have a seat, just take care.

21            All right, sir, tell us about any issues you may

22    have.

23           THE PROSPECTIVE JUROR:  I have a vacation on 5th,

24    6th, 7th and 22nd, 23rd, 24th out of town.

25           THE COURT:  This is July?

```
                          Sidebar                    275
```

1           THE PROSPECTIVE JUROR:   July.

2           THE COURT:   These are dates that are set?

3           THE PROSPECTIVE JUROR:   Already set.

4           THE COURT:   And you bought tickets and all of that,

5     not refundable or changeable?

6           THE PROSPECTIVE JUROR:   No.

7           THE COURT:   I will excuse Juror No. 177.

8           Thank you, sir, have a nice trip.

9           THE PROSPECTIVE JUROR:   Thank you.

10          (Prospective juror excused.)

11          THE COURT:   That was 177.   176 is in the restroom.

12          MS. KASULIS:   Thank you.

13          THE COURT:   No objection, correct?

14          MS. SMITH:   No objection.

15          MR. BRAFMAN:   No objection.

16          (In open court.)

17          THE COURT:   Juror 176, you're back.   Did you have

18    your hand up at any point?

19          THE PROSPECTIVE JUROR:   No.

20          THE COURT:   Juror 178, come forward.

21          (Sidebar continues; prospective juror joins.)

22          THE COURT:   Hello, Juror No. 178.   How are you?

23          THE PROSPECTIVE JUROR:   Good, thank you.

24          THE COURT:   What do you have to tell us?

25          THE PROSPECTIVE JUROR:   I have some travel plans

```
                        Sidebar                      276
```

1   this Friday and at the end of July I'll be away for three

2   weeks.

3            THE COURT:  Those are hard and fast plans?

4            THE PROSPECTIVE JUROR:  Yes.

5            Is this the case involving price inflation?

6            THE COURT:  The charges do not include price

7   inflation.

8            But given your travel plans, I'll excuse you.  Have

9   a nice trip.

10           (Prospective juror excused.)

11           (In open court.)

12           THE COURT:  Who else on this row?

13           Juror 179, come forward.

14           (Sidebar continues; prospective juror joins.)

15           THE COURT:  Juror No. 179, come forward.  Have a

16  seat.  How are you?

17           THE PROSPECTIVE JUROR:  Okay.

18           THE COURT:  What have you got to tell us?

19           THE PROSPECTIVE JUROR:  I have a son with ADHD on

20  medication.  And we applied for a summer program in Rutgers

21  University.  We didn't think he would get in.  He got in.

22  Because we didn't expect it, we didn't realize transportation

23  is not provided.  It's only for month of July.  Every Monday I

24  have to take him by 8:30 and every Friday pick him up

25  5 o'clock.

```
                       Sidebar                      277
```

1           I didn't realize the case was just for July.  So, it

2     will impact on that.  That would be a hardship for me.

3                 THE COURT:  There's no one else in your family?

4                 THE PROSPECTIVE JUROR:  Unfortunately, my father

5     would be the one; he passed away.  My mother doesn't drive.

6     My wife, she's in Elmhurst.  I'm the only one available to get

7     there quick enough in an emergency.

8                 THE COURT:  Sir, I will excuse you.  Thank you very

9     much.

10                THE PROSPECTIVE JUROR:  I apologize.

11                THE COURT:  That's all right.  Go to the jury room

12    and tell them you're excused and get your paperwork.

13                THE PROSPECTIVE JUROR:  Thank you.

14                (Prospective juror excused.)

15                THE COURT:  No objection, right?

16                MR. BRAFMAN:  No objection.

17                MS. KASULIS:  No objection.

18                (In open court.)

19                THE COURT:  Juror 180, you had your hand up.  Come

20    up, sir.

21                (Sidebar continues; prospective juror joins.)

22                THE COURT:  How are you, sir?  Have a seat.

23                Juror No. 180?

24                THE PROSPECTIVE JUROR:  Yes.

25                THE COURT:  How are you, sir?

```
                         Sidebar                          278
```

1            THE PROSPECTIVE JUROR:  Good.  How are you?

2            THE COURT:  Good.

3       What would you like to tell us?

4            THE PROSPECTIVE JUROR:  My son is a police officer

5    for the City of New York, and, second, I have a ticket to go

6    to Cypress to see my ill father on July 29.

7            THE COURT:  We'll excuse you then, sir.

8            THE PROSPECTIVE JUROR:  Thank you very much.

9            THE COURT:  Just tell the jury clerk that you're

10   excused and get your paperwork.

11           (Prospective juror excused.)

12           THE COURT:  We're finished with this pool.  Does

13   anyone see the need to get more jurors back?

14           MR. BRAFMAN:  Today?

15           THE COURT:  Tomorrow.

16       Do you feel that we need more?  We are going to have

17   additional voir dire and we may lose other jurors.  I'm only

18   question three.

19           MS. KASULIS:  I think we should.

20           MR. BRAFMAN:  You can bring in some, I don't think

21   you need 130.

22           THE COURT:  Maybe bring 50 more or 60 more tomorrow?

23           THE COURTROOM DEPUTY:  Six zero?

24           THE COURT:  Yes.

25           MS. KASULIS:  That makes sense.

```
                          Sidebar                    279
```

1          MR. BRAFMAN:  Can we have a five-minute break before
2    you proceed?
3          THE COURT:  Yes.  What I'm going to do is I'm going
4    to excuse the jurors, admonish them not to speak or do
5    research, and tell them to come back tomorrow by 9:30 to the
6    jury room.  And we'll get all of those jurors back.
7          Thank you.
8          (Sidebar ends; in open court.)
9          THE COURT:  I'd like to thank all of you for your
10   patience.  I would like to ask you to please return tomorrow
11   morning by 9:30.  Please go directly to the jury room where
12   you checked in this morning.  I am very grateful for your
13   indulgence and I know this has been a long process.
14         THE PROSPECTIVE JUROR:  There's a reason why I don't
15   believe I can be partial.
16         THE COURT:  Let's not talk about that in open court.
17         THE PROSPECTIVE JUROR:  I'm saying --
18         THE COURT:  Please, if we need to hear from you
19   about that issue, we will do it at sidebar.  That's why we've
20   been at sidebar; to talk about scheduling and other issues.
21         So, let me just admonish everybody that you should
22   not read about, listen to, or discuss this case with anybody.
23   Do not allow anybody to talk to you about this case.  If
24   anyone approaches you about the case, please let us know.
25   Don't conduct any social media research.  And if you hear

1   something on the news or you get a pop-up on your phone about

2   anything relating to this case, please don't read it, don't

3   listen to it, don't watch it.

4           I will see you tomorrow morning at 9:30.  But let me

5   just also say that we'll hear from the gentleman in the front

6   row at sidebar.  The rest of you may be excused for the

7   evening.  And please, as I said, return by 9:30.

8           Yes?  You need to speak to me at sidebar also?

9           Didn't we already -- is there something else that

10  you need to talk to us about?

11          THE PROSPECTIVE JUROR:  It's not the question, it's

12  something else.

13          THE COURT:  I suppose, then, Juror No. --

14          THE PROSPECTIVE JUROR:  138.

15          THE COURT:  Juror No. -- what's your number?

16          THE PROSPECTIVE JUROR:  143.

17          THE COURT:  Was there another hand up?

18          If any of you need to speak to me at sidebar, we'll

19  do that right now.

20          THE PROSPECTIVE JUROR:  I have a question.

21          THE COURT:  Yes, ma'am.

22          THE PROSPECTIVE JUROR:  I have a doctor's

23  appointment tomorrow in the morning.

24          THE COURT:  What time?

25          THE PROSPECTIVE JUROR:  9:30, 9:45.  So, I was

1    just -- there's no hardship but just that.

2            THE COURT:  Is it possible to postpone your

3    appointment?

4            THE PROSPECTIVE JUROR:  I'll try but it's kind of

5    late now.

6            THE COURT:  I'll give you the phone number of our

7    case manager.  And if you would, just write your name, juror

8    number, and phone number on this piece of paper.  If you get

9    it changed --

10           THE PROSPECTIVE JUROR:  Changed?  Okay.

11           THE COURT:  Or earlier.  We're not sitting July 3,

12   if they can do it July 3.  Or even late on a Friday afternoon.

13           THE PROSPECTIVE JUROR:  Okay, late on a Friday.

14           THE COURT:  If that's possible.  If not, you'll let

15   us know.

16           And your juror number is?

17           THE PROSPECTIVE JUROR:  152.

18           THE COURT:  All right.  I'll ask you to put your

19   phone number on this piece of paper.

20           All right.  I think we should go to sidebar and hear

21   from Juror No. 138.

22           The rest of you are excused.  Please return to the

23   jury room tomorrow morning no later than 9:30.

24           Thank you.

25           (Sidebar continues; prospective juror joins.)

```
                        Sidebar                    282
```

1          THE COURT:  Juror No. 138, right?

2          THE PROSPECTIVE JUROR:  Yes.

3          THE COURT:  Keep your voice down.  I'm sorry, I

4    don't have that white noise machine on.  Please be quiet.

5          THE PROSPECTIVE JUROR:  In 2013, a case I brought

6    against Nassau County was heard in state court.  I sued Nassau

7    County for violation of civil service law by laying me off

8    December 2011 and transferring my duties to someone who held a

9    civil service title that did not include those duties.

10          THE COURT:  Okay.

11          THE PROSPECTIVE JUROR:  During the trial, I had the

12   Director of Nassau County Civil Service state in court that

13   what they did is, in fact, in violation of civil service law,

14   by transferring the duties of a director of labs and research

15   to an Organic Chem 1.

16          THE COURT:  Okay.

17          THE PROSPECTIVE JUROR:  The Judge ignored that and

18   held for the County.  And since then, I've gone -- in my mind,

19   I don't believe the Government is equal under the law in court

20   and I don't feel that I can be impartial if the Government is

21   a party, either as a plaintiff or a defendant.

22          THE COURT:  So, in other words, you would be

23   inclined against the Government?

24          THE PROSPECTIVE JUROR:  Yeah.  In this case, it was

25   clear to me they did what they wanted to do, the state and

```
                        Sidebar                      283
```

1  county.

2          THE COURT:  This is the federal Government that has

3  brought this case.  Do you still have those feelings towards

4  the federal Government as well?

5          THE PROSPECTIVE JUROR:  Against any Government.

6  When I saw what they could do, when the judge, irrespective of

7  the testimony in court by the director of Nassau County Civil

8  Service, could decide whatever he wanted to.

9          THE COURT:  Let me just have you step away for one

10 moment.

11          (Prospective juror leaves sidebar.)

12          MS. KASULIS:  Your Honor, objection for cause.

13          MR. BRAFMAN:  No objection.  I have something funny

14 to say, but she's here.

15          THE COURT:  Too bad.  We're going to miss that good

16 joke.

17          (Prospective juror joins sidebar.)

18          THE COURT:  All right, sir, we'll excuse you.  You

19 can tell the jury folks down at the jury room where you

20 checked in today that you're excused.  Thank you.

21          (Prospective juror excused.)

22          (In open court.)

23          THE COURT:  Are you No. 143?

24          THE PROSPECTIVE JUROR:  Yeah, 143.

25          THE COURT:  Come forward.

```
                        Sidebar                        284
```

1            (Sidebar continues; prospective juror joins.)

2            THE COURT:  Juror No. 143, yes, ma'am.

3            THE PROSPECTIVE JUROR:  I have payroll issue.  I

4    need a transfer on my payroll and this is pay week.  I want to

5    go back to work.

6            THE COURT:  To work tomorrow to straighten out your

7    payroll issues?

8            THE PROSPECTIVE JUROR:  Yes.

9            THE COURT:  Is there any other day or any other way

10   that you can address your payroll issues?

11           THE PROSPECTIVE JUROR:  Actually, we need to send

12   out payroll.  This was the week before, this was the payroll

13   period before.  And this week we have another payroll period

14   we need to submit on Monday, but tomorrow is the last day to

15   submit.  So, I have two pay period I need to address.

16           THE COURT:  And what happens if you don't go in

17   tomorrow to do this?

18           THE PROSPECTIVE JUROR:  They postpone my pay.

19           THE COURT:  Do you know whether you'll be paid

20   during the time you're on jury duty?  Does your employer pay

21   you while you're on jury duty?

22           THE PROSPECTIVE JUROR:  No pay, no.

23           THE COURT:  Let me just ask you to step over there,

24   please, just over to the side.

25           (Prospective juror leaves sidebar.)

```
                      Sidebar                        285
```

1           THE COURT:  All right.  I think she doesn't want to

2   be here tomorrow at least because of her pay.

3           MR. BRAFMAN:  I agree.

4           MS. KASULIS:  Yeah.

5           (Prospective juror joins sidebar.)

6           THE COURT:  Ma'am, we'll excuse you.  Just go to the

7   jury office where you checked in this morning and tell them

8   you're excused.

9           (Prospective juror excused.)

10          THE COURT:  Juror No. 143 is excused.  No

11  objections?

12          MS. KASULIS:  No objection.

13          THE COURT:  All right.  We had one other person.

14          THE COURT:  Juror No. 153, please come to the

15  sidebar.

16          (Sidebar continues; prospective juror joins.)

17          THE COURT:  Hello, sir.  How are you?  Nice to see

18  you.

19          What would you like to tell us?

20          THE PROSPECTIVE JUROR:  I am not that much

21  education.  I hear you, I understand, but I know one thing:

22  Police officer, FBI, they do good job and they do honestly

23  catching the right criminal or whatever.  I know long time

24  that.

25          THE COURT:  You believe that the FBI and the police

```
                      Sidebar                      286
```

1   do a good job?

2           THE PROSPECTIVE JUROR:  Yes.

3           THE COURT:  Would you be able to evaluate the

4   evidence fairly and be fair to both sides and keep an open

5   mind and listen to the evidence in this case?

6           THE PROSPECTIVE JUROR:  No, I just hear from you.

7           THE COURT:  Okay.  Let me ask you, how long have you

8   been in this country?

9           THE PROSPECTIVE JUROR:  Like, almost 30.

10          THE COURT:  30 years, okay.

11          What have you been doing as a job?

12          THE PROSPECTIVE JUROR:  Just handyman, painting.

13          THE COURT:  Handyman and painting.

14          When you do your job, do you communicate with your

15   customers in English?

16          THE PROSPECTIVE JUROR:  Little.

17          THE COURT:  Do you speak to them in English?

18          THE PROSPECTIVE JUROR:  Yes, but no that much.  My

19   brother talk to them.

20          THE COURT:  Your brother works with you also?

21          THE PROSPECTIVE JUROR:  Yes.

22          THE COURT:  Does he speak English well?

23          THE PROSPECTIVE JUROR:  Better.

24          THE COURT:  Let's go back to the statement you made

25   about the FBI.  The question is could you be fair and

Sidebar                    287

1   open-minded towards the Government in this case and the

2   Defendant?

3          Can you be fair to both sides when you would listen

4   to the evidence?

5          THE PROSPECTIVE JUROR:  Honestly, I tell you I knew

6   one thing along 30 years:  In this country, police officer,

7   FBI, they working very good.  It's not like my country.

8          THE COURT:  Let me ask you to just step to the side

9   for one moment.  We will come right back to you.

10         (Prospective juror leaves sidebar.)

11         MR. BRAFMAN:  Judge, I think he should be excused.

12  I think he's enamored with the FBI.  And that's all well and

13  good as a citizen, but not as a criminal defense lawyer.

14         MS. SMITH:  It did seem like there also were

15  language issues.

16         MS. KASULIS:  That's our concern.  We had issues

17  whether he could understand.

18         THE COURT:  I will dismiss Juror No. 153 on consent

19  of the parties.

20         (Prospective juror joins sidebar.)

21         THE COURT:  Sir, I'm going to excuse you from this,

22  and you may go to the room where you checked in this morning

23  and tell them you're excused.

24         THE PROSPECTIVE JUROR:  Thank you very much.

25         THE COURT:  Thank you.  Good-bye.

```
                          Sidebar                           288

 1              (Prospective juror excused.)

 2              THE COURT:  So, did you want to take a break now?

 3              Do we have anyone else to talk to over there?

 4              THE COURTROOM DEPUTY:  No.

 5              MR. BRAFMAN:  Can the Defendant step out a minute or

 6   two?

 7              THE COURT:  Sure, just come back.  Five to ten

 8   minutes?

 9              MR. BRAFMAN:  Five minutes.

10              THE COURT:  We'll take a five-minute break.

11              Did you all file anything?  Did the Government file

12   anything?

13              MS. KASULIS:  No, we did not.

14              (Recess taken.)

15

16              (Continued on next page.)

17

18

19

20

21

22

23

24

25
```

1          (In open court; outside the presence of the jury.)

2          THE COURT:  Let me state what we are doing here.

3   Last evening, at approximately 10:00 p.m., we received a

4   motion for reconsideration, which is No. 258 in the docket.

5   This was a motion filed by Mr. Shkreli asking that I

6   reconsider a ruling that I made regarding the defense, or the

7   issue of lack of ultimate harm to investors.  Just for the

8   record, I do want to be clear as to what my ruling was because

9   I think that it is possible that it may have been over read.

10  I ruled that Mr. Shkreli may not argue that because some

11  investors may have profited from their investment relationship

12  with Mr. Shkreli, that he lacked intent to defraud.  It was a

13  very narrow ruling.  It did not concern evidence and it was

14  just arguing to the jury that simply would prohibit an

15  argument that profit equals lack of intent to defraud, but I

16  am happy to hear from you.

17          MR. BRAFMAN:  Yes, your Honor.

18          THE COURT:  I did want to say one other thing, if I

19  could.  I want to assure the parties I have not prejudged or

20  made any decisions about the evidence.  When I considered the

21  arguments of the parties, I tried my best to glean what their

22  positions were based on their submissions.  I would note that

23  some of these issues were not even raised in the papers before

24  me.  So we tried to stick with the arguments raised in the

25  motions.  What I got last night in the motion for

290

1    reconsideration was certainly a more fulsome explanation of

2    what Mr. Shkreli's defense theory would be, but I must say

3    that in the sur-reply there was no addressing of this issue.

4    And in the opposition, there was minimal addressing of the

5    issue, certainly not to the depth described in document No.

6    258, last evening's motion for reconsideration.  Nonetheless,

7    Mr. Brafman, I do want to assure you I did not intend to

8    convey any conclusions or interpretations about the evidence.

9    What I was doing, and I think in some ways you might have

10   quoted or taken some of the decision out of context, when I

11   discussed Count Seven, that discussion was based on what the

12   defendant had argued and what the Government had proffered in

13   the way of its proof.  So I wasn't intending to convey that I

14   had any opinion.  So it was really just to use what the

15   parties had proffered in my analysis.  But I am happy to hear

16   from you, Mr. Brafman.

17           MR. BRAFMAN:  Your Honor, I think the position we

18   laid out in our letter, and I apologize with -- I start by

19   saying we did not mean in any way any disrespect.

20           THE COURT:  I am not taking it that way at all.  I

21   want you to raise whatever you need to raise with me.  I am

22   not offended in the least.

23           MR. BRAFMAN:  Because when we read Your Honor's

24   decision, and in principal part from pages 36 to 40, the

25   concern we had was more than just about argument.  There was

1    reference to the fact that certainly if Mr. Shkreli paid back

2    MSMB investors from proceeds of a defraud on Retrophin that

3    would certainly not be part of the defense and our position is

4    that, quite frankly, the allegation of fraud on Retrophin is

5    probably the easiest count of this indictment for us to defend

6    against and I don't think that count perhaps even gets past

7    the Rule 29 once the evidence is in the case.  But I don't

8    want to belabor the issue because the hour is late.  We want

9    to be able to argue that Mr. Shkreli's intent, his state of

10   mind is relevant and the jury should consider it.  And the

11   fact is this case is impossible to try without the jurors

12   knowing that the investors put amount X in and got back two

13   times X or three times X and, in some cases, even more.  That

14   fact by itself does not suggest that Mr. Shkreli is innocent,

15   that the Government takes the position and Your Honor takes

16   the position that at the time he makes a misrepresentation,

17   right then and there he's guilty.  We take the position that

18   he is not making misrepresentations, because I think the

19   evidence will show that the evaluation of Retrophin, even in

20   its immediate formation, was sufficient so that Mr. Shkreli

21   had a good faith basis to argue that the evaluations are not

22   false and that the statements given to the investors, when you

23   consider the amount of the evaluation of Retrophin, will show

24   that they are getting exactly what they should be told.

25            Our concern is that his intent and his state of mind

1   and his intent to defraud is simply not there.  And I'm not

2   suggesting that because you made money that means he didn't

3   have the intent to defraud.  I am suggesting and we have a

4   right to show that they made money because that tracks the

5   investment from the first time it is mentioned to these people

6   all the way through the time that they redeem the money.  And

7   during this period, I think Mr. Shkreli intends for these

8   people to not lose their money and never intends for them to

9   lose their money and goes out of his way to seek to it that

10  they don't lose their money.  So the fact that they don't lose

11  their money may not be the cure-all for this alleged crime,

12  but it is relevant because it shows that he was acting in good

13  faith when he talked to Darren Blanton about Retrophin early

14  on, immediately after the Orex's trade failure, when Mr.

15  Blanton blessed it and said go ahead, make money on Retrophin,

16  it's okay, Martin.

17          THE COURT:  So, as I said, my rulings appears on

18  page 40 and continues to page 41 that Mr. Shkreli may not

19  argue that because some investors have profited from their

20  investment relationship that he lacked intent to defraud, and

21  what we are talking about is a continuum; correct?

22          MR. BRAFMAN:  Yes.

23          THE COURT:  So it starts with the solicitation of

24  investors in MSMB and continues up through the Retrophin

25  reverse merger and bringing that company public.

1          You are not being precluded from presenting evidence

2     that some of these investors profited.  My concern was that

3     you not equate profit with lack of intention to defraud

4     regarding the MSMB investors.  What is relevant is what is the

5     intent at the time of the alleged misrepresentation or

6     omission.

7          MR. BRAFMAN:  And all I am suggesting is you are not

8     going to be able to, most respectfully, make that legal

9     determination until you have heard all of the evidence.

10    That's why when we read this we were concerned that we would

11    be precluded from introducing the evidence.

12          THE COURT:  I did not order any preclusion of

13    evidence, sir.

14          MR. BRAFMAN:  Okay.

15          THE COURT:  I will hear from you further, if you

16    would like.  I'm sorry if I have caused you any concern.

17          MR. BRAFMAN:  No.

18          THE COURT:  I think that what you have read in this

19    decision is an analysis of what the parties' arguments were in

20    regard to this issue in the motions.  I tried to summarize

21    them and analyze the arguments in the context of what I

22    understand to be the law.  You obviously have more facts at

23    your disposal than I do having been engrossed in preparing for

24    trial over the years.  Certainly, some of the arguments and

25    theories that you have provided in your motion for

1  reconsideration were not fully flushed out in your prior

2  arguments or in your prior submissions.  So I understand them

3  a little bit better now.  But I'm not sure that the very

4  narrow ruling that I made regarding an equation of profit from

5  the Retrophin not equalling a negation of intent to defraud

6  with regard to the MSMB investments is --

7         MR. BRAFMAN:  Then I think we are fine.  I think,

8  Your Honor, what the Government's been petrified about, that

9  the way they write, is that there's going to be a jury

10  nullification perhaps because the jury will know that every

11  person who invested with Martin Shkreli hit a home run and

12  ultimately made a lot of money.  If that's their concern, I

13  don't really understand it.  Their witnesses are going to

14  testify and I assume that they are going to accuse Mr. Shkreli

15  of making certain misrepresentations.  I think in the

16  cross-examination of many of the principal Government

17  investor-types, you will, I think, see and the jury will see

18  that the statements made by Mr. Shkreli to these people that

19  may appear to be on their face incorrect are accurate

20  evaluations, so it is a question of how you get there.

21         THE COURT:  But you are not being precluded from

22  presenting that evidence.

23         MR. BRAFMAN:  Okay.  And I think if that is true, I

24  think at the end of the trial, I should be able, among the

25  arguments, among the arguments we will make at the end of the

1    trial is because it is continuum, because Martin Shkreli is

2    MSMB and Martin Shkreli is Retrophin, because it is a

3    continuing relationship with these investors, it may well be

4    the result of these ongoing discussions throughout that theory

5    is relevant as to whether or not Martin Shkreli was acting

6    with the requisite criminal intent to deceive these people.  I

7    think you will see more of that when the trial starts.

8            THE COURT:  Maybe I didn't use the word alleged or

9    charged often enough, but I thought that given the topic

10   sentence that I was discussing various arguments of the

11   parties that would be obvious.  There may be one or two

12   sentences where I didn't insert the word alleged or charged

13   before the discussion, but I certainly thought, given the

14   header on the paragraph, that that would have been clear.  But

15   one thing that the decision tried to emphasize is had

16   Retrophin been a total bust and had it declined in value, that

17   would not be evidence of Mr. Shkreli's intent at the beginning

18   of the solicitation of investors in MSMB.  In a statement that

19   I made that I think really seemed to trouble you that you

20   quoted multiple times about the ex ante knowledge, I stated

21   that I believe that Mr. Shkreli could not have been certain ex

22   ante as to what the price of Retrophin stock would be

23   ultimately.

24           MR. BRAFMAN:  But you don't have to be certain; you

25   have to be acting in good faith.  And his evaluation early on,

1   ex ante was it is going to be valued at $20 million, we have a

2   good faith basis as to how that number was arrived at.  When

3   you look at the evaluations that the investors got, it was

4   based on a $20 million evaluation and now it is a

5   billion-dollar company, which he discussed with many of the

6   Government witnesses throughout the relationship.  So I think,

7   Judge, most respectfully, if Retrophin was a fraud and if

8   Retrophin was a bust and it turned into nothing, I think the

9   Government would be arguing that Martin Shkreli gave people

10  stock that was worthless, it was a continuation of the fraud.

11  So they can't have it both ways.  They certainly would ask the

12  jury to consider the fact that I gave somebody stock that he

13  knew was worthless and it turned out to be worthless.  He was

14  negotiating with these people and many of them wanted this

15  stock and some of their, quote, victims still own many

16  hundreds of thousands of shares of Retrophin stock and are

17  laughing all the way to the bank.  This is a very strange

18  case, Judge.

19          THE COURT:  All right.  Let me hear from Ms.

20  Kasulis.

21          MS. KASULIS:  Thank you, Your Honor, and thank you

22  for your clarification with respect to your order.  The

23  Government's reading of your order was entirely consistent

24  with the way in which Your Honor described it today.

25          We also have the same take on Mr. Shkreli's letter,

1    that there is information that we are learning for the first

2    time, such as the MSMB and Retrophin entities were not

3    separate.  In fact, now we are just seeing MSMB, instead of

4    MSMB Healthcare and MSMB Capital, which are two distinct and

5    separate hedge funds and we intend to show that at trial.  I

6    don't think anyone is arguing that Mr. Shkreli can't, for

7    example, state that at the time he made the misrepresentations

8    with respect to Counts One through Six, if he believed at that

9    time that Retrophin would be successful that he can't argue

10   that, that that would not be a reflection of his perhaps good

11   faith intent.  And, so, I think that we are perhaps all on the

12   same page here, that we don't think he should be precluded

13   from arguing that if that is, in fact, what he now intends to

14   argue.  It is just the first time that we had seen it flushed

15   out this way.  And we don't believe that your order precludes

16   him from making that argument, it was just the way

17   after-the-fact issue that we were mostly concerned about.  So

18   we don't believe that Mr. Shkreli is precluded from arguing

19   what he is arguing in the letter according to the law.  And,

20   of course, we will have to see how the evidence comes in and

21   we will then determine whether we should, in fact, pursue a

22   no-ultimate-harm jury instruction depending on how the

23   evidence comes in and how it's developed.

24           So I think we are all on the same page as to what

25   Your Honor's prior ruling is.  We now have more information as

1    to what they intend to argue, so we believe they have a basis

2    of law to argue what is in this letter.

3              MR. BRAFMAN:  We have nothing further to say.

4              THE COURT:  I want you to go into this with a calm

5    state of mind.  I didn't mean to cause any undue concern last

6    evening, but the tone of the letter was one of great concern

7    and it came in late and we wanted to address it as soon as

8    possible.  As long as everybody is clear and we are ready to

9    proceed.

10             MR. BRAFMAN:  Yes.

11             THE COURT:  Good.  Thank you.

12             Tomorrow we are going to shift our jury selection up

13   to my courtroom because this is a courtroom that is used for

14   your naturalization ceremonies.  The way I am envisioning

15   tomorrow, and somebody tell me if you have a different view,

16   but I would be hoping to examine additional jurors from a new

17   group starting with, again, the introductions and the initial

18   questions.  When I get everybody to the same place, which was

19   up to the question regarding the six-week trial and undue

20   hardship, and we are able to figure out who stays and who

21   goes, then we can proceed with the remainder of the questions.

22   We might at that point bring all of the other jurors back in.

23   Tomorrow morning I intended to start with the additional --

24   how many, Ms. Jackson, are we bringing in?

25             THE COURTROOM DEPUTY:  100 were scheduled, but we

1   have requested 60.

2           THE COURT:  We are hoping to -- we have asked for

3   100, we are hoping to get 60, and that should be enough, I

4   hope.

5           MR. BRAFMAN:  Yes.

6           THE COURT:  Unless somebody has a different view.

7           MR. BRAFMAN:  No.

8           Can I ask a scheduling question?

9           THE COURT:  Yes.

10          MR. BRAFMAN:  Assuming that we finish with jury

11  selection some time late tomorrow morning, I would think, at

12  the earliest or hopefully at the latest, the Court then wants

13  to proceed immediately with your initial instructions and then

14  the Government's opening and then witnesses?

15          THE COURT:  Opening statements and if the defense

16  wishes to make an opening statement.

17          MR. BRAFMAN:  Yes, it does.

18          THE COURT:  How much time are we talking about on

19  the openings?

20          MS. KASULIS:  No more, for us, than a half hour,

21  Your Honor, probably a little less.

22          THE COURT:  Half an hour or a little less.

23          MR. BRAFMAN:  I think to be on the safe side.  I

24  think we are talking about an hour.

25          THE COURT:  That is fine.

300

1      MR. BRAFMAN:  We have been given a list of the

2  witnesses that the Government expects to call in the first

3  three days as per Your Honor's trial order, but if we could be

4  given a list of the order of the witnesses.  There is so much

5  stuff to bring every day.

6      MS. KASULIS:  Your Honor, we are happy to do that.

7  We can confer with counsel after this.  Just because of the

8  way in which jury selection has been progressing, we have

9  witnesses traveling, so we're juggling schedules right now.

10     MR. BRAFMAN:  The witnesses will be from among the

11 list that you gave us?

12     MS. KASULIS:  Absolutely.  Yes.

13     THE COURT:  If it is of any help, we have storage

14 space available that we can secure every evening so you don't

15 have to schlep everything back and forth every day.

16     MR. BRAFMAN:  Thank you, Judge.

17     THE COURT:  Is there anything else that you want to

18 bring to my attention?

19     MR. BRAFMAN:  No.

20     THE COURT:  Would you please kindly show up in my

21 usual courtroom tomorrow at 9:00 a.m.?

22     MR. BRAFMAN:  Yes, ma'am.

23     MS. KASULIS:  Yes.

24     THE COURT:  Thank you.  Have a good night, everyone.

25     (Matter adjourned to June 27, 2017 at 9:00 a.m.)