301

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - X

UNITED STATES OF AMERICA,       : 15-CR-637(KAM)
                                :
                                :
                                :
        -against-               : United States Courthouse
                                : Brooklyn, New York
                                :
                                :
                                : Tuesday, June 27, 2017
MARTIN SHKRELI,                 : 9:00 a.m.
                                :
            Defendant.          :

- - - - - - - - - - - - - X

TRANSCRIPT OF TRIAL
BEFORE THE HONORABLE KIYO A. MATSUMOTO
UNITED STATES DISTRICT COURT JUDGE, and a jury.

A P P E A R A N C E S:

For the Government:  BRIDGET M. ROHDE, ESQ.
                     Acting United States Attorney
                     Eastern District of New York
                         271 Cadman Plaza East
                         Brooklyn, New York 11201
                     BY:  JACQUELYN KASULIS, AUSA
                         ALIXANDRA E. SMITH, AUSA
                         KARTHIK SRINIVASAN, AUSA

For the Defendant:  BRAFMAN & ASSOCIATES, P.C.
                         767 Third Avenue
                         New York, New York 10017
                     BY:  BENJAMIN BRAFMAN, ESQ.
                         MARC AGNIFILO, ESQ.
                         ANDREA ZELLAN, ESQ.
                         JACOB KAPLAN, ESQ.

Court Reporter:  Michele D. Lucchese, RPR
                 Official Court Reporter
                 E-mail:  MLuccheseEDNY@gmail.com

Proceedings recorded by computerized stenography.  Transcript
produced by Computer-aided Transcription.

1          (In open court; prospective jurors not present.)

2          THE COURTROOM DEPUTY:  This is criminal cause for

3   jury selection and trial, United States versus Martin Shkreli,

4   15-CR-637.

5          May I have the appearances, please, of the parties.

6          MS. KASULIS:  Yes, your Honor.  Jacqueline Kasulis,

7   Alexandra Smith, Karthik Srinivasan, FBI Special Agents Sean

8   Sweeney and Michael Braconi and paralegal Gabriela Balbin.

9   Good morning.

10          THE COURT:  Good morning.

11          MR. BRAFMAN:  Benjamin Brafman, Marc Agnifilo,

12   Andrea Zellan, Jacob Kaplan for Mr. Shkreli, who is also

13   present.

14          THE COURT:  Good morning.  Please have a seat.

15          MR. BRAFMAN:  Your Honor, if I may, and the record

16   should reflect that are no prospective jurors in the

17   courtroom, I needed to raise this issue because I think I have

18   an ethical obligation to do it and complete the record.  As

19   the record will reflect, we objected to members of the press

20   pool being at the sidebar.  I think ultimately the Court

21   agreed with certain conditions that one member of the press

22   pool will always be present, and the concern we raised was,

23   when we raised this issue, was that the reporters would then

24   be commenting or writing about comments made by the jurors

25   during the voir dire which would, I think, unfortunately may

1    impact other jurors who claim not to be prejudiced.  I don't

2    know where some of this information came from.  Some came from

3    the record, some I think was wildly exaggerated, but today's

4    cover of the *New York Post* dated June 27, 2017 has a picture

5    of Mr. Shkreli and it is labeled jury of his jeers, J-E-E-R-S,

6    and the article goes on to say that 134 out of 134 jurors were

7    rejected because they were calling the defendant names or said

8    they couldn't be fair.  A, it is not accurate, but now I,

9    unfortunately, have at least 35, maybe 38 jurors who passed

10   the taint test who are already I think seated and ready for

11   more questioning by the Court and the *New York Times* has an

12   article at page B5, "Presumed Innocent?  Shkreli Target of

13   Name Calling At Jury Selection," and then they go on to list a

14   whole host of terrible things that prospective jurors who were

15   excused said about Mr. Shkreli.

16          Now, I know the Court instructs the jurors not to

17   read about this case, but when you are taking the subway or

18   you are just standing by a newsstand, when it is on the front

19   page with Mr. Shkreli's photograph, it is sort of impossible

20   not to notice it even if you want to abide by the Court's

21   instructions.  So I think that I have to do three things I am

22   advised by my legal research and my appellate expert; one is,

23   unfortunately, to move for a mistrial and ask the Court to

24   begin again with jury selection with new panel and obviously

25   go into more detail about the taint.  If the Court denies that

304

1   application, without waiving that issue, then I think we have

2   to start this morning with the Court's interviewing of the

3   people who are already in the box, if you will, or at some

4   point before they are sworn bring them back and ask them if

5   they have seen anything in today's papers, if they have read

6   anything and really press them on the bias issue, because I

7   think it is inconceivable to me that even a juror who wants to

8   scrupulously follow Your Honor's instructions are not going to

9   see this headline.  And if they read the article, while it is

10  patently inaccurate in terms of the number of jurors who said

11  they could be fair, and this suggests that all of those people

12  who said they could be fair don't exist.

13          THE COURT:  Well, Mr. Brafman, let me ask you this,

14  just in this case, short of sequester, total sequester, how do

15  we avoid having any juror serving see a headline.  It is

16  unfortunate.  I'm not condoning the reporting, but it is what

17  it is.  I don't know how we avoid having jurors see headlines.

18          MR. BRAFMAN:  That is not my concern.  I have tried

19  other cases that were covered by the press and I understand we

20  live in a big city.  My concern is this is the first time I

21  have ever seen where the headlines are about the jurors, what

22  they have said, what they have said at sidebar.  And I think

23  the remedy, if there is one, I'm not certain, first is to not

24  have a reporter at the second session of jury selection.  I

25  think the concern we raised has been borne out.  There is no

1    reason why prospective jurors, sworn juror need to know that

2    people they sat with all day yesterday essentially have

3    called the defendant a series of names.  It's got to impact on

4    them.  So I'm not looking to avoid publicity for the rest of

5    the case.  And I'm not asking for a sequestered jury, but we

6    do have a concern that the people who passed initially need to

7    be re-interviewed by Your Honor and you need to impress upon

8    them that this case has to be tried in the courtroom.  I would

9    respectfully request that Your Honor not to permit a pool

10   reporter to be present or we are going to have the same

11   problem tomorrow.

12          And I'm not certain that the First Amendment right

13   of the people to know juror bias is -- outweighs the

14   defendant's Sixth Amendment right to a fair trial.

15          THE COURT:  Well, if we go down that road, let's

16   hear from the press attorney because I don't want to do this

17   ex-parte.  They have a strong view that they have advanced.

18          I agree with you that the comments regarding the

19   jurors was something that was a possibility given that there

20   would be a pool reporter there.  Whether or not that reporting

21   of it had an impact on Mr. Shkreli's right to a fair trial is

22   a different question, and I do believe that further

23   examination of those jurors who were selected and set aside --

24   we have 47?

25          MR. BRAFMAN:  Yes.

1          THE COURT:  -- is warranted.  And we can talk about

2     what questions we might want to ask.  But, certainly, I would

3     ask them whether they saw any additional coverage, whether

4     that would have an affect on their ability to be fair and

5     impartial and see where we are.

6          Starting over would -- this could be an endless

7     cycle just given the fact that there is going to be ongoing

8     media coverage, and the longer it goes on and the more

9     coverage there is the more likely you are going to encounter

10    jurors who have seen some sort of a headline.

11         Right now we have a fair number who didn't raise

12    their hand.  They heard nothing about the case.

13         MR. BRAFMAN:  No, I understand that, but what

14    concerns me, and with that, I will let the record stand,

15    Judge.

16         THE COURT:  But you said you had a third point.

17         MR. BRAFMAN:  Yes.  The third point is that the

18    comments made by all of the jurors that caused them, A, to be

19    excused for bias and cause, and, B, are reported into the

20    press are comments very prejudicial to the defendant and have

21    absolutely nothing to do with the charges in this case.  And

22    the irony is that the juror bias is not the defendant is on

23    trial for something so heinous I could never be a juror; it,

24    you know, relates the the raising of Daraprim prices and they

25    report throughout the article, you know, people who said they

1   have family in members with AIDS who died as a result of this.

2   This is really terrible press and this is all, I think, as a

3   result of the press pool reporter with jurors, who were trying

4   to be candid, to their credit, to be excused, we now have the

5   balance of the jury pool exposed to the views that they made

6   at sidebar and the purpose of sidebar is so the rest of the

7   panel shouldn't be tainted.  So I think whatever the press

8   lawyer tells you about the good idea to have a pool reporter

9   present at voir dire, I think, Judge, this speaks for itself.

10           THE COURT:  Well, the concern, Mr. Brafman, that

11   your client legitimately expressed was that his right to a

12   fair trial and to have candid, honest, forthright disclosure

13   by potential jurors of any bias they may have --

14           MR. BRAFMAN:  Yes.

15           THE COURT:  -- and your concern that having a press

16   reporter would chill that ability of a juror was not borne out

17   in some ways and, in fact, I think the record should be clear

18   that you wanted to cut off juror's expressions of bias.

19           MR. BRAFMAN:  I did, and they reported that.  At

20   some point it became so bad that I was trying to stop them.

21           THE COURT:  Right, but the whole point of your

22   opposition to having the press present was the concern that

23   jurors would be chilled in press expressing bias, when, in

24   fact, they did express that; it seemed you didn't want to

25   explore that.  I am happy to do whatever we can to ensure that

1    Mr. Shkreli's ability to fairly and candidly and aggressively

2    examine potential jurors for bias is not thwarted and I don't

3    think we have done that.

4             Surprisingly, the press seems to not pose an

5    inhibition on jurors, but I think there was another request by

6    the Government sometime ago which seemed very difficult and

7    even now, as I think about that request, it seems realistic to

8    tell jurors not to look at or see anything in the press about

9    Mr. Shkreli, people we haven't even called into the

10   courthouse, just sort of a pool of folks who might be

11   available.  I agree with you, you can't ignore this.  It is

12   fair.  We need to examine all of the jurors to make sure

13   whatever they have seen is not going to impact on their

14   ability to treat both sides fairly and maintain an open mind.

15            MR. BRAFMAN:  I'm not going to belabor the issue.  I

16   want to clarify two points so the record is complete.  I think

17   if we go back to the transcript when we raised this objection,

18   there were two points that we made, and Your Honor is correct

19   that one of our concerns about having a press reporter there

20   would chill the jurors and that has not been borne out.  They

21   have been open and candid as to how much disdain they have for

22   Mr. Shkreli.

23            The second point we made, which has been borne out,

24   is that the reporters would be reporting on jurors' comments

25   and we raised concern that they would open their phones and

1   things would pop up.  And at the end of the day, when we left

2   court, everything popped up and it was all related to jurors'

3   comments at the sidebar.

4          I'm not faulting Your Honor.  You were right that

5   the jurors were candid and the pool reporter didn't inhibit

6   them, but the pool reporter I think has done more to undermine

7   Mr. Shkreli's ability to get a fair trial.  I'm not worried

8   about publicity in this case, but this publicity is not about

9   this case.  This publicity is about jurors in a sidebar

10  conversation, out of the presence of the pool, so we don't

11  taint them, which was, I think, the whole purpose, and are now

12  exposed to a jury of his "jeers."  I don't know where the *Post*

13  concludes that none of the jurors could be fair, but that's

14  what they said, which makes the people who we selected feel

15  like, you know, they don't count.  And the *Times* has a whole

16  litany of name calling that is in the record, but now jurors

17  who weren't at the sidebar have it at their breakfast table.

18          THE COURT:  When we get this new crew in of 60, we

19  will certainly examine what media they have seen.  That is one

20  of our questions.  They do come to sidebar, we probe and give

21  full opportunity to probing every potential juror on what they

22  have read.  One thing I thought we could do to alleviate some

23  of the issues that you are raising would be to first ask

24  jurors whether they would be available to sit for the six

25  weeks.  If the answer is no and we have heard some good

1    reasons why not, then they would get excused, and we wouldn't

2    get to the second excuse.  If they could be available for six

3    weeks and they have heard about the case, I invite you to

4    probe as much as possible into possible juror bias, exposure

5    to media that may or may not have influenced their views, and

6    I think that that should address your concerns.  But if you do

7    want to formally move to exclude the press, I think we should

8    have the press counsel here to be heard on that issue.

9         MR. BRAFMAN:  You know, Judge, if that's what you

10   want to do.

11        THE COURT:  Well, look, you are asking me to issue

12   an order that affects their interest, so I would be very

13   reluctant to do it ex-parte.

14        MR. BRAFMAN:  I don't -- far be it for me to want to

15   do anything to delay these proceedings because it is in no

16   one's best interest, but how long would it take for them to

17   get here?

18        THE COURT:  Well, I will ask my law clerk to give

19   the lawyer a call and tell her to get down here as soon as

20   possible.  In the meantime, let me hear from the Government.

21   I'm sure they don't have a position, but they might.  By that

22   I mean they may not have a position on whether the press is

23   present or not.  We all have to be concerned that this trial

24   proceed in a fair manner and that both sides's rights to a

25   fair trial are protected.  We had one juror who said they

311

1    hated the Government, anything, federal, state or local, did

2    not trust the Government.  We had another juror say I could

3    never convict and she was excused I think on consent of both

4    parties.

5              MR. BRAFMAN:  Yes.

6              THE COURT:  So we are trying our best in a

7    high-profile, high-publicity case.  Certainly nothing the

8    Government has done or you have done or the Court has done has

9    generated this press.  I will leave it at that.

10             MR. BRAFMAN:  We are not faulting either the

11   Government or the Court.

12             THE COURT:  But we are trying to deal with the hand

13   we are dealt here and to safeguard the fair trial rights of

14   Mr. Shkreli and the Government.

15             MR. BRAFMAN:  Thank you.

16             THE COURT:  Ms. Kasulis.

17             MS. KASULIS:  Just briefly, Your Honor.  We take the

18   same position as we have with respect to the presence of a

19   pool reporter.  We have no objection obviously to follow-up

20   questions regarding exposure to any media that has occurred in

21   the last day both with the jurors who have already sort of

22   passed the first couple rounds of questions and obviously with

23   respect to the new jurors we have no opposition to probing

24   with respect to what their exposure has been to the media

25   because we too want to make sure there is a fair and impartial

1    jury.  We have no objection to those sorts of probing

2    questions.  I think once we get past the jury pool situation,

3    then information that is in press, if there's such a headline,

4    would be what comes out in the course of trial.  That is

5    something, if the jurors inadvertently saw a front page of a

6    publication, they would be basically be exposed to the same

7    thing they have already heard.

8              THE COURT:  They have been instructed not to read

9    the report.  Hopefully, if they saw it, they would, even if

10   they could quickly read the headline, they would not probe

11   into the depth of the article.

12             MR. BRAFMAN:  The difference between this publicity

13   and what we normally have is that this is publicity which

14   reflects on the jury, not publicity that reflects just on the

15   case.  It's essentially calling the jury a jury of not peers

16   but jeers.  It is hard if you're a sitting juror to see that

17   and not be taken aback.

18             MS. KASULIS:  Again, the Government has no objection

19   to probing the jurors with respect to any exposure and, in

20   fact, has an ability to sit and to be fair and impartial, so

21   we have no objection to those questions.

22             THE COURT:  Just as a housekeeping matter, I believe

23   we have 47 in that category that we have set aside for further

24   examination.

25             MR. BRAFMAN:  I believe so.

1          THE COURT:  I'm hoping we have 60 right now down in

2    the jury room who can come up and resume jury selection.  In

3    case you have noticed, we have four rows of six in the jury

4    box and then we have approximately, I believe, eight jurors in

5    each of the rows behind.  I left that first row to my left

6    open.  It is fine for interns or whoever these gentlemen are

7    to be there, but I want to make sure if Mr. Shkreli's friends

8    and family are here they have an opportunity to sit.  And we

9    have reserved a bench in the back and the press pool is also

10   squeezed into those two benches on my left.

11         MR. BRAFMAN:  Thank you.

12         THE COURT:  Do we have anything else that we need to

13   address at this time?

14         MR. BRAFMAN:  No.  I think, so we don't waste time,

15   if you were to bring in the jurors and ask about the six

16   weeks, for those questions, I have no objection to you

17   discussing only at the sidebar with or without a pool

18   reporter, but I would wait for the Court to rule on the bias

19   voir dire until the press reporter's counsel arrives.

20         THE COURT:  Yes.  I am going to see if she can do it

21   by telephone.

22         MS. KASULIS:  Your Honor, the two interns who are

23   sitting in the front row, they are assigned to our trial team.

24   They will hopefully be present and assisting.  We view them

25   separate and apart from the rest of the interns in our office.

314

1           THE COURT:  Okay.

2           Are we ready to bring the 60 up then?

3           MS. KASULIS:  Yes, it is fine with the Government.

4           THE COURT:  May I see counsel at sidebar just for a

5    moment, please.

6           (Sidebar conference held.)

7           THE COURT:  What I was going to suggest regarding

8    Mr. Brafman's application is to have the jurors examined that

9    we selected among the 47 to see what effect, if any, those

10   reports had on the jurors and also to probe the new crew of

11   jurors to see if the press had any effect on their ability to

12   be fair and impartial.  By that I mean the recent press, not

13   what they have seen and heard in the past, because I think in

14   order for me to determine whether the presence of a pool

15   reporter has had an adverse impact on the reporting and their

16   reporting of jurors' comments has affected our jury pool in

17   any regard, I would need to explore that with them.  Would you

18   agree?

19          MR. BRAFMAN:  Yes.

20          THE COURT:  Until that happens, I don't believe that

21   it is appropriate for me to just decide that the press be

22   excluded from that.

23          MR. BRAFMAN:  That's fine.

24          THE COURT:  I just want to make sure that we have

25   procedures in place.

1          MR. BRAFMAN:  That's fine.  I think among the

2   questions, Your Honor, is I know you follow my instructions

3   and I ask you not to read anything about the case, can you

4   tell me honestly between yesterday and today any news accounts

5   that came to your attention?  If so, what were they and do you

6   believe you could still be fair?

7          MS. KASULIS:  Is the first of the preliminary

8   questions have you seen any press coverage in the last day and

9   if they say no, then that's that.  But if they say yes, we

10  have to do additional probing.

11         THE COURT:  We might be able to get the attorney on

12  by phone.  We can call her in now.  It is an open court.  You

13  don't have any objection to me having the conversation with

14  the lawyer now?

15         MR. BRAFMAN:  That's fine, as long as there aren't

16  any jurors in the courtroom.

17         THE COURT:  So what I will do is we are going to

18  call Ms. Bolger and get her on the phone and advise her that

19  you have made an application to preclude a press

20  representative at sidebar; correct?

21         MR. BRAFMAN:  Yes.

22         THE COURT:  All right.  Thank you.

23         (Telephone call initiated.)

24         THE COURT:  Hello, Ms. Bolger?

25         MS. BOLGER:  Yes.

316

1          THE COURT:  Good morning.

2          MS. BOLGER:  Good morning.

3          THE COURT:  This is Judge Matsumoto and I am here in

4   my courtroom in the case of United States of America versus

5   Martin Shkreli.  I wanted to advise you that there has been an

6   application by the defense to preclude a press reporter from

7   being present at sidebar.  I will have Mr. Brafman explain his

8   position.

9          The Government, it appears, takes no position but

10  does believe, as I do, that additional probing of jurors who

11  were selected yesterday be explored to make sure that any

12  media accounts of yesterday's jury selection would not have

13  been seen by them or, if seen, not affected them.

14         Let me ask you to hear from Mr. Brafman first, if

15  you don't mind.

16         MS. BOLGER:  Of course.

17         THE COURT:  Mr. Brafman.

18         MR. BRAFMAN:  Can you hear me?

19         THE COURT:  Can you hear Mr. Brafman?

20         MS. BOLGER:  Yes.  If you wouldn't mind keeping your

21  voice up at that volume.

22         MR. BRAFMAN:  Do you want me to approach the bench,

23  Judge, and speak from there?

24         THE COURT:  Sure.  One moment.

25         MS. BOLGER:  Sorry.

317

1          THE COURT:  That is all right.  No problem.

2          MR. BRAFMAN:  Can you hear me now?

3          MS. BOLGER:  Much better.

4          MR. BRAFMAN:  So this morning I made an application

5    and I will briefly restate it.  I think, as you will recall,

6    the defense objected to a pool reporter being present at

7    sidebar for voir dire specifically for two reasons, I think

8    the record will reflect; first that we were concerned that a

9    press reporter being there would inhibit the jurors from being

10   candid.  We were wrong on that, obviously, because nothing

11   inhibited these jurors, but we also raised the concern that

12   contemporaneous notes on what jurors would be saying would

13   then become a story in and of itself and in some way prejudice

14   the people remaining in the panel and also people who made the

15   cut.

16          I don't know what you have seen, but today's *New

17   York Post*, dated June 27, 2017 has Mr. Shkreli's face on the

18   cover and the headline is "Jury of His Jeers," J-E-E-R-S, and

19   the caption headline is "134 Jurors Out in Pharma Bro Trial,

20   They All Hate Him."

21          One, I think it is impossible for jurors not to see

22   this even if they follow the Court's instructions and unlike

23   publicity that arises in high-profile cases which affects the

24   charges in the trial, this publicity impacts directly on

25   jurors.  In addition to which, I think the story is inaccurate

1   because, by my count, we have more than 45 jurors who have

2   said that they could serve and don't hate Mr. Shkreli, or if

3   they do, they certainly haven't said that.

4           In addition, and I'm not going to go through all of

5   them because it will take a week, but the *New York Times* in

6   the business section, at Page B5, carries the headline

7   "Presumed Innocent?  Shkreli Target of Name Calling At Jury

8   Selection," and then the story, I think accurately, reflects

9   some of the bad things that jurors said about Mr. Shkreli when

10  they were at sidebar.  And, you know, our concern and why I

11  think the sidebar is used when a panel is in the process of

12  being selected is to avoid something a juror says about the

13  defendant from tainting the rest of the panel, where they

14  blurt out something that gets them excused for cause but doing

15  so in a manner that taints the remaining jurors.  I think it

16  is inconceivable for me that if we continue with the press

17  pool reporter at sidebar, it is inconceivable for me to

18  imagine yet another article tomorrow because I anticipate that

19  we will probably get some additional caustic comments.  So it

20  is our application to not have voir dire conducted in the

21  presence of a pool person.  I think the First Amendment needs

22  to, in this peculiar instance, take a back seat to Mr.

23  Shkreli's right to a fair trial, not to deny coverage of the

24  case.  And the irony is that all of the nasty things people

25  said about Mr. Shkreli for the most part related to things

1  that he's not being charged with, which would never come into

2  the court, and a motion in limine, I think the Court would

3  probably preclude, unless we open the door.

4       So, this whole panel that we have now selected I

5  think is irreparably tainted, although, the Court has denied

6  my request for a mistrial, we will proceed with inquiry

7  because, you know, I think it's the second best solution if it

8  is.  But I think I have made my record.  I hope you get my

9  point even if you don't agree with it.

10      MS. BOLGER:  I do, and I apologize for the

11  anticipated in coherence of my thoughts since this is a

12  surprise as a call.

13      THE COURT:  Ma'am, first of all, could you just

14  speak slowly and loudly.  We are going to try to get your

15  comments.  The court reporter needs to be able to hear your

16  comments.  Go ahead.

17      MS. BOLGER:  Certainly, I apologize.  So I think I

18  have a couple of sentiments on that.  The first is obviously

19  the newspapers articles that were published discussed already

20  public facts about Mr. Shkreli, right.  The only thing new is

21  people's reactions to them.  The actions of Mr. Shkreli that

22  caused this sort of emotional response are public and, indeed,

23  in many cases assiduously circulated by Mr. Shkreli himself.

24  So I'm not sure what the additional harm of a juror saying he

25  doesn't like Mr. Shkreli is when Mr. Shkreli has embraced the

320

1    statements pubically.

2         The negative thing is not that some jurors don't

3    like Mr. Shkreli; it is that Mr. Shkreli took positions people

4    don't like and that can't be fixed by voir dire.  That can't

5    be fixed by closure.  That can be fixed by aggressive

6    questioning at the voir dire about what people read in the

7    paper today.

8         I want to use as an example the *Skilling* case in the

9    United States Supreme Court.  The cite on that is 561 U.S. --

10   sorry, I need -- 561 U.S. -- the one I'm looking at is

11   unpublished.  It is 368.  In that case, actually, Skilling

12   sought reversal of his conviction on the grounds that he was

13   tried in Texas where there could be no impartial jury.  And

14   the Court, the United States Supreme Court explicitly held,

15   sure, everybody here in Texas knows about Mr. Skilling, but

16   they said, "Prominence does not necessarily produce prejudice

17   and juror impartiality, we have reiterated, does not require

18   ignorance."  And they then said that the solution was not

19   closure obviously but engaging in searching voir dire.  I know

20   that's slightly not the same, right, because we're talking

21   about closure here.  But that's the same reason that the First

22   Circuit didn't close the Tsarnaev prosecution, was the idea

23   that you could do a searching voir dire and find qualified

24   jurors, and I think you still have that option.

25        The other thing we didn't get to talk about last

```
 1   week but I am happy to talk about now is that part of the
 2   press enterprise decision we didn't talk about was that any
 3   restriction on press access or public access, right, because
 4   the press is the proxy for the public, that any restriction on
 5   the public access to a proceeding has to be effective in
 6   protecting the press interest, right.  So, here, Mr. Brafman
 7   is concerned about taint to the jury pool, and he is
 8   suggesting that somehow limiting the access of the public
 9   would being effective in limiting the taint.  Well, as we saw
10   yesterday and as we saw in the paper this morning, and I did
11   read them, Your Honor, I was obviously interested, no
12   restriction on what the -- on the access of the public to the
13   voir dire is going to get rid of taint on the jury pool.
14   Those people you talked to yesterday knew all about Mr.
15   Shkreli.  The point is, Your Honor, therefore, limiting press
16   access isn't going to stop people from having bad views of Mr.
17   Shkreli.
18              MR. BRAFMAN:  Can I --
19              MS. BOLGER:  The only thing it will stop people from
20   having is knowledge that other people have bad news of Mr.
21   Shkreli and I would submit that that knowledge that other
22   people doesn't like the guy is not a specific Constitutional
23   harm.
24              Two more quick points.  One, Your Honor, is that the
25   target is flipping a lot.  Last week it was juror candor.
```

322

1    This time it is bias in the jury pool.  The point is that

2    there has to be a real harm here, not one that changes from

3    Thursday to Tuesday.  I think that is a really problematic

4    aspect of that.

5              Your Honor, the press did exactly what you asked;

6    they didn't print personal details.  They didn't print names.

7    They didn't do anything to give juror identification.  They

8    protected the integrity of the progress.  The integrity of the

9    progress is best served by the presence of the public.

10   Frankly, Your Honor, the fact that you can't find a

11   sympathetic jury to the guy, apparently, is something the

12   public has a right to know.  It impacts whether this is a fair

13   trial or not, right.  To me, the process is working.  The

14   Skilling case would have us believe that more effective voir

15   dire, which I, like the prosecution, think is a very good

16   idea, a very searching voir dire, would fix the problem.

17             MR. BRAFMAN:  Can I respond?

18             THE COURT:  Ma'am, Mr. Brafman does want to respond.

19             MR. BRAFMAN:  I will respond briefly.

20             (Continued on next page.)

21

22

23

24

25

323

1          MR. BRAFMAN:  I'll respond briefly and I'll say this

2     as a gentleman, with all due respect.  I don't know think you

3     know what you're talking about.  We are not talking about

4     publicity.  You know, I've tried a lot of high profile cases

5     that were covered on a daily basis and the defendants were

6     acquitted.  That is not what we're talking about and the

7     Skilling case has nothing to do with where we are here.

8          What we have is publicity that attacks the jurors,

9     not publicity that attacks Mr. Shkreli.  I've never been in a

10    case where concurrent with jury selection, jurors who have

11    already been picked, if you will, or at least passed the cut

12    have been criticized openly by the media, front page, as if

13    they must be idiots because it says everybody hates Shkreli,

14    all 134 of the people who were questioned yesterday hate

15    Shkreli, and that's just not true.

16         I'm not talking about curtailing the coverage of

17    Mr. Shkreli's trial and I understand that Mr. Shkreli, God

18    bless him, has created part of the problem by being notorious

19    before he got here.  I accept that part of the responsibility.

20    What we're talking about is brief closure for a couple of

21    hours today so that we can pick the rest of this jury without

22    tomorrow's headlines calling those people anti-Shkreli people,

23    even those who said that they could be fair.

24         There is a question today not about closing the

25    courtroom for the trial and if they want to write about all of

324

1   the information concerning Mr. Shkreli, God bless him.  That

2   has not been our application and we have never shifted our

3   opinion.  If you look at the record we made, it was both juror

4   candor and also contemporaneous postings that we thought would

5   influence the jury in the course of jury selection.

6           So, none of the cases you cite have anything

7   whatsoever to do with the issue before us this morning.

8           Thank you.

9           THE COURT:  Did you have anything else, Ms. Bolger?

10          Just for the record, we have on the phone Kate

11  Bolger and can you just state who you represent for our

12  record, please?

13          MS. BOLGER:  Yes.  I represent the parties I

14  represented last week which I believe to be Bloomberg, the AP,

15  New York Times, the New York Post, the New York Daily News and

16  Reuters which are largely the pool reporters in the

17  courthouse.

18          MR. BRAFMAN:  Can I also mention just so the record

19  is complete, Mr. Agnifilio reminds me that I would say at

20  least 50 percent of the jurors yesterday were excused because

21  of vacation plans or work issues that had nothing to do with

22  juror bias.

23          So, you know, at the end of the day, we're not only

24  getting bad publicity, we're getting inaccurate publicity.

25          THE COURT:  Well, let me just be clear.

325

1            From what I understand the defense argument to be,

2      it is that the reports have cast really some doubt on those

3      jurors who we did find were at least qualified to continue

4      with voir dire by press reports that swept with a broad brush

5      and indicated that nobody could commit to being fair.  That is

6      not obviously accurate and it is not the Court's place

7      certainly to tell reporters what they can report.

8            So the record is clear, we examined 180 prospective

9      jurors.  Of those jurors, a vast majority were excused because

10     of vacations, medical issues or family concerns that would

11     preclude them from being able to serve and, yes, there were

12     certainly jurors who had strong views of Mr. Shkreli based on

13     past media reports and, in some cases, personal experience.

14     We had one juror who blogged with or whatever you call it,

15     exchanged on the internet some conversations.  But I think

16     that the concern is that those jurors who were selected should

17     not be characterized as being potentially unfair and when we

18     see headlines, despite my admonishments to jurors not to read

19     or to look at anything related to this case, the concern is

20     that we need to probe very carefully additional jurors who are

21     coming in today to make sure that they have not been

22     influenced in a negative way for or against either party.

23            In any event, Ms. Bolger, if you wanted to respond

24     to Mr. Brafman, I am happy to hear you.

25            MR. BRAFMAN:  Can I just read one paragraph so

1    Ms. Bolger will at least understand?

2              MS. BOLGER:  I actually did read the newspaper.

3              MR. BRAFMAN:  I know.  Excuse me.  I want the record

4    to reflect --

5              MS. BOLGER:  I know from the newspapers that most of

6    the jurors were dismissed because of vacation plans because I

7    read it, I read it in the newspaper.

8              MR. BRAFMAN:  Well, maybe you read this too then.  I

9    want to read this into the record, if you please.

10             "Forget about twelve angry men.  Prosecutors and

11   defense lawyers went through 134 potential jurors Monday and

12   couldn't find a single one to sit in judgment of reviled drug

13   price gouger Martin Shkreli, with many calling him a snake,

14   evil and a dick."  Pardon the language, but I'm reading from

15   the newspaper.

16             So I think, Judge, quite frankly, this panel,

17   wherever they are, in the room, in the jury room, has been

18   unfairly tainted and I think the only remedy is we start again

19   in a couple of weeks with different rules and the motion for

20   the mistrial is renewed.

21             I understand you have clients, Ms. Bolger.  I

22   respect that, but I have someone who's facing 20 years in

23   prison.

24             MS. BOLGER:  Your Honor, I obviously don't have any

25   opinion on the mistrial not knowing what's happening in the

1    room and won't opine on it.

2         I will say that Mr. Brafman's distinction obviously

3    with respect that I don't know anything about nothing

4    underscores one point.  This is about publicity.  That's the

5    word Mr. Brafman used.  This is about publicity and you have

6    to do more than say there's bad stuff out there to kick the

7    press out and I honestly think, Your Honor, that extensive

8    voir dire can fix the problem.

9         You can ask the jurors today if they read an article

10   in the New York Post.  That will fix the problem that

11   Mr. Brafman has identified.  The only difference between last

12   week and this week are the newspaper articles last night and

13   you can ask a juror:  Did you read those articles last night?

14   And you can expect them to respond to you with honesty and

15   candor because they're under oath and you're a federal judge

16   and that's pretty amazing and they're going to answer your

17   questions.  Then you will have the same goal that Mr. Brafman

18   asked you to do without burdening, and much more effectively,

19   by the way, without burdening the press corps or the public's

20   right of access.  Right?

21        The alternative is you shut everybody out and

22   everybody -- and some people in Brooklyn still don't like

23   Mr. Shkreli and some people in Brooklyn do like Mr. Shkreli.

24   Right?  Shutting everybody out doesn't obtain the goal that

25   Mr. Brafman wants.  Asking the question, Did you read the

1    paper, does.

2          MR. BRAFMAN:  I don't want to repeat myself, Judge.

3          THE COURT:  All right.  Well, what I am proposing to

4    do is to allow further examination of those jurors, the 47

5    that were set aside last evening who indicated that they could

6    be fair and impartial.

7          We will explore whether they were exposed to any

8    media reports despite my admonishment and I believe they would

9    have followed my directions not to read reports.  So, even if

10   they might have seen the headline which we don't know but

11   assuming they did see headlines, they were directed not to

12   read those reports.  The bottom line that we all need to

13   explore is whether or not Mr. Shkreli's right to a fair trial

14   would be impaired by a juror having a view, a negative view or

15   biased view against him as a result of what was reported

16   yesterday.

17         I think that the only way for me to make findings,

18   that is, whether or not the presence of a pool reporter and

19   reporting of what jurors in this District have said with

20   regard to any negative comments would be to have closed

21   questioning and to examine whether any exposure might have

22   influenced their ability to be fair and impartial.

23         I will certainly explore that with the next group of

24   60.  This is a group of 60 additional jurors who are waiting

25   and ready to begin voir dire, but I do believe that it would

1    be important, before I make findings, to find out from those

2    jurors themselves whether or not this recent press regarding

3    jurors had any adverse impact.

4            So, I will certainly consider your motion you made,

5    Mr. Brafman, respectfully denying your motion for a mistrial

6    and I am also denying a motion to start over fresh with new

7    jurors at this time.  I think that in order to, as I said,

8    find out what the impact has been, we would need to do

9    additional voir dire of jurors.

10           MR. BRAFMAN:  Yes, Your Honor.  Thank you.

11           THE COURT:  All right.  Thank you.

12           MR. BRAFMAN:  Thank you for hearing me.

13           THE COURT:  Thank you.

14           MS. BOLGER:  Thank you, Your Honor, for calling me.

15           THE COURT:  Thank you for being available.

16           Ma'am, is this the best number to reach you at, this

17   number we called you?

18           MS. BOLGER:  Yes.  This is my cell phone number.

19           THE COURT:  It won't be published but we will

20   certainly keep it.

21           MS. BOLGER:  Understood.  Thanks very much.

22           THE COURT:  All right.  Are we ready to bring the

23   jurors in?

24           MS. KASULIS:  Yes, Your Honor.

25           (Pause.)

330

1          THE COURT:  Good morning, ladies and gentlemen.  I

2     am Judge Kiyo Matsumoto.  I would like to introduce you to my

3     case manager, Ms. Sandra Jackson, and my law clerks, Vivek

4     Tata and Alanna Newman who are standing in the back.

5          Can everybody hear me?  If not, please raise your

6     hand.

7          I would like to ask you to please pay attention as I

8     go through these instructions and please do not speak with

9     anyone about this case, including your family members,

10    friends, and please don't let anyone approach you about this

11    case.

12         You are here today because we are about to select a

13    jury to hear a criminal case.  The trial is expected to begin

14    later today or tomorrow morning and is expected to last at the

15    outside up to six weeks.  We will not hold trial on Monday,

16    July 3rd or Tuesday, July 4th.  Fortunately, this particular

17    trial promises to be an interesting and educational experience

18    for those selected to serve as jurors.

19         This is a criminal case commenced by the United

20    States which is frequently referred to as "the Government."

21    Representing the United States are Assistant United States

22    Attorneys Jacquelyn Kasulis, Alixandra Smith and G. Karthik

23    Srinivasan.  Also seated at the government's table are

24    Special Agent Michael Braconi and Special Agent Sean Sweeney

25    from the Federal Bureau of Investigation and paralegal

331

1   specialist Gabriela Balbin.

2          The defendant in this case is Mr. Martin Shkreli.

3   He is represented by the attorneys Benjamin Brafman, Marc

4   Agnifilo, Andrea Zellan, Jacob Kaplan and Teny Geragos.  She

5   will be joining us later.

6          Now, the fact that this is a prosecution brought in

7   the name of the United States does not entitle the Government

8   to any greater consideration than any other party who appears

9   in court.  All parties, the Government and individuals, are

10  entitled to equal treatment in court and under the law.  They

11  are all entitled to your equal consideration.  No party is

12  entitled to sympathy or favor.

13         The purpose of jury selection is to ensure fairness

14  and impartiality to all parties in this case.  The way we try

15  to be sure a jury will be fair and impartial is by going

16  through a process called voir dire.  Basically, I will be

17  asking you questions both as a group and individually about

18  your background and your views on certain subjects.  It is not

19  my intention to invade your privacy, but simply try to ensure

20  that you can sit fairly and impartially in this particular

21  case.

22         At times, this will be tedious and I ask you please

23  to bear with me.

24         If in the course of this questioning process you

25  think that because of some experience you have had in your

1   life or because of something you have heard or read that you

2   could not be fair and impartial, that is, that you would be

3   inclined toward the Government or the defendant regardless of

4   what the evidence showed, it is your duty to tell me that.

5   That is because the Government and the defendant have a right

6   to a qualified impartial jury, one that will decide this case

7   without fear, favor, prejudice or passion, and will render a

8   verdict based solely on the evidence presented at the trial

9   and on the law as I will instruct you.

10           Now, quite apart from whether or not I must excuse

11  you, the lawyers for both sides would be entitled to a certain

12  number of peremptory challenges which means they may excuse a

13  certain number of jurors without giving any reason.  If you

14  are excused, no personal affront is intended.

15           It is important for all of you to listen carefully

16  to the questions that I must ask you because your answers to

17  my questions will be under oath.  I will now ask Ms. Jackson

18  to administer the oath to you.

19           Please raise your right hands.

20           (Prospective jurors sworn.)

21           THE COURT:  Thank you.

22           This criminal case comes before the Court by way of

23  the indictment.  The indictment is captioned United States of

24  America against Martin Shkreli.  The indictment is simply a

25  document that the Government uses to state charges against a

1    defendant.  It serves no other purpose and it is not evidence.

2           I am going to summarize the charges in the

3    indictment so you can understand what this case is about but,

4    again, remember, that any evidence pertaining to the charges

5    in the indictment will come before you only when we begin the

6    actual trial.

7           In summary, the indictment charges that the

8    defendant Martin Shkreli is charged with eight counts

9    including various acts of securities fraud, conspiracy to

10   commit securities fraud and conspiracy to commit wire fraud.

11          Counts One through Three charge Mr. Shkreli with

12   conspiracy to commit securities fraud, conspiracy to commit

13   wire fraud and a substantive count of securities fraud in

14   relation to an entity known as MSMB Capital.

15          In Counts Four through Six, Mr. Shkreli is charged

16   with conspiracy to commit securities fraud, conspiracy to

17   commit wire fraud and a substantive count of securities fraud

18   in relation to an entity known as MSMB Healthcare.

19          In Counts Seven and Eight, Mr. Shkreli is charged

20   with conspiracy to commit securities fraud and conspiracy to

21   commit wire fraud in relation to an entity known as Retrophin.

22          Now, Mr. Shkreli has pleaded not guilty to all of

23   the charges in the indictment and has thus raised issues of

24   fact to be determined by a jury.  Let me now advise you that

25   it is the Government that has the burden of proof in any

334

1    criminal case to establish a defendant's guilt beyond a

2    reasonable doubt as to each element of each charged offense.

3           The defendant is always presumed to be innocent.  In

4    that regard, the defendant has no burden to present any

5    evidence or to testify.  Because the United States

6    constitution protects a defendant's right to remain silent,

7    the law prohibits you from considering when you deliberate

8    that the defendant may not have testified.  This is a basic

9    principle of our criminal justice system.

10          The role of the jury in a criminal case is to hear

11   the evidence and decide the facts, that is, to decide what

12   happened.  The judge does not have any role to play in your

13   determination of the facts.  As the judge, my role is to

14   instruct you on the applicable law.  You will apply the facts

15   as you find them to the law as I instruct you and your

16   consideration and conclusion will be your verdict.  You must

17   apply the law as stated by me regardless of any opinion you

18   may have as to what the law is or should be.  If any of you

19   would have difficulty doing this, I must ask you to bring that

20   to my attention.

21          Now, what we are going to do is to start asking

22   questions of the jurors.  I would ask that if hands are raised

23   in relation to my questions, that we address that generally in

24   the courtroom or at side bar which is just an area to my right

25   where you can answer questions outside the presence of the

335

1    hearing of your fellow jurors.

2           It is important for all of you to listen carefully

3    to the questions that I will be asking and to make note of

4    your answer if your answers to any of my questions would be

5    "yes."  That is because if the jurors whose numbers are going

6    to be examined at this time will be excused and you may be

7    called upon to replace that juror.  If that happens, I will

8    not repeat all of the questions I have asked.  I will simply

9    ask you whether any of your answers to my questions thus far

10   would have been "yes."  It is very important, therefore, that

11   you all listen carefully to my questions and consistent with

12   the oath that you have taken, answer as honestly, truthfully,

13   conscientiously and candidly as you can.

14          When I ask you a question and your answer to my

15   question would be yes, please raise your hand.  For some

16   questions, I may ask you to answer from where you are seated.

17   For questions of a personal or private nature, I may ask you

18   if you are comfortable answering from your seat but more

19   likely, I will ask you to come to side bar and have you answer

20   those questions at side bar.

21          In addition, it is very important for you to be

22   candid about your ability to decide this case fairly and I may

23   ask you to come to side bar to answer those questions and to

24   make sure that you feel comfortable fully disclosing your

25   views about issues.  Your answers at side bar will not be

1    heard by the other jurors or other members in the courtroom.

2    Necessary court personnel will be present, but I will also

3    advise you that because judicial proceedings are open and

4    public, one press reporter will be present at side bar.

5            If I ask you to come to side bar to discuss your

6    answer further, I will not ask your name.  I will refer to you

7    only by number so that your answers will not be associated

8    with your name.  It is critical to the parties' right to a

9    fair trial that all jurors be candid and truthful in answering

10   my questions.  If there are any issues that you do not feel

11   comfortable discussing in the presence of a press reporter,

12   please let me know and I will ask the reporter to step back.

13           Is there anyone who either did not understand what I

14   have said or who cannot accept the principles of law that I

15   have explained thus far?  If so, please raise your hand.

16           Is there anyone who has heard anything about this

17   case before today?

18           Now, I must advise you that cases do receive media

19   attention from time to time and it is not wrong, if you have

20   been exposed to media attention, that you have formulated an

21   opinion.  The critical issue for all of us is whether your

22   opinion will interfere with your ability to be fair and

23   impartial to both sides and to decide this case based only on

24   the evidence presented at the trial and to apply the

25   instructions of law that I will provide.

337

1        Has anyone heard anything about this case and formed

2   an opinion about the case that will affect your ability to be

3   fair and impartial?

4        All right.  Before we do that, let me ask this

5   question instead because this might address something.

6        Knowing the trial is scheduled to begin immediately

7   after jury selection and last approximately six weeks, is

8   there anyone who would find it extremely burdensome to serve

9   on this jury?

10       I recognize -- wait a minute.  Please listen.  I

11  recognize that jury service will be inconvenient for some, if

12  not all of you, but you must recognize that your duties as

13  citizens of this country is to serve as jurors when called.

14  You must ask yourself when you raise your hand whether serving

15  on this jury will be so much more inconvenient or burdensome

16  for you than it would be for anyone else.  You should also ask

17  yourself what attitude you would want a juror to have if you

18  or someone you care deeply about were to be tried by a jury.

19  As you know, the right to a jury trial is a fundamental

20  constitutional right and you should bear in mind the many

21  sacrifices that were made throughout our country's history to

22  preserve and defend the right to a jury trial in our

23  constitution.

24       Now, let me ask you is there anyone who would find

25  jury service for six weeks to be unduly burdensome?  If so, I

Side Bar                    338

1    will hear from you at side bar.

2           All right.  Let's start with Juror Number 1.

3           (The following occurred at side bar; prospective

4    juror joins.)

5           THE COURT:  Yes, ma'am.

6           THE PROSPECTIVE JUROR:  I have a special program

7    that I have to be in July 10th to the 14th and I'm also an

8    economist so I'm kind of biased.

9           THE COURT:  Well, economist aren't per se biased.

10          THE PROSPECTIVE JUROR:  Well, in my --

11          THE COURT:  Economists serve on jury duty.

12          THE PROSPECTIVE JUROR:  I understand that but I

13   don't mean that.  I mean my personal opinions have already

14   been formed and I'm biased and what really concerns me is I

15   have to go through a program because I'm working for an

16   opportunity on July 10th through 14th.

17          THE COURT:  This is, as you said, not something that

18   you can change?

19          THE PROSPECTIVE JUROR:  Right.

20          THE COURT:  What kind of program is it?

21          THE PROSPECTIVE JUROR:  I have the paper if you

22   would like to see it.

23          THE COURT:  You can describe it for me.

24          THE PROSPECTIVE JUROR:  It's a teaching program for

25   financial literacy and I have to get certification so I will

Side Bar                              339

1    not have another opportunity to take certification.

2            THE COURT:  Okay.  Thank you.  Let me ask you to

3    step in back of this gentleman here for one moment.

4            (Prospective juror leaves side bar.)

5            MR. BRAFMAN:  No objection.

6            MS. KASULIS:  No objection.

7            (Prospective juror joins side bar.)

8            THE COURT:  Ma'am, we are going to excuse you and

9    ask you to go back to the jury room and tell them you have

10   been excused.  Okay?

11           THE PROSPECTIVE JUROR:  Thank you.

12           (Prospective juror excused.)

13           (In open court.)

14           THE COURT:  Juror Number 2, did you have your hand

15   up?  Come up, sir.

16           (Side bar continues; prospective juror joins.)

17           THE COURT:  Yes, sir.  You are Juror Number 2?

18           THE PROSPECTIVE JUROR:  Yes.

19           THE COURT:  What can you tell us?

20           THE PROSPECTIVE JUROR:  My age.  I'm 65 and I'm on

21   Zoloft.  I don't think I can handle the length and the anxiety

22   of it.  I should have brought my doctor's note.  I apologize.

23           THE COURT:  All right.  So, sitting on a jury would

24   make you feel anxious even with medication?

25           THE PROSPECTIVE JUROR:  Yes.

Side Bar                                        340

1          THE COURT:  So you would have a difficult time

2    concentrating?

3          THE PROSPECTIVE JUROR:  Especially for the length of

4    it.

5          THE COURT:  All right.  I will excuse you, sir.  Go

6    to the jury room down on the second floor and tell them you

7    have been excused.

8          THE PROSPECTIVE JUROR:  I've been excused?  Okay.

9    Thank you.

10          THE COURT:  Thank you.

11          (Prospective juror excused.)

12          (In open court.)

13          THE COURT:  Who else in the first row had their hand

14    up?  Juror Number 3, come on up.

15          (Side bar continues; prospective juror joins.)

16          THE COURT:  Yes, ma'am.  You are Juror Number 3.

17          THE PROSPECTIVE JUROR:  I'm a pre-school teacher and

18    I have an arrangement with the family of a child to be the

19    child's caregiver over the summer and it's been made way in

20    advance and they're depending on me for the care of the child.

21    So, I didn't, I didn't know that it would take this long and

22    then I have to back out and I'm stuck, no child care for the

23    child, and I don't want to do that with the family.

24          THE COURT:  When were you supposed to start the

25    child care?

```
                            Side Bar                      341
```

1           THE PROSPECTIVE JUROR:  July 17th.  So, in the event

2    the trial is not over by then --

3           THE COURT:  Is there a way to push back your start

4    date with this family for about three and a half weeks and

5    start in August?

6           THE PROSPECTIVE JUROR:  They have no one available.

7    You know, I don't know with short notice if they could find

8    someone to replace me and I really don't want to inconvenience

9    them.

10          THE COURT:  Right.

11          THE PROSPECTIVE JUROR:  And be inconsiderate to the

12   family.  I hate to stick them with that at the last minute and

13   not have backup.

14          THE COURT:  All right.  Let me ask you to step back

15   a moment.

16          (Prospective juror leaves side bar.)

17          MR. BRAFMAN:  No objection, Judge.

18          THE COURT:  Do you have any objection to excuse her?

19          MS. SMITH:  No.

20          (Prospective juror joins side bar.)

21          THE COURT:  Ma'am?

22          THE PROSPECTIVE JUROR:  Yes.

23          THE COURT:  We will excuse you.  Please go to the

24   second floor and tell them you've been excused.

25          (Prospective juror excused.)

1          (In open court.)

2          THE COURT:  Okay.  Did Juror Number 4 have his hand

3     up?  Okay.  Come up, sir.  I'm so sorry.

4          (Side bar continues; prospective juror joins.)

5          THE COURT:  Yes, sir.

6          THE PROSPECTIVE JUROR:  My main problem is the

7     travel and the other thing is despite having jury duty, I

8     still have to work every night when I go back home.  I still

9     have to do my work because I'm a tax associate so I have

10    clients.

11         THE COURT:  You're a tax associate?

12         THE PROSPECTIVE JUROR:  Yes.

13         THE COURT:  That you could work at home?

14         THE PROSPECTIVE JUROR:  Yes.

15         THE COURT:  How did you come to the courthouse

16    today?

17         THE PROSPECTIVE JUROR:  By car.

18         THE COURT:  And you live --

19         THE PROSPECTIVE JUROR:  -- in Brooklyn.

20         THE COURT:  So --

21         THE PROSPECTIVE JUROR:  I mean, it's not 100 percent

22    burdensome, but just the fact that I don't know how late I

23    would be working every night and then have to come in the

24    morning.

25         THE COURT:  Well, we would probably adjourn each day

Side Bar                        343

1   by 5:30.  Would that be a hardship for you, sir?

2           THE PROSPECTIVE JUROR:  No.  Like I said, it's just

3   the fact depending on how late I would have to work in the

4   night and then return in the morning.

5           THE COURT:  I see.  We would want you back --

6           THE PROSPECTIVE JUROR:  It's probably doable.

7           THE COURT:  And have you heard anything about this

8   case?

9           THE PROSPECTIVE JUROR:  I've seen -- I know the case

10  basically, the basics of the case.

11          THE COURT:  Well, it's fine if you've seen it, but

12  have you formulated any opinion or feelings?

13          THE PROSPECTIVE JUROR:  Not really.

14          THE COURT:  All right.  Do you believe that you

15  could decide this case fairly and impartially?

16          THE PROSPECTIVE JUROR:  Possibly.  I don't want to

17  say 100 percent.  I can't say 100 percent.

18          THE COURT:  Let me explore why you can't say

19  100 percent.  I need to hear a juror would be committed to

20  maintain an open and fair state of mind to both sides.  Could

21  you do that?

22          THE PROSPECTIVE JUROR:  I can do that.

23          THE COURT:  And would you commit to deciding this

24  case based only on the evidence in this case without regard to

25  anything you may have read about him in the media?

1           THE PROSPECTIVE JUROR:  It's possible I could, yes.

2           THE COURT:  Well, it's possible?  Would you be

3    committed to doing that?

4           THE PROSPECTIVE JUROR:  I could, yes.

5           THE COURT:  Or would you have to --

6           THE PROSPECTIVE JUROR:  No, could I do that.  I can

7    do that.

8           THE COURT:  All right.  Well, let me just ask you to

9    step back just a little bit.  Sorry.

10          (Prospective juror leaves side bar.)

11          MR. BRAFMAN:  Your Honor, could the Court inquire,

12   he said he's read about the basics of the case.  That would

13   suggest to me that he thinks what he read what this case is

14   about, just ask him --

15          THE COURT:  What he's read?

16          MR. BRAFMAN:  What he's read.

17          THE COURT:  Okay.  Sure.

18          (Prospective juror joins side bar.)

19          THE COURT:  Sir?

20          THE PROSPECTIVE JUROR:  Yes.

21          THE COURT:  Can you tell us what you have read or

22   heard about this case?

23          THE PROSPECTIVE JUROR:  Well, besides the Ponzi

24   scheme affect, you could say, I believe it's also the increase

25   in the prices for medications is part of the story.

Side Bar                    345

1              THE COURT:  Okay.  The increases --

2              THE PROSPECTIVE JUROR:  It's not part --

3              THE COURT:  -- of the medications, that's not

4    charged at all, but it's possible, it may possibly come up.

5              THE PROSPECTIVE JUROR:  Right.

6              THE COURT:  Would you, despite what you have read,

7    maintain a fair state of mind to both parties or commit to

8    doing that as you sit as a juror and listen to evidence?

9              THE PROSPECTIVE JUROR:  I mean, again, I can say

10   yes.  It won't be 100 percent because I hear everything, to be

11   honest.

12             THE COURT:  You should keep an open mind and have no

13   opinion until you have heard all the evidence and sent back to

14   deliberate.  Could you do that?

15             THE PROSPECTIVE JUROR:  I believe I could.

16             THE COURT:  Thank you.  Let me just ask you to step

17   back one more second.  I'm very sorry.

18             THE PROSPECTIVE JUROR:  Sure.

19             (Prospective juror leaves side bar.)

20             MR. BRAFMAN:  Your Honor, I don't want to invade the

21   juror's privacy to any degree that we don't need to, but the

22   record should reflect that he obviously has some physical

23   ailment.  God only knows how much medication he takes and what

24   they cost.  To the extent that this case may involve someone

25   who's charged with gouging pharmaceuticals, I would ask Your

Side Bar                        346

1   Honor to use your discretion to excuse him for cause or to

2   inquire further.

3            THE COURT:  All right.  Let me inquire.

4            (Prospective juror joins side bar.)

5            THE COURT:  Sir?  I'm so sorry.  I don't mean to

6   touch on a sensitive subject but one question is whether -- it

7   appears that you are using a walker.

8            THE PROSPECTIVE JUROR:  Yes.

9            THE COURT:  And with that, are you taking any

10  medication for any particular medical condition?

11           THE PROSPECTIVE JUROR:  I am.

12           THE COURT:  Does the medication affect your ability

13  to think clearly and to perceive accurately what is going on?

14           THE PROSPECTIVE JUROR:  Not that I know.

15           THE COURT:  Does it have any side effects?

16           THE PROSPECTIVE JUROR:  Besides what happens when my

17  body, muscle spasms and stuff like that.  Other than that, no.

18           THE COURT:  Would you require any accommodations in

19  terms of your seating or length?  We may ask you to sit for

20  several one-and-a-half-hour periods at a time.

21           THE PROSPECTIVE JUROR:  Just getting up.  I would

22  need to stretch.

23           THE COURT:  How often do you have to do that?

24           THE PROSPECTIVE JUROR:  Well, when I stretch, it

25  will happen when I'm sitting so I can't, feel like spasms.

Side Bar                    347

1          THE COURT:  So you have to --

2          THE PROSPECTIVE JUROR:  Not that I have to get up,

3   but you know how a cat scratches?  Similar to that.

4          THE COURT:  All right.

5          THE PROSPECTIVE JUROR:  It occurs just naturally.

6          THE COURT:  So the medication you're talking

7   maintains your clarity of mind?

8          THE PROSPECTIVE JUROR:  Yes.

9          THE COURT:  All right.  Thank you.  One more moment.

10          THE PROSPECTIVE JUROR:  Sure.

11          THE COURT:  I'm so sorry.

12          (Prospective juror leaves side bar.)

13          THE COURT:  I think that his physical ailments are

14   not impacted.

15          MR. BRAFMAN:  Respectfully, I'm just concerned that

16   the fact that he is on apparently a lot of medication would

17   make him unfair against Mr. Shkreli who is charged with

18   raising the price of pharmaceuticals.  I renew my challenge.

19          THE COURT:  I will ask him whether his medication --

20          MS. SMITH:  Your Honor, just for the record, I don't

21   think he said he was on lots of medication.

22          THE COURT:  No, he didn't say that.

23          MS. KASULIS:  Yes.

24          (Prospective juror joins side bar.)

25          THE COURT:  We should come to you.  I'm so sorry.

```
                          Side Bar                          348
```

1          THE PROSPECTIVE JUROR:  That's okay.

2          THE COURT:  How many medications are you taking

3    currently?

4          THE PROSPECTIVE JUROR:  Two orally and one, I guess,

5    it's cream that I have to rub on.

6          THE COURT:  Okay.  Would the fact that you are

7    taking medication and what you have read about Mr. Shkreli in

8    terms of pharmaceutical pricing, would that, the reading about

9    that issue, would that that have any effect on your ability to

10   be fair and impartial given that you are taking medications?

11         THE PROSPECTIVE JUROR:  I'm not going to lie to you.

12   It may be for the cost of medications, but if it doesn't come

13   up in the case, then it did not matter.

14         THE COURT:  What if it did come up in the case?

15         THE PROSPECTIVE JUROR:  Then it may.  I can't be

16   certain.

17         THE COURT:  So that might affect your ability to be

18   fair to Mr. Shkreli?

19         THE PROSPECTIVE JUROR:  It may because of the fact

20   that I have to pay for medication.

21         THE COURT:  So I am going to just speak one more

22   time with the lawyers.

23         THE PROSPECTIVE JUROR:  Sure.

24         THE COURT:  I'm so sorry.

25         THE PROSPECTIVE JUROR:  No problem.

```
                       Side Bar                        349
```

 1          (Prospective juror leaves side bar.)

 2          THE COURT:  I am going to grant his motion to excuse

 3     this juror.  Okay?

 4          MS. KASULIS:  Your Honor, but just to be clear, I

 5     think a lot of people are going to be on medication.  I don't

 6     think that that should be a basis to strike anybody because

 7     there may be some talk about a drug pricing increase, so I

 8     think if we're going to go down that, it's going to be

 9     problematic from our perspective.

10          MR. BRAFMAN:  I don't intend to address it with

11     every juror.  There are some obvious issues here.  That's the

12     only reason why I pressed it.

13          (Prospective juror joins side bar.)

14          THE COURT:  All right.  I am going to excuse you,

15     Juror Number 4, and ask that you go down to the jury room.

16     Thank you, sir.

17          (Continued on next page.)

18

19

20

21

22

23

24

25

```
                        Sidebar                          350
```

1    (Continuing)

2            THE COURT:  Did Juror No. 5 have his hand up?  Come

3    up, sir?

4            (Sidebar continues; prospective juror joins.)

5            THE COURT:  Sir, yes, you said that this six-week

6    trial may have an impact?

7            THE PROSPECTIVE JUROR:  Yes.  I have a job,

8    mortgage, and I'm also caring for my mother who is undergoing

9    treatment for breast cancer.

10           THE COURT:  So your job is?

11           THE PROSPECTIVE JUROR:  Mechanic for Children

12   Services.

13           THE COURT:  And you're there every --

14           THE PROSPECTIVE JUROR:  Every day.

15           THE COURT:  -- nine to five?

16           THE PROSPECTIVE JUROR:  7 to 3:30.

17           THE COURT:  Does your job pay you while on jury

18   duty?

19           THE PROSPECTIVE JUROR:  Yes.

20           THE COURT:  The care for your mother, when does that

21   start?

22           THE PROSPECTIVE JUROR:  I'm in the middle of it now.

23   She is going for radiation now.

24           THE COURT:  Is that --

25           THE PROSPECTIVE JUROR:  Every day.

```
                          Sidebar                          351
```

1          THE COURT:  It's ongoing now.

2          THE PROSPECTIVE JUROR:  Yes.

3          THE COURT:  I'll excuse you, sir.

4          THE PROSPECTIVE JUROR:  Thank you.

5          THE COURT:  Go to the second floor and tell them

6     you've been excused.

7              MR. BRAFMAN:  No objection.

8          THE COURT:  No objection?

9          MS. KASULIS:  No.

10         (Prospective juror excused.)

11         (In open court.)

12         THE COURT:  Juror 6, did you have your hand up?

13         (Sidebar continues; prospective juror joins.)

14         THE PROSPECTIVE JUROR:  I won't be here in six

15    weeks, I'll be visiting family.

16             And I work on a commission base at work.  I'm this

17    close to reaching my goal at work.  I'm, like, $5000 short by

18    the end of this month.  If I don't make it, I don't know what

19    to tell you.  My job is important to me.  I'm this close.

20             And in six weeks, I won't even be here.  I'm

21    visiting family overseas.

22         THE COURT:  You'll be away.

23         THE PROSPECTIVE JUROR:  Yes.  And I have to make my

24    goal at work.  I have a target.  Six weeks is long.

25         THE COURT:  We'll excuse you.

```
                          Sidebar                      352
```

1           THE PROSPECTIVE JUROR:  Sorry.

2           THE COURT:  Go to the second floor and tell them

3    you're excused.

4           (Prospective juror excused.)

5           THE COURT:  No objection to excusing Juror 6?

6           MR. BRAFMAN:  No objection.

7           MS. KASULIS:  No objection.

8           (In open court.)

9           THE COURT:  Juror No. 7, did you have your hand up?

10   Very good.  Thank you, sir.

11          How about Juror No. 8?  Come on up, ma'am.

12          (Sidebar continues; prospective juror joins.)

13          THE COURT:  Yes, ma'am.

14          THE PROSPECTIVE JUROR:  Four years ago, I had my

15   left total knee done with knee replacement.  Eight months ago,

16   I had this one done.  I cannot sit for long.  If I sit for

17   hour and a half, I cannot move.  A lot.  You can see it --

18          THE COURT:  We believe you, ma'am.

19          THE PROSPECTIVE JUROR:  I have the card, both knees

20   done.

21          THE COURT:  We wouldn't want you to be

22   uncomfortable.  So, you can't sit for more than an hour and a

23   half.

24          If we give ten-minute breaks every hour and a half,

25   would that be --

```
                          Sidebar                    353
```

1            THE PROSPECTIVE JUROR:  It's very tough.  My surgeon

2    said to me it will take a good year to feel comfortable.  I'm

3    bilateral now, with both knees.

4            THE COURT:  Good luck.  We'll excuse Juror No. 8.

5            THE PROSPECTIVE JUROR:  Thank you.

6            (Prospective juror excused.)

7            THE COURT:  I take it no objection.

8            MR. BRAFMAN:  No objection.

9            MS. KASULIS:  No objection.

10           (In open court.)

11           THE COURT:  Did Juror No. 9 have his hand up?  Come

12   up on, sir.

13           (Sidebar continues; prospective juror joins.)

14           THE COURT:  Yes, sir.

15           THE PROSPECTIVE JUROR:  I have medical appointments

16   when I initially had which I canceled and rescheduled.  But

17   the rescheduled appointments run into this extended timeline

18   that you have, which is longer than what's listed in the book.

19           Considering how long it took me to get these

20   appointments to begin with and the problem I had with

21   rescheduling, I'd rather not give them up again.

22           THE COURT:  I understand.  They're all sometime

23   between now and August?

24           THE PROSPECTIVE JUROR:  Yes, 4th.

25           THE COURT:  I'll excuse you, sir.  Please go to the

```
                        Sidebar                    354
```

 1    second floor.

 2              (Prospective juror excused.)

 3              THE COURT:  Any objection to excusing Juror No. 9.

 4              MS. KASULIS:  No, your Honor.

 5              But with respect to the medical appointments, can we

 6    request if there's some sort of medical necessity?  If

 7    everyone says I have a doctor's appointment, we're not going

 8    to be able to get a jury.

 9              THE COURT:  He had rescheduled with some effort.

10              MS. KASULIS:  That's why we didn't object to this

11    one.  But just in terms of the doctor's appointments, it would

12    be helpful.

13              THE COURT:  Okay.

14              MS. KASULIS:  Thank you, Judge.

15              (In open court.)

16              THE COURT:  Did Juror No. 10 have your hand up?

17    Come on up.

18              (Sidebar continues; prospective juror joins.)

19              THE COURT:  Hello, sir, come on up.  Yes.

20              THE PROSPECTIVE JUROR:  It's hard for me to come

21    because I work a lot, family, school.

22              THE COURT:  Where do you work?

23              THE PROSPECTIVE JUROR:  Madison Security.

24              THE COURT:  You're a security guard?

25              THE PROSPECTIVE JUROR:  Yes.

```
                        Sidebar                        355
```

1           THE COURT:  How often do you work there?

2           THE PROSPECTIVE JUROR:  I work five to six days.

3    And it's hard, I'm just getting off work.

4           THE COURT:  You're getting off work now?

5           THE PROSPECTIVE JUROR:  Yes.  I'm a really busy

6    type, busy person.

7           THE COURT:  You work at night?

8           THE PROSPECTIVE JUROR:  Yeah.

9           THE COURT:  And you said there's some other you're

10   in school also; did you say that?

11          THE PROSPECTIVE JUROR:  I have a kid I have to

12   sometimes pick up or take to school.

13          THE COURT:  How often do you -- school is almost

14   out, but how often do you take the child to school?

15          THE PROSPECTIVE JUROR:  Most of the time.

16          THE COURT:  The school is almost out.  Are they in

17   public school or private day care?

18          THE PROSPECTIVE JUROR:  Private school.

19          THE COURT:  Does that go all year-round or are they

20   out for summer?

21          THE PROSPECTIVE JUROR:  She is out for rest of the

22   summer now.

23          THE COURT:  So picking up from school is no longer

24   an issue at present time; is that correct?

25          THE PROSPECTIVE JUROR:  Yes.

```
                        Sidebar                        356
```

1            THE COURT:  So tell me your regular work hours,

2    please.

3            THE PROSPECTIVE JUROR:  I usually work 12 to 8.

4            THE COURT:  12 a.m. to 8 a.m. or 12 p.m. to 8 p.m.?

5            THE PROSPECTIVE JUROR:  12 to 8 a.m.  Sometimes I do

6    8 to 4.

7            THE COURT:  I see.  So you work through the night.

8            THE PROSPECTIVE JUROR:  Yeah.

9            THE COURT:  Let me just ask you to step back a few

10   feet over here, please.

11           (Prospective juror leaves sidebar.)

12           THE COURT:  He's going to be tired.

13           MR. BRAFMAN:  I think he's going to be sleeping.

14           MS. KASULIS:  No objection.

15           (Prospective juror joins sidebar.)

16           THE COURT:  You're excused.  Please return to the

17   second floor and tell them that you are excused.

18           THE PROSPECTIVE JUROR:  Second floor?

19           THE COURT:  Where you started on the second floor,

20   go back there and tell them you're excused.

21           THE PROSPECTIVE JUROR:  Thank you.

22           (Prospective juror excused.)

23           (In open court.)

24           THE COURT:  Any other -- okay, Juror No. 11.

25           (Sidebar continues; prospective juror joins.)

```
                      Sidebar                    357
```

1           THE COURT:  Hi.  How are you?  This is Juror No. 11.

2           THE PROSPECTIVE JUROR:  The only thing I have going

3     on is ten-day vacation planned in July.  That's all I have.

4           THE COURT:  Is it booked?

5           THE PROSPECTIVE JUROR:  Yes, July 12 through 21.

6           THE COURT:  That's too bad.

7           THE PROSPECTIVE JUROR:  I'm sorry.

8           THE COURT:  That's all right.  That can't be

9     changed?

10          THE PROSPECTIVE JUROR:  No.  This has been booked

11    from, like, two months ago.

12          THE COURT:  All right.  Thank you.  We will excuse

13    you, ma'am.  Go to the second floor and tell them you've been

14    excused.

15          (Prospective juror excused.)

16          THE COURT:  Juror No. 11 is excused.  Is there any

17    objection?

18          MR. BRAFMAN:  No, your Honor.

19          MS. KASULIS:  No objection.

20          THE COURT:  Maybe I should ask you first but can

21    we've --

22          MR. BRAFMAN:  If I would object, I'll let your Honor

23    know so that you don't excuse them before I get to say it.

24          THE COURT:  I would also ask that, yes, please stop

25    me if you have any disagreement.  But I think that given our

```
              LAM      OCR      RPR
```

```
               Sidebar                        358
```

1   history of jury selection when something like that comes up --

2          MR. BRAFMAN:  Understood.

3          THE COURT:  -- the parties seem to be in agreement.

4          (In open court.)

5          THE COURT:  Did Juror 12 have her hand up?  Come up,

6   please, ma'am.

7          (Sidebar continues; prospective juror joins.)

8          THE COURT:  Hello.  Come up so everyone can hear

9   you.

10         THE PROSPECTIVE JUROR:  I do not know about this

11  case, but I am a victim of credit card fraud.  Somebody use my

12  information, which make me go through a lot of changes.  They

13  use my credit, my Social Security, everything.  The difference

14  is the e-mail.  They apply on that, the card give the credit

15  of 15,000, and it came to me.  I called them.  So, I put what

16  I lost on my credit information.

17         And that make me not judge the case.

18         THE COURT:  It made you not feel comfortable?

19         THE PROSPECTIVE JUROR:  Yes.

20         THE COURT:  Are you telling us that because you were

21  a victim of credit card fraud, would you be able to put that

22  experience out of your mind and to listen carefully to the

23  evidence in this case?

24         THE PROSPECTIVE JUROR:  No, because it just happen.

25         THE COURT:  All right.  Thank you.  Let me just ask

```
                        Sidebar                        359
```

1     you to step back for one moment.

2              (Prospective juror leaves sidebar.)

3              MR. BRAFMAN:  No objection.

4              MS. KASULIS:  No objection.

5              (Prospective juror joins sidebar.)

6              THE COURT:  Ma'am, we will excuse you.  You should

7     go back to the second floor and tell them you've been excused.

8              (Prospective juror excused.)

9              THE COURT:  Juror 12 is excused on consent.

10             (In open court.)

11             THE COURT:  No. 13, come on up, ma'am.

12             (Sidebar continues; prospective juror joins.)

13             THE COURT:  Hi.  Juror No. 13, what can you tell us?

14             THE PROSPECTIVE JUROR:  I can tell you that I'm

15    going on vacation next week.  I'm flying.  I have three jobs.

16             On July 17, that Monday morning, I'm performing as

17    part of a dance company.  And we only have one more rehearsal,

18    so I don't have time to hire, cavity, and then teach that

19    part.

20             And my other job is I run dance camps during the

21    summer and I have five weeks of dance camps starting July 24.

22    That would be a financial burden that I would miss out on that

23    I'm paying for my wedding with.

24             THE COURT:  Let me ask you to step back for one

25    moment.

```
                        Sidebar                      360
```

1          (Prospective juror leaves sidebar.)

2          MR. BRAFMAN:  No objection.

3          MS. KASULIS:  No objection.

4          THE COURT:  We will excuse Juror 13 without

5     objection.

6          (Prospective juror joins sidebar.)

7          THE COURT:  You're excused.  You can step down to

8     the second floor and tell them you've been excused.

9          (Prospective juror excused.)

10         THE COURT:  Juror No. 14?  Okay.

11         Juror 15, come up, please.

12         (Sidebar continues; prospective juror joins.)

13         THE COURT:  This is Juror No. 15.  Do you have some

14     conflicts with your scheduling?

15         THE PROSPECTIVE JUROR:  I'll be out of the country

16     from the 27th of July until the 22nd of August, in Italy, with

17     my family.  My husband's family is from Italy and we've

18     arranged for my daughter to study there.  We're picking her

19     up.  And I have to send my son to study abroad in Argentina

20     from there at the end of that trip.

21         THE COURT:  So starting --

22         THE PROSPECTIVE JUROR:  We have family obligations

23     in Italy as well because my husband is from there.

24         THE COURT:  So starting July 22 you'll be out of the

25     country?

```
                        Sidebar                    361
```

1            THE PROSPECTIVE JUROR:  July 27 to August 22.

2            THE COURT:  I wouldn't want to promise that we could

3    finish by that date, so we will excuse you, all right?  Please

4    go to the second floor, tell them you've been excused.

5            THE PROSPECTIVE JUROR:  Thank you very much.

6            (Prospective juror excused.)

7            THE COURT:  I take it no objections to excusing

8    Juror 15.

9            MS. KASULIS:  No objection.

10           MR. BRAFMAN:  No, your Honor.

11           (In open court.)

12           THE COURT:  Juror 16, come on up.

13           (Sidebar continues; prospective juror joins.)

14           THE PROSPECTIVE JUROR:  Good morning.

15           THE COURT:  This is Juror No. 16.

16           THE PROSPECTIVE JUROR:  Is the press here?

17           THE COURT:  Yes.  Do you need to speak to us

18   without --

19           THE PROSPECTIVE JUROR:  Yes.

20           THE COURT:  Can you give us the nature?  Is it a

21   private issue?

22           THE PROSPECTIVE JUROR:  I just don't want them

23   around.

24           THE COURT:  All right.  She's stepped aside.

25           THE PROSPECTIVE JUROR:  I'm 67, I got mechanical

```
                      Sidebar                        362
```

1    valve, I have three false ribs.  I already canceled two

2    doctor's appointments this week.  I can't afford six weeks.

3            And to be quite honest with you, and this is the

4    truth --

5            THE COURT:  We want the truth.

6            THE PROSPECTIVE JUROR:  -- for me to sit here for

7    six weeks and all I see in front of me is $40 that I'm making?

8    This case is too big for me to be making $40.

9            But I have the doctor's appointments that I have.

10            THE COURT:  Are you otherwise working, sir?

11            THE PROSPECTIVE JUROR:  I'm retired.

12            THE COURT:  We'll given your medical issues that

13    you've brought to our attention, we'll excuse you.  Please go

14    to the second floor and tell them you're excused.

15            THE PROSPECTIVE JUROR:  Thank you very much.

16            (Prospective juror excused.)

17            THE COURT:  No objection, correct?

18            MS. KASULIS:  No.

19            MR. BRAFMAN:  No.

20            THE COURT:  No. 16 is excused.

21            (In open court.)

22            THE COURT:  Juror 17, come on up, sir.

23            (Sidebar continues; prospective juror joins.)

24            THE COURT:  Juror 17, yes, sir?

25            THE PROSPECTIVE JUROR:  I have teaching obligations.

```
                        Sidebar                      363
```

1    I'm fine this week and next week.  But when I put in for my

2    postponement, I was given times that I could not serve.  I

3    would love to serve, but I can't.

4              THE COURT:  You start teaching again in the summer?

5              THE PROSPECTIVE JUROR:  No.  This is a trial

6    advocacy program for Corp. Counsel attorneys at Fordham Law

7    School twice a year.  I'm teaching three days on the week of

8    the 10th and two days the following week.

9              THE COURT:  All right.  And that's during the day,

10   right?

11             THE PROSPECTIVE JUROR:  That's correct.

12             THE COURT:  All right, sir, I think we'll excuse you

13   under those circumstances.

14             Juror No. 17 is excused.

15             You can go to the second floor and tell them you've

16   been excused.

17             (Prospective juror excused.)

18             THE COURT:  No objections, correct?

19             MR. BRAFMAN:  No objections.

20             (In open court.)

21             THE COURT:  Juror No. 18, come on up, sir.

22             (Sidebar continues; prospective juror joins.)

23             THE PROSPECTIVE JUROR:  Basically, I have two

24   reasons.  First reason, which is obviously most important, my

25   father just went into the hospital yesterday down in Florida.

```
                        Sidebar                    364
```

1  And my mother has dementia.  So, I have to go down and take

2  care of them.  To commit to four to six weeks is just going to

3  be too many for my family.

4          That's the biggest part.  I don't even want to go

5  into the other part.

6          THE COURT:  I take it you have no other -- you want

7  to be there.

8          THE PROSPECTIVE JUROR:  I do have a brother, but

9  it's too difficult for all of us to manage the estate at this

10  point.

11          THE COURT:  All right, sir.  We will ask you to step

12  back for one second.

13          (Prospective juror leaves sidebar.)

14          MR. BRAFMAN:  No objection.

15          MS. KASULIS:  No objection.

16          (Prospective juror joins sidebar.)

17          THE COURT:  Juror No. 18, we'll excuse you.  Go back

18  to the second floor and tell them you've been excused.  Thank

19  you.

20          (Prospective juror excused.)

21          (In open court.)

22          THE COURT:  Anyone else have their hand up on the

23  last row?

24          You are juror number 20.  Come on up, ma'am.

25          (Sidebar continues; prospective juror joins.)

```
                        Sidebar                        365
```

1            THE COURT:  Hi.  Is this you, No. 20?

2            THE PROSPECTIVE JUROR:  That's me.

3            My issue is because I'm from the medical field, I

4    think I will be biased if it's concerning about medication,

5    especially if the patient doesn't receive medication and they

6    are not covered by insurance.  We are so frustrated by that.

7    Probably I would be bias for this kind of issue.

8            THE COURT:  Well, I appreciate you're being candid

9    with us about that.  Let me just remind you again, I've read

10   the summary of the charges.  The issue of medication pricing

11   is not charged in this case.  It may come up.

12           Would you be able to commit to listening with an

13   open mind and an unbiased state of mind to both sides and not

14   make any decisions about the evidence until you're called upon

15   to deliberate?

16           And would you be able to set aside your experience

17   in the medical field and listen and decide this case based

18   only on the evidence at trial?

19           THE PROSPECTIVE JUROR:  But it's long.

20           THE COURT:  It's six weeks.

21           THE PROSPECTIVE JUROR:  I'm leaving in three weeks.

22           THE COURT:  You're leaving in three weeks.  Where

23   are you going?

24           THE PROSPECTIVE JUROR:  I'm going to the

25   Philippines.

```
                          Sidebar                          366

 1          THE COURT:  We will excuse you under those

 2   circumstances.  Go back to the second floor and tell them that

 3   you're excused.

 4          (Prospective juror excused.)

 5          (In open court.)

 6          THE COURT:  Juror 21, no?  Thank you, ma'am.

 7          All right.  Juror 22.

 8          (Sidebar continues; prospective juror joins.)

 9          THE COURT:  How are you?

10          THE PROSPECTIVE JUROR:  I'm fine, thank you.

11          I work -- I get paid by the hour.  And if I am on

12   this trial, they will have no obligation to hold my job for

13   me.

14          THE COURT:  I see.  What kind of work do you do?

15          THE PROSPECTIVE JUROR:  I'm a draftsperson for

16   movies and television.

17          THE COURT:  I see.

18          THE PROSPECTIVE JUROR:  So, they would have to hire

19   somebody else.  I managed to get this week off because it's

20   slow, but it picks back up after the holiday.

21          THE COURT:  All right.  Let me ask you to step back

22   for a moment.

23          (Prospective juror leaves sidebar.)

24          THE COURT:  No objection?

25          MR. BRAFMAN:  No.
```

```
                         Sidebar                         367
```

1          MS. KASULIS:  No objection.

2          (Prospective juror joins sidebar.)

3          THE COURT:  Ma'am, you're excused.  Please go to the

4     second floor jury room and let them know you've been excused.

5          THE PROSPECTIVE JUROR:  Thank you very much.

6          (Prospective juror excused.)

7          (In open court.)

8          THE COURT:  Juror 23, please come up.

9          (Sidebar continues; prospective juror joins.)

10         THE COURT:  Yes, ma'am, you're Juror 23?

11         THE PROSPECTIVE JUROR:  I work for a very, very

12    small organization.  We have a major event planned for July 20

13    and 21, about three weeks from now.  I've been in charge of

14    this event from the beginning, seven or eight months of my

15    life.  I truly do not believe it can be successful without me

16    there.

17         I have a letter from my employer, if you'll

18    entertain it.

19         THE COURT:  I believe you, you're under oath.  So,

20    you have to be there to plan for the event on July 20?

21         THE PROSPECTIVE JUROR:  Yes, and 21st.

22         THE COURT:  Step back one second.

23         (Prospective juror leaves sidebar.)

24         MR. BRAFMAN:  No objection.

25         MS. KASULIS:  No objection.

```
                          Sidebar                      368
```

1           (Prospective juror joins sidebar.)

2           THE COURT:  We'll excuse you.  Please go to the

3    second floor and tell them you've been excused.

4           THE PROSPECTIVE JUROR:  Thank you.

5           (Prospective juror excused.)

6           (In open court.)

7           THE COURT:  No. 24, did you have your hand up?  All

8    right.  Very good.

9           Juror No. 25, come on up, sir.

10          (Prospective juror joins sidebar.)

11          THE COURT:  Hello.

12          THE PROSPECTIVE JUROR:  I have a ten-year-old

13   daughter.  Me and my wife, we're here, we don't have no

14   family.  I work in medical office.  My wife has two jobs.

15   Yesterday I was here, she had to take off.

16          So, my daughter finishes school Wednesday, starts

17   summer camp the 24th of July.  So, my job is a lot more

18   flexible, I can take her with me at work.  My wife's job

19   doesn't permit that.

20          So, we have no babysitter.  It's impossible.

21          THE COURT:  Okay.  All right, sir.  We'll excuse

22   you.  Go to the second floor where you checked in.

23          Juror No. 25 is excused with no objections from the

24   parties.  Thank you.

25          (Prospective juror excused.)

```
                          Sidebar                      369
```

1          (In open court.)

2          THE COURT:  Juror 26, did you have your hand up?

3          THE PROSPECTIVE JUROR:  I just have a question.

4          THE COURT:  Come on up.

5          (Sidebar continues; prospective juror joins.)

6          THE PROSPECTIVE JUROR:  I have a full-time job, so

7    my team is only me and my manager.  But I want to know if I

8    need to, like, come in every day.

9          THE COURT:  Yes, every day for the next six weeks.

10         THE PROSPECTIVE JUROR:  Okay.  So, that may be a

11   little bit hard for me because my manager now is on vacation.

12         But, like, how long will be the day?

13         THE COURT:  We will ask you to come and be ready to

14   start the jury, sitting in the jury box, at 9:30 every

15   morning -- so arrive by 9:15 at the very latest -- and we'll

16   probably sit until 5 or 5:30.

17         Would that be acceptable to you?

18         THE PROSPECTIVE JUROR:  I'm not sure because I

19   didn't ask my manager or my management team.  I know it's

20   complication, so I'm not sure.

21         THE COURT:  Well, we can make a phone available to

22   you and you can call your office and ask.  Would you want to

23   do that?

24         THE PROSPECTIVE JUROR:  Yes, but I have to get my

25   phone back.

```
                         Sidebar                         370
```

1             THE COURT:  We can take you to a phone and have you

2    use it.  Do you have the phone number with you?

3             THE PROSPECTIVE JUROR:  I can use my work e-mail.

4             THE COURT:  Why don't you get your phone, step out

5    by the windows, and just make a call and come back and let us

6    know what your boss says.

7             THE PROSPECTIVE JUROR:  All right.

8             THE COURT:  Juror No. 26 will report back.

9             THE PROSPECTIVE JUROR:  If they say no --

10            THE COURT:  Come back and tell us it's no.

11            THE PROSPECTIVE JUROR:  Thank you.

12            (Prospective juror leaves sidebar.)

13            THE COURT:  We have to follow up with some of the

14   jurors from yesterday.

15            (In open court.)

16            THE COURT:  Juror 27.

17            (Sidebar continues; prospective juror joins.)

18            THE COURT:  Good morning.

19            THE PROSPECTIVE JUROR:  I have a vacation planned

20   next week and I'm also self-employed.  So, whatever your

21   decision...

22            THE COURT:  How long is your vacation?

23            THE PROSPECTIVE JUROR:  One week, to Canada.

24            THE COURT:  We are going to be sitting next week at

25   the trial.

```
                         Sidebar                      371
```

1          THE PROSPECTIVE JUROR:  My schedule is leave here

2     Wednesday, I'm driving there, and I'll be back I think it's

3     Tuesday, Monday.

4          THE COURT:  Is there any flexibility?  Can you

5     postpone your vacation until late August?

6          THE PROSPECTIVE JUROR:  I probably can -- well, I

7     can probably try to work around it if I have to.

8          THE COURT:  Is this a family gathering?

9          THE PROSPECTIVE JUROR:  It has a little bit to the

10    do with it.  But if I have to, I'd love to hear the case.

11         THE COURT:  You said you're self-employed.  Will you

12    be able to continue working at your job after hours or on

13    weekends?

14         THE PROSPECTIVE JUROR:  Yes and no.  In some case

15    weekends, yes; in some, we work with others.

16         THE COURT:  What kind of work do you do?

17         THE PROSPECTIVE JUROR:  Handyman.

18         THE COURT:  So, conceivably, you could do your job

19    in the evening or on weekend.

20         THE PROSPECTIVE JUROR:  If I have to.

21         THE COURT:  All right.  Well, we would like you to

22    be able to serve, sir, but let me ask you this:  Have you read

23    anything in the media about this case that would affect your

24    ability to be fair?

25         THE PROSPECTIVE JUROR:  Only what I saw in the paper

```
                        Sidebar                       372
```

1   today.

2            THE COURT:  You read today's paper?  Can you tell me

3   what you saw?

4            THE PROSPECTIVE JUROR:  I read a little bit about

5   the case based on yesterday's jury.

6            THE COURT:  And is there anything that you read

7   about the jury selection that would affect your ability to be

8   fair and impartial to both sides?

9            THE PROSPECTIVE JUROR:  It has nothing.  I know

10  nothing about this case.

11           THE COURT:  The question is whether reading about

12  what other potential jurors might have said, would that have

13  any effect on you?

14           THE PROSPECTIVE JUROR:  No.

15           THE COURT:  All right.  Let me ask you to just step

16  back for one minute, sir.

17           (Prospective juror leaves sidebar.)

18           THE COURT:  If he can serve, if he's able to serve,

19  it seems that he might be available.

20           MR. BRAFMAN:  Okay.

21           THE COURT:  If he can adjust his vacation.

22           (Prospective juror joins sidebar.)

23           THE COURT:  Sir, we would like not to dismiss you or

24  excuse you.  If you can, in fact, change your family vacation

25  and work around the clients' schedule when you do your job, we

```
                    Sidebar                        373
```

1   would appreciate it.

2          Could you do that for six weeks, sir?

3          THE PROSPECTIVE JUROR:  I will try to work on it.

4          THE COURT:  Once we select you, you need to be here.

5          THE PROSPECTIVE JUROR:  Once selected, I have no

6   choice.

7          THE COURT:  So, now is your chance to tell us if

8   there's any reason why you would not be able to serve.

9          THE PROSPECTIVE JUROR:  I'll stay.

10          THE COURT:  All right.  Thank you, sir.  Please have

11   a seat.

12          (Prospective juror leaves sidebar.)

13          (In open court.)

14          THE COURT:  Juror 28, did you have your hand up,

15   sir?  No.

16          How about Juror 29?

17          (Sidebar continues; prospective juror joins.)

18          THE COURT:  Hi, sir.  How are you?

19          THE PROSPECTIVE JUROR:  Good.

20          If it was two or three weeks, I'd be good.  But on I

21   believe the 17th, the week of the 17th, my mom is 81 and my

22   sister usually watches her.  And she's not going to be around

23   and I need to be.

24          And on the 22nd, I have a trip to Japan that I've

25   spend a lot of money on.

```
                       Sidebar                      374
```

1          THE COURT:  I wish I were going.  All right.

2          THE PROSPECTIVE JUROR:  That's all I've got.  But if

3    it was after or before that...

4          THE COURT:  We will Excuse Juror No. 29.

5          THE PROSPECTIVE JUROR:  Thank you very much.

6          THE COURT:  Thank you.  Have a nice trip.

7          THE PROSPECTIVE JUROR:  You too.  Thank you.

8          (Prospective juror excused.)

9          (In open court.)

10         THE COURT:  Did Juror 30 have his hand up?  No?  All

11   right, good.

12         Juror 31, did you have your hand up?  Come on up.

13         (Sidebar continues; prospective juror joins.)

14         THE COURT:  You are Juror No. 31.

15         THE PROSPECTIVE JUROR:  Yes ma'am.

16         So, I'm currently taking an online class right now

17   but all the exams are in person.  So, I have upcoming exams.

18   I also have a vacation I believe the end of July.  I think

19   that's within the six weeks.

20         THE COURT:  Yes, it is.

21         I take it there would be no objection among anyone

22   to excuse you, given your schedule, correct?

23         MR. BRAFMAN:  That's correct.

24         MS. KASULIS:  No objection.

25         THE COURT:  Thank you, ma'am.  We will excuse Juror

```
                          Sidebar                          375
```

1   31.

2              (Prospective juror excused.)

3              (In open court.)

4              THE COURT:  Yes, sir, come up.  This is Juror 27.

5              (Sidebar continues; prospective juror joins.)

6              THE PROSPECTIVE JUROR:  Can I have excuse to make a

7    phone call and talk to my wife?

8              THE COURT:  Yes.

9              (Prospective juror leaves sidebar.)

10             (In open court.)

11             THE COURT:  Did Juror 32 have her hand up?  Come up,

12   please.

13             (Sidebar continues; prospective juror joins.)

14             THE PROSPECTIVE JUROR:  I have a trip scheduled for

15   the 13th through the 19th.

16             THE COURT:  Of July?

17             THE PROSPECTIVE JUROR:  Yes.

18             THE COURT:  Is there any latitude to change that

19   trip?

20             THE PROSPECTIVE JUROR:  No.

21             THE COURT:  You have tickets?

22             THE PROSPECTIVE JUROR:  Yes.

23             THE COURT:  Well, we'll excuse you then.  So, just

24   go to the second floor --

25             THE PROSPECTIVE JUROR:  Thank you so much.

```
                        Sidebar                        376

 1          THE COURT:  -- tell them you've been excused.

 2          THE PROSPECTIVE JUROR:  Thank you.

 3          (Prospective juror excused.)

 4          (In open court.)

 5          THE COURT:  Juror 33?  Okay, very good.

 6          What about Juror 34?  Come on up, ma'am.

 7          (Sidebar continues; prospective juror joins.)

 8          THE COURT:  Tell us what your conflict is regarding

 9   the six-week trial.

10          THE PROSPECTIVE JUROR:  I cannot sit down too long.

11          THE COURT:  Okay.

12          THE PROSPECTIVE JUROR:  I have a back problem and

13   sometimes I lose my memory and I can't speak loud.

14          THE COURT:  Are you being treated with medication?

15          THE PROSPECTIVE JUROR:  Yes.

16          THE COURT:  Does the medication affect your ability

17   to think clearly?

18          THE PROSPECTIVE JUROR:  Yes.

19          THE COURT:  Okay.  We will excuse Juror No. 34,

20   then.

21          THE PROSPECTIVE JUROR:  Thank you.

22          THE COURT:  You can go back to the second floor

23   where you checked in and let them know you've been excused.

24          THE PROSPECTIVE JUROR:  Thank you.

25          (Prospective juror excused.)
```

```
                    Sidebar                      377
```

1           THE COURT:  I'll call back Juror 26 and find out her

2    story.

3           (In open court.)

4           THE COURT:  Juror 26, please come back for a moment.

5           (Sidebar continues; prospective juror joins.)

6           THE PROSPECTIVE JUROR:  I call my boss, so he

7    understand.  I think I can stay.

8           THE COURT:  You'll be paid?

9           THE PROSPECTIVE JUROR:  Yes.

10          THE COURT:  And you can work for six weeks nine to

11   five as a juror in this case?

12          THE PROSPECTIVE JUROR:  Yes.

13          THE COURT:  You can do that?

14          THE PROSPECTIVE JUROR:  Yes.

15          THE COURT:  Have you heard anything in the media

16   that would affect your ability to be fair and impartial to

17   both sides in this case?

18          THE PROSPECTIVE JUROR:  No, never heard about this

19   case.

20          THE COURT:  Okay.  Very good.  Please have a seat.

21   Thank you.

22          (Prospective juror excused.)

23          (In open court.)

24          THE COURT:  Juror No. 35, did you have your hand up?

25   Come up, sir.

```
                          Sidebar                    378
```

1          (Sidebar continues; prospective juror joins.)

2          THE COURT:  How are you?

3          THE PROSPECTIVE JUROR:  Since trial may take up to

4    five weeks, I don't think I can serve as a juror.  In about

5    four weeks, my mother will be having a hearing with a judge

6    over whether she will be getting SSD or not, and it's her only

7    chance to apply.  She can't speak English, even though she's a

8    citizen.  I translate between her and her lawyer and between

9    her and the judge.  The lawyer doesn't speak Spanish and my

10   mother doesn't speak English and I'm the only persona in the

11   family that can translate between the both of them.

12         THE COURT:  This is an administrative judge hearing

13   for Social Security disability?

14         THE PROSPECTIVE JUROR:  Yes.

15         THE COURT:  And it's scheduled when, sir?

16         THE PROSPECTIVE JUROR:  It's in four weeks.  I don't

17   know the day --

18         THE COURT:  That's okay, it doesn't have to be exact

19   as long as you're sure it falls within the six weeks.

20         THE PROSPECTIVE JUROR:  Yes.

21         THE COURT:  All right, sir, we will excuse you.

22   Thank you.  Go back to the second floor where you were checked

23   in and let them know.

24         (Prospective juror excused.)

25         THE COURT:  No objections to excusing 35?

```
                         Sidebar                    379
```

1              MR. BRAFMAN:  No.

2              MS. KASULIS:  No.

3              (In open court.)

4              THE COURT:  Did Juror 36 have her hand up?  Come on

5    up, ma'am.

6              (Sidebar continues; prospective juror joins.)

7              THE PROSPECTIVE JUROR:  I have family obligations as

8    well as work obligations that it's really hard for me to be

9    here.  I'm also training someone at the same time.

10             THE COURT:  Can you tell us what your work

11   obligations are?

12             THE PROSPECTIVE JUROR:  I'm a research scientist at

13   a laboratory.

14             THE COURT:  And you have an ongoing research

15   project?

16             THE PROSPECTIVE JUROR:  Not a research project.  I'm

17   also training and analyzing patient samples at the same time.

18             THE COURT:  Patient samples?

19             THE PROSPECTIVE JUROR:  Yeah.

20             THE COURT:  Is there anyone else at your job who can

21   fill in for you if you were to serve for six weeks?

22             THE PROSPECTIVE JUROR:  Six weeks is a long duration

23   of time.

24             THE COURT:  I know it is.  But is there someone to

25   fill in?

```
                        Sidebar                        380
```

1          THE PROSPECTIVE JUROR:  At this moment, I think

2    there's a lower capability of staff right now.  We're trying

3    to hire people into the company at this moment.

4          THE COURT:  Tell me about the training that you said

5    you have to conduct.

6          THE PROSPECTIVE JUROR:  I'm just training a new

7    hiree that we hired about two months ago.  And this is his

8    third training in process.

9          THE COURT:  How long is each training process?

10         THE PROSPECTIVE JUROR:  It's the whole -- he's

11   shadowing me while doing my work.

12         THE COURT:  Is there anyone else he can shadow who

13   is doing comparable work?

14         THE PROSPECTIVE JUROR:  No, he's with me only.

15         THE COURT:  You work in the evening?

16         THE PROSPECTIVE JUROR:  Yes.

17         THE COURT:  What are your hours?

18         THE PROSPECTIVE JUROR:  2:30 to 11:30.

19         THE COURT:  We would be sitting from -- I would ask

20   you to come at 9:15 and we would dismiss the jury at 5:30.

21   Would that be a possibility?

22         THE PROSPECTIVE JUROR:  It's out in Long Island, so

23   when I get out it would probably take me two hours to get

24   there.

25         THE COURT:  Would you step back for a minute?

```
              LAM      OCR      RPR
```

```
                      Sidebar                      381
```

1          (Prospective juror leaves sidebar.)

2          MR. BRAFMAN:  No objection.

3          MS. SMITH:  Is her company going to pay her?  I feel

4   like it's one thing if it's economical.

5          (Prospective juror joins sidebar.)

6          THE COURT:  Ma'am, does your research lab pay you

7   for jury duty?

8          THE PROSPECTIVE JUROR:  I'm not sure.  I haven't

9   asked them that.

10          THE COURT:  Could you find out from them?  I'll ask

11  you to go out in the hallway, retrieve your phone, and ask

12  them whether you will be paid if you were selected for six

13  weeks of jury duty.

14          THE PROSPECTIVE JUROR:  Okay.

15          THE COURT:  Then come back and we will see.

16          (Prospective juror leaves sidebar.)

17          (In open court.)

18          THE COURT:  Come on up, sir.

19          (Sidebar continues; prospective juror joins.)

20          THE COURT:  What's your number again, sir?

21          THE PROSPECTIVE JUROR:  27.

22          THE COURT:  Juror 27 is back.

23          THE PROSPECTIVE JUROR:  Can I be excused?  My wife

24  is not too happy.

25          THE COURT:  Not even postponing it until August?

```
                          Sidebar                        382
```

1            THE PROSPECTIVE JUROR:  No.  She said six weeks, I

2     promised my son vacation, how am I going to tell him?

3            That's my only problem right now.  Other than that,

4     I don't have any other problem.

5            THE COURT:  How old is your son?

6            THE PROSPECTIVE JUROR:  He is 15, going on 16.

7            THE COURT:  It's only for six weeks.  I shouldn't

8     say "only."  It's six weeks.

9            Does your son have summer plans?

10           THE PROSPECTIVE JUROR:  No, he has no summer plans.

11           THE COURT:  Activities or camp?

12           THE PROSPECTIVE JUROR:  No.

13           THE COURT:  He's just home?

14           THE PROSPECTIVE JUROR:  Yes, he's home.

15           THE COURT:  But he has friends he likes to play

16    with?

17           THE PROSPECTIVE JUROR:  He has a couple friends in

18    the neighborhood, but that's about it.

19           THE COURT:  But he's old enough to be left alone in

20    the house.  It's not like it's an issue with child care, that

21    you need to have a parent there.

22           THE PROSPECTIVE JUROR:  Right.

23           THE COURT:  Would you just step back?

24           (Prospective juror leaves sidebar.)

25           MR. BRAFMAN:  He tried, Judge.

Sidebar                                    383

1            THE COURT:  If your spouse is upset, it wouldn't be

2      an excuse to get out of jury service.

3            MS. KASULIS:  I think a lot of people's spouses are

4      going to be upset about the six weeks of jury duty.  It sounds

5      like the child can care for himself but is just upset he can't

6      go on vacation until August instead of July.

7            MR. BRAFMAN:  This is someone who made the effort

8      and came back.  If he had told you that from the beginning he

9      can't change his vacation, we would have excused him.

10            THE COURT:  We would have.  But he can change it,

11      it's just his wife isn't happy.

12            MR. BRAFMAN:  It's your call.  I don't think there's

13      a challenge for cause, but I think he should be excused.

14            THE COURT:  I think given the summer and all the

15      vacation schedules we're encountering, I don't want to lose

16      him.

17            (Prospective juror joins sidebar.)

18            THE COURT:  Sir, I appreciate and apologize to your

19      wife, but I would just ask that you remain present for jury

20      selection because it appears that your son is old enough to

21      care for himself and I'm hoping that your vacation will be

22      just as wonderful later in August than it would be during the

23      time it's currently scheduled.

24            It's an important duty and everyone does serve, so I

25      will not excuse you at this time; all right, sir?

```
                        Sidebar                        384
```

1            THE PROSPECTIVE JUROR:  No problem.

2            (Prospective juror leaves sidebar.)

3            (In open court.)

4            THE COURT:  Does Juror No. 37 have any issue?  No?

5    Good.

6            Juror 38, did you have any issues?

7            You with the hand up, are you Juror 39?  All right.

8            I want to confirm, Juror 38, you didn't have your

9    hand up.

10            Okay.  39, please come forward.

11

12            (Continued on next page.)

13

14

15

16

17

18

19

20

21

22

23

24

25

385

1           (Prospective juror present at sidebar.)

2           THE COURT:  Hello.

3           THE PROSPECTIVE JUROR:  Good morning.

4           THE COURT:  Sir, yes.

5           THE PROSPECTIVE JUROR:  First of all, I read about

6    this case from the beginning, since last year.  I have a very

7    negative opinion about the defendant and I am afraid that,

8    especially if he use illegal means to, you know, purchase the

9    medicine, and the -- I don't think I would be able to overcome

10   it.

11          THE COURT:  All right.  Just to clarify, I read a

12   summary of what the charges are in the indictment.  He is not

13   charged with any offenses relating to pharmaceutical pricing.

14   But my more important question for you is whether your reading

15   in the media and your formulating an opinion would prohibit

16   you from fairly and with an open mind considering only the

17   evidence presented at the trial and deciding the case based

18   only on that evidence and putting aside whatever personal

19   views you might have.

20          THE PROSPECTIVE JUROR:  Well, I believe that

21   anything comes to medical, especially if you don't do any

22   research and development and you change that product and you

23   just pick up the price, it's a negative price, it is not

24   something you can purchase, you know, this is something people

25   need.

1          THE COURT:  Okay.

2          THE PROSPECTIVE JUROR:  Second, I also have some

3  vacation scheduled, which I am the only one driving.

4          THE COURT:  When is your vacation, sir?

5          THE PROSPECTIVE JUROR:  July 10th, week of July 10th

6  and another one in North Carolina the week of July 19th.

7          THE COURT:  And those are not flexible vacations?

8          THE PROSPECTIVE JUROR:  They have been prepaid.  I

9  have my son who is away in college, he is coming, he has

10  summer semester.

11          THE COURT:  I see.  All right.  Okay.  Sir, we will

12  excuse you.  Please go to the second floor jury room and tell

13  them that you are excused from this.  Thank you.

14          (Prospective juror excused.)

15          THE COURT:  No objections?

16          MR. BRAFMAN:  No objection.

17          MS. KASULIS:  No objection.

18          THE COURT:  Did juror 40 have their hand up?  No.

19  All right.

20          Juror No. 41, come on up, ma'am.

21          (Prospective juror present at sidebar.)

22          THE COURT:  Juror No. 41, welcome.

23          THE PROSPECTIVE JUROR:  Well, I had an accident, so

24  I had herniated discs.  Sitting now, even now sitting, that's

25  why I asked him if I could stand, but it also caused me to

1  have surgeries.  I'm supposed to be going right now two to

2  three times a week for physical therapy on my hand.  Doing the

3  case for that long, I wouldn't be able to do it.

4          THE COURT:  I wouldn't want to jeopardize your

5  health.  Ma'am, we will excuse you, if you could go to the

6  second floor jury room where you checked in originally and let

7  them know you Juror No. 41 and have been excused.

8          THE PROSPECTIVE JUROR:  Should I wait in the room?

9          THE COURT:  No, go straight down.  Let them know and

10 they will give you paperwork.

11         (Prospective juror excused.)

12         THE COURT:  No objections?

13         MR. BRAFMAN:  Correct.

14         MS. KASULIS:  No objections.

15         THE COURT:  Did Juror No. 42 have their hand up?

16 All right.  Come up, sir.

17         (Prospective juror present at sidebar.)

18         THE COURT:  Hello.  Sir.

19         THE PROSPECTIVE JUROR:  You started off asking the

20 question about difficulties.

21         THE COURT:  Yes.

22         THE PROSPECTIVE JUROR:  So, it is extremely

23 difficult because, first of all, I am ticketed to go to

24 Chicago next week, Thursday, and my family and my son's

25 family, they live in Toronto, negotiated for months to find a

388

1  period in the middle of July that we can go and see the

2  grandchildren.  And July 17th, we're supposed to go to Toronto

3  and stay for a week.  Everybody's arranged their whole

4  schedule.

5           THE COURT:  I understand.  So you have a lot of

6  family members who set this time aside.

7           THE PROSPECTIVE JUROR:  Right.  I don't know if you

8  want me to maybe answer some more questions.

9           THE COURT:  Let me ask you to step back.

10          (Prospective juror leaves sidebar.)

11          THE COURT:  Have you heard enough to excuse?

12          MR. BRAFMAN:  No objection.

13          MS. KASULIS:  No objection.

14          THE COURT:  We will excuse Juror No.42.

15          (Prospective juror present at sidebar.)

16          THE COURT:  I will excuse you.  Go down to the

17  second floor.  Have a nice trip.

18          (Potential juror excused.)

19          THE COURT:  What about Juror No. 43?  Did you have

20  your hand up, ma'am?  Come on up.

21          (Prospective juror present at sidebar.)

22          THE COURT:  How are you?

23          THE PROSPECTIVE JUROR:  So I am currently a student

24  at SUNY Oswego.  I go to school during the year and I start

25  August 16th.  I don't think I'm going to have enough time to

389

1    prepare.

2            THE COURT:  I don't think this case will last until

3    August 16th.  In fact, that will be highly, highly unlikely,

4    if you are free between now and --

5            THE PROSPECTIVE JUROR:  I'm not like free.  I'm

6    working on research in the area.

7            THE COURT:  That is nice.  I see.

8            THE PROSPECTIVE JUROR:  I wouldn't mind doing a

9    shorter case.  I don't think I would be able to do a six-week

10   trial.

11           THE COURT:  Is this research in connection with your

12   school?

13           THE PROSPECTIVE JUROR:  Yeah, it's through my

14   school, but it's not in my school.  It's at the job.

15           THE COURT:  When does research start?

16           THE PROSPECTIVE JUROR:  Yeah, it's currently going.

17           THE COURT:  Are you paid for your research?

18           THE PROSPECTIVE JUROR:  No, I am volunteer intern.

19           THE COURT:  So you are gaining experience?

20           THE PROSPECTIVE JUROR:  Yes, for my major.

21           THE COURT:  Is there anyway you can get similar

22   research experience during the school year?

23           THE PROSPECTIVE JUROR:  No, because during the

24   school year, I am just studying, like I don't have time to do

25   internships and stuff.  So the summer is when I do my

390

1    internship.

2              THE COURT:  Let me ask you to step back for a

3    moment.

4              (Prospective juror leaves sidebar.

5              THE COURT:  Pardon me?

6              MS. SMITH:  It doesn't seem like -- she doesn't have

7    a job, she can do research on the weekends and night and she

8    doesn't start school until the 16th.  I don't think there is

9    cause.

10             MR. BRAFMAN:  I don't think there is cause, but it

11   would be nice if she didn't have this burden.

12             THE COURT:  Well, let me see if she can do the

13   internship and research during the weekends.

14             (Prospective juror present at sidebar.)

15             THE COURT:  Is it possible that your internship can

16   be done later in the evening so if we were to excuse you at

17   5:30, could you conduct the research in the evenings or on the

18   weekends?

19             THE PROSPECTIVE JUROR:  I mean, it normally goes to

20   7:00.  We usually get out like 7:00, because it is on Terrapin

21   turtles, so it all depends when they are, like, nests in the

22   area.  It is usually -- we are usually done at 5:00.  It is

23   from 7:00 to 7:00, but it never usually lasts until 7:00

24   because they stop nesting at 5:00.

25             THE COURT:  You go somewhere in the wilderness.

391

1           THE PROSPECTIVE JUROR:  Yes.

2           THE COURT:  Can you do this on the weekends?

3           THE PROSPECTIVE JUROR:  I can do this on the

4   weekends, but I am currently doing it four days a week, during

5   the week, Tuesday and Friday.

6           THE COURT:  Let me have you step back.

7           (Prospective juror leaves sidebar.)

8           MR. BRAFMAN:  How many people do we know who work

9   with turtles?  Not many.

10          THE COURT:  They would all be better people.

11          MS. KASULIS:  We object to a cause strike.

12          THE COURT:  Okay.  It is really a matter of her

13  ability to conduct her internship.  What I am going to do is

14  ask her to stay in the pool.  She can check with her research

15  supervisors to see if she can do the research.

16          MS. KASULIS:  Your Honor, maybe it is appropriate to

17  ask her about what she knows -- whether she read any media

18  about it before we keep her.

19          THE COURT:  About the defendant?

20          MS. KASULIS:

21          (Prospective juror present at sidebar.)

22          THE COURT:  Ma'am, have you read anything about this

23  case or about Mr. Shkreli in the media?

24          THE PROSPECTIVE JUROR:  No.

25          THE COURT:  Do you have any opinions about the case

1  based on what I have read to you about the summary of the

2  charges?

3          THE PROSPECTIVE JUROR:  No.

4          THE COURT:  Let me then say this:  We would really

5  like to keep you on this jury and see if there is a way you

6  can work with your supervisors to conduct your research on the

7  weekend or in the evening, if that is possible, we won't be

8  sitting July 3rd and 4th.  That is Monday and Tuesday of next

9  week and then you would have the weekend.

10          THE PROSPECTIVE JUROR:  Yeah, but I don't have feel

11  two days enough qualifies as an internship.  If I write on my

12  resume like it is two days a week, it's not a lot of hours to

13  put in, you know.

14          THE COURT:  So you won't get internship credit?

15          THE PROSPECTIVE JUROR:  I don't think so, because

16  I'm currently doing it four days a week and five hours a day.

17  I don't think it would be -- if I leave here, if I do it after

18  work, I don't think I'm going to have enough time to get there

19  in time to do anything.

20          THE COURT:  I see.  Let me have you step back for

21  one moment.

22          (Prospective juror leaves sidebar.)

23          THE COURT:  I think internships are important to

24  college students.  They help foster further research

25  opportunities and also job opportunities and I would hate to

1  have her lose this opportunity.  I think I am going to excuse

2  her.

3          (Prospective juror present at sidebar.)

4          THE COURT:  Ma'am, we are going to excuse you,

5  please go to the second floor jury room and tell them that you

6  have been excused and they will give you paperwork.

7          (Potential juror excused.)

8          (In open court.)

9          THE COURT:  Did Juror No. 44 have a hand up?  Come

10  up, sir.

11          (Prospective juror present at sidebar.)

12          THE COURT:  Hi, how are you sir No. 44.

13          THE PROSPECTIVE JUROR:  Yes.

14          THE COURT:  Tell us what your issues are regarding

15  scheduling.

16          THE PROSPECTIVE JUROR:  I work for a financial

17  institution.  We're going through OCC exam and I'm part of

18  that for the next two or three weeks, and I do money

19  laundering.  I've also been experienced to a lot money

20  laundering cases, which -- wire fraud and things like that.

21          THE COURT:  Well, this OCC exam, is it ongoing now?

22          THE PROSPECTIVE JUROR:  Yes.

23          THE COURT:  Is there someone else at your job who

24  could assist the examiner and their colleagues with the

25  examination?

394

1          THE PROSPECTIVE JUROR:  I am the key part of it,
2    though.
3          THE COURT:  How so?
4          THE PROSPECTIVE JUROR:  I'm the program manager who
5    has been on it for about three years.  We do exams on
6    customers.  I'm part of, you know, putting together the
7    policies and procedures from day one.
8          THE COURT:  Is there anyone who you have supervised
9    or trained or a colleague of equal stature who can conduct the
10   work that you are charged with?
11         THE PROSPECTIVE JUROR:  You know, probably, but I
12   guess it's like a performance thing, too.  If I've been on it
13   for three or four years, at this point, when we get to the
14   end, not to cross the finish line.  I'm worried about
15   performance too.
16         THE COURT:  How long is this examination going to be
17   going on?
18         THE PROSPECTIVE JUROR:  About a month.
19         THE COURT:  When did it start?
20         THE PROSPECTIVE JUROR:  Two weeks ago.
21         THE COURT:  So it is two more weeks?
22         THE PROSPECTIVE JUROR:  No, it is a month from now.
23   It is like a six-week exam total.
24         THE COURT:  I see.
25         THE PROSPECTIVE JUROR:  I have a face-to-face

1  meeting in about two weeks.

2          THE COURT:  So four of the six weeks are going to be

3  falling within the trial period.

4          THE PROSPECTIVE JUROR:  Yes.

5          THE COURT:  Okay.  Just step off to the side.

6          (Prospective juror leaves sidebar.)

7          THE COURT:  I think we might have to let this one go.

8          MR. BRAFMAN:  We would ask you to excuse him.  I

9  don't want to raise any additional cause issues because I

10  think his schedule requires him to be excused.

11          THE COURT:  It seems like he is overseeing the

12  examination and he sort of formulates the protocols and I

13  think it would be detrimental to his job and his examination

14  if he were not there.

15          MS. KASULIS:  Can you inquire if his employer is

16  going to pay him during jury service?

17          THE COURT:  All right.

18          (Prospective juror present at sidebar.)

19          THE COURT:  Sir, what is your employer's policy on

20  paying employees for jury duty?

21          THE PROSPECTIVE JUROR:  They do pay.

22          THE COURT:  They do pay?

23          THE PROSPECTIVE JUROR:  Yes.

24          THE COURT:  I guess, you know, let me ask you

25  something about your statement that you made about auditing,

1    and financial issues, and wire fraud, and money laundering, I

2    summarized the charges for you in this case and the question I

3    would want to ask you is whether you could put aside the

4    experience you have had or whatever you have read, might have

5    read and decide this case, after hearing all of the evidence

6    and to listen to all of the evidence with an open mind and a

7    fair state of mind towards both sides, whether you could then

8    set aside whatever you might have read or been trained to do

9    and decide the base on the evidence?

10            THE PROSPECTIVE JUROR:  I don't think I can.  I've

11   gone through a lot of different cases.  We have to decide

12   whether or not we file suspicion activity reports.  We've done

13   a lot of investigations I have a lot of experience in that.  I

14   don't know one way or another I would be impartial.

15            THE COURT:  Okay.  Thank you.  Step back.

16            (Prospective juror leaves sidebar.)

17            MR. BRAFMAN:  We would challenge him for cause.

18            MS. SMITH:  That is fine.

19            THE COURT:  We will allow him to be dismissed for

20   cause.

21            (Prospective juror present at sidebar.)

22            THE COURT:  Sir, you are excused.  Go to the second

23   floor where you checked in.  You will get paperwork.

24            (Potential juror excused.)

25            (In open court.)

1          THE COURT:  Juror No. 36, why don't you come back

2    for one moment.  She is coming back.  She was going to check

3    with her employer.

4          THE PROSPECTIVE JUROR:  I got my response back and

5    she said she won't be able to pay for six weeks of jury duty.

6          THE COURT:  Will they pay you for any part of it?

7          THE PROSPECTIVE JUROR:  Four days maximum.

8          THE COURT:  Four days.  Well, I wouldn't want you to

9    be without your income, so we will excuse you.  Go to the

10   second floor, please, and tell them that you have been excused

11   and they will give you your paperwork.  Thank you.

12         (Prospective juror leaves sidebar.)

13         THE COURT:  No objection; correct?

14         MR. BRAFMAN:  No objection.

15         MS. SMITH:  No objection.

16         MS. KASULIS:  No objection.

17         THE COURT:  Juror No. 45, come up.

18         (Prospective juror present at sidebar.)

19         THE COURT:  Hello, how are you?  Number 45.

20         THE PROSPECTIVE JUROR:  Yes.  I'm doing two

21   internships right now and I have to help my mom pay for bills,

22   so.

23         THE COURT:  Are they paid internships?

24         THE PROSPECTIVE JUROR:  Yes.

25         THE COURT:  So you help your mother with her

398

1  finances?

2         THE PROSPECTIVE JUROR:  Yes.

3         THE COURT:  Would your employer pay you if you were

4  on jury duty?

5         THE PROSPECTIVE JUROR:  I don't think so.

6         THE COURT:  Do you know?

7         THE PROSPECTIVE JUROR:  Because its own I Li like

8  the summertime.

9         THE COURT:  Where are you interning?

10         THE PROSPECTIVE JUROR:  Tucker Psychology and

11  Travelers Tool Company.

12         THE COURT:  So, you don't know whether they will pay

13  you; is that correct?

14         THE PROSPECTIVE JUROR:  No.

15         THE COURT:  Have you heard anything about this case.

16         THE PROSPECTIVE JUROR:  I just heard what you hear

17  in the media.

18         THE COURT:  Has what you have heard in the media

19  impaired your ability to be fair and impartial?

20         THE PROSPECTIVE JUROR:  I mean, what I have heard is

21  how he increased the price of the drugs, and I don't think

22  that was right of him, to be honest, he just seems to care

23  about himself.

24         THE COURT:  Well, if the case, as I summarized it

25  for you, does not charge anything regarding drug pricing, I

1    don't want to say that for sure there would be no evidence of

2    that, but if that were to come into the case, could you

3    maintain a fair and impartial mind toward both sides in this

4    case and decide this case based solely on the evidence at

5    trial?

6            THE PROSPECTIVE JUROR:  I could try.

7            THE COURT:  I appreciable you're trying.  Are you

8    confident that you could maintain a fair and impartial state

9    of mind?

10           THE PROSPECTIVE JUROR:  Yes.

11           THE COURT:  All right.  What I am going to ask you

12   to do is step out and retrieve your phone and call your

13   internships and see if they will continue to pay you during a

14   six-week trial and then come back.  When you come back, we

15   will bring you back up here.

16           THE PROSPECTIVE JUROR:  Okay.  No problem.

17           THE COURT:  Thank you.

18           (Prospective juror leaves sidebar.)

19           (In open court.)

20           THE COURT:  Juror No. 46, did you have your hand up?

21   Yes.  Come on up, please.

22           (Prospective juror present at sidebar.)

23           THE COURT:  Hi.  Number 46, how are you?

24           THE PROSPECTIVE JUROR:  Okay.  So, I know -- this is

25   really important, but like....

400

1           THE COURT:  It is all right.  Just tell us.  It is

2    fine.  It is important that you don't feel uncomfortable.  It

3    is important for all of us what your thoughts are and if there

4    is a conflict in your schedule and whether there is some

5    reason that you couldn't be fair to both sides.  Okay.

6           THE PROSPECTIVE JUROR:  Okay, so, time duration,

7    first off, and I work part-time and part of my pay is on

8    commission base, so I feel like -- I do recreational painting

9    and I teach that to parties and workshops and I'm supposed to

10   teach summer camp in July, that's what my boss told me, so I

11   don't know like how that's going to pan out.

12          THE COURT:  Okay.

13          THE PROSPECTIVE JUROR:  And I don't know if I can be

14   objective in this case because based on what I know, it would

15   be difficult even though I do believe in a fair trial, I try

16   to be partial.

17          THE COURT:  Impartial.

18          THE PROSPECTIVE JUROR:  Impartial, so I just -- I'm

19   just not sure.

20          THE COURT:  There are two things that we will

21   explore, first is that you have an obligation in your job to

22   teach summer camp in July; is that correct?

23          THE PROSPECTIVE JUROR:  Yes.

24          THE COURT:  And is there anyone else who could do

25   that teaching assignment?

1          THE PROSPECTIVE JUROR:  I'm not sure.

2          THE COURT:  Would your employer pay you if you were

3    on jury duty for six weeks?

4          THE PROSPECTIVE JUROR:  No.

5          THE COURT:  All right.  Are you a student?

6          THE PROSPECTIVE JUROR:  I have been a year out of

7    college.

8          THE COURT:  All right.  So you are still in a job

9    searching process?

10          THE PROSPECTIVE JUROR:  A little.

11          THE COURT:  Okay.  Do you have any other jobs

12    besides this internship where you teach art?

13          THE PROSPECTIVE JUROR:  No.  Not right now.

14          THE COURT:  All right.  Let me ask you to step back

15    for a minute.

16          (Prospective juror leaves sidebar.)

17          THE COURT:  I think we should excuse her for cause.

18    Does anyone object?

19          MR. BRAFMAN:  No, I agree.

20          MS. KASULIS:  We don't object.

21          THE COURT:  We will excuse Juror No. 46.

22          (Prospective juror present at sidebar.)

23          THE COURT:  We are going to excuse you.  Please go

24    to the jury room where you checked in this morning and they

25    will give you paperwork.

402

1          (Potential juror excused.)

2          (In open court.)

3          THE COURT:  Juror No. 47, did you have your hand up?

4   Yes.  Come on up.

5          (Prospective juror present at sidebar.)

6          THE COURT:  Hi.

7          THE PROSPECTIVE JUROR:  To start with, I have been

8   in the healthcare profession for more than half my life, more

9   than 20 years.  I have taken care of physical care patients

10  right now.  Personally, I have a loved one from LGBT in

11  community, friends with me, like my second mom.  I personally

12  known somebody on this AIDS medication, so I don't think I

13  will be fair to this person.

14         THE COURT:  Well, as I summarized the charges, they

15  don't concern drug pricing, but there is a possibility that

16  some evidence of that might come in.  Could you set aside your

17  personal experience and views and sit with an open mind and a

18  fair mind to both sides and decide the case based solely on

19  the evidence.

20         THE PROSPECTIVE JUROR:  I am empathetic with my

21  patients.  I cry with them.  I don't think I will be the right

22  person to sit.  I couldn't do that.

23         THE COURT:  Let me ask you to step back.

24         (Prospective juror leaves sidebar.)

25         MR. BRAFMAN:  I would challenge her for cause.

403

1          MS. KASULIS:  No objection.

2          MS. SMITH:  No objection.

3          THE COURT:  Ma'am, we will excuse you for cause,

4  Juror No. 47 for cause, and ask you to go down to the jury

5  room and let them know you are being excused.  Okay.

6          (Potential juror excused.)

7          (In open court.)

8          THE COURT:  Juror No. 48, did you have your hand up?

9  All right.  Come on up.

10          (Prospective juror present at sidebar.)

11          THE COURT:  You are Juror No. 48?

12          THE PROSPECTIVE JUROR:  Yes.

13          THE COURT:  Yes, ma'am, what is your conflict?

14          THE PROSPECTIVE JUROR:  I read about the case and I

15  just lost my aunt to cancer and I feel that I might not be

16  partial.

17          THE COURT:  Can you just explain a little bit the

18  connection between -- I'm sorry about your loss.

19          THE PROSPECTIVE JUROR:  I read about what happened

20  with the drugs and things and I just feel that if he did it, I

21  think it was something not right for people.

22          THE COURT:  He is not charged in this case with --

23          THE PROSPECTIVE JUROR:  Yeah, but I just feel like I

24  have a strong feeling if he did it.

25          THE COURT:  All right.  You are saying it would make

404

1    it difficult, if not impossible --

2              THE PROSPECTIVE JUROR:  To make a decision.

3              THE COURT:  You wouldn't be able to be fair to both

4    sides then, the Government and the defense?

5              THE PROSPECTIVE JUROR:  Probably not.

6              THE COURT:  Let me ask you to step back.

7              (Prospective juror leaves sidebar.)

8              MR. BRAFMAN:  We challenge her for cause.

9              MS. KASULIS:  No objection.

10             THE COURT:  All right.  We will excuse you.  Please

11   go to the second floor where you checked in this morning and

12   let them know you have been excused.

13             (Potential juror excused.) (In open court.)

14             THE COURT:  Did Juror No. 49 have their hand up?

15   Come on up.

16             (Prospective juror present at sidebar.)

17             THE COURT:  Hi.  Come on up.  Come closer.

18             THE PROSPECTIVE JUROR:  I won't be able to serve.  I

19   can't miss work for long periods of time.  I have to maintain

20   a quota for our sales department, not doing so could

21   basically affect me losing my job.

22             THE COURT:  You work on a quarter system in sales?

23             THE PROSPECTIVE JUROR:  Yes.

24             THE COURT:  Would you be paid during jury service?

25             THE PROSPECTIVE JUROR:  I believe so.  Something

1    with the HR department.

2         THE COURT:  Do you know for how long they would pay

3    you?

4         THE PROSPECTIVE JUROR:  I'm not sure.

5         THE COURT:  When you say you work on a quota system,

6    are you required to meet certain targets every month?

7         THE PROSPECTIVE JUROR:  Yes.

8         THE COURT:  If you don't.

9         THE PROSPECTIVE JUROR:  If we don't, then we get

10   into a meeting and I don't know if I get -- I don't know if I

11   get -- what is that called?  It is like a -- I'm sorry.

12        THE COURT:  That's all right.

13        THE PROSPECTIVE JUROR:  We have to meet a certain

14   amount, like a deadline or so.

15        THE COURT:  But you said your employer will pay you?

16        THE PROSPECTIVE JUROR:  I believe so.  I have to

17   double-check.

18        THE COURT:  Do you want to step out and retrieve

19   your phone and call your employer and find out whether you

20   will be paid for the six -week duration of the trial?

21        THE PROSPECTIVE JUROR:  I can find out.

22        THE COURT:  And then with regard to your sales work,

23   could you do that in the evenings or on the weekends?

24        THE PROSPECTIVE JUROR:  No, I have to be in the

25   office to do that.

406

1          THE COURT:  What kind of sales do you do?

2          THE PROSPECTIVE JUROR:  I work for a private lender.

3     It is all about getting as much deals as we can.

4          THE COURT:  And you have to use the office equipment

5     to do that?

6          THE PROSPECTIVE JUROR:  Yes.

7          THE COURT:  Let me ask you to step back for a moment.

8          (Prospective juror leaves sidebar.)

9          THE COURT:  I think I would excuse this person.

10         MR. BRAFMAN:  We would excuse her.  She is the one

11    who calls during dinner.

12         MS. KASULIS:  I think we should have her check and

13    see.

14         THE COURT:  All right.

15         (Prospective juror present at sidebar.)

16         THE COURT:  Ma'am, please retrieve your phone.  Ask

17    your employer whether you would be paid during the six weeks's

18    duration of the trial and also whether there is a way you can

19    perform your job either after hours or on weekends to maintain

20    your quotas, and then come back and let us know what your

21    employer said.

22         THE PROSPECTIVE JUROR:  Okay.

23         (Prospective juror leaves sidebar.)

24         THE COURT:  Juror No. 45, can you come back up here.

25         (Continued on next page.)

1            (Side bar continues; Prospective Juror 45 joins.)

2            THE PROSPECTIVE JUROR:  They said they wouldn't pay

3    me.

4            THE COURT:  They won't pay you?

5            THE PROSPECTIVE JUROR:  It's not full time.

6            THE COURT:  Okay.  Well, we are sorry to hear that

7    but we understand.  So I am going to excuse you.  You can go

8    down to the jury room on the second floor and let them know

9    that you have been excused from this jury.  Thank you.

10            THE PROSPECTIVE JUROR:  Okay.  Thank you.

11            THE COURT:  Thanks.

12            (Prospective juror excused.)

13            MR. BRAFMAN:  That was number 45?

14            THE COURT:  Yes.  45 is excused without objection,

15    correct?

16            MR. BRAFMAN:  Correct.

17            MS. KASULIS:  Yes.

18            THE COURT:  All right.  Juror 50, just so you know,

19    was seen with a newspaper this morning.  Did you take it from

20    him?

21            THE CLERK:  I did.  I brought it outside.

22            THE COURT:  The CSOs have it.  It might have been

23    the Post, but we will inquire.

24            (In open court.)

25            THE COURT:  Juror 50, did you have your hand up?

```
                          Side Bar                         408
```

1   Please come up.

2           (Side bar continues; prospective juror joins.)

3           THE COURT:  Hi, sir.  You are number 50, right?

4           THE PROSPECTIVE JUROR:  51 -- 50.  I'm sorry.

5           THE COURT:  This is your name?

6           THE PROSPECTIVE JUROR:  Yes.  I apologize.

7           THE COURT:  Come close.  Okay.  You have a scheduled

8   conflict?

9           THE PROSPECTIVE JUROR:  Yes.

10          THE COURT:  What is it?

11          THE PROSPECTIVE JUROR:  It's doctors and health

12  appointments.

13          THE COURT:  Can they be rescheduled?

14          THE PROSPECTIVE JUROR:  No, actually.  No.  You want

15  more detail because I have proof?

16          THE COURT:  No, that's all right.  I don't want to

17  ask you to reschedule anything.

18          THE PROSPECTIVE JUROR:  The thing is in a normal,

19  normal six week period, I would have three appointments.  This

20  particular one, I have four, and I have proof of at least one

21  of them here with me.

22          THE COURT:  Okay.

23          THE PROSPECTIVE JUROR:  I don't want you to think

24  it's BS or anything.  It's chronic pain related stuff.

25          THE COURT:  Okay.  All right.

```
                          Side Bar                    409
```

1           THE PROSPECTIVE JUROR:  I'll give you more detail if

2    you want.

3           THE COURT:  I think --

4           THE PROSPECTIVE JUROR:  I'll go into more detail.

5    Anything you want to know.

6           THE COURT:  No.  I appreciate --

7           THE PROSPECTIVE JUROR:  Matter of fact, I couldn't

8    remember what the number was because I'm thinking of the pain.

9           THE COURT:  Do you take pain medication?

10           THE PROSPECTIVE JUROR:  Yes.

11           THE COURT:  Does that affect your ability to be a

12    clear thinker and to understand?

13           THE PROSPECTIVE JUROR:  Probably not the medicine,

14    no, but the fact that I have the pain distracts my attention.

15           THE COURT:  So, the pain is not alleviated by

16    medication?

17           THE PROSPECTIVE JUROR:  Well, I'm going to get it at

18    the appointment.

19           THE COURT:  Okay.

20           THE PROSPECTIVE JUROR:  I need to go to the

21    appointment to get it.  And the other thing is physical

22    therapy every other week so that would be three, four.  I'm

23    sorry to sound whiny.

24           THE COURT:  No.  That's all right.  No, you're not,

25    sir.  It's important that you be comfortable.

Side Bar                                              410

1          THE PROSPECTIVE JUROR:  Age related stuff.  Sorry.

2          THE COURT:  Okay.  Sir, I am going to excuse you.

3    Please go to the second floor where you checked in this

4    morning and tell them that you are excused.  All right.

5          THE PROSPECTIVE JUROR:  All right.  Do you want to

6    see it?  I really feel --

7          THE COURT:  You're under oath.  You're under oath.

8          THE PROSPECTIVE JUROR:  That's why I offered to

9    prove it.

10         THE COURT:  Well, I am taking at face value your

11   representation.

12         THE PROSPECTIVE JUROR:  You don't have to.  I have

13   proof.

14         THE COURT:  I see that you have documentation.

15         THE PROSPECTIVE JUROR:  I just want you to know.

16   Thank you.

17         THE COURT:  Please be well.  Thank you.

18         (Prospective juror excused.)

19         (In open court.)

20         THE COURT:  Juror 51, come on up.

21         (Side bar continues; prospective juror joins.)

22         THE COURT:  Number 51?

23         THE PROSPECTIVE JUROR:  Yes.  I'm a solopreneur of

24   two businesses.  Four to six weeks would absolutely tank me.

25         THE COURT:  What business are you in?

Side Bar                              411

1          THE PROSPECTIVE JUROR:  I'm a media coach.  I coach

2    people on body language and I'm also an actor.

3          THE COURT:  I see.  And when do you perform your job

4    in coaching?  Is that every day during business hours?

5          THE PROSPECTIVE JUROR:  Mostly during business

6    hours.  I have one beginning tonight and I had an audition

7    last night.  They're not usually at night, they're during the

8    day, and when my clients need me, they need me now.

9          THE COURT:  All right.  So you work with them during

10   the day?

11         THE PROSPECTIVE JUROR:  Yes.

12         THE COURT:  All right.  And is there anyone else

13   that you can ask to assist you with the jobs that you do?

14         THE PROSPECTIVE JUROR:  I'm a solopreneur.

15         THE COURT:  I see.  Let me ask you to step back.

16         (Prospective juror leaves side bar.)

17         THE COURT:  Any objection to excusing her?

18         MR. BRAFMAN:  No.

19         MS. KASULIS:  No.

20         (Prospective juror joins side bar.)

21         THE COURT:  Ma'am, I'm going to excuse you.  If you

22   could just go down to the second floor and tell them you have

23   been excused.

24         (Prospective juror excused.)

25         (In open court.)

```
                      Side Bar                      412
```

1           THE COURT:  Juror 52, did you have your hand up?

2  Come on up, please.

3           (Side bar continues; prospective juror joins.)

4           THE COURT:  Hi, ma'am.  How are you?

5           THE PROSPECTIVE JUROR:  I'm fine.

6           THE COURT:  You're number 52?

7           THE PROSPECTIVE JUROR:  Yes.

8           THE COURT:  Thank you.  Please come close and tell

9  us what your issues are.

10          THE PROSPECTIVE JUROR:  I have two issues.  The

11 length of the trial is too long.

12          THE COURT:  Six weeks?

13          THE PROSPECTIVE JUROR:  Yes.  It's too long.  I have

14 a trip on the 28th of July and I'm back on the 13th of August.

15          THE COURT:  I see.  Is it out of state?

16          THE PROSPECTIVE JUROR:  It's overseas.

17          THE COURT:  Okay.  And is there any flexibility on

18 the trip?

19          THE PROSPECTIVE JUROR:  No.  No.  And I cannot be

20 replaced at work.  I work for the airlines and I'm the only

21 one in charge here.

22          THE COURT:  Okay.  All right.  You're the only

23 employee of the airline?

24          THE PROSPECTIVE JUROR:  No, of my department.

25          THE COURT:  I see.  I see.  Let me ask you to step

Side Bar                                    413

1   back for a minute.

2           (Prospective juror leaves side bar.)

3           MR. BRAFMAN:  No objection.

4           THE COURT:  All right.  No objection?

5           MS. KASULIS:  No objection.

6           (Prospective juror joins side bar.)

7           THE COURT:  Ma'am, we will excuse you.  If you could

8   please go to the second floor where you checked in this

9   morning and let them know that you have been excused.

10          THE PROSPECTIVE JUROR:  Okay.

11          THE COURT:  Thank you.

12          (Prospective juror excused.)

13          (In open court.)

14          THE COURT:  Is juror 53 here?  Did you have any

15  issues that you needed to discuss?

16          THE PROSPECTIVE JUROR:  Yes.

17          THE COURT:  All right.  Come on up, please.

18          (Side bar continues; prospective juror joins.)

19          THE COURT:  Hi.  How are you?

20          THE PROSPECTIVE JUROR:  Good.

21          THE COURT:  Come on up.  Yes, ma'am.  You are

22  number --

23          THE PROSPECTIVE JUROR:  -- 53.

24          THE COURT:  Yes, ma'am.

25          THE PROSPECTIVE JUROR:  I'd like to be excused for

Side Bar                          414

1   my health reason.  Two weeks ago, I had CAT scan, bloods, for

2   the abdomen.  I'm still back and blue.  And I'm scheduled on

3   June 30th to have sonogram of abdomen.  July 13th, I need to

4   have doctor appointment and MRI.

5           THE COURT:  All right.  Ma'am, we're going to excuse

6   you so please go to the second floor.

7           THE PROSPECTIVE JUROR:  Thank you.

8           THE COURT:  Tell them you have been excused.

9           Juror number --

10          THE PROSPECTIVE JUROR:  53.

11          THE COURT:  -- is excused without objection,

12  correct?

13          MS. KASULIS:  No objection.

14          MR. BRAFMAN:  Yes.

15          THE COURT:  Okay.  Thank you.

16          (Prospective juror excused.)

17          (In open court.)

18          THE COURT:  Juror 54, come on up, ma'am.

19          (Side bar continues.)

20          THE COURT:  After we finish this, we have 12 more on

21  reserve.

22          (Prospective juror joins side bar.)

23          THE COURT:  Come on up, ma'am.  You're number 54?

24          THE PROSPECTIVE JUROR:  Yes.

25          THE COURT:  Hi.  How are you?

Side Bar                              415

1          THE PROSPECTIVE JUROR:  Good.  How are you?

2          So I have a couple of reasons why I can't serve for

3   six weeks.  Number one is I have a very demanding job in

4   health care at a school of medicine.  I'm involved in three

5   different negotiations right now and a number of

6   investigations.  I know I have a duty to serve but six weeks

7   will kill me, my job.

8          THE COURT:  Okay.

9          THE PROSPECTIVE JUROR:  I'm also a single parent and

10  the father is not in the picture, so ...

11         THE COURT:  Okay.  How old are your children?

12         THE PROSPECTIVE JUROR:  One is older, but I have a

13  15 year old at home and he can't be by himself.

14         THE COURT:  Okay.  All right.  So where is it that

15  you do your research or you do your medical job?

16         THE PROSPECTIVE JUROR:  At Mount Sinai.

17         THE COURT:  And what is your position there?

18         THE PROSPECTIVE JUROR:  I'm associate dean for

19  faculty and staff relations.

20         THE COURT:  I see.  Okay.  Let me ask you to step

21  back for a moment.

22         (Prospective juror leaves side bar.)

23         THE COURT:  All right.  Any views?

24         MR. BRAFMAN:  No objection.

25         THE COURT:  To be excused as a juror?  It sounds

Side Bar                                416

1   like she has a lot going on at work that would be difficult

2   for her.

3           MS. KASULIS:  Did she say investigation?

4           THE COURT:  She's undergoing an investigation that

5   she's responding to, it sounds like.

6           MS. SMITH:  I think that's fine.

7           THE COURT:  To excuse her?

8           MS. SMITH:  Yes.

9           (Prospective juror joins side bar.)

10          THE COURT:  Ma'am, we will excuse you.  So please go

11  to the second floor where you checked in this morning and tell

12  them that you have been excused.  Okay?

13          THE PROSPECTIVE JUROR:  Thank you.

14          (Prospective juror excused.)

15          MR. BRAFMAN:  Judge, can we take ten minutes?

16          THE COURT:  Yes.  Before I let you go, I just want

17  to make sure we have 12 more jurors.  We have how many so far.

18          THE CLERK:  We have 15 downstairs waiting.

19          THE COURT:  How many did we select from yesterday?

20  We had 47.

21          THE CLERK:  Today we have 13 plus one with the phone

22  call from her employer.

23          THE COURT:  We have 15 today?

24          THE CLERK:  Fourteen.

25          THE COURT:  Fourteen today?  Okay.  We have 61.

Side Bar                    417

1          MS. SMITH:  Your Honor, we have not yet asked this

2    pool whether they know the defendant.

3          THE COURT:  No, I know.  We haven't asked anybody.

4          MS. SMITH:  We haven't asked --

5          THE COURT:  That's why I'm trying to build up a

6    pool.

7          MS. SMITH:  I think we probably are going to need

8    more people because I think a number of people that are left

9    raised their hands when you asked that question initially.

10         THE COURT:  What we are going to do is we have 15

11   more downstairs plus the folks we had talked to yesterday that

12   we set aside.  What we will do is excuse this group to go

13   downstairs to wait further.  We'll examine after the break the

14   additional 15 and that's all we have for today.  So,

15   hopefully, that will be a big enough pool.  All right?

16         MR. BRAFMAN:  Yes, Judge.

17         THE COURT:  All right.  Let's take five and I will

18   instruct the jurors.

19            (In open court; side bar ends.)

20         THE COURT:  At this time, I had like to thank all

21   the jurors that have indulged us and been very patient.  We

22   will be asking you to go back to the jury room.  We have

23   additional jurors that we would like to examine.

24         So, please retrieve your phones and other devices if

25   you wish.  You may call your jobs, but please don't do any

418

1    research, do not look at any news media reports or pop-ups

2    that may come up on your phone.  Do not speak about this case

3    with anybody, not even amongst yourselves.

4         The jury room you checked in this morning is on the

5    second floor.  I would ask you to just return there until

6    further notice and, again, do not talk about the case with

7    anybody.  If anyone attempts to approach you about the case,

8    please let me know immediately.

9         Thank you very much for your attention.  We will get

10   back to you as soon as we can.

11        (Prospective jurors exit.)

12        THE COURT:  All right.  Let's take a five-minute

13   recess, please.

14        (Recess taken.)

15        (In open court; prospective jurors not present.)

16        THE COURT:  Are we all ready?

17        THE CLERK:  Yes, Judge.

18        MS. ZELLAN:  Before we go on the record --

19        THE COURT:  I would prefer it be on the record.

20        MS. ZELLAN:  I just wanted the Court to know that we

21   provided two copies of additional exhibits that we anticipate

22   may be used during the course of this week for

23   cross-examination of witnesses.

24        THE COURT:  All right.  Thank you.  You've provided

25   it to whom, to us?

419

1          MS. ZELLAN:  Provided it to the Court and the

2     Government last night.

3          THE COURT:  Thank you.

4          (Pause.)

5          THE CLERK:  All prospective jurors are present.

6          THE COURT:  All right.

7          Good morning, ladies and gentlemen.  My name is

8     Judge Kiyo Matsumoto.  My courtroom staff includes my case

9     manager, Ms. Sandra Jackson, my law clerk, Mr. Vivek Tata, and

10    I'd like to welcome you here and thank you for your patience.

11         Can everybody hear me?  If not, please raise your

12    hand.

13         Thank you.  Please pay close attention as I go

14    through these questions and instructions because it is

15    important for you to answer us truthfully as we go through

16    this selection process.

17         Please also don't speak to anybody about this case

18    throughout this proceeding and if you are selected for the

19    trial.

20         You are here today because we are about to select

21    the jury to serve in a criminal case.  Trial is expected to

22    begin as soon as we finish jury selection and to continue up

23    to six weeks.  We will not hold trial on Monday, July 3rd or

24    Tuesday, July 4th.  Fortunately, this particular case promises

25    to be interesting and educational for all who are selected to

1    serve as jurors.

2           This is a criminal case commenced by the United

3    States which is frequently referred to as "the Government."

4    Representing the United States are Assistant United States

5    Attorneys Jacquelyn Kasulis, Alixandra Smith, G. Karthik

6    Srinivasan and also seated at the government's table are

7    Special Agent Michael Braconi and Special Agent Sean Sweeney

8    from the Federal Bureau of Investigation and paralegal

9    specialist Gabriela Balbin.

10          The defendant in this case is Mr. Martin Shkreli.

11   He is represented by attorneys Benjamin Brafman, Marc

12   Agnifilo, Andrea Zellan, Jacob Kaplan and later will be joined

13   by Teny Geragos.

14          The fact that this prosecution is brought in the

15   name of the United States does not entitle the Government to

16   any greater consideration than any other party who appears in

17   court.  All parties, the Government and individuals, are

18   equals before the Court and are entitled to equal

19   consideration by the jury.  No party is entitled to sympathy

20   or favor.

21          The purpose of this jury selection is to make sure

22   that fairness and impartiality of all jurors will be selected

23   and ensured so that the parties may receive a fair trial.  The

24   way we try to be sure that a jury will be fair and impartial

25   is by going through a process called voir dire.  Basically, I

1   will be asking you questions both as a group and individually

2   about your background and views on certain subjects.  It is

3   not my intention to invade your privacy, but simply to try to

4   ensure that you can sit fairly and impartially in this

5   particular case.

6           At times, this will be tedious and I ask for you

7   please to give me further patience and indulgence.

8           If in the course of questioning you do think that

9   because of some experience you have had in your life or

10  because of something you have heard, read or that you have

11  formulated an opinion that would prohibit you from being fair

12  and impartial, that is, you would be inclined toward the

13  Government or toward the defendant regardless of what the

14  evidence in the case showed, it is your duty to tell me that.

15  That is because the Government and the defendant have a right

16  to a qualified impartial jury, one that will decide the case

17  without fear, favor, prejudice or passion, and will render a

18  verdict based solely on the evidence presented at the trial

19  and will apply the law as I instruct you.

20          Quite apart from whether or not I must excuse you or

21  some of you, the lawyers in the case both have an opportunity

22  to exercise a certain number of what are called peremptory

23  challenges which means they may excuse the juror for no

24  reason.  If you are excused, no personal affront is intended.

25  It is important to listen because the answers that you give me

422

1   will be under oath.  I will now ask Ms. Jackson to administer

2   the oath.

3              Please raise your right hand.

4              (Prospective jurors sworn.)

5              THE COURT:  Thank you.

6              This criminal case comes before the Court by way of

7   an indictment.  The indictment is captioned United States of

8   America against Martin Shkreli.  The indictment is simply the

9   document that the Government uses to state the charges against

10  a defendant.  It serves no other purpose and it is not

11  evidence.

12             I am going to summarize the charges in the

13  indictment so you can understand what this case will be about

14  but, again, remember, that any evidence pertaining to the

15  charges will come before you only when we begin the actual

16  trial.

17             I will now summarize the indictment.

18             The defendant Martin Shkreli is charged in an eight

19  count indictment with committing various acts of securities

20  fraud, conspiracy to commit securities fraud and conspiracy to

21  commit wire fraud.

22             In Counts One through Three, defendant Mr. Shkreli

23  is charged with conspiracy to commit securities fraud,

24  conspiracy to commit wire fraud and a substantive count of

25  securities fraud in relation to an entity known as MSMB

1    Capital.

2         In Counts Four through Six, Mr. Shkreli is charged

3    with a conspiracy to commit securities fraud, conspiracy to

4    commit wire fraud and a substantive count of securities fraud

5    in relation to an entity known as MSMB Healthcare.

6         In Counts Seven and Eight, Mr. Shkreli is charged

7    with a conspiracy to commit securities fraud and conspiracy to

8    commit wire fraud in relation to an entity known as Retrophin.

9         Mr. Shkreli has pleaded not guilty to all of the

10   charges in the indictment and has thus raised issues of fact

11   to be determined by a jury.

12        Let me now advise you that it is the Government that

13   has the burden of proof in any criminal case to establish a

14   defendant's guilt beyond a reasonable doubt as to each element

15   of the charged offense.

16        The defendant is presumed to be innocent throughout

17   the trial.  In that regard, the defendant has no burden to

18   present any witnesses or evidence or to testify.  Because the

19   United States constitution protects a defendant's right not to

20   incriminate himself and indeed to remain silent, the law

21   prohibits you from considering when you deliberate that the

22   defendant may not have testified in this case.  This is a

23   basic principle of our criminal justice system.

24        The role of the jury in a criminal case is to hear

25   the evidence and decide the facts, that is, to decide what

424

1   happened.  The judge does not have any role to play in your

2   determination of the facts.  As the judge, my role is to

3   instruct you on the applicable law.  You will apply the facts

4   as you find them to the law as I instruct you and your

5   conclusion will be your verdict.  You must apply the law as

6   stated by me regardless of any opinion you personally may have

7   as to what the law is or what the law should be.  If any of

8   you would have any difficulty doing this, you must bring that

9   to my attention.

10          Now, what we are going to do is to ask you a series

11  of questions and, for an example, I will ask whether any

12  jurors know any of the attorneys or the parties in this case.

13  It is important for all of you to listen carefully to my

14  questions and to pay close attention to all of my questions

15  and to make a note if your answer to my question would be

16  "yes."  I'll ask you to raise your hand and you should raise

17  your hand and we will speak to you about your raised hand.

18          Consistent with the oath that you have just taken to

19  answer truthfully, honestly, conscientiously and candidly and

20  completely, it is very important that you listen carefully to

21  my questions.  Again, I will ask you to raise your hand if you

22  have something that you would like to share in relation to

23  that question.  For some questions, you may be asked to answer

24  the question from where you are seated but most likely, I will

25  ask you to come to side bar which is an area over here so that

425

1    you may answer questions outside the hearing of everyone else

2    in the courtroom.  You will not be heard by the other jurors

3    or anyone else in the courtroom.  There will be attorneys and

4    the parties necessary to be present and listen to your

5    answers.  In addition, because judicial proceedings are open

6    and public, one press reporter will also be present at side

7    bar.

8            If I ask you to come to side bar to discuss your

9    answer further, I will not use your name.  Rather, I will use

10   the number that we have given you so that your answers will

11   not be associated with your name.  It is critical to the

12   parties' right to a fair trial that all jurors be candid and

13   truthful in answering my questions.  If there are certain

14   questions that you feel that you would rather answer without

15   the presence of a reporter, please let me know and I will ask

16   the reporter to step back.

17           Is there anyone who either did not understand or

18   cannot accept any of the principles of law that I have just

19   described?  Please raise your hand.

20           Now, I am going to ask you questions that we will

21   perhaps discuss at side bar.

22           First, knowing that this trial will begin as soon as

23   we finish jury selection and continue for approximately six

24   weeks, is there anyone who would find it extremely burdensome

25   to serve on this jury?

426

1          Please recognize that the Court acknowledges that

2     jury service is an inconvenience, but you must ask yourself

3     whether your service on this jury will be so much more

4     inconvenient or burdensome for you than for anyone else.  You

5     should also ask yourself what attitude you would want a juror

6     to have if you or someone you cared about deeply were to be

7     tried by a jury.  The right to a trial by jury is a

8     fundamental constitutional right and you should bear in mind

9     the sacrifices that have been made throughout our country's

10    history to preserve and defend the rights under our

11    constitution.

12         Now, given that I have told you about the six week

13    trial, I also want to raise another issue which we may discuss

14    at side bar and that is whether any of you have heard anything

15    about this case before today.  It is very likely that given

16    the amount of media attention in this case, you may have read

17    about or heard about matters relating to Mr. Shkreli.  It is

18    not wrong for you to have an opinion but, rather, the critical

19    question is whether your opinion will interfere with your

20    ability to be fair and impartial to both sides in this case

21    and to decide the case based solely on the evidence and the

22    instructions of law at this trial.

23         So those are the two preliminary questions:  First,

24    whether this six-week trial will pose an undue burden and,

25    second, whether hearing about anything in the media would have

Side Bar                    427

1  caused you to form an opinion and whether that opinion would

2  have caused you to be unable to listen impartially and fairly

3  to both sides.

4          If your answers to any of my questions would be

5  "yes," please raise your hand.

6          All right.  We have Juror Number 2.  We will see you

7  at side bar, ma'am.  I'm sorry.  I'm going to call you seat

8  number 2, Juror Number 55.  We will see you at side bar.

9          (The following occurred at side bar; prospective

10  juror joins.)

11          THE COURT:  Number 56.  Come close.  What are your

12  issues?

13          THE PROSPECTIVE JUROR:  My issue is my work.  It's

14  the time we have to close the year and my position is a key

15  position so I need to be close the books.

16          THE COURT:  The fiscal year ends June?

17          THE PROSPECTIVE JUROR:  June 30th.

18          THE COURT:  And are you the only bookkeeper in your

19  organization that could close the books?

20          THE PROSPECTIVE JUROR:  Actually, I'm working for --

21  do I have to disclose that?

22          THE COURT:  No.  Don't tell us where you work,

23  but --

24          THE PROSPECTIVE JUROR:  In my department, yes.

25          THE COURT:  You are the only person in your

1   department who can close the books?

2            THE PROSPECTIVE JUROR:  Yes, that division.

3            THE COURT:  Is it possible for your employer to pull

4   people from other divisions to perform the work that you are

5   doing?

6            THE PROSPECTIVE JUROR:  I don't think so.  I'm

7   really very much like a key position.

8            THE COURT:  Okay.  And do you get paid for jury

9   duty?

10           THE PROSPECTIVE JUROR:  I believe so.

11           THE COURT:  You do.  And would you be paid for the

12  entire six weeks?

13           THE PROSPECTIVE JUROR:  I think for three days.

14           THE COURT:  Three days?

15           THE PROSPECTIVE JUROR:  I'm not sure exactly how

16  much.

17           THE COURT:  Okay.

18           THE PROSPECTIVE JUROR:  I don't know.

19           THE COURT:  So, are you working for an accounting

20  firm, is that what you do?

21           THE PROSPECTIVE JUROR:  Yes.

22           THE COURT:  Okay.  And are there other accountants

23  who could be assigned to help you?

24           THE PROSPECTIVE JUROR:  I'm not working for an

25  accounting firm.  I'm working for a finance department under a

1   different educational department, institution.

2         THE COURT:  I see.  An educational institution in

3   the finance department?

4         THE PROSPECTIVE JUROR:  Right.

5         THE COURT:  Okay.  And as far as you know, there's

6   no one else who could fill in for you?

7         THE PROSPECTIVE JUROR:  For that division, I am the

8   only one.

9         THE COURT:  Let me ask you to step back for a

10  moment, please.  Just right there.  Thank you.

11        (Prospective juror leaves side bar.)

12        THE COURT:  Does anyone want to continue to press

13  her to see if she can serve?

14        MR. BRAFMAN:  I don't want to press her to serve.

15        MS. KASULIS:  Can we confirm, Your Honor, the number

16  of days that she gets paid?

17        THE COURT:  All right.

18        (Prospective juror joins side bar.)

19        THE COUR:  Ma'am, you mentioned that your employer

20  might, you believe your employer would pay you for part of the

21  time that you are on jury service if not all of it.  Would you

22  be able to think back to your employment policy, can you

23  recollect how many days you would be paid?

24        THE PROSPECTIVE JUROR:  I'm not sure but I think

25  it's three days.

Side Bar                                    430

1          THE COURT:  Three days?  All right.  I might ask you

2    if you could go and retrieve your phone and speak to your

3    employer and ask, one, how many days you would be paid for

4    jury service and, two, whether it is possible, if you are

5    selected, that they could find someone for the six weeks that

6    you would serve?

7          THE PROSPECTIVE JUROR:  Okay.  All right.

8          THE COURT:  Okay?  Thank you.

9          THE PROSPECTIVE JUROR:  Can I do it right now?

10         THE COURT:  Yes.  And when you come back, we will

11   just bring you back to side bar.  Okay?

12         THE PROSPECTIVE JUROR:  Thank you.

13         (Prospective juror leaves side bar.)

14         (In open court.)

15         THE COURT:  Was there anyone else in the first row

16   who had your hand up?  Juror Number 59.

17         (Side bar continues; prospective juror joins.)

18         THE COURT:  Are you Juror Number 58?  Is this you?

19         THE PROSPECTIVE JUROR:  Yes.

20         THE COURT:  Okay.  This is Juror Number 58.

21         Yes, ma'am.

22         THE PROSPECTIVE JUROR:  Hi.  As much as I would love

23   to be able to perform my civic duty, my fear is my mom is very

24   sick right now.  She's going through chemotherapy.  She also

25   has a bad heart so we're deciding whether to do a stent or

Side Bar                              431

1    bypass.  My fear is if I get in the middle of this and

2    something happens --

3              THE COURT:  Okay.

4              THE PROSPECTIVE JUROR:  I also work two jobs and I'm

5    the only provider for my kids.  So that's another issue.

6              THE COURT:  All right.

7              THE PROSPECTIVE JUROR:  But I'm just afraid of

8    getting involved and something happens to her and I'm here.

9              THE COURT:  I see.  Do either of your jobs pay you

10   to be on jury duty?

11             THE PROSPECTIVE JUROR:  I don't know about my main

12   job.  I'm a manager.  My other one, my other job, I'm a

13   contractor and, actually, I deliver newspapers at night.

14             THE COURT:  I see.

15             THE PROSPECTIVE JUROR:  But that I would not get

16   paid for.

17             THE COURT:  Let me ask you to step back for one

18   moment, please.

19             THE PROSPECTIVE JUROR:  Sure.

20             (Prospective juror leaves side bar.)

21             THE COURT:  I would be inclined to excuse Juror

22   Number 58 given her mother's medical issues and her role as a

23   sole provider.

24             MS. KASULIS:  No objection.

25             MR. BRAFMAN:  No objection.

```
                        Side Bar                        432

 1            THE COURT:  Thank you.

 2            (Prospective juror joins side bar.)

 3            THE COURT:  We will excuse you.  Please go down to

 4   the jury room and tell them you have been excused.  Thank you.

 5            (Prospective juror excused.)

 6            (In open court.)

 7            THE COURT:  All right.  Were there any other hands

 8   up?

 9            Okay.  Juror Number Five, come on up.

10            (Continued on next page.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
                        Sidebar                    433
```

1    (Continuing)

2              (In open court.)

3              THE COURT:  This is Juror 57.  Come up.

4              (Sidebar continues; prospective juror joins.)

5              THE COURT:  Yes, what did you want to tell us?

6              THE PROSPECTIVE JUROR:  I didn't quite understand

7    the question, but I work on Rikers Island and I don't want to

8    the sit on the case.

9              THE COURT:  Well, ma'am, there's two different

10   things:  One is we do want to understand whether your job

11   would prohibit you from serving on this case; and, two, to

12   emphasize to you that it's the civic duty of every citizen to

13   sit on a jury and to serve their civic duty of service.  I

14   understand it would be possibly inconvenient or disruptive to

15   you, but anyone who gets called is expected to come in and to

16   try to serve to the best of their ability.

17             What we are interested in knowing is whether, A,

18   your job would pay you to serve.  And it's Rikers, so my guess

19   is they would, but do you know for sure whether they would?

20             THE PROSPECTIVE JUROR:  I work in the school

21   department.

22             THE COURT:  School?

23             THE PROSPECTIVE JUROR:  Yes.

24             THE COURT:  Do you get paid when you're on jury

25   duty?

```
                         Sidebar                      434
```

1              THE PROSPECTIVE JUROR:  I don't know.

2              THE COURT:  Is your employer the Department of

3    Education?

4              THE PROSPECTIVE JUROR:  Yes.

5              THE COURT:  I'm reasonably -- I seem to recollect

6    that the Department of Education does pay jurors.

7              But the second is let's explore why you initially

8    said you don't want to serve on the case.  Is it because of

9    some feelings you have or is it just about not wanting to be

10   here six weeks?

11             THE PROSPECTIVE JUROR:  I don't want to be here for

12   six weeks.

13             THE COURT:  Can you give us a reason why?

14             THE PROSPECTIVE JUROR:  I never served on jury.

15             THE COURT:  Everybody serves at some point or

16   there's always a first time for everything.

17             What jury service requires is that you listen

18   carefully, that you pay attention, that you maintain a fair

19   and open mind to both the Government and the person who is

20   charged.  The question is whether you could do that.

21             Could you be fair to both sides in this case?

22             THE PROSPECTIVE JUROR:  Yes.

23             THE COURT:  All right.  Have you heard about or read

24   anything about Mr. Shkreli?

25             THE PROSPECTIVE JUROR:  No.

```
                        Sidebar                    435

 1            THE COURT:  All right.  And other than what I

 2   acknowledge is a disruption in your life to come every day to

 3   the courthouse from 9 to 5:30, is there any other reason why

 4   you don't either want to serve or believe you could not be a

 5   good, fair, and impartial juror?

 6            THE PROSPECTIVE JUROR:  No.

 7            THE COURT:  Okay.  Do you have any vacations out of

 8   state planned during the six weeks?

 9            THE PROSPECTIVE JUROR:  Yes.

10            THE COURT:  Where are you going?

11            THE PROSPECTIVE JUROR:  I was going to Florida.

12            THE COURT:  Do you have your tickets already?

13            THE PROSPECTIVE JUROR:  No, not yet.

14            THE COURT:  How were you going to go, by car or

15   plane?

16            THE PROSPECTIVE JUROR:  I was flying.

17            THE COURT:  Will you be able to make your trip in

18   late August instead of sometime in the next six weeks?

19            THE PROSPECTIVE JUROR:  Okay.

20            THE COURT:  Okay?

21            THE PROSPECTIVE JUROR:  Okay.

22            THE COURT:  Let me just ask you to step back one

23   moment.

24            (Prospective juror leaves sidebar.)

25            MR. BRAFMAN:  Could you ask the juror whether her
```

Sidebar                                              436

1   job with Corrections would cause her to unfairly favor the

2   Government or does she think she could be open-minded?

3           THE COURT:  She's actually Department of Education

4   but works on Rikers, but I will ask her that.

5           (Prospective juror joins sidebar.)

6           THE COURT:  Ma'am, is there anything about your job

7   with the Department of Education or the location of your job,

8   which I think you said was at Rikers Island, that would cause

9   you to have feelings of being more or less in favor of the

10  Government or a defendant on trial?

11          THE PROSPECTIVE JUROR:  Yes.  If he were to come in

12  there, I would see him.

13          THE COURT:  First of all, this is a federal case, so

14  Rikers is not a federal facility.

15          But in any event, what I want you to keep in mind is

16  every defendant who is charged with an offense is entitled to

17  a presumption of innocence.  And it's only if twelve jurors

18  are convinced beyond a reasonable doubt that the defendant is

19  guilty -- that is, the Government has proven every element of

20  every offense -- that a jury may then decide whether they wish

21  to find that defendant guilty.

22          So, the question is whether your job and location of

23  your job would make you feel more or less favorable towards a

24  Government or a defendant or do you have neutral feelings

25  about both?

```
                         Sidebar                      437
```

1           THE PROSPECTIVE JUROR:  I have neutral feelings.

2           THE COURT:  All right.  Thank you.  I'll ask you to

3    step back.

4           (Prospective juror leaves sidebar.)

5           MR. BRAFMAN:  Your Honor, I don't want to push the

6    envelope, but the answer to the question is if he went to

7    Rikers Island she would see him.  That's hardly consistent

8    with the presumption of innocence.

9           MS. KASULIS:  I understand.

10          MR. BRAFMAN:  I know that you have asked properly,

11   but I'm going to request a challenge for cause.  I don't know

12   that I have the record yet, but I do think that A, she is with

13   Corrections and she immediately said if the Defendant gets

14   there, she's going to see him.  And that's hardly someone who

15   is looking at this with a benign eye towards the Defendant.

16          That's just my own opinion.

17          THE COURT:  I will ask her what assumptions she made

18   in making that statement.

19          (Prospective juror joins sidebar.)

20          THE COURT:  So, have you formulated any feelings or

21   opinions about a defendant who is charged with an offense and

22   has not yet faced a trial as to whether that person is more or

23   less likely guilty in your mind?

24          Because you made a statement that said, If he comes

25   to Rikers, I will see him.

```
                        Sidebar                      438
```

1          Do you have a sense that because he's simply been

2     charged with an offense and without hearing any evidence in

3     the case that somebody who is charged is guilty?

4          THE PROSPECTIVE JUROR:  Yes.

5          THE COURT:  You do.

6          THE PROSPECTIVE JUROR:  I do.

7          THE COURT:  All right.  Let me have you step back.

8          (Prospective juror leaves sidebar.)

9          THE COURT:  Okay.  She'll be excused.

10         MR. BRAFMAN:  Challenge for cause.

11         MS. KASULIS:  No objection.

12         (Prospective juror joins sidebar.)

13         THE COURT:  Ma'am, we're going to excuse you.

14    You're Juror No. 57.  You will go downstairs to the jury room

15    and tell them you've been excused.

16         THE PROSPECTIVE JUROR:  Thank you.

17         (Prospective juror excused.)

18         MR. BRAFMAN:  Thank you, Judge.

19         (In open court.)

20         THE COURT:  Were there any other hands up on the

21    first row?

22         Are you No. 60?  Come on up.

23         (Sidebar continues; prospective juror joins.)

24         THE PROSPECTIVE JUROR:  I'm 59, I'm sorry.

25         THE COURT:  This is Juror 59.  Thank you, sir.

```
                          Sidebar                        439
```

1    Welcome.  What would you like to tell us?

2              THE PROSPECTIVE JUROR:  I feel like he's guilty

3    already from watching the news.  I can't miss that much time

4    from work.  I'm going on vacation.  So, I feel like --

5              THE COURT:  We'll excuse you, sir.

6              Juror No. 59 is excused without objection?

7              MR. BRAFMAN:  No objection.

8              MS. KASULIS:  No objection.

9              THE COURT:  Please go to the jury room and tell them

10   you've been excused.

11             (Prospective juror excused.)

12             (In open court.)

13             THE COURT:  Was there anyone else on the first row?

14             Would you like to be heard, sir?  Come on up.

15             (Sidebar continues; prospective juror joins.)

16             THE COURT:  Hi, Juror No. 60.  Come close and tell

17   us what your issues are.

18             THE PROSPECTIVE JUROR:  One is I actually have a

19   trip planned -- it's booked already -- to see my grandparents.

20   I haven't seen them in years.  That's one thing.

21             THE COURT:  When is that scheduled?

22             THE PROSPECTIVE JUROR:  For July.

23             THE COURT:  And where is it?

24             THE PROSPECTIVE JUROR:  It's international.

25             THE COURT:  All right.  And I take it you can't be

```
                        Sidebar                      440
```

1    flexible on the dates of your travel.

2              THE PROSPECTIVE JUROR:  No.  I actually booked this

3    a while ago.

4              THE COURT:  They're nonrefundable tickets, non

5    changeable?

6              THE PROSPECTIVE JUROR:  Yes.

7              THE COURT:  Is there any objection to excusing this

8    gentleman?

9              MR. BRAFMAN:  No.

10             MS. KASULIS:  No.

11             THE COURT:  No. 60, please go back to the jury room

12   and tell them that you've been excused.

13             (Prospective juror excused.)

14             (In open court.)

15             THE COURT:  Juror 61, did you have your hand up for

16   any reason?

17             If you would have answered yes to any of my

18   questions, your hand should be up, and we'll talk to you.

19             Ma'am, 61, come up.

20             (Sidebar continues; prospective juror joins.)

21             THE COURT:  This is Juror 61.  How are you, ma'am?

22             THE PROSPECTIVE JUROR:  Very well.

23             THE COURT:  What would you like to tell us about?

24             THE PROSPECTIVE JUROR:  I have a preplanned vacation

25   scheduled for July 13 to 28.  It's been planned since March.

```
                          Sidebar                      441
1            THE COURT:  Do you have tickets to go --
2            THE PROSPECTIVE JUROR:  I have tickets, I have my
3    car rented, I have my --
4            THE COURT:  All right.  We will wish you a happy
5    vacation and thank you.  We will excuse you.
6            (Prospective juror excused.)
7            THE COURT:  Juror 61 is excused without objection.
8            MR. BRAFMAN:  No objection.
9            MS. KASULIS:  No objection.
10           (In open court.)
11           THE COURT:  Juror No. 62, please come up.
12           (Sidebar continues; prospective juror joins.)
13           THE COURT:  Yes, ma'am.
14           THE PROSPECTIVE JUROR:  My only issue is I have a
15   vacation planned for August 17.  I'm fine with everything else
16   if you guys think you'll be done by then.  That's around
17   seven, seven and a half weeks.  If it will go further than
18   that...
19           THE COURT:  I don't have any reason to think --
20           THE PROSPECTIVE JUROR:  That's my only question.
21           THE COURT:  Otherwise, in terms of your ability to
22   serve for six weeks, you have the ability to be here?
23           THE PROSPECTIVE JUROR:  Yes.
24           THE COURT:  Have you heard anything about
25   Mr. Shkreli or about this case?
```

```
                        Sidebar                      442
```

1          THE PROSPECTIVE JUROR:  No.

2          THE COURT:  Okay.  Thank you.

3          I asked the jurors to think about whether they would

4    want a juror with your state of mind to sit on a case

5    involving you or someone you loved or cared about.

6          Is there any reason you feel concern that given your

7    state of mind or anything that you are feeling or have views

8    upon that we should know about?

9          THE PROSPECTIVE JUROR:  No.

10          THE COURT:  We'll be asking further questions in a

11   moment, but thank you very much.

12          THE PROSPECTIVE JUROR:  Okay.

13          (Prospective juror leaves sidebar.)

14          (In open court.)

15          THE COURT:  Juror 63, come forward, please.

16          (Sidebar continues; prospective juror joins.)

17          THE COURT:  Juror 63, yes, ma'am.

18          THE PROSPECTIVE JUROR:  Due to personal experiences

19   before, I've dealt with fraud and scamming as well, and some

20   friends.  So because of that, I feel I would be biased towards

21   the defendant in this case.

22          THE COURT:  Towards or against?

23          THE PROSPECTIVE JUROR:  I'm sorry, against.

24          THE COURT:  In whatever direction it takes us, it's

25   not something --

```
                           Sidebar                      443
```

1    THE PROSPECTIVE JUROR:  Yes.  I feel like I have to

2    let you know that.

3    THE COURT:  And when you make that statement, are

4    you saying that if you could tell yourself and convince

5    yourself about the importance of a open and fair mind and the

6    importance of jurors in the system of justice, could you

7    commit to having an open mind and a fair mind for both sides

8    and listen to the evidence and decide the case based only on

9    evidence?

10   THE PROSPECTIVE JUROR:  It would be a little hard

11   because that situation would be kept in the back of my mind

12   for sure, definitely.

13   THE COURT:  Okay.  Let me ask you to step back for

14   one moment.

15   (Prospective juror leaves sidebar.)

16   MR. BRAFMAN:  Challenge for cause.

17   MS. KASULIS:  No objection.

18   (Prospective juror joins sidebar.)

19   THE COURT:  Ma'am, we'll excuse you.  Juror 63,

20   please go down to the jury room and tell them you've been

21   excused, and they will give you paperwork.

22   (Prospective juror excused.)

23   (In open court.)

24   THE COURT:  Did Juror 64 have her hand up?  Okay,

25   come up, ma'am.

```
                        Sidebar                          444
```

1              (Sidebar continues; prospective juror joins.)

2              THE COURT:  Come forward please, No. 64.

3              THE PROSPECTIVE JUROR:  Yes.

4              THE COURT:  Yes, ma'am.

5              THE PROSPECTIVE JUROR:  I have an issue that is I

6      live far.  It takes me two and a half hours to get here and I

7      don't even think I can make it on time.  I was yesterday

8      10:30; today, I made it 9:30.  Depending on the traffic, I

9      drive in, it's a major problem.  So, that's issue number one.

10             As far as other concern, I'm opinionated and I do,

11     in fact, know about the case.  I watch business channels and

12     I'm interested in that.

13             THE COURT:  It's fine if you have formulated an

14     opinion having seen media reports.  Most thinking people do

15     have opinions when we listen to the news, and that's fine.

16             The question for you is whether you could, if you're

17     selected as a juror, maintain a fair mind and open mind

18     towards both sides and not make any assumptions about the case

19     until you have heard all of the evidence and are then called

20     upon with your fellow jurors to deliberate.

21             Could you do that?

22             THE PROSPECTIVE JUROR:  Well, I have certain bias

23     against corporate greed.  It bothers me.  So, I don't know.

24             THE COURT:  Corporate greed is not being charged in

25     this case.

```
                         Sidebar                         445
```

1          THE PROSPECTIVE JUROR:  The case itself involves

2     that, all of that.

3          THE COURT:  Well, it would be important for you to

4     maintain an open and fair mind to both sides.

5          THE PROSPECTIVE JUROR:  I understand that.  I'm not

6     sure I could do it.

7          THE COURT:  Let me ask you to step back.

8          (Prospective juror leaves sidebar.)

9          MR. BRAFMAN:  I think that's the basis for cause.

10         MS. KASULIS:  No objection.

11         THE COURT:  We'll dismiss Juror 64 for cause.  Thank

12    you.

13         (Prospective juror joins sidebar.)

14         THE COURT:  Ma'am, I'll ask you to go down to the

15    jury room and tell them you've been excused, and they'll give

16    you paperwork.

17         THE PROSPECTIVE JUROR:  Thank you.

18         (Prospective juror excused.)

19         (In open court.)

20         THE COURT:  Did anyone else have their hand up?

21         Juror 65, okay.

22         (Prospective juror joins sidebar.)

23         THE COURT:  Yes, ma'am.  You are Juror 65?

24         THE PROSPECTIVE JUROR:  Yes.

25         THE COURT:  Nice to see you.  I just want to confirm

```
                        Sidebar                        446
```

1    your name; that's you?

2              THE PROSPECTIVE JUROR:  Correct.

3              THE COURT:  What would you like to tell us?

4              THE PROSPECTIVE JUROR:  I am a freelancer, so

5    definitely this would be very challenging for me, financially

6    speaking, not to be able to work that many weeks.

7              But beyond, I would be willing to make sacrifice, I

8    think this will be very interesting case; however, on July 10

9    I will have results to know whether or not I'm to have surgery

10   for this red spot here on my face.  So if that happens -- I

11   wish I would have an answer now, but I won't know until

12   July 10.

13             THE COURT:  All right.  What we'll do, I'll ask you

14   to step back for a second, and we'll get right back to you.

15             (Prospective juror leaves sidebar.)

16             THE COURT:  I would like to dismiss this juror.

17             MR. BRAFMAN:  No objection.

18             MS. SMITH:  No objection.

19             (Prospective juror joins sidebar.)

20             THE COURT:  Ma'am, we're going to excuse you.  I'd

21   ask you to please go down to the second floor where you

22   checked in and let them know you've been excused.  And good

23   luck with everything.

24             THE PROSPECTIVE JUROR:  Thank you.

25             (Prospective juror excused.)

```
                         Sidebar                         447
```

1            (In open court.)

2            THE COURT:  Juror 66, did you have a hand up?  You

3    don't have to, but if you want to be heard I'm happy to hear

4    from you.

5            (Sidebar continues; prospective juror joins.)

6            THE COURT:  Yes, ma'am.  You're Juror 66?  Step

7    close.

8            THE PROSPECTIVE JUROR:  I have classes; therefore, I

9    won't be able to sit on the court.

10           THE COURT:  When your are your classes?

11           THE PROSPECTIVE JUROR:  They're evening classes,

12   Monday through Saturday.

13           THE COURT:  When do they start?

14           THE PROSPECTIVE JUROR:  Next week.

15           THE COURT:  What time is your first class?

16           THE PROSPECTIVE JUROR:  6 p.m.

17           THE COURT:  Okay.

18           THE PROSPECTIVE JUROR:  6 p.m. is for Monday through

19   Wednesday.  And then Friday and Saturday from 9 a.m. to 4 p.m.

20           THE COURT:  So every Friday your in class.

21           THE PROSPECTIVE JUROR:  Yes.

22           THE COURT:  Where are your classes held?

23           THE PROSPECTIVE JUROR:  NYU, Washington Square.

24           THE COURT:  Just across the bridge.

25           Let me ask you to step back.

```
                       Sidebar                        448
```

1           (Prospective juror leaves sidebar.)

2           MR. BRAFMAN:  She's never going to get there by

3    6 p.m.  And Friday all day --

4           THE COURT:  If I adjourn on Fridays --

5           MR. BRAFMAN:  She said 9 a.m.  It's the whole day.

6           THE COURT:  Okay.  We'd have to not sit on Fridays,

7    which is not going to work out.

8           (Prospective juror joins sidebar.)

9           THE COURT:  Ma'am, we will excuse you.  I'd ask you

10   to go down to the jury room on the second floor where you

11   checked in and let them know you've been excused.

12          THE PROSPECTIVE JUROR:  Thank you.

13          (Prospective juror excused.)

14          THE COURT:  We're going to hear back from Juror 56.

15   Ma'am, come up.

16          THE PROSPECTIVE JUROR:  On the first question, it's

17   covered.

18          THE COURT:  You are covered.

19          THE PROSPECTIVE JUROR:  Covered.

20          And the second question, it will be very hard for

21   the department not to be there and report during six weeks.

22   It's very difficult for her to substitute me because I am the

23   only one who knows the interface program and I'm needed to

24   finish the books; otherwise, it's going to be burdensome.

25          THE COURT:  Let me ask you to step back, please.

```
                         Sidebar                        449
```

1            (Prospective juror leaves sidebar.)

2            THE COURT:  She will be paid but her department is

3     going to suffer.  I think I would be inclined to excuse Juror

4     56 --

5            MR. BRAFMAN:  No objection.

6            THE COURT:  -- given her department's difficulties.

7     They have the year-end close -- well, actually she's closing

8     June 30 the books.

9            MR. AGNIFILO:  I think I represented a relative of

10    hers.  And the case was dismissed and sealed so I don't want

11    to say the name.  I.

12           THE COURT:  Okay.

13           MR. AGNIFILO:  Suppose we could say the first name.

14           MR. BRAFMAN:  I don't want to embarrass her.

15           MR. AGNIFILO:  No, I know.

16           THE COURT:  So you think you know her, you've met

17    her?

18           MR. AGNIFILO:  I'm not sure.  But the person that I

19    represented has the same last name from the same town and it

20    would be around the same age.  It could be her husband.

21           MR. BRAFMAN:  It's a unique name.

22           MR. AGNIFILO:  But I'm not sure, I'm really not

23    sure.

24           THE COURT:  We have a question in our voir dire, so

25    I can just ask it now.

```
                           Sidebar                      450
```

1              (Prospective juror joins sidebar.)

2              THE COURT:  Ma'am, have you or any relative or close

3    friend ever had an encounter with the criminal justice system

4    either as victim, defendant, witness, or anything else?

5              THE PROSPECTIVE JUROR:  No.

6              THE COURT:  Have you or any friend or relative ever

7    been represented by an attorney in a criminal case?

8              THE PROSPECTIVE JUROR:  Not that I recall.

9              THE COURT:  Thank you.  Let me ask you to step back

10   one more time.

11             (Prospective juror leaves sidebar.)

12             THE COURT:  So that issue is put to rest.

13             Now the question is whether her employer, given

14   their need for her services, is going to suffer undue hardship

15   if she serves.  I'm going to ask whether this year-end closure

16   can be accomplished by someone else over the next few days; if

17   so, we can have her sit, I think.

18             (Prospective juror joins sidebar.)

19             THE COURT:  You said the year end closes on June 30,

20   which is this Friday.

21             THE PROSPECTIVE JUROR:  Yes.

22             THE COURT:  So it's only a matter of --

23             THE PROSPECTIVE JUROR:  Well, after that to close

24   the year.

25             THE COURT:  Does that have to be done by a certain

```
                    Sidebar                        451
```

1    time?

2            THE PROSPECTIVE JUROR:  Yes, July 20.  And then

3    there are some other things by August 15.

4            Actually, as I mentioned, if you can take me after

5    September, you can keep my for six months.  Right now, it's

6    very --

7            THE COURT:  Understood.  I think under the

8    circumstances I will excuse you and ask you to please go

9    downstairs to the second floor and tell them you've been

10   excused.  Juror No. 56, I want to thank you for your efforts.

11           THE PROSPECTIVE JUROR:  Thank you very much.

12           (Prospective juror excused.)

13           (In open court.)

14           THE COURT:  Did anyone else -- come up, ma'am.

15           (Prospective juror joins sidebar.)

16           THE COURT:  Can you give us your number?

17           THE PROSPECTIVE JUROR:  67.

18           THE COURT:  Thank you, ma'am.  Yes, ma'am?

19           THE PROSPECTIVE JUROR:  I just don't have the time.

20   Six weeks, my work won't allow me to stay away.

21           THE COURT:  What do you do?

22           THE PROSPECTIVE JUROR:  I do contracting for a

23   travel company and have deadlines coming up.

24           I would love to but I can't.

25           THE COURT:  Is it because there's no one else at

```
                        Sidebar                        452
```

1   your job --

2          THE PROSPECTIVE JUROR:  I'm the only one who does my

3   specific position.  It's just one.

4          THE COURT:  Nobody else knows how to do it?

5          THE PROSPECTIVE JUROR:  No.  There's the operation

6   things, but nobody does the contracting and proposals.

7          THE COURT:  Is there any way you could do your job

8   in the evenings or on weekends?

9          THE PROSPECTIVE JUROR:  I have to check.  I have to

10  check with personnel.

11         THE COURT:  Would you be paid to serve on the jury?

12  Does your employer pay you?

13         THE PROSPECTIVE JUROR:  I have no clue.  I don't

14  think anyone has been called, so I have no idea.

15         THE COURT:  I'll ask you to please retrieve your

16  phone and come back when you have an answer.  You would ask

17  your employer whether, A, you would be paid for six-week jury

18  service; and, two, whether there's anyone else that could be

19  deployed to help, and, if not, whether you can work in the

20  evenings or weekends to do your job.

21         THE PROSPECTIVE JUROR:  Okay.

22         THE COURT:  Thank you.

23         THE PROSPECTIVE JUROR:  You want me to do now?

24         THE COURT:  Yes, go use your phone and we will ask

25  you to come back.  Thank you.

```
                          Sidebar                      453
```

1            (Prospective juror leaves sidebar.)

2            THE COURT:  Anyone else?

3            Juror No. 68, come on up.

4            (Sidebar continues; prospective juror joins.)

5            THE COURT:  Hi, how are you?

6            THE PROSPECTIVE JUROR:  Good, thanks.

7            THE COURT:  Yes, ma'am.

8            THE PROSPECTIVE JUROR:  My concern is how long the

9    case might be because I have a booked trip August 2 to go out

10   of the United States.  So, that's my concern.

11           I feel like I'm an unbiased juror, I don't watch the

12   news, so I didn't really know anything about this.  So, that's

13   my concern.

14           THE COURT:  I think that we can't guarantee

15   100 percent that this will be over by August 2.  In fact --

16           THE PROSPECTIVE JUROR:  I feel it will go longer

17   than that just being -- it's how I feel.

18           THE COURT:  It sometimes goes less than they predict

19   and sometimes longer.

20           THE PROSPECTIVE JUROR:  If it was less, that would

21   be great.

22           THE COURT:  I don't want to guarantee that by

23   August 2 we'd be finished.  And I don't want you distracted by

24   the thought of your trip versus paying attention to what's

25   happening at the trial.

```
                        Sidebar                    454
```

1              THE PROSPECTIVE JUROR:  That wouldn't distract me.

2      That's not a distraction; I know myself.

3              But like I said, that's my only concern.

4              THE COURT:  Let me ask you to step back for one

5      second.

6              (Prospective juror leaves sidebar.)

7              THE COURT:  I don't know how long this case is going

8      to take.  The question is whether if we lost her the week of

9      August 2 whether -- we'll have six backups, but...

10             MR. BRAFMAN:  We do have six alternatives, Judge.

11             THE COURT:  Right.  And they will all be paying

12     attention.  My practice is not to tell them they are

13     alternates just so that they maintain their attention.

14             Can I ask you not to report that, please?

15             THE NEWS REPORTER:  Sure.

16             THE COURT:  So, I think I'm going to ask her to

17     stay; is that all right?

18             MR. BRAFMAN:  Yes.

19             (Prospective juror joins sidebar.)

20             THE COURT:  Ma'am, we will try our best to get this

21     finished.  And if August 2 starts to approach, we will deal

22     with your vacation.  We are not going to prevent you from

23     going on vacation.

24             THE PROSPECTIVE JUROR:  Okay.

25             THE COURT:  So, you can maintain your seat.

```
                        Sidebar                           455
```

1           THE PROSPECTIVE JUROR:  Thank you.

2           (Prospective juror leaves sidebar.)

3           (In open court.)

4           THE COURT:  No. 69, come on up, please.

5           (Sidebar continues; prospective juror joins.)

6           THE COURT:  Hello.  Come on up.  You're No. 69, this

7    is your name?

8           THE PROSPECTIVE JUROR:  Yes.

9           THE COURT:  Come up.  We're happy to hear from you

10   about any answers you had to our questions.

11          THE PROSPECTIVE JUROR:  I have to work.

12          THE COURT:  Where do you work?  Not the name of your

13   employer, but what kind of work do you do?

14          THE PROSPECTIVE JUROR:  Freight forwarding company

15   in Jamaica.

16          THE COURT:  Does your company pay you to be on jury

17   duty?

18          THE PROSPECTIVE JUROR:  Just one or two days.

19          THE COURT:  One or two days only.  All right.

20          And is your job flexible with your hours so that you

21   could do your freight forwarding work after 5:30 and during

22   the weekends?

23          THE PROSPECTIVE JUROR:  No, because this is regular

24   hours, every day, and I'm not allowed to do part work or

25   weekend.

```
                          Sidebar                          456
```

1           THE COURT:  You have to be in the office to do your
2    work?
3           THE PROSPECTIVE JUROR:  Yes, every day.
4           THE COURT:  Step back, please.
5           (Prospective juror leaves sidebar.)
6           MR. BRAFMAN:  No objection.
7           MS. KASULIS:  No objection.
8           THE COURT:  Thank you.
9           (Prospective juror joins sidebar.)
10          THE COURT:  Ma'am, we'll excuse you and ask you to
11   go back to the second floor where you checked in this morning
12   and tell them you've been excused.  Thank you.
13          (Prospective juror excused.)
14          THE COURT:  Juror 49 is going to come with an
15   answer.
16          (Sidebar continues; prospective juror joins.)
17          THE COURT:  No. 49, welcome back.  What do you have
18   to tell us?
19          THE PROSPECTIVE JUROR:  I must be present at my job
20   for production.  My income is mostly based on my performance,
21   and missing work for a lot of days I could risk losing my job.
22          THE COURT:  We don't want you to risk losing your
23   job.  I will excuse you.  Just tell them on the second floor
24   in the jury room that you've been excused.  They will give you
25   your paperwork.

```
                        Sidebar                        457

1              THE PROSPECTIVE JUROR:  Thank you.

2              (Prospective juror excused.)

3              THE COURT:  49 is excused, any objection?

4              MR. BRAFMAN:  No.

5              MS. KASULIS:  No.

6              THE COURT:  That's it.  The question is whether we

7    have enough to proceed.

8              THE COURTROOM DEPUTY:  I believe we have 63 in

9    total.

10             THE COURT:  Are we excluding -- there were two from

11   yesterday, one of whom had a doctor's appointment and is

12   coming in at 1.  I think he's been directed to come back.  One

13   was working, had just started a job.  She was doing training,

14   she was three weeks on the job, and she was going to check

15   with her employer.

16             What happened to that juror, the one in training?  I

17   think, Vivek, you were talking to her.

18             THE LAW CLERK:  She was supposed to come back today

19   to report in.

20             THE COURT:  Do you remember her number?

21             THE LAW CLERK:  Yes, I do.

22             THE COURTROOM DEPUTY:  Was it 147 or 148?

23             THE LAW CLERK:  I believe 148.

24             MS. SMITH:  148.

25             THE COURT:  Is she here?  Are they both here?
```

```
                        Sidebar                    458
```

1          The question is whether we have enough to continue

2     with our voir dire.  We have a total of how many, Sandra?

3          THE COURTROOM DEPUTY:  We should have 63.

4          THE COURT:  63 total?

5          THE COURTROOM DEPUTY:  Yes.

6          THE COURT:  Does that feel like a sufficient number?

7          MR. BRAFMAN:  It should be.

8          THE COURT:  We may lose additional who say I have

9     law enforcement in my family and can't be objective, that kind

10    of thing.

11         MS. KASULIS:  Are you going to review for the pool

12    that we have from yesterday the issue about seeing the Post?

13         THE COURT:  Yes, we will.  Let me make sure they

14    come up separately.  Maybe I should just address all of them,

15    though, because some of these jurors didn't raise their hand

16    but we didn't actually focus on that.  So, let's keep those

17    folks here.  We will bring back everybody from yesterday.

18         MR. BRAFMAN:  Now or after lunch?

19         THE COURT:  Do you mind if we don't take lunch?

20    Seriously, I don't want to deny you lunch if you need to eat.

21         MR. BRAFMAN:  It's not a question of lunch.  I could

22    use a break.  If we could take a break for half-hour, I would

23    like to grab something to eat and I do need to make some

24    calls.

25         THE COURT:  Ms. Jackson, there's a request for a

```
              LAM       OCR       RPR
```

```
                        Sidebar                          459
```

1  30-minute break.

2           So, we'll take a 30-minute break.

3           MR. BRAFMAN:  Thank you.

4           THE COURT:  Let me just admonish the jurors and I'll

5  ask them to come back to the jury room, we'll grab everybody,

6  put them in some kind of order, and bring them back.  Thank

7  you.

8

9           (Continued on next page.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (In open court.)

2          THE COURT:  Thank you for your attention.  The three

3  jurors who are here, we are going to take a half-hour break.

4  At the conclusion of that 30 minutes, if you could please

5  report to the jury room on the second floor at 1:15.  We will

6  then bring everybody back up to continue questioning.

7          In the meantime, please do not read any media

8  reports about this case.  Don't do any research on your own.

9  If you get a pop-up about this case, disregard it.  Don't read

10  any papers.  If you see something with a photograph with Mr.

11  Shkreli, ignore it, please.  Don't look at it.  Don't allow

12  anyone to speak to you about the case.  Don't even speak about

13  it among yourselves.  I would ask you to please go back to the

14  jury room until 1:15.  In the meantime, you can retrieve your

15  phones.  There is a cafeteria on the second floor.  You can go

16  to the snack bar on the ground floor.  Thank you very much for

17  your patience.  I appreciate it.

18          (Prospective Jurors exit the courtroom.)

19          THE COURT:  Please be back here by 1:15, no later.

20          Yes, Ms. Kasulis.

21          MS. KASULIS:  Your Honor, for scheduling, we have

22  witnesses who have been scheduled to come in perhaps this

23  afternoon.  We have been talking and with the pace of our jury

24  selection, we could potentially get to openings today, but we

25  were talking about perhaps having a first witness come

461

1  tomorrow morning to start the day with the first witness

2  instead of having witnesses come.

3          THE COURT:  I think that might work out best because

4  I am up to question two or three.  That is how far we have

5  gotten.  I have another dozen or so.

6          MR. BRAFMAN:  I think we agree on this, Judge,

7  subject to Your Honor's approval.

8          THE COURT:  One other thing, Mr. Brafman, hearing

9  what you have heard so far about the jurors and their exposure

10 to the media coverage, do you have ongoing concerns?  We

11 haven't yet heard from the folks from yesterday.

12         MR. BRAFMAN:  I have just ongoing concern as to the

13 panel we already picked because they were sitting jurors that

14 they referenced in the article.  I would ask the Court to do

15 an inquiry of those people, but I'm not looking to belabor the

16 issue.

17         THE COURT:  What I was proposing to do is bring all

18 of the jurors back.  We will ask everybody about that and we

19 will see what their answers are.

20         MR. BRAFMAN:  That is fine, Judge.

21         THE COURT:  Thank you.  May I just address any

22 sketch artist who may have drawn pictures of jurors' faces.

23 That was prohibited by my order.  So if you have drawn jurors'

24 faces or any other identifying features, I would ask you,

25 please, those not be published.  It is important to protect

462

1    the jurors' ability to be candid during voir dire.  I don't

2    know whether that happened.  But if it did happen, I ask you

3    to refrain and not publish pictures of jurors' faces.

4              Thank you.

5              MS. KASULIS:  Thank you, Your Honor.

6              (Lunch recess.)

7                        AFTERNOON SESSION

8              (In open court; prospective jurors not present.)

9              THE COURT:  We thought it would be a good idea to

10   have a sidebar with the lawyers to make sure there are lists

11   of current jurors in our pool are consistent with your list

12   shows.  If you want to come up here.  We will speak with our

13   court reporter present and make sure that we all are on the

14   same page.

15             (Continued on next page.)

16

17

18

19

20

21

22

23

24

25



Sealed by Order of the Court                    463

MDL   RPR



Sealed by Order of the Court                    464

MDL  RPR



Sealed by Order of the Court                465

MDL   RPR



Sealed by Order of the Court                    466

MDL   RPR



Sealed by Order of the Court                    467

MDL   RPR

468

1            (The following occurred at sidebar; prospective

2    juror present.)

3            THE COURT:  We are handing out a slight correction.

4    We omitted one juror.  And also those who were sort of up in

5    the air, we put at the end of the list.

6            We can take the old ones.

7            Counsel, we brought two jurors back from today and

8    yesterday who had to check with their employers regarding

9    certain issues, and I thought we can address their answers at

10   sidebar just to make sure that we can tell them now whether

11   they are going to stay or be excused.  So the two that we have

12   back, first of all, is Juror number -- are you --

13           THE PROSPECTIVE JUROR:  67.

14           THE COURT:  Let me just get your name.  Give me your

15   number.  Let me confirm who you are.

16           Thank you.

17           (Pause.)

18           THE COURT: We have made a revised list as of today

19   based on just renumbering all of the jurors.  This juror is

20   now number 62 on our list.  She had issues regarding training

21   at a new job; is that correct?

22           THE PROSPECTIVE JUROR:  Correct.

23           THE COURT:  We wanted you to go back and find out

24   what your employer's requirements would be.

25           THE PROSPECTIVE JUROR:  My employers will pay me for

469

1  jury duty.  I did explain to them the time frame, it is you

2  have to because I have on the job situation with training at

3  this time.

4           THE COURT:  Did your employer allow you to

5  reschedule your training for some other date?

6           THE PROSPECTIVE JUROR:  It is based on a contract

7  that is signed where the training is on the job at the moment.

8  If I wait six weeks, I may not get the same training, so it

9  puts me behind.

10          THE COURT:  There is no training you can do online?

11          THE PROSPECTIVE JUROR:  The training that I have

12 done online, I completed that, so now I am actually working

13 with someone.

14          THE COURT:  What is the nature of the work that you

15 are doing?

16          THE PROSPECTIVE JUROR:  So my company provides

17 facility management services for new contracts and we signed

18 the new contract, so they are doing the transition now during

19 this time period.

20          THE COURT:  So at this time currently there is

21 on-the-job training?

22          THE PROSPECTIVE JUROR:  Correct.

23          THE COURT:  What are the consequences if you don't

24 do your on-the-job training now?

25          THE PROSPECTIVE JUROR:  I will be behind and I will

470

1    be -- well, it was affect my being independents on my own,

2    doing my job independently for my employer.

3            THE COURT:  Will it result in any decrease in your

4    pay?

5            THE PROSPECTIVE JUROR:  No decrease in pay.

6            THE COURT:  Are you paid a salary.

7            THE PROSPECTIVE JUROR:  Salary.

8            THE COURT:  All right.  Let me ask you to step aside

9    for just a moment, please.

10           (Prospective juror leaves sidebar.)

11           MR. BRAFMAN:  Could you ask if she could give us her

12   undivided attention during the period she is required to serve

13   or whether that will serve as a distraction because she's

14   worried about missing the training.

15           THE COURT:  All right.  Are there any questions that

16   the Government would like?

17           MS. KASULIS:  We would -- it sounds like it doesn't

18   affect her pay, a promotional track or anything along those

19   lines.  It sounds like it is not a -- it sounds like she's not

20   going to be sort of independent in her job until six weeks.  I

21   am fine if Mr. Brafman is fine.

22           (Prospective juror present at sidebar.)

23           THE COURT:  It is important that jurors give the

24   case and the evidence undivided attention and be able to focus

25   and to observe the demeanors of witnesses.  So the question

1  for you is whether you would be able to do that given what you

2  have described as your situation?

3          THE PROSPECTIVE JUROR:  I honestly don't think I

4  would be focused because I would be concerned about what's

5  going on personally and being behind.

6          THE COURT:  At your job?

7          THE PROSPECTIVE JUROR:  Correct.

8          THE COURT:  Is there some benefit financially or

9  otherwise in terms of promotional opportunities that you would

10  have if you had the training now as opposed to later?

11          THE PROSPECTIVE JUROR:  Correct.  I would be

12  entitled to a bonus or promotional opportunities.

13          THE COURT:  Do you know roughly what the bonus is?

14          THE PROSPECTIVE JUROR:  It is about 20 percent of

15  your salary.

16          THE COURT:  That's based on what metrics?

17          THE PROSPECTIVE JUROR:  Performance.

18          THE COURT:  Okay.  All right.  Thank you.  Let me

19  ask you to step back one more time.

20          (Prospective juror leaves sidebar.)

21          THE COURT:  I think we have been pretty generous

22  with other jurors.  I think we should let her go.  She has

23  followed and demonstrated good faith.  Any objection?

24          MR. BRAFMAN:  I agree.

25          MS. KASULIS:  No objection.

472

1          (Prospective juror present at sidebar.)

2          THE COURT:  Ma'am, we are going to excuse you and

3    thank you for your diligent follow up.  You can tell the jury

4    clerk that you have been excused.

5          THE PROSPECTIVE JUROR:  Thank you.

6          (Prospective juror excused.)

7          THE COURT:  Ma'am, come on up.

8          (Prospective juror present at sidebar.)

9          (Continued on next page.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
                       Side Bar                      473
```

1           (Side bar continues; prospective juror joins.)

2           THE COURT:  First, you are going to tell us your

3    number from yesterday, if you remember it, and then we are

4    going to talk about your number on the revised list which is

5    now 64.

6           THE PROSPECTIVE JUROR:  Sixty-seven was my previous

7    one.

8           THE COURT:  So we're doing some follow-up questions

9    or investigation with your employer, correct?

10          THE PROSPECTIVE JUROR:  Yes.  In fact, they've never

11   had a situation like this, so they were not really available

12   to do that but just because they'll work with me on this at

13   all, I do decide to go with the selection process here.

14          THE COURT:  Well, we decide whether you go with the

15   selection process.

16          THE PROSPECTIVE JUROR:  I mean, if I go through it.

17   That's what I meant.

18          THE COURT:  So, ma'am, this is the thing.  One, you

19   will be paid during jury service, is that correct?

20          THE PROSPECTIVE JUROR:  Yes.

21          THE COURT:  And, two, your employer will allow you

22   to be flexible to work during other hours, if necessary?

23          THE PROSPECTIVE JUROR:  Yes.

24          THE COURT:  To stay up to speed?

25          THE PROSPECTIVE JUROR:  Uh-huh.

Side Bar                    474

1          THE COURT:  All right.  And, yes.  Okay.  Well,

2    thank you.  I appreciate your follow up.  Let me just ask you

3    to step back for one second, please.

4          THE PROSPECTIVE JUROR:  Sure.

5          THE COURT:  Thank you.

6          (Prospective juror leaves side bar.)

7          THE COURT:  This is Juror Number 64.  I think she's

8    qualified.

9          MR. BRAFMAN:  I'm impressed.

10          MS. KASULIS:  Yes.

11          (Prospective juror joins side bar.)

12          THE COURT:  Ma'am, we will ask you to start with the

13    panel and we appreciate your patience.  We would like you to

14    complete the selection process and see where that leaves you

15    at the end of the day.

16          THE PROSPECTIVE JUROR:  All right.

17          THE COURT:  All right.  Thank you.

18          So, I'm thinking that maybe, unless there is

19    something else we need to address regarding the list, we can

20    probably bring the other jurors up.

21          MS. KASULIS:  Let me check with Ms. Smith.

22          THE COURT:  Do you have the list?

23          MR. AGNIFILIO:  Almost there.

24          THE COURT:  So now what I'd like you do.  Are your

25    things upstairs?

475

1           THE PROSPECTIVE JUROR:  No, it's there.

2           THE COURT:  If you mind sitting tight and we will

3    redirect to you a seat.  Okay.  Thank you.  All right.

4           MS. KASULIS:  Thank you, Judge.

5           (In open court; side bar ends.)

6           (Pause.)

7           MR. AGNIFILIO:  We are ready.

8           THE COURT:  Did everything check out?  Is your list

9    consistent with ours?

10          MR. AGNIFILIO:  Yes.

11          MS. KASULIS:  Yes.

12          THE COURT:  Just for the record, we made a few

13   changes.  The list ends with Juror 62, who was Juror 64 on the

14   Court's revised list of today.

15          MR. BRAFMAN:  Number 63, is it?

16          THE COURT:  Okay.  We have excused 62.  Juror 63 did

17   not show up so the person who was Juror 64 has been moved up

18   to seat 62.

19          MR. BRAFMAN:  Thank you.

20          THE COURT:  And she is the woman in the courtroom.

21          All right.  We are in the process of assembling the

22   jurors and we will have them come back in and resume voir

23   dire.

24          (Pause.)

25          (Prospective jurors enter.)

476

1          THE COURT:  All right.  Please be seated.

2          Good afternoon.  I want to thank all of the jurors

3    for their ongoing patience and for returning to court and to

4    continue this process with us.  I remind you all that you are

5    still under oath.

6          I would like to ask whether any of you have seen,

7    since yesterday or today any media reports about this case or

8    concerning Mr. Shkreli?  I know that I have asked you to try

9    to avoid such reports and do not read such reports, but I

10   wanted to make sure that if somebody has seen something, that

11   we learn about it and also learn whether that exposure any

12   media reports may have affected your state of mind.

13         So, if anyone has seen something since yesterday or

14   today or ever that has affected their ability to consider this

15   case and the evidence in a fair and open-minded way to both

16   sides, I would like to know and see any hands raised.

17         Is there anybody here?  No.

18         Did we have a hand up?  This is juror --

19         THE PROSPECTIVE JUROR:  -- 21.

20         THE COURT:  All right.

21         THE PROSPECTIVE JUROR:  Your Honor.  I accidentally

22   overheard a radio commentary.

23         THE COURT:  What we will do is talk to you at side

24   bar.

25         THE PROSPECTIVE JUROR:  Yes.

Side Bar                      477

1           THE COURT:  I am sorry to inconvenience your

2    colleagues in your row, but you will have to see me at side

3    bar.

4           Juror 21, please come down.

5           (The following occurred at side bar; prospective

6    juror joins.)

7           THE PROSPECTIVE JUROR:  Yes, Your Honor.

8           THE COURT:  Are you this individual?

9           THE PROSPECTIVE JUROR:  Yes, that's me.

10          THE COURT:  Come forward, please.

11          THE PROSPECTIVE JUROR:  Yes.

12          THE COURT:  All right.  Sir, you saw you heard

13   something on the radio?

14          THE PROSPECTIVE JUROR:  Yes, a brief commentary the

15   fact that the defendant involved in the situation of the

16   conspiracy nature and that people were calling him a snake.

17          THE COURT:  Okay.  All right.  Please.

18          THE PROSPECTIVE JUROR:  Derogatory remarks.

19          THE COURT:  The media reports, I understand this is

20   an accidental hearing on your part, but would that, hearing

21   that affect your ability to keep an open mind and to evaluate

22   only the evidence in this case and assessing the evidence and

23   deciding the facts in dispute?

24          THE PROSPECTIVE JUROR:  I'm afraid it might put more

25   bias on my nature, more, you know, it's hard for me to come to

Side Bar                              478

1    a balanced discussion of the evidence.

2              THE COURT:  I beg your pardon?

3              THE PROSPECTIVE JUROR:  It would be hard for me to

4    come to a balanced discussion of the evidence, yes.

5              THE COURT:  Let me be clear.  What has been reported

6    in the media was not among people who are still in this room.

7    As we went through the examination process yesterday, if you

8    jurors expressed those types of sentiments, they were

9    dismissed because we wanted to make sure that both sides have

10   jurors with a fair state of mind, an impartial state of mind.

11             THE PROSPECTIVE JUROR:  Yes.

12             THE COURT:  So we would not be -- if you were

13   selected, there would not be other jurors as far as we know

14   who shared those viewpoints.  They have been excused.

15             THE PROSPECTIVE JUROR:  But I just, I'm afraid that

16   that might interfere.  Plus, I have hypertension.  If my blood

17   pressure goes up, would I be able to adjust with the proper

18   thinking ability.

19             THE COURT:  All right.  So you have some health

20   issues and you're under the care of a doctor?

21             THE PROSPECTIVE JUROR:  Yes.  I take a very high

22   dosage of this.

23             THE COURT:  Okay.  Well, I wouldn't want you to be

24   affected by jury service.

25             THE PROSPECTIVE JUROR:  Thank you.

Side Bar                                     479

1          THE COURT:  Let me ask you to step back, please.

2          (Prospective juror leaves side bar.)

3          MR. BRAFMAN:  We challenge him for cause, Your

4   Honor.

5          MS. KASULIS:  Yes.

6          THE COURT:  We will excuse him.

7          MS. SMITH:  Yes.

8          THE COURT:  We will excuse Juror 21 for cause.

9          (Prospective juror joins side bar.)

10         THE COURT:  Sir, we are going to excuse you.  We

11  will ask you to go down to the jury room and check in and let

12  them know you have been excused.

13         THE PROSPECTIVE JUROR:  Yes, ma'am.

14         THE COURT:  All right.  Thank you.  Be well.

15         (Prospective juror excused.)

16         MR. BRAFMAN:  There was another person who had a

17  hand up.

18         (In open court.)

19         THE COURT:  Is there another person who had their

20  hand up?

21         What is your number, ma'am?

22         THE PROSPECTIVE JUROR:  28.

23         THE COURT:  28, come forward, please.

24         (Side bar continues; prospective juror joins.)

25         THE COURT:  Come forward, please.

Side Bar                                    480

1           THE PROSPECTIVE JUROR:  Hi.

2           THE COURT:  What did you hear?

3           THE PROSPECTIVE JUROR:  I avoided stuff but on the

4    way home yesterday on the train, someone was holding a paper.

5    It was the cover of the New York Post.  When I see things, I

6    read them.  So it was about other people being sent home and

7    most were sent home because they called him a snake.

8           THE COURT:  Okay.

9           THE PROSPECTIVE JUROR:  That's -- I'm trying to

10   erase that from my head.

11          THE COURT:  Okay.  Well, the question for you is

12   having seen that, would you be able to consider the evidence

13   in this case with a fair and impartial state of mind to both

14   sides in the dispute?

15          THE PROSPECTIVE JUROR:  I think that I can.  I just

16   wanted you to be aware.

17          THE COURT:  No.  I appreciate that.  The important

18   thing is it's hard.

19          THE PROSPECTIVE JUROR:  Yes.

20          THE COURT:  We have radio reports.  I know that you

21   tried very hard.

22          THE PROSPECTIVE JUROR:  I did.  I watched "The

23   Bachelorette" and went to bed.  It was terrible.

24          THE COURT:  Despite our best efforts, I appreciate

25   your best efforts, sometimes we're all exposed.  So, the

1   question is do you --

2            THE PROSPECTIVE JUROR:  It was, like, hello.

3            THE COURT:  Yes.

4            THE PROSPECTIVE JUROR:  I recognized it.

5            THE COURT:  All right.  So, could you nonetheless

6   evaluate the evidence and decide this case based only on the

7   evidence at trial?

8            THE PROSPECTIVE JUROR:  I'll do my best to do that.

9            THE COURT:  Well, is there a concern?  Do you have

10  any concerns?

11           THE PROSPECTIVE JUROR:  No.  No, I don't.

12           THE COURT:  All right.  The media reports certain

13  highlights, but those individuals were excused because they

14  weren't demonstrating a commitment to fairness and

15  impartiality and the question for you is --

16           THE PROSPECTIVE JUROR:  Yes, I did.

17           THE COURT:  You can?

18           THE PROSPECTIVE JUROR:  Yes.

19           THE COURT:  Okay.  Ma'am.

20           THE PROSPECTIVE JUROR:  I'm a good honest person.

21           THE COURT:  Juror Number 28, we thank you for your

22  candor.  Please step back for a moment.

23           (Prospective juror leaves side bar.)

24           MR. BRAFMAN:  Let me note for the record that the

25  headline she's referring to didn't come out until this

```
                        Side Bar                        482
```

1    morning.

2              THE COURT:  Whatever, she saw it.

3              THE PROSPECTIVE JUROR:  But she couldn't have seen

4    it on the way home last night which concerns me as to whether

5    this juror is being completely candid.

6              MS. SMITH:  There was an article not in the

7    newspaper, but it came out actually before we left the

8    courthouse yesterday.

9              MR. BRAFMAN:  Online.

10             MS. SMITH:  No, I know.

11             MR. BRAFMAN:  But the newspaper she's talking about

12   is the New York Post.

13             THE COURT:  So what would you like me to ask her

14   whether she saw it, last night or this morning?

15             MR. BRAFMAN:  Whether she saw it last night or this

16   morning.

17             THE COURT:  All right.  Okay.

18             MS. KASULIS:  Clarify with respect to the cover, did

19   the cover have "snake" on it?

20             THE COURT:  No.

21             (Prospective juror joins side bar.)

22             THE COURT:  Ma'am, when you said you saw a headline

23   in the New York Post, was it last night or this morning?

24             THE PROSPECTIVE JUROR:  I have short-term memory.

25   I'm a cancer survivor.  I had a brain tumor.  I can't tell you

1   whether it was this morning or last night.  I think.

2           THE COURT:  Did you take the train --

3           THE PROSPECTIVE JUROR:  I think it was last night

4   coming home on the train from Atlantic Terminal to Jamaica.  I

5   think that's when it happened.

6           THE COURT:  All right.  Do you recall as best you

7   can what the headline was?

8           THE PROSPECTIVE JUROR:  It started with "100" and

9   ended with "jurors," I believe.

10          THE COURT:  All right.  And you said there was

11  mention of a snake?

12          THE PROSPECTIVE JUROR:  Yes.

13          THE COURT:  Where did you see that?

14          THE PROSPECTIVE JUROR:  I think that was on the

15  side.

16          THE COURT:  On the front page?

17          THE PROSPECTIVE JUROR:  Yes.

18          THE COURT:  All right.  Would you kindly step back?

19          THE PROSPECTIVE JUROR:  Absolutely.

20          (Prospective juror leaves side bar.)

21          MR. BRAFMAN:  Well, look, Your Honor, fortunately, I

22  have the newspaper there.  She's said that she saw it.

23  Inside, it said "snake."  The headline doesn't say "snake."

24          THE COURT:  She had a brain tumor so --

25          MR. BRAFMAN:  What?

```
                        Side Bar                    484
```

1              THE COURT:  She had a brain tumor so she doesn't

2       have great short-term memory.  That might be a problem.

3              MS. SMITH:  Yes.  Yes.

4              THE COURT:  That might be a reason to excuse her.

5              MR. BRAFMAN:  Yes.

6              THE COURT:  Both sides agree.

7              (Prospective juror joins side bar.)

8              THE COURT:  Ma'am, we are going to excuse you.

9              THE PROSPECTIVE JUROR:  Yes.

10             THE COURT:  If you can go down to the second floor.

11      We will ask you just to tell them you have been excused and

12      you will get your papers.

13             THE PROSPECTIVE JUROR:  Okay.  Thank you.  Thank

14      you.

15             THE COURT:  Thank you.

16             (Prospective juror excused.)

17             MR. BRAFMAN:  Thank you, Judge.

18             We have a suggestion.

19             MR. AGNIFILIO:  May I make a suggestion?  I wonder,

20      because the way Your Honor phrased it which I understand, is

21      you said, I gave you an admonition not to, but if anyone did,

22      and by looking at the jury, even the one who raised his hand

23      didn't know whether to raise his hand.  So I'm hoping, I'm

24      asking if you could -- so there's nothing wrong with it

25      really, just assure them there's nothing wrong that they saw.

Side Bar                                485

1    I'm afraid they think it's wrong saw something because how

2    could they not?

3            THE COURT:  Yes.

4            MR. AGNIFILIO:  And they're afraid to raise their

5    hand because they don't want to do something wrong.

6            THE COURT:  Just for the record, I was using words

7    suggested by your colleague.  Thank you for complying with my

8    admonition.  All right?

9            MR. AGNIFILIO:  Right.

10           THE COURT:  So, I'm sorry if you think that was

11   chilling, but I am going to rephrase.  Why don't you two

12   figure out what you want me to say because once I say it, I've

13   said it.  All right?

14           MR. BRAFMAN:  I agree I've asked you to say it.

15           THE COURT:  Yes, you did.

16           MR. BRAFMAN:  But what's happened is, despite

17   whether there's an avalanche of publicity, out of 62 people,

18   two people raised their hands.

19           THE COURT:  I understand.

20           MR. BRAFMAN:  I think the concern is they're afraid

21   to say yes, thinking they violated the oath or law.

22           THE COURT:  Well, I will assure them that their

23   candor is more important at this time.

24           MR. BRAFMAN:  Thank you.

25           THE COURT:  And I'm not faulting them for having

1   been exposed.

2          MR. BRAFMAN:  Thank you, Judge.

3          THE COURT:  Just a moment.  Let's turn off the white

4   noise for one second.

5          (In open court.)

6          THE COURT:  I want to assure all of you that it is

7   possible that you were exposed.  By letting me know if you did

8   hear or read something inadvertently, the Court does not want

9   you to feel that you did anything wrong.  Really what we need

10  to explore is whether, one, you heard anything or listened to

11  anything about this case inadvertently and whether that had

12  any effect on your ability to sit as fair-minded and impartial

13  jurors throughout this case.

14         So, the important question is did you hear or see or

15  read anything about this case and if so, what is the effect of

16  that exposure on your ability to sit as a fair and impartial

17  juror.

18         Now, I saw Juror Number 6.  You did?  Okay, come on

19  up, ma'am.  Thank you.

20         (Side bar continues; prospective juror joins.)

21         THE COURT:  Yes, ma'am.  You are Juror Number 6?

22         THE PROSPECTIVE JUROR:  Yes.  Yes.

23         THE COURT:  What would you like to tell us?  What

24  did you see or hear?

25         THE PROSPECTIVE JUROR:  I see the front page.

```
                          Side Bar                    487

 1            THE COURT:  You saw the front page?

 2            THE PROSPECTIVE JUROR:  Yes, and I remember the

 3    news.

 4            THE COURT:  Come close.  Don't be nervous.

 5            THE PROSPECTIVE JUROR:  About the part, the thing

 6    about the allergy medication jump 400 percent, and that, and I

 7    put everything in my mind and I'm career, I'm a nurse.

 8            THE COURT:  You're what?

 9            THE PROSPECTIVE JUROR:  My career is nursing.  It

10    affect my ability.

11            THE COURT:  So you saw something recently?

12            THE PROSPECTIVE JUROR:  Yes.

13            THE COURT:  And you started to remember past

14    reports?

15            THE PROSPECTIVE JUROR:  Yes.

16            THE COURT:  And you're a nurse?

17            THE PROSPECTIVE JUROR:  Yes.

18            THE COURT:  And putting those reports together,

19    combined with your career --

20            THE PROSPECTIVE JUROR:  Yes.

21            THE COURT:  -- could you decide with an open mind

22    and with a fair mind the evidence in this case?

23            THE PROSPECTIVE JUROR:  It is my career to take care

24    of patients.

25            THE COURT:  To take care of patients?
```

```
                         Side Bar                         488
```

1             THE PROSPECTIVE JUROR:  Yes.  And I work hard for

2     them.

3             THE COURT:  You work hard for them.  Well, I have no

4     doubt that you do, but the question is whether you would

5     commit yourself to listen to the evidence with a fair and open

6     mind.  Could you do that?

7             THE PROSPECTIVE JUROR:  I'm not sure because this is

8     in my mind since last year.

9             THE COURT:  This is what?

10            THE PROSPECTIVE JUROR:  This case, before I come the

11    case, the name is in my mind from last year.

12            THE COURT:  Okay.

13            THE PROSPECTIVE JUROR:  That -- what the people who

14    do it, to harm the weak person, elderly, children, and my

15    colleague in field.

16            THE COURT:  I understand.  All right.  Let me ask

17    you to step back a moment.

18            (Prospective juror leaves side bar.)

19            MR. BRAFMAN:  We consent.  She's almost in tears.

20            MS. SMITH:  Yes.

21            THE COURT:  Okay.  You consent.  All right.  We will

22    dismiss Juror Number 6.  Okay.  All right.  I will dismiss

23    Juror Number 6.

24            (Prospective juror joins side bar.)

25            THE COURT:  Ma'am, thank you for your open candid

Side Bar                                489

1    answers.  We will excuse you and ask you to go back to the

2    jury room and tell them you are excused so I think you will

3    get your papers and you can be finished.  Okay?

4                THE PROSPECTIVE JUROR:  Thank you very much.  Thank

5    you.

6                THE COURT:  Yes.

7                Is there anyone else?  All right.  Come forward and

8    tell me your number.

9                THE PROSPECTIVE JUROR:  Number 30.

10               THE COURT:  Thank you.  Juror Number 30.

11               (Side bar continues; prospective juror joins.)

12               THE COURT:  Yes, ma'am.  Come forward.

13               THE PROSPECTIVE JUROR:  It's not actually with the

14   case.  I just called my job people and let them know selection

15   is not finished yet and if I been selected, it could go for

16   six weeks.  They said I have to leave the job and then come

17   back when you finish jury duty to start as a fresh person.

18               THE COURT:  I see.  What --

19               THE PROSPECTIVE JUROR:  Bed Bath and Beyond.  So

20   that's -- I'm scared.

21               THE COURT:  Okay.  So they said you would have to

22   resign?

23               THE PROSPECTIVE JUROR:  Kind of, but they said then

24   you can rejoin us when you finish jury duty.  I worked there

25   five years, but I don't want to start as a fresh person.

```
                        Side Bar                    490
```

1           THE COURT:  And they wouldn't want to pay you during

2      that time?

3           THE PROSPECTIVE JUROR:  Yes.  Not even pay, then I'm

4      going to lose benefits.

5           THE COURT:  I understand.  I understand.

6           This is you, correct?

7           THE PROSPECTIVE JUROR:  Yes.

8           THE COURT:  Step back a minute, please.

9           (Prospective juror leaves side bar.)

10          THE COURT:  I think we're going to have to excuse

11     her.

12          MS. SMITH:  Yes.

13          MR. BRAFMAN:  No objection.

14          THE COURT:  And not deprive her of a living.  30

15     will be excused on consent.

16          (Prospective juror joins side bar.)

17          THE COURT:  Okay.  Ma'am, we will excuse you.  You

18     can go down to the jury room where you checked in, tell them

19     you have been excused and get a paper for your job.  You don't

20     have to come back.

21          THE PROSPECTIVE JUROR:  Thank you so much.

22          (Prospective juror excused.)

23          (In open court.)

24          THE COURT:  Is there anyone else?

25          Okay.  The gentleman in the back, please come

Side Bar                                    491

1    forward.  Give me your number please.

2              THE PROSPECTIVE JUROR:  52.

3              (Side bar continues; prospective juror joins.)

4              THE COURT:  This is Juror Number 52.

5         Come forward.  That's you?

6              THE PROSPECTIVE JUROR:  Yes.

7              THE COURT:  Number 52.  Yes, sir.

8              THE PROSPECTIVE JUROR:  This is an important matter.

9    I want to be excused.  This is too close to my home.

10             THE COURT:  Sir, okay.  Our District includes

11   Brooklyn, Queens, Long Island and Staten Island, and jurors

12   from all over the District come and serve.

13             THE PROSPECTIVE JUROR:  I know, but I can move to

14   something else, but I don't think I want to be on this case

15   because it's close to where I'm residing.  I reside close.

16             THE COURT:  Well, it's a convenient commute to,

17   between wherever you reside and the courthouse.

18             THE PROSPECTIVE JUROR:  No, that's not what I'm

19   referring to.  This kid grew up in Brooklyn close to where I

20   grew up, by Riverside.

21             THE COURT:  Do you know him?

22             THE PROSPECTIVE JUROR:  I don't know him personally

23   but I work in the area.  So that's why I'm asking to be

24   excused.

25             THE COURT:  Are you concerned for your safety?

CMH      OCR      RMR      CRR      FCRR

```
                        Side Bar                    492
```

1          THE PROSPECTIVE JUROR:  I am.

2          THE COURT:  Do you have any reason to be concerned?

3    Because I will tell you that there's no evidence before the

4    Court that there's any reason to be concerned and certainly,

5    if the Court were to become aware of any reason, we would take

6    appropriate measures.

7          THE PROSPECTIVE JUROR:  The reason I'm concerned is

8    because, like I said, I work in the area as well and that's

9    why I'm concerned.

10         THE COURT:  Well, I don't know where this gentleman

11   lives.  He might have grown up in your area, but I don't think

12   his residence is an issue --

13         THE PROSPECTIVE JUROR:  Okay.

14         THE COURT:  -- for your concern.

15         THE PROSPECTIVE JUROR:  Okay.

16         THE COURT:  But let me -- can you articulate a

17   little bit more clearly what your concern is?

18         THE PROSPECTIVE JUROR:  In the papers, he reside in

19   Brooklyn, Sheepshead Bay, and I live ten minutes from there.

20         THE COURT:  Yes.  Well, I need to remind you --

21         THE PROSPECTIVE JUROR:  So that's why I'm concerned.

22         THE COURT:  Okay.  Well, I would like to just advise

23   you of a couple of things.

24         THE PROSPECTIVE JUROR:  Yes.

25         THE COURT:  One, to remind you that there is a

Side Bar                                    493

1  presumption of innocence.

2          THE PROSPECTIVE JUROR:  Okay.

3          THE COURT:  Simply because someone is charged with

4  an offense does not mean they are guilty.

5          THE PROSPECTIVE JUROR:  Right.

6          THE COURT:  All we have here is an accusation and

7  the Government would have to prove by competent evidence and

8  beyond a reasonable doubt that someone is guilty before you

9  may find him guilty.

10          THE PROSPECTIVE JUROR:  Agree.

11          THE COURT:  And all twelve people must find someone

12  guilty before they are found guilty.

13          All right.  Now, the fact that in New York City we

14  may live near someone who is charged with an offense does not

15  in and of itself provide a basis to be fruitful or concerned.

16  We know of no evidence in this case that would cause concern

17  that any juror would be harmed and I just want to advise you

18  of that and see whether you have a response.

19          THE PROSPECTIVE JUROR:  I don't.

20          THE COURT:  Okay.  Well, could you evaluate this

21  case fairly and keep an open mind?

22          THE PROSPECTIVE JUROR:  That may be my problem as

23  well.  I mean I want to be a fair jury because I'm there, I'm

24  close to this person.

25          MR. BRAFMAN:  May we have a moment, Judge.

```
                          Side Bar                      494
```

1              THE COURT:  How did you find out about where --

2              THE PROSPECTIVE JUROR:  I saw it in the newspaper.

3              THE COURT:  When?

4              THE PROSPECTIVE JUROR:  In the paper this morning.

5              THE COURT:  What paper did you see?

6              THE PROSPECTIVE JUROR:  Daily News.

7              THE COURT:  And was there a headline where it said

8    where Mr. Shkreli lives?

9              THE PROSPECTIVE JUROR:  It said he used to live in

10   Brooklyn, Sheepshead Bay.

11             THE COURT:  A headline?

12             THE PROSPECTIVE JUROR:  No.

13             THE COURT:  You know I asked you not to read the

14   paper.

15             THE PROSPECTIVE JUROR:  Right.

16             (Prospective juror leaves side bar.)

17             MS. SMITH:  Your Honor, this witness actually told

18   us this this morning.  This is the second pool so he told us

19   that he had read it this morning.

20             THE COURT:  Oh.

21             MS. SMITH:  And that it was not going to have an

22   effect on him.  And he also as a vacation.

23             MR. BRAFMAN:  Let me say something.  The only thing

24   negative about Mr. Shkreli that hasn't been reported to date

25   has just by this man unfortunately been provided.  This man

Side Bar                                495

1   doesn't want to serve.  He's the one who had the issue with

2   the vacation.  He went out and called his wife and came back.

3   He's now figured out a way to get out and I think we should

4   just get him out.

5           THE COURT:  Yes.  Okay.  Is that a challenge for

6   cause?  I think it is.

7           MS. SMITH:  Yes, I am concerned --

8           THE COURT:  52.

9           MS. SMITH:  -- if he is now manufacturing something,

10  which is enough --

11          THE COURT:  I agree with you.  There's just concern

12  that this is a new, a new reason.

13          MR. BRAFMAN:  He's going to write the first part

14  down.  I'd like the Government, the Government said that it's

15  manufactured.

16          THE COURT:  All right.

17          MR. BRAFMAN:  If the story is going to be he's

18  afraid, I think it should be --

19          MS. SMITH:  No, Your Honor.

20          (Prospective juror joins side bar.)

21          THE COURT:  All right.  Listen, I recall you had a

22  vacation and your wife was upset with you and I'm going to go

23  ahead and excuse you based on what you've told us.  Okay?

24          THE PROSPECTIVE JUROR:  Okay.

25          THE COURT:  Thank you.  You should go to the second

Side Bar                                          496

1    floor and tell them you're excused.

2              THE PROSPECTIVE JUROR:  Thank you.  Thank you very

3    much.

4              (Prospective juror excused.)

5              MS. SMITH:  For the record, I said we would be

6    concerned if he had manufactured anything so I was putting

7    that out there.  I did not say that in fact.

8              MS. KASULIS:  Yes, just to make it clear.

9              MR. KESHNER:  It was manufactured?

10             THE COURT:  She said "if," "if."

11             MS. SMITH:  I said the Government would be concerned

12   if there was a suggestion that he was manufacturing an excuse

13   to get out of jury service.

14             MR. KESHNER:  Okay.

15             MR. BRAFMAN:  There are hundreds, thousands of

16   people who live in Sheepshead Bay and this is just absurd, but

17   it is what it is.

18             THE COURT:  But you don't want a juror who is afraid

19   of your client either.

20             MR. BRAFMAN:  I don't think he's afraid of my

21   client.  I think he's afraid of his wife, to be perfectly candid.

22             (In open court.)

23             THE COURT:  Is there anyone else who had their hand

24   up?  Yes.  Come on up.

25             (Continued on next page.)

CMH        OCR        RMR        CRR        FCRR

```
                        Sidebar                      497
```

1    (Continuing)

2              (Sidebar continues; prospective juror joins.)

3              THE COURT:  What is you're number, ma'am?

4              THE PROSPECTIVE JUROR:  23.

5              THE COURT:  Let me just confirm.  I'm going to show

6    you our list and confirm that you are No. 23.

7              THE PROSPECTIVE JUROR:  Yes.

8              I have little one at home, only two years old.  So,

9    I have to go home at three.

10             THE COURT:  We didn't know about this yesterday.

11             THE PROSPECTIVE JUROR:  I thought it was one day.

12             THE COURT:  No, I've been telling you it's six

13   weeks.

14             THE PROSPECTIVE JUROR:  I'm sorry.

15             THE COURT:  It's all right.

16             THE PROSPECTIVE JUROR:  I thought I stay and I just

17   found yesterday I got home.  I know it's long time.  So, I

18   can't really do that duty because I have a two years old at

19   home to take care of.

20             THE COURT:  Is there no parent or family member or

21   grandparent or aunt or uncle who can help you.

22             THE PROSPECTIVE JUROR:  The are not at home.  They

23   work.

24             THE COURT:  Okay.  All of your relatives are at

25   work.

```
                        Sidebar                        498
```

1              THE PROSPECTIVE JUROR:  Sorry.

2              THE COURT:  All right.  Let me ask you to step back

3      over here, please.

4              (Prospective juror leaves sidebar.)

5              THE COURT:  All right, well, she has issues now.  So

6      we are losing jurors still.

7              She has child care issues.  I guess the fact that

8      she didn't understand when I said that this was a six-week

9      trial has me concerned about her ability to understand the

10     evidence in the case.

11             MR. BRAFMAN:  There's no objection, Judge.

12             MS. KASULIS:  No objection.

13             THE COURT:  All right.  No. 23 will be excused on

14     consent.

15             (Prospective juror joins sidebar.)

16             THE COURT:  Ma'am, you have no child care; is that

17     right, no ability to get someone to help you?

18             THE PROSPECTIVE JUROR:  No.

19             THE COURT:  I will excuse you.  You can go down to

20     the jury room on the second floor and tell them you've been

21     excused and you can go home.  You need to get your papers.

22             THE PROSPECTIVE JUROR:  Thank you.

23             (Prospective juror excused.)

24             THE COURT:  We have one juror.  Well, I hate to

25     start over with him but...

```
                         Sidebar                        499
```

1            MS. SMITH:  Your Honor, if we don't wind up having

2    enough, are there more jurors coming tomorrow?

3            THE COURT:  We don't have any more here.

4            Could we get more jurors tomorrow?

5            THE COURTROOM DEPUTY:  I can talk to her.

6            THE COURT:  You may have to get 70 or 80.

7            He can come back tomorrow with the group, if we can

8    do it.

9            (In open court.)

10           THE COURT:  Did anyone else have their hand up?

11           We will resume questions.  Thank you, ladies and

12   gentlemen.  Is there anyone who has difficulty seeing,

13   hearing, speaking, understanding, or reading English or who

14   for any other reason would find it difficult to follow the

15   evidence presented at the trial?  If so, please raise your

16   hand?

17           I have already introduced you to the attorneys and

18   the parties, my case manager Ms. Sandra Jackson, and my law

19   clerk Vivek Tata.

20           Does anyone know any of the attorneys or other

21   individuals sitting at the tables for the Government or the

22   defense.  If so, please raise your hand.

23           Does anyone know Mr. Shkreli?

24           Do you, a family member, or close friend follow

25   Mr. Shkreli on any social media platform or service?  If so,

```
                           Sidebar                        500
```

1   raise your hand.

2           All right, Juror No. -- what's your number?

3           THE PROSPECTIVE JUROR:  17.

4           THE COURT:  I would you like to speak to you at

5   sidebar, please.  Thank you.

6           (The following occurred at sidebar; prospective

7   juror joins.)

8           THE COURT:  Sir, you're No. 17?  Please come forward

9   and tell us what you do.

10          THE PROSPECTIVE JUROR:  I work for a small media

11  company.

12          And many of my colleagues follow him on Twitter and

13  I've seen some of the inflammatory comments he's made towards

14  people on that platform.

15          THE COURT:  Has your exposure to anything you've

16  seen on social media or in the general mainstream media

17  affected your ability to consider this case with a fair mind

18  towards both sides and an impartial state of mind?

19          THE PROSPECTIVE JUROR:  I don't believe that it did,

20  no.

21          THE COURT:  And would you commit to isolating

22  yourself throughout this trial from any media regarding

23  Mr. Shkreli or this case?

24          THE PROSPECTIVE JUROR:  I would, but I do think that

25  with the nature of my colleagues being journalists it would be

```
                        Sidebar                      501
```

1  difficult for me to avoid it completely.  I can ask them to

2  refrain, if that's --

3          THE COURT:  Well, your colleagues aren't -- they're

4  not necessarily going to be sitting in the jury.

5          THE PROSPECTIVE JUROR:  Correct.

6          THE COURT:  What I need you to do is to not talk

7  with your colleagues or your friends or your family members

8  about this case.  Would you commit to doing that?

9          THE PROSPECTIVE JUROR:  Yes.

10          THE COURT:  Can I ask you the name of the media

11  platform that your friends use?

12          THE PROSPECTIVE JUROR:  Twitter.

13          THE COURT:  Have you formed any opinions about

14  Mr. Shkreli or this case based on what you or your friends

15  have discussed on Twitter?

16          THE PROSPECTIVE JUROR:  Not this case but him as an

17  individual, yes.

18          THE COURT:  Have you, yourself, formed an opinion?

19          THE PROSPECTIVE JUROR:  No.

20          THE COURT:  Because it's fine to have an opinion,

21  the question is whether any exposure that you've had outside

22  this courtroom would affect your ability to be fair and

23  impartial to both sides.  Could you do that?

24          THE PROSPECTIVE JUROR:  Yes.

25          THE COURT:  Thank you.  Can I just ask you to step

1    back one step.

2              (Prospective juror leaves sidebar.)

3              MR. BRAFMAN:  Your Honor, I think it's virtually

4    impossible for him to go to work every day with colleagues who

5    are following Mr. Shkreli on Twitter or who have.  Because

6    when we began, he said I'm familiar with through my colleagues

7    with the defamatory things he has said about people.

8              Unfortunately, the Twitter history is just horrific

9    and it will never be allowed into this courtroom.  Everybody's

10   going to be bombarded with it.  It's a difficult, if not

11   impossible, position to be completely independent because he

12   works with these people and I'm sure they're part of his

13   social network as well.  The Twitter is probably the most

14   prejudicial part of Mr. Shkreli's history.

15             THE COURT:  Well, he's going to be here in court,

16   not at work with colleagues.

17             MR. BRAFMAN:  But Twitter is available 24/7.

18             THE COURT:  He'll be instructed not to participate

19   on Twitter.

20             MR. BRAFMAN:  I would ask you to grant me a

21   challenge for cause.  I think the Government, in fairness,

22   should consent in this case.  And if they don't, I think you

23   should inquire about his ability to deal with his colleagues

24   on a going-forward basis:  Despite the inflammatory views of

25   Mr. Shkreli, could he conclude he could be acquitted?

```
                        Sidebar                        503
```

1          I think this puts this juror in an inappropriate and

2     unfair position.

3          MS. KASULIS:  Your Honor, with respect to follow up

4     along the line, I have no understanding whether he needs to be

5     on Twitter for work.  And if he has friends that are

6     journalists, they're not going to be able to not tweet about

7     this case, potentially, depending on the nature of their job,

8     and then automatically that would pop on his feed.  If he has

9     to be on Twitter to perform his job responsibilities or be

10    involved in his community that he works in professionally, we

11    have concerns as well about his exposure throughout the trial.

12         THE COURT:  Do you want to consent to the challenge

13    for cause?

14         MS. KASULIS:  Yes.

15         MR. BRAFMAN:  Thank you.

16         THE COURT:  This was Juror No. 17, correct?  We will

17    excuse Juror 17.

18         MR. BRAFMAN:  Thank you.

19         (Prospective juror joins sidebar.)

20         THE COURTROOM DEPUTY:  Sir, thank you for your

21    candid answers.  We will excuse you.  Go down to the second

22    floor and check in with the jury clerks and get your

23    paperwork.  Thank you.

24         (Prospective juror excused.)

25         THE COURT:  Is there anyone else who would have

Jury Selection                                        504

1   raised their hand in answer to my last question?

2           Thank you we'll resume questions.

3           (Sidebar ends; in open court.)

4           THE COURT:  I will now read a list of people we

5   expect will be called to testify at trial.  And when I have

6   finished reading this list, please raise your hand if you know

7   of or have heard of any of these people.

8           Joe Allen, David Abramson, John Archer, Steve

9   Aselage, Josiah Austin, Ken Banta, Maria Beconi, Dr. Alan

10  Begs, Marek Biestek, Brent Blanton, Darren Blanton, George

11  Blasko, Courtney Bond, Seymour Block, Yuri Cantor, David

12  Carter, Mi Nue or Susan Chew, Mi Nue Chew or Susan Chew,

13  Barbara Cieplugh, Lloyd Clareman, Timothy Clemensen, Jeffrey

14  Cobb, Howard Cotton, Bernadette Davida, FBI Special Agent

15  Christopher Delzotto, Justin DeMartino, Diandra de Morrell

16  Douglas, Mark Erlich, Mark Fawer, Michael Fearnow, Troy

17  Fearnow, Thomas Fernandez, Frank Ferrara, David Filer, Joshua

18  Frase, John Fulvio, Alan Geller, David Geller, Evan Greebel,

19  Christine Giordano, Neal Golding, Michael Gordon, Patrick

20  Gordon, Michelle Griswold, Andrew Grumet, Edward Hackert, Cade

21  Hamner, Michael Harrison, Fred Hassan, Sarah Hassan, George

22  Haywood, Chad Hennings, George Huang, Leonora Izerne, Sunil

23  Jain, Chris James, Robert Johnson, Meral Kerim, Kim Keur,

24  Barbara Kocher, Richard Kocher, Thomas Koestler, John Kollins,

25  Justina Kralska, David Kravitz, Susan Lane, Mark LaPolla,

Jury Selection                                    505

1  Hudson Lau, Michael Lavelle, Sam Lieberman, Zvi Lowey, Andre

2  Logan, Gary Lyons, Pedro Machado, FBI Special Agent Matthew

3  Mahaffey, Schuyler Marshall, Corey Massella, Charles

4  McCormick, Patrick McGowan, Amy Merrill, Fazela Mohamed, Gary

5  Mohamed or Muhammed, Kevin Mulleady, John Neill, Liam O'Brien,

6  Deborah Oremland, Jeffrey Paley, Marc Panoff, Timothy

7  Pierotti, Horacio Plotkin, Craig Poschmann, Steve Richardson,

8  Stalin Rodriguez, Steven Rosenfeld, Michael Rosensaft, Lindsay

9  Rosenwald, Allison Russo, Brent Saunders, Eric Schmidt, Ian

10 Shapiro, Jesse Shefferman, Maged Shenouda, Alvin Shih, Anna

11 Shkreli, Katrina Shkreli, Leonora Shkreli, Mark Shkreli,

12 Pashko Shkreli, Michael Smith, Wendy Spaulding, Spencer

13 Spielberg, Caroline Stewart, Steven Stich, Paul Stiliano, FBI

14 Special Agent Sean Sweeney, Jackson Su, Edmund Sullivan, Ron

15 Tilles, Howard Trachtman, Molly Tschang, Edwin Urrutia, Andrew

16 Vaino, Margaret Valeur-Jensen, Michael Verde, Tillman Ward,

17 Eric Wagner, George Yaffe, Lee Yaffe.

18          If you heard of any of these people or know them,

19 please raise your hand.

20          We have two hands in the back.  Will the juror to

21 the left, my left, please give me your number, ma'am?

22          THE PROSPECTIVE JUROR:  55.

23          THE COURT:  Which name are you familiar with?

24          THE PROSPECTIVE JUROR:  Because of the commonality,

25 Robert Johnson.

```
                        Sidebar                      506

 1          THE COURT:  All right.  The name that you were

 2   familiar with was Robert Johnson; is that what you said?

 3          THE PROSPECTIVE JUROR:  Yes.

 4          THE COURT:  All right.  It is a common name.  So, we

 5   will explore at sidebar whether this is the same Robert

 6   Johnson that you know.  Please come forward, ma'am.  Thank

 7   you.

 8          (The following occurred at sidebar; prospective

 9   juror present.)

10          THE COURT:  Hi, ma'am.  What is your number?

11          THE PROSPECTIVE JUROR:  55.

12          THE COURT:  All right.  Robert Johnson, we just want

13   to make sure it's not the same one.

14          THE PROSPECTIVE JUROR:  I know a Robert Johnson.  I

15   doesn't know if it's who you know.

16          THE COURT:  How can we identify?

17          MS. SMITH:  What does he do for work?

18          THE COURT:  Do you know what he does for work?

19          THE PROSPECTIVE JUROR:  He works in the Parks

20   Department.

21          MR. BRAFMAN:  No.

22          THE COURT:  Not the same person.  Thank you.

23          (Prospective juror leaves sidebar.)

24          (In open court.)

25          THE COURT:  Juror 56, please come forward.
```

```
                      Sidebar                           507
```

1              What is the name of the person that is familiar to

2     you?

3              (Sidebar continues; prospective juror joins.)

4              THE PROSPECTIVE JUROR:  I just didn't want to scream

5     it out.

6              THE COURT:  You are No. 56?

7              THE PROSPECTIVE JUROR:  Yes.

8              THE COURT:  Okay.  Come forward.

9              THE PROSPECTIVE JUROR:  David Galler.

10             THE COURT:  We'll just try to find out whether this

11    is the same person.

12             THE PROSPECTIVE JUROR:  I work for a Jeffrey Galler,

13    and he has a son David Galler.  He's a dentist.

14             MR. BRAFMAN:  Where does he live?

15             THE PROSPECTIVE JUROR:  Long Island.

16             THE COURT:  David Galler is a dentist, you said?

17             MR. BRAFMAN:  This is Geller.

18             THE COURT:  Geller.

19             THE PROSPECTIVE JUROR:  There's another one, Amy

20    Merrill.

21             THE COURT:  Let's just finish David Geller.

22             THE PROSPECTIVE JUROR:  G-A-L-L.

23             THE COURT:  Different spelling.  This is Geller.

24    I'm sorry for my pronunciation.

25             THE PROSPECTIVE JUROR:  And the other is Amy

```
                          Sidebar                        508
```

1   Merrill.

2           THE COURT:  What does Amy Merrill do, if you know?

3           THE PROSPECTIVE JUROR:  She works in my office.

4           THE COURT:  What kind of office do you work in?

5           THE PROSPECTIVE JUROR:  Dental.  Amy Merrill works

6   as a secretary.

7           MS. SMITH:  No.

8           THE COURT:  Not the same person.  Thank you.

9           (Prospective juror leaves sidebar.)

10          THE COURT:  Okay.  We'll continue.  I'll read the

11  rest of the list.

12          (Sidebar ends; in open court.)

13          THE COURT:  I will now read a list of entities,

14  locations, and medications that may be referred to during this

15  trial.  When I have finished reading the list, please raise

16  your hand if you have personal knowledge of or experience with

17  these entities, locations, or medications.

18          Allos Pharmaceuticals, A-L-L-O-S; Amag, A-M-A-G,

19  Pharmaceuticals; Amgen; Anslow & Jaclin, J-A-C-L-I-N, LLP;

20  Canaccord Genuity; Catalyst; Chelsea Therapeutics; Citrin

21  Cooperman; Claridge Capital; Cooley Godward Kronish, LLP; Cobb

22  & Associates; Colt Ventures; Cowen Group; Cramer Berkowitz;

23  Desert Gateway; Dynangrow Capital, LLC; EFAY, E-F-A-Y, Limited

24  Partnership; Edwards Angell Palmer & Dodge; Elea Capital;

25  Financial Institution Regulatory Authority, also known as

Jury Selection                                              509

1  FINRA; Fulvio & Associates; Houlihan Lokey, L-O-K-E-Y;

2  Interactive Brokers; KaloBios Pharmaceuticals; Katten Muchin

3  Rosenmann, LLP; Kleinberg Kaplan Wolff & Cohen, LLP; Ligand

4  Pharmaceuticals; Manchester Pharmaceuticals, LLC; Marcum LLP;

5  Merrill Lynch Pierce Fenner & Smith, Incorporated; McCormick &

6  O'Brien, LLP; MKM Incubator; MSMB Capital Management, LLC;

7  MSMB Capital Management, LP; MSMB Consumer, LP; MSMB

8  Healthcare, LLC; MSMB Healthcare, LP; MSMB Isotope Fund, LP;

9  MSMB Isotope Management, LLC; Myrexis, M-Y-R-E-X-I-S; NAV,

10  N-A-V, Consulting, Inc.; O-N-Y, all caps; Orexigen

11  Therapeutics; Retrophin, Inc.; Retrophin, LLC; RBC

12  Professional Trading Group, LLC; Rothstein Kass; Securities &

13  Exchange Commission, also known as SEC; SeraCare Life Science,

14  Incorporated; Surepoint Investment Fund, LLC; Standard

15  Registrar & Transfer; Telik, T-E-L-I-K; Turing

16  Pharmaceuticals; UBS; and Valeant Pharmaceuticals.

17          If you've heard of or know of these entities, please

18  raise your hand.

19          Juror No. 1, which entities?

20          THE PROSPECTIVE JUROR:  FINRA, SEC, and Citrin

21  Cooperman.

22          THE COURT:  Let me ask you to come to sidebar,

23  please.

24          (The following occurred at sidebar; prospective

25  juror present.)

```
                        Sidebar                      510
```

1          THE COURT:  This is Juror No. 1.  You said you were
2    familiar with certain names.
3          THE PROSPECTIVE JUROR:  Yes.  I'm in finance, so
4    FINRA, a regulator; SEC.
5          THE COURT:  Are you, yourself, a regulator?
6          THE PROSPECTIVE JUROR:  No.
7          And Citrin Cooperman I believe once did a
8    presentation for a company that's affiliated to mine, but it's
9    vaguely remembered.  That's how I remembered, that's all.
10          THE COURT:  You don't have any specific recollection
11    about Citrin Cooperman in relation to your employment?
12          THE PROSPECTIVE JUROR:  No, not at all.
13          THE COURT:  What's the third one, please?
14          THE PROSPECTIVE JUROR:  The third was -- FINRA, SEC,
15    and Citrin Cooperman.
16          THE COURT:  And tell me what your familiarity is
17    with SEC.  Is that just a result of your work?
18          THE PROSPECTIVE JUROR:  I'm a sales supervisor for
19    the credit union to the United Nations, so I supervise brokers
20    and I approve trades, things of that sort.  So, I sort of
21    handle the compliance on that side.  I have to be familiar
22    with the regulatory aspect of the securities industry.
23          THE COURT:  Could you sit as a fair and impartial
24    juror in this case and listen carefully to the evidence and
25    decide the case based on the evidence presented?

```
                            Sidebar                     511
```

1            THE PROSPECTIVE JUROR:  Yes.

2            THE COURT:  Would you have any concerns that your

3    experience in the financial world would interfere with your

4    ability to decide this case based on the evidence presented

5    here?

6            THE PROSPECTIVE JUROR:  I don't believe so.  I think

7    it increases my knowledge, but it wouldn't interfere.

8            THE COURT:  Okay.  Thank you.  Let me ask you to

9    step back one foot.

10           (Prospective juror leaves sidebar.)

11           MR. BRAFMAN:  Your Honor, we had no idea that this

12   is her job.  This whole case sort of centers on his financial

13   regulatory matters and I believe she has, unfortunately, far

14   more expertise than any another juror.  And I think we can be

15   certain we don't want to have a jury of one expect and eleven

16   followers.  It's a concern.

17           THE COURT:  Right, but I don't think her work

18   experience disqualifies her from serving.  And she's been very

19   clear that it would not influence or interfere with her

20   ability to consider the evidence, decide the case based on the

21   evidence here.

22           So, I'm not sure what more you would want me to ask

23   her, but I'm happy to ask her further if you'd like.

24           MR. BRAFMAN:  Can you ask if her experience with

25   FINRA in particular deals with regulatory issues and if she's

```
                          Sidebar                        512
```

1    a hearing officer, if she participates in FINRA hearings?

2    There's going to be evidence about that.

3              MS. SMITH:  Just for the record, there's not going

4    to be any evidence about FINRA hearings.  There was a

5    deposition and arbitration.

6              MR. BRAFMAN:  I'm sorry, I misspoke.  But FINRA is

7    in the case.

8              THE COURT:  Do you want me to ask her whether she

9    has participated in any FINRA --

10             MR. BRAFMAN:  Or SEC regulatory hearings.

11             (Prospective juror joins sidebar.)

12             THE COURT:  Ma'am, have you, in your experience,

13   participated in any FINRA or SEC proceedings?

14             THE PROSPECTIVE JUROR:  No.

15             THE COURT:  All right.  Thank you.  Step back a

16   moment.

17             (Prospective juror leaves sidebar.)

18             THE COURT:  I don't have any basis to doubt her.

19             MR. BRAFMAN:  That's fine, thank you.

20             (Prospective juror joins sidebar.)

21             THE COURT:  Ma'am, you can return to your seat.

22   Thank you.

23             (Prospective juror leaves sidebar.)

24             (In open court.)

25             THE COURT:  Did anyone else have their hand up?

Sidebar                                    513

1          Juror No. 5, come forward, please.

2          (Sidebar continues; prospective juror joins.)

3          THE PROSPECTIVE JUROR:  By profession, I'm a

4   pharmacist with over 32 years' experience.  I also chair a

5   number of medical center committees.

6          I do have knowledge of Turing Pharmaceuticals.  I

7   understand all about drug pricing and what occurred with the

8   Daraprim and that other past history with the Defendant.  I

9   also have full knowledge of Amgen.

10          Again, this is all in the course of my duties.

11          THE COURT:  The question for you is whether any of

12   that experience you've gained in your professional life would

13   have any adverse impact on your ability to listen with an open

14   and fair mind to the evidence in this case and decide the case

15   based only on the evidence presented at this trial.

16          THE PROSPECTIVE JUROR:  I feel that I can give a

17   fair and impartial judgment on the evidence presented.

18   Because in my mind, from the little I've learned, this seems

19   to be dealing with a securities issue.  The other case, which

20   I don't ever think went to court or anything like that, there

21   was just a lot of bad press about the drug pricing.

22          To answer your question, I think I can divorce

23   myself from that.

24          THE COURT:  There's never been any proceeding,

25   formal or administrative or judicial, involving drug pricing,

LAM       OCR       RPR

Sidebar                      514

1    to my knowledge, involving Mr. Shkreli.

2              MR. BRAFMAN:  We should have this outside the

3    presence --

4              THE COURT:  I'm just addressing his comment directly

5    to him.

6              THE PROSPECTIVE JUROR:  I just want to make sure you

7    folks feel comfortable with that.  I have no objection either

8    way.

9              THE COURT:  But the question for you, given the

10   knowledge of pharmaceuticals, whether you could be fair and

11   impartial and decide this case based on the evidence

12   presented.

13             THE PROSPECTIVE JUROR:  I feel that I can be fair

14   and impartially, but I just want to let you folks know I have

15   a greater understanding of that whole scenario than, I would

16   say, the average citizen, just by education and training.  And

17   I think you need to know that.

18             THE COURT:  Okay.  Thank you.

19             (Prospective juror leaves sidebar.)

20             MR. BRAFMAN:  Your Honor, there was a widely

21   publicized Congressional hearing involving Mr. Shkreli and

22   Daraprim that has been replayed almost every time they do the

23   story of this trial.

24             He is involved in Daraprim.  He knows about the

25   pricing issues.  That's precisely what we're trying to keep

1    out of the case, and he already has that knowledge.

2           THE COURT:  He made the distinction there is a

3    securities case and he understands and he's aware of it, but

4    he said three times, I believe, that he could be fair and

5    impartial.

6           MR. BRAFMAN:  I appreciate that and I appreciate his

7    candor.

8           There are only so many peremptory challenges in the

9    case, and this man that has been exposed to all of the bad

10   press about Mr. Shkreli that prompted him being considered the

11   most hated man in America soon after that hearing.  There was

12   a Congressional hearing.  I'm sure if you asked him he would

13   tell you he's aware of it, that he saw it, that he understands

14   what it's about.  And it's bad for Mr. Shkreli and has nothing

15   to do with this trial.

16          THE COURT:  So, you want me to ask him if he's aware

17   of the Congressional hearing?

18          MR. BRAFMAN:  Yes.  I'd like to challenge him for

19   cause before you ask that.  But if you think we need a more

20   detailed record -- trust me, I'm not trying to get rid of

21   jurors.

22          THE COURT:  I trust you.  I'm not accusing you of

23   anything.  We all want to get to the trial.

24          MR. BRAFMAN:  I'm trying very hard, like you are.

25          THE COURT:  I'm not faulting you.  I appreciate it.

Sidebar                                   516

1          I just don't -- respectfully, at this point, based

2     on what he said, I'm not seeing a reason to excuse him because

3     he has assured us that he understands the difference.  But I

4     will ask him about Congressional hearing.

5          What I meant by that comment when I was addressing

6     him was that Congress heard from this fellow, Mr. Shkreli, he

7     took the Fifth, and nothing came of it.  There's been no

8     formal proceeding, other than press.

9          MR. BRAFMAN:  It's probably the most replayed

10    ten-minute Fifth Amendment in the history of modern --

11         THE COURT:  He invoked his rights.  No one can fault

12    him for that.

13         MS. KASULIS:  Minor clarification if you're going to

14    ask him what he knows about the hearing, to what end, given

15    point?  Has he seen it?

16         THE COURT:  Right.

17         (Prospective juror joins sidebar.)

18         THE COURT:  Sir, come forward, please.  You had

19    mentioned -- have you observed or watched any media reports

20    about Congressional testimony by Mr. Shkreli?

21         THE PROSPECTIVE JUROR:  I haven't seen it on C-Span

22    or anything like that, but I have read about what occurred.  I

23    think almost every American citizen, particularly every

24    pharmacist, has read about drug pricing.

25         And the whole topic of drug pricing, again, I

Sidebar                                         517

1  realize it has nothing do with this case, is so prominent in

2  pharmacist's minds, I think almost every pharmacist knows

3  about what occurred.

4          THE COURT:  Does your knowledge of that drug pricing

5  impair your ability in this case, which you understand is a

6  different case, to consider the evidence and decide the case

7  based only on the evidence regarding the charges or evaluating

8  the lack of evidence or the weight of the evidence in this

9  case?  Could you do that?

10          THE PROSPECTIVE JUROR:  You had briefly mentioned

11  that it involved securities or securities fraud.  I really

12  don't know much about that at all.

13          To answer your question, yes, I could be impartial.

14  But I want you to realize, like I said, what my background is.

15          THE COURT:  I appreciate that.

16          THE PROSPECTIVE JUROR:  Because I do know about

17  Amgen and I do know about Turing Pharmaceuticals more than the

18  average person.

19          THE COURT:  But is there anything about that

20  knowledge that, again, impacts your fair mindedness?

21          THE PROSPECTIVE JUROR:  I don't have any bias going

22  into the case.  I would keep an open mind based on the

23  evidence.

24          But, again, you guys have to be comfortable.

25          THE COURT:  We appreciate it.  Thank you.

```
                          Sidebar                      518
```

1          (Prospective juror leaves sidebar.)

2          MR. BRAFMAN:  Judge, just so that the record is

3    complete, on two occasions, I think, Ms. Smith indicated that

4    should Mr. Shkreli take the witness stand, that she feels that

5    it might be appropriate, depending on if he opens the door, to

6    question him about the Daraprim price increase.

7          If we get to that point, I don't want to have to

8    renew my motion to exclude him.

9          THE COURT:  I will ask him now if Mr. Shkreli is

10   called and the subject does come up, whether he'll have any

11   difficulty being fair.

12         MR. BRAFMAN:  Okay.  Thank you.

13         (Prospective juror joins sidebar.)

14         THE COURT:  Sir, in the event that there is

15   testimony about drug pricing -- it's not currently charged in

16   the case, but in the event there is testimony on that issue,

17   would you, knowing what you know and being involved in related

18   issues as a pharmacist, would you have any difficulty being

19   fair and impartial in those circumstances?

20         THE PROSPECTIVE JUROR:  I wouldn't have any

21   difficulty being fair and impartial.

22         But if I was in deliberations with the jurors, you

23   know, and they ask me questions about it, I don't think I

24   would be able to say -- not give them my thoughts, not my

25   personal opinion, but explain what those issues were.  And I

1  don't know if that's right or wrong, but I know about it, and
2  I just need to tell that you.
3       THE COURT:  Well, the jurors are only going to be
4  deliberating on the charges in the indictment, not about any
5  other issues that may come up during the trial.  Frankly,
6  those issues are unrelated to the charges in this case, but it
7  may come up in a context where a party may be able to elicit
8  testimony on that subject.
9       So, my question is whether despite what you know
10  about drug pricing, if you heard evidence regarding drug
11  pricing, would you be able to maintain a fair and open mind to
12  both sides?
13       THE PROSPECTIVE JUROR:  I would listen to what was
14  presented, mull it over in my mind, and the answer is yes, I
15  would.  I would not come in with any pre-bias or opinions on
16  anything that may have occurred allegedly in the past.  I
17  would keep an open mind, to the best of my ability.
18       THE COURT:  Well, thank you, sir.
19       THE PROSPECTIVE JUROR:  You're welcome.
20       (Prospective juror leaves sidebar.)
21       MR. BRAFMAN:  Your Honor, the juror said quite
22  clearly that if the issue were during the deliberations and
23  the jurors ask his opinion, he would tell them what he knows
24  about the subject.  We now have someone who has far more
25  knowledge than a lay juror on a subject which whether or not

Sidebar                                    520

1   it's the charge may, unfortunately, be the driving force when

2   Mr. Shkreli testifies.

3           I think we have a man who that has an expertise in

4   the pricing of drugs.  Pricing of drugs is going to be an

5   issue in this case one way or another.  And he told you that

6   he's going to tell the jurors what he knows.  I think he's

7   trying to stay on the jury and I give him credit, but I think

8   we are, respectfully, making a mistake if we keep him.  I

9   don't think it's fair.

10          I know we're losing jurors but --

11          THE COURT:  I'm just waiting to hear something from

12  this gentleman that would indicate that he would be biased or

13  unable to evaluate the evidence.  The fact that he knows -- I

14  could also instruct them that they should not be discussing

15  matters unrelated to the charges, including drug pricing, in

16  their deliberations, that it's just not in the case.

17          MR. BRAFMAN:  If we had a case involving justifiable

18  force used by a police officer and if you had someone who was

19  trained as a police officer or went to one of the police

20  academies, and if during deliberations the question comes up

21  he said I'll tell what I know, I think he should be excused.

22          I think that's basically what he said.

23          THE COURT:  That's because in that scenario you

24  described, the issue of excessive force would be in the case.

25  The drug pricing has a remote possibility of being in the

Sidebar                                          521

1   case.

2          MR. BRAFMAN:  It's the elephant in the room, Judge.

3   It's the elephant in the room.  The reason Mr. Shkreli is

4   condemned in all of the media, it's not because of this

5   securities fraud case -- I'll be candid with you, I think it's

6   very defensible -- the elephant in the room is what happened

7   with Daraprim.  Unfortunately, because it impacted on the gay

8   and lesbian community, it has much more fire as an issue --

9   and perhaps properly so, I'm not suggesting otherwise -- but

10  it's the elephant in the room.  I hate to use that expression,

11  but there's no more damaging issue in this case than perhaps

12  Mr. Shkreli's involvement in what happened with Daraprim.

13         He knows all about it and he knows about drug

14  pricing.  I think we're trying to save a juror who knows what

15  to say to stay here.  I'm not denying that he says all the

16  right things, but if you read back the record, when you asked

17  him about drug pricing he said very clearly:  If the issue

18  came up in deliberations and jurors asked me, I would tell

19  them what I know.

20         He's not supposed to know more than them.

21         THE COURT:  If I instructed him, do you think he

22  would follow my instructions?

23         MR. BRAFMAN:  I don't think he's capable of doing

24  that, Judge.  He has too much expertise in an area that no one

25  else on the panel is going to have.

                       LAM      OCR      RPR

```
                         Sidebar                      522
```

1          MS. KASULIS:  Your Honor, I just don't think there's

2     anything that would indicate that he wouldn't be able to

3     follow your Honor's instruction.

4          THE COURT:  I'm going to ask whether he would follow

5     my instruction that he would not be allowed to discuss

6     anything not in evidence, including his own expertise, all

7     right?  I will see what he says.

8          (Prospective juror joins sidebar.)

9          THE COURT:  Sir, you had mentioned that if you were

10    in jury deliberations and a question came up about drug

11    pricing, you would want to answer questions of the jurors

12    based on what you know.

13          The question is, if you were given instruction by

14    the Court, as all jurors will be given, that you may only

15    consider the evidence at this trial and nothing else in

16    reaching your verdict, would you follow that instruction?

17          And that would include not discussing your own

18    knowledge about drug pricing or pharmaceuticals or

19    pharmaceutical companies but, rather, deciding based on the

20    evidence.  Would you be able to refrain from discussing with

21    your fellow jurors your own knowledge of drug pricing in

22    pharmaceuticals?

23          THE PROSPECTIVE JUROR:  If you directed me, as a

24    Judge, not to say anything, I wouldn't say anything, I'm not

25    going to say anything.  But if another juror asked me, I would

1  say the judge said I can't say anything.

2          THE COURT:  Well, if another juror asked you a

3  question about drug pricing, this would occur in the context

4  of deliberations.  And the jurors, all of you, would be

5  instructed that only the evidence at the trial can be

6  considered in deciding this case, not knowledge that somebody

7  in the industry might have.

8          Would you be able to say to your fellow jurors if

9  the question were asked we can only use the evidence presented

10  at trial; the testimony, the documents, the stipulations.

11          THE PROSPECTIVE JUROR:  I would have to.  I mean,

12  there's no way I would be able to talk about anything else but

13  what the Court said to talk about, which is the evidence.

14          THE COURT:  Do you feel confident you could obey

15  that instruction?

16          THE PROSPECTIVE JUROR:  Yeah, I mean, the only thing

17  I wanted to learn a little bit more about is what the charges

18  were with the securities.  I mean, we just -- you had

19  mentioned it, but I didn't know if it was stock fraud or --

20  you know, that's not my area.  So, really, when you use the

21  word "securities," I just think of stocks.

22          THE COURT:  What I did, sir, was just, again,

23  summarize the charges in the indictment, which is just the

24  accusatory instrument.

25          THE PROSPECTIVE JUROR:  Right.

```
                         Sidebar                          524
```

1          THE COURT:  It's of no evidentiary value.

2          What you will have is a trial where the Government

3    has to sustain its burden of proof --

4          THE PROSPECTIVE JUROR:  Okay.

5          THE COURT:  -- by presenting evidence.  And if they

6    don't do it in a way that's understandable to you, then it's

7    your role as a juror to give that evidence whatever weight it

8    deserves and to decide whether there's enough to sustain or --

9    whether the Government has met its burden.  And if it hasn't,

10   then you'll be instructed accordingly.

11         THE PROSPECTIVE JUROR:  Right.

12         Again, just to say, I would follow whatever

13   directions you gave me.  You know what my background is.  You

14   know, I just wanted you to know that and I know about these

15   companies.  And whatever you decide is fine me with me.  Thank

16   you.

17         (Prospective juror leaves sidebar.)

18         MR. BRAFMAN:  I have one more question.  And I

19   appreciate your indulgence and patience, I really do.

20         Could you ask a followup question:  If Mr. Shkreli

21   were to testify and part of that testimony on direct or cross

22   would involve Daraprim and drug pricing and Mr. Shkreli were

23   to say something that you, yourself, know not to be true not

24   because of any evidence in the case but because of your

25   expertise and your background, would you allow that to affect

```
                              Sidebar                      525
```

1   your decision in this case?

2            THE COURT:  Okay.

3            MR. BRAFMAN:  Not worrying about discussions with

4   other jurors.

5            THE COURT:  A juror has to evaluate credibility of

6   every witness.

7            You're saying would he allow his own knowledge to

8   enter his mind in deciding whether to accept his testimony?

9            MR. BRAFMAN:  You can assess his credibility.

10  That's what trials are about.  The question I have is, forget

11  about discussing with jurors, if Mr. Shkreli says something as

12  affirmative fact that based on the evidence no other juror

13  disbelieves, based on the evidence, and his expertise allows

14  him to conclude that Mr. Shkreli is not being truthful, that's

15  not the appropriate way to establish credibility because he's

16  bringing expertise from outside the trial into the jury box.

17           THE COURT:  All right.  I don't even know how to

18  craft a question like that, but I could try.

19           I'll hear from the Government.

20           MS. KASULIS:  Your Honor, jurors draw on their

21  personal experiences to evaluate a witness' credibility.  If

22  Mr. Shkreli is going to make some representation that he knows

23  is not true, they should be allowed to draw on their knowledge

24  in that determination as to Mr. Shkreli's credibility.  I

25  don't see what the issue is.

```
                         Sidebar                          526
```

1           MR. BRAFMAN:  Judge, if you have a lawyer on the

2    jury and the lawyer said to the other jurors, look, I know

3    what the judge is telling you, but I know the law too and I'm

4    telling you this is the law, that would not be permitted.

5           This is a pharmaceutical expert in a case where the

6    pricing may be the single most unfortunate issue that we have

7    to confront.  And he is an expert in that area.  I think that

8    he's not going to be assessing Mr. Shkreli overall

9    credibility --

10          THE COURT:  I don't know that he's an expert.  He's

11   aware of it.  I understand your point, that you think he's an

12   expert or at least he has more knowledge than the average

13   juror on this issue.

14          But I'm just trying to think of how to ask it again

15   in a different way.  I don't know what else to ask him.  If

16   Mr. Shkreli testifies about drug pricing, would you allow your

17   expertise to enter into your assessment of the credibility of

18   his testimony?

19          MR. BRAFMAN:  Your own private expertise.

20          MS. SMITH:  Your Honor, that is a suggestion that

21   the Defendant might purger himself.

22          MR. BRAFMAN:  Let me worry about that.

23          MS. SMITH:  I know, but I would prefer not to

24   introduce this idea.

25          THE COURT:  I've tried very hard not to create any

Sidebar                                527

1   expectation that the Defendant will testify.  I've been very

2   much dancing around the concept that the evidence may come

3   into trial.

4              I can ask him whether he would evaluate a witness'

5   credibility about drug pricing based on his expertise, but I

6   don't want to focus it on your client.

7              MR. BRAFMAN:  Thank you.

8              (Prospective juror joins.)

9              THE COURT:  If a witness were to offer testimony

10  about drug pricing in this case, would you listen and observe

11  the demeanor of that witness and assess that witness'

12  credibility based on your common sense ability to interact

13  with people and decide whether you think they're telling the

14  truth or not telling the truth?

15             You know, evaluating witness credibility is an

16  important role for any juror.  But if that type of testimony

17  came up regarding drug pricing, would you be able on divorce

18  from your mind whatever experience you have about drug pricing

19  and just assess the weight and credibility of that witness

20  testimony based on what they said, based on how they appear,

21  and based on what they say makes sense?

22             THE PROSPECTIVE JUROR:  Well, as far as credibility

23  goes, I mean, that would be a little bit tough for me.  But

24  what I would do is I would listen to what they had to say and

25  I would apply it to my knowledge based on my education and

```
                        Sidebar                      528
```

1    training.  Whatever verbal testimony they gave, I'd have to

2    apply it against what I know based on education, based on

3    years of experience in practice.  And if that matched and it

4    was correct, to me that would be a match.  But if somehow what

5    they were saying was not factually correct...

6              THE COURT:  How would you make the assessment of

7    factual correctness?  Would it be based on outside the court?

8              THE PROSPECTIVE JUROR:  No.  When you say "outside

9    the court --"

10             THE COURT:  Outside the evidence in the trial.

11             THE PROSPECTIVE JUROR:  I would have to -- that's a

12   very difficult question.

13             THE COURT:  Yes.

14             THE PROSPECTIVE JUROR:  If a witness gave some type

15   of an incorrect statement that had to do with pharmaceuticals

16   or drug pricing, I would listen to it but in my mind I would

17   have to apply it to what I was trained through my degrees and

18   through my experience to see if that matches up.

19             And then I'm assuming the testimony would be

20   considered evidence.

21             THE COURT:  Of course.

22             THE PROSPECTIVE JUROR:  Again, I'm not an attorney,

23   but I would just have to match up what they say to what's in

24   my mind based on training and education.  That's the best

25   answer I can give you.

```
                        Sidebar                        529
```

1          THE COURT:  Thank you.  I appreciate your efforts.

2          THE PROSPECTIVE JUROR:  You're welcome.  I'll step

3     to the side.

4          THE COURT:  Thank you.

5          (Prospective juror leaves sidebar.)

6          THE COURT:  Let's make a decision about this juror.

7     Do you still want to exclude him?

8          MR. BRAFMAN:  For cause.

9          MS. KASULIS:  We object, your Honor.

10         THE COURT:  You know, I think there is -- I'm trying

11    to think of something that he said that would give me pause

12    about this juror's commitment to being fair and open-minded

13    and his commitment to deciding this case based on the

14    evidence.  We can't ignore that he has expertise, but we can't

15    exclude a juror simply because they might have knowledge about

16    matters in dispute.

17         So, in a medical malpractice case, we don't

18    automatically exclude every medical doctor or nurse.  In a

19    police brutality case, we don't automatically exclude every

20    police officer.  It's really if that juror demonstrates or

21    even hints at some inability to be fair and impartial and to

22    commit to deciding a case based on the evidence.  So,

23    everything I've heard from this juror indicates that he would

24    do that.

25         Now, could he hide away and take part of his

```
                          Sidebar                      530
```

1   knowledge and experience out of his brain?  I don't think any

2   human is capable of doing that.  And I don't think that's

3   grounds to dismiss a juror for cause.  It's not, in my mind,

4   cause for dismissal.

5           So, respectfully, I would deny your request.

6           MR. BRAFMAN:  One last observation.

7           THE COURT:  Okay.

8           MR. BRAFMAN:  Last time he was up here, I think he

9   gave you the language that requires a dismissal for cause.  He

10  said that he would evaluate the testimony and he would compare

11  it to what he knows in his expertise and his experience.

12          And this is a silence issue.  This is not a factual

13  dispute, this is --

14          THE COURT:  You mean there's going to be testimony

15  about the pharmaceutical compounds?

16          MR. BRAFMAN:  There may very well be.  I appreciate

17  you don't want to --

18          THE COURT:  I'm just trying to understand.  You know

19  the case better than I do.

20          MR. BRAFMAN:  Yes.  Mr. Shkreli's silence is going

21  to be part of his defense.  It's going to come in through a

22  number of different witnesses who he spoke to about it and

23  it's going to come in -- if he testifies, they said it's fair

24  game.

25          And I think that this man's expertise makes him

Sidebar                    531

1    different than any other juror we've interviewed and I press

2    the challenge for cause, respectfully.

3            MS. KASULIS:  We continue to object.  Your Honor is

4    very familiar with the charges in this case.

5            There is some aspect of pharmaceutical science, but

6    that's by no means the central focus.  And I don't see how his

7    expertise, his educational or occupational background, would

8    preclude him from being a fair and impartial juror.

9            THE COURT:  He is about as committed to being, and

10   he said it repeatedly in so many different ways, fair and to

11   confine himself, to the best of his ability, without carving

12   out part of his memory bank to deciding the case based on the

13   evidence.

14           Every juror is called upon to look to their life

15   experience and decide on credibility.  And a juror might say

16   people who don't make eye contact or people who make certain

17   nervous gestures are not worthy of credibility.  That's based

18   on their own experience that they're applying.  And I

19   understand this is a specialized area of knowledge, but

20   it's -- I'm just not convinced that there is grounds to

21   exclude him, sir.

22           So, respectfully, I will deny the request to exclude

23   for cause.

24           (Prospective juror joins sidebar.)

25           THE COURT:  Sir, you may return to your seat.  Thank

1    you.

2              (Prospective juror excused.)

3              (In open court.)

4              THE COURT:  Did anyone else -- why don't you come

5    forward, sir?

6              (Continued on next page.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

533

1                    (The following occurred at sidebar.)

2                    THE COURT:  You are Juror No. 14.  Come forward.

3                    (Prospective juror present at sidebar.)

4                    THE COURT:  Come forward.  Yes, sir.

5                    THE PROSPECTIVE JUROR:  I'm familiar with the SEC,

6       I'm an accounting student.  I use the website often in my

7       learning experience.

8                    THE COURT:  You use the SEC website.

9                    THE PROSPECTIVE JUROR:  Yes.  That's correct.

10                   THE COURT:  Have you ever conducted an SEC-related

11      audit or prepared any documents for the SEC?

12                   THE PROSPECTIVE JUROR:  No.

13                   THE COURT:  Have you ever participated in any SEC

14      hearing?

15                   THE PROSPECTIVE JUROR:  No.

16                   THE COURT:  Okay.  Your profession is a CPA?

17                   THE PROSPECTIVE JUROR:  No.

18                   THE COURT:  What do you do?

19                   THE PROSPECTIVE JUROR:  I'm doing a master's of

20      science in accounting right now.

21                   THE COURT:  In accounting?

22                   THE PROSPECTIVE JUROR:  Yes.

23                   THE COURT:  Have you worked in the financial world?

24                   THE PROSPECTIVE JUROR:  No, back home, I worked in

25      finance back in Guyana.

534

1          THE COURT:  Okay.  In what capacity?

2          THE PROSPECTIVE JUROR:  I was a bookkeeper.

3          THE COURT:  Thank you.  Let me ask you to step back.

4          THE PROSPECTIVE JUROR:  I want to mention I served

5     jury duty last year.

6          THE COURT:  You had a piece of paper.  Do you want

7     to show it to me?

8          THE PROSPECTIVE JUROR:  Yes.

9          THE COURT:  I think you showed me a state court

10    letter, yes.  Sir, this is Kings County, which is the county.

11    This is federal court.  Although you might have served jury

12    duty in the past, this is the County of Kings, this is federal

13    court.  Unfortunately, I don't think you get credit against

14    your jury duty in federal court.

15         THE PROSPECTIVE JUROR:  Yes, ma'am.

16         THE COURT:  Is there any other reason or anything

17    else that you want to bring to our attention?

18         THE PROSPECTIVE JUROR:  No.

19         THE COURT:  Let me ask you to step back.

20         (Prospective juror leaves sidebar.)

21         MR. AGNIFILO:  I think he is supposed to get two

22    years after state court.  He is actually not qualified not to

23    serve.  It is six years from state to state.  It is two years

24    from state to federal.  I'm not that sure.

25         THE COURT:  So you think he shouldn't be here?

535

1          THE COURTROOM DEPUTY:  He served recently in the

2    last six years, he should be excused, if he has his proof of

3    service.

4          THE COURT:  Do you want to then --

5          THE COURTROOM DEPUTY:  We can confirm it with jury

6    clerk.

7          MR. BRAFMAN:  He has the letter.

8          THE COURT:  Juror No. 14, I believe.

9          If you do state, you get a pass in federal court?

10         MS. ZELLAN:  For two years.

11         (Prospective juror present at sidebar.)

12         THE COURT:  We are going to check on what you said

13   about your jury service.  Did you show this to them when you

14   showed up?

15         THE PROSPECTIVE JUROR:  I did.

16         THE COURT:  Let me just check.

17         (Pause.)

18         THE COURT:  I'm sorry you didn't get very far.  Come

19   forward.  We have confirmed with the jurors' clerk downstairs

20   that he will be subject to be excused from this panel.  Go

21   back to the second floor.  Tell them that you have been

22   excused and you had prior jury service in the last year.

23   Thank you, sir.

24         (Prospective juror excused.)

25         THE COURT:  So that was Juror No. 14.

536

1          THE COURTROOM DEPUTY:  Juror No. 63 is here.

2          THE COURT:  63.  Juror No. 63 was the person who --

3     was she the one with the doctor's appointment from yesterday?

4          THE LAW CLERK:  Yes.

5          MS. ZELLAN:  First number 63, Your Honor.

6          THE COURT:  The name is here (indicating).  Now the

7     question is -- I can't remember where we left off.  I think I

8     only got to the question of inconvenience and bias based on

9     media reports.  I can try to catch her up, but I would hate to

10    hold these other jurors.  I would like to get her up to speed.

11    Let me just grab my notes and see what other questions.

12    Sorry.

13         Alternatively, we will continue and then we will ask

14    her those questions at the end if she is still here with us.

15         (In open court.)

16         THE COURT:  Did anyone else have their hand up?

17    Come forward, please.

18         (Prospective juror present at sidebar.)

19         THE COURT:  What is your number?

20         THE PROSPECTIVE JUROR:  20.

21         THE COURT:  20, yes, ma'am.

22         THE PROSPECTIVE JUROR:  Yes.  I work for an

23    economist.  I am associated with some of the companies that

24    you listed.

25         THE COURT:  Like Merrill Lynch?

537

1          THE PROSPECTIVE JUROR:  Merrill Lynch, UPS, second

2   and both of January associates.

3          THE COURT:  Is there anything about that work or

4   your experience towards those companies that would influence

5   your ability to be fair to both sides and to consider only the

6   evidence that comes to you in this trial?

7          THE PROSPECTIVE JUROR:  I don't think so.

8          THE COURT:  All right.  Can you tell us what you do?

9          THE PROSPECTIVE JUROR:  I am an administrative

10  assistant, one of the office managers for Henry Kaufman &

11  Company.

12         THE COURT:  And you are an administrative assistant

13  to him?

14         THE PROSPECTIVE JUROR:  Uh-hum.

15         THE COURT:  Do you have an economic background

16  yourself?

17         THE PROSPECTIVE JUROR:  Well, I work with all of the

18  background stuff with him.  I have been with him for 21 years.

19         THE COURT:  Have you studied economics or

20  accounting?

21         THE PROSPECTIVE JUROR:  No.

22         THE COURT:  Have you studied finance?

23         THE PROSPECTIVE JUROR:  No.

24         THE COURT:  I am going to ask you to step back for a

25  second.

538

1          (Prospective juror leaves sidebar.)

2          THE COURT:  This is Juror No. 20.

3          MR. BRAFMAN:  I have no questions.

4          THE COURT:  Thank you for letting us know.

5          Ma'am, you can resume your seat.

6          (In open court.)

7          THE COURT:  Was there anybody else who had their

8 hand up?  Yes, the gentleman on the far left, second row, come

9 forward.  Give us your number, please.

10         THE PROSPECTIVE JUROR:  33.

11         THE COURT:  Thank you.

12         (Prospective juror present at sidebar.)

13         THE COURT:  Thank you.  You have been very patient.

14 You were here since yesterday morning.

15         THE PROSPECTIVE JUROR:  I am familiar with three of

16 the names, Amgen.  I used to be a shareholder back in the

17 '80s.  They sold it back in '87.  Secondly, Cowen Company, I

18 used to be a mortgage bond broker back in the '90s.  They are

19 one of our competitors.  I worked for Garban at the time.

20 Bank of America, they own Merrill Lynch, so, but I work on the

21 Bank of America side.

22         THE COURT:  Do you work for Bank of America?

23         THE PROSPECTIVE JUROR:  I do.  I'm in the IT

24 department.  I'm a project manager for IT.

25         THE COURT:  I know you have been here since

539

1    yesterday morning, so you have not raised your hand previously

2    about media or the six weeks jury service, correct?

3              THE PROSPECTIVE JUROR:  Correct.

4              THE COURT:  Would you be able to listen to the

5    evidence carefully in this case with a fair and open mind to

6    anything that you might have been exposed to with regard to

7    these companies that you have mentioned and decide this case

8    based only on the evidence?

9              THE PROSPECTIVE JUROR:  Yes.

10             THE COURT:  Thank you.  Let me ask you to take a

11   step back.

12             (Prospective juror leaves sidebar.)

13             THE COURT:  Any issues for this juror?

14             MR. BRAFMAN:  No, Your Honor.

15             MS. KASULIS:  No.

16             THE COURT:  Thank you, sir.  You can resume your

17   seat.  Thank you.

18             (Prospective juror leaves sidebar.)

19             THE COURT:  I am going to reconsider my decision to

20   deny your request to dismiss Juror number -- was it No. 5?

21   The pharmacist for cause.  I think, you know, it is -- I think

22   he wants to talk to people about what he knows, and despite

23   his best efforts to listen to my orders, I think it would be

24   very difficult for him to not speak to other jurors about his

25   knowledge based on his expertise or experience that he knew

540

1   something different from what was in the record, so I am going

2   to strike Juror No. 5.

3            MR. BRAFMAN:  Thank you very much.

4            THE COURT:  I will let him know.

5            I am going to ask my clerk to let him know.  Let me

6   call him up.

7            (In open court.)

8            THE COURT:  Juror No. 5, can you come back, please.

9            (Prospective juror present at sidebar.)

10           THE PROSPECTIVE JUROR:  Yes.

11           THE COURT:  I have decided to excuse you.  I want to

12   thank you for your candor.

13           THE PROSPECTIVE JUROR:  You are quite welcome.  I

14   should go back downstairs?

15           THE COURT:  Yes, let me know on the second floor

16   that you have been excused.

17           (Prospective juror excused.)

18           (In open court.)

19           THE COURT:  Did anyone else have their hand up?  The

20   gentleman in the second row in the blue shirt, come up,

21   please.

22           (Prospective juror present at sidebar.)

23           THE COURT:  This is Juror No. 34.  Yes, sir.

24           THE PROSPECTIVE JUROR:  I thought I heard two

25   companies, Merrill Lynch was one, which I am familiar from,

541

1  you know, the business and their advertising.  SEC, Securities

2  and Exchange Commission, and then I am familiar because a

3  number of years ago I was an independent rep for HD Vest

4  mutual funds and annuity products and I had to be licensed and

5  I took the Series 6 test.  I studied SEC regulations.

6          THE COURT:  Okay, so, let's back up.  Did you

7  mention Turing?

8          THE PROSPECTIVE JUROR:  No, Merrill Lynch.

9          THE COURT:  Merrill Lynch, SEC.

10          THE PROSPECTIVE JUROR:  That's it.

11          THE COURT:  That's it.  So are you currently

12  licensed?

13          THE PROSPECTIVE JUROR:  No.  That was a number of

14  years back.

15          THE COURT:  What type of work do you do?

16          THE PROSPECTIVE JUROR:  Now I am retired.

17          THE COURT:  Before you retired, what type of work

18  did you do?

19          THE PROSPECTIVE JUROR:  Worked for New York State

20  Office of Children and Family Services.

21          THE COURT:  In what capacity?

22          THE PROSPECTIVE JUROR:  I was director of -- I was

23  Deputy Regional Director of the office -- the New York City

24  regional office.

25          THE COURT:  Now, you are familiar with Merrill

542

1   Lynch.  How does --

2              THE PROSPECTIVE JUROR:  Merrill Lynch, I'm just

3   familiar from --

4              THE COURT:  You just know the name?

5              THE PROSPECTIVE JUROR:  -- advertising.

6              THE COURT:  Have you invested in Merrill Lynch?

7              THE PROSPECTIVE JUROR:  No.

8              THE COURT:  Do you have current investments with

9   Merrill Lynch?

10             THE PROSPECTIVE JUROR:  No.

11             THE COURT:  What about the SEC?

12             THE PROSPECTIVE JUROR:  The SEC was when I worked --

13  I had an independent business from '96 to 2000 with HD Vest as

14  an independent rep and I had to be licensed and I had to study

15  and follow the SEC regulations.

16             THE COURT:  I see.  All right.  Okay.  Thank you.

17  Let me ask you this question:  To the extent there may be

18  evidence regarding financial matters in this case, would you

19  be able to commit to maintaining a fair and open mind toward

20  both parties and decide this case based on the evidence in

21  this case and not on anything that you might have studied or

22  become familiar with?

23             THE PROSPECTIVE JUROR:  I think I could.

24             THE COURT:  All right.  Thank you.  Let me ask you

25  to step back.

543

1              (Prospective juror leaves sidebar.)

2              MR. BRAFMAN:  I have no questions.

3              THE COURT:  No issues?  Okay.

4              Thank you, sir.  You can resume your seat.

5              (In open court.)

6              THE COURT:  Is there anyone else who had their hand

7    up?  Yes, ma'am.  Please come forward.

8              (Prospective juror present at sidebar.)

9              THE COURT:  Hi, would you please give me your

10   number?

11             THE PROSPECTIVE JUROR:  38.

12             THE COURT:  This is Juror No. 38.  Yes, ma'am.

13             THE PROSPECTIVE JUROR:  Until about eight years ago

14   I was a representative of the SEC Commission.  I sold mutual

15   funds to a company called PSF Investments.

16             THE COURT:  Did you have some sort of a license?

17             THE PROSPECTIVE JUROR:  Yes, I took the Series 6 and

18   Series 63.

19             THE COURT:  This is Juror No. 38.

20             MR. BRAFMAN:  Thank you, Judge.

21             THE COURT:  Ma'am, in this case, we ask all jurors

22   to keep an open and fair mind toward both parties.  I had

23   described the case to you as involving charges of securities

24   fraud.  Would your past experience have any effect on your

25   ability to sit as a fair, open-minded and impartial juror in

544

1    this case?

2              THE PROSPECTIVE JUROR:  Absolutely not.

3              THE COURT:  Would you be able to commit to listening

4    carefully to all of the evidence in this case and to decide in

5    this case with your fellow jurors based solely on the evidence

6    presented at the trial?

7              THE PROSPECTIVE JUROR:  Yes.

8              THE COURT:  And would you have any difficulty -- is

9    there anything about your past training and experience in the

10   financial world that would interfere with your ability to

11   focus and consider the case based on the evidence?

12             THE PROSPECTIVE JUROR:  No, there is not.

13             THE COURT:  Thank you, ma'am.  I will ask you to

14   take two steps.

15             (Prospective juror leaves sidebar.)

16             MR. BRAFMAN:  No questions.

17             MS. KASULIS:  No questions.

18             (Prospective juror present at sidebar.)

19             THE COURT:  Thank you.  Ma'am, thank you.  You can

20   return to your seat.

21             (Prospective juror leaves sidebar.)

22             (In open court.)

23             THE COURT:  Who else had their hand up?  Come

24   forward, sir.

25             (Prospective juror present at sidebar.)

545

1          THE COURT:  Hello, sir, what is your number?

2          THE PROSPECTIVE JUROR:  39.

3          THE COURT:  Juror No. 39.  This is you?

4          THE PROSPECTIVE JUROR:  That's me.

5          THE COURT:  Thank you, sir.

6          THE PROSPECTIVE JUROR:  I am familiar with what the

7    SEC is.  I have read and seen some news reports about Turing

8    and Valeant.  I know -- I believe Amgen is a component of an

9    index fund that I have owned.

10          THE COURT:  All right.  Well, based on what you have

11   seen and read, have you formed any opinions that would

12   interfere with your ability to be fair and open-minded and

13   impartial to both sides in this case?

14          THE PROSPECTIVE JUROR:  No, I don't believe so.

15          THE COURT:  Now, do you have familiarity with the

16   financial world?  Have you worked in that?

17          THE PROSPECTIVE JUROR:  I have not worked in that.

18   I read some personal finance publication.

19          THE COURT:  What is it that you do, without telling

20   us where you work?

21          THE PROSPECTIVE JUROR:  I work for a college

22   publisher.

23          THE COURT:  Publishing textbooks and things like

24   that?

25          THE PROSPECTIVE JUROR:  That's correct.

546

1          THE COURT:  And then your reading about the

2   financial world is based on your own curiosity or own

3   investments?

4          THE PROSPECTIVE JUROR:  Correct.

5          THE COURT:  It's not part of your job?

6          THE PROSPECTIVE JUROR:  No, not at all.

7          THE COURT:  Would you be able to decide this case

8   with a fair and open mind to both sides and decide it based on

9   only on the evidence presented at trial?

10          THE PROSPECTIVE JUROR:  Yes.

11          THE COURT:  Let me ask you to take a step back,

12   please.

13          (Prospective juror leaves sidebar.)

14          THE COURT:  Any issues with this juror?

15          MR. BRAFMAN:  No.

16          MS. KASULIS:  No.

17          THE COURT:  You may resume your seat.

18          (In open court.)

19          THE COURT:  Is there anyone else who had their hand

20   up?

21          (The following occurred at sidebar.)

22          THE COURT:  I think what we will do is continue and

23   if she is still here at the end of the questioning, we will

24   deal with it then.  Thank you.

25          (In open court.)

547

1          THE COURT:  I will next read you a list of some

2  locations and medications.  Please raise your hand if you are

3  familiar with these locations or medications.

4          330 Madison Avenue, New York, New York.  777 Third

5  Avenue, New York, New York.  Daraprim, Chenodal, Thiola.  If

6  you are familiar with these places or medications, please

7  raise your hand.

8          Juror number --

9          THE PROSPECTIVE JUROR:  19.

10          THE COURT:  I'm sorry.

11          THE PROSPECTIVE JUROR:  19.

12          THE COURT:  You are familiar with some of these?

13          THE PROSPECTIVE JUROR:  330 Madison.

14          THE COURT:  With the medication?

15          THE PROSPECTIVE JUROR:  No, with the location.

16          THE COURT:  What is your familiarity with which

17  address, 330 Madison or 777 Third Avenue?

18          THE PROSPECTIVE JUROR:  330 Madison.

19          THE COURT:  In New York?

20          THE PROSPECTIVE JUROR:  Yeah.

21          THE COURT:  How do you know that address, sir?

22          THE PROSPECTIVE JUROR:  Because we had a client in

23  there.  I used to work -- I used to deliver there.

24          THE COURT:  You used to go there as part of your

25  job?

548

1         THE PROSPECTIVE JUROR:  Yeah.

2         THE COURT:  Is there anything about that location

3    that would have any adverse effect on your ability to sit in

4    this case?

5         THE PROSPECTIVE JUROR:  No.

6         THE COURT:  Okay.  Thank you.

7         Do any of you have a background in the law?

8         MR. BRAFMAN:  Your Honor.

9         THE COURT:  I'm sorry, we have another juror.  Your

10   number, ma'am.

11        THE PROSPECTIVE JUROR:  55.

12        Would you repeat the medicine again?

13        THE COURT:  Yes, ma'am, I will.

14        Daraprim, Chenodal, C-H-E-N-O-D-A-L, and Thiola,

15   T-H-I-O-L-A.

16        THE PROSPECTIVE JUROR:  No.  Thank you.

17        THE COURT:  Is anyone familiar with those

18   medications?  No.

19        The next question is do you have a background in

20   the law?  Have you taken courses in the law, worked with an

21   attorney or law firm, worked for a judge or in a courthouse,

22   worked for a prosecutor, worked form a criminal defense

23   attorney or private investigator or have relatives or close

24   friends who are lawyers, worked for lawyers in any of the

25   positions or worked in any of the positions I have mentioned?

549

1          All right.  For those of you who have raised your

2     hand, the question is would you be able to put anything that

3     you learned about the law out of your mind and accept and

4     apply only the Court's instructions on the law in this case?

5          Is there anybody who cannot do that?  Please raise

6     your hand.  All right.

7          Is there anyone here who would not be able to follow

8     my instructions on the law even if you may have disagreed with

9     those instructions?

10          Has anyone ever hired or consulted a lawyer for any

11     reason?  Please raise your hand.

12          All right.  Would you tell me what your experience

13     has been, what the situation was that led you to hire a

14     lawyer, and if so, whether that experience was satisfactory.

15          I saw that Juror No. 4 had their hand up.

16          Have you hired a lawyer before?

17          THE PROSPECTIVE JUROR:  I have hired one for prenup

18     and hired another one for real estate.

19          THE COURT:  Is there anything about that experience

20     with your lawyer that would impair your ability to sit as a

21     fair and impartial juror in this case?

22          THE PROSPECTIVE JUROR:  No.

23          THE COURT:  Do you have any biased feelings in favor

24     of or against lawyers?

25          THE PROSPECTIVE JUROR:  No.

550

1          THE COURT:  Was there anyone else in the second row,

2     third row or fourth row?  All right.

3          We have Juror No. 26.  Have you hired a lawyer

4     before, ma'am?

5          THE PROSPECTIVE JUROR:  Just to do an estate

6     planning thing.

7          THE COURT:  Is there anything about that experience

8     with the lawyer for estate planning that would affect your

9     ability to be fair and impartial?  Do you have any negative or

10    positive feelings about lawyers as a result of that

11    experience?

12         THE PROSPECTIVE JUROR:  No.  I'm sorry, no.

13         THE COURT:  Thank you.

14         Was there anyone in the second row?

15         There is somebody in the first row.  This would be

16    Juror No. 27.

17         THE PROSPECTIVE JUROR:  Real estate.

18         THE COURT:  You hired a lawyer to do real estate

19    matters for you?

20         THE PROSPECTIVE JUROR:  Yes.

21         THE COURT:  Did you have a satisfactory experience

22    with the lawyer?

23         THE PROSPECTIVE JUROR:  Excuse me?

24         THE COURT:  Was your experience with that lawyer

25    satisfactory?

551

1          THE PROSPECTIVE JUROR:  Yes, it was.  Yes.

2          THE COURT:  Do you have any negative or positive

3     feelings about lawyers?

4          THE PROSPECTIVE JUROR:  No.

5          THE COURT:  Thank you.

6          Anyone else on that row?  Are you Juror No. 29?

7          THE PROSPECTIVE JUROR:  31.  It was an accident

8     case.

9          THE COURT:  I'm sorry, ma'am.

10         THE PROSPECTIVE JUROR:  One was an accident case and

11    one was a divorce case.

12         THE COURT:  In those experiences, did you have a

13    satisfactory experience with the lawyers?

14         THE PROSPECTIVE JUROR:  Yes, I did.

15         THE COURT:  Do you have any negative feelings about

16    lawyers, ma'am?

17         THE PROSPECTIVE JUROR:  No.

18         THE COURT:  No?

19         THE PROSPECTIVE JUROR:  No.

20         THE COURT:  Anyone in the second row?  We are

21    looking at Juror No. 33.

22         THE PROSPECTIVE JUROR:  33.  Purchasing property and

23    estate planning.

24         THE COURT:  The same question, do you have any

25    feelings about lawyers that are negative or that would affect

552

1    your ability to be fair?

2         THE PROSPECTIVE JUROR:  Everything was fine.

3         THE COURT:  All right.  Thank you.  I will ask you,

4    please, everybody please speak up as loudly as you can.

5         Anybody else in the row?  Juror No. 34, yes, sir.

6         THE PROSPECTIVE JUROR:  I want to come up.

7         THE COURT:  You want to come to sidebar, of course.

8         (The following occurred at sidebar; prospective

9    juror present.)

10        THE PROSPECTIVE JUROR:  Two experiences:  One with

11   bankruptcy and the other with immigration.  The bankruptcy

12   experience was fine.  The immigration situation did not -- I

13   married someone from another country.  I had a problem with

14   immigration and the lawyer.  The attorney was not able to

15   resolve it.

16        THE COURT:  Okay.

17        THE PROSPECTIVE JUROR:  And since my wife had to

18   wait six years to be able to come, I had a bit of an

19   experience with that.

20        THE COURT:  Well, would that experience with your

21   immigration lawyer have any effect on your ability to be fair

22   and impartial in this case where we have lawyers all over the

23   place?

24        THE PROSPECTIVE JUROR:  I'm not sure because the

25   experience was negative and I spent a lot of money on it.

553

1            THE COURT:  So will you have negative feelings about

2    lawyers in general that would impede your ability to sit in

3    this case?

4            THE PROSPECTIVE JUROR:  Well, I might have some

5    feelings based on this particular lawyer.

6            THE COURT:  Okay.  Well, do you have a sense about

7    the trustworthiness of lawyers based on your experience that

8    would interfere with your ability?

9            The lawyers in this case obviously are not witnesses

10   and what they say is not evidence.  They will be presenting

11   evidence.  Do you have any reason to hesitate in considering

12   evidence proffered by a lawyer in this case?

13           THE PROSPECTIVE JUROR:  Well, back to that

14   experience, I felt that the -- that the -- the lawyer made a

15   misrepresentation, he made it sound like that he could resolve

16   the issue.  Again, I don't think he properly handled it and

17   that's why it was not resolved.

18           THE COURT:  Did you end up in a lawsuit with the

19   lawyer?

20           THE PROSPECTIVE JUROR:  No.  My wife didn't want to

21   proceed.  Once she came here, she didn't want to proceed.  I

22   was upset about it.

23           THE COURT:  Let me ask you to step back a couple of

24   feet, please.

25           (Prospective juror leaves sidebar.)

MDL   RPR

554

1          MS. KASULIS:  There is the advice of counsel defense

2    in this case.

3          MR. BRAFMAN:  It is an advice of counsel defense

4    issue.  If you are going to keep him, you are going to have to

5    tell him there are lawyers.

6          THE COURT:  He has a general distrust of lawyers.

7          MR. BRAFMAN:  I would ask you to excuse him, Your

8    Honor.

9          MS. KASULIS:  I have no objection.

10          THE COURT:  We will excuse Juror No. 34.

11          (Prospective juror present at sidebar.)

12          THE COURT:  We are going to excuse you.  Thank you.

13    If you can go down to the second floor, to the jury room and

14    tell them that you have been excused.

15          (Prospective juror excused.)

16          (In open court.)

17          THE COURT:  Is there anyone else who has experience

18    with lawyers?

19          Your number, ma'am?

20          THE PROSPECTIVE JUROR:  38.

21          THE COURT:  Can you please tell us what your

22    experience was with the lawyer?

23          THE PROSPECTIVE JUROR:  Divorce attorney, prenuptial

24    attorney and estate planning attorney.

25          THE COURT:  All right.  And did you feel that you

555

1   received satisfactory legal service from those attorneys?

2          THE PROSPECTIVE JUROR:  Except for one.

3          THE COURT:  Well, except for one attorney, would

4   that sense that when a lawyer does not serve you well, would

5   that affect your ability to be fair and impartial in this

6   case?

7          THE PROSPECTIVE JUROR:  No.

8          THE COURT:  Who else?  Just let me go to the

9   gentleman in the blue shirt.

10         (Continued on next page.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

556

```
 1                THE COURT:  What is your number?
 2                THE PROSPECTIVE JUROR:  It was an accident.
 3                THE COURT:  An accident?  Can you stand and speak,
 4     please.  Your number was?
 5                THE PROSPECTIVE JUROR:  45.
 6                THE JUROR:  You had an accident and you hired a
 7     lawyer?
 8                THE PROSPECTIVE JUROR:  Yes.
 9                THE COURT:  And were you satisfied with your
10     lawyer's services?
11                THE PROSPECTIVE JUROR:  Yes.
12                THE COURT:  Is there anything about that experience
13     with your lawyer that would make it difficult for you to be
14     fair and impartial in this case?
15                THE PROSPECTIVE JUROR:  No.
16                THE COURT:  All right.  Thank you.
17                Was there a gentleman who also had his hand up?
18                Your number, sir?  Can you please stand?
19                THE PROSPECTIVE JUROR:  41.
20                THE COURT:  Yes.
21                THE PROSPECTIVE JUROR:  I was assigned one for an
22     accident.  I was assigned one by my insurance company.
23                THE COURT:  You were assigned a lawyer by your
24     insurance company?
25                THE PROSPECTIVE JUROR:  Yes.
```

557

1          THE COURT:  And this was arising out of an
2    automobile accident?
3          THE PROSPECTIVE JUROR:  That's correct.
4          THE COURT:  Were you satisfied with the services you
5    received?
6          THE PROSPECTIVE JUROR:  Absolutely.
7          THE COURT:  Thank you, sir.
8          Is there anyone else in your row who had their hand
9    up?  Now we have a gentleman.
10          Yes, sir.  Your number?
11          THE PROSPECTIVE JUROR:  40.
12          THE COURT:  Yes, sir, number 40.
13          THE PROSPECTIVE JUROR:  A real estate and an
14    accident.
15          THE COURT:  All right.  Were you satisfied with the
16    services of your lawyer in the real estate and accident
17    situation?
18          THE PROSPECTIVE JUROR:  Yes, ma'am.
19          THE COURT:  Thank you, sir.
20          Anyone else?
21          Yes.  Would you give your number, please?
22          THE PROSPECTIVE JUROR:  50.
23          THE COURT:  Yes, sir.  Number 50.
24          THE PROSPECTIVE JUROR:  I had a workers' comp
25    attorney.

```
                      Side Bar                  558
```

1          THE COURT:  Were you satisfied with your attorney's

2    services in the workers' comp arena?

3          THE PROSPECTIVE JUROR:  Yes.

4          THE COURT:  All right.  Anyone else?

5          Juror Number 1?

6          THE PROSPECTIVE JUROR:  Yes.  Divorce attorney.

7          THE COURT:  A divorce attorney?

8          THE PROSPECTIVE JUROR:  Yes.

9          THE COURT:  Were you satisfied with the services you

10   received?

11         THE PROSPECTIVE JUROR:  Yes.

12         THE COURT:  Does anybody have any negative -- I'm

13   sorry.  Yes, ma'am.  Your number?

14         THE PROSPECTIVE JUROR:  58.

15         THE COURT:  Would you just stand so we can hear you.

16         THE PROSPECTIVE JUROR:  I want to come over there.

17         THE COURT:  You want to come to side bar?  All

18   right.  I'll get to you in a moment.

19         (The following occurred at side bar; prospective

20   juror joins.)

21         THE PROSPECTIVE JUROR:  I have experience with an

22   attorney.  My son was arrested last year for possession with

23   intent to sell heroin at school and I had very good

24   representation and I'm still fighting it and I'm still going

25   to court and I am -- I have to admit, I'm not really feeling

Side Bar                              559

1  good about this case because of my situation with the heroin

2  and all the legalities that I'm dealing with.

3          THE COURT:  All right.

4          THE PROSPECTIVE JUROR:  So that's my --

5          THE COURT:  No.  This is important for you to tell

6  us.

7          As a result of that experience that was ongoing,

8  have you formed any opinions about the criminal justice system

9  or about law enforcement or about defense lawyers or about

10 folks who are involved in criminal prosecutions that would

11 interfere with your ability to be fair and impartial in this

12 case?

13         THE PROSPECTIVE JUROR:  It's so hard to say because

14 I'm so mixed up in my own stuff right now, I can't say, oh, I

15 hate attorneys or anything like that.  I'm just, I'm just --

16 I'm going to cry.

17         THE COURT:  I'm sorry.  It must have been a

18 difficult situation for you.

19         THE PROSPECTIVE JUROR:  Yes.  I don't know if

20 affects this, but I just want you to know.

21         THE COURT:  I appreciate that.  Would you be able to

22 focus on the evidence in this case?

23         THE PROSPECTIVE JUROR:  Probably not.  I have to be

24 honest with you.  I couldn't say this morning that I saw the

25 news or I read the paper, but I have heard about this

1    gentleman.

2              THE COURT:  Okay.

3              THE PROSPECTIVE JUROR:  And I am a nurse and I kind

4    of have my own opinion already.

5              THE COURT:  All right.  Well, thinking people like

6    yourself do have opinions about things that are in the news so

7    the question is --

8              THE PROSPECTIVE JUROR:  I don't think, I don't

9    think --

10             THE COURT:  Let me just finish my question.

11             THE PROSPECTIVE JUROR:  I'm sorry.

12             THE COURT:  Would your opinion, based on what you

13   have heard about this case, affect your ability to be fair to

14   both sides?

15             THE PROSPECTIVE JUROR:  I do.

16             THE COURT:  Okay.  You would have a difficult time

17   being fair, is that what you're saying?

18             THE PROSPECTIVE JUROR:  I would have a difficult

19   time being fair to --

20             THE COURT:  The defendant?

21             THE PROSPECTIVE JUROR:  The defendant.

22             THE COURT:  Okay.  All right.  All right.  Well,

23   thank you for telling us that.  Let me have you step back for

24   one moment.

25             (Prospective juror leaves side bar.)

Side Bar                            561

1              MR. BRAFMAN:  I consent.

2              THE COURT:  Juror 58.  Strike for cause?

3              MS. KASULIS:  Yes.

4              MR. BRAFMAN:  What number?

5              THE COURT:  58.

6              (Prospective juror joins side bar.)

7              THE COURT:  Ma'am, come forward.

8              Thank you.  You are number 58, right?

9              THE PROSPECTIVE JUROR:  Yes.

10             THE COURT:  We are going to excuse you.  I will ask

11     you to please report to the second floor jury room where you

12     checked in this morning and let them know you have been

13     excused.  I hope everything works out for you.

14             THE PROSPECTIVE JUROR:  Thank you so much.

15             (Prospective juror excused.)

16             (In open court.)

17             THE COURT:  There was a woman.  Your number?

18             THE PROSPECTIVE JUROR:  My number is 55.

19             THE COURT:  Would you like to speak from where you

20     are or come to side bar?

21             THE PROSPECTIVE JUROR:  I'm going to need to come to

22     side bar.

23             (Side bar continues; prospective juror joins.)

24             THE COURT:  Yes, ma'am.

25             THE PROSPECTIVE JUROR:  I was a petitioner in a

```
                        Side Bar                          562
```

1    case.

2              THE COURT:  Okay.  What were you petitioning for?

3              THE PROSPECTIVE JUROR:  To sue my former job.

4              THE COURT:  So you had a complaint against your

5    employer?

6              THE PROSPECTIVE JUROR:  That is correct.

7              THE COURT:  Were you represented by a lawyer?

8              THE PROSPECTIVE JUROR:  I was.

9              THE COURT:  Okay.

10             THE PROSPECTIVE JUROR:  And at the time, he worked

11   for a firm and then he also broke off from the firm and did

12   his own practice and I stayed with him as opposed to the firm.

13             THE COURT:  Okay.

14             THE PROSPECTIVE JUROR:  I did have a negative

15   experience with the firm, but I don't feel that it would alter

16   my ability, but I wanted to disclose it.

17             THE COURT:  Okay.  I appreciate that.  Did you

18   resolve your issues with your employer?

19             THE PROSPECTIVE JUROR:  Yes, we settled.

20             THE COURT:  Okay.  And is your employer a federal,

21   state or local Government entity?

22             THE PROSPECTIVE JUROR:  Yes.

23             THE COURT:  Would you feel comfortable telling us

24   what the employer, who the employer was?

25             THE PROSPECTIVE JUROR:  I'm comfortable.  Are you

```
                          Side Bar                       563
```

1    asking me?

2              THE COURT:  Yes.

3              THE PROSPECTIVE JUROR:  County of Nassau.

4              THE COURT:  And what did you do for the County of

5    Nassau?

6              THE PROSPECTIVE JUROR:  I was the program supervisor

7    for affirmative action.

8              THE COURT:  Are you still employed there, ma'am?

9              THE PROSPECTIVE JUROR:  No.

10             THE COURT:  Are you currently employed?

11             THE PROSPECTIVE JUROR:  I am.

12             THE COURT:  Are you employed by a private or public

13   entity?

14             THE PROSPECTIVE JUROR:  A public entity.

15             THE COURT:  Okay.  And is it also a county

16   organization?

17             THE PROSPECTIVE JUROR:  No, it's not a county.

18             THE COURT:  State or city?

19             THE PROSPECTIVE JUROR:  Quasi state.

20             THE COURT:  Okay.  Now, based on your experience in

21   the complaint that you filed against your former employer, do

22   you have any negative feelings about lawyers or the justice

23   system?

24             THE PROSPECTIVE JUROR:  No.

25             THE COURT:  Okay.  Okay.  Let me ask you to just

Side Bar                                   564

1    step back one second, please.

2              (Prospective juror leaves side bar.)

3              THE COURT:  Are there any other questions?

4              MR. BRAFMAN:  No, ma'am.

5              MS. SMITH:  No.

6              (Prospective juror joins side bar.)

7              THE COURT:  Ma'am, can you resume your seat.  Juror

8    Number 55.

9              (Prospective juror leaves side bar.)

10             (In open court.)

11             THE COURT:  Any other?

12             Yes, ma'am.  What is your number?

13             THE PROSPECTIVE JUROR:  61.  Okay.  Come forward,

14   ma'am.  Thank you.

15             (Side bar continues; prospective juror joins.)

16             THE PROSPECTIVE JUROR:  My family has an attorney.

17   My dad was being charged with a criminal offense.  He was

18   defending himself, but he hit somebody with a broomstick so

19   they considered it --

20             THE COURT:  An assault?

21             THE PROSPECTIVE JUROR:  An assault.  I didn't have a

22   bad experience with the attorney, but just someone being

23   charged and not knowing all the parameters around it.  I might

24   be more compassionate with a charge because of that, because

25   of the experience I had with my father.  I think it was a

Side Bar                         565

1  charge, but I'm just, like, sharing that information so you

2  guys are aware.

3            THE COURT:  We appreciate that.

4            Well, was this a state charge, State of New York?

5            THE PROSPECTIVE JUROR:  Yes.  It happened maybe,

6  like, it was within the year, like, 2016.  So very recent.

7            THE COURT:  I see.  Okay.  And it has been resolved?

8            THE PROSPECTIVE JUROR:  It has been resolved and

9  everything worked out.

10           THE COURT:  Okay.

11           THE PROSPECTIVE JUROR:  But when you asked, I

12  thought about it, it does bring up feelings from my, being

13  from the family side and having someone accused of something.

14           THE COURT:  Do you -- would you be able to set it

15  aside in this case, the prosecution?

16           THE PROSPECTIVE JUROR:  I will try my best to do so

17  but I do want you guys to know that because, you know, I don't

18  that it would trigger anything.  I'm just being honest about

19  it.

20           THE COURT:  I appreciate it.  Do you have any views

21  about law enforcement or prosecutors or defense lawyers as a

22  result of that experience that would interfere with your

23  ability to be fair?

24           THE PROSPECTIVE JUROR:  I don't have any real

25  negative views but my uncle has immigration problems too.  So,

Side Bar                                    566

1  it's just like, again, with the court and again.  So, I would

2  do my best to be as fair as possible but the part, when you

3  asked that question, I had to think about it and I got

4  emotional about the situation so that's why I decided to bring

5  that to you guys' attention.

6               THE COURT:  Thank you.  I appreciate it very much.

7  I know it's difficult to talk about, but it's important for

8  you to be forthright with us.  Thank you.  Just take two steps

9  back.

10              (Prospective juror leaves side bar.)

11              THE COURT:  Does anyone have any follow-up

12  questions?

13              MS. KASULIS:  She keeps saying "I'll try my best."

14  I think we need definitive answers as to whether she can.

15              THE COURT:  Right.

16              (Prospective juror joins side bar.)

17              THE COURT:  Ma'am, I appreciate, we all appreciate

18  you trying your best.  The question is are you confident that

19  you could be fair minded and to both sides of this case, keep

20  an open mind and listen to the evidence, consider it carefully

21  and decide this case based on the evidence at trial and follow

22  my instructions?  Could you do that?

23              Let me ask if you are confident that you can do that

24  given your experience.

25              THE PROSPECTIVE JUROR:  How I feel right now, no,

1    but I, I am a very open-minded person.

2            THE COURT:  Okay.  Well, how you feel right now, is

3    it because it's in the afternoon, is it a momentary thing or

4    do you think you'll continue?

5            THE PROSPECTIVE JUROR:  It might be momentary.  Like

6    I said, I'm thinking about what we went through in 2016.  It

7    is making me upset so I'm just --

8            THE COURT:  I'm sorry.  I understand.  I appreciate

9    you telling us.  The question is as a juror, could you

10   maintain an open and fair mind to both parties and whether or

11   not the criminal justice system that this case is a part of,

12   would you accept the principles I told you about, the

13   presumption of innocence, the burden of proof and your role in

14   deciding the facts and following the law?

15           THE PROSPECTIVE JUROR:  I say yes.  I'll say yes.

16           THE COURT:  All right.  Would the experience your

17   father and your uncle had, would that interfere or intrude in

18   some way or bring up memories of their case?

19           THE PROSPECTIVE JUROR:  I mean, I'm telling you that

20   because I fear it may be a concern.  That's why I'm saying it.

21   It may be.  I'm not 100 percent.

22           THE COURT:  Okay.  Okay.  Well, thank you.  I really

23   appreciate your disclosing that.  I will ask you to step back

24   for a second.

25           THE PROSPECTIVE JUROR:  Okay.

Side Bar                          568

1          (Prospective juror leaves side bar.)

2          MS. KASULIS:  We object, Your Honor, for cause,

3    strike her for cause.  We make a motion to strike her for

4    cause.

5          THE COURT:  Based upon?

6          MS. KASULIS:  I think she wants to be fair and

7    impartial, but I don't think she is just based on her

8    reluctance to answering.  She got emotional when she was

9    talking about her experience in the criminal justice system.

10   I feel like she wants to be able to say that she is but I

11   don't think she is based on what she said, her demeanor, her

12   hesitancy of answering the question.

13         THE COURT:  The fact that she volunteered to come up

14   here and disclose something that is obviously very painful to

15   her, I do think that she was trying very hard and would try

16   very hard to be fair.  The situation involving her relatives

17   seems very far divorced from what we have in this case.  She

18   hasn't said that she favors either the prosecution or the

19   defendants, I don't think.

20         MS. KASULIS:  I think she said she felt compassion

21   towards defendant so she does have a bias towards the defense

22   because she had the experience of being a defendant.

23         THE COURT:  Let me ask her.

24         (Prospective juror joins side bar.)

25         THE COURT:  Ma'am, thank you.

```
                          Side Bar                        569
```

1              Do you have any feelings about prosecutors and law

2     enforcement?

3              THE PROSPECTIVE JUROR:  Negative?  No.  No.

4              THE COURT:  Negative.  Would you feel that your

5     sense of compassion towards someone charged with an offense

6     would interfere with your ability to fairly evaluate the

7     evidence in this case?

8              THE PROSPECTIVE JUROR:  That's the concern I have.

9              THE COURT:  So the answer is yes, you would?

10             THE PROSPECTIVE JUROR:  Yes.

11             THE COURT:  Yes?  Okay.  All right.  Thank you.  Let

12    me just ask you to step back.

13             (Prospective juror leaves side bar.)

14             THE COURT:  I think --

15             MR. BRAFMAN:  I'm not going to belabor this.  If you

16    feel she should be challenged --

17             THE COURT:  This is Juror Number 61.  Okay.  I will

18    excuse Juror 61.

19             (Prospective juror joins side bar.)

20             THE COURT:  Ma'am, we are going to excuse you.  We

21    will ask you to go downstairs to the jury room and tell them

22    you have been excused.  Thank you very much for your candor.

23    Thank you.

24             (Prospective juror excused.)

25             (In open court; side bar ends.)

570

1          THE COURT:  Did anyone else have their hand up?

2     Yes?

3          THE PROSPECTIVE JUROR:  I'm Juror Number 54.

4          THE COURT:  Yes, sir.

5          THE PROSPECTIVE JUROR:  I hired a personal injury

6     lawyer.  I was satisfied with their services and have no

7     negative or positive.

8          THE COURT:  Thank you, sir.

9          All right.  If there are no other hands up, I will

10    resume the questions.  Thank you.

11         Has anyone at any time worked for, applied for a job

12    in or had a close friend or relative employed in any law

13    enforcement capacity or position such as the U.S. Attorney's

14    Office, the Department of Justice, any law enforcement agency

15    such as the FBI, the U.S. Postal Inspection Service or any

16    regulatory agency like the SEC, FINRA, any state or local

17    police department, Attorney General's Office or District

18    Attorney's Office or any private security company or

19    investigation firm or any position connected to the criminal

20    justice system such as a jail or prison or probation or

21    parole?

22         Okay.  The question is whether your own experience

23    or the dealings of your friend or relatives in law enforcement

24    would have an effect on your ability to be fair and impartial

25    to both sides.  If so, please raise your hand.

Side Bar                                    571

1          THE PROSPECTIVE JUROR:  I have, you know --

2          THE COURT:  Okay.  Ma'am, I might ask you to come to

3    side bar.  What is your number?

4          THE PROSPECTIVE JUROR:  26.

5          THE COURT:  Okay.  And you have relatives or

6    yourself have experience?

7          THE PROSPECTIVE JUROR:  I did have relatives.

8          THE COURT:  All right.  Let me ask you to come to

9    side bar, please.

10          (The following occurred at side bar; prospective

11   juror joins.)

12          THE COURT:  Yes, ma'am.  You are Juror Number 26?

13          THE PROSPECTIVE JUROR:  My brother is a corrections

14   officer in New York State and my brother-in-law was a

15   policemen in New York City.

16          THE COURT:  Okay.  Now, have they talked about their

17   job with you?

18          THE PROSPECTIVE JUROR:  Not for a long time.  One's

19   passed away and one's been retired a long time.

20          THE COURT:  I see.  Is there anything about what you

21   have learned in their jobs that would affect your ability to

22   be fair to both sides?

23          THE PROSPECTIVE JUROR:  No.

24          THE COURT:  Do you have any feelings in favor or

25   against law enforcement?

```
                        Side Bar                      572
```

 1          THE PROSPECTIVE JUROR:  No.

 2          THE COURT:  Versus people who are arrested?

 3          THE PROSPECTIVE JUROR:  No.

 4          (Prospective juror leaves side bar.)

 5          (In open court.)

 6          THE COURT:  Let's see who else.  Is there anyone

 7     else who would like to speak about their experience or close

 8     relatives, experience in law enforcement?

 9          Juror Number 1, please come forward.

10          (Side bar continues; prospective juror joins.)

11          THE COURT:  Yes, ma'am.

12          THE PROSPECTIVE JUROR:  My ex-husband applied to the

13     FBI and went through the second phase, I believe, but didn't

14     go further.

15          THE COURT:  Okay.  Is there anything about your

16     husband's experience with the FBI and his job application that

17     would affect your ability or your sense of the FBI?

18          THE PROSPECTIVE JUROR:  No.

19          THE COURT:  All right.  Do you have any other

20     relatives in law enforcement or close friends?

21          THE PROSPECTIVE JUROR:  Not any other.  Applied for

22     it, but they're not in law enforcement.

23          THE COURT:  Okay.  Is there anything about that

24     experience that they've applied but have not ended up in law

25     enforcement that would affect your ability or your views about

573

1  law enforcement?

2          THE PROSPECTIVE JUROR:  No.

3          THE COURT:  Okay.  Thank you.

4          (Prospective juror leaves side bar.)

5          (In open court.)

6          THE COURT:  Is there anyone else who had their hand

7  up?

8          Second row?  Yes, you are juror number -- yes.  Come

9  forward.  Are you Juror Number 9?

10          THE PROSPECTIVE JUROR:  Yes.

11          THE COURT:  Okay.  Come forward.  Thank you.

12          (Side bar continues; prospective juror joins.)

13          THE COURT:  Yes, you're Juror Number 9?

14          THE PROSPECTIVE JUROR:  Yes.  My daughter is a

15  probation officer.  She's a CLO, she works in --

16          THE COURT:  She works as a probation officer in the

17  state or federal system?

18          THE PROSPECTIVE JUROR:  City.

19          THE COURT:  City?  Okay.  And you said CLO?

20          THE PROSPECTIVE JUROR:  Yes.

21          THE COURT:  What is that?

22          THE PROSPECTIVE JUROR:  That is when they go to

23  court and they listen to the reports that the probation

24  officers send for the attorney to hear and make decisions.

25          THE COURT:  I see.  Okay.

Side Bar                            574

1          THE PROSPECTIVE JUROR:  So she hears the report for

2    the children.

3          THE COURT:  Oh, I see.  This is on behalf of

4    children?

5          THE PROSPECTIVE JUROR:  Yes.

6          THE COURT:  I see.  Is there anything about your

7    daughter's experience, her professional experience that would

8    have an effect on your ability to be fair and impartial?

9          THE PROSPECTIVE JUROR:  Not at all.

10          THE COURT:  Would you be able to put out of your

11    mind anything you might have heard from your daughter

12    regarding her job?

13          THE PROSPECTIVE JUROR:  Yes.

14          THE COURT:  Thank you.

15          THE PROSPECTIVE JUROR:  You're welcome.

16          (Prospective juror leaves side bar.)

17          (In open court.)

18          THE COURT:  Anyone else?

19          Okay.  Your number, sir?

20          THE PROSPECTIVE JUROR:  16.

21          THE COURT:  If you could, please come forward and

22    ask you to stand right here for one moment.

23          (Side bar continues.)

24          THE COURT:  The question is we need to tell more

25    jurors to come tomorrow now in order to get them.  Do you

```
                       Side Bar                        575
```

1   think we need more?

2            MS. KASULIS:  Possible.

3            THE COURT:  How many more, 50 more?

4            MS. SMITH:  Just in case.

5            MR. BRAFMAN:  For tomorrow?

6            THE COURT:  Yes.

7            MR. BRAFMAN:  Yes.

8            THE COURT:  We have to put out the order now.  Okay.

9   Thanks.

10           (Prospective juror joins side bar.)

11           THE COURT:  This is juror number 16.  Yes?

12           THE PROSPECTIVE JUROR:  So I have somewhat of a

13  balcony, like, there's a balcony that's across my window and I

14  live in a condo and there was one day, a kind of construction

15  project rectified on that balcony that basically obstructed my

16  entire view out my window.  I did go -- I asked my dad and he

17  got a lawyer and said that, unfortunately, against the board

18  rules of the condo, that what was done through the

19  construction project was actually legal, but they had not,

20  there's usually supposed to be a board vote on any type of

21  construction project and that had not been done.  So I

22  don't -- like, the lawyer said it was okay, but I don't know

23  because nothing really made sense.

24           THE COURT:  Okay.  So your father hired a lawyer to

25  help with you this, is that what you're saying?

Side Bar                                      576

1          THE PROSPECTIVE JUROR:  Yes, he hired a lawyer to do

2    it.

3          THE COURT:  And did that experience with a lawyer

4    result in feelings, negative feelings about lawyers?

5          THE PROSPECTIVE JUROR:  A little bit, yes.

6          THE COURT:  Obviously, we have a lot of lawyers in

7    this case.

8          THE PROSPECTIVE JUROR:  Of course.

9          THE COURT:  The prosecutors are lawyers.  The

10   defense has lawyers.  Would your feelings of lawyers affect

11   your ability to be fair to both sides?

12         THE PROSPECTIVE JUROR:  Yes.

13         THE COURT:  So you think you would be --

14         THE PROSPECTIVE JUROR:  Somewhat impartial?

15         THE COURT:  I want you to be impartial.  I mean not

16   to favor one side?

17         THE PROSPECTIVE JUROR:  Yes.  Somewhat biased, you

18   mean?  Yes, it might.

19         THE COURT:  Okay.  Can you explain that a little

20   further, please?

21         THE PROSPECTIVE JUROR:  I don't know.  I feel like

22   the lawyer didn't really -- I feel like it's somewhat of a

23   manipulated system somewhat and not everything always turns

24   out accurately despite -- how should I say this?

25         THE COURT:  Okay.

```
                        Side Bar                        577
```

1              THE PROSPECTIVE JUROR:  I don't know.  I feel like

2    sometimes the law can be twisted.

3              THE COURT:  Okay.  All right.

4              THE PROSPECTIVE JUROR:  And it's just, I don't

5    really --

6              THE COURT:  Would you feel that way with the lawyers

7    in this case, based on your past experience with lawyers?

8              THE PROSPECTIVE JUROR:  Well, I don't know the

9    lawyers in this case, so --

10             THE COURT:  Yes.  So could you maintain an open mind

11   and listen carefully to the evidence that they present and the

12   testimony that they present?

13             THE PROSPECTIVE JUROR:  I guess I could.

14             THE COURT:  Well, do you have a doubt or concerns

15   that you could not?

16             THE PROSPECTIVE JUROR:  I do have actual concerns.

17             THE COURT:  Okay.  You may step back, please.

18             (Prospective juror leaves side bar.)

19             THE COURT:  This is Juror 16.

20             MR. BRAFMAN:  There should be consent, I would

21   think.

22             MS. SMITH:  Yes.

23             MS. KASULIS:  Yes.

24             THE COURT:  Juror Number 16 will be excused.

25             (Prospective juror joins side bar.)

Side Bar                        578

1          THE COURT:  Sir, we're going to excuse you to go

2     down to the second floor and tell them you have been excused

3     and you should get your paperwork.  All right?

4          THE PROSPECTIVE JUROR:  All right.

5          THE COURT:  Thank you.

6          (Prospective juror excused.)

7          (In open court.)

8          THE COURT:  Is there anything else?

9          What was your experience with lawyers?  Oh, you want

10    to come forward?  What's your number, please?

11         THE PROSPECTIVE JUROR:  43.

12         THE COURT:  Please come forward.

13         (Side bar continues; prospective juror joins.)

14         THE COURT:  Hi.  How are you?

15         THE PROSPECTIVE JUROR:  Very well.  How are you

16    doing?

17         THE COURT:  Come up closer.

18         THE PROSPECTIVE JUROR:  I have a retired uncle in

19    Tennessee, criminal division of investigation, and state

20    police.  His wife which was my mother's sister died with

21    cancer a few weeks ago and, again, it's nothing do with this

22    case because of fraud, but thinking about the medicine and the

23    previous condition with this gentleman that increased the

24    price of medicine with cancer and stuff, I may have a little

25    mixed feeling about it.

Side Bar                                579

1          THE COURT:  Well, it's fine to have an opinion or

2     feelings about anything that you read in the newspaper.

3     That's what --

4          THE PROSPECTIVE JUROR:  In the past.

5          THE COURT:  But the question is whether you could,

6     whether you have a state of mind that is fair and impartial to

7     both sides.

8          THE PROSPECTIVE JUROR:  Yes.  I think I wouldn't be

9     fair to him thinking about what he did with the previous

10    condition.  Again, I don't know much about this case but as a

11    person, I don't have much respect for him.

12         THE COURT:  Okay.  All right.  Well, let me ask you

13    to step back, please.

14         THE PROSPECTIVE JUROR:  Sure.

15         (Prospective juror leaves side bar.)

16         MR. BRAFMAN:  I've heard enough, Judge.  I move for

17    cause.

18         THE COURT:  Okay.  We will dismiss Juror Number 43.

19         (Prospective juror joins side bar.)

20         THE COURT:  Sir, we are going to dismiss you and ask

21    you to go down to the jury room on the second floor and tell

22    them you have been dismissed and get your paperwork.

23         (Prospective juror excused.)

24         (In open court.)

25         THE COURT:  Did anyone else have their hand up on

Side Bar                              580

1    the law enforcement question?  Yes, ma'am.

2             THE PROSPECTIVE JUROR:  Come forward?

3             THE COURT:  Yes.  Do you want to come forward,

4    please?  You are Number 4, right?

5             THE PROSPECTIVE JUROR:  Yes.

6             THE COURT:  Thank you.

7             (Side bar continues; prospective juror joins.)

8             THE COURT:  Hi.

9             THE PROSPECTIVE JUROR:  My husband's been in

10   corrections for 28 years.

11            THE COURT:  Okay.

12            THE PROSPECTIVE JUROR:  And I have my

13   brother-in-law, a police officer, and my niece, well my

14   brother-in-law he's retired now but my knees is.

15            THE COURT:  NYPD.

16            THE PROSPECTIVE JUROR:  Yes.

17            THE COURT:  Is there anything about your relatives'

18   experiences with law enforcement that would affect your

19   ability to keep an open mind for both sides in this case?

20            THE PROSPECTIVE JUROR:  No.

21            THE COURT:  And would you be more inclined to

22   believe law enforcement witnesses over other witnesses?

23            THE PROSPECTIVE JUROR:  No.

24            THE COURT:  Would you be able to put out of your

25   mind what you might have heard from your relatives about the

Side Bar                              581

1    work in law enforcement and to decide this case with a fair

2    mind?

3              THE PROSPECTIVE JUROR:  I hope I do.

4              THE COURT:  Based on the evidence only in the case?

5              THE PROSPECTIVE JUROR:  I hope I do.

6              THE COURT:  Do you have any doubt or are you

7    confident that you can do that, that you would consciously

8    think about being fair minded to both sides?  Could you do

9    that?

10             THE PROSPECTIVE JUROR:  I'm trying, yes.  I would

11   try to, yes.

12             THE COURT:  Okay.  Well, when you say you would try,

13   I'm sensing some difficulty.

14             THE PROSPECTIVE JUROR:  Yes, because I want to do my

15   civic duty to be here.

16             THE COURT:  I appreciate that.  Do you have a slight

17   tendency to favor law enforcement in situations?

18             THE PROSPECTIVE JUROR:  No, because most people are

19   good and bad, you know, no matter what position you are in.

20             THE COURT:  That's true.

21             Now, let me ask you this.  When you said you would

22   try, what was that in reference to?  Would you try to be fair

23   to both sides?

24             THE PROSPECTIVE JUROR:  To all the evidence I hear,

25   yes.

Side Bar                                582

1          THE COURT:  Would you commit to deciding this case

2    based only on the evidence at trial and not allow what you

3    might have heard from your relatives about their jobs seep

4    into your considerations?

5          THE PROSPECTIVE JUROR:  I really can't tell you

6    because I try to be as honest as I can.

7          THE COURT:  Okay.  I appreciate that.  Given what

8    I've described to you in this case, have you ever had any

9    discussions with your relatives about their law enforcement

10   duties in relation to charges that are similar to the ones in

11   this case?

12         THE PROSPECTIVE JUROR:  No.

13         THE COURT:  Okay.  Let me ask you to just step back

14   for one second, please, just a few feet.

15         (Prospective juror leaves side bar.)

16         THE COURT:  Any issues for this juror?

17         MR. BRAFMAN:  No, Your Honor.

18         MS. SMITH:  No.

19         THE COURT:  All right.  I'll ask that she maintain

20   her seat.  Thank you.

21         (Prospective juror joins side bar.)

22         THE COURT:  You can maintain your seat.

23         THE PROSPECTIVE JUROR:  Thank you.

24         (In open court; side bar ends.)

25         THE COURT:  Was there anyone else before we resume

1    questioning?  Thank you.

2         I remind you now that law enforcement witnesses such

3    as FBI agents and Government regulators will be testifying in

4    this case, but their testimony is not entitled to any greater

5    or lesser weight than that of any other witness.  Rather, you,

6    if you serve as a juror, must be prepared to waive the

7    credibility of each witness who testifies and decide what

8    value their testimony has to the issues in this case.

9         (Continued on next page.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

584

1           (Continuing.) (In open court.)

2           THE COURT:  Is there anyone who could not do this?

3           Would the fact that you may have a personal

4    experience or a family member or a close friend involved in

5    law enforcement prevent you from deciding the case based

6    solely on the evidence and apply the law with fairness and

7    impartiality to both sides?  If so, please raise your hand.

8           Have you or anyone in your family or close personal

9    friend ever been either a victim of a crime or accused of a

10   crime, including any financial crime?

11          And have you or any personal friend or close

12   relative ever been involved in a criminal case or

13   investigation in any way, for example, as someone who issues

14   or files a complaint or as a victim, a target, a subject, a

15   defendant, or a witness?  If so, please raise your hand.

16          All right.  We have Juror No. 1.  Maybe what we will

17   do is hear from you at sidebar on these issues.  Excuse us.

18          (Prospective juror present at sidebar.)

19          THE COURT:  Yes, ma'am.

20          THE PROSPECTIVE JUROR:  2003, I was stationed in

21   southwest of England in the navy and I was a victim of sexual

22   assault.  The person went to, after investigation, NCIS was

23   done, he was sentenced to four years in the brig and that was

24   it.

25          THE COURT:  All right.  As a result of that, what

585

1  I'm sure must have been a very difficult experience, have you

2  formulated any opinions about the criminal justice system or

3  about anything related to prosecution?

4          THE PROSPECTIVE JUROR:  The experience was yes, very

5  difficult, but I feel that it was fair and I was guided

6  properly.

7          THE COURT:  All right.  Thank you.  Let me ask you

8  to step back two feet, please.

9          (Prospective juror leaves sidebar.)

10         THE COURT:  Does anyone have any issues with this

11 witness?

12         MS. KASULIS:  No.

13         MR. BRAFMAN:  No.

14         THE COURT:  Ma'am, you can remain in your seat.

15         (Prospective juror leaves sidebar.)

16         THE COURT:  I think the jurors need a restroom

17 break.

18         MR. BRAFMAN:  So do the lawyers.

19         THE COURT:  All you have to do is ask.

20         MR. BRAFMAN:  I know.

21         (In open court.)

22         THE COURT:  Ladies and gentleman, I understand some

23 of you may wish to have a brief bathroom break.  We are happy

24 to accommodate you.  I would ask you not to speak to anybody

25 and return as soon as you can to your seats.  The bathrooms

586

1  are located, which way, Ms. Jackson?  To the right.  The CSO's

2  could direct you to the bathrooms.  Please don't use your

3  phones.  If you would like to take a restroom break, please

4  come back no later than 4:40.  That is 12 minutes from now.

5  Thank you.

6            (Recess taken.)

7            (In open court.)

8            THE COURT:  Have a seat.  I'm sorry.

9            Can you go looking for 41 and 59.  Is Juror No. 41

10  or 59 here?  I am looking for 41 and 59.

11           Hi.  I think we have everybody.  This is who we have

12  been waiting for.  We will continue our questions.

13           There was the question regarding whether you have

14  ever been a victim or accused of a crime and have any close

15  friends or relatives.  Is there anyone who wants to be heard?

16           There is nobody else in this row, as far as I could

17  see.

18           Juror No. 26?

19           THE PROSPECTIVE JUROR:  Yes.

20           THE COURT:  Come forward, please.

21           (The following occurred at sidebar; prospective

22  juror present.)

23           THE COURT:  Yes, ma'am.

24           THE PROSPECTIVE JUROR:  There was supposed to be a

25  modification on the house and it was like a scam, we paid

MDL  RPR

587

1    money and the next thing I know I heard from I guess the

2    courts in Manhattan that this person was on trial.  The same

3    time there was a debt settlement company that did the same

4    thing to us.  I paid them for several years and they didn't

5    pay all of the debts.  And my son has been arrested.

6              THE COURT:  Is there anything about your experience

7    as a victim of house repairs --

8              THE PROSPECTIVE JUROR:  No, it's been a while now.

9    I'm just smarter.

10             THE COURT:  Do you have any feelings or against the

11   prosecution or the defense?

12             THE PROSPECTIVE JUROR:  No, not at all.  Thank you.

13             THE COURT:  Let me make sure there are no other

14   questions.  Thank you.

15             (Prospective juror leaves sidebar.)

16             (In open court.)

17             THE COURT:  Does anyone else have their hand up on

18   the right side?

19             Sir, why don't you come first?  You are No. 33.

20             THE PROSPECTIVE JUROR:  No. 33.

21             THE COURT:  Yes.

22             THE PROSPECTIVE JUROR:  A year ago December my

23   neighbor's house was getting robbed and I noticed because I

24   saw a guy walk up the side, I called 911.  While we were

25   waiting, a guy came out and attacked me.  So he put out an

588

1  order of protection.  So the cops came.  He got arrested but

2  they put an order of protection against him to come around me

3  and that still stands today.

4          THE COURT:  Is there anything about that experience

5  that would prevent you from being fair and --

6          THE PROSPECTIVE JUROR:  No, I'm just saying yes to

7  the question.

8          THE COURT:  So you were basically a witness?

9          THE PROSPECTIVE JUROR:  A witness.  I guess I

10 started the altercation.

11         THE COURT:  Thank you.

12         (Prospective juror leaves sidebar.)

13         (In open court.)

14         THE COURT:  Ma'am, did you want to come forward?

15         (Prospective juror present at sidebar.)

16         THE COURT:  You are number 38, correct?

17         THE PROSPECTIVE JUROR:  Yes.

18         THE COURT:  Hi, how are you, Juror No. 38?

19         THE PROSPECTIVE JUROR:  Yes.  My daughter was

20 assaulted when she was about 17.  My granddaughter was

21 recently mugged about six months ago and my son was arrested

22 when he was about 19 for possession of a weapon.

23         THE COURT:  Possession of what?

24         THE PROSPECTIVE JUROR:  A weapon.

25         THE COURT:  Is there anything about your relative's

589

1    experience with the criminal justice system that would bring

2    back feelings where you couldn't be fair and impartial toward

3    law enforcement or someone accused of a crime.

4            THE PROSPECTIVE JUROR:  No.

5            THE COURT:  Could you put aside or put out of your

6    mind the experiences that your relatives, your loved-ones and

7    decide this case based on the evidence?

8            THE PROSPECTIVE JUROR:  Yes.  My son was over 30

9    years ago and my daughter was years ago, but my granddaughter

10   was recently.

11           THE COURT:  All right.  Thank you.  Did you have any

12   further questions anybody?

13           MS. KASULIS:  No, Your Honor.

14           MR. BRAFMAN:  No, Your Honor.

15           THE COURT:  Thank you.

16           (Prospective juror leaves sidebar.)

17           (In open court.)

18           THE COURT:  Anybody else?  Juror No. 49, please come

19   forward.

20           Number 49.

21           (Prospective juror present at sidebar.)

22           THE COURT:  Hi.

23           THE PROSPECTIVE JUROR:  Hi.

24           THE COURT:  Juror No. 49.  What was your experience,

25   please?

590

1          THE PROSPECTIVE JUROR:  My husband and I lost our

2     lifesavings because we were victims of a Ponzi scheme.  I

3     don't know if that has anything to do with it.

4          THE COURT:  Well, is there anything about that

5     experience that would influence your ability to be fair to

6     both sides in this case?

7          THE PROSPECTIVE JUROR:  Well, I can't really say

8     because I don't know what the case is all about.  I don't

9     know, but it does make me not trust people.

10          THE COURT:  All right.  Can you tell me as best you

11     can recall how the scheme worked, just briefly?

12          THE PROSPECTIVE JUROR:  We invested our money with

13     someone that we knew that we trusted and it was gone.

14          THE COURT:  Okay.  Would that experience cloud your

15     ability to consider only the evidence in this case in deciding

16     the disputed facts?

17          THE PROSPECTIVE JUROR:  I guess I would have to see

18     the evidence and to be able to say for sure.  I can't....

19          THE COURT:  Well, it would be important because we

20     can't in the middle of a trial say oh --

21          THE PROSPECTIVE JUROR:  Yeah.

22          THE COURT:  Certainly, if you have those feelings,

23     if you were selected and you started to feel that you couldn't

24     be fair anymore, we would want to know that, but hopefully

25     going through this process now we can avoid that.  But the

591

1   point is that the evidence will be presented at the trial.  I

2   don't want to characterize it one way or the other, but it

3   does involve charges of fraud and my question is whether, as I

4   describe the charges generally, whether that would resonate

5   with you or make you feel you couldn't be fair to both sides?

6              THE PROSPECTIVE JUROR:  I don't know.  I mean,

7   thinking about my experience, I get angry with it.  I don't

8   know about this, but hopefully I would be fair.  I'd like to

9   think I would be fair.

10             THE COURT:  Let me just ask you to step back.

11             THE PROSPECTIVE JUROR:  Sure.

12             (Prospective juror leaves sidebar.)

13             MR. BRAFMAN:  Your Honor, there are going to be a

14  number of witnesses who will be testifying that they invested

15  with the defendant and believed they were defraud.  I would

16  ask Your Honor to ask the juror if that were part of the case

17  would she identify with the victims simply because of what she

18  went through.

19             MR. AGNIFILO:  I think the Government's theory is

20  that this is a Ponzi scheme.

21             THE COURT:  I have heard that term in connection

22  with this case.

23             MR. AGNIFILO:  But they may.  If they don't use the

24  phrase, that is what it is.

25             THE COURT:  Would a victim say those words?

592

1           MS. SMITH:  I don't think it would --

2           MR. BRAFMAN:  Some of the victims I think have on

3  their own referred to it as a Ponzi scheme.  I don't know what

4  is going to come out of their mouths, but I would seem to

5  think that she --

6           MS. SMITH:  I don't know if you have follow-up

7  questions that you want to ask about the witnesses.  That is

8  fine with us.

9           THE COURT:  Do you want me to say if the witness

10 testifies and uses the term Ponzi scheme?

11          MR. BRAFMAN:  If this case involved -- part of the

12 people who claimed to have been victimized by the Defendant

13 and would she identify with the victims in a way that is

14 unfair to the defendant.

15          MR. AGNIFILO:  I think one of the theories is

16 Shkreli knew many of the victims on a personal level.

17          THE COURT:  Okay.  You know I have been trying

18 really hard not to do it, but with your permission I will do

19 it.  I don't want to be accused of characterizing evidence.

20          MR. AGNIFILO:  We would never do that.

21          THE COURT:  Ma'am, come back.

22          (Prospective juror present at sidebar.)

23          THE COURT:  So if you were to hear testimony of

24 victims who said they knew the defendant and they relied on

25 his statements in making investments, would that evoke your

593

1  past experience and make it difficult for you to be fair

2  toward the defendant?

3          THE PROSPECTIVE JUROR:  I think it might.

4          THE COURT:  And if you heard a victim testify and

5  use the term Ponzi scheme, would that also affect your

6  ability?

7          THE PROSPECTIVE JUROR:  Yeah.

8          THE COURT:  When you say you think it might, would

9  you, nonetheless, be able to commit to being -- maintaining as

10  best you can a fair and impartial state of mind as you

11  evaluate the evidence in this case?

12         THE PROSPECTIVE JUROR:  Yes, I would definitely look

13  at the evidence for sure.

14         THE COURT:  Would you feel that you would want to

15  perhaps give some sympathy or favor toward somebody who

16  testifies and describes himself or herself as a victim?

17         THE PROSPECTIVE JUROR:  Yes.

18         THE COURT:  All right.  Let me ask you to step aside

19  for one second.

20         (Prospective juror leaves sidebar.)

21         MR. BRAFMAN:  We think she should be challenged for

22  cause.

23         THE COURT:  All right.  We will dismiss Juror No. 49.

24         MR. BRAFMAN:  49.

25         THE COURT:  Okay.  Thank you.

594

1          (Prospective juror leaves sidebar.)

2          THE COURT:  Ma'am, you are excused.  Go back to the

3     second floor.

4          (Prospective juror excused.)

5          (Continued on next page.)

```
                          Side Bar                      595
```

1              (In open court.)

2              THE COURT:  Was there anyone else who had their hand

3      up?

4              Okay.  Sir, why don't you come forward.

5              THE PROSPECTIVE JUROR:  57.

6              THE COURT:  Number 57?  Yes, sir.  Please come

7      forward.

8              (Side bar continues; prospective juror joins.)

9              THE COURT:  Yes, sir.

10             THE PROSPECTIVE JUROR:  So, I was convicted of a

11     crime.

12             I'm also here because the clerk told me I could

13     raise a hardship issue.  Have you asked about the duration of

14     the trial and who can serve?  I find I can't serve at this

15     point beyond two weeks because I will not be compensated and

16     I'm going to have financial hardship beyond that.  So beyond a

17     two week level would make it a hardship for me.  The crime is

18     an issue but it doesn't -- I don't feel it would influence me

19     in the case in any way.

20             THE COURT:  Okay.  You said you were not going to be

21     paid?

22             THE PROSPECTIVE JUROR:  Right.  Two weeks.

23             THE COURT:  Is that your employer's policy.

24             THE PROSPECTIVE JUROR:  That is the policy.  I

25     determined it after we discussed it because I had no way of

596

1   finding out.

2        THE COURT:  And it's a hard and fast policy in terms

3   of -- what kind of work do you do?

4        THE PROSPECTIVE JUROR:  I work for a not-for-profit

5   in Brooklyn that's in the employee handbook.  It's very clear.

6   Beyond two weeks, they will not pay and I have to give them

7   the $40.

8        THE COURT:  You have to give them the $40?

9        MR. BRAFMAN:  That's a scam.

10       THE COURT:  I'm sorry.  Let me ask you stand back

11  for one moment.

12       (Prospective juror leaves side bar.)

13       THE COURT:  I think we have to excuse Juror Number

14  57 for hardship.

15       (Prospective juror joins side bar.)

16       THE COURT:  We're going to excuse you.  We are

17  excusing Juror Number 57.  I ask that you go down to the jury

18  room and tell them that and you should get you paperwork.

19  Thank you.

20       (Prospective juror excused.)

21       (In open court; side bar ends.)

22       THE COURT:  Was there anyone else who had their hand

23  up?

24       Okay.  We will continue with our questions then.

25  Thank you.

```
                        Side Bar                    597
```

1          Other than those who have already come up to talk to
2    me at side bar or have answered the questions, have any of you
3    been a witness or a party in a civil lawsuit or criminal case?
4    Again, if you've already raised your hand and come to side bar
5    to talk to us, you need not raise your hand again.
6          Has anyone ever been a witness at a grand jury
7    proceeding or a deposition?
8          THE PROSPECTIVE JUROR:  I'm not sure if it is but
9    can I speak to you?
10          THE COURT:  Yes, of course.
11          Juror Number 4 would like to speak to us at side
12    bar.
13          (The following occurred at side bar; prospective
14    juror joins.)
15          THE COURT:  Yes, ma'am.
16          THE PROSPECTIVE JUROR:  I'm a retired veterinarian
17    and three times, I was in court.  One time, somebody accused
18    me of not paying them.  I had proof and that was dismissed.
19    Another time there was an animal whose surgery I discontinued,
20    they were not doing well and I brought them to a specialty
21    facility and that person made a claim but never showed up.
22    That was dismissed.  And the last time a pet did die in my
23    care before the reports came back and that basically resulted
24    in my favor by the judge that it was handled by.
25          THE COURT:  These were lawsuits?

598

1          THE PROSPECTIVE JUROR:  Right.

2          THE COURT:  So I don't know if this falls under --

3          THE PROSPECTIVE JUROR:  Yes.

4          THE COURT:  But is there anything about that

5     experience with your --

6          THE PROSPECTIVE JUROR:  Everything was positive.

7          THE COURT:  Okay.  Okay.  And could you be fair in

8     this case?

9          THE PROSPECTIVE JUROR:  I think I can.

10         THE COURT:  Okay.  And could you be confident that

11    you can?

12         THE PROSPECTIVE JUROR:  Yes.

13         THE COURT:  Okay.  Thank you, ma'am.

14         THE PROSPECTIVE JUROR:  Okay.

15         THE COURT:  Thank you for letting us know.

16         (In open court; side bar ends.)

17         THE COURT:  Is there anyone else that would have had

18    their hand up to the last question being a witness or a party

19    in a civil lawsuit if you haven't already up to side bar?

20         Oh, sorry.

21         THE PROSPECTIVE JUROR:  I was in a deposition during

22    a personal injury case.

23         THE COURT:  Okay.  And is there anything about that

24    that experience that would affect your ability to be fair?

25         THE PROSPECTIVE JUROR:  No.

599

```
 1              THE COURT:  Thank you, sir.
 2          Anyone else?
 3          All right.  Do any of you presently or have you in
 4   the past had a dispute or claim with the United States
 5   Government?  And, again, if you already addressed this at side
 6   bar, you need not again.  Do any of you have a claim or
 7   dispute with the federal Government, close friend or family
 8   members?
 9          Have you ever had a negative experience or been
10   involved in a dispute, conflict or litigation with any law
11   enforcement officer or Government agency?  If so, please raise
12   your hand.
13          Are you currently or have you ever been a plaintiff
14   or a defendant or a party in any case other than those who
15   have already raised their hand?
16          Does anybody have any opinions about defense lawyers
17   or prosecutors that would prevent you from being a fair and
18   impartial juror in this case?
19          Have you ever sat on a grand jury or a regular trial
20   jury?  If so, I'm going to ask you how long ago, whether it
21   was a civil or a criminal case and whether you reached a
22   verdict, but do not tell me the verdict.  I will also ask you
23   whether it's a state or federal case.
24          Any jurors to my left?
25          Okay.  Let's go to Juror Number, are you --
```

600

1                    THE PROSPECTIVE JUROR:  18.

2                    THE COURT:  Yes, ma'am.  Was it a civil or criminal

3       case?

4                    THE PROSPECTIVE JUROR:  It was a criminal case.

5                    THE COURT:  And did you reach a verdict?

6                    THE PROSPECTIVE JUROR:  Yes, we did.

7                    THE COURT:  Was this in state or federal court?

8                    THE PROSPECTIVE JUROR:  State court.

9                    THE COURT:  And was there anything about that

10      experience that would affect your ability to evaluate this

11      case fairly and impartially?

12                   THE PROSPECTIVE JUROR:  No.

13                   THE COURT:  Thank you, ma'am.

14                   Anyone else?  Yes.  You are Juror Number --

15                   THE PROSPECTIVE JUROR:  20.

16                   THE COURT:  Yes, ma'am.

17                   THE PROSPECTIVE JUROR:  It was a criminal case,

18      state, and they reached a verdict.

19                   THE COURT:  Okay.  Is there anything about the

20      experience that had an effect, an adverse affect on your

21      ability to be fair to both sides?

22                   THE PROSPECTIVE JUROR:  No.

23                   THE COURT:  All right.  Anyone else?

24                   Juror Number 26.

25                   THE PROSPECTIVE JUROR:  26.

601

```
 1              THE COURT:  Yes, ma'am.
 2              THE PROSPECTIVE JUROR:  It was a criminal case in
 3   the state and we reached a verdict.  It was a long time ago.
 4              THE COURT:  Okay.  And did you have any issues
 5   arising from that service?
 6              THE PROSPECTIVE JUROR:  No.
 7              THE COURT:  Anyone else?
 8              Second row.  Number 33.
 9              THE PROSPECTIVE JUROR:  I served on a grand jury.
10              THE COURT:  Was that in state or federal court?
11              THE PROSPECTIVE JUROR:  It was in the state or the
12   City, New York City.
13              THE COURT:  New York City?
14              THE PROSPECTIVE JUROR:  Yes.
15              THE COURT:  All right.  Is there anything about your
16   experience as a grand juror that would affect your ability to
17   fairly evaluate the case or treat the parties fairly in this
18   case?
19              THE PROSPECTIVE JUROR:  No.
20              THE COURT:  Anyone else on this row?
21              All right.  Can we have your number again, ma'am?
22   I'm sorry.
23              THE PROSPECTIVE JUROR:  38.
24              THE COURT:  Yes, ma'am.
25              THE PROSPECTIVE JUROR:  It was federal court and we
```

1    reached a verdict.  And state court and reached a verdict.

2            THE COURT:  Were any of those cases criminal cases?

3            THE PROSPECTIVE JUROR:  Yes, criminal.

4            THE COURT:  Was it within the last five years?

5            THE PROSPECTIVE JUROR:  Six years, I think.

6            THE COURT:  Was there anything about your experience

7    as a juror in cases in state and federal court that would

8    affect your ability to be fair and impartial here?

9            THE PROSPECTIVE JUROR:  No.

10           THE COURT:  Anyone else on that row?

11           Your number, sir.

12           THE PROSPECTIVE JUROR:  Number 39.  I sat on a jury

13   in New York State.  I believe it was a civil suit.  We did

14   reach a verdict and there was nothing about that experience

15   that would impact.

16           THE COURT:  Thank you for your response.

17           Yes, Juror 40.

18           THE PROSPECTIVE JUROR:  Yes.  Criminal case, many,

19   many years ago.  Civil case, ten years.

20           THE COURT:  So had you a criminal case many years

21   ago.  Was it in state or federal court?

22           THE PROSPECTIVE JUROR:  It was state.

23           THE COURT:  Okay.  And your civil case?

24           THE PROSPECTIVE JUROR:  State.

25           THE COURT:  State also?

603

1          THE PROSPECTIVE JUROR:  Yes.

2          THE COURT:  Did you reach a verdict in both cases?

3          THE PROSPECTIVE JUROR:  Yes.  One came went to

4   trial.  One was just --

5          THE COURT:  Settled?

6          THE PROSPECTIVE JUROR:  Settled, yes.  The other one

7   went to trial, but I was an alternate juror.

8          THE COURT:  You were an alternate?

9          THE PROSPECTIVE JUROR:  Yes.

10          THE COURT:  Thank you.  Is there anything about that

11   experience that would affect your ability to be fair to both

12   sides in this case?

13          THE PROSPECTIVE JUROR:  No.  No.

14          THE COURT:  Thank you, sir.

15          Who else?  Your number, ma'am?

16          THE PROSPECTIVE JUROR:  44.

17          THE COURT:  Could you stand, please?

18          THE PROSPECTIVE JUROR:  Yes.

19          THE COURT:  Yes, ma'am.  Was it a state or federal

20   case?

21          THE PROSPECTIVE JUROR:  A state, civil court.

22          THE COURT:  And did you reach a verdict?

23          THE PROSPECTIVE JUROR:  No, they pleaded.

24          THE COURT:  They settled it?

25          THE PROSPECTIVE JUROR:  Settled, yes.

604

1          THE COURT:  Is there anything about that experience
2     that would affect your ability in this case to serve as a fair
3     juror?
4          THE PROSPECTIVE JUROR:  No.
5          THE COURT:  Thank you, ma'am.
6          Anyone else?  Yes, sir.
7          THE PROSPECTIVE JUROR:  45.
8          THE COURT:  Yes, sir.
9          THE PROSPECTIVE JUROR:  State civil court.  They
10    settled.
11         THE COURT:  All right.  Is there anything about that
12    juror experience that would affect your ability to serve in
13    this case?
14         THE PROSPECTIVE JUROR:  No.
15         THE COURT:  All right.  Thank you.
16         Anyone else?
17         Sorry, ma'am.  Your number?
18         THE PROSPECTIVE JUROR:  60.  It was a civil case a
19    long time ago, a local court in Mineola, and nothing about
20    that would impact me sitting here.
21         THE COURT:  And did you reach a verdict ma'am?
22         THE PROSPECTIVE JUROR:  Yes, we did.
23         THE COURT:  Thank you very much.
24         I am just going to ask a few more -- well, I have
25    just a few more questions.

1          Did any of you ever serve as the foreperson?  No.

2          Did any of you have difficulty accepting the judge's

3     instructions on the law?

4          Have you, members of your family or close friends,

5     ever had any formal education, training, exposure or work

6     experience in financial services, banking, pharmaceuticals,

7     the stock market or securities industry?  And this is other

8     than those who have already come up or have raised their hand

9     and talked about their experience in those fields.

10         Is there anyone else who would like to share any

11    experiences or not like to, but would you please if you have

12    such experience?  No.

13         And for those of you who have talked to us

14    previously about your experience in financial services,

15    banking, pharmaceuticals, the stock market or securities,

16    would all of you be able to maintain a fair and open mind in

17    this case and decide the case based only on the evidence at

18    this trial?  If not, raise your hand.

19         Do you or a family member or close friend regularly

20    invest in the stock market, hedge fund or privately issued

21    securities?  If so, please raise your hand.

22         Juror Number 40 -- 39?  Okay.  Juror Number 39.

23         Is there anything about your experience in

24    investing --

25         THE PROSPECTIVE JUROR:  No.

606

1            THE COURT:  -- that would affect your ability?

2            THE PROSPECTIVE JUROR:  No.

3            THE COURT:  Okay.  Have you invested in the stock

4     market or hedge fund or privately issued securities?

5            THE PROSPECTIVE JUROR:  Yes.

6            THE COURT:  Which of the above?

7            THE PROSPECTIVE JUROR:  The stock market.

8            THE COURT:  Okay.  Thank you.

9            And we have also Juror Number --

10           THE PROSPECTIVE JUROR:  31.

11           THE COURT:  Yes, ma'am.

12           THE PROSPECTIVE JUROR:  Similarly, and no.

13           THE COURT:  Similarly, you've invested in the stock

14    market?

15           THE PROSPECTIVE JUROR:  Yes.

16           THE COURT:  Okay.  Thank you.

17           THE PROSPECTIVE JUROR:  Self directed 401-K's, but

18    not individual stocks.

19           THE COURT:  All right.  Thank you.  Is there

20    anything about your investing experience that would affect

21    your ability in this case to be fair?

22           THE PROSPECTIVE JUROR:  No.

23           THE COURT:  Anyone else?

24           Juror Number 38.

25           THE PROSPECTIVE JUROR:  I don't currently regularly

1    invest, but I have invested in the past and I had investments.

2         THE COURT:  Okay.  In the stock market, hedge funds

3    or privately issued securities?

4         THE PROSPECTIVE JUROR:  Stock market.

5         THE COURT:  Okay.  And is there anything about that

6    experience that would cloud your ability or prevent you from

7    being fair and impartial to both sides?

8         THE PROSPECTIVE JUROR:  No, there isn't.

9         THE COURT:  Thank you.

10        Did I have a hand?  Yes, you are Number 27.

11        THE PROSPECTIVE JUROR:  Yes.  I've invested in the

12   stock market.

13        THE COURT:  All right.  Same question for you, sir.

14   Could you be fair and impartial?

15        THE PROSPECTIVE JUROR:  Yes.

16        THE COURT:  Thank you.

17        You are number 37.  Yes, sir.

18        THE PROSPECTIVE JUROR:  Likewise, I invested, but it

19   wouldn't affect me.

20        THE COURT:  Thank you.  In the stock market, sir?

21        THE PROSPECTIVE JUROR:  Yes.

22        THE COURT:  Okay.  Anyone else?

23        All right.  If you have invested in the stock

24   market, have you used brokers or conducted your own trading

25   personally?  We know from one juror it was self-directed.  Did

608

1    anyone use a broker?

2            Okay.  Did that experience have any affect on your

3    ability to be fair to both sides in this case?  Juror

4    Number --

5            THE PROSPECTIVE JUROR:  27.

6            THE COURT:  27?

7            THE PROSPECTIVE JUROR:  No.

8            THE COURT:  Juror Number 29 -- 31.  I'm sorry.  The

9    answer is no?

10           THE PROSPECTIVE JUROR:  Yes.

11           THE COURT:  Is there anyone else?

12           Juror Number 38.

13           THE PROSPECTIVE JUROR:  Yes.  No problem.

14           THE COURT:  No broker?

15           THE PROSPECTIVE JUROR:  I have a brokered account

16   but I opened it myself.

17           THE COURT:  Okay.  Thank you.

18           Anyone else?

19           Yes.  Juror Number --

20           THE PROSPECTIVE JUROR:  45.

21           THE COURT:  Yes, sir.

22           THE PROSPECTIVE JUROR:  Not a problem.

23           THE COURT:  Okay.  Have you used a broker?

24           THE PROSPECTIVE JUROR:  Yes, I did.

25           THE COURT:  Thank you.  And you could be fair?

609

1              THE PROSPECTIVE JUROR:  Yes.

2              THE COURT:  Anyone else?

3              THE PROSPECTIVE JUROR:  Yes, ma'am.  I used a

4    broker, but it's not a problem.

5              THE COURT:  You used a broker.  Can you be fair?

6              THE PROSPECTIVE JUROR:  Yes.

7              THE COURT:  Thank you.

8              Does anyone have or have you used in the past a

9    financial advisor who manages your assets?  Raise your hand.

10             Juror Number 27.

11             THE PROSPECTIVE JUROR:  I have a financial advisor

12   that manages my assets.

13             THE COURT:  Is there anything about that experience

14   that would cause you to have preconceived views --

15             THE PROSPECTIVE JUROR:  No.

16             THE COURT:  -- for or against either side in this?

17             THE PROSPECTIVE JUROR:  No.

18             THE COURT:  Okay.  Thank you.  Anyone else?  Juror

19   Number --

20             THE PROSPECTIVE JUROR:  22.

21             THE COURT:  Yes, ma'am.  You use a financial

22   advisor?

23             THE PROSPECTIVE JUROR:  Yes.

24             THE COURT:  Is there anything about that experience

25   that would cause you to have an unfair, less than a fair and

610

1   impartial mind?

2           THE PROSPECTIVE JUROR:  No.

3           THE COURT:  Could you do that?

4           THE PROSPECTIVE JUROR:  Yes.

5           THE COURT:  Yes, sir.  Number.

6           THE PROSPECTIVE JUROR:  41.

7           THE COURT:  Yes, sir.

8           THE PROSPECTIVE JUROR:  I used a financial advisor.

9           THE COURT:  And could you be fair and impartial to

10  both sides?

11          THE PROSPECTIVE JUROR:  Yes.

12          THE COURT:  Thank you.

13          Now, if there are no other hands, I just have a few

14  more questions.  A person accused of a crime is entitled to

15  the presumption of innocence unless and until their guilt is

16  proven beyond a reasonable doubt after all the evidence has

17  been presented.

18          Would you have any difficulty in keeping an open

19  mind during the trial while the evidence is being presented

20  and following that principle of law that is the presumption of

21  innocence throughout this trial?  Would anyone have trouble

22  doing that?  If so, please raise your hand.

23          You may not discuss the evidence, witnesses or

24  testimony with anyone during the course of the trial even with

25  your fellow jurors when you retire to the jury room and not

1   with your family members either or close friends.  You would

2   only be able to discuss this case with your fellow jurors

3   after all the evidence has been presented and after I have

4   given you instructions on the law.

5          Will you be able to follow these instructions of not

6   speaking about the case with anybody?

7          Would you all also commit, if selected, not to

8   research or read about anything relating to this case or to

9   Mr. Shkreli?  Would you commit to conscious avoidance of any

10   reports, radio or media about this case or Mr. Shkreli during

11   the duration of this case?  Is there anyone who have

12   difficulty doing that?  Raise your hand.

13          Is there anything about the fact that this is a

14   criminal case or the nature of the charges or any other reason

15   that would interfere with your ability to decide this case

16   fairly and objectively?

17          Is there anything that I have not asked you that I

18   should know regarding your ability to be fair and impartial to

19   both parties in this case?  If there is anything, please raise

20   your hand.

21          Is there anything that is in your mind or in your

22   experience that we should know about or that if you were in a

23   position to be called upon, to be charged with an offense,

24   that you would not want somebody with your frame of mind

25   sitting on your jury or the jury of a loved one or family

612

1    close family member?

2            Yes.  Juror Number --

3            THE PROSPECTIVE JUROR:  29.

4            THE COURT:  Please come forward.

5            (The following occurred at side bar; prospective

6    juror joins.)

7            THE PROSPECTIVE JUROR:  So, I just graduated my

8    doctorate and I know that I'm going to apply for a job and I

9    have to have a job by September because for financial reasons

10   and I'm concerned that I'm distracted and I don't want to be

11   biased, I mean, biased or being distracted while evidence is

12   being presented.

13           THE COURT:  Well, you said you don't have to apply

14   for a job until September?

15           THE PROSPECTIVE JUROR:  No.  I have to have a job by

16   September in order to pay my student loans and be financially

17   sound.

18           THE COURT:  So you are going to be looking for jobs?

19           THE PROSPECTIVE JUROR:  Yes.  I've been looking and

20   putting of interviews because we've been running late.

21           THE COURT:  So six weeks from 9 to 5:30 --

22           THE PROSPECTIVE JUROR:  I've been trying to do the

23   right thing and keeping an open mind, but I'm concerned about

24   the timeline especially since we're after 5 now.

25           THE COURT:  Yes, we are.  Let me ask you to step

613

1    back.

2              (Prospective juror leaves side bar.)

3              THE COURT:  Does anyone object to excusing this

4    juror?

5              MR. BRAFMAN:  No.  She looks kind of frantic at this

6    point.

7              THE COURT:  Okay.  This is Juror Number --

8              MR. BRAFMAN:  29.

9              THE COURT:  Okay.  We will excuse Juror 29 without

10   objection.

11             (Prospective juror joins side bar.)

12             THE COURT:  We are going to excuse you.  You can go

13   down to the second floor where you checked in and tell them

14   you're excused and get your paperwork.  God luck with your job

15   search.

16             (Prospective juror excused.)

17             (In open court.)

18             THE COURT:  Is there anyone else who would like to

19   raise their hand in response to any questions that I have

20   asked?  All right.

21             (Side bar continues.)

22             THE COURT:  Now is the chance we can excuse

23   everybody, tell them to come back.  We have to call in 50 more

24   jurors.  I think we are shooting for 50.  We've asked for more

25   but our yield will probably be closer to 50 than 70 tomorrow.

614

1    How many do we have left?

2              MS. KASULIS:  We struck 15 from 62 total.

3              MR. BRAFMAN:  I'm sorry?

4              THE COURT:  15 from 62.

5              MR. BRAFMAN:  47.

6              THE COURT:  So we need 18.  We only have 7.

7              MS. KASULIS:  We have seven.  Okay.

8              MS. SMITH:  And we're still going to do the

9    questions about their employment, the juror questionnaire?

10             THE COURT:  Yes, but I don't think these are

11   disqualifiers.

12             MS. SMITH:  No.

13             THE COURT:  But I don't have any other questions

14   unless anyone has any other questions to ask.  There was a

15   juror who came late.  She was the last juror on the list.  We

16   haven't really followed up from some of these questions.  So

17   what I propose is excuse these jurors and ask them to come

18   back tomorrow at noon.

19             MR. BRAFMAN:  Okay.

20             THE COURT:  Or 1:00.

21             MR. BRAFMAN:  Whatever you want, Judge.

22             THE COURT:  And then hopefully we can get through

23   the next group of jurors and we will be in a position to do

24   the questionnaires and the peremptories.

25             (End of side bar.)  (Continued on next page.)

615

1           (In open court.)

2           THE COURT:  Ladies and gentleman, I want to thank

3   you again for your patience.  We will be continuing this

4   process tomorrow.  I will not need you to come in tomorrow

5   until 1 o'clock.  1 o'clock will be the time that you will

6   report to the jury clerk on the second floor.  At that time we

7   will go through additional processes with all of you.  We will

8   at that point, we hope, have a jury selected and be able to

9   begin trial sometime tomorrow afternoon.

10          In the meantime, I would ask you please to remember

11  not to discuss this case with anybody.  Not to allow anyone to

12  contact you regarding this case or discuss the case with you,

13  and that you report any such contact to me or my staff.  In

14  addition, don't discuss it in front of other jurors if such a

15  thing does happen, and please avoid all media.  Please don't

16  listen to or read any media about this case or about Mr.

17  Shkreli.

18          If you would kindly return at 1 o'clock, I would be

19  very grateful.  We are almost finished with our selection.

20          There was one juror who I would like to ask to stay

21  for a few minutes.  We might need to speak with her.  If I

22  recall, it is No. 63.  She was given number 63.  We had some

23  additional questions for you, ma'am.

24          So the rest of you may go down.  You are excused for

25  the evening.  Please come back.  Thank you very much.

616

1                    (Jury exits the courtroom.)

2              THE COURT:  We are going to examine this one juror

3    as a follow-up.

4                    (Prospective juror present at sidebar.)

5              THE COURT:  Ma'am, thank you, you had a doctor's

6    appointment, right?

7              THE PROSPECTIVE JUROR:  Yes.

8              THE COURT:  Have a seat.  I have a few questions.

9    Because you came later, we didn't get to ask you.  I would

10   remind you that you are still under oath.  If you could answer

11   these questions as conscientiously and honestly as you can, we

12   would appreciate it.

13             THE PROSPECTIVE JUROR:  Okay.

14             THE COURT:  I may have asked you this before, if I

15   have, then we can move forward.

16             THE PROSPECTIVE JUROR:  Okay.

17             THE COURT:  But I believe that you were here when I

18   asked about having heard about this case in the media.

19             THE PROSPECTIVE JUROR:  Yes.

20             THE COURT:  And have you heard anything about this

21   case at all that would affect your ability to be fair to both

22   sides?

23             THE PROSPECTIVE JUROR:  No.  No.

24             THE COURT:  I did ask you about the six weeks that

25   would be required for jury service, from 9:00 until 5:30.

617

1    Would that pose any undue hardship or inconvenience for you?

2              THE PROSPECTIVE JUROR:  Well, right now, yeah, I

3    have my doctor's appointment and he scheduled a procedure for

4    the end of the month.

5              THE COURT:  For the end of July?

6              THE PROSPECTIVE JUROR:  Yeah.  So I think that's

7    beyond the --

8              THE COURT:  Yes, I will excuse you under those

9    circumstances.

10             THE PROSPECTIVE JUROR:  Okay.

11             THE COURT:  I just want to confirm your name.  Is

12   that it?

13             THE PROSPECTIVE JUROR:  Yes.

14             THE COURT:  I believe on this list --

15             THE PROSPECTIVE JUROR:  I am 63 now.

16             THE COURT:  She is this person (indicating).  Okay.

17   She is 63 on the list.

18             I will excuse you and wish you well with your

19   procedure.  Thank you so much for coming back.

20             (Prospective juror excused.)

21             THE COURT:  So we are all on the same page about her

22   name.  This is it.

23             MS. KASULIS:  Yes.

24             MS. ZELLAN:  Yes.

25             THE COURT:  Is there anything else we need to

618

1    discuss right now?

2          MR. BRAFMAN:  I think the Government wants to ask a

3    question with regard to scheduling.

4          MS. KASULIS:  If we bring the pool back at 1:00 and

5    we do the questionnaire, realistically we can get to openings.

6    Should we have our first witness here or schedule them

7    Thursday morning?

8          THE COURT:  I think the way we are going -- Sandra,

9    can you come over here.

10          She has been in touch with the jury clerk.  We are

11    asking for 150, but we are not going to get that number.  What

12    is the realistic number of people we are expected to see?

13          THE COURTROOM DEPUTY:  140.

14          THE COURT:  140.  And we will see what comes.

15          We are at 46.  So we really could go forward.

16          MS. SMITH:  Just in case.

17          THE COURT:  I have asked all of my questions.  I

18    don't know if anyone else has any other questions.

19          MS. SMITH:  There was the one juror that we raised

20    some concern about in terms of demeanor.

21          MS. KASULIS:  I don't think we raised it with the

22    Judge.

23          THE COURT:  I'm sorry?

24          MR. BRAFMAN:  There is a juror who is aggravated in

25    the upper left-hand corner.

619

1          THE COURT:  The far left.

2          MS. KASULIS:  He is talking to himself.  The juror

3    next to him is uncomfortable.  I think he made the sound.  He

4    ran out.

5          MR. BRAFMAN:  I think there was a sense of urgency

6    of him having to leave the minute we broke.  It may be that he

7    was anxious today.  Let's see what he brings tomorrow.

8          MS. KASULIS:  Considering the low number we have --

9          THE COURT:  Let's put a circle around his name so we

10   can revisit it tomorrow.

11         MS. KASULIS:  He was number 19.

12         THE COURT:  Number 19.  I do remember he was

13   slouching, almost laying down in the seat and he made a loud

14   to moaning sound, which was a bit surprising.

15         MS. SMITH:  And the paralegal and agents have

16   noticed that he has been talking to himself.

17         MR. BRAFMAN:  I'm starting to talk to myself.

18         THE COURT:  I'm sure you have jewels of wisdom

19   coming out of your mouth, except when you are insulting me.  I

20   am kidding.

21         MR. BRAFMAN:  This is the longest peremptory

22   challenge I have ever argued in my entire life, so you are in

23   my record book.  The longest challenge for cause.

24         THE COURT:  You ultimately prevailed.

25         MR. BRAFMAN:  Yes, I did.

620

1          THE COURT:  We will keep an eye on him.  The timing

2     is this:  We are going to have hopefully 40 to 50 more jurors

3     tomorrow.  I don't really know that we should spend the time

4     going through all of them.  We should have an agreement once

5     we get to X number that we can let them go.  There is no way

6     to know that until we start hearing from them.

7          MS. SMITH:  We may get 10 who can do a six-week

8     trial.

9          THE COURT:  I think our yield is between 25 to 30

10    percent.

11         MR. BRAFMAN:  You want us here at 9 o'clock.

12         THE COURT:  We will just start as soon as they are

13    all here.  We will line them up.  We will get the questions.

14    We will bring the rest of the group back at 1:00.  We will

15    give an early lunch break and they will read off the

16    questionnaires that I gave you and then you will do your

17    peremptories.

18         Start thinking about that now so we don't have to

19    give them a big break.

20         MR. BRAFMAN:  So for scheduling purposes, even if we

21    open, that we will just stop at the end of the day.

22         MS. KASULIS:  We will have witnesses first thing

23    Thursday morning.

24         THE COURT:  Yes.

25         MS. KASULIS:  Thank you, Judge.  9:00 a.m. tomorrow.

621

1          THE COURT:  Yes, please.  Just in case something

2     comes up there is always time to address an unexpected matter.

3          MS. HURTADO:  Let me inquire, if there is a

4     questionnaire on behalf of the press corps --

5          MR. BRAFMAN:  It is not a questionnaire.

6          It is pedigree information.

7          MS. HURTADO:  And also the list of witnesses or

8     potential people whose names might come up.  I understand it

9     is a joint list.

10          MS. SMITH:  Yes.

11          MR. BRAFMAN:  Many of them are just names that might

12     come up, not necessarily witnesses.

13          MS. HURTADO:  There was a lot.

14          MS. SMITH:  I don't know that we have the judge's

15     final list.

16          MS. HURTADO:  That's why I was asking if there was a

17     possibility that we can get a copy.

18          THE COURT:  We have the list that we he read.  Does

19     anybody object to giving it to --

20          MR. BRAFMAN:  No.

21          MS. HURTADO:  And I will share it with everybody.

22          THE COURT:  There was one other thing that I was

23     going to address.  I think we had the sketch artist wanted to

24     speak to me.  From what I have been told by my staff who has

25     observed the sketches, they were the back of the head and

622

1    maybe an oblique partial side of the face.  It wasn't a face

2    that was being sketched.  I know I said no faces could be

3    sketched, so they might have interpreted that a partial was a

4    violation.

5              MR. BRAFMAN:  I don't think you have to worry.

6              MS. HURTADO:  You bear no resemblance to the people.

7              THE COURT:  Okay.  Have a good night.

8              MR. BRAFMAN:  You, too.  Thank you, Judge.

9              MS. KASULIS:  Thank you, Judge.  See you tomorrow

10   morning.

11             (Matter adjourned to June 28, 2017 at 9:00 a.m.)

12

13                        ooo0ooo

14

15

16

17

18

19

20

21

22

23

24

25