# BRAFMAN & ASSOCIATES, P.C.

ATTORNEYS AT LAW

767 THIRD AVENUE, 26TH FLOOR

NEW YORK, NEW YORK 10017

TELEPHONE: (212) 750-7800

FACSIMILE: (212) 750-3906

E-MAIL: BBRAFMAN@BRAFLAW.COM

BENJAMIN BRAFMAN

ANDREA ZELLAN
JOSHUA D. KIRSHNER
JACOB KAPLAN
TENY R. GERAGOS
ADMITTED IN NY AND CA

MARK M. BAKER
OF COUNSEL

MARC AGNIFILO
OF COUNSEL
ADMITTED IN NY AND NJ

March 7, 2018

**VIA ECF**
Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    <u>United States v. Martin Shkreli, Crim. No. 15-637 (KAM)</u>

Dear Judge Matsumoto:

      I submit this personal letter on behalf of Martin Shkreli prior to his sentence scheduled Friday, March 9, 2018. I respectfully ask Your Honor to allow me to briefly address several items in reply to the government's Sentencing Memorandum (Dkt. No. 549: "Gov't Memo") as well as my personal comments about Martin before sentencing.

      The government's suggested sentence of "no less than 180 months" is far too severe. (Gov't Memo at 1). Indeed, without distinguishing any of the cases the defense cited in its Sentencing Memorandum (Dkt. No. 538: Shkreli Sentencing Memorandum at 81-83), the government challenges that argument by listing other securities fraud cases in the Eastern and Southern Districts where the defendants in those cases received "far more significant sentences." (Gov't Memo at 66-67). However, as detailed in the below chart, the criminal conduct in those cases was far more egregious than the conduct in this case because in each of the cases the government cited, many more victims and many more vulnerable victims, lost their money and the defendants had significant criminal histories:

**BRAFMAN & ASSOCIATES, P.C.**

| CASE | NATURE OF OFFENSE | GUIDELINE RANGE | SENTENCE | DISTINGUISHING FACTORS |
|---|---|---|---|---|
| U.S. v. Lange (EDNY) 10 Cr. 968 (DLI) | Wire Fraud Conspiracy; Securities Fraud Conspiracy | 210-262 months | 262 months $10m forfeiture $10m restitution (after trial) | More than 300 victims, many of whom lost their life savings; as a result of the fraud, many Hurricane Katrina victims lost the opportunity to rebuild their homes; defendant used the investors' money on travel, home maintenance and expensive motorcycles; attempted to commit another fraud scheme after his guilty verdict |
| U.S. v. Aronson (EDNY) 12 Cr.245 (ADS) | Securities Fraud | 292-365 months | 124 months $21.7m forfeiture $1.2.m restitution | Committed his fraud after serving 40 months for a previous securities fraud; was sentenced within Criminal History Category III; labeled by the government as a "securities fraud recidivist" (emphasis added); fraud was more than $20m |
| U.S. v Galanis (SDNY) 16 Cr. 371 (RA) | Securities Fraud Conspiracy; Securities Fraud Investment Advisor Fraud Conspiracy | 188-235 months | 173 months $43.3m forfeiture $43.8m restitution | Personally benefitted $8m while his investors lost all their money; was sentenced within Criminal History Category III; sentence ran concurrent to a 135-month sentence for a different fraud; fraud was more than $43m |
| U.S. v. Jaramillo (SDNY) 17 Cr.04 (LTS) | Commodities Fraud; Wire Fraud | 78-97 months | 144 months $1.2m forfeiture $994k restitution | Specifically targeted vulnerable victims (retirees, widows, individuals for whom English was a second language); never invested a "single penny of investors' money"; took more than half of the investors' money for himself |

Furthermore, for the government to argue that the cases cited in their Memorandum should serve as a guide for Martin's sentencing is simply not fair or right when one considers the glaring aggravating factors in each of those cases. One of the cases cited by the government, United States v. Porrata, 16 Cr. 93 (Irizarry, J.), is particularly instructive. There, the defendant pleaded guilty to a securities fraud conspiracy for leading a pump-and-dump scheme for more than three years and using investor money for personal use. Based on the defendant's seven prior arrests, his Guidelines were either a Level 28 in Criminal History Category II (87-108 months) according to the government, or a Level 36 in Criminal History Category IV (262-327 months) according to the Probation Department. (See Porrata Dkt. No. 73: Gov't Sentencing Memorandum at 3). The government, however, allowed the defendant to plead to a single conspiracy count with a five-year maximum sentence. That this defendant with an extensive criminal history was ultimately sentenced to 60 months in prison undermines the government's request for a 180-month sentence in this case.

Counsel also respectfully notes United States v. Dupree, 10 Cr. 627 (Matsumoto, J.), where this Court sentenced the defendant in that case to 84 months imprisonment. (See Dupree Dkt. No. 732). As Your Honor knows, the defendant in Dupree was convicted of participating in

**BRAFMAN & ASSOCIATES, P.C.**

a conspiracy to commit bank fraud, bank fraud, and causing false statements to be made to the bank. The Court found that the total loss to the bank was $15,324,293.92 and ordered restitution for the full amount. (See Dupree Dkt. No. 733). That case, too, differs from Martin's. As an initial matter, while on bond pending trial, "Mr. Dupree was arrested and his bond was revoked based on a new criminal complaint alleging that he engaged in an additional scheme to defraud [the victim] Bank." United States v. Dupree, 2014 WL 12690878 at *1 (Apr. 7, 2014). However, in this case, there is no such allegation. Martin did not commit any crimes since his arrest in December 2015. Furthermore, unlike this case, the government alleged that Dupree committed perjury when he testified at trial. Finally, the loss and restitution that Dupree was ordered to pay to the bank and his victims far exceeded the loss in this case. Nevertheless, despite all of these aggravating factors, the sentence was still 50% less than the Draconian sentence the government recommends in this case, primarily because he is Martin Shkreli and not for the criminal conduct of which he stands convicted.

Here, the Court is sentencing a non-violent, first offender for securities fraud where there is no restitution and the jury found that Martin did not intend to permanently deprive his investors of any money. These unique factors distinguish this case from nearly every fraud case cited and warrant a lenient sentence, not a 180-month sentence, usually reserved for predatory recidivists.

The government also argues that Martin made "deliberate attempts to disrupt the trial" "by creating a circus-like atmosphere in order to obtain an acquittal…" (Gov't Memo at 12). To be clear, Martin did not "embark[] on a campaign of disruption by commenting on trial evidence and witnesses to the press and on social media." (Id. at 13). Respectfully, it should be clear to Your Honor, as it is clear to counsel, that despite Martin's isolated appearance in the overflow room, his trial was not, by any definition, a "circus." To the contrary—his trial was conducted in an efficient, professional and dignified manner under the supervision of this Court that was determined to provide a fair trial despite a rabid media presence that often did its best to undermine the best efforts of all parties to this litigation, including Martin's. Indeed, after this Court imposed a limited gag order, Martin abided by that order. The trial continued smoothly without any further incidents.

Furthermore, there is no need for a fine. The government asks that this Court impose "a substantial fine" because Martin "has the ability to pay a fine, and a substantial fine is warranted due to the seriousness of the offenses, to promote respect for the law, to deter others, and to provide just punishment." (Gov't Memo at 16). We submit that a fine is not warranted as Martin is unable to pay one and is unlikely to become able to pay in the near future. As the government is aware, his liquid assets have now all been forfeited. (See Dkt. Nos. 540: Order of Forfeiture and 541: Memorandum Ordering Forfeiture). His asset in Vyera (Turing) is not liquid. (See Dkt. No. 515: Shkreli Forfeiture Response at 7). Until the forfeiture money judgment is satisfied, any income he receives must be reported to the government and used to satisfy the judgment. (See Dkt. No. 540). Additionally, as this Court is also aware, Martin owes substantial money to the IRS, New York State, and numerous other creditors that Martin will need to satisfy once he pays his forfeiture judgment. Due to these numerous liabilities, Martin is unable to pay and is not likely to become able to pay the fine. U.S.S.G. § 5E1.2(a). Furthermore, the forfeiture judgment of over $7.3 million is substantial in its own right and reflects the seriousness of the offense. For

**BRAFMAN & ASSOCIATES, P.C.**

the government to ask for fifteen years imprisonment <u>and</u> a substantial fine, on top of an already $7.3 million forfeiture judgment is not appropriate.

Finally, we end our written advocacy for Martin with the most vexing topic confronting the Court. The Court has great experience assigning blameworthiness to different crimes committed by a broad array of defendants. So, what makes this case and Martin different? The answer is in the seeming disconnect between Martin and the world around him that all of us see. How could he astronomically raise the price of a life-saving drug and then tell the world he wanted to raise it more? How could he walk into a room full of reporters during his trial and say derogatory things about the prosecution and the judicial process? How could he make comments on Facebook about Hillary Clinton while awaiting sentencing? But also, how could he create a billion-dollar drug company without education or experience as either a business executive or a chemist? How could he, after creating this company, walk away from it because of disagreements with the people he made executives?

The answer is not that he is evil or any of other horrible things people have seen fit to say about him over the last several years. [REDACTED] However, our society, our culture, and our judicial system can accommodate even Martin Shkreli. We do not crush people for being different, for offending sensibilities. We incorporate those people into our system and we try to treat them fairly, precisely because our system of justice tries to be fair.

We agree that Martin needs to be punished. He has been convicted of three felonies. However, a sentence of 12-18 months imprisonment, with 2,000 hours of community service, and court mandated therapy is commensurate with his conduct. A sentence of "imprisonment of no less than 180 months" is far too severe a penalty to impose in a securities fraud case, where the defendant is a first time offender—even if the defendant happens to be Martin Shkreli, "the most hated man in America." We plead with the Court to impose a just punishment that allows Martin to redeem himself, rather than sentence him to an additional period of substantial incarceration, and have it then be too late for treatment once he is integrated back into society.

The government asserts that Martin's personal letter to Your Honor seeks to shift blame for his conduct. (Gov't Memo at 47). This interpretation is misplaced. Martin admits that he "caused this entire mess." (Sentencing Memo Ex. 49 at 1). He admits that he did not truly understand his investors perspective until he listened to their testimony, and he writes that the "all's well that ends well" concept does not excuse or justify any of his mistakes. (<u>Id.</u>) He also admits that he prevaricated and that as a result his investors were misled. In the future, he must be honest. (<u>Id.</u> at 2). In addition, the government misconstrued Martin's reference to "the demons that haunt him." (Gov't Memo at 47). Martin was not shifting blame to anyone with these words. Rather, he was trying to explain that his "demons" are personal issues that he is responsible for addressing, so that the mistakes of the past do not repeat themselves.

**BRAFMAN & ASSOCIATES, P.C.**

      Finally, the government suggests to the Court that Martin is shifting responsibility for his rehabilitation to the Court with his use of the word "if." (Id. at 49). Martin writes to Your Honor that "if [the Court] find[s] it appropriate to impose a sentence that does not include a period of extended incarceration, I will do my absolute best . . . I honestly believe I can contribute and really make a difference if Your Honor gives me a chance." Contrary to the government's unusual interpretation, Martin's use of "if" is simply an acknowledgment that the Court has the discretion to impose any sentence within a broad range, and that "if" the sentence is on the more lenient end of the range, he promises that the Court's mercy will not be for naught; the time that he would otherwise spend incarcerated, will be used to contribute positively to society and get the help he needs. Regardless of the length of the sentence, Martin acknowledges that it is incumbent upon him, and no one else, to work hard every day to redeem himself and make positive contributions to society.

      Thank you for your continued attention to this matter.

      Respectfully submitted,

      Benjamin Brafman, Esq.

cc:    AUSA Jacquelyn Kasulis (via email and ECF)
       AUSA Alixandra Smith (via email and ECF)
       AUSA Karthik Srinivasan (via email ECF)