

U.S. Department of Justice

United States Attorney
Eastern District of New York

SLR:LDM/CSK
F. #2014R00501

271 Cadman Plaza East
Brooklyn, New York 11201

August 2, 2018

By Hand and ECF
The Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re: United States v. Shkreli
       Criminal Action No. 15-CR-637 (S-1)(KAM)

Dear Judge Matsumoto:

   The United States respectfully submits this letter in response to defendant Martin Shkreli's letter, dated July 24, 2018, and filed under DE 646, objecting to the proposed Final Order of Forfeiture, filed under DE 638-2 ("Proposed FOF"). The United States submitted the Proposed FOF along with a Stipulation (the "Stipulation"), resolving third-party petitions filed by the New York State Attorney General ("NYS-AG"), on behalf of the Commissioner of Taxation & Finance of the State of New York, and by the U.S. Department of Treasury, Internal Revenue Service ("IRS"), asserting their claims to substitute assets (the "Substitute Assets") named in the Preliminary Order of Forfeiture ("POF") entered by the Court on March 5, 2018. As set forth herein, the defendant's objections misapprehend the terms of the Proposed FOF and misconstrue the provisions of Fed. R. Crim. P. 32.2 ("Rule 32.2") governing the conduct of criminal forfeiture proceedings. Accordingly, and as set forth more fully below, the defendant's objections should be rejected by the Court, and the Proposed FOF should be entered, in accordance with Fed. R. Crim .P. 32.2(c)(2).

  I.  Relevant Procedural Background

   Following the defendant's conviction at trial, the Court entered the POF requiring the defendant to forfeit $7,360,450 (the "Forfeiture Money Judgment"). DE 540, at p.2. As the conditions of 21 U.S.C. § 853(p) had been met, the POF further required the defendant to forfeit his interest in the five Substitute Assets "up to the amount of the Forfeiture Money Judgment." *Id.*, ¶ 4.

Execution of the order, including seizure of the Substitute Assets, is stayed "pending the final disposition of any appeal by the defendant." *Id*., ¶ 11 While execution is stayed, the POF imposed various restraints (the "Restraints") against the Substitute Assets "to preserve [their] value" and to "ensure that such Substitute Assets, and any proceeds traceable thereto, up to the amount of the Forfeiture Money Judgment, remain available to be forfeited pending the conclusion of any appeal. . . ." *Id*., ¶¶ 10-11. The POF further required the government to serve and publish notice of the order, as required by 21 U.S.C.§ 853(n)(1) and Rule 32.2(b)(6). *Id.*, ¶¶ 7-8.

In response to the POF, on or about April 20, 2018, the NYS-AG filed a petition, pursuant to 21 U.S.C.§ 853(n), as to the Substitute Assets based upon a New York State tax debt (the "NYS Tax Debt") owed by the defendant in the amount of $480,011.43. DE 591. The following month, the IRS filed a petition as to the Substitute Assets based upon a federal tax debt (the "Federal Tax Debt") owed by the defendant in the amount of "$1,695,397.61 as of May 7, 2018 (statutory additions continuing to accrue from and after May 7, 2018, including interest pursuant to 26 U.S.C. §§ 6601, 6621, and 6622, and 28 U.S.C. § 1961(c)." DE 611. Thereafter, the Court, over the defendant's objection, granted the United States's motion for an order directing E*Trade to partially liquidate one of the Substitute Assets consisting of funds held in an E*Trade brokerage account (the "E*Trade Account"), and apply the liquidated funds, that is, $464,894.13, towards the criminal monetary penalties imposed against the defendant. *See* DE 636, July 10, 2018 Order, and DE 635, July 10, 2018 Memorandum and Order (collectively referred to as the "July 10, 2018 Order").

In accordance with Rule 32.2(d)[1], as well as orders issued by the Court[2], the United States, the NYS-AG, and the IRS (collectively, the "parties") proceeded to resolve the third-party petitions and, ultimately, executed the Stipulation. The Stipulation proposes that the Court lift the Restraints to allow collection of the Federal Tax Debt and a portion of the NYS Tax Debt from the E*Trade Account. The Stipulation was filed by the United States on July 12, 2018. DE 638-1. Along with the Stipulation, the United States also filed the Proposed FOF, which reflects the parties' agreement as set forth in the Stipulation. DE 638, and DE 638-2. Consistent with the July 10, 2018 Order, both the Stipulation and Proposed FOF acknowledge the United States's right to enforce the collection of the restitution, fine, and special assessment imposed against the defendant from the E*Trade Account. *See* DE 638-1, Stipulation, at ¶ 1; DE 638-2, Proposed FOF, ¶ 2.

---

[1] Rule 32.2(d) provides, in relevant part, that, "[a] stay [pending appeal] does not delay the ancillary proceeding or the determination of a third party's rights or interests." Fed. R. Crim. P. 32.2(d).

[2] The relevant electronic orders were issued by the Court on or about April 30, May 3, June 1, and July 2, 2018.

II.     The Defendant's Objections to the Proposed FOF Lack Merit

Pursuant to subsection (c) of Rule 32.2 entitled "Ancillary Proceeding; Entering a Final Order of Forfeiture," the court "must" enter a final order of forfeiture "[w]hen the ancillary proceeding ends . . . to account for any third-party rights" to forfeited assets. Fed. R. Crim. P. 32.2(c)(2). Rule 32.2(c)(2) further provides that the "defendant may not object to the entry of the final order on the ground that the property belongs, in whole or in part, to … a third party . . . ." *Id*.; s*ee also* 21 U.S.C. § 853(n)(2)("[a]ny person, *other than the defendant*, asserting a legal interest in property which has been ordered forfeited. . . . may. . . petition the court for a hearing to adjudicate the validity of his alleged interest in the property" that is the subject of an order of forfeiture)(emphasis added). Section 853(n)(2)'s and Rule 32.2(c)'s exclusion of the defendant from the ancillary proceeding and entry of a final order is consistent with Rule 32.2(b)(4)(A), which provides that, as far as the defendant is concerned, "the preliminary forfeiture order becomes final as to the defendant" at the time of sentencing. Thus, as a threshold matter, the defendant lacks standing to challenge the merits of third-party claims in the ancillary proceeding, or how they may be resolved in any final order of forfeiture.[3]

Insofar as his objections to the Proposed FOF concern his pending appeal and a stay of the forfeiture, the defendant misapprehends the terms and purpose of both the POF and the Proposed FOF. First, he mistakenly relies upon Rule 32.2(d) and its restrictions against "transfer[ring] any property interest to a third party until the decision on appeal becomes final, unless the defendant consents in writing or on the record." Contrary to the defendant's claims, the Proposed FOF does not "transfer any property interest" in the E*Trade Account or any of the other Substitute Assets. Rather, it merely provides for the Restraints on the E*Trade Account to be partially lifted to allow the NYS-AG and IRS to pursue their own independent collection efforts. In other words, no property interest in the E*Trade Account is transferred to any of the parties under the Proposed FOF.

Also inapposite are the Advisory Committee Notes cited by the defendant, which explain that "[t]he purpose of [Rule 32.2(d)'s stay] provision is to ensure that the property remains intact and unencumbered so that it may be returned to the defendant in the event the appeal is successful." The instant situation before the Court is not the typical ancillary proceeding, as contemplated in the cited Advisory Committee notes, where property has been seized and forfeited, and then in a subsequent ancillary proceeding, a third-party stands to have title to that property transferred to it in a final order of forfeiture. As the POF makes clear, the Substitute Assets will not be seized and forfeited pending the defendant's appeal. Instead, the Substitute Assets have only been restrained. The Proposed FOF merely provides for a modification of the restraints that already are in place for the

---

[3] It is surprising that the defendant would even seek to challenge the Proposed FOF, given that in several prior submissions he in fact requested that the funds held in the E*Trade account be promptly released to satisfy his NYS and Federal Tax Debts, which he previously acknowledged, to avoid the accrual of penalties. *See, e.g.,* DE 101, 415, 596.

3

Substitute Assets. Because the POF and the Proposed FOF merely contemplate restraint of the Substitute Assets, the defendant's stated concerns in his objections ring hollow.

Indeed, here, unlike in other ancillary proceedings, there is no risk that the defendant cannot be restored to the *status quo ante* in the event his appeal is successful. As explained by the NYS-AG in its letter, dated July 31, 2018, even if the defendant were to prevail on appeal, the NYS-AG would still have priority over the defendant with respect to collecting the NYS Tax Debt from the E*Trade Account based upon a state court lien. Similarly, the IRS also could proceed with its own collection efforts, irrespective of the outcome of the defendant's appeal.[4] In this specific circumstance, unlike the more general situation contemplated in the Advisory Committee Notes, the defendant's concerns are misplaced, because the tax-based claims of the NYS-AG and the IRS are unrelated to and unaffected by any determinations in the defendant's criminal appeal.

Like everyone else, the defendant is obligated to pay his taxes and should not be allowed to use a stay of the Proposed FOF to avoid doing so. As stated in the NYS-AG's letter, despite the defendant's claims, the funds in the E*Trade Account are not "an asset that [the defendant] is entitled to recover if his conviction or this Court's forfeiture determination are reversed."

The plain language of the POF makes clear that the sole purpose of the Restraints is to insure collectability of the Forfeiture Money Judgment, and not to protect or confer any benefit on the defendant when it comes to the collection of his debts by other creditors. The United States has now agreed to partially lift the Restraints intended to protect its right to collect the Forfeiture Money Judgment in the Stipulation. Accordingly, there is no basis – and certainly none presented by the defendant – to keep the Restraints in place to protect his assets from other creditors.

Moreover, the Court should reject the defendant's attempt to re-litigate the United States's motion for an order directing the partial liquidation of the E*Trade Account for enforcement of the fine and restitution imposed against him. As the Court already has ruled, the defendant has not met his burden of demonstrating that a stay of the enforcement of his criminal monetary penalties is appropriate under Fed. R. Crim. P. 38. *See generally* July 10, 2018, Order.

Finally, the defendant's reliance on *United States v. Young*, No. 12-CR-210, 2014 WL 1671507 at * 2 (W.D.N.Y. Apr. 2014), and its four-part test concerning a defendant's right to a stay of forfeiture, is also misplaced.[5] Again, under the POF and the

---

[4] Notably, the defendant himself previously acknowledged his tax obligations and the fact that "penalties accrue regardless of the outcome of [his] appeal of the forfeiture order," in one of his prior submissions urging the Court to release the funds in the E*Trade Account to satisfy his tax debts. DE 596, p. 2.

[5] Contrary to the defendant's claims, *Young*, where a defendant's request to stay forfeiture of a tractor trailer was denied, is not the only reported decision of any federal court

Proposed FOF, the actual seizure or forfeiture of the Substitute Assets is already stayed pending appeal. All that these orders require while the defendant's appeal remains pending is the Restraints on the Substitute Assets, which would be only partially modified by the Proposed FOF.

We thank the Court for its consideration of this submission, and its review of the Stipulation and Proposed FOF.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By: _____
Laura D. Mantell
Claire S. Kedeshian
Assistant U.S. Attorneys
(718) 254-6253/6051

cc: All Counsel of Record (via ECF)

---

to apply the four-part test to Rule 32.2(d), and most of the other cases, like *Young,* denied the defendant's request for a stay. *See*, *e.g., United States v. Bodouva*, 16-CR-214, 2016 WL 7351634, at *6 (S.D.N.Y. 2016)(denying staying stay); *United States v. Silver*, 203 F. Supp. 3d 370, 385 (S.D.N.Y. 2016)(granting stay were defendant would be required to sell residences); *see also United States v. Petters*, Crim. No. 08-364, 2010 WL 1254353, *2-3 (D. Minn. Mar. 24, 2010) (denying stay of forfeiture of vacation homes and secondary residences); *United States v. Risser*, No. 15-3559, 2016 WL 232018 at * 1 (6th Cir. 2016) (denying request to stay forfeiture); *United States v. Ngari*, 559 Fed. Appx. 259 (5th Cir. 2014)(finding that the district court, which adopted the four factors, did not abuse its discretion in denying a stay). Further, the defendant's analysis of the (inapplicable) four-part test is questionable, as it begins with the assumption as to the likelihood of success on his appeal and continues with his argument that the "intrinsic value" of a fungible asset such as cash militates in favor of a stay. *See Silver*, 203 F. Supp. 3d at 385 (noting that "factors do not weigh in favor of a stay [where] the assets to be forfeited are all cash or securities").