# BRAFMAN & ASSOCIATES, P.C.

ATTORNEYS AT LAW

767 THIRD AVENUE, 26TH FLOOR

NEW YORK, NEW YORK 10017

TELEPHONE: (212) 750-7800

FACSIMILE: (212) 750-3906

E-MAIL: BBRAFMAN@BRAFLAW.COM

**BENJAMIN BRAFMAN**

ANDREA ZELLAN
JOSHUA D. KIRSHNER
JACOB KAPLAN
TENY R. GERAGOS
ADMITTED IN NY AND CA

MARK M. BAKER
OF COUNSEL

MARC AGNIFILO
OF COUNSEL
ADMITTED IN NY AND NJ

August 7, 2018

**VIA ECF**

Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: <u>United States v. Martin Shkreli</u>, Crim. No. 15-637 (KAM)

Dear Judge Matsumoto,

We respectfully submit this brief sur-reply to clarify issues raised in submissions by the Attorney General for the State of New York (Dkt. No. 652), the Department of Justice Tax Enforcement Division (Dkt. No. 656) and the government (Dkt. No. 657).

Mr. Shkreli is not objecting to the agreement between the government, the New York State Attorney General ("NYS-AG") and the U.S. Department of Treasury, Internal Revenue Service ("IRS") to resolve the ancillary third party litigation. As the government points out, Mr. Shkreli has no standing in that regard. Mr. Shkreli objects to the Proposed Final Order of Forfeiture only insofar as it removes the restraints and essentially lifts the existing stay of execution to enable the NYS-AG and the IRS to initiate immediate collection activity. Mr. Shkreli requests that the Court leave the existing restraints in place until he exhausts his appeals.

1. <u>The Advisory Committee Notes Indicate that This Court Should Preserve the E*Trade Account</u>

To that end, we respectfully urge the Court to reject the government's position that The Advisory Committee Notes on Adoption in 2000 of FRCP 32.2(d) ("the Notes") are inapposite. Pursuant to the Preliminary Order of Forfeiture issued by this Court, Mr. Shkreli's E*Trade account is a substitute asset subject to FRCP 32.2(d). The Notes provide legislative guidance to

BRAFMAN & ASSOCIATES, P.C.

courts applying FRCP 32.2(d) to forfeiture orders in criminal cases, and the Notes are clear as to the intent of FRCP 32.2(d). The intent is to ensure that if a forfeiture order is reversed on appeal, the property is recovered by the defendant as if no forfeiture ever took place. Under the current proposed Final Order of Forfeiture, it would not be possible for Mr. Shkreli to recover his assets as if no forfeiture ever took place because a substantial portion of the funds in the E*trade account would potentially be transferred to tax agencies via collection activity.

Contrary to the contentions of the NYS-AG, the IRS and the government, Mr. Shkreli's objection to the current terms of the Proposed Final Order of Forfeiture is not tantamount to a rejection of his obligation to pay appropriate income taxes to the government. To the degree that counsel's submission prompted the government or the tax agencies to come to that conclusion, then the parties misunderstand. In fact, Mr. Shkreli's objection to the proposed Final Order of Forfeiture is indicative of his effort to handle all his existing financial obligations in the most appropriate manner.

Both tax agencies assert that the amounts owed for taxes are not in dispute and that it is misleading to make any other representation. The government, the Commissioner and the IRS also point out in their submissions that Mr. Shkreli previously requested access to the funds in the E*Trade account in order to seek to satisfy his tax obligations and other creditors. That is true. At the time of those requests and through to the end of last week, the total amounts that both government tax agencies sought to collect included penalties and interest.[1] Accordingly, to the degree that Mr. Shkreli and his representatives are working to eliminate or modify penalties and interest being charged to Mr. Shkreli by New York State and United States tax authorities, then the total amount that he owes to those agencies is unsettled and in dispute. Nothing in counsel's arguments suggested that Mr. Shkreli does not take his tax obligations seriously or that he will not handle them in an appropriate manner.

2. Mr. Shkreli's Change of Circumstances

We also most respectfully note that there has been an important change in Mr. Shkreli's circumstances since his previous request to access the funds held in the E*Trade account in October 2017. The government and tax authorities ignore that, in the interim, this Court has imposed sentence. That sentence imposes 84-month incarceration, approximately $388,000 in restitution, a $75,000 fine and $7,360,450 in forfeiture. In addition, the Court has ordered release of the restraints on the E*Trade account to satisfy the fine and the restitution.

---

[1] On August 3, 2018, through his accounting firm, Mr. Shkreli reached a stipulated settlement with the IRS as to the amount owed for 2015 tax obligations. That settlement addresses any interest and penalties that Mr. Shkreli may owe to the IRS. Assuming the Tax Court approves the stipulated settlement, it will be entered by the Tax Court within a few weeks and that litigation will terminate.

BRAFMAN & ASSOCIATES, P.C.

Although Mr. Shkreli had been incarcerated prior to sentence and knew that he faced incarceration and financial consequences due to his conviction after trial, the actual imposition of sentence affected a significant change in his life circumstances, as all criminal sentences do. Here, the imposition of a forfeiture obligation of over $7 million combined with a significant period of incarceration, causes a substantial change to his financial circumstances and obviously requires consideration and planning so that if that forfeiture obligation is upheld by the Court of Appeals, he can meet that requirement as well as his tax obligations. Thus, it is not unreasonable for Mr. Shkreli to re-assess his financial responsibilities and to consider the best approach to meeting those obligations. Mr. Shkreli should have the opportunity to re-assess and, to the degree that the law under FRCP 32.2(d) allows, to impose his financial plan on his assets so that he does have the best possible opportunity to satisfy every creditor, including the tax agencies and the government.

3. Four-Factor Test[2]

It is Mr. Shkreli's position that FRCP 32.2(d) ends the analysis and requires that the Court maintain the restraints put in place in the Preliminary Order of Forfeiture, including the stay. However, in the event that the Court opts to use the four-factor test used by the District Courts in United States v. Quinones, 2009 WL 4249588, at *2 (E.D.N.Y. 2009) and United States v. Young, F.Supp.2d 234 (W.D.N.Y. 2011) to aid the determination, the factors weigh heavily in favor of keeping the restraints in place. The four factors the District Courts have considered are: (1) the likelihood of success on appeal; (2) whether the forfeited asset is likely to depreciate over time; (3) the forfeited asset's intrinsic value to defendant; and (4) the expense of maintaining the forfeited property.

  a.  Appeal

Mr. Shkreli is filing a meritorious appeal that includes specific arguments as to the "no-ultimate harm" charge to the jury and as to the calculation of forfeiture. Specifically, along with other legal arguments regarding Count Eight, Mr. Shkreli has strong legal arguments that if there was any forfeiture in this case, it should have been reduced by deducting direct costs, including

---

[2] The government provided the Court with additional District Court cases applying the four-part test used in United States v. Young, 2014 WL 1671507 (W.D.N.Y. Apr. 2014). We appreciate the government providing this additional material to the Court and regret that we did not find those cases to provide to the Court. Its worth noting that in the Court's opinion in United States v. Silver, 203 F.Supp.3d 370, 385(S.D.N.Y. 2016), the District Court acknowledges that there is not a wealth of jurisprudence on the question of staying forfeiture orders pending appeal and then applies the four-part test as the test commonly used in Second Circuit. After applying the four-part test to the facts in Silver the Southern District of New York exercised its discretion in favor of a stay of execution, stating "[t]hus, maintaining the status quo keeps the assets equally available and unencumbered whether for forfeiture or for return to Silver pending the outcome of his appeal." Id. at 385

BRAFMAN & ASSOCIATES, P.C.

payments made to investors. Further, if Count 8 is reversed, then any forfeiture in connection with Count 8 would be reversed as well.

  b. <u>Depreciation</u>

The funds in the E*Trade account will not depreciate over time.

  c. <u>Intrinsic Value</u>

The government argues that the cash in the E*trade account has no intrinsic value to Mr. Shkreli. The government is mistaken. The intrinsic value of the funds in the account derives from the intrinsic value of the other substitute assets restrained by the Preliminary Order of Forfeiture. Those assets include his shares in Vyera, the Wu-Tang Album and the Picasso, and these assets absolutely have intrinsic value to Mr. Shkreli. To the degree that the E*trade account is depleted, it becomes more likely that these other assets may need to be monetized in the future to satisfy any final order of forfeiture existing at the end of the appeal process. That potential additional loss of items with intrinsic value will be borne by Mr. Shkreli. See <u>United States v. Quinones</u>, 2009 WL 4249588, at *2 (E.D.N.Y. 2009).

  d. <u>Expense of Maintaining the Forfeited Property</u>

The government does not bear any expense maintaining the E*Trade account or of maintaining any other substitute assets.

Mr. Shkreli should and will meet his tax obligations, but he should also be given an opportunity to determine how his assets will be distributed, particularly while the appeal is still pending. All four factors weigh in favor of maintaining the status quo.

  4. <u>Conclusion</u>

We respectfully request that the Court not permit the tax agencies to collect from Mr. Shkreli's substitute assets and that the Court modify the proposed Final Order of Forfeiture so that it maintains the existing restraints and the stay of the execution of the forfeiture while Mr. Shkreli exhausts as his appeals. It is the only way to assure that if the forfeiture order is reversed on appeal, Mr. Shkreli's property can be returned to him as if no forfeiture order was ever imposed.

We thank the Court for its courtesy in this and all other matters.

                       Respectfully submitted,

                       */s/ Andrea Zellan*
                       Andrea Zellan

cc: All counsel via ECF