MANDATE

18-819-cr
*United States v. Shkreli*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of July, two thousand nineteen.

Present:
> DENNIS JACOBS,
> DEBRA ANN LIVINGSTON,
> JOSEPH F. BIANCO,
> *Circuit Judges*,

_____

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                                        18-819-cr

MARTIN SHKRELI,

> *Defendant-Appellant*,

EVAN GREEBEL,

> *Defendant*.

_____

For Appellee:                          JACQUELYN M. KASULIS (Alixandra E. Smith, *on the brief*), *for* Richard P. Donoghue, United States Attorney for the Eastern District of New York, Brooklyn, NY.

MANDATE ISSUED ON 08/08/2019

For Defendant-Appellant:                    MARK M. BAKER (Benjamin Brafman, Marc Agnifilo, Andrea Zellan, Jacob Kaplan, Teny R. Geragos, *on the brief*), Brafman & Associates, P.C., New York, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Matsumoto, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Martin Shkreli ("Shkreli") appeals from an amended judgment of the United States District Court for the Eastern District of New York, dated April 11, 2018, sentencing him to 84 months' imprisonment and ordering him to pay (1) a fine of $75,000; (2) restitution of $388,336.49; and (3) forfeiture in the amount of $7,360,450.00, following a jury verdict convicting him of two counts of securities fraud and one count of conspiracy to commit securities fraud, in violation of 15 U.S.C. § 78j(b) and 18 U.S.C. § 371, respectively.  *See* Amended Judgment, No. 15-cr-637 (KAM) (E.D.N.Y. Filed April 17, 2018), ECF No. 583.   We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

**<u>Jury Instruction</u>**

Shkreli first argues that the district court incorrectly instructed the jury either (1) by including a "no ultimate harm" ("NUH") instruction as to securities fraud, or (2) even if a NUH instruction could properly be included in some form as to securities fraud, by varying the wording of that NUH instruction between the securities fraud and wire fraud counts.   He points to his convictions for securities fraud and acquittals for wire fraud as evidence that the instructions were incorrect and confusing to the jury.   "We review a jury instruction challenge *de novo*, but we will reverse only where the charge, viewed as a whole, demonstrates prejudicial

2

error." *United States v. Coppola*, 671 F.3d 220, 247 (2d Cir. 2012).   "Where . . . a defendant requested a different jury instruction from the one actually given, the defendant bears the burden of showing that the requested instruction accurately represented the law in every respect and that, viewing as a whole the charge actually given, he was prejudiced."   *United States v. Nektalov*, 461 F.3d 309, 313-14 (2d Cir. 2006) (internal quotation marks omitted).

At the outset, we see no error generally in the inclusion of a NUH instruction for a securities fraud charge.   In fact, we have upheld such an instruction in securities fraud cases on multiple occasions.   *See, e.g., United States v. Lange*, 834 F.3d 58, 79 (2d Cir. 2016); *United States v. Leonard*, 529 F.3d 83, 91-92 (2d Cir. 2008).   We agree with the government that a securities fraud charge *without* the NUH instruction would actually have constituted a windfall for Shkreli, whose defense was "exactly the kind of improper argument that the NUH instruction was designed to address: that despite his many misrepresentations and omissions to the MSMB Capital and MSMB Healthcare investors, he did not have the requisite intent to defraud those investors because he believed that the investors would ultimately make money from their investments."   Appellee's Brief 40; *see also United States v. Ferguson*, 676 F.3d 260, 280 (2d Cir. 2011) (upholding NUH instruction because it "ensured that jurors would not acquit if they found that the defendants knew the [transaction] was a sham but thought it beneficial for the stock price in the long run . . . [given that] the immediate harm in such a scenario is the denial of an investor's right to control her assets by depriving her of the information necessary to make discretionary economic decisions" (internal quotation marks and brackets omitted)).

We also disagree with Shkreli that it was error for the terms of the NUH instructions to vary between the securities fraud and wire fraud counts.   The two crimes have different elements—there is no basis for inclusion of language requiring the jury find that Shkreli acted

"for the purpose of causing some loss to another" in order to convict him of *securities fraud* simply because such a finding is required to convict him of *wire fraud*. And given these differing elements, Shkreli's repeated invocations of *United States v. Rossomando*, 144 F.3d 197 (2d Cir. 1998), and *United States v. Berkovich*, 168 F.3d 64 (2d Cir. 1999)—cases dealing exclusively with wire fraud—are unavailing. The instruction given here correctly stated the law. As such, we disagree with Shkreli that exclusion of additional language describing an element *not* required for the charged crime constituted a prejudicial error.

**Forfeiture**

Next, Shkreli argues that the district court erred when it ordered forfeiture in the amount of $6,400,450, representing the total amount invested by investors in his hedge funds (Counts Three and Six).[1] He argues that the award of forfeiture was inappropriate for three reasons: (1) not all investors in the hedge funds testified, and thus the government did not prove that the funds associated with the non-testifying investors were acquired by fraud; (2) the amount should be reduced to account for losses he incurred by making trades for the funds; and (3) the large returns seen by investors in the funds should cause his forfeiture to be reduced to zero.

"When a forfeiture award is challenged on appeal, this Court reviews the district court's legal conclusions *de novo* and its factual findings for clear error." *United States v. Treacy*, 639 F.3d 32, 47 (2d Cir. 2011). The government sought forfeiture under 18 U.S.C. § 981(a)(1)(C), which renders subject to forfeiture "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to" a number of offenses, including securities fraud. "In cases involving lawful goods or lawful services that are sold or provided in an illegal manner, the term

---

[1] Shkreli does not appeal the $960,000 in forfeiture ordered due to his conviction for conspiracy to commit securities fraud (Count Eight). *See* Def.-App. Brief 48 at n.18.

'proceeds' means the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the goods or services."   *Id.* § 981(a)(2)(B); *see also United States v. Contorinis*, 692 F.3d 136, 145 n.3 (2d Cir. 2012) (observing that cases involving the sale of securities falls under "lawful goods or lawful services that are sold or provided in an illegal manner," as the "[t]erm unlawful activities in section 981(a)(2)(A) was meant to cover inherently unlawful activities such as robbery that are not captured by the words illegal goods and illegal services" (internal quotation marks omitted)).   Defendants have the burden of establishing "direct costs," which "shall not include any part of the overhead expenses of the entity providing the goods or services, or any part of the income taxes paid by the entity." 18 U.S.C. § 981(a)(2)(B).   "Criminal forfeiture focuses on the disgorgement by a defendant of his ill-gotten gains."   *Contorinis*, 692 F.3d at 146 (internal quotation marks omitted); *United States v. Torres*, 703 F.3d 194, 203 (2d Cir. 2012) ("[F]orfeiture is gain based." (internal quotation marks omitted)).

First, we disagree with Shkreli that the lack of testimony by every investor in his hedge funds requires reduction of the forfeiture amount.   We rejected a similar argument in *United States v. Kalish*, 626 F.3d 165, 168 (2d Cir. 2010), where we declined to decrease the amount of forfeiture imposed based on the defendant's argument that "only a few customers testified that false promises had been made to them."   As in *Kalish*, "false promises were routinely made" to Shkreli's investors.   *Id.*; *see also* Appellee's Brief 56 (describing "the sheer breadth and depth of the material misrepresentations and omissions made by Shkreli to investors in the course of the two frauds to induce investment, which touched on *every* aspect of the operation of the MSMB Funds").   Moreover, we agree with the government that the continuing misrepresentations sent to all investors in the funds (in the form of false performance reports sent

5

out on a regular basis, for example) clearly link Shkreli's ability to *retain* the invested money to his fraud.   As such, we discern no clear error in the district court's factual finding that the money associated with all the investors was traceable to Shkreli's fraud irrespective whether or not the investors testified.

Next, we disagree with Shkreli that his forfeiture award should be decreased based on the trading activities of his hedge funds, which he argues should be deemed "direct costs."   As noted above, it was Shkreli's burden to prove his direct costs.   *See* 18 U.S.C. § 981(a)(2)(B). We, like the district court, conclude that Shkreli failed to meet such a burden.   *See* Special Appendix ("SPA") 123 (noting that Shkreli "provides only bare citations to various government exhibits, with minimal analysis").   For example, although Shkreli argues that for one hedge fund "[his] net gain, after the investment of the received funds are factored, is a significantly lesser amount" than the full amount originally invested in the fund, he does not explain *what* that net gain might be or how we should calculate it.   Def.-App. Brief 66.   Similarly, while for the other hedge fund Shkreli argues that the majority of the money originally invested was used to buy an interest in his pharmaceutical start-up Retrophin, he does not grapple with the finding that a large portion of that amount was actually diverted to pay his personal debts.   A "cursory argument" is not enough.   *United States v. Mandell*, 752 F.3d 544, 554 (2d Cir. 2014).   As in *Mandell*, we conclude that Shkreli has failed to meet his burden as to trading losses.

Lastly, Shkreli argues that we should adopt the reasoning of *United States v. Hollnagel*, 2013 WL 5348317 (N.D. Ill. Sept. 24, 2013)—a district court case from outside our circuit—in which the court concluded that the robust returns received by investors should reduce the forfeiture amount required of the defendant to zero.   *See id.* at *4.   However, as noted above, we have held that "forfeiture is gain based," *not* based on the losses (or gains) to victims.

*Torres*, 703 F.3d at 203 (internal quotation marks omitted).    And even if Shkreli argues that he, like the defendants in *Hollnagel*, "incurred the cost of paying [his] investors," 2013 WL 5348317, at *5, he makes no suggestion that he has not profited from the frauds.    To the contrary, the district court found that he misappropriated large sums of the money invested in his funds for his own use.    As such, we see no clear error in the district court's conclusion that, *at the very least*, the gains to Shkreli include the money he caused his investors to invest via fraud. *Cf.* Appendix 376 ("[T]he proceeds [Shkreli] obtained as a result of his misrepresentations enabled him to control millions of dollars that were used to fund and enable the success of Retrophin, pay his personal debts and expenses, and perpetuate additional frauds.")

We have considered Shkreli's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

7