EXHIBIT D

# BRAFMAN & ASSOCIATES, P.C.

767 THIRD AVENUE, 26TH FLOOR
NEW YORK, NEW YORK 10017
TEL.(212)750-7800
FAX.(212)750-3906

## FACSIMILE TRANSMITTAL SHEET

| TO: | FAX NUMBER: |
|---|---|
| Warden D. K. White<br>FCI Allenwood Low<br>Federal Correctional Institution<br>P.O. Box 1500<br>Allenwood, PA 17887 | (570) 547-0342 |
| FROM: | |
| Andrea Zellan, Esq. | (212) 750-3906 |
| DATE: | TOTAL NO. OF PAGES INCLUDING COVER: |
| April 6, 2020 | 14 |
| RE: | |
| Inmate Martin Shkreli's (#87850-053) Petition for Immediate Release | |
| CC: | |

☐ URGENT    ☐ FOR REVIEW    ☐ PLEASE COMMENT    ☐ PLEASE REPLY

NOTES/COMMENTS:

Please see the attached letter.

### PRIVILEGE AND CONFIDENTIALITY NOTICE:

This facsimile is confidential and may contain attorney privileged information intended only for the use of the individual named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone. Do not disclose the contents to anyone. Thank you.

# BRAFMAN & ASSOCIATES, P.C.

ATTORNEYS AT LAW

767 THIRD AVENUE, 26TH FLOOR

NEW YORK, NEW YORK 10017

TELEPHONE: (212) 750-7800

FACSIMILE: (212) 750-3906

E-MAIL: ATTORNEYS@BRAFLAW.COM

BENJAMIN BRAFMAN

MARK M. BAKER
OF COUNSEL

MARC A. AGNIFILO
OF COUNSEL

ANDREA L. ZELLAN

JOSHUA D. KIRSHNER

JACOB KAPLAN

TENY R. GERAGOS
ADMITTED IN NY & CA

STUART GOLD

April 6, 2020

<u>VIA FAX (570-547-0342) and USPS MAIL</u>
Warden D. K. White
FCI Allenwood Low
Federal Correctional Institution
P.O. Box 1500
Allenwood, PA 17887

Re:   <u>Inmate Martin Shkreli's (#87850-053) Petition for Immediate Release</u>

Dear Warden White:

Our firm represents federal inmate Martin Shkreli (Register # 87850-053). Mr. Shkreli respectfully requests that he be released to home confinement immediately pursuant to the directive issued by Attorney General William Barr on Friday April 3, 2020. We previously submitted a request for compassionate release for Mr. Shkreli on March 30, 2020 which is attached here for your convenience.

In his April 3, 2020 directive, Attorney General Barr "expanded the cohort of inmates who can be considered for home release." The "expanded cohort" includes inmates "with a suitable confinement plan at institutions in which COVID-19 is materially affecting their operations."[1] Operations at FCI Allenwood Low are materially affected by COVID-19. The facility is currently in a lockdown to protect the health of staff and inmates and that lockdown has caused cessation of all legal and family visits for inmates, the cessation of phone calls for inmates and the near cessation of CorrLinks access for all inmates.

---

[1] April 3, 2020 Barr directives, p.1.

BRAFMAN & ASSOCIATES, P.C.

      Mr. Shkreli falls within Attorney General Barr's "expanded cohort:" he is in a facility where operations are materially affected by COVID-19; he is medically vulnerable; he poses no risk of re-offense, and he has a safe and secure release plan. As discussed in our March 30, 2020 petition, Mr. Shkreli has serious allergies that make it more likely that he will contract the virus, and suffer from the disease. Allergies result in frequent face touching due to itchy eyes and nasal congestion. Repeatedly touching one's face increases the risk of contracting the illness because it increases the opportunities for the virus to move from hands into the body through nose, eye and mouth contact. Allergies can also cause compromised respiratory function when they are at their worst and compromised respiratory function heightens the risk that a person with COVID-19 will become severely ill or die.

      In addition, Mr. Shkreli presents no risk of re-offense. On August 4, 2017 he was convicted of two counts of securities fraud and one count of conspiracy to commit securities fraud. He poses no risk of re-offense for the simple reason that in April 2018, after his sentence, and with Mr. Shkreli's consent, the Securities and Exchange Commission imposed a lifetime ban as an investment advisor. Mr. Shkreli cannot invest money on behalf of any individual or entity for the rest of his life. Further, Mr. Shkreli expressed his regret for his conduct at the time of his sentence and since the start of his incarceration in September 2017 he has continued studying life sciences, specifically pharmaceuticals. In fact, when COVD-19 was sweeping across Wuhan Province, China, Mr. Shkreli began investigating possible treatments and vaccines from FCI Allenwood. He has already shared his work and his ideas as a citizen researcher with the hope that he can somehow help end the suffering being inflicted on the world by COVID-19.[2] His work continues today despite the current lockdown at FCI Allenwood and will continue, more swiftly and effectively, if he is released to home confinement.

      Finally, Mr. Shkreli's release plan is unchanged from the plan submitted as part of his March 30, 2020 compassionate release petition. He will reside with his fiancé ▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓ in Olathe, Kansas, a Kansas City suburb. This release plan is preferable to a release plan in which Mr. Shkreli resides with his family in New York City, an epicenter of the pandemic, because he will be located in an area where the epidemic is far less rampant.



▓▓▓ have sufficient funds to support themselves and Mr. Shkreli including to pay for medical treatment. ▓▓▓▓▓▓▓▓ can provide confirmation of employment and income upon request. ▓▓▓ ▓▓▓▓▓▓▓▓▓▓ are from the Missouri/Kansas area and have deep community ties. Her

---

    [2] A research paper has been drafted. Mr. Shkreli is an author of that paper. The latest version of the paper has been submitted to journals and is pending review. The draft can be accessed and read at www.prosperopharma.com.

BRAFMAN & ASSOCIATES, P.C.

brother and sister-in-law live in the area as well. A landline can be installed in the home for electronic monitoring requirements if deemed necessary.

Mr. Shkreli's release plan ensures that Mr. Shkreli will not increase the risks faced by the men and women who keep us all safe. He will be in a safe home with his fiancé and her family and he will not be "mingling with criminal associates" as he will be thousands of miles away in Kansas, rather than in New York City near his former associates (4/3/20 Directive of A.G. Barr). If released, Mr. Shkreli will be focused on his work in the life sciences and identifying potential life-saving treatments for devastating illnesses. In fact, his current COVID-19 research could be aided by his release, and his research may help those who are suffering from medical related issues caused by the pandemic.

Mr. Shkreli presents no risk of harm, is a first-time non-violent offender and he can be safely released to home confinement. For the aforementioned reasons, the BOP should grant Mr. Shkreli's request for release to home confinement. If BOP has any questions regarding Mr. Shkreli's request, we stand ready to answer those questions.

Dated:     April 6, 2020
           New York, NY

                                                          /s/
                                          Benjamin Brafman, Esq.
                                          Andrea Zellan, Esq.
                                          Brafman & Associates, P.C.
                                          767 Third Avenue, 26th Floor
                                          New York, New York 10017
                                          Phone: (212) 750-7500
                                          Fax: (212) 750-3906
                                          bbrafman@braflaw.com

enc.

# ATTACHMENT

# BRAFMAN & ASSOCIATES, P.C.

767 THIRD AVENUE, 26TH FLOOR
NEW YORK, NEW YORK 10017
TEL.(212)750-7800
FAX.(212)750-3906

## FACSIMILE TRANSMITTAL SHEET

| TO: | FAX NUMBER: |
|---|---|
| Warden D. K. White<br>FCI Allenwood Low<br>Federal Correctional Institution<br>P.O. Box 1500<br>Allenwood, PA 17887 | (570) 547-0342 |// 
| FROM: | |
| Andrea Zellan, Esq. | (212) 750-3906 |
| DATE: | TOTAL NO. OF PAGES INCLUDING COVER: |
| March 30, 2020 | 9 |
| RE: | |
| Inmate Martin Shkreli's (#87850-053) Petition for Immediate Release | |
| CC: | |

☐ URGENT    ☐ FOR REVIEW    ☐ PLEASE COMMENT    ☐ PLEASE REPLY

NOTES/COMMENTS:

Please see the attached letter.

### PRIVILEGE AND CONFIDENTIALITY NOTICE:
This facsimile is confidential and may contain attorney privileged information intended only for the use of the individual named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone. Do not disclose the contents to anyone. Thank you.

## BRAFMAN & ASSOCIATES, P.C.

ATTORNEYS AT LAW

767 THIRD AVENUE, 26TH FLOOR

NEW YORK, NEW YORK 10017

TELEPHONE: (212) 750-7800

FACSIMILE: (212) 750-3906

E-MAIL: ATTORNEYS@BRAFLAW.COM

BENJAMIN BRAFMAN

MARK M. BAKER
OF COUNSEL

MARC A. AGNIFILO
OF COUNSEL

ANDREA L. ZELLAN
JOSHUA D. KIRSHNER
JACOB KAPLAN
TENY R. GERAGOS
ADMITTED IN NY & CA
STUART GOLD

March 30, 2020

<u>VIA FAX (570-547-0342) and USPS MAIL</u>
Warden D. K. White
FCI Allenwood Low
Federal Correctional Institution
P.O. Box 1500
Allenwood, PA 17887

Re:   <u>Inmate Martin Shkreli's (#87850-053) Petition for Immediate Release</u>

Dear Warden White:

Federal inmate Martin Shkreli (Register # 87850-053) petitions the Federal Bureau of Prisons ("BOP"), pursuant to 28 C.F.R. § 571.61(a), to file a motion before District Judge Kiyo A. Matsumoto for an Order immediately releasing Mr. Shkreli from prison and allowing him to serve the remainder of his sentence in home confinement based on the risk of serious illness and death from the coronavirus disease (COVID-19) pandemic. Because the basis of Mr. Shkreli's request is the risk of serious medical illness and death, he respectfully asks that his request be expedited. *See* 28 C.F.R. § 571.62(c) ("In the event the basis of the [compassionate release] request is the medical condition of the inmate, staff shall expedite the request at all levels.")

## I.   **FACTUAL BACKGROUND**

Mr. Shkreli was born in March 17, 1983. (*See* Presentence Investigation Report ("PSR") at p. 2). On August 4, 2017, before Hon. Kiyo Matsumoto of the Eastern District of New York, a jury acquitted Mr. Shkreli of five of eight counts alleged in the Indictment against him and convicted him of three counts (two counts of Securities Fraud in violation of 15 U.S.C. 78(b), a Class C felony and one count of Conspiracy to Commit Securities Fraud in violation of 18 USC 371, a Class D felony). (Ex. A. Judgment at 1-3.)

BRAFMAN & ASSOCIATES, P.C.

Approximately one month after the verdict on September 13, 2017, Mr. Shkreli was remanded to custody at the Metropolitan Detention Center in Brooklyn ("MDC") while awaiting sentence. From September 13, 2017, to March 9, 2018, Mr. Shkreli was an inmate at the MDC. MDC presents one of the most challenging living circumstances for inmates. Most inmates are living under tremendous stress caused by the uncertainty as to how their cases will unfold and resolve. That stress creates a volatile atmosphere that is ripe for conflict. At one point while Mr. Shkreli was at the MDC, the facility was in a lockdown for approximately two weeks due to a violent encounter among multiple inmates. Mr. Shkreli navigated this world of violence, threatened violence, mental instability, abuse and intimidation as he waited in near isolation for Judge Matsumoto to render her decision as to a just sentence. As an inmate who suffers from a debilitating anxiety disorder, this is tremendously difficult and scary.

On March 9, 2018 Mr. Shkreli was sentenced to eighty-four months incarceration, three years of supervised release, a $75,000.00 fine, $388,336.49 restitution and a $300.00 assessment. (*See* Dkt. 565.) He was also ordered to forfeit $7,360,450.00. Mr. Shkreli remained at the MDC until he was designated to FCI Fort Dix in May of 2018. Almost one year later in April 2019, Mr. Shkreli was transferred to FCI Allenwood Low, where he is serving the remainder of his sentence. Mr. Shkreli's projected release date is September 14, 2023.

## II.   COMPASSIONATE RELEASE STATUTE AND REGULATION

The "compassionate release" provision of 18 U.S.C. § 3582(c) provides the following:

The [sentencing] court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case—

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction . . .

BRAFMAN & ASSOCIATES, P.C.

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

Under BOP's regulations, a "request for a motion under . . . [§] 3582(c)(1)(A) shall be submitted to the Warden." 28 C.F.R. § 571.61(a). A prisoner "may initiate a request for consideration under . . . [§] 3582(c)(1)(A) only when there are particularly extraordinary or compelling circumstances which could not reasonably have been foreseen by the court at the time of sentencing." *Id.*

In addition to the statute and regulations, the CARES Act currently before the House of Representatives includes a provision authorizing the BOP to increase the length of time during which an inmate may serve his sentence in home confinement, and Attorney General William Barr issued a directive authorizing the BOP to increase its use of home confinement in response to the COVID-19 pandemic. These actions demonstrate the Department of Justice's eagerness to help reduce the prison population during the pandemic.

### A. Mr. Shkreli's Compelling Circumstances

The spread of the coronavirus has been exponential in the United States in the past few weeks. In the United States, as of March 27, 2020, more than 85,356 people have tested positive for the coronavirus and more than 1,246 people have died from the coronavirus.[1] In Pennsylvania, over 2,751 people have tested positive for the coronavirus.[2] As of March 28, 2020 Pennsylvania's border state of New Jersey has 11,124 cases and 140 deaths from the disease.[3] As of March 28, 2020, fourteen inmates and 13 staff members at BOP facilities have tested positive for the COVID-19.[4]

Although the BOP has begun taking measures to prevent and control the COVID-19 amongst the prison population,[5] those measures will likely be inadequate to protect many prisoners from getting the COVID-19. Prisoners live in "close living quarters" and thus "are especially vulnerable to COVID-19 and will need special attention both to minimize transmission risk and address their healthcare needs in the context of an outbreak."[6] The risk to prisoners is significantly higher than the risk to the general public due to the living quarters and the inability to control

---

[1] https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html.
[2] https://www.health.pa.gov/topics/disease/coronavirus/Pages/Coronavirus.aspx.
[3] https://www.nj.gov/health/cd/topics/covid2019_dashboard.shtml
[4] https://www.bop.gov/coronavirus/index.jsp. This represents an increase of 4 inmates and 5 staff in just 2 days.
[5] *See* https://www.bop.gov/coronavirus/.
[6] https://law.yale.edu/sites/default/files/area/center/ghjp/documents/final_covid-19_letter_from_public_health_and_legal_experts.pdf.

BRAFMAN & ASSOCIATES, P.C.

spread within those living quarters. Prisoners "also may not be able to regularly wash their hands, which may promote the spread of disease."[7]

It is our understanding that Mr. Shkreli is currently residing in his dorm at Allenwood-Low within a 12' x 12' cubicle with two other people. Sleeping spaces within that cubicle are separated by only a few feet. Approximately two hundred men are sharing 5 to 6 functioning toilets. Access to cleaning supplies is limited. These circumstances do not permit for proper social distancing or hand washing.

Whatever precautions the BOP has or will have in place, it is inevitable that every prisoner at FCI Allenwood Low will come into close contact with BOP staff, other prisoners, and surfaces/objects touched by BOP staff and other prisoners. Allowing Mr. Shkreli to serve the remainder of his prison sentence in home confinement, where he will isolate himself, will reduce the risk of disease from COVID-19. Moreover, releasing Mr. Shkreli from prison now "will reduce the need to provide medical care or transfers to hospitals when staff will be stretched thin."[8]

State and local governments around this country have already begun releasing prisoners because of the COVID-19 pandemic.[9] Indeed, just several days ago, Attorney General William Barr recommended that the BOP "explore releasing certain at-risk prisoners to home confinement in order to reduce the overall prison population."[10] The Attorney General has asked the BOP to "identify[] vulnerable prisoners who would make more sense to allow to go home to finish their confinement," such as nonviolent prisoners.[11] Courts around the country are also heeding the Attorney General's advice and releasing prisoners based on this public health crisis.[12]

---

[7] *Id.*

[8] https://www.prisonpolicy.org/blog/2020/03/06/pandemic/.

[9] https://www.usatoday.com/story/news/politics/2020/03/26/jails-free-hundreds-prisoners-stop-coronavirus/5077204002/.

[10] https://abcnews.go.com/Politics/ag-william-barr-pushes-expansion-home-confinement-reduce/story?id=69816504; *see also* https://www.businessinsider.com/trump-consider-coronavirus-executive-order-federal-prisons2020-3.

[11] https://abcnews.go.com/Politics/ag-william-barr-pushes-expansion-home-confinement-reduce/story?id=69816504.

[12] *See Xochihua-James v. Barr*, No. 18-71460 (9th Cir. Mar. 23, 2020) (unpublished) (*sua sponte* releasing detainee from immigration detention "[I]n light of the rapidly escalating public health crisis"); *United States v. Selna*, 8:16-cr-76-JVS (C.D. Cal. Mar. 26, 2020) ("Michaels has demonstrated that the Covid-19 virus and its effects in California constitute 'another compelling reason'" justifying temporary release under § 3142(i).). *United States v. Jaffee*, No. 19-cr-88 (D.D.C. Mar. 26, 2020) (releasing defendant with criminal history in gun & drug case, citing "palpable" risk of spread in jail and "real" risk of "overburdening the jail's healthcare resources"; "the Court is . . . convinced that incarcerating the defendant while the current COVID-19 crisis continues to expand poses a greater risk to community safety than posed by Defendant's release to home confinement"); *United States v. Harris*, No. 19-cr-356 (D.D.C. Mar. 26, 2020) ("The Court is convinced that incarcerating Defendant while the current COVID-19 crisis continues to expand poses a far greater risk to community safety than the risk posed by Defendant's release to home confinement

4

BRAFMAN & ASSOCIATES, P.C.

This worldwide pandemic is a compelling circumstance worthy of compassionate release. Despite the fact that Mr. Shkreli is not in a high-risk category for death from COVID-19 as per the CDC Guidelines, COVID-19 has claimed the lives of people from every age and health category. The science is preliminary as to what causes one individual to have a mild case that can be handled without hospitalization and what causes a case to be so severe that the person requires not just hospitalization, but intensive care unit hospitalization, to have a chance at survival. It is an indiscriminate illness that is more contagious than any disease the world has seen in decades. The only way to mitigate the risk of contracting the illness is to follow the CDC Guidelines as to social-distancing, isolation and handwashing. Following those Guidelines is simply not possible in a prison environment no matter what steps the BOP takes because at FCI Allenwood Low and many other facilities, too many people are living in too close proximity to one another to be able to prevent the infestation of the facility by this virus. Releasing inmates who pose no risk of harm is the most significant and impactful step that the BOP can undertake.

Mr. Shkreli faces possible, even likely infection, and potential death in prison due to his underlying severe allergies. (*See* PSR at ¶ 88.). It is well documented that the CDC recommends people avoid contact between hands and face to reduce opportunity for the virus to enter the body causing illness. Allergies cause sneezing, coughing and itchy eyes which results in more frequent contact between hands and face. This increased contact between hands and face increases opportunities for the virus to infiltrate your body and cause illness.[13] This risk can be mitigated

---

on . . . strict conditions."); *United States v Garlock*, No. 18-CR-00418-VC-1, 2020 WL 1439980, at *1 (N.D. Cal. Mar. 25, 2020) (citing "chaos" inside federal prisons in sua sponte extending time to self-surrender: "[b]y now it almost goes without saying that we should not be adding to the prison population during the COVID-19 pandemic if it can be avoided"); *United States v. Perez*, No. 19 CR. 297 (PAE), 2020 WL 1329225, at *1 (S.D.N.Y. Mar. 19, 2020) (releasing defendant due to the "heightened risk of dangerous complications should he contract COVID-19"); *United States v. Stephens*, 2020 WL 1295155, __F. Supp. 3d__ (S.D.N.Y. Mar. 19, 2020) (releasing defendant in light of "the unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic"); *In re Manrigue*, 2020 WL 1307109 (N.D. Cal. Mar. 19, 2020) ("The risk that this vulnerable person will contract COVID-19 while in jail is a special circumstance that warrants bail."); *In re Request to Commute or Suspend County Jail Sentences*, Docket No. 084230 (N.J. Mar. 22, 2020) (releasing large class of defendants serving time in county jail "in light of the Public Health Emergency" caused by COVID-19); *see also United States v. Avenatti*, No. 8:19-cr-61 (C.D. Cal. Mar. 25, 2020) (sua sponte inviting defendant to move for reconsideration of a just-denied motion for release "[i]n light of the evolving nature of the Covid-19 pandemic"); *United States v. Matthaei*, No. 1:19-CV-00243-BLW, 2020 WL 1443227, at *1 (D. Idaho Mar. 16, 2020) (extending self-surrender date by 90 days in light of COVID-19);*United States v. Barkman*, 2020 U.S. Dist. LEXIS 45628 (D. Nev. Mar. 17, 2020) (suspending intermittent confinement because "[t]here is a pandemic that poses a direct risk if Mr. Barkman . . . is admitted to the inmate population of the Wahoe County Detention Facility"); *United States v. Copeland*, No. 2:05-cr-135-DCN (D.S.C. Mar. 24, 2020) (granting compassionate release to defendant in part due to "Congress's desire for courts to release individuals the age defendant is, with the ailments that defendant has during this current pandemic").

[13] *See,* https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html (recommending that people "avoid touching eyes, nose and mouth with unwashed hands"); and

BRAFMAN & ASSOCIATES, P.C.

by release to strict home confinement and isolation. These are compelling and exceptional circumstances. As Mr. Shkreli sits in prison fearing the moment the pandemic infiltrates the prison, his circumstances are made more compelling by the fact that he is a first-time offender of a non-violent offense; to force him, (or any other non-violent offender who has a release plan) to face a risk of a severe deadly illness as a part of his consequence/punishment is disproportionate to his crimes, especially given the nature and characteristics of the offense.

### B.  Mr. Shkreli's Proposed Release Plans

If released under the compassionate release statute, Mr. Shkreli will reside with his fiance ███████████████████████ Olathe, Kansas, a Kansas City suburb. This release plan is preferable to a release plan in which Mr. Shkreli resides with his family in New York City, an epicenter of the pandemic, because he will be located in an area where the epidemic is far less rampant. *See* 28 C.F.R. § 571.61(a)(2) (requiring an inmate's compassionate release request to contain "[p]roposed release plans").

███████████████████████████████████████████████████████████ As of March 29, 2020, the state of Kansas has 319 confirmed cases, the state of Missouri has 908 confirmed cases compared to New York City's 59,513 confirmed cases.[14] ████████████████ have sufficient funds to support themselves and Mr. Shkreli including to pay for medical treatment. ███████ can provide confirmation of employment and income upon request. ██████ y are from the Missouri/Kansas area and have deep community ties. Her brother and sister-in-law live in the area as well. A landline can be installed in the home for electronic monitoring requirements.

### C.  Mr. Shkreli's Release Would Not Pose a Danger to the Community

Mr. Shkreli's immediate release from prison would not "pose a danger to the safety of any other person or the community." *See* BOP Program Statement 5050.50, at 2 (Jan. 17, 2019), *available at* https://www.bop.gov/policy/progstat/5050_050_EN.pdf. Mr. Shkreli's crimes of

---

www.sinusandallergywellnesscenter.com/blog/people-with-allergies-may-be-at-greater-risk-for-covid-19-and-6-ways-to-reduce-the-risks (recommending that people "[t]ry not to scratch your eyes and nose if they itch. If you were exposed to COVID-19, you will self-infect yourself when your fingers reach mucous membranes.").

[14] https://khap2.kdhe.state.ks.us/NewsRelease/COVID19/COVID-19_March_29.pdf; https://health.mo.gov/living/healthcondiseases/communicable/novel-coronavirus/ and https://www.nytimes.com/2020/03/29/nyregion/coronavirus-new-york-update.html

6

BRAFMAN & ASSOCIATES, P.C.

conviction did not involve violence, he is barred as an investment advisor by the SEC and cannot invest or manage anyone else's money.[15]

The nature and characteristics of Mr. Shkreli's offense—securities fraud and securities fraud conspiracy—were non-violent offenses. And, as detailed extensively in sentencing submissions, Mr. Shkreli has committed his life's work to the life sciences and the rare disease community—developing patents and initiating drug trials to help cure those with debilitating conditions. Indeed, his release would not pose a danger to the community, but would instead help those who are suffering through medical related issues through the pandemic, as he is a skilled medical researcher.

### III. CONCLUSION

Judge Matsumoto clearly imposed a substantial (albeit well below-Guidelines) sentence on Mr. Shkreli, reflecting his offense conduct—securities fraud and securities fraud conspiracy. However, at the time of sentencing, the Court did not know, and "could not reasonably have …foreseen" that at least a substantial portion of Mr. Shkreli's final forty-one months of imprisonment would be served at a time of a worldwide pandemic, which is directly impacting the BOP as a whole.[16] [§] 3582(c)(1)(A) (emphasis added). Mr. Shkreli presents no risk of harm, is a first-time non-violent offender and he can be safely released to home confinement. For the aforementioned reasons, the BOP should move Judge Matsumoto to immediately release Mr. Shkreli from prison and allow him to serve the remainder of his sentence in strict home confinement based on the very high risk of infestation by COVID-19 at FCI Allenwood Low and the high risk of serious illness and the risk death from the COVID-19 pandemic.

---

[15] To the degree that BOP is concerned that Mr. Shkreli has not acted responsibly regarding the financial components of his sentence, such concern is misplaced. Mr. Shkreli's restitution, fine, and assessment have been paid with the use of bail funds that were not released to Mr. Shkreli at remand or sentence. As recently as March 20, 2020, the undersigned was advised by the U.S. Attorney's Office, Financial Litigation Unit that a Satisfaction of Judgment is forthcoming. The Clerk's office was working to provide that document when the pandemic in New York City caused emergency measures that are slowing down or ceasing non-essential court activities. As soon as the Satisfaction of Judgment is available to Counsel it will be made available to your office.

[redacted]

[16] The BOP is taking action to attempt to protect the inmate population nationwide and at FCI Allenwood Low. However, as discussed *infra*, it is respectfully submitted that COVID-19 is still not well understood, that prisons simply cannot adapt for social – distancing unless there are vastly fewer inmates, and that safety requirements of BOP will further prevent BOP from affording inmates the access to handwashing and sanitation recommended by the Center for Disease Control.

BRAFMAN & ASSOCIATES, P.C.

Dated:      March 30, 2020
            New York, NY

                                              /s/
                                    Benjamin Brafman, Esq.
                                    Andrea Zellan, Esq.
                                    Brafman & Associates, P.C.
                                    767 Third Avenue, 26th Floor
                                    New York, New York 10017
                                    Phone: (212) 750-7500
                                    Fax: (212) 750-3906
                                    bbrafman@braflaw.com