```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
UNITED STATES OF AMERICA,


            -against-                            MEMORANDUM AND ORDER

                                                 15-cr-637(KAM)

MARTIN SHKRELI, Defendant.

----------------------------------------X
```

**MATSUMOTO, United States District Judge:**

On August 4, 2017, a jury convicted defendant Martin Shkreli ("defendant" or "Shkreli") of two counts of Securities Fraud (Counts Three and Six) and one count of Conspiracy to Commit Securities Fraud (Count Eight).  Verdict Sheet, ECF No. 305.  Defendant Shkreli, a healthy, 37 year old inmate who has served 41 months of a 84-month sentence, moves for temporary or permanent "compassionate release" from FCI Allenwood Low pursuant to 18 U.S.C. § 3582(c)(1)(A) and the FIRST STEP Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018), in light of the COVID-19 pandemic.  *See* Motion to Reduce Sentence, ECF No. 729 ("Def. Mem.").  The government opposes.  *See* Government's Opposition to Motion to Reduce Sentence, ECF No. 732 ("Gv't Opp.").  On March 30, 2020, pursuant to 28 C.F.R. § 571.61(a), defendant filed an administrative request for release with the Bureau of Prisons alongside the instant motion.  *See* Def. Mem.,

1

Exhs. C & D. On April 15, 2020, the warden of FCI Allenwood Low denied defendant's petition pursuant to BOP Program Statement 5050.50. Def. Mem. 5 n.1. Defendant is currently appealing through the BOP's administrative process. *Id.*

This order presumes familiarity with this court's prior orders in this case, in particular the February 26, 2018 Memorandum and Order denying Mr. Shkreli's Motion for Judgment of Acquittal and discussing the convictions and charges against him. Memorandum and Order ("Rule 29 Order"), ECF No. 535. For the following reasons, the court DENIES defendant's motion.

## I. Standard of Review

18 U.S.C. § 3582(c)(1)(A)(i), the so-called "compassionate release" statute, creates an exception to the general prohibition against modifying "a term of imprisonment once it has been imposed,' 18 U.S.C. § 3582(c); but the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). Pursuant to the First Step Act, defendants may move a court to "reduce" a term of imprisonment upon a finding that "extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

As a threshold matter, upon a finding of "extraordinary and compelling circumstances," this court has authority to reduce

defendant's sentence, as over 30 days have passed since Mr. Shkreli filed his March 30, 2020 petition with the BOP. The court may modify a sentence "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier...." *Id*. "If the BOP does not act favorably on the defendant's request after 30 days, the exhaustion requirement is dispensed with and the defendant may bring his application to the Court. If the BOP denies the defendant's application in fewer than 30 days, then the defendant may immediately apply to the Court." *United States v. Woodson*, No. 18-CR-845 (PKC), 2020 WL 1673253, at *2 (S.D.N.Y. Apr. 6, 2020). Further, "§ 3582(c)(1)(A) does not contain an exhaustion requirement in the traditional sense. That is, the statute does not necessarily require the moving defendant to fully litigate his claim before the agency (*i.e.*, the BOP) before bringing his petition to court. Rather, it requires the defendant <u>either</u> to exhaust administrative remedies <u>or</u> simply to wait 30 days after serving his petition on the warden of his facility before filing a motion in court." *United States v. Haney*, No. 19-CR-541 (JSR), 2020 WL 1821988, at *3 (S.D.N.Y. Apr. 13, 2020); *see also United States v. Scparta*, No. 18-CR-578

3

(AJN), 2020 WL 1910481 (S.D.N.Y. Apr. 20, 2020); *see also United States v. Russo*, No. 16-CR-441 (LJL), 2020 WL 1862294, at 3-4 (S.D.N.Y. Apr. 14, 2020).[1]

The relevant policy statement here is U.S.S.G. § 1B1.13, which allows the court to reduce a term of imprisonment if "extraordinary and compelling reasons warrant the reduction," *id*. § 1B1.13(1)(A); "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," *id.* § 1B1.13(2); and "the reduction is consistent with this policy statement." *Id.* § 1B1.13(3).

Additionally, in considering any sentence reduction, the court must apply the 3553(a) factors, including: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to afford adequate deterrence to criminal conduct; (3) the need for the sentence imposed to protect the public from further crimes of the defendant; (4) the need for the sentence

---

[1] This court is sensitive to the statutory nature of this exhaustion requirement. However, the lower courts are divided on whether this is a traditional exhaustion requirement or a non-jurisdictional claim-processing rule that has no effect on the adjudicatory capacity of the courts, and instead controls who may move for compassionate release and when. See *Scparta*, 2020 WL 1910481, at *4 (citing *Haney*, 2020 WL 1821988, at *2.). "Congress cannot have intended the 30-day waiting period of § 3582(c)(1)(A) to rigidly apply in the highly unusual situation in which the nation finds itself today." *Haney*, 2020 WL 1821988, at *3. *But see, e.g.*, *United States v. Bolino*, No. 06-CR-0806 (BMC), 2020 WL 32461, at *1 (E.D.N.Y. Jan. 2, 2020)(finding that "[i]f the prison warden denies [an inmate's] request, the prisoner must appeal the denial through the BOP's Administrative Remedy Procedure.").

4

imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and the other sentencing factors outlined in 18 U.S.C. § 3553(a). *See* 18 U.S.C. §§ 3553(a)(1), (a)(2)(B)-(D), 3583(d)(1).

## II. Discussion

First, defendant has not demonstrated "extraordinary and compelling" factors that would mandate his release. FCI Allenwood Low has zero reported cases of COVID-19 among inmates and staff as of the date of this order.[2] Defendant requests to be released into, among other places, an apartment in New York City, the epicenter of the COVID-19 pandemic. It is not clear that defendant would be able to conduct a full 14 day quarantine, and whether he would have separate facilities in his fiancé's apartment, if he were to be released. *See* Provisional Death Counts for Coronavirus Disease (COVID-19), available at https://www.cdc.gov/nchs/nvss/vsrr/covid19/index.htm (last visited on May 16, 2020 at 10:00 a.m.).

The court recognizes that if improperly managed, prisons are at high risk of rapidly becoming epicenters of COVID-19. If,

---

[2] Defendant cites to the overall COVID-19 infection rate across the BOP system in making his argument but fails to cite to any statistics about the status of COVID-19 infections at FCI Allenwood Low, the facility where defendant is incarcerated, specifically. The current data suggests that there are no reported infections at FCI Allenwood Low. *See* www.bop.gov/coronavirus/index.jsp (last visited on May 16, 2020, at 11:00 a.m.); *see also* Gv't Mot. 12, n.3.

5

*arguendo*, FCI Allenwood Low had cases of the coronavirus, a petition may meet the "extraordinary and compelling circumstances" prong of the analysis. As it does not, defendant's petition fails this prong. Thus, defendant has not proven himself to be at any increased risk of catching COVID-19 at FCI Allenwood Low.

Second, defendant has not demonstrated that a current medical condition places him at increased risk for significant complications from the virus. The Attorney General identified six criteria in his March 26, 2020 memorandum to the Director of the Bureau of Prisons that would qualify an inmate for release to home confinement. *See* Attorney General Memorandum dated March 26, 2020, available at https://www.justice.gov/file/1262731/download ("A.G. Memo."). The first criterion is the age and vulnerability of the inmate. *Id.* The CDC has issued guidelines identifying people 65 or older or with particular medical conditions as at "higher risk for severe illness" resulting from COVID-19. *See* People Who Are At Higher Risk, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited May 16, 2020 at 11:00 a.m.).

Defendant is a 37 year old man who suffers from seasonal allergies, for which he takes Claritin, an over the counter

6

medication.[3] Pre-Sentence Investigation Report, dated Dec. 12, 2017 ("PSR"), ¶ 88. Apart from a historical note in a 2017 pre-sentence evaluation conducted by a psychologist regarding Mr. Shkreli's medical history, including a childhood visit to a hospital for asthma, Mr. Shkreli has no documented current diagnosis or treatment for asthma. See Sealed Report, dated Feb. 8, 2018, at 2, ECF No. 525. There are no medical reports from defendant's time in BOP custody, or from any time in his recent past, indicating that his asthma continues to pose a significant problem. Indeed, defendant himself failed to mention asthma in his March 30, 2020 petition with the BOP. The government suggests that given the defendant's conviction for perpetrating falsehoods, defendant's late claim that he suffers from asthma is yet another fabrication. Gv't Mot. at 29. The court makes no such determination, but finds that because the defendant is considerably younger than the CDC guideline for "higher risk" individuals, and does not currently suffer from an existing medical condition that would place him into a high risk category, defendant has not demonstrated that he is at a higher risk for the adverse outcomes of COVID-19 in a facility with no reported cases among inmates. Though the court may properly end

---

[3] According to the Probation Department, "BOP medical records last note the defendant's self-reported seasonal allergies in September 2017, at which time his over-the-counter allergy medication was discontinued and the defendant was referred to the prison commissary to obtain the medication." Probation Resp. at 1, ECF No. 731.

7

its analysis here, the 3553(a) factors also weigh against defendant's release.

All Section 3553(a) factors weigh against defendant's release. Defendant received his sentence based on the court's analysis of these factors, and the court's consideration remains consistent. First, with regard to the nature and circumstances of his offenses, defendant intentionally deceived and manipulated individual and public investors, and before sentencing, made disparaging remarks about the government and the sentencing process that showed little regard for the rule of law. Second, a sentence of 84 months was deemed necessary to reflect the seriousness of the offense, promote respect for the law, and deter future criminal conduct, given the defendant's disregard for the law. Reducing Mr. Shkreli's sentence by half would not further the goals of 3553(a). Third, the court does not find that releasing Mr. Shkreli will protect the public, even though Mr. Shkreli seeks to leverage his experience with pharmaceuticals to help develop a cure for COVID-19 that he would purportedly provide at no cost. The Probation Department asserts that Mr. Shkreli's claim that he can develop a cure for COVID-19 that has "so far eluded the best medical and scientific minds in the world working around the clock" is the type of "delusional self-aggrandizing behavior" that precipitated the offenses for which he was properly convicted. *See* Probation

8

Response at 2, ECF 731. In any event, Mr. Shkreli's self-described altruistic intentions do not provide a legal basis to grant his motion. Finally, the court provided its original sentence after considering all of the 3553(a) factors, including the defendant's needs for correctional treatment, something he would not receive if the sentence were reduced.

### III. Conclusion

Defendant is a healthy, 37 year old man with no recent history of preexisting medical conditions that place him at higher risk for COVID-19 and its potentially life-threatening adverse effects, and he is confined in a facility where there are currently no cases of COVID-19. In addition, the sophisticated nature of Mr. Shkreli's offenses and the fulfillment of the goals of sentencing all counsel against granting the motion for a reduced sentence. Defendant's motion to reduce his sentence is respectfully DENIED.

**SO ORDERED.**

Dated:   May 16, 2020
         Brooklyn, New York

                                        _____/s/_____
                                        **HON. KIYO A. MATSUMOTO**
                                        United States District Judge
                                        Eastern District of New York