# BRAFMAN & ASSOCIATES, P.C.
ATTORNEYS AT LAW

256 FIFTH AVENUE, 2ND FLOOR

NEW YORK, NEW YORK 10001

TELEPHONE: (212) 750-7800

FACSIMILE: (212) 750-3906

E-MAIL: ATTORNEYS@BRAFLAW.COM

BENJAMIN BRAFMAN

———

MARK M. BAKER
OF COUNSEL

MARC A. AGNIFILO
OF COUNSEL

ZACH INTRATER
OF COUNSEL

ANDREA L. ZELLAN

JACOB KAPLAN

TENY R. GERAGOS
ADMITTED IN NY & CA

STUART GOLD

January 14, 2021

<u>By ECF and Email</u>

The Honorable Kiyo A. Matsumoto
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

                Re:   <u>*United States v. Martin Shkreli*, 15-cr-637 (KAM)</u>

Dear Judge Matsumoto:

      Counsel for Defendant Martin Shkreli respectfully submit this reply letter in further support of his second motion for compassionate release (Dkt. Nos. 754–55, 760 ("Mot.") to update the Court about the FTC Action and to address certain arguments made by the Government in its opposition to compassionate release (Dkt. No. 759 ("Opp.")).

**I.**      <u>**Update on the FTC Action**</u>

      Since the compassionate release motion was filed on December 23, 2020, Mr. Shkreli has had two legal calls with his civil counsel in the FTC Action ("Civil Counsel"), one for an hour and the other for a half hour. The BOP also did permit a two-hour Zoom session between Civil Counsel and Mr. Shkreli on January 13, 2020 at 8:00 AM. Civil Counsel is hoping that the BOP would allow at least one more Zoom meeting with Mr. Shkreli before his scheduled deposition on January 27 and 28, 2021.

      Although the Zoom conference and telephone calls scheduled since the instant motion was filed are greatly appreciated by Civil Counsel and even represent a significant effort by the BOP under the circumstances, the accommodations are still wholly inadequate for Mr. Shkreli to have meaningful access to Civil Counsel. Given the complexity and pace of the FTC Action, the

BRAFMAN & ASSOCIATES, P.C.

volume of materials to digest, and the number of depositions that are scheduled, Civil Counsel requires countless more hours to confer and prepare with Mr. Shkreli confidentially.

On January 8, 2021, Judge Denise L. Cote (who is presiding over the FTC Action) acknowledged that the FTC Action is "complex" but denied Mr. Shkreli's motion to stay discovery pending his release from prison. (Ex. 1: Memorandum Opinion & Order at 3, 5).

## II. Section 3582(c)(1)(A) is a Proper Vehicle for Raising Access-to-Counsel Issues

The Government argues that "the appropriate avenue" for Mr. Shkreli to raise his access-to-counsel issues is to file a habeas corpus petition under 28 U.S.C. § 2241 in the Middle District of Pennsylvania (where he is incarcerated). (Opp. at 15). "Under § 2241, a prisoner may challenge the execution of his sentence, such as . . . conditions of confinement." *Roccisano v. Menifee*, 293 F.3d 51, 57 (2d Cir. 2002) (citations, emphasis, brackets, and internal quotation marks omitted). The Government misses the point. Mr. Shkreli recognizes that the BOP has done what it can do to provide him with access to Civil Counsel. But in this specific instance, under these specific circumstances, the BOP's hands are tied by the health and safety measures that it must impose due to the pandemic, by its limited facilities and staff, by limited unmonitored telephone lines, and by limited technology to meet the unique situation that Mr. Shkreli is confronting in the FTC Action. There is no accommodation that the BOP can safely put into place that will result in Mr. Shkreli having sufficient access to Civil Counsel. Consequently, the problem cannot be adequately addressed by a § 2241 due process litigation in the Middle District of Pennsylvania.

Further, nothing precludes a defendant from seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A) based on prison conditions. Indeed, although defendants seeking to challenge prison conditions resulting from the COVID-19 pandemic are seeking to challenge the executions of their sentences and thus could do so via a § 2241 petition, compassionate release could be granted to defendants based on their risk from COVID-19 in prison. *See, e.g.*, *Brooker*, 976 F.3d at 238 ("[C]ourts around the country, including in this circuit, have used [the coronavirus pandemic] as a justification for granting some sentence reduction motions."); *United States v. Pina*, No. 18-cr-179, 2020 WL 3545514, at 1 (S.D.N.Y. June 29, 2020) (granting a defendant's compassionate release motion that "was precipitated by prison conditions arising from the ongoing COVID-19 pandemic"); *United States v. White*, 466 F. Supp. 3d 666, 670 (S.D.W. Va. 2020) ("[M]any courts have found 'extraordinary and compelling' reasons supporting release on the basis of a combination of dire prison conditions and underlying health conditions that increase the likelihood of severe illness from COVID-19." (some internal quotation marks omitted)).

## III. Mr. Shkreli's Constitutional Right of Access to Civil Counsel Will be Violated Unless He is Granted Compassionate Release

The Government argues that because Mr. Shkreli is not prohibited from communicating with Civil Counsel "by all available means," he "cannot demonstrate that his constitutional rights have been violated." (Opp. at 130–31 (internal quotation marks omitted)). But as discussed in

BRAFMAN & ASSOCIATES, P.C.

Mr. Shkreli's motion, a prisoner's access to counsel must be "meaningful," "adequate," and "effective." (Mot. at 19–20 & n.12). That is a fact-specific inquiry, and (as discussed in depth in the motion) Mr. Shkreli does not have meaningful, adequate, or effective access to Civil Counsel in prison during the ongoing COVID-19 pandemic. Even with the BOP's accommodations to facilitate communication between Mr. Shkreli and Civil Counsel (*see* Opp. at 14), he will be deprived of his access-to-counsel right. (*See* Mot., Ex. 2 (Decl. of BOP Consultant Jack T. Donson) ¶ 10 ("While the BOP has done a somewhat satisfactory job at arranging communication thus far, the necessary communication needed going forward is far more extensive in duration and frequency.").

The BOP could be doing everything within its realm to provide Mr. Shkreli with as much access to Civil Counsel as the COVID-19 circumstances permit. But the problem is that no accommodations from the BOP could provide Mr. Shkreli with sufficient access to Civil Counsel as required by the Constitution—given the COVID-19 pandemic as well as the fast-paced and complex nature of the FTC Action.[1]

The Government asserts that Civil Counsel's failure to visit Mr. Shkreli in prison and his refusal to participate in several scheduled legal calls undermine his argument regarding the access-to-counsel issues. (Opp. at 7, 14). But "prisons are somewhat like tinderboxes where the virus may spread rapidly once a single person is infected." *United States v. Hill*, No. 19-cr-38, 2020 WL 2542725, at 3 (D. Conn. May 19, 2020). Mr. Shkreli should not be faulted for Civil Counsel's decision to take precautions against contracting and spreading COVID-19 by not visiting him in prison. Moreover, it is obvious that Mr. Shkreli's refusal of legal calls resulted from his extreme emotional condition that has been intensified by the COVID-19 pandemic, the restrictions at FCI Allenwood Low, and his lack of enough access to Civil Counsel. On two occasions when 15 minutes had been allotted for the legal calls, Mr. Shkreli refused the calls because his anxiety and frustration overwhelmed his reasoning.[2]

The Government asserts that because the FTC has promised to not review any communications between Mr. Shkreli and Civil Counsel related to the FTC Action on the BOP's

---

[1] Even if there is no violation of Mr. Shkreli's constitutional access-to-counsel right, his lack of sufficient access to Civil Counsel to adequately defend against the FTC Action is still relevant to whether compassionate release is warranted based on the combination of circumstances (i.e., lack of enough access to counsel, the COVID-19 restrictions, the risk of severe illness, and worsening mental health).

[2] The Government states that civil counsel for Mr. Shkreli in the SEC action visited him in prison in October 2020. (Opp. at 6). Although it is not a critical issue to the Court's determination of the present motion, the record should be corrected—there was no visit by Mr. Shkreli's SEC counsel. Andrea Zellan (who represents Mr. Shkreli in the instant criminal action), and Mr. Philip Moustakis of Seward & Kissel LLP, are counsel to Mr. Shrekli in the SEC action. In October 2020, Ms. Zellan and Mr. Moustakis scheduled a legal visit for November 6, 2020. But the attorneys canceled the visit due in part to concerns about exposure to COVID-19. At that time, legal visits, like all other visits, had to be scheduled weeks in advance and the duration of those visits was limited.

BRAFMAN & ASSOCIATES, P.C.

monitored TRULINCS and TRUFONE systems, he can "freely communicate" with Civil Counsel. (Opp. at 7, 14). But Mr. Shkreli's communications via TRULINCS and TRUFONE are not protected by the attorney-client privilege because the BOP is still monitoring Mr. Shkreli's phone calls and emails. Thus, Mr. Shkreli cannot communicate with Civil Counsel in confidence via those means.

The Government notes Mr. Shkreli's failure to request from the BOP a transfer to a pretrial facility that is equipped for trial preparation. (Opp. at 14). Although Mr. Shkreli would have made such a request under normal circumstances, we are in the midst of a pandemic that is ravishing through the federal prisons and precluding the BOP from granting him enough access to Civil Counsel—whether he is in FCI Allenwood Low or a pretrial facility. The FTC Action is too fast-paced and complex for Mr. Shkreli to have sufficient access to Civil Counsel via legal mail and occasional, short legal phone calls.

### IV.     Mr. Shkreli's Risk of Contracting COVID-19 Remains High

The Government asserts that Mr. Shkreli's risk of contracting COVID-19 "remains low." (Opp. at 16). Courts do not agree with the Government. *See, e.g.*, *United States v. Williams*, No. 17-cr-379, 2021 WL 37536, at 6 (D.N.J. Jan. 4, 2021) ("Case law from this district reveals that FCI Allenwood fared well early on in the pandemic but currently is suffering from a large outbreak at the facility which it does not appear to have under control."). Although the number of confirmed cases has decreased since the filing of Mr. Shkreli's motion (*see* https://www.bop.gov/coronavirus/ (last visited Jan. 13, 2021), "the FCI Allenwood numbers appear to be fluctuating, making it difficult to determine whether they are improving." *Williams*, 2021 WL 37536, at 6.

### V.      Mr. Shkreli's Mental Health

The Government asserts that Mr. Shkreli's mental health conditions are "stable." (Opp. at 16). However, the Court has already found that Mr. Shkreli's mental health is a legitimate concern. (*See* Dkt. No. 538 (Am. J. of Conviction) at 2,5, (recommending to the BOP that Mr. Shkreli participate in mental health treatment and imposing a supervised release condition requiring him to participate in mental health treatment), Statement of Reasons at 3–4 (citing Mr. Shkreli's mental and emotional condition as a reason for granting a downward variance)).

Although Mr. Shkreli "agreed [in November 2020] to contact the psychologist again if he had additional issues, and has not to date done so" (Opp. at 16–17), an individual with multiple mental health illnesses should not be faulted for declining to return to a psychologist who deemed the individual's conditions "stable" and found that "no further follow-up [wa]s clinically warranted." (*See* Opp., Ex. 1 (Clinical Note)).

### VI.     Compassionate Release Would be Consistent with the 18 U.S.C. § 3553(a) Factors

The Government asserts that "there is no 3553(a) factor related to" prison conditions and thus the COVID-19 outbreak at FCI Allenwood Low is irrelevant. (Opp. at 18). But the

**BRAFMAN & ASSOCIATES, P.C.**

outbreak is relevant to several § 3553(a) factors, including the need "to provide just punishment for the offense." *See* 18 U.S.C. § 3553(a)(2)(A).[3]

The Government asserts that Mr. Shkreli's clean prison record since September 2019 "is the bare minimum that is required of him" and thus does not support compassionate release. (Opp. at 18). The Government is wrong. *See United States v. Hiller*, No. 18-cr-389, 2020 WL 7129268, at 10 (D. Md. Dec. 4, 2020) ("Hiller's good behavior while incarcerated warrants recognition under 18 U.S.C. § 3553(a)."); *United States v. Camacho*, No. 11-cr-85, 2020 WL 4498796, at 3 (W.D. La. Aug. 4, 2020) ("In light of the substantial amount of time already served and the good conduct he has displayed while incarcerated, the factors set forth in § 3553(a) do not override the court's determination that the dangers posed by the COVID-19 pandemic serve as a basis for reducing Mr. Camacho's sentence."); *United States v. Fettis*, No. 17-cr-30003, 2020 WL 3027198, at 2 (C.D. Ill. June 5, 2020) (citing the defendant's clean prison record as a § 3553(a) factor weighing in favor of compassionate release).

The Government argues that Mr. Shkreli does not have a low risk of reoffending (Opp. at 18), but does not even try to explain away his low PATTERN score (*see* Mot. at 4 & n.3).

In making its argument on recidivism, the Government cites "the allegations contained in the FTC Action that the defendant continued to pursue his anticompetitive scheme even while incarcerated." (Opp. at 18). By invoking the FTC allegations to suggest that Mr. Shkreli has a high risk of reoffending, the Government has demonstrated why the FTC litigation is of a very serious nature and why that seriousness requires adequate and meaningful access to Civil Counsel. The allegations are not proven, but the Government is using them as a sword against Mr. Shkreli. Accordingly, it is imperative that Mr. Shkreli have meaningful and adequate access to Civil Counsel. In the absence of meaningful and adequate access to Civil Counsel, Mr. Shkreli's ability to defend against the FTC allegations will be severely prejudiced.

The Government points out that Mr. Shkreli (1) litigated the issue of a lifetime bar by the SEC from acting as an investment advisor, and (2) has refused to consent to a lifetime bar from serving as an officer or director of a public company (a "D&O bar"). (Opp. at 19). Mr. Shkreli has accepted that his time as an investment advisor is over. The fact that he is fighting the SEC's insistence that the D&O bar against him be forever is not evidence that he is a high risk of

---

[3] *See also United States v. Indarte*, No. 17-cr-5554, 2020 WL 6060299, at 4 (W.D. Wash. Oct. 14, 2020) ("[T]he factor relating to the 'need for just punishment' has dramatically shifted since sentencing. The lock-down measures prisons across the country like FCI Coleman have undergone to mitigate the spread of the pandemic have made confinement much more punitive than was contemplated at sentencing."); *United States v. Black*, No. 11-cr-83, 2020 WL 4583056, at 5 (S.D. Ind. Aug. 10, 2020) ("[C]onsidering the extraordinary and compelling reasons brought about by the Coronavirus, further incarceration would be greater than necessary to serve the purposes of punishment set forth in § 3553(a)(2)."); *United States v. Brown*, 467 F. Supp. 3d 209, 212 (S.D.N.Y. 2020) ("Two [§ 3553(a)] factors relevant here in light of the COVID-19 pandemic are the 'history and characteristics of the defendant,' and 'the need to provide the defendant with needed medical care.'" (ellipsis omitted)).

BRAFMAN & ASSOCIATES, P.C.

recidivism. Rather, it evidences that he is hopeful about his future and wishes to someday restore his reputation by succeeding as a productive citizen working within the bounds of law.

### VII. Mr. Shkreli's Projected Release Date

Although the Government correctly notes that Mr. Shkreli has not served the majority of the imposed prison sentence (Opp. at 18), he has served a majority of his sentence based on his projected release date of September 14, 2023. Moreover, Mr. Shkreli is eligible for home confinement on March 14, 2023, even without completion of RDAP. (Ex. 2: Sentencing Monitoring Computation Data).

In November 2019, Mr. Shkreli did decline to participate in RDAP. (*See* Opp. at 8 n.12). However, at that time, he thought that he could defer participation in the program. He was later informed that he could not defer, but he recalls that he was advised that he could reapply in three months and be reaccepted at that time. RDAP is a strict program that requires focus on the work of rehabilitation. When Mr. Shkreli declined participation and thought he could defer, he believed that various litigations that were then pending could interfere with his focus and that he would be well-served by delaying his entry to the program.

### VIII. Mr. Shkreli's Proposed Conditions of Supervised Release

In arguing that a supervised release condition of home confinement would be "effectively unenforceable," the Government asserts that "it is difficult to detect a violation generally." (Opp. at 19). It appears that the Government overlooked Mr. Shkreli's proposal that the home confinement condition includes constant electronic monitoring. (*See* Mot. at 1, 30–32).

The government also raises the concern that if the instant motion is granted, and Mr. Shkreli is released, then if he violates the terms of his release, he could return to a BOP facility carrying COVID-19. This concern can be easily addressed by the BOP by testing Mr. Shkreli upon his readmission. If the test results return positive, he should be placed in quarantine until he recovers and the results return negative.

BRAFMAN & ASSOCIATES, P.C.

## IX. Conclusion

For the foregoing reasons, Defendant Martin Shkreli's second motion for compassionate release should be granted.

Respectfully submitted,

Benjamin Brafman, Esq.
Andrea Zellan, Esq.
Stuart Gold, Esq.
Brafman & Associates, P.C.
256 5th Avenue, 2nd Floor
New York, NY 10001
Tel: (212) 750-7800
Fax: (212) 750-3906

cc: Clerk of Court (KAM), by ECF
Counsel for the Government, by ECF